UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| In re:<br><br>ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE,<br><br>                     Debtor.[1] | Chapter 11<br><br>Case No. [_____] |

**NOTICE:**

> MOVANT HAS ALSO FILED A MOTION TO SHORTEN THE TIME FOR RESPONSE AND/OR FOR AN EXPEDITED HEARING. IF THAT MOTION TO SHORTEN OR EXPEDITE IS GRANTED, THE TIME TO OBJECT AND/OR DATE FOR HEARING WILL BE CHANGED AS PROVIDED IN SUCH ORDER.

**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION, (II) SCHEDULING A FINAL HEARING ON THE USE OF CASH COLLATERAL, AND (III) GRANTING RELATED RELIEF**

The Roman Catholic Archbishop of Baltimore, the debtor and debtor in possession (the "***Debtor***") in the above-captioned chapter 11 case (the "***Chapter 11 Case***"), by and through its undersigned counsel, files this motion (this "***Motion***"), pursuant to sections 105, 361, 362, 363, and 364 of title 11 of the United States Code (the "***Bankruptcy Code***") and Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), for entry of interim order and final order, substantially in the forms attached to this Motion as **Exhibit A** (the "***Interim Order***") and **Exhibit B** (the "***Final Order***," and together with the Interim Order, the "***Proposed Orders***") granting the relief requested below. In support of the Motion, the Debtor relies on and incorporates by reference the *Informational Brief of the Roman Catholic*

---

[1] The last four digits of the Debtor's federal tax identification number are: 1535. The Debtor's principal place of business is located at 320 Cathedral Street, Baltimore, Maryland 21201.

*Archbishop of Baltimore* (the "***Informational Brief***") and the *Declaration of John Matera in Support of First Day Motions* (the "***Matera Declaration***" and, with the Informational Brief, collectively, the "***First Day Informational Pleadings***"), and respectfully represents as follows:

## PRELIMINARY STATEMENT

1. As further described in the First Day Informational Pleadings, the Debtor commenced this chapter 11 case in order to fairly provide compensation for unresolved claims of survivors of abuse and preserve the ability of the Debtor to continue providing essential ministries and services within the Archdiocese of Baltimore.

2. As more fully set forth in this Motion, pursuant to a variety of lending transactions, certain financial instruments, and Treasury Management Services Agreement, the Debtor is indebted to PNC Bank, National Association ("***PNC***"), which indebtedness is secured by, among other things, the Debtor's deposit and investment accounts maintained at PNC.

3. Prior to the Petition Date, the Debtor sought the consent of PNC to use PNC's cash collateral on a consensual basis, to allow the Debtor to continue its operations, pay its employees, provide essential ministries and services within the Archdiocese of Baltimore and administer this Chapter 11 Case for the benefit of all survivors and other creditors, including PNC. The failure to obtain the use of cash collateral would result in significant disruption of the Debtor's operations, which would only serve to hurt every constituency in this Chapter 11 Case in addition to the communities the Debtor serves. Thus, the continuing use of cash collateral is necessary to stabilize and maintain operations, and ultimately reach a confirmed plan of reorganization in this Chapter 11 Case.

## JURISDICTION AND VENUE

4. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and *Standing Order 2012-05* from the United States District Court for the District of

Maryland. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Rule 9013-6 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland (the "***Local Bankruptcy Rules***"), the Debtor consents to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

5. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

6. By this Motion, the Debtor respectfully requests entry of the Interim Order: (a) approving the Debtor's use the Cash Collateral (as defined below) and adequate protection for the PNC on an interim basis until the Court can conduct a final hearing on the use of the Cash Collateral; (b) finding that PNC is adequately protected; (c) scheduling a final hearing at which time it will authorize the use of Cash Collateral on a final basis; and (d) granting such additional related relief as the Court deems appropriate.

## BACKGROUND

**I.     The Chapter 11 Case.**

7. On September 29, 2023 (the "***Petition Date***"), the Debtor commenced this Chapter 11 Case. The Debtor is operating its business and managing its property as debtor in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Case, and no committees have been appointed.

8. A description of the Debtor's history, business operations, operational structure, the reasons for commencing the Chapter 11 Case, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in the First Day Informational Pleadings.

