## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| In re: | Chapter 11 |
| ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE, | Case No. [_____] |
| Debtor.[1] | |

## DEBTOR'S MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 105(a) AND 362 OF THE BANKRUPTCY CODE, EXTENDING THE AUTOMATIC STAY

The Roman Catholic Archbishop of Baltimore, the debtor and debtor in possession (the "**Debtor**" or "**RCAB**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), by and through its undersigned counsel, files this motion (this "**Motion**") pursuant to sections 105(a) and 362(a) of title 11 of the United States Code (the "**Bankruptcy Code**") for a limited extension of the automatic stay imposed by section 362 of the Bankruptcy Code to all related entities included as additional insureds under the Debtor's various current and legacy insurance programs, including but not limited to the one hundred fifty-three (153) parishes, each of the schools within the Archdiocese covered under the Debtor's insurance program, Catholic Community School Land, Inc., Inter-Parish Loan Fund, Inc., Catholic Community Foundation of the Archdiocese of Baltimore, Inc., Roman Catholic Foundation in the Archdiocese of Baltimore, Inc., John Carroll Foundation of the Roman Catholic Archdiocese of Baltimore, Inc., Associated Catholic Charities, Inc., and Maryland Catholic Conference, LLC (collectively with all other related entities covered by the Debtor's current and legacy insurance programs, the "**Covered Parties**"), to stay the prosecution of all sexual abuse actions (the "**Abuse Actions**") during this Chapter 11 Case. In support of this Motion, the Debtor relies on and incorporates by reference the *Informational Brief*

---

[1] The last four digits of the Debtor's federal tax identification number are: 1535. The Debtor's principal place of business is located at 320 Cathedral Street, Baltimore, Maryland 21201.

*of the Roman Catholic Archbishop of Baltimore* (the "**Informational Brief**") and the *Declaration of John Matera in Support of First Day Motions* (the "**Matera Declaration**" and, with the Informational Brief, collectively, the "**First Day Informational Pleadings**") and respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      The Debtor filed the Chapter 11 Case seeking relief in order to enable a fair and equitable distribution of its assets to all of its creditors, while at the same time continuing the work of the Roman Catholic Church within the Archdiocese of Baltimore to the fullest extent possible using the resources dedicated to those purposes. A hallmark of bankruptcy proceedings is that the debtor be given some breathing room through the automatic stay to marshal its assets, to assess its liabilities, and to plan for its successful reorganization.

2.      Like other similarly situated debtors, the Debtor in this Chapter 11 Case seeks to achieve a successful reorganization through a consensual plan of reorganization, providing principally for the establishment of a trust for the benefit of survivors of abuse and the emergence of a feasible reorganized debtor. To achieve this goal, the Debtor will require the full attention of its key personnel, the participation of Covered Parties and the Debtor's and Covered Parties' current and legacy insurance carriers in funding a compensation trust, and breathing spell granted by the automatic stay to permit the time and space for meaningful negotiations with, among others, any committee appointed to represent the interests of survivors of abuse, Covered Parties, and the Debtor's and Covered Parties' current and legacy insurance carriers.

3.      To that end, the Debtor seeks the relief requested in this Motion to ensure that it will have the breathing room necessary to avoid the: (a) diversion of its resources; (b) diversion of its key personnel who are essential to the success of the Debtor's reorganization efforts; (c) prejudice through collateral estoppel and claims for indemnification and contribution; and

(d) the dissipation of integral assets—namely insurance coverage—that would occur if creditors were allowed to collect debts owing them by the Covered Parties during this Chapter 11 Case. It is the Debtor's goal to treat all creditors equitably and to develop a process for a fair distribution of its assets. It would be to the detriment of all creditors, including any sexual abuse claimants, to permit creditors to collect debts owing them by the Covered Parties at this time.

