## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| In re: | Chapter 11 |
| ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE, | Case No. 23-16969 |
| Debtor.[1] | |

### NOTICE:

> MOVANT HAS ALSO FILED A MOTION TO SHORTEN THE TIME FOR RESPONSE AND/OR FOR AN EXPEDITED HEARING. IF THAT MOTION TO SHORTEN OR EXPEDITE IS GRANTED, THE TIME TO OBJECT AND/OR DATE FOR HEARING WILL BE CHANGED AS PROVIDED IN SUCH ORDER.

### DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS: (I) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNTS; (II) EXTENDING THE TIME TO COMPLY WITH, OR SEEK A WAIVER OF, CERTAIN UNITED STATES TRUSTEE REQUIREMENTS AND SECTION 345(b) OF THE BANKRUPTCY CODE; (III) AUTHORIZING THE DEBTOR TO CONTINUE EXISTING DEPOSIT PRACTICES; (IV) AUTHORIZING THE DEBTOR TO MAINTAIN INVESTMENT PRACTICES; (V) AUTHORIZING THE DEBTOR'S CONTINUED USE OF CREDIT CARDS; AND (VI) GRANTING RELATED RELIEF

The Roman Catholic Archbishop of Baltimore, the debtor and debtor in possession ("**Debtor**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), by and through its undersigned counsel, files this motion (this "**Motion**"), pursuant to sections 105(a), 345, 363, 364, 503, and 507 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of interim and final orders, substantially in the forms attached to this Motion as **Exhibit A** (the "**Interim Order**") and **Exhibit B** (the "**Final Order**," and together with the Interim Order, the "**Proposed**

---

[1] The last four digits of the Debtor's federal tax identification number are: 1535. The Debtor's principal place of business is located at 320 Cathedral Street, Baltimore, Maryland 21201.

*Orders*"): (i) authorizing the Debtor to continue to use its cash management system (the "***Cash Management System***"), bank accounts and investment accounts, as set forth below; (ii) extending the time to comply with, or seek a waiver of, certain bank and investment account related requirements of the Office of the United States Trustee (the "***U.S. Trustee***") and section 345(b) of the Bankruptcy Code; (iii) authorizing the Debtor to continue its existing deposit practices under the Cash Management System (subject to certain reasonable changes to the Cash Management System that the Debtor may implement); (iv) authorizing the Debtor to maintain investment practices; (v) authorizing the Debtor's continued use of credit cards; and (vi) granting other related relief. In support of the Motion, the Debtor relies on and incorporates by reference the *Informational Brief of the Roman Catholic Archbishop of Baltimore* (the "***Informational Brief***") and the *Declaration of John Matera in Support of First Day Motions* (the "***Matera Declaration***" and, with the Informational Brief, collectively, the "***First Day Informational Pleadings***"),[2] and respectfully represents as follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and *Standing Order 2012-05* from the United States District Court for the District of Maryland. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Rule 9013-6 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland (the "***Local Bankruptcy Rules***"), the Debtor consents to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] Capitalized terms used in this Motion and otherwise defined have the meanings ascribed to them in the First Day Informational Pleadings.

<u>BACKGROUND</u>

3.      On the date of this Motion (the "***Petition Date***"), the Debtor commenced this Chapter 11 Case. The Debtor is operating its business and managing its property as debtor in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Case, and no committees have been appointed or designated.

4.      A description of the Debtor's history, business operations, operational structure, the reasons for commencing the Chapter 11 Case, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in the First Day Informational Pleadings.

<u>REQUEST FOR EMERGENCY CONSIDERATION</u>

5.      Pursuant to Local Rule 9013-7 and Bankruptcy Rule 6003, the Debtor requests emergency consideration of this Motion. Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. As discussed in detail below and in the First Day Informational Pleadings, any delay in granting the relief requested could hinder the Debtor's operations and cause immediate and irreparable harm. As such, the Debtor believes that emergency consideration is necessary and requests that this Motion be heard at the Debtor's first day hearing.

