**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| In Re: | Case No. 23-16969-MMH |
| **ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE,** | Chapter 11 |
| Debtor. | |

**OBJECTION OF BALTIMORE GAS AND ELECTRIC COMPANY
TO THE DEBTOR'S <u>EMERGENCY</u> MOTION FOR ENTRY OF INTERIM
AND FINAL ORDERS (I) AUTHORIZING DEBTOR'S PROPOSED FORM OF
ADEQUATE ASSURANCE OF PAYMENT TO UTILITY COMPANIES UNDER
SECTION 366 OF THE BANKRUPTCY CODE, (II) ESTABLISHING PROCEDURES
FOR RESOLVING OBJECTIONS BY UTILITY COMPANIES, (III) PROHIBITING
UTILITY COMPANIES FROM ALTERING, REFUSING, OR DISCONTINUING
<u>SERVICE, AND (IV) GRANTING RELATED RELIEF</u>**

Baltimore Gas and Electric Company ("BGE"), by counsel, hereby objects to the

*Debtor's <u>Emergency</u> Motion For Entry of Interim and Final Orders (I) Authorizing Debtor's*

*Proposed Form of Adequate Assurance of Payment To Utility Companies Under Section 366 of*

*the Bankruptcy Code, (II) Establishing Procedures For Resolving Objections By Utility*

*Companies, (III) Prohibiting Utility Companies From Altering, Refusing, or Discontinuing*

*Service, and (IV) Granting Related Relief* (the "Utility Motion")(Docket No. 8), and sets forth the

following:

**<u>Introduction</u>**

The Debtor's Utility Motion improperly seeks to shift the Debtor's obligations under

Section 366(c)(3) from modifying the amount of the adequate assurance of payment requested by

BGE under Section 366(c)(2) to setting the form and amount of the adequate assurance of

payment acceptable to the Debtor. This Court should not permit the Debtor to shift its statutory

burden.

The Debtor seeks to have this Court approve the Debtor's form of adequate assurance of payment, which is a bank account containing $13,500 that supposedly equals two-weeks of the Debtor's utility charges, calculated as a historical average for the 2023 fiscal year (the "Bank Account"). The Court should reject the Debtor's proposed Bank Account because: (1) BGE bills the Debtor on a monthly basis and provides the Debtor with generous payment terms pursuant to applicable state-law tariffs, rules or regulations, and a two-week account is not sufficient in amount or in form to provide BGE with adequate assurance of payment even if that account contained two-weeks of charges on behalf of BGE; (2) Section 366(c) of the Bankruptcy Code specifically defines the forms of adequate assurance of payment in Section 366(c)(1), none of which include a segregated bank account; and (3) even if this Court were to improperly consider the Bank Account as a form of adequate assurance of payment for BGE, the Court should reject it as an insufficient form of adequate assurance of payment for the reasons set forth in Section A.1. of this Objection.

BGE is seeking a two-month cash deposit in the amount of $9,300 from the Debtor, which is an amount that BGE is authorized to obtain pursuant to applicable state law. Based on all the foregoing, this Court should deny the Utility Motion as to BGE because the amount of BGE's post-petition deposit request is reasonable under the circumstances and should not be modified.

### Facts

### Procedural Facts

1.      On September 29, 2023 (the "Petition Date"), the Debtor commenced its case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") that is now

2

pending with this Court.  The Debtor continues to operate its business and manage its properties

as a debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

## The Utility Motion

2.      On the Petition Date, the Debtor filed the Utility Motion.

3.      On October 4, 2023, the Court entered the *Interim Order (I) Authorizing Debtor's*

*Proposed Form of Adequate Assurance of Payment To Utility Companies Under Section 366 of*

*the Bankruptcy Code, (II) Establishing Procedures For Resolving Objections By Utility*

*Companies, (III) Prohibiting Utility Companies From Altering, Refusing, or Discontinuing*

*Service, and (IV) Granting Related Relief* (the "Interim Utility Order")(Docket 46).  The Interim

Utility Order set the final hearing on the Utility Motion to take place on November 6, 2023 at

10:00 a.m.

4.      On October 4, 2023, the Debtor filed the *Notice of Final Hearing on Debtor's*

*First-Day Motions and Objection Deadline* (Docket No. 53) which set a deadline of October 25,

2023 to file objections to first-day motions, including the Utility Motion.

