IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| In re:<br><br>ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE<br><br>Debtor.[1] | Case No: 23-16969-MMH<br>Chapter 11 |

**HARTFORD ACCIDENT AND INDEMNITY COMPANY AND
TWIN CITY FIRE INSURANCE COMPANY'S RESPONSE TO
(1) THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' APPLICATION TO
EMPLOY STOUT RISIUS ROSS, LLC AS ITS VALUATION EXPERT AND
(2) APPLICATION TO EMPLOY BURNS BAIR LLP AS SPECIAL INSURANCE
COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Hartford Accident and Indemnity Company ("Hartford A&I") and Twin City Fire Insurance Company ("Twin City") (collectively, "Hartford"), parties-in-interest in this chapter 11 case, respectfully respond to *The Official Committee of Unsecured Creditors' Application to Employ Stout Risius Ross, LLC as Its Valuation Expert* [Dkt. No. 438] and the *Application to Employ Burns Bair LLP as Special Insurance Counsel for the Official Committee of Unsecured Creditors* [Dkt. No. 448]. Hartford submits this response principally to ask the Court to withhold ruling on the applications while litigation over the constitutionality of the Maryland Child Victims Act, Md. Code Cts. & Jud. Proc. §5-117 ("CVA") works its way to the Maryland Supreme Court.

The importance of that issue to this bankruptcy case cannot be overstated. The Debtor itself has admitted that the only reason it filed for Chapter 11 protection in the first place was because of the CVA and its purported effect reviving numerous claims against the Debtor that

---

[1] The last four digits of the Debtor's federal tax identification number are: 1535. The Debtor's principal place of business is located at 320 Cathedral Street, Baltimore, Maryland 21201.

1

had otherwise long been time barred.² Thus, if the CVA is unconstitutional, as a Maryland state court recently held in a comprehensive 27-page Memorandum Opinion and Order – this entire Chapter 11 case may no longer serve any purpose. Even if the Debtor stays in bankruptcy, any reorganization plan will be dramatically different if the vast majority of the potential abuse claims fail as a matter of law.

This is not the first time that Hartford has raised concerns regarding the apparent rush to plan confirmation by some of the parties to this Chapter 11 case. In response to the Debtor's bar date motion, Hartford suggested that this Court might want to hold off setting a bar date because of the significant questions surrounding the constitutionality of the CVA and the Debtor's admission at the Section 341 Meeting of Creditors that the CVA is the sole reason it filed for bankruptcy in the first place. *See Hartford's Reply to the Official Committee of Unsecured Creditors' Response to Debtor's Motion for Order (I) Establishing Deadlines for Filing Proofs of Claim; (II) Approving Sexual Abuse Proof of Claim Form; (III) Approving Form and Manner*

---

² At the creditors' meeting, the Debtor's chief financial officer testified under oath that, absent the threat of liability for the abuse claims, there would be no reorganizational need at all:

> Q: And is it safe to say -- I was going to ask this later anyway when we got to the numbers -- but is it safe to say that absent survivor claims, the Archdiocese would not have had to file for bankruptcy?
>
> A: Correct.
>
> Q: And the secured debt, although significant in amount, and the other unsecured debt, by that I mean non-survivor unsecured debt, although very significant as well, those are things that the Archdiocese could have paid in full without bankruptcy support, right?
>
> A: Yes.

*See* Declaration of Annette P. Rolain ("Rolain Decl."), Ex. A, Excerpt of November 8, 2023 Meeting of Creditors Tr. 3:19-4:4.

2

*of Notice; and (IV) Approving Confidentiality Procedures* [Dkt. No. 257] at 2-3; Rolain Decl., Ex. A.

The Court elected to proceed, but it too expressed concerns regarding the efficient use of estate resources and noted its interest in how the litigation over the CVA develops:

> THE COURT: Right. And if we had a certain statute of limitations under Maryland law, I would probably agree with you. I know you've not had a case before me, but I like to move things because I think time is money, right, and the quicker we get through this process, the more money I get out of people and the stronger Debtor I have on the other side, which is what I want.
>
> But it was interesting to me, given the situation of the underlying state law that we're dealing with, that the Debtor chose a bar date that's on the lower end of all of those ranges you gave me in the charts, which was very helpful. But you know, when I read Hartford's response and they were talking about the litigation regarding the constitutionality of the state law, I actually thought, that might weigh in favor of a June 1 deadline because then the Debtor can just decide wait, maybe not start really thinking about these claims until it sees how the state law is progressing. And the creditors could do the same. If they want to just have their complaint and wait until May to file their proof of claim, that might be more efficient. I'm not sure the rush to a February bar date aligns with some of the uncertainty articulated by the insurance carriers.
>
> * * *
>
> THE COURT: Is that though – assuming that the professionals in this case, which I have every confidence they will do, kind of manage the case against our underlying facts. Is it too long to wait until June 1st if everyone's kind of doing the basic diligence on the claims, but being mindful of factors outside of the Bankruptcy Court that may be influencing those claims, and does it get us to a better position by June to know where we're heading? But I do want to be efficient with our resources and so you know, starting mediation, if there's a mediation program approved in this case, after June may not be a bad thing if there's more certainty for the parties at that point.