**II.     The Debtor's Prepetition Capital Structure.**

9.      The following chart sets forth the Debtor's funded secured debt obligations as of the Petition Date.

| Debt Obligation | Secured Status | Prepetition Principal Amount Owed |
|---|---|---|
| School Bonds | Secured | $21,675,000.00 |
| PNC Loan | Secured | $4,097,988.62 |
| **TOTAL AGGREGATE** | **N/A** | **$25,772,988.60** |

        **A.     The School Bonds.**

10.     Pursuant to that certain Indenture of Trust dated as of June 1, 2007 (as amended, supplemented, or otherwise modified from time to time, the "***Trust Indenture***"), Maryland Health and Higher Educational Facilities Authority (the "***Issuer***") issued $24,165,000 in the aggregate principal amount of its Maryland Health and Higher Educational Facilities Authority Revenue Bonds, Archdiocese of Baltimore Schools Issue, Series 2007 (the "***Bonds***"), the proceeds of which were loaned by the Issuer to the Debtor pursuant to a certain Loan Agreement, dated as of June 1, 2007, by and between the Issuer and Debtor (as amended, supplemented, or otherwise modified from time to time, the "***Bond Loan Agreement***"), in order to finance and refinance the costs of certain non-collegiate educational projects.

11.     As security for the Debtor's obligations under the Bond Loan Agreement, the Debtor executed and delivered that certain Deed of Trust, Assignment and Security Agreement, dated as of December 8, 2010, pursuant to which the Debtor granted security interests in and liens on certain real property, all buildings, structures, and improvements on the real property, all rents, issues and profits arising from the real property (the "***Real Property***"), and all proceeds derived from the Real Property (collectively, the "***Bond Collateral***").

12.     As further security for the Debtor's obligations under the Bond Loan Agreement, each of St. John Regional Catholic School, Inc., Archbishop Spalding High School, Inc., The

4

Cathedral of Mary Our Queen Roman Catholic Congregation, St. Agnes Roman Catholic Congregation, Incorporated, and Archbishop Curley High School, Inc. (collectively, the "***Bond Guarantors***") each executed a certain Limited Guaranty and Suretyship Agreement in favor of PNC, guarantying the Bond Obligations in an amount equal to certain obligations owed by the applicable Bond Guarantor to the Debtor.

13. As of the Petition Date, the aggregate principal amount outstanding under the Bond Loan Agreement was approximately **$21,675,000**, plus accrued interest and other fees due and owing under the Bond Loan Agreement (the "***Bond Obligations***") and PNC is the sole holder of the Bonds.

14. By operation of section 552(b) of the Bankruptcy Code, PNC's liens on and security interests in the Bond Collateral continues in all postpetition rents, revenues, and profits derived from the Real Property.

### B. The PNC Term Loans.

15. Pursuant to that certain Third Amended and Restated Letter Agreement – Term Loan dated as of May 16, 2014 (as amended and supplemented from time to time, the "***PNC Loan Agreement***") by and between PNC and the Debtor, PNC provided a term loan facility in the aggregate principal amount of $14,743,466.36 (the "***PNC Loan***").

16. To evidence the Debtor's obligations under the PNC Loan Agreement, the Debtor executed and delivered that certain Amended and Restated Term Note A and that certain Amended and Restated Term Note B, both dated as of May 16, 2014 (as amended and supplemented from time to time, the "***PNC Notes***").

17. As security for the PNC Loan, the Debtor executed and delivered that certain Amended and Restated Pledge Agreement dated as of May 16, 2014 (as amended and supplemented from time to time, the "***Pledge Agreement***"), pursuant to which the Debtor pledged

5

as collateral certain investment accounts maintained and held by PNC (the "*Pledged Accounts*").

18. As of the Petition Date, the aggregate principal amount outstanding under the PNC Loan Agreement was approximately **$4,097,988.62**, plus accrued interest and other fees due and owing under the PNC Loan Agreement (the "*PNC Obligations*").

### C. Debtor's Guaranty Obligation to PNC.

19. In addition to the PNC Obligations, the Debtor is obligated as a guarantor in connection with that certain Guaranty and Suretyship Agreement, dated as of May 20, 2016 (the "*Guaranty*"), pursuant to which the Debtor guaranteed all obligations of Church of the Nativity of Our Lord Jesus Christ Roman Catholic Congregation, Incorporated, including, without limitation, a Standby and Commercial Letter of Credit (the "*Guaranty Obligations*").

### D. The PNC Swap Agreements.

20. The Debtor is also obligated under certain swap agreements (the "*Swap Agreements*" and the obligations thereunder, the "*Swap Obligations*" and together with the Bond Obligations, PNC Obligations, and Guaranty Obligations, including costs and expenses thereunder for which the Debtor is liable for reimbursement in favor of PNC (*e.g.*, legal costs and fees), the "*Prepetition Obligations*") with PNC.