### JURISDICTION AND VENUE

4.      This Court has jurisdiction to consider this Motion, pursuant to 28 U.S.C. §§ 157 and 1334 and *Standing Order 2012-05* from the United States District Court for the District of Maryland. This matter is a core proceeding, pursuant to 28 U.S.C. § 157(b), and the Debtor consents to the entry of a final judgment or order with respect to this Motion, if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

5.      Venue is proper before this Court, pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

6.      On September 29, 2023 (the "**Petition Date**"), the Debtor commenced the Chapter 11 Case. The Debtor is operating its business and managing its property as a debtor in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Case, and no committees have been appointed or designated.

7.      A description of the Debtor's history, business operations, operational structure, the reasons for commencing the Chapter 11 Case, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in the First Day Informational Pleadings.

8.     The issues presented by this Chapter 11 Case constitute special or unusual circumstances such that immediate adverse consequences for the Debtor's estate will occur if the relief requested in this Motion is not granted.

9.     The Debtor has historically maintained and currently maintains a centralized insurance program, which is administered by the Debtor and arranges for or provides high quality risk protection and risk management services for the Debtor and all Covered Parties (the "***General Insurance Program***").

10.     The currently existing portion of the General Insurance Program is fully explained in the *Debtor's Emergency Motion for Entry of Interim and Final Orders Authorizing the Debtor to (i) Continue Administration of Insurance Programs, (II) Continue Participation in Insurance Programs, and (III) Renew, Amend, Supplement, Extend, or Purchase Insurance Coverage*, which is submitted simultaneously with this Motion.

11.     In addition, the legacy portion of the General Insurance Program has historically provided robust general liability insurance for the Debtor and Covered Parties, including coverage for liability arising from Abuse Actions.

12.     Under the General Insurance Program, Abuse Actions will be satisfied from a finite group of insurance policies which provide coverage for the Debtor and Covered Parties, regardless of whether such claims are brought against the Debtor or a Covered Party.

13.     As a result, the Debtor and Covered Parties are intertwined such that a judgment against a Covered Party in any Abuse Action would effectively be a judgement against a Debtor, the Debtor may face issues of collateral estoppel and claim preclusion, and recovery against a Covered Party would have an adverse impact on the Debtor's estate, all of which would prejudice

the Debtor's creditors and impact negatively the Debtor's ability to reorganize in this Chapter 11 Case.

## RELIEF REQUESTED

14.     By this Motion, the Debtor requests entry of an order, pursuant to sections 105(a) and 362(a) of title 11 of the Bankruptcy Code, providing a limited extension of the automatic stay imposed by section 362 of the Bankruptcy Code to the Covered Parties.

## BASIS FOR RELIEF REQUESTED

15.     Pursuant to section 362 of the Bankruptcy Code, the filing of a petition under the Bankruptcy Code operates as a stay on a wide range of actions against a debtor and, under appropriate circumstances, non-debtor third parties. 11 U.S.C. § 362(a).

16.     Specifically, section 362(a) of the Bankruptcy Code provides, in pertinent part, that the filing of a petition for relief under the Bankruptcy Code operates to stay:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claims against the debtor that arose before the commencement of the case under this title;
>
> ***
>
> (3) any act to obtain the possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate;
>
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. §§ 362(a)(1), (3)–(6).

17. The automatic stay is one of the fundamental debtor and creditor protections provided by the Bankruptcy Code. *Health & Welfare Plan for Emples. of S. Md. Elec Coop., Inc. v. Eagleston (In re Eagleston)*, 236 B.R. 183, 187 (Bankr. D. Md. 1999) (citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296).

18. As a fundamental debtor and creditor protection, the automatic stay gives the debtor a breathing spell from its creditors by stopping all collection efforts, harassment, and foreclosure actions, relieving the debtor of the financial pressures that drove it into bankruptcy and facilitating the debtor's attempt to reorganize. *In re St. Francis of Assisi Cat Rescue, Inc.*, 2011 Bankr. LEXIS 2875 (Bankr. D. Md. 2011).

19. For creditors, the automatic stay prevents the "uncontrollable scramble" whereby creditors who act first to pursue their remedies against the debtor's property obtain payment of their claims in preference to and to the detriment of other creditors. *See A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 998 (4th Cir. 1986); *see also In re McMullen*, 386 F.3d 320, 324 (1st Cir. 2004) (noting that the automatic stay "safeguard[s] the debtor's estate from piecemeal dissipation . . . ensur[ing] that the assets remain within the exclusive jurisdiction of the bankruptcy court pending their orderly and equitable distribution among the creditors").