<u>RELIEF REQUESTED</u>

6.      By this Motion, the Debtor requests entry of the Proposed Orders authorizing the Debtor to continue to use its Cash Management System in the ordinary course and granting related relief.

7.      Specifically, the Debtor seeks authority to: (i) maintain and continue to use the Bank Accounts and Investment Accounts (each as defined below) in the same manner and with existing account numbers, styles, and document forms; (ii) deposit funds in, and withdraw funds

3

from, the Bank Accounts and Investment Accounts by usual means, including check, wire transfer, automated clearinghouse ("**ACH**") transfer, draft, electronic fund transfer, centralized lockbox, or other items presented, issued, or drawn on the Bank Accounts; (iii) pay prepetition and ordinary course bank fees for the Bank Accounts and Investment Accounts; (iv) perform the Debtor's obligations under the Bank Accounts' and Investment Accounts' governing documents and agreements; (v) treat the Bank Accounts for all purposes as "debtor in possession" accounts; and (vi) maintain existing investment practices.

8.      To maintain the efficient operation of the Cash Management System during this case, the Debtor also requests its Banks (as defined below) be authorized and directed to continue to administer, service, and maintain the Bank Accounts and Investment Accounts, as the Banks were prepetition, without interruption and in the Debtor's ordinary course of business. In that regard, the Debtor seeks to continue to receive, process, honor, and pay (or to reissue, as may be necessary) all checks, drafts, wires, ACH transfers, electronic fund transfers, or other items presented, issued, or drawn on the Bank Accounts (collectively, the "***Disbursements***") on account of any claim this Court grants the Debtor approval to pay arising before, on, or after the Petition Date, and in reliance on the Debtor's representations of such authority, subject to the applicable Bank Accounts containing sufficient funds.

9.      Both here and in other first-day motions, the Debtor seeks authority to pay certain prepetition obligations. For some of these obligations, the Debtor issued Disbursements before the Petition Date that have yet to clear. For others, the Debtor will issue a Disbursement once it has Court authority to do so. The Debtor requests that the Banks be authorized to accept and honor all representations from the Debtor as to which of these Disbursements should be honored. If any Banks nevertheless dishonor Court-approved Disbursements, the Debtor requests authority to

issue replacement Disbursements consistent with the orders of this Court.

10.     In addition, certain bank accounts are maintained as part of the Debtor's cash management system that do not comply with the requirements of section 345(b) of the Bankruptcy Code. Specifically, one bank account is maintained on behalf of Catholic Review with WesBanco (the "***Catholic Review Account***") and one bank account is maintained with Bank of America for purposes of administering its school-lunch programs related to the Debtor's child-nutrition mission (the "***Child Nutrition Account***"). Each of WesBanco and Bank of America are highly-rated financial institutions, each of which is well-capitalized, financially stable, and insured by the Federal Deposit Insurance Corporation. As of the date of this Motion, the balances in each of the Catholic Review Account and Child Nutrition Account were below the amounts insured by the FDIC. Requiring the Debtor to transfer the Catholic Review Account or Child Nutrition Account when each is insured would place a needless administrative burden on the Debtor that would unnecessarily divert the attention of the Debtor's management and advisors at a critical juncture in the Chapter 11 Case. Accordingly, the Debtor requests that this Court waive or otherwise extend the time to comply with certain U.S. Trustee guidelines and section 345(b) of the Bankruptcy Code with respect to the Catholic Review Account and Child Nutrition Account.

11.     Continuity of the Cash Management System is critical to the Debtor's operations, but so is flexibility. To that end, the Debtor also requests authority to implement reasonable changes to the Cash Management System that the Debtor may deem necessary or appropriate in the ordinary course, including closing any Bank Account and establishing new bank accounts, and that the applicable Banks be authorized to honor such changes.