5.      The Debtor seeks to avoid the applicable legal standards under Sections 366(c)(2)

and (3) by seeking Court approval for its own form of adequate assurance of payment, which is

the Bank Account containing $13,500 that supposedly equals two-weeks of utility charges,

calculated as a historical average for the 2023 fiscal year.  Utility Motion at ¶¶ 10, 13.

6.      The Debtor refers to the monies contained in the proposed Bank Account on

behalf of each of the Debtor's utility providers as an "Adequate Assurance Deposit."  Utility

Motion at ¶ 13.  Monies contained in an escrow account controlled by a customer of a utility

such as the proposed Bank Account are not recognized as a "cash deposit" provided by a

customer to a utility by any public utility commission.  Additionally, Section 366(c) of the

3

Bankruptcy Code specifically defines the forms of adequate assurance of payment in Section 366(c)(1), none of which include a segregated utility bank account.  Simply put, the Debtor is not proposing to provide BGE with a cash deposit as adequate assurance of payment pursuant to Section 366(c) of the Bankruptcy Code.

7.      Even if the Bank Account contained approximately two weeks of utility charges on behalf of BGE, the Bank Account would not be acceptable to BGE and should not be considered relevant by this Court because Sections 366(c)(2) and (3) do not allow the Debtor to establish the form or amount of adequate assurance of payment.  Under Sections 366(c)(2) and (3), this Court and the Debtor are limited to modifying, if at all, the amount of the security sought by BGE under Section 366(c)(2).

8.      The Utility Motion does not address why this Court should consider modifying, if at all, the amount of BGE's adequate assurance request pursuant to Section 366(c)(2).  Rather, without providing any specifics, the Utility Motion merely states that the Bank Account and "in conjunction with the Debtor's ability to pay for future Utility Services in the ordinary course of business (collectively, the "Proposed Adequate Assurance") and any deposits held by the Utility Companies," constitutes sufficient adequate assurance of future payment to the Debtor's utility companies.  Utility Motion at ¶ 14.  Any consideration of prepetition deposits held by the Debtor's utility providers prior to the recoupment of prepetition deposits against prepetition debt pursuant to Section 366(c)(4) of the Bankruptcy Code does not make sense because the Debtor does not know if any prepetition deposit amounts will remain after recoupment.

**Facts Regarding BGE**

9.      BGE provided the Debtor with prepetition utility goods/services and has continued to do so for the Debtor post-petition.

4

10.     Under BGE's billing cycle, the Debtor receives approximately one month of utility service before BGE issues a bill for such service.  If the Debtor fails to pay the bill within approximately 20 days after the bill is issued, a past due notice is issued and a late fee is subsequently imposed on the account.  If the Debtor fails to pay the bill after the issuance of the past due notice, BGE issues a notice that informs the Debtor that it must cure the arrearage within a certain period of time or its service will be disconnected.  Accordingly, under BGE's billing cycle, the Debtor could receive at least two-months of unpaid service before its service could be terminated for a post-petition payment default.

11.     In order to avoid the need to bring witnesses and have lengthy testimony regarding BGE's regulated billing cycle, BGE requests that this Court, pursuant to Rule 201 of the Federal Rules of Evidence, take judicial notice of the BGE billing cycle.  Pursuant to the foregoing request and based on the voluminous size of the applicable documents, the BGE web site links to the tariffs and/or state laws, regulations and/or ordinances can be obtained at:

BGE:
> Electric –
> https://www.bge.com/MyAccount/MyBillUsage/Pages/ElectricServiceRatesTariffs.aspx
> Gas –
> https://www.bge.com/MyAccount/MyBillUsage/Pages/GasServiceRatesTariffs.aspx

12.     Subject to a reservation of BGE's right to supplement its post-petition deposit request if additional accounts belonging to the Debtor are subsequently identified, BGE's post-petition deposit request is as follows:

| No. of Accts | Estimated Prepetition Debt | Deposit Request |
| --- | --- | --- |
| 7 | $5,296 | $9,300 (2-month) |

13.     BGE held a prepetition deposit in the amount of $6,798 that it recouped against the prepetition debt owing to BGE from the Debtor pursuant to Section 366(c)(4) of the

Bankruptcy Code.  Any deposit amount remaining after recoupment can be applied to BGE's post-petition deposit request.