*See* Rolain Decl., Ex. B, Excerpt of December 18, 2023 Hearing Transcript at 20:6-21:2; 66:20-67:6.

Initial rulings on the constitutionality of the CVA demonstrate that the Court's concern was entirely warranted. On April 1, 2024, Judge Jeannie E. Cho of the Montgomery County

3

Superior Circuit Court held that the CVA is unconstitutional. To be sure, Judge Cho's ruling will not be the last word on this critical issue. Indeed, a different Circuit Court – this time in Prince George's County – recently ruled from the bench that the CVA is constitutional.[3] But Judge Cho's decision, set forth in a lengthy, thoughtful Opinion and Order, certainly calls into question whether the CVA will ultimately withstand constitutional scrutiny. Judge Cho's ruling is attached to the Rolain Declaration at Exhibit C.[4]

That scrutiny is forthcoming. Maryland federal courts either have been requested to certify, or are already in the process of certifying, the constitutionality of the CVA directly to the Maryland Supreme Court.[5] That Court will decide the issue, which may be dispositive of this entire Chapter 11 case, given the Debtor's stated reason for filing. And, given that the statute itself provides for direct certification to the highest court in the state, and the obvious importance of a definitive ruling to many pending lawsuits and bankruptcy matters, there is every reason to expect the Maryland Supreme Court to set briefing and argument dates to enable it to decide the matter expeditiously.

In the meantime, the professionals that the Committee seeks to retain would cause the estate to incur substantial costs that will largely, if not entirely, be unnecessary if Judge Cho's ruling is upheld or the CVA otherwise is found to be unconstitutional. For example, the Committee has requested that the Court authorize it to retain Ms. McNally of Stout Risius Ross

---

[3] *See Doe v. Roman Catholic Archbishop of Washington, et al.*, Case No. C-16-CV-23-0004497 (Md. Cir. Ct., Prince George's Cnty.)

[4] *See* Memorandum Opinion and Order (Apr. 1, 2024), *Schapelle v. Roman Catholic Archdiocese of Washington, et al.*, Case No. C-15-CV-23-003696 (Md. Cir. Ct., Montgomery Cnty.) (attached hereto as Rolain Decl., Ex. C).

[5] *See* Order (Apr. 5, 2024), *Doe v. The Church of Jesus Christ of Latter-Day Saints*, Civ. No. JKB-23-02900 (D. Md.) (attached hereto as Rolain Decl., Ex. D); *see* Letter from R. Jenner to Hon. Matthew J. Maddox (Mar. 19, 2024), *Bunker v. The Key School Inc., et al.*, Civ. No. 1-23-cv-02662 (D. Md.) (attached hereto as Rolain Decl., Ex. E).

LLC.  Ms. McNally's opinions regarding valuation are a foregone conclusion, though one could fairly question how she could estimate the "value" of claims for which legal viability is in doubt, and the utility of that estimation even if she could.  To Hartford's knowledge, she has been retained in sexual abuse bankruptcy cases only by creditors' committees and other claimant groups interested in pushing the highest possible valuations of their claims.   In every case that is focused on abuse claimants, her valuations have been exceedingly high and unbridled by a debtor's prepetition experience in the tort system.  Recently, McNally's work came under intense scrutiny in *In re The Diocese of Camden, New Jersey*, Case No. 20-21257 (JNP) (Bankr. D.N.J.), in which the carriers moved to exclude her testimony based on its lack of credibility.  (The bankruptcy court acknowledged the criticisms but allowed her to testify, saying the criticisms of her work went to the weight of her conclusions.)