21. As of September 25, 2023, the mark-to-market value of the Swap Obligations is approximately **$856,000** that would be owing by the Debtor.

22. In addition, if the Swap Agreements were terminated, the Debtor would incur significant increased interest expense in connection with the Bond Obligations and PNC Obligations.

### E. Prepetition Liens and Collateral; Validity of Prepetition Obligations.

23. As of the Petition Date, PNC asserts security interests in and liens upon (collectively, the "*Prepetition Liens*") the following as collateral for the Prepetition Obligations

(collectively, the "*Prepetition Collateral*"): (a) the Bond Collateral, including, among other things, the Debtor's primary business location; (b) the Pledged Accounts; and (c) certain deposit and investment accounts maintained by the Debtor at PNC, including the Debtor's primary operating account (together with the Pledged Accounts, the "*Cash Collateral*").[2]

24. Subject to entry of a Final Order and to a third party challenge period to be provided for in such Final Order, as of the Petition Date, the Debtor acknowledges that: (a) the Prepetition Obligations are valid and enforceable; (b) the Prepetition Liens are valid, enforceable, perfected, and non-avoidable pursuant to the Bankruptcy Code or other applicable law; and (c) the Debtor does not possess any claim, counterclaim, setoff or defense of any kind or nature that would affect the validity, enforceability, or non-avoidability of the Prepetition Obligations or Prepetition Liens.

25. Subject to entry of a Final Order, neither the surcharge provisions of section 506(c) of the Bankruptcy Code, nor the enhancement of collateral provisions of section 552 of the Bankruptcy Code, shall be imposed upon PNC, any of the Prepetition Collateral, any collateral encumbered by the Adequate Protection Liens, or upon the proceeds of the foregoing.

26. Subject to Entry of a Final Order and except as otherwise expressly provided in the Interim Order or such Final Order, the Debtor shall not: (a) incur any debt for additional money, including any request under section 364 of the Bankruptcy Code for a debtor in possession credit facility; or (b) grant or permit the creation of a lien or security interest in any of the Debtor's property.

### IMMEDIATE NEED FOR CASH COLLATERAL AND ANCILLARY RELIEF

27. The Debtor seeks authority to use the Cash Collateral to: (a) continue its secular

---

[2] As of the Petition Date, the Debtor's operating account had a balance of approximately **$15,100,000**.

7

and religious operations, (b) provide continuity of its mission and ministry in the ordinary course of business, (c) continue servicing the Prepetition Obligations in the ordinary course of business, and (d) fund the administration of this Chapter 11 Case.

28. The Debtor cannot operate without access to Cash Collateral, and failure to obtain access now will cause immediate and irreparable harm to the Debtor, its followers, suppliers, employees, and other creditors and parties-in-interest, as well as the communities that the Debtor serves.

29. In addition, the termination of the Swap Agreements would cause an immediate detrimental effect to the Debtor, with further long-term carry-on negative effects as a result of higher interest rate expenses.

30. In exchange for the consensual use of Cash Collateral and continuation of the Swap Agreements, the Debtor proposes to grant the following adequate protection (the "***Adequate Protection***") to PNC: (a) the continued servicing of the Prepetition Obligations (including legal fees and costs of PNC), in the ordinary course of business (including via direct debit); and (b) solely to the extent of the postpetition diminution in value which is as a result of, or arises from, or is attributable to, the imposition of the automatic stay, or the use, sale or lease of such Cash Collateral (any such diminution, "***Diminution in Value***"): (i) replacement and preservation of any and all liens, security interests, and setoff rights held by PNC prior to the Petition Date and continuing in the proceeds thereof (including sweep accounts to which funds may be transferred) (the "***Adequate Protection Liens***"); and (ii) allowed superpriority administrative expense claims against the Debtor (the "***507(b) Claims***").

31. With respect to entry of an Interim Order, in exchange for the Adequate Protection, PNC has agreed to the consensual use of the Cash Collateral in the ordinary course of the Debtor's

8

business.

32.     The Debtor submits that the proposed adequate protection will sufficiently protect PNC from any Diminution in Value of the Prepetition Collateral during the pendency of this Chapter 11 Case while simultaneously preventing (a) disruption of the Debtor's operations and administration of this Chapter 11 Case and (b) diminution of the Debtor's estate and ability to reorganize.