20. As the court in *A.H. Robins Co.*, 788 F.2d at 998 remarked:

> The purpose of [the automatic stay] . . . is to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor.

To that end, the automatic stay operates automatically to stay all judicial actions against a debtor and the debtor's property that were or could have been brought prior to the commencement of a

bankruptcy case. *See Greer v. Hartford Life & Accident Ins. Co. (In re G&L Drywall, Inc.)*, 63 Fed. Appx. 663, 667 (4th Cir. 2003).

21.     While the scope of the automatic stay is broad with respect to the Debtor and property of the estate, the Bankruptcy Code allows courts to apply the automatic stay to actions that do not involve property of the estate, pursuant to sections 105(a) and 326 of the Bankruptcy Code. *Credit Alliance Corp. v. Williams,* 851 F.2d 119, 121 (4th Cir. 1988); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986); *In re Cornus Montessori, LLC*, 2021 Bankr. LEXIS 1023 (Bankr. E. D. Va. 2021).

22.     Section 105(a) of the Bankruptcy Code provides this Court with authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

23.     While the power granted by section 105(a) does not go so far as to authorize orders that are inconsistent with the express statutory provisions of the Bankruptcy Code, section 105(a) does provide this Court with broad discretion to order relief in furtherance of the objectives of the Bankruptcy Code, including the continued prosecution of state court litigation against non-debtor parties, to the extent such relief is not in contravention of the dictates of the Bankruptcy Code. *See Law v. Siegel*, 571 U.S. 415 (2014); *Caesars Entm't Operating Co. v. BOKF, N.A. (In re Caesars Entm't Operating Co.)*, 808 F.3d 1186, 1188-89 (7th Cir. 2015).

24.     Consistent with the broad reach of the automatic stay and equitable powers granted under section 105(a) of the Bankruptcy Code, courts have utilized sections 105(a) and 362 of the Bankruptcy Code to extend the automatic stay to non-debtors where litigation or any action to collect a debt will directly affect the debtor's assets or its ability to pursue a successful plan of reorganization. *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) (noting courts "have

ample power to enjoin actions excepted from the automatic stay, which might interfere in the rehabilitative process whether in a liquidation, or in a reorganization case."); *see also*, *McCartney v. Integra Nat'l Bank North*, 106 F.3d 506,510 (3d Cir. 1997) ("[c]ourts have also extended the stay to non-debtor third parties where stay protection is essential to the debtor's efforts of reorganization"); *In re S.I. Acquisition, Inc.*, 817 F .2d 1142, 1146 n. 3 (5th Cir. 1987) ("We recognize . . . the bankruptcy court may affirmatively stay proceedings pursuant to its broad discretionary powers embodied in 11 U.S.C. § 105."); *In re Catholic Diocese of Wilmington, Inc.*, Case No. 09-13560 [Dkt. No. 321] (extending the automatic stay to non-debtor entities in a virtually identical case); *In re Roman Catholic Diocese of Harrisburg*; Case No. 20-bk-00599 (HWV) [Dkt. No. 222] (extending the automatic stay to non-debtor entities in a virtually identical case).

25.     Upon consideration of whether to extend the automatic stay to non-debtor entities, other courts have also found that "the power of the Court to stay actions against Non-Debtors, under section 105(a), is clear." *In re Phila. Newspapers, LLC*, 407 B.R. 606, 607 (E.D. Pa. 2009); *see also Harbison-Walker Refractories Co. v. ACE Prop. & Cas. Ins. Co. (In re Global Indus. Techs.)*, 303 B.R. 753, 760 (Bankr. W.D. Pa. 2004) ("The fact that the action does not name Debtor is not dispositive" when determining whether to enjoin action against non-debtors.).

I.      **The automatic stay can be extended under "unusual circumstances."**

26.     When considering whether to extend the automatic stay to non-debtors, courts have primarily done so in "unusual circumstances." *See A.H. Robins*, 788 F.2d 999–1003.