12.     In the ordinary course of business, the Debtor has made available for use "procurement cards" through American Express (the "***Credit Card***"), enabling certain of the

Debtor's authorized employees (the "**_Authorized Employees_**") to pay for expenses related to the Debtor's business for which employees would be reimbursed (*e.g.*, office supplies, advertisement expenses, and appropriate meeting expenses). As of the date of this Motion, the Debtor has thirty-four (34) Authorized Employees with a Credit Card, enabling Employees to pay for Debtor expenses in the ordinary course of business, without incurring personal charges and later seeking reimbursement from the Debtor. By this Motion, the Debtor requests authority to maintain the Credit Card and use of the Credit Card by Authorized Employees in the ordinary course of business.

### THE CASH MANAGEMENT SYSTEM

13.     The Cash Management System is an integrated network of bank accounts that is critical to the Debtor's operations during this case and, in turn, maximizing the value of the Debtor's estate. The Debtor has designed the Cash Management System to meet its operating needs, enable management to control and monitor funds, reduce administrative expenses by facilitating the movement of funds, and enhance the development of accurate account balances. The Debtor has maintained its Cash Management System for many years, and the cash management system has served as the primary funds flow mechanism for the Debtor's ordinary, usual, and essential business operations.

14.     As of the Petition Date, the Cash Management System includes nine (9) bank accounts listed on **<u>Exhibit C</u>** to this Motion (each a "**_Bank Account_**" and collectively the "**_Bank Accounts_**") located at four (4) commercial banks (collectively, the "**_Banks_**") used in the ordinary course of the Debtor's business. The Debtor routinely deposits, withdraws, and otherwise transfers money to, from, and between the Bank Accounts by various methods (collectively, the "**_Ordinary Transfer Methods_**"), including by checks, drafts, ACH transfers, and other electronic funds transfers. The following is an overview of the Cash Management System and related Bank

Accounts.

15.     The Debtor's primary operating accounts are held at PNC Bank. These include a primary operating account, a payroll disbursement account, an insurance disbursement account, and an account used to transfer funds to employee health savings accounts.[3] The Debtor maintains three accounts with M&T Bank. These include an account used to collect restricted gifts from special mailings, an account used for restricted gifts from the Debtor's Embracing Our Mission Capital Campaign, and an account used for the Newman Center, a catholic student ministry, at Towson University. The Debtor maintains an account with each of Bank of America and WesBanco Bank (together, the "***Unapproved Banks***") in connection with its school-lunch programs related to the Debtor's child-nutrition mission and Catholic Review, respectively.

### EXISTING BUSINESS FORMS AND CHECKS

16.     In the ordinary course of business, the Debtor uses a variety of checks, correspondence, and business forms. To minimize expenses to the Debtor's estate and avoid unnecessarily confusing the Debtor's employees and creditors, the Debtor believes it is appropriate to continue to use the existing stock of checks, correspondence, and other business forms (including, without limitation, letterhead, purchase orders, and invoices) (collectively, the "***Business Forms***") as such forms were in existence immediately before the Petition Date— without reference to the Debtor's status as debtor in possession—rather than disposing of the existing forms and delaying operations until new Business Forms are obtained, or requiring the Debtor to include a legend on Business Forms that would cause unnecessary confusion. After

---

[3] The primary operating account is the only one of these accounts that maintains a balance. The remaining three accounts with PNC typically maintain a balance of $0 and draw funds from the primary operating account on a regularly scheduled basis and then disburse these funds to their appropriate destinations.

#228573319_v3

existing Business Forms are depleted, but no later than forty-five (45) days from the Petition Date, the Debtor's Business Forms will identify the Debtor's status as debtor-in-possession.

### BANK FEES

17.     The Debtor incurs periodic service charges and other fees in connection with the maintenance of the Cash Management System, which fees and services are generally paid each month (the "**Bank Fees**"). The Debtor has historically incurred Bank Fees of approximately **$7,500** per month, which are debited from the respective Bank Account for which the Bank Fee was incurred. As of the Petition Date, the Debtor estimates that approximately **$7,500** in Bank Fees have accrued and remain unpaid and seeks permission to pay these Bank Fees and continue paying the Bank Fees in accordance with past practices.