## Discussion

### A.      THE UTILITY MOTION SHOULD BE DENIED AS TO BGE.

Sections 366(c)(2) and (3) of the Bankruptcy Code provide:

> (2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility;

> (3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

As set forth by the United States Supreme Court, "[i]t is well-established that 'when the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms.'" *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004) (*quoting Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.,* 530 U.S. 1, 6, 120 S. Ct., 1942, 147 L. Ed. 2d 1 (2000)). *Rogers v. Laurain (In re Laurain)*, 113 F.3d 595, 597 (6th Cir. 1997) ("Statutes . . . must be read in a 'straightforward' and 'commonsense' manner.").  A plain reading of Section 366(c)(2) makes clear that a debtor is required to provide adequate assurance of payment satisfactory to its utilities on or within thirty (30) days of the filing of the petition.  If a debtor believes the **amount** of the utility's request needs to be modified, then the debtor can file a motion under Section 366(c)(3) requesting the court to modify the **amount** of the utility's request under Section 366(c)(2).

In this case, the Debtor filed the Utility Motion to improperly shift the focus of its obligations under Section 366(c)(3) from modifying the amount of the adequate assurance of

payment requested under Section 366(c)(2) to setting the form and amount of the adequate assurance of payment acceptable to the Debtor.  Accordingly, this Court should not reward the Debtor for its failure to comply with the requirements of Section 366(c) and deny the Utility Motion as to BGE.

      1.      **The Debtor's Proposed Bank Account Is Not Relevant And Even If It Is Considered, It Is Unsatisfactory Because It Does Not Provide BGE With Adequate Assurance of Payment.**

This Court should not even consider the Bank Account as a form of adequate assurance of payment because: (1) It is not relevant because Section 366(c)(3) provides that a debtor can only modify "the amount of an assurance of payment under paragraph (2)"; and (2) The Bank Account is not a form of adequate assurance of payment recognized by Section 366(c)(1)(A).  Moreover, even if the Court were to consider the Bank Account, the Bank Account is an improper and otherwise unreliable form of adequate assurance of future payment for the following reasons:

1. Unlike the statutory approved forms of adequate assurance of payment, the Bank Account is not something held by BGE.  Accordingly, BGE would have no control over how long the Bank Account will remain in place.

2. In order to access the Bank Account, BGE would have to incur the expense to draft and serve a disbursement request possibly litigate the demand if the Debtor refuses to honor a disbursement request.

3. It is underfunded from the outset because BGE issues monthly bills and by the time a default notice is issued the Debtor will have received approximately 60 days of commodity or service.  Accordingly even if BGE attempted to access Bank Account, it will be only cover one half of the past due charges and none of the additional charges for utility service/goods provided after the past due charges were incurred.

4. The Debtor may close the Bank Account before all post-petition utility charges are paid in full.

5. The Debtor fail to state whether draws from the Bank Account would be limited to two-week amounts.

Accordingly, the Court should not approve the Bank Account as adequate assurance for BGE because the Bank Account is: (a) not the **form** of adequate assurance requested by BGE; (b) not a form recognized by Section 366(c)(1)(A); and (c) an otherwise unreliable form of adequate assurance.

### 2. The Utility Motion Should Be Denied As To BGE Because the Debtor Has Not Set Forth Any Basis For Modifying BGE's Requested Deposit.

In the Utility Motion, the Debtor fail to address why this Court should modify the amount of BGE's request for adequate assurance of payment.  Under Section 366(c)(3), the Debtor has the burden of proof as to whether the amount of BGE's adequate assurance of payment request should be modified.  *See In re Stagecoach Enterprises, Inc.*, 1 B.R. 732, 734 (Bankr. M.D. Fla. 1979) (holding that the debtor, as the petitioning party at a Section 366 hearing, bears the burden of proof).  However, the Debtor does not provide the Court with any evidence or factually supported documentation to explain why the amount of the BGE adequate assurance request should be modified.  Accordingly, the Court should deny the relief requested by Debtor in the Utility Motion and require the Debtor to comply with the requirements of Section 366(c) with respect to BGE.

### B. THE COURT SHOULD ORDER THE DEBTOR TO PROVIDE THE ADEQUATE ASSURANCE OF PAYMENT REQUESTED BY BGE PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE.

Section 366(c) was amended to overturn decisions such as *Virginia Electric and Power Company v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997), that held that an administrative expense, without more, could constitute adequate assurance of payment in certain cases.  Section 366(c)(1)(A) specifically defines the forms that assurance of payment may take as follows:

8

(i) a cash deposit;
(ii) a letter of credit;
(iii) a certificate of deposit;
(iv) a surety bond;
(v) a prepayment of utility consumption; or
(vi) another form of security that is mutually agreed upon between the utility and the debtor or the trustee.