In any event, the retention of Stout and Ms. McNally will be very expensive for the estate.  Ms. McNally was requested to perform similar tasks, including claim valuation, for the Official Committee of Unsecured Creditors in *In re Boy Scouts of America, Inc.*, No. 20-10343 (LSS) (Bankr. D. Del.).  Her firm sought $1,840,878.55 in final fees (not including fees for the contested confirmation hearing, as Ms. McNally was not called to testify).  In addition, Ms. McNally's performance of her proposed tasks in this case is likely to trigger additional work for both Committee and Debtor counsel, causing the Debtor to incur additional expense – work that the Committee's billing entries reflect has already begun:

| | | |
|---|---|---|
| 02/07/24 | B115 | Address insurance coverage and mediation questions relating to claim valuation and options to expedite resolution. |

\* \* \*

| | | |
|---|---|---|
| 02/13/24 | B120 | Analyze strategy considerations relating to the expediting of mediation through early valuation of survivor claims. |

\* \* \*

| | | |
|---|---|---|
| 02/16/24 | B150 | Analyze and respond to inquiries regarding effort to value claims and expedite mediation efforts. |
| | * * * | |
| 02/23/24 | B150 | Address questions and communications from survivor counsel on claim valuation initiatives designed to expedite mediation. |
| | * * * | |
| 02/28/24 | B115 | Review and revise draft summary of claim valuation strategy. |
| | * * * | |
| 02/28/24 | B190 | Analyze potential motion for claim valuation and strategic issues with same. |
| | * * * | |
| 02/28/24 | B310 | Evaluate issues regarding the Committee's claim valuation initiative. |

*See Monthly Fee Statement of Stinson LLP, as Counsel to the Official Committee of Unsecured Creditors for Services Rendered and Expenses Incurred for the Period of February 1, 2024 through February 29, 2024* [Dkt. No. 434, 434-1].

All of these charges, and the additional millions of dollars in fees that follow will be payable to professionals, not claimants, and most, if not all, of these charges may prove wholly unnecessary if the CVA does not survive judicial scrutiny. Simply stated, it makes little sense for the estate to begin to incur these substantial fees at this point in the case (as well as the additional, substantial fees for the Debtor and other parties in interest to retain their own valuation experts).

Likewise, the application to retain Burns Bair LLP meets a need that ultimately may not exist. Burns Bair is a Madison, Wisconsin-based insurance coverage firm that has been instrumental in preventing parties in interest from reaching complete solutions. While debtors, parishes, claimants and insurers have been able to come together to form consensual global settlements in well more than a dozen diocesan bankruptcy cases, *none* of the cases that Burns Bair identifies in paragraph 8 of its application (some of which are four years old) has led to a global settlement.

Burns Bair's track record suggests the Court should push pause before foisting this expense upon the estate, especially because coverage counsel will be largely unnecessary if the CVA is ultimately deemed unconstitutional and there are few, if any, valid claims to tender to insurers. That concern is heightened even further here because the firm is proposing to charge rates that are substantially higher than rates that the firm is currently charging in numerous other bankruptcy cases throughout the northeast. In *Rochester* ($662.50), *Rockville Centre* ($800), *Albany* ($700), *Buffalo* ($700), and *Ogdensburg* ($800), for example, the firm is charging average rates for the partners that are hundreds of dollars per hour lower than the average rate proposed for partners in this case ($990).

The estate has maintained that it has limited liquid resources. Rather than continue to forge ahead and burn those resources – resources that otherwise would be available to provide recovery to whichever claimants remain with valid claims – Hartford suggests it would be prudent for the Court to defer acting on these two retention applications until the Maryland Supreme Court resolves the constitutionality of the CVA.

Dated:  April 8, 2024                                   Respectfully submitted,

                                                                    */s/ James P. Ruggeri*
                                                                    James P. Ruggeri (Fed. Bar No. 21926)
                                                                    Joshua D. Weinberg (admitted *pro hac vice*)
                                                                    Annette P. Rolain (admitted *pro hac vice*)
                                                                    RUGGERI PARKS WEINBERG LLP
                                                                    1875 K Street NW, Suite 600
                                                                    Washington, DC  20006
                                                                    Tel: (202) 984-1400
                                                                    jruggeri@ruggerilaw.com
                                                                    jweinberg@ruggerilaw.com
                                                                    arolain@ruggerilaw.com

                                                                    and

                                                                    Philip D. Anker (admitted *pro hac vice*)
                                                                    WILMER CUTLER PICKERING HALE

7

AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
Tel: (212) 230-8890
philip.anker@wilmerhale.com

*Counsel for Interested Parties Hartford Accident and Indemnity Company and Twin City Fire Insurance Company*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 8th day of April, 2024, a true and correct copy of the foregoing document was filed and served via the Court's CM/ECF e-filing system on all parties of record. Additionally, Epiq Corporate Restructuring, LLC will cause a true and correct copy of the foregoing document to be served on all parties required to be served, with a certificate or affidavit of service to be filed subsequently, in accordance with Local Rule 9013-4.