### STATEMENT PURSUANT TO RULE 4001(b)(1)(B)

33.     Pursuant to Bankruptcy Rules 4001(b)(1) and (d), the Debtor submits the following concise statement of the material terms of the Interim Order:

| Summary of Material Terms ||
|---|---|
| **Entities with an Interest in Cash Collateral** | (a) PNC, as sole bondholder under the Trust Indenture; (b) PNC as lender under the PNC Loan Agreement; and (c) PNC as swap counterparty under the Swap Agreements. |
| **Purposes for Use of Cash Collateral** | To avoid immediate and irreparable harm to the Debtor, Debtor's estate, and Debtor's ongoing operations, the Debtor requests access to the Cash Collateral on an interim and final basis to fund the operation of its organization in the ordinary course postpetition, as well as the administrative costs of these Chapter 11 Cases |
| **Duration of Use of Cash Collateral** | The Debtor seeks use of the Cash Collateral through the pendency of this Chapter 11 Case |
| **Proposed Adequate Protection** | The Adequate Protection Liens and the 507(b) Claims. |

### BASIS FOR REQUESTED RELIEF

**I.     The Debtor's Immediate Use of Cash Collateral is Necessary.**

34.     A debtor's use of property of the estate, including cash collateral, is governed by Bankruptcy Code section 363. Pursuant to Bankruptcy Code section 363(c)(2), a debtor may use

9

cash collateral if: "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of [section 363]." 11 U.S.C. § 363(c)(2).

35. It is well-established that a bankruptcy court should, whenever possible, resolve issues in favor of allowing a debtor to continue its business as a going concern. It is understood that "[one] of the most important assets for a trustee or debtor-in-possession is cash (or proceeds derived from property of the estate), namely, that working capital needed to keep the business open by maintaining inventory, making payroll, and more." *In re Hard Rock Exploration, Inc.* 580 B.R. 202, 210 (Bankr. S. D. W. Va. 2017). Courts have also recognized that "[a] debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild. Without the availability of cash to meet daily operating expenses . . . the congressional policy favoring rehabilitation over economic failure would be frustrated." *Chrysler Credit Corp. v. Ruggiere* (*In re George Ruggiere ChryslerPlymouth, Inc.*), 727 F.2d 1017, 1019 (11th Cir. 1984); *see also N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 528 (1984) ("The fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources.").

36. Accordingly, courts regularly authorize the use of cash collateral by debtors to maintain their operations and enhance or improve the value of the estate. *See generally In re Cloverleaf Enters.*, 2009 Bankr. LEXIS 5307 (Bankr. D. Md. 2009), *In re LDN Corp.*, 191 B.R. 320 (Bankr. E. D. Va. 1996); *see also In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("[T]here is no question that the property would be improved by the proposed renovations and that an increase in value will result. In effect, a substitution occurs in that the money spent for improvements will be transferred into value. This value will serve as adequate

protection for [the creditor's] secured claim.").

37. It is essential to the Debtor's reorganization efforts that it has sufficient funds to operate in the ordinary course and fund this Chapter 11 Case. Absent the use of Cash Collateral, the Debtor will not have sufficient working capital to: (a) make payments to employees, vendors, or suppliers; (b) provide care and services to those who rely upon the Debtor for spiritual and non-spiritual assistance and support; (c) satisfy operating costs; and (d) fund the administrative costs of this Chapter 11 Case. The ability to satisfy these expenses when due is essential to avoid immediate and irreparable harm to the Debtor's bankruptcy estate. In the normal course of business, the Debtor uses cash on hand and cash flow from operations and other sources to fund working capital and capital expenditures and operate and maintain its operations and properties. Absent immediate access, the Debtor will not have adequate unencumbered cash on hand to pay these critical expenses, the services provided by the Debtor will cease, and countless individuals and communities will suffer.

## II. The Proposed Adequate Protection is Reasonable and Appropriate.

38. Bankruptcy Code section 363(e) further provides that "on request of an entity that has an interest in property . . . to be used, sold or leased, by the trustee, the court . . . shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Further, Bankruptcy Code section 362(d)(1) provides for adequate protection of interests in property due to the imposition of the automatic stay. See 11 U.S.C. § 362(d)(1); *see also In re Newcomer*, 416 B.R. 166, 175 (Bankr. D. Md. 2009) (noting that the automatic stay "is intended to protect the interests of creditors as well as of debtors.").

39. The Bankruptcy Code does not expressly define "adequate protection." Bankruptcy Code section 361, however, provides a non-exhaustive list of examples of adequate protection, including replacement liens and administrative priority claims. See 11 U.S.C. § 361.