27.     Courts have found that such "unusual circumstances" arise where there is "[an] identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment

or finding against the debtor." *Id.* at 999; *see also McCartney*, 106 F.3d at 510; *W.R. Grace & Co. v. Chakarian* (*In re W.R. Grace & Co.*), 386 B.R. 17, 36 (Bankr. D. Del. 1994).

28.     Courts have similarly found "unusual circumstances" where the claims against the non-debtors and debtor are "inextricably woven." *In re The 1031 Tax Group, LLC*, 397 B.R. 670, 684 (Bankr. S.D.N.Y. 2008) (internal quotations omitted).

29.     And courts have determined "unusual circumstances" exist, where without the protection of the stay, "any effort at reorganization of the debtor will be frustrated." *A.H. Robins*, 788 F.2d at 1008.

30.     In the present matter, "unusual circumstances" warrant the extension of the automatic stay to the Covered Parties to prevent the diminution of the Debtor's estate and protect the Debtor's ability to pursue a successful reorganization.

31.     First, because the Debtor and Covered Parties participate in a central and shared insurance program, any Abuse Action against a Covered Party will inevitably require the depletion of the Debtor's insurance coverage to the detriment of the Debtor's bankruptcy estate. Stated another way, when Abuse Actions are asserted against a Covered Party and the Covered Party seeks insurance coverage, the Covered Party will be seeking to utilize assets that are both property of the estate and an asset of the Covered Party. Therefore, any Abuse Action seeking damages from a Covered Party would be seeking to recover money from the Debtor's estate, which would or otherwise should be prohibited by the automatic stay.

32.     Second, due to the nature of the Abuse Actions and the relationship between the Debtor and Covered Parties, any Abuse Action against a Covered Party may expose the Debtor to collateral estoppel, adverse precedent, vicarious liability, or imputed admissions if the litigation continues. *See A.H. Robins*, 788 F.2d 999 at 1007-08; *In re Plan 4 College, Inc.*, 2009 Bankr.

LEXIS 3193, 4-5 (Bankr. D. Md. 2009); *see also*, *In re Lomas Fin. Corp.*, 117 B.R. 64, 66–67 (S.D.N.Y. 1990) (it was not possible for the debtor "to be a bystander to a suit which may have a $20 million issue preclusion effect against it").

33.      Third, commencement and prosecution of an Abuse Claim against a Covered Party will necessarily divert key Debtor personnel from the reorganization process and, as a result, undermine the administration of the estate and the ability of the Debtor to successfully consummate a plan of reorganization *See In re Continental Airlines*, 177 B.R. at 479, 481; *In re Rickel Home Centers, Inc.*, 199 B.R. 498, 501 (Bankr. D. Del. 1996).

34.      Finally, allowing Abuse Actions to proceed against any Covered Party would expose the Debtor to the risk of cross-claims for indemnification and contribution, which in turn would necessarily require the Debtor's participation in any Abuse Claim against a Covered Party.

35.      Any one of these factors alone is cause for relief. Given that all of them exist in this case, the Court should extend the automatic stay provisions of sections 105(a) and 362 of the Bankruptcy Code to bar any pursuit of an Abuse Action against any Covered Party.

**II.      The extension of the automatic stay is considered under the standards of issuing a preliminary injunction.**

36.      After establishing that the extension of the automatic stay is appropriate due to "unusual circumstances," the request to extend the automatic stay is considered under the standards applicable to issuing a preliminary injunction. *In re Cornus Montessori, LLC*, 2021 Bankr. LEXIS 1023 (Bankr. E. D. Va. 2021); *see also A.H. Robins*, 788 F.2d at 1008.

37.      A party seeking a preliminary injunction must establish that the party is (a) likely to succeed on the merits, (b) likely to suffer irreparable harm in the absence of preliminary relief, (c) that the balance of equities tips in its favor, and (d) that an injunction is in the public interest. *Id*.