### COMPLIANCE WITH SECTION 345(b) OF THE BANKRUPTCY CODE AND CERTAIN U.S. TRUST GUIDELINES

18.     The Debtor maintains a bank account at each of the Unapproved Banks. Neither of the Unapproved Banks is on the list of approved depository banks in this District. As set forth below, the Debtor seeks a waiver or an extension of the time to comply with certain U.S. Trustee guidelines and section 345(b) of the Bankruptcy Code with respect to the Bank Accounts held at the Unapproved Banks.

### INVESTMENT ACCOUNTS AND PRACTICES

19.     In the ordinary course of business, the Debtor maintains for investment purposes certain investment accounts holding, among other things, long-term assets, donor-restricted assets, trust funds, certain funds related to pension and retirement plans, and certain funds relating to the Debtor's Insurance Programs. As of the Petition Date, in the ordinary course of business, the funds pooled for investments are maintained in eleven (11) investment accounts (the "**Investment Accounts**"), all of which are maintained with PNC Bank (the "**Investment Bank**"),

8

which are listed on **Exhibit D** to this Motion. The Debtor also holds a beneficiary interest in three (3) trusts, though these trusts are not in the Debtor's name, and the funds from these trusts are listed in the Debtor's books as permanently restricted.

**CREDIT CARD PROGRAM AND AGREEMENTS**

20.     As set forth above, the Debtor has thirty-four (34) Authorized Employees who may utilize the Credit Card for purposes of incurring business expenses on behalf of the Debtor for which the Authorized Employees would otherwise be reimbursed. In the ordinary course of business, the Debtor reviews all charges made on the Credit Card and pays all authorized charges in the ordinary course of business. In the unlikely event an unauthorized charge is identified on the Credit Card, the Authorized Employee responsible for such unauthorized charge is responsible for reimbursing the Debtor for such charges.

**BASIS FOR REQUESTED RELIEF**

**I.      Continued use of the Cash Management System is essential to the Debtor's business operations and should be permitted.**

21.     Section 363(c)(1) of the Bankruptcy Code permits a debtor to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtor flexibility to operate its businesses without unnecessary creditor or court oversight. *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) (citing *United States ex rel. Harrison v. Estate of Deutscher (In re H & S Transp. Co.)*, 115 B.R. 592, 599 (M.D. Tenn. 1990)); *see also Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets."(citing *Roth Am.*, 975 F.2d at 952)). Included within the purview of section 363(c) of the

9

Bankruptcy Code is a debtor's ability to continue the "routine transactions" a debtor's cash management system requires. *See Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996) (indicating that a debtor is "generally authorized to continue operating its business," including performing "routine transactions necessitated by the [existing] cash management system.").

22.     Bankruptcy courts routinely permit chapter 11 debtors to continue using their existing cash management system. *See In re Columbia Gas Sys.*, 997 F.2d 1039, 1061 (3d Cir. 1993) (recognizing that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient."); *Charter Co. v. Prudential Ins. Co. of Am. (In re Charter Co.)*, 778 F.2d 617, 621 (11th Cir. 1985) (holding that allowing the debtor to use its prepetition "routine cash management system" was entirely consistent with applicable provisions of the Bankruptcy Code). In addition, in granting such relief, courts recognize that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in relevant part*, 997 F.2d 1039, 1061 (3d Cir. 1993). The requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (stating that a cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

23.     The Court may also rely on its equitable powers to grant the relief requested in this Motion. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C.