Section 366 of the Bankruptcy Code was enacted to balance a debtor's need for utility services from a provider that holds a monopoly on such services, with the need of the utility to ensure for itself and its rate payers that it receives payment for providing these essential services. *See In re Hanratty*, 907 F.2d 1418, 1424 (3d Cir. 1990). The deposit or other security "should bear a reasonable relationship to expected or anticipated utility consumption by a debtor." *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986). In making such a determination, it is appropriate for the Court to consider "the length of time necessary for the utility to effect termination once one billing cycle is missed." *In re Begley*, 760 F.2d 46, 49 (3d Cir. 1985).

BGE bills the Debtor on a monthly basis for the charges already incurred by the Debtor in the prior month. BGE then provides the Debtor with 20 days to pay the bill before a late charge may be assessed, the timing of which is set forth in applicable state laws, tariffs, and/or regulations. Based on the foregoing state-mandated billing cycle, the minimum period of time the Debtor could receive service from BGE before termination of service for non-payment of post-petition bills is approximately two (2) months. Moreover, even if the Debtor timely pays its post-petition utility bills, BGE still has potential exposure of approximately 60 days or more based on its billing cycle. Furthermore, the amount of BGE's deposit request is the amount that the applicable public service commission, which is a neutral third-party entity, permits BGE to request from its customers. BGE is not taking the position that the deposit that it is entitled to

obtain under applicable state law is binding on this Court, but, instead is introducing that amount as evidence of the amount that the applicable regulatory entity permits BGE to request from its customers.

Despite the fact that BGE continues to provide the Debtor with crucial post-petition utility goods/services on the same generous terms that were provided prepetition, with the possibility of non-payment, the Debtor is seeking to deprive BGE of any adequate assurance of payment for which it is entitled to for continuing to provide the Debtor with post-petition utility goods/services. Against this factual background, it is reasonable for BGE to seek and be awarded the full security it has requested herein.

WHEREFORE, BGE respectfully requests that this Court enter an order:

1.    Denying the Utility Motion as to BGE;

2.    Awarding BGE post-petition adequate assurance of payment pursuant to Section 366 in the amount and form satisfactory to BGE, which is the form and amount requested herein; and

3.    Providing such other and further relief as the Court deems just and appropriate.

Dated: October 13, 2023          Respectfully submitted,

/s/ Megan E. Harmon
Megan E. Harmon, Esq.
Baltimore Gas and Electric Company
BGE Claims
110 West Fayette Street, 12th Floor
Baltimore, Maryland 21201
Telephone:  (410) 470-1305
Email:  megan.harmon@bge.com

and

Russell R. Johnson III
John M. Craig
Law Firm of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia  23103
Telephone: (804) 749-8861
E-mail:  russell@russelljohnsonlawfirm.com,
john@russelljohnsonlawfirm.com

*Co-Counsel for Baltimore Gas and Electric Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2023, a true and correct copy of the foregoing *Objection* was served via the Court's Electronic Case Filing System on these entities and individuals who are listed on the Court's Electronic Mail Notice List, and also via email:

Catherine Keller Hopkin
YVS LAW, LLC
185 Admiral Cochrane Drive, Suite 130
Annapolis, Maryland 21401
Email:  chopkin@yvslaw.com
*Debtor's Counsel*

Blake D. Roth
Tyler N. Layne
HOLLAND & KNIGHT LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Email:  blake.roth@hklaw.com, tyler.layne@hklaw.com
*Debtor's Counsel*

Philip T. Evans
HOLLAND & KNIGHT LLP
800 17th Street, NW, Suite 1100
Washington, D.C. 20006
Email:  philip.evans@hklaw.com
*Debtor's Counsel*

Hugh M. Bernstein
Office of the U.S. Trustee
101 West Lombard Street, Suite 2625
Baltimore, Maryland 21201
Email:  hugh.m.bernstein@usdoj.gov

/s/ Megan E. Harmon
Megan E. Harmon, Esq.
Baltimore Gas and Electric Company
BGE Claims
110 West Fayette Street, 12th Floor
Baltimore, Maryland 21201
Telephone:  (410) 470-1305
Email:  megan.harmon@bge.com