Blake D. Roth, Esquire: blake.roth@hklaw.com
Catherine Keller Hopkin, Esquire: chopkin@yvslaw.com
Hugh M. (UST) Bernstein, Esquire: hugh.m.bernstein@usdoj.gov
Gary R. Greenblatt, Esquire: grg@cooncolelaw.com
Marc E. Shach, Esquire: mes@cooncolelaw.com
Andrew D. Freeman, Esquire: adf@browngold.com
Anthony May, Esquire: AMay@browngold.com
Geoffrey Grivner, Esquire: geoffrey.grivner@bipc.com
Nathan D. Adler, Esquire: nda@nqgrg.com
Diane C. Bristow, Esquire: dcb@nqgrg.com
Tyler N. Layne, Esquire: Tyler.Layne@hklaw.com
Christopher Scott Kunde, Jr., Esquire: scott.kunde@hklaw.com
Steven J Kelly, Esquire: skelly@gelaw.com
Nicholas R. Miller, Esquire: nick.miller@hklaw.com
Timothy P. Palmer, Esquire: timothy.palmer@bipc.com
Gordon Z. Novod, Esquire: gnovod@gelaw.com
Philip Tucker Evans, Esquire: philip.evans@hklaw.com,
Megan Harmon, Esquire: megan.harmon@bge.com
Richard L. Costella, Esquire: rcostella@tydings.com
Alan M. Grochal, Esquire: agrochal@tydings.com
Robert T. Kugler, Esquire: robert.kugler@stinson.com
Edwin H. Caldie, Esquire: ed.caldie@stinson.com
Andrew J. Glasnovich, Esquire: drew.glasnovich@stinson.com
Nicole Khalouian, Esquire: nicole.khalouian@stinson.com
Hannah Berny, Esquire: Hannah.berny@hklaw.com
Monique D. Almy, Esquire: MAlmy@crowell.com
Miranda H. Turner, Esquire: MTurner@crowell.com
Mark D. Plevin, Esquire: MPlevin@crowell.com
Irving E. Walker, Esquire: iwalker@coleschotz.com
J. Michael Pardoe, Esquire: mpardoe@coleschotz.com
Robert K. Jenner, Esquire: rjenner@jennerlawfirm.com
David K. Roberts: droberts2@omm.com
Bruce A. Anderson, Esquire: banderson@eaidaho.com
Ford Elsaesser, Esquire: felsaesser@eaidaho.com
Mark Pfeiffer, Esquire: mark.pfeiffer@bipc.com
Jonathan Schapp, Esquire: jschapp@goldbergsegalla.com
Sam J. Alberts, Esquire: sam.alberts@dentons.com
David F. Cook, Esquire: david.f.cook@dentons.com

Patrick C. Maxcy, Esquire: Patrick.maxcy@dentons.com
G. Calvin Awkward, Esquire: cawkward@goldbergsegalla.com
Gary K. Bahena, Esquire: garybahena@bahenalaw.com
Kevin Foreman, Esquire: kforeman@carltonfields.com
U.S. Trustee – Baltimore: ustpregion04.ba.ecf@usdoj.gov
Adam R. Durst, Esquire, adurst@goldbergsegalla.com
Samantha J. Hanson-Lenn, Esquire, Samantha.hansonlenn@stinson.com
Eric G. Korphage, Esquire, korphagee@whiteandwilliams.com
Matthew M. Weiss, Esquire, mweiss@phrd.com
John E. Bucheit, Esquire, jbucheit@phrd.com
Matthew G. Roberts, Esquire, mroberts@phrd.com
John Grossbart, Esquire, john.grossbart@dentons.com
Harris B. Winsberg, Esquire, hwinsberg@phrd.com
R. David Gallo, Esquire, dgallo@phrd.com
Todd C. Jacobs, Esquire, tjacobs@phrd.com
Patrick C. Maxcy, Esquire, patrick.maxcy@dentons.com
M. Keith Moskowitz, Esquire, keith.moskowitz@dentons.com
Siobhain P. Minarovich, Esquire, Minarovichs@whiteandwilliams.com
Robert H. Kline, Esquire, kliner@whiteandwilliams.com
Robert W. DiUbaldo, Esquire, rdiubaldo@carltonfields.com
Alex B. Silverman, Esquire, asilverman@carltonfields.com
Nora A. Valenza-Frost, Esquire, nvalenza-frost@carltonfields.com
Adam P. Haberkorn, Esquire, ahaberkorn@omm.com
Tancred V. Schiavoni, Esquire, tschiavoni@omm.com

>*/s/ James P. Ruggeri*
> James P. Ruggeri