11

What constitutes adequate protection is a question of fact. *See In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *see also In re Martin*, 761 F.2d 472, 474 (8th Cir. 1985).

40. Generally, courts decide what constitutes adequate protection on a case-by-case basis. *See, e.g., In re Hamilton*, 651 B.R. 499, 504-05 (Bankr. D. S.C. 2023) ("The Court determines whether a creditor's interest in the property is adequately protected on a case-by-case basis"); *In re JKJ Chevrolet*, 190 B.R. 542, 545 (Bankr. E. D. Va. 1995) ("Adequate protection is a flexible concept that is determined by considering the facts of each case."); *In re N.J. Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *14 (Bankr. D. N.J. June 29, 2006) ("The term 'adequate protection' is intended to be a flexible concept."); *In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992) (emphasizing that "the varying analyses and results contained in the . . . slew of cases demonstrate that what interest is entitled to adequate protection and what constitutes adequate protection must be decided on a case-by-case basis"); *see also In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D. N.H. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding") (internal citation omitted).

41. The Fourth Circuit has noted that the purpose of adequate protection "is to insure that the secured creditor receives the value for which he bargained." *R&J Contr. Servs., LLC v. Vancamp*, 2023 U.S. Dist. LEXIS 61630 (4th Cir. 2023) (quoting *In re Martin*, 761 F.2d 742, 474 (8th Cir. 1985)). *See also In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (noting that the application of adequate protection "is left to the vagaries of each case, but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process") (citation omitted), *rev'd on other grounds*, 89 B.R. 336 (S.D.N.Y. 1988).

The Fourth Circuit has held that adequacy is met when a creditor is assured of the "indubitable equivalent" of its interest in the estate. *In re Health Diagnostic Lab., Inc.*, 2015 Bankr. LEXIS 4471 (Bankr. E. D. Va. 2015); *see also In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986)

42.     The Debtor proposes to grant PNC the Adequate Protection, which the Debtor believes will sufficiently protect PNC from Diminution in Value of the Prepetition Collateral during the pendency of these proceedings. In exchange, PNC has consented to the use of its Cash Collateral and to not charge the Debtor default interest as set forth in the respective Interim Order and Final Order.

43.     Without access to Cash Collateral, the Debtor will be unable to continue operating, which will negatively impact the Debtor's ongoing operations as well as its efforts at reorganization during the course of this Chapter 11 Case, all to the detriment of all of the Debtor's creditors. Similarly, if the Prepetition Obligations are not maintained in the ordinary course—i.e., if defaults are called or the Swap Agreements are terminated—the Debtor will incur significant additional costs and other claims to the detriment of the Debtor's estate and ability to reorganize in this Chapter 11 Case. Accordingly, the Debtor believes the Adequate Protection is necessary and sufficient for the Debtor to continue to use Cash Collateral and avoid any dispute with PNC regarding the use of Cash Collateral or other issues regarding the Prepetition Obligations. Accordingly, the Debtor submits that the adequate protection is: (a) fair and reasonable, (b) necessary to satisfy the requirements of Bankruptcy Code sections 363(c)(2) and 363(e), and (c) in the best interests of the Debtor and its estate.

### III.     The Debtor Requires Immediate Access to Cash Collateral.

44.     The Court may grant interim relief in respect of a motion filed pursuant to Bankruptcy Code section 363(c) or 364 if, as here, interim relief is "necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2), (c)(2).

In examining requests for interim relief under this rule, courts generally apply the same business judgment standard applicable to other business decisions. *See Ames Dep't Stores*, 115 B.R. 34, 36 (Bankr. S.D.N.Y. 1990).

45. Pending the final hearing on this Motion, the Debtor requires immediate access to Cash Collateral to satisfy the day-to-day needs of the Debtor's operations and maintain continuity of service and care to the Maryland Catholic community. The Debtor has an immediate need for liquidity to, among other things, maintain business relationships with its vendors and suppliers, pay payroll and certain benefits, and satisfy other essential working capital and operational needs, all of which are required to preserve and maintain the Debtor's operations.

46. Absent authority to continue use of the Cash Collateral, the Debtor will be unable to continue operating its organization, resulting in harm to local communities and individuals, a deterioration of value, and immediate and irreparable harm to the Debtor's estate. Accordingly, pursuant to Bankruptcy Code section 363(c)(3) and Bankruptcy Rule 4001(b), the Debtor requests an expedited hearing to consider the Motion and entry of the Interim Order authorizing the Debtor's immediate use of Cash Collateral to finance their operations and continue operating as a going concern during the pendency of this Chapter 11 Case.