A.      **The Debtor is likely to succeed on the merits.**

38.      This factor in the bankruptcy context requires the Debtor to demonstrate it has a reasonable likelihood of a successful reorganization. *Official Comm. Of Asbestos Claimants v. Bestwall (In re Bestwall)*, No. 3:20-cv-103-RJC, 2022 U.S. Dist. LEXIS 2981, at *22 (W.D.N.C. Jan. 6, 2022) (citing *Chicora Life Ctr., LC v. UCF 1 Trust 1 (In re Chiocora Life Ctr., LC*, 553 B.R. 61, 66 (Bankr. D.S.C. 2016); *In re Brier Creek Corporate Ctr. Assocs. Ltd.*, 486 B.R. 681, 696 (Bankr. E.D.N.C. 2013); *Litchfield Co. Ltd. P'ship v. Anchor Bank (In re Litchfield Co. Ltd. P'ship*, 135 B.R. 797, 807 (W.D.N.C. 1992)).

39.      While recognizing this is the earliest of stages of this Chapter 11 Case, the Debtor submits it has a reasonable likelihood of a successful reorganization, because: (a) the Debtor and Covered Parties have substantial legacy and current insurance coverage for Abuse Actions; and (b) the Debtor has sufficient other assets to satisfy confirmation requirements, consistent with other similarly situated dioceses that have sought to reorganize under chapter 11 of the Bankruptcy Code.

40.      Accordingly, the Debtor has a reasonable likelihood of a successful reorganization, and this factor is satisfied.

B.      **The Debtor would suffer irreparable harm unless the automatic stay is extended to the Covered Parties with respect to Abuse Actions.**

41.      Actions against a non-debtor should be stayed where allowing them to proceed would adversely impact the debtor's reorganization. *See, e.g., A.H. Robins*, 788 F.2d at 1002 citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d. Cir. 1984) ("An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."); *New Horizon of N.Y., LLC v. Jacobs*, 231 F.3d 143, 151 (4th Cir. 2000);

*Travelstead v. Velazquez (In re Travelstead)*, 250 B.R. 862, 866 (D.Md.2000). In the context of bankruptcy proceedings, it is enough that any action sought to be avoided would "burden, delay or otherwise impede the reorganization proceeding, or if a stay is necessary to preserve or protect the debtor's estate and reorganization prospects." *In re Alert Holdings, Inc.*, 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992).

42.     Simply put, the stay requested in this Motion is essential to the orderly conduct of proceedings and achieving a global resolution, and any litigation directly affecting the Debtor is antithetical to fundamental bankruptcy policies, such as the maximization of value and equal treatment of similarly situated creditors. In fact, it is hard to see how bankruptcy could achieve any of its goals without a stay to prevent an "uncontrollable scramble for [the debtor's] assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor." *A.H. Robins*, 788 F.2d at 998 (4th Cir. 1986); *see also In re Johns-Manville Corp.*, 31 B.R. 627, 628 (S.D.N.Y. 1983) ("The pendency of thousands of asbestos claims against the debtor, lodged as separate proceedings in innumerable courts, is a textbook example of the kind of threat for which the automatic stay provision was designed."); *In re Muralo Co., Inc.*, 301 B.R. 690, 701 (Bankr. D.N.J. 2003) (noting that invoking the automatic stay to help address "the extraordinary turmoil and expense of administering" a widespread mass tort litigation defense . . . "would seem to be thoroughly consistent with the purposes of [section] 362(a)").

43.     Here, in the absence of the relief requested, there will be an uncontrollable scramble for one of the Debtor's most significant assets—its current and legacy insurance assets—with the

very likely prospect of a few creditors recovering at the expense of all similarly situated creditors, irreparably harming the Debtor's prospects of reorganizing under the Bankruptcy Code and all creditors' prospects of obtaining an orderly, reasonable, and equitable outcome under a plan of reorganization.

44.    Therefore, the Debtor submits this factor is satisfied.

**C.    The balance of equities favor the Debtor.**

45.    The denial of an extension of the automatic stay to the Covered Parties would not only impede the Debtor's attempt to reorganize, but it would also be to the detriment of any potential sexual abuse claimants.

### i.    Permitting the Abuse Actions to proceed will divert Debtor's key personnel from their duties and obligations in this Chapter 11 Case.