§ 105(a). Accordingly, the Court may authorize the continuation of the Cash Management System, because such relief is necessary for the Debtor to carry out its fiduciary duties under sections 1107(a) and 1108 of the Bankruptcy Code. Pursuant to sections 1107(a) and 1108, debtors in possession are fiduciaries holding the bankruptcy estate and operating the business for the benefit of their economic stakeholders. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Consistent with such fiduciary duties, courts have authorized payment of prepetition obligations where a sound business purpose justifies the payment of such claims.

24.    The Cash Management System is a customary and essential business practice of the Debtor and provides numerous benefits, including the ability to control and monitor funds and ensure availability of cash to fund operations. The value of the Debtor's estate cannot be maximized if the Cash Management System is substantially disrupted. Additionally, preserving a "business as usual" atmosphere and avoiding the unnecessary distractions that inevitably would be associated with any substantial disruption of the Cash Management System will facilitate the stabilization of the Debtor's operations.

25.    Parties in interest will not be harmed by the Debtor's maintenance of the existing Cash Management System, including the Bank Accounts, because the Debtor has implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred prior to the Petition Date. Specifically, with the assistance of the Debtor's professional advisors and consistent with prior practice, the Debtor will continue to maintain detailed records of all transfers of cash and record all transactions on applicable accounts. Therefore, the Debtor should be permitted to continue to manage its cash and transfer monies among the Bank Accounts in accordance with the Cash Management System.

#228573319_v3

## II.      Continued use of existing Bank Accounts and payment of Bank Fees should be permitted.

26.      Implementing the U.S. Trustee guidelines, including, without limitation, establishing one debtor in possession account for all estate monies required for the payment of taxes (including payroll taxes), closing all existing bank accounts and opening new debtor in possession accounts, maintaining a separate debtor in possession account for cash collateral, obtaining checks that bear the designation "debtor in possession," and referencing the bankruptcy case number and the type of account on such checks, would needlessly interrupt the Debtor's operations and impair the Debtor's efforts to preserve the value of its estate.

27.      Thus, the Debtor respectfully requests that the court authorize the Banks to continue to maintain, service, and administer the Bank Accounts as accounts of the debtor and debtor in possession, without interruption and in the ordinary course of business. In this regard, the Banks should be authorized to receive, process, honor, and pay any and all checks, ACH transfers and other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto. Notwithstanding the foregoing, any check, draft, or other notification that the Debtor advises the Banks to have been drawn, issued, or otherwise presented before the Petition Date may be honored by the Banks only to the extent authorized by order of the Court.

28.      The Debtor further requests that the Court authorize the Banks to accept and honor all representations from the Debtor as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated prior to or subsequent to the Petition Date.

29.      The Debtor also requests that, to the extent a Bank honors a prepetition check or other item drawn on any Bank Account that is the subject of the Motion either (a) at the direction

of the Debtor, (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as the result of an innocent mistake despite the above-described protective measures, such Bank will not be deemed to be liable to the Debtor or to the Debtor's estate on account of such prepetition check or other item honored post-petition. The Debtor respectfully submits that such relief is reasonable and appropriate, because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a court order or otherwise.

30.    In the ordinary course of business, the Banks charge, and the Debtor pays, honors, or allows the deduction from the appropriate Bank Account, certain Bank Fees. The Debtor respectfully requests that the Court authorize the Banks to (a) continue to charge the Debtor the Bank Fees and (b) charge-back returned items to the Bank Accounts, whether such items are dated prior to, on, or subsequent to the Petition Date, in the ordinary course of business.

31.    Although the Debtor is requesting to be excused from complying with the requirement that the Debtor close all Bank Accounts and open new debtor-in-possession bank accounts, the Debtor may determine, in its business judgment, that opening new bank accounts and closing existing Bank Accounts may be in the best interests of the estate. As such, the Debtor requests that nothing contained herein shall prevent the Debtor from opening any additional bank accounts, or closing any existing Bank Accounts, as the Debtor may deem necessary and appropriate in its sole discretion, so long as any new account is established at a bank insured with the FDIC and that is organized under the laws of the United States or any State therein, or, in the case of accounts that may carry a balance exceeding the insurance limitations set thereby, is on the U.S. Trustee's List of Approved Depositories for the Middle District of Pennsylvania.