### **REQUESTED RELIEF SATISFIES BANKRUPTCY RULE 6003**

47. Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ." Fed. R. Bankr. P. 6003(b); *see also Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (noting that courts can approve orders that allow payment of prepetition debt, which is necessary for the debtor to reorganize and restructure its debts and

maximize the value of the bankruptcy estate).

48. Failure to receive the authorization and other relief requested in this Motion during the first 21 days of the Chapter 11 Case would severely disrupt the Debtor's operations at this critical juncture. The Debtor submits that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor for the reasons set forth in this Motion in order for the Debtor to operate its businesses in the ordinary course, preserve the ongoing value of the Debtor's operations, and maximize the value of its estate for the benefit of all stakeholders. Accordingly, the Debtor submits that Bankruptcy Rule 6003 has been satisfied and the relief requested in this Motion should be granted.

### REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

49. To implement the foregoing immediately, the Debtor respectfully requests a waiver of the notice requirements under Bankruptcy Rule 6004(a). Furthermore, to implement the foregoing immediately, the Debtor seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth above, uninterrupted use of Cash Collateral is essential to prevent potentially irreparable damage to the Debtor's operations, value, and ability to reorganize. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

### RESERVATION OF RIGHTS

50. Nothing contained in this Motion is intended or should be construed as an admission as to the validity of any claim against the Debtor, a waiver of the Debtor's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. If this Court grants the relief requested in this Motion, any Court

authorized payment is not an admission of the validity of any claim or a waiver of the Debtor's or any other party's rights to subsequently dispute such claim. In addition, authorization to pay the claims described in this Motion will not be deemed a direction to the Debtor to pay such claims.

## WAIVER OF MEMORANDUM OF LAW

51.Pursuant to Local Bankruptcy Rule 9013-2, and because there are no novel issues of law presented in the motion and all applicable authority is set forth herein, the Debtor respectfully requests that the Court waive the requirement that a motion be accompanied by a separate written memorandum of fact and law.

## NOTICE

52.The Debtor has provided notice of the filing of the Motion to: (i) the Office of the United States Trustee for the District of Maryland; (ii) the Debtor's 20 largest unsecured creditors; (iii) PNC; and (iv) any party that has requested notice pursuant to Bankruptcy Rule 2002. Notice of this Motion and any order entered in connection with this Motion will be served on all parties required by Local Rule 9013-1. Due to the urgency of the circumstances surrounding this Motion and the nature of the relief in it, the Debtor respectfully submit that no further notice of this Motion is required.

[*Remainder of Page Intentionally Left Blank*]

**WHEREFORE**, the Debtor respectfully requests entry of the Interim Order, and pending a final hearing, a final order, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: September 29, 2023

Respectfully submitted,

    /s/ Catherine K. Hopkin
Catherine K. Hopkin
**YVS LAW, LLC**
185 Admiral Cochrane Drive, Suite 130
Annapolis, MD 21401
Telephone:   443.569.0788
Facsimile:   410.571.2798
Email: chopkin@yvslaw.com

*-and-*

Blake D. Roth (*pro hac vice* pending)
Tyler N. Layne (*pro hac vice* pending)
**HOLLAND & KNIGHT LLP**
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone:   615.244.6380
Facsimile:   615.244.6804
Email: blake.roth@hklaw.com
      tyler.layne@hklaw.com

*-and-*

Philip T. Evans (Fed. Bar No. 11796)
**HOLLAND & KNIGHT LLP**
800 17th Street, NW, Suite 1100
Washington, DC 20006
Telephone:   202.457.7043
Email: philip.evans@hklaw.com

*Proposed Attorneys for the Debtor and Debtor In Possession*

<u>**CERTIFICATE OF SERVICE**</u>

Epiq Corporate Restructuring, LLC will cause a true and correct copy of the foregoing to be served on all parties required to be served, with a certificate or affidavit of service to be filed subsequently, all in accordance with Local Rule 9013-4.

      /s/ Catherine K. Hopkin
Catherine K. Hopkin (Fed. Bar No. 28257)
**YVS LAW, LLC**
185 Admiral Cochrane Drive, Suite 130
Annapolis, MD 21401
Telephone:	443.569.0788
Facsimile:	410.571.2798
Email: chopkin@yvslaw.com

*Proposed Attorneys for the Debtor and Debtor In Possession*