46.    Absent a stay of the Abuse Actions against all Covered Parties, the Debtor—and its prospects of successful reorganization—would suffer crushing and irreparable injury. The negative effect that any Abuse Action against a Covered Party would have on the Debtor's estate and reorganization efforts would not be limited to the direct costs of litigation, because Abuse Actions would also consume the time and attention of the Debtor's leadership and employees. In the absence of the relief sought in this Motion, as each additional Abuse Action is commenced against a Covered Party, the Debtor's management would be forced to dedicate ever increasing time and effort to defending any action against a Covered Party rather than operating the business to maximize the value of the Debtor's estate. Such diversion of time and attention will inevitably come at the expense of diverting efforts from maximizing the value of the Debtor's estate and ensuring that resources are properly devoted to productive, public-benefiting uses.

47.    Staying the Abuse Actions against the Covered Parties would allow the Debtor and its leadership to focus their attention on their businesses and on achieving a global resolution of

the this Chapter 11 Case for the benefit of all estate stakeholders, including the interests of the Claimants. *See In re Ionosphere Clubs, Inc.*, 111 B.R. 423, 435 (Bankr. S.D.N.Y. 1990) ("[t]he massive drain on [key officers'] time and energy at this crucial hour of plan formulation in either defending themselves or in responding to discovery requests could frustrate if not doom their vital efforts at formulating a fair and equitable plan or reorganization"); *In re Calpine*, 365 B.R. 401, 412 (Bankr. S.D.N.Y. 2007) (enjoining actions against a non-debtor where the debtor's employee was "key to the restructuring and to the business and that [the debtor and employee] would suffer irreparable harm if he were distracted from his responsibilities in order to participate in the [ongoing] litigation"); *In re The Billing Res.*, Case No. 07-52890, Adv. No. 07-5156, 2007 WL 3254835, at *14 (Bankr. N.D. Cal. 2007) (granting injunction where, inter alia, "[t]he diversion of [d]ebtor's management—and [its president] in particular—in defending the [FTC] Enforcement Action during the next few months seriously threatens [d]ebtor's reorganization").

> **ii.      The Debtor would likely be forced to participate in any Abuse Actions to protect its own interests.**

48.      Where there is such identity of subject matter, issues, and parties that the debtor would be compelled to participate in the litigation in order to avoid the issue preclusive effect of findings of fact and law determined without its participation, courts have routinely extended the automatic stay to actions against non-debtors. *See In re Am. Film Techs.*, 175 B.R. at 850; *In re Lomas Fin. Corp.*, 117 B.R. at 66-67 (extending the stay to non-debtors because it was not possible for the debtor "to be a bystander to a suit which may have a $20 million issue preclusion effect against it"); *In re Johns-Manville Corp.*, 40 B.R. at 222-231 (affirming decision to stay action against non-debtors where "Debtor would be forced to participate actively in those actions in order to protect its interests" and "might also be collaterally estopped on issues of policy coverage and liability").

49.     The extension of the automatic stay is appropriate under these circumstances because, even if a claim of collateral estoppel or vicarious liability is ultimately defeated, the looming possibility that these doctrines might affect the Debtor's rights leaves it with little choice but to actively participate in any action against a Covered Party in order to effectively protect its own interests. *See In re Lomas Fin. Corp.*, 117 B.R. at 67. The existence of a bona fide possibility of preclusion on factual issues related to the Debtor's liability for alleged abuse establishes a basis to extend the stay. *See In re Am. Film Techs.*, 175 B.R. at 850 (citations omitted); *In re Lomas Fin. Corp.*, 117 B.R. at 66-67 (action alleging wrongdoing against debtor's officers stayed partly as a result of the threat of issue preclusion); *Sudbury, Inc. v. Escott* (*In re Sudbury, Inc.*), 140 B.R. 461, 463 (Bankr. N.D. Ohio 1992) (debtor's liability "*may*" be determined on collateral estoppel principles [by the fact determinations reached on same fact issues] in Plaintiffs' actions" against non-debtors) (emphasis added); *In re Johns-Manville Corp.*, 40 B.R. 219 (S.D.N.Y. 1984) (affirming decision to stay actions against debtor's insurance carriers partly because of concerns about issues preclusion).