**III.    The Debtor should be permitted to utilize existing Business Forms.**

32.    The Debtor uses numerous Business Forms in the ordinary course of its business.

#228573319_v3

As mentioned above, the Debtor requests authority to continue using its existing prepetition Business Forms without reference to the Debtor's status as debtor in possession or any other alteration, until the Business Forms are depleted.

33.    The Debtor will issue, and will instruct third parties issuing checks on its behalf to issue checks bearing the legend "Debtor in Possession" after the existing supply of checks is depleted or no later than forty-five (45) days from the Petition Date, whichever occurs first.

**IV.    The requested extension of time to comply with, or seek a waiver of, section 345 of the Bankruptcy Code and the U.S. Trustee Guidelines should be granted.**

34.    The U.S. Trustee Guidelines generally require chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository that agrees to comply with the requirements of the U.S. Trustee's office.

35.    Although the Unapproved Banks are not an authorized depository, they are domestically held, highly-rated financial institutions that are well-capitalized and financially stable. The Bank Accounts at the Unapproved Banks are also domestically held and insured by the Federal Deposit Insurance Corporation. Thus, the Debtor believes that any funds that are deposited in the Bank Accounts at the Unapproved Banks are secure.

36.    For the foregoing reasons, the Debtor requests a forty-five (45)-day extension to comply with the U.S. Trustee guidelines and section 345(b) of the Bankruptcy Code.

**V.    The Court should authorize the Debtor to continue to invest through the Investment Banks.**

37.    The Debtor respectfully requests authority to continue to maintain its investments and associated investment accounts with the Investment Banks.

38.    By maintaining its investments and associated investment accounts with the Investment Banks, the Debtor will be able to earn interest on excess cash, as contemplated by section 345(a) of the Bankruptcy Code, without incurring the administrative costs and compliance

14

risk associated with managing a portfolio of direct purchases of U.S. Government Securities. The majority of the Investment Accounts represent funds that are restricted in their use or are otherwise held in trust by the Debtor. For example, a substantial majority of the funds held in the Investment Accounts relate to the: (a) Lay Employees Retirement Plan (-4605); (b) Priest's Pension Funds (-4710); (c) Priest's Post Retirement Fund (-3175); (d) Health Benefits Trust (-6955); (e) General Insurance Trust (-8672); and (f) Self-Insurance Trust (-3159).

39.     Section 345(a) of the Bankruptcy Code authorizes deposit or investment of estate money, such as cash, as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). While section 345(b) of the Bankruptcy Code generally requires that, with respect to investments other than investments "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States," the estate must require a bond in favor of the United States secured by the undertaking of the U.S. Trustee-approved corporate surety, it allows the Court to dispense with this limitation "for cause." 11 U.S.C. § 345(b)(2).

40.     In determining whether the "for cause" standard has been met, the Court should consider a "totality of the circumstances," utilizing the following factors:

    (a)     the sophistication of the debtor's business;

    (b)     the size of the debtor's business operations;

    (c)     the amount of the investments involved;

    (d)     the bank rating (Moody's and Standard & Poor) of the financial institutions where the debtor in possession funds are held;

    (e)     the complexity of the case;

    (f)     the safeguards in place within the debtor's own business of insuring the safety of the funds;

(g)     the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;

(h)     the benefit to the debtor;

(i)     the harm, if any, to the estate; and

(j)     the reasonableness of the debtor's request for relief from section 345(b) requirements in light of the overall circumstances of the case.

*In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999); *see also In re Ditech Holding Corp.*, 605 B.R. 10, 17–18 (Bankr. S.D.N.Y. 2019).