50.     Judgment against a Covered Party would be tantamount to judgment against the Debtor with respect to any Abuse Action because the allegations arise out of the same operative factual allegations—the plaintiffs were abused and institutional defendants such as the Debtor and Covered Parties had actual or constructive notice of such abuse. If a Claimant succeeds in establishing liability on the part of any Covered Party such liability could be imputed to the Debtor. In this way, any Abuse Action against a Covered Party could substantially prejudice the Debtor by precluding it from relitigating any issues of fact or law determined in such a case regarding any Abuse Claim, including those issues that would be critical to the Debtor's defense. As a result, if any Abuse Action is allowed to proceed against a Covered Party, the Debtor may be denied the

15

opportunity to present its own defenses should it need to litigate any cross-claims for contribution and indemnification.

>    ### iii.    Abuse Claimants would still be permitted to pursue and recover upon Abuse Actions.

51.    While the relief sought in this Motion would prohibit the pursuit of Abuse Actions against Covered Parties, the relief would not prohibit recovery on Abuse Actions.

52.    To the contrary, the Abuse Actions would still be an integral part of this Chapter 11 Case and the Debtor's reorganization efforts. As a result, while Abuse Claimants would be required to participate in this Chapter 11 Case, Abuse Claimants would not be denied a recovery (and, in fact, the Debtor believes the relief sought in this motion will assure that **all** Abuse Claimants obtain a recovery, rather than few at the expense of the many).

53.    Accordingly, given the irreparable harm that would result to the Debtor's reorganization prospects, the Debtor submits the equities weigh in favor of the relief sought in this Motion.

>    ### D.    The extension of the automatic stay is in the public interest.

54.    Generally, public policy disfavors extending the automatic stay to non-debtors, absent unusual circumstances. *In re Cornus Montessori, LLC*, 2021 Bankr. LEXIS at 8; *see also In re Qimonda AG*, 482 B.R. 879, 896 (Bankr. E. D. Va. 2012).

55.    However, as explained above, the Debtor has demonstrated that it and this Chapter 11 Case meet the "unusual circumstances" requirement.

56.    Moreover, the relief sought in this Motion seeks to enable the Debtor to accomplish the paramount goals of the Bankruptcy Code, reasonable and equitable compensation to the Debtor's creditors and the reorganization of the Debtor.

57.     Achieving those paramount goals of the Bankruptcy Code will provide reasonable and equitable compensation to Abuse Claimants, provide finality for Abuse Claimants, and will preserve the ability of the Debtor to continue its mission and ministry, including its many charitable undertakings, into the future for the benefit of all within the geographic footprint of the Archdiocese of Baltimore.

58.     As a result, the Debtor submits that the extension of the automatic stay to Covered Partis in this Chapter 11 Case is in, rather than against, the public interest.

**III.      The Abuse Actions should be stayed, pursuant to sections 105(a) and 362(a) of the Bankruptcy Code.**

59.     Given the nature of the allegations levied against the Debtor in the Abuse Actions, it is likely that the same could be levied against any of the Covered Parties (and vice versa), and any Abuse Action that is allowed to go forward against a Covered Party would directly impact the Debtor's assets, liabilities, key personnel, and records, as well as the recovery of the Debtor's creditors during this Chapter 11 Case. Because the Debtor and Covered Parties share the same insurance coverage from which damages from any successful Abuse Action would be satisfied, allowing the Abuse Actions to go forward against the Covered Parties would create the proverbial "race to the courthouse" the automatic stay is designed to prevent.

60.     If the automatic stay is not extended to the Covered Parties, the Debtor and its estate will be irreparably harmed and the purposes and policies of the Bankruptcy Code will be frustrated, because, among other reasons: (a) the continued collection by creditors of debts owed to them by a Covered Party will deplete the estate's assets, thus causing an irreparable adverse impact on the estate to the detriment of other creditors; (b) the Debtor could be subjected to substantial and prejudicial collateral estoppel risks, which will effectively compel the Debtor to monitor and participate in any action in connection with any Covered Party; (c) judgments against any Covered

Party would increase the likelihood of a judgment against the Debtor—not only because of collateral estoppel issues, but also because of the possibility for a Covered Party to assert claims for contribution or indemnification against the Debtor; (d) any claim against a Covered Party is essentially a claim against the Debtor and will directly reduce the amount of proceeds available to the Debtor's estate to the detriment of other creditors; and (e) any action taken against a Covered Party will necessarily divert the Debtor's key personnel from the Debtor's reorganization efforts during its Chapter 11 Case, a time during which the Debtor needs the full attention of its principal officers. Thus, absent an extension of the stay to the Covered Parties, the Debtor, its estate, and its creditors will suffer real and substantial harm.

61.    The relief sought in this Motion has also been granted in other similar diocesan bankruptcy cases. *See, e.g.*, *In re Roman Catholic Diocese of Harrisburg*, No. 20-bk-00599 (Bankr. M.D. Pa. April 2, 2020) (Dkt. No. 222).

## RESERVATION OF RIGHTS

62.    Nothing contained in this Motion is intended or should be construed as an admission of the validity of any claim against the Debtor, a waiver of the Debtor's rights to dispute any claim, or an approval, assumption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code, nor does it waive its rights under the Code of Canon Law, or any applicable State or Federal law.

## NOTICE

63.    The Debtor has provided notice of the filing of this Motion to: (a) the Debtor's secured creditors; (b) the Debtor's 20 largest unsecured creditors; (c) those persons filing a notice of appearance and request for service as of the filing of this Motion; (d) the Office of the United States Trustee for the District of Maryland; and (e) all required governmental agencies. Notice of this Motion and any order entered in connection with this Motion will be served on all parties

required by Local Rule 2002-1. Due to the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtor respectfully submits that no other or further notice of this Motion is required.

### WAIVER OF MEMORANDUM OF LAW

64.　Pursuant to Local Bankruptcy Rule 9013-2, and because there are no novel issues of law presented in the motion and all applicable authority is set forth in this Motion, the Debtor respectfully requests that the Court waive the requirement that a motion be accompanied by a separate written memorandum of fact and law.

[Remainder of Page Intentionally Left Blank]

**WHEREFORE**, for the reasons set forth above, the Debtor respectfully requests that this Court enter an order, in substantially the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: September 29, 2023                                    Respectfully submitted,


                                           /s/ Catherine K. Hopkin
                                   Catherine K. Hopkin (Fed. Bar No. 28257)
**YVS LAW, LLC**
185 Admiral Cochrane Drive, Suite 130
Annapolis, MD 21401
Telephone:     443.569.0788
Facsimile:     410.571.2798
Email: chopkin@yvslaw.com

*-and-*

Blake D. Roth (*pro hac vice* pending)
Tyler N. Layne (*pro hac vice* pending)
**HOLLAND & KNIGHT LLP**
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone:     615.244.6380
Facsimile:     615.244.6804
Email: blake.roth@hklaw.com
            tyler.layne@hklaw.com

*-and-*

Philip T. Evans (Fed. Bar No. 11796)
**HOLLAND & KNIGHT LLP**
800 17th Street, NW, Suite 1100
Washington, DC 20006
Telephone:     202.457.7043
Email: philip.evans@hklaw.com

*Proposed Attorneys for the Debtor and Debtor In Possession*

## CERTIFICATE OF SERVICE

Epiq Corporate Restructuring, LLC will cause a true and correct copy of the foregoing to be served on all parties required to be served, with a certificate or affidavit of service to be filed subsequently, all in accordance with Local Rule 9013-4.

_____/s/ Catherine K. Hopkin_____
Catherine K. Hopkin (Fed. Bar No. 28257)
**YVS LAW, LLC**
185 Admiral Cochrane Drive, Suite 130
Annapolis, MD 21401
Telephone:    443.569.0788
Facsimile:     410.571.2798
Email: chopkin@yvslaw.com

*Proposed Attorneys for the Debtor and Debtor*
*In Possession*