41.     Here, to the extent that any of the Investment Accounts constitute estate property, the Debtor submits that cause exists under section 345(b) of the Bankruptcy Code to allow the Debtor to continue its Investment Accounts. The Investment Banks: (i) invest conservatively; (ii) have a very low expense ratio; and (iii) provide benefits to other non-debtor persons and entities, including retirees, parishes, schools, and other separately incorporated entities. Moreover, the Debtor's Investment Accounts are subject to certain limitations on withdrawals and a substantial portion of those funds represent restricted donations that must be used in accordance with donative intent and therefore cannot be used to satisfy general creditor claims. Therefore, requiring the Debtor to limit its investments to U.S. Government Securities would be administratively difficult, potentially expensive, and would be of limited utility in achieving section 345(b)'s purpose of protecting funds for the benefit of the Debtor's creditors. To do so, the Debtor would need to (a) arrange for the withdrawal of its investments, (b) hire new personnel or a third-party investment manager to oversee such investments, and (c) establish multiple new accounts to trade the securities and associated controls and procedures. The Debtor respectfully submits that it should be allowed to continue to invest through the Investment Banks.

42.     Other courts have granted similar relief. *See, e.g., In re Roman Catholic Diocese of Harrisburg*, No. 20-00599 (Bankr. M.D. Pa. June 10, 2020) [Dkt. No. 340]; *In re the Diocese*

16

*of Rochester*, No. 19-20905 (Bankr. W.D.N.Y. Sept. 19, 2019) [Dkt. No. 45]; *In re Roman Catholic Bishop of Great Falls, Montana, a Montana Religious Corporate Sole (Diocese of Great Falls-Billings)*, No. 17-60271 (Bankr. D. Mont. April 25, 2017) [Dkt. No. 59].

## VI.    The Court should authorize the Debtor's continued use of the Credit Card.

43.    Continued use of the Credit Card is essential to the Debtor's operations so that employees do not have to be issued cash or check books to carry out basic transactions in the ordinary course of business on the Debtor's behalf.

44.    As of the Petition Date, the Credit Card has an approximate balance due of **$96,000**. It is consistent with the Debtor's practice that the Credit Card balance be paid in full on a monthly basis. The Debtor proposes to continued use of the Credit Card subject to the terms and conditions of the Credit Card Agreement and the Proposed Orders.

45.    The Proposed Orders provide that (a) nothing in the Proposed Orders modifies or amends the Credit Card Agreement, and (b) the Debtor and American Express shall have the right to renew or not renew the Credit Card Agreement in accordance with its terms.

46.    The Debtor seeks to continue using its pre-petition Credit Card as opposed to obtaining new unsecured credit in the ordinary course of business under section 364(a) of the Bankruptcy Code. Similar relief has been approved in other diocesan bankruptcy cases across the country. *E.g.*, *In re Roman Catholic Diocese of Harrisburg*, No. 20-00599 (Bankr. M.D. Pa. June 10, 2020) [Dkt. No. 340]; *In re the Diocese of Rochester*, No. 19-20905 (Bankr. W.D.N.Y. Oct. 15, 2019) [Dkt. No. 98]; *In re Roman Catholic Church of the Archdiocese of Santa Fe*, No. 18-13027 (Bankr. D.N.M. February 7, 2019) [Dkt. No. 88].

### REQUESTED RELIEF SATISFIES BANKRUPTCY RULE 6003

47.    Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the

petition, grant relief regarding . . . a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ." Fed. R. Bankr. P. 6003(b); *see also Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (noting that courts can approve orders that allow payment of prepetition debt, which is necessary for the debtor to reorganize and restructure its debts and maximize the value of the bankruptcy estate).

48.     Failure to receive the authorization and other relief requested in this Motion during the first 21 days of the Chapter 11 Case would severely disrupt the Debtor's operations at this critical juncture. The Debtor submits that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor for the reasons set forth in this Motion in order for the Debtor to operate its businesses in the ordinary course, preserve the ongoing value of the Debtor's operations, and maximize the value of its estate for the benefit of all stakeholders. Accordingly, the Debtor submits that Bankruptcy Rule 6003 has been satisfied and the relief requested in this Motion should be granted.

## REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

49.     To implement the foregoing immediately, the Debtor respectfully requests a waiver of the notice requirements under Bankruptcy Rule 6004(a). Furthermore, to implement the foregoing immediately, the Debtor seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth above, uninterrupted use of the Cash Management System is essential to prevent potentially irreparable damage to the Debtor's operations, value, and ability to reorganize. Accordingly, the

Debtor submits that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

**RESERVATION OF RIGHTS**

50.     Nothing contained in this Motion is intended or should be construed as an admission as to the validity of any claim against the Debtor, a waiver of the Debtor's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. If this Court grants the relief requested in this Motion, any Court authorized payment is not an admission of the validity of any claim or a waiver of the Debtor's or any other party's rights to subsequently dispute such claim. In addition, authorization to pay the claims described in this Motion will not be deemed a direction to the Debtor to pay such claims.

**WAIVER OF MEMORANDUM OF LAW**

51.     Pursuant to Local Bankruptcy Rule 9013-2, and because there are no novel issues of law presented in the motion and all applicable authority is set forth herein, the Debtor respectfully requests that the Court waive the requirement that a motion be accompanied by a separate written memorandum of fact and law.

**NOTICE**

52.      The Debtor has provided notice of the filing of the Motion to: (a) the Debtor's secured creditors; (b) the Debtor's 20 largest unsecured creditors; (c) those persons filing a notice of appearance and request for service as of the filing of this Motion; (d) the Office of the United States Trustee for the District of Maryland; (e) the Banks and Investment Banks; and (f) all required governmental agencies. Notice of this Motion and any order entered in connection with this Motion will be served on all parties required by Local Rule 9013-1. Due to the urgency of the circumstances surrounding this Motion and the nature of the relief in it, the Debtor respectfully

19

submit that no further notice of this Motion is required.

      **WHEREFORE**, the Debtor respectfully requests entry of the Interim Order, and pending a final hearing, the Final Order, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: September 29, 2023          Respectfully submitted,

                                        /s/ Catherine K. Hopkin
                              Catherine K. Hopkin
                              **YVS LAW, LLC**
                              185 Admiral Cochrane Drive, Suite 130
                              Annapolis, MD 21401
                              Telephone:        443.569.0788
                              Facsimile:        410.571.2798
                              Email: chopkin@yvslaw.com

                              *-and-*

                              Blake D. Roth (*pro hac vice* pending)
                              Tyler N. Layne (*pro hac vice* pending)
                              **HOLLAND & KNIGHT LLP**
                              511 Union Street, Suite 2700
                              Nashville, TN 37219
                              Telephone:        615.244.6380
                              Facsimile:        615.244.6804
                              Email: blake.roth@hklaw.com
                                      tyler.layne@hklaw.com

                              *-and-*

                              Philip T. Evans (Fed. Bar No. 11796)
                              **HOLLAND & KNIGHT LLP**
                              800 17th Street, NW, Suite 1100
                              Washington, DC 20006
                              Telephone:    202.457.7043
                              Email: philip.evans@hklaw.com

                              *Proposed Attorneys for the Debtor and Debtor In Possession*

## CERTIFICATE OF SERVICE

Epiq Corporate Restructuring, LLC will cause a true and correct copy of the foregoing to be served on all parties required to be served, with a certificate or affidavit of service to be filed subsequently, all in accordance with Local Rule 9013-4.

/s/ Catherine K. Hopkin

Catherine K. Hopkin (Fed. Bar No. 28257)
**YVS LAW, LLC**
185 Admiral Cochrane Drive, Suite 130
Annapolis, MD 21401
Telephone:    443.569.0788
Facsimile:     410.571.2798
Email: chopkin@yvslaw.com

*Proposed Attorneys for the Debtor and
Debtor In Possession*

21