### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND

In re:

ROMAN CATHOLIC ARCHBISHOP OF
BALTIMORE

                    Debtor.[1]

Case No:  23-16969-MMH
Chapter 11

## MOVING INSURERS' RESPONSE TO JOINT REQUEST FOR MEDIATION

Moving Insurers[2] respectfully submit this response to the *Joint Request for Mediation* [Dkt. No. 564] (the "Request") filed by The Roman Catholic Archbishop of Baltimore (the "Debtor") and the Official Committee of Unsecured Creditors (the "Committee"), which requests the Court's approval of a mediation between the Debtor and the Committee of "certain disputes regarding matters affecting the rights of constituents" of the Committee and the negotiation of a Plan of Reorganization to effectuate any agreement.

Moving Insurers object to the Request, which appears intended to use mediation privilege to negotiate a plan in secret without the participation of the insurers and without public scrutiny. Moving Insurers support a mediation that attempts to achieve a consensual settlement among *all* parties in interest, but object to a mediation process that shuts out the insurers and attempts to cloak the plan negotiations in mediation privilege.  The insurers have a right to participate, and

---

[1]      The last four digits of the Debtor's federal tax identification number are: 1535.  The Debtor's principal place of business is located at 320 Cathedral Street, Baltimore, Maryland 21201.

[2]      The Moving Insurers include: (1) Hartford Accident and Indemnity Company, Hartford Casualty Insurance Company, Hartford Fire Insurance Company and Twin City Fire Insurance Company (collectively, "Hartford"), (2) Employers Insurance Company of Wausau ("Wausau"), (3) Travelers Casualty and Surety Company formerly known as The Aetna Casualty & Surety Company, The Travelers Indemnity Company, St. Paul Fire and Marine Insurance Company, Northfield Insurance Company, and U.S. Fidelity and Guaranty Company (collectively, "Travelers"), (4) New Hampshire Insurance Company and National Union Fire Insurance Company of Pittsburgh, P.A. (collectively, "AIG"), (5) United States Fire Insurance Company ("U.S. Fire"), (6) Fireman's Fund Insurance Company and The American Insurance Company (collectively, "Fireman's Fund"), and (7) American Casualty Company of Reading, PA and The Continental Insurance Company as successor-in-interest to Glens Falls Insurance Company f/k/a Fidelity-Phoenix Insurance Company (collectively, "CNA").

the public has the right to know how the plan was "negotiated," particularly because the Debtor

must achieve a good faith finding from the Court.

Accordingly, the Court should disapprove the mediation in the format that the Debtor and

Committee have proposed.  Instead, the Court should require that the insurers be permitted to

participate in any mediation.  Moreover, numerous courts have recognized that mediation cannot

be used to shield any and all inquiry into critical negotiations from affected third parties and that

discovery relating to the mediation is not just appropriate but necessary, particularly where the

Debtor's good faith and the reasonableness of any settlement resulting from the mediation are at

issue.  The Court should also consider additional proposed mediators in addition to those

nominated in the Request, including David Geronemus, an esteemed mediator with vast

experience mediating mass tort insurance issues in the context of sexual abuse claims and

bankruptcies.  Finally, to the extent the Court determines that it is appropriate for any mediation

to proceed at this point, the Court should order full disclosure of any proposed mediator's

contacts as required of professionals under § 327 of the Bankruptcy Code and Bankruptcy Rule

9014 so that all parties in interest and the Court can ensure that any mediator the Court appoints

both possesses the requisite expertise and is a true neutral.

## ARGUMENT

**I.    The Request Seeks to Exclude the Insurers From Critical Aspects of the Claims
Evaluation Process and Plan Negotiations That Affect the Insurers' Rights.**

1.    Two aspects of this bankruptcy case are beyond dispute:  (1) the Debtor's

bankruptcy filing and proposed reorganization is a matter of great public interest; and (2) the

Debtor expects that its insurers will be a major source of funding for the sexual abuse claims to

be resolved pursuant to its plan of reorganization.

2.      Nevertheless, the Debtor and the Committee seek to exclude the insurers from any discussions regarding (i) how the abuse claims will be valued and resolved, and (ii) the construction of a Plan that would give effect to any agreements the Debtor and Committee may reach among themselves regarding the treatment of abuse claims.  By the Debtor's and Committee's own admission, the mediation is intended to address disputes that "relate[] to the viability and treatment of Survivor Claims and the form of any plan of reorganization to be proposed and ultimately confirmed in this bankruptcy case."[3]  Request ¶ 8.  Those disputes allegedly arise from or relate to "a series of contested matters relating to and arising out of the treatment of claims" asserted by abuse claim holders, which appears to contemplate claim objections or similar proceedings.  *Id.* ¶ 5.  Yet, the Debtor and the Committee propose that they, alone, should be permitted to mediate these issues concerning the validity, valuation and bankruptcy (and post-bankruptcy) treatment of the abuse claims.  Their evident goal is to devise a plan, in secret, without the involvement of the insurers, that they will then seek to confirm over the insurers' objections, arguing that the plan meets the "good faith" requirement of § 1129(a)(3) because it was developed in mediation, even while they assert that what occurred during those negotiations is not subject to discovery because of mediation privilege.  The insurers, in contrast, would be limited to a separate mediation that solely concerns issues in the pending adversary proceeding, *i.e.*, how much will the insurers be asked to pay to fund the Plan that the Debtor and the Committee seek to devise without any participation by the insurers.  *Id.* ¶ 8, n. 2.

3.      The Debtor and the Committee followed through on their proposal to isolate the insurers on June 4, filing a separate request for mediation in the adversary proceeding, candidly

---

[3]      The Committee, with the endorsement of the Debtor, sought this Court's blessing to have certain of those abuse claim holders describe their abuse and its impact in detail before this Court.  It is ironic that the same parties – the Committee and the Debtor – would claim a right to conceal the discussions aimed at addressing these abuse claims, including from the insurers that they contend are liable to pay those claims.

stating their intent was to limit the insurers' involvement to disputes "relating to the existence and extent of each Defendant's liability under the liability insurance policies and/or certificates described in the [Adversary] Complaint." *See Joint Request for Mediation* ¶ 7, *Roman Catholic Archbishop of Baltimore v. American Casualty Company of Reading, Pennsylvania*, Adv. Proc. 24-00072 [Adv. Dkt. No. 89].

4.    The Debtor's and Committee's attempt to resolve Plan-critical issues without any input from the insurers is improper, as the U.S. Supreme Court has made clear in its unanimous opinion issued today in the *Kaiser Gypsum* case.  From the outset, the Debtor has advised the Court that the insurers are integral to a successful reorganization.  The insurers have actively participated in this case (and other diocesan cases around the country).  Yet, the Debtor and the Committee seek to freeze out the insurers, denying them any role in resolving the underlying abuse claims or developing a confirmable Plan.  The end result will inevitably be confirmation litigation and appeals, precluding a prompt emergence from bankruptcy.

5.    This case follows a disturbing trend, one that the U.S. Supreme Court saw fit to examine in *Kaiser Gypsum*.  Under the guise of mediation, debtors in mass tort cases – often at the urging of the claimants committee – settle on a flawed valuation process that turns on problematic assumptions and/or relies on non-representative claims to arrive at inflated claim values.  The debtors agree to such a process precisely because, in the end, the debtors will not be picking up the tab for most, if any, of the inflated claims; the insurers will be.  Yet, the inflated claim values become a critical part of a proposed plan of reorganization, often including judicial findings that are intended to deprive the insurers of their contractual rights, all of which is drafted without any input from the insurers.  This dynamic leads to protracted plan-related

litigation, as courts have seen in recent diocesan cases, including *Diocese of Rochester*,[4] *Diocese of Syracuse*,[5] and *Diocese of Camden*.[6]  The Request suggests that the Debtor and Committee want to use that same playbook.

6.      A mediation that includes discussions concerning the validity, valuation, and treatment of the abuse claims obviously affects the insurers' potential obligations.  In fact, at the outset of the case, the Debtor advised the Court that insurers, in other diocesan cases, had funded substantial portions of the dollars used by trusts to pay abuse claims.  That insurers are parties in interest under § 1109(b) and entitled to participate in any discussions that affect their interests seems obvious from the plain language of the statute.  Indeed, Hartford previewed at the last status conference that it did not believe there were issues in mediation from which the insurers should be excluded, and the Court said it "tend[ed] to agree that all should be included, even if [the parties] don't agree, it's nice to have the information."[7]  And, if that were not obvious enough, today the United States Supreme Court confirmed that insurers have standing to be heard on any issue in the Chapter 11 proceedings, removing any doubt that where a debtor seeks to impose a financial responsibility on its insurers, those insurers have a voice:

> Bankruptcy reorganization proceedings can affect an insurer's interests in myriad ways.  A reorganization plan can impair an insurer's contractual right to control settlement or defend claims.  A plan can abrogate an insurer's right to contribution from other insurance carriers.  Or, as alleged here, a plan may be collusive, in violation of the debtor's duty to cooperate and assist, and impair the insurer's financial interest in inviting fraudulent claims.  The list goes on. . . . An insurer with financial responsibility for bankruptcy claims can be directly and adversely affected by the reorganization proceedings in these and many other ways, making it a 'party in interest' in those proceedings.

---

[4]      *In re The Diocese of Rochester*, Case No. 19-20905 (Bankr. W.D.N.Y.).
[5]      *In re The Roman Catholic Diocese of Syracuse, N.Y.*, Case No. 20-30663 (Bankr. N.D.N.Y.).
[6]      *In re The Diocese of Camden, N.J.*, Case No. 20-21257 (Bankr. D.N.J.).
[7]      *See* Status Conf. Hr'g Tr. 26:11-12 (Apr. 15, 2024) (attached hereto as Exhibit A to the Declaration of Annette P. Rolain ("Rolain Decl.")).

* * *

Section 1109(b) provides parties in interest a voice in bankruptcy proceedings.  An insurer with financial responsibility for bankruptcy claims is a "party in interest" that may object to a Chapter 11 plan of reorganization.

*Truck Insurance Exchange v. Kaiser Gypsum Co.*, No. 22-1079, 2024 WL 2853106, at *7, 9 (U.S. June 6, 2024).  The Court should not approve a fundamentally flawed mediation process that, contrary to the teachings of *Kaiser Gypsum*, excludes proper parties in interest, which will serve only to protract the process and compel a return to square one following appellate review.

7.      Unless the Debtor is prepared to waive the benefit of the insurance policies, the insurers' participation also is required by contract and black-letter law.  *See, e.g.*, *Snyder v. Chester Cnty. Mut. Ins. Co.*, 264 F. Supp. 2d 332, 337 (D. Md. 2003) ("A cooperation clause may be either an express condition or a covenant. . . . Strict compliance with an express condition is required to maintain the insurer's payment obligation.") (internal citations omitted); *Travelers Ins. Co. v. Godsey*, 260 Md. 669, 673 (Md. Ct. App. 1971) ("The contractual obligation to cooperate with the insurer includes the obligation to make a fair, frank and truthful disclosure to the insurer for the purpose of enabling it to determine whether or not there is a defense, and the obligation, in good faith, both to aid in making every legitimate defense to the claimed liability and to render assistance in the trial.") (internal citations omitted); *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 103 (4th Cir. 2013) (applying Maryland law and holding voluntary payment clause required insurer's consent before voluntarily making a payment, assuming an obligation, or incurring an expense at the risk of relinquishing coverage).  The Court should not approve a process that could be construed as encouraging the Debtor to ignore its contractual and legal obligations.  Authorizing the insurers to participate in any mediation process is necessary to ensure that the mediation process is fair,

6

neutral, and not misused to cloak collusive or otherwise improper agreements in confidentiality in a manner that is inconsistent with the Debtor's obligations to its insurers.

8.     The Court should reject any notion that the issues between the Debtor and the Committee are discrete from issues concerning the insurers.  In fact, the issues necessarily intersect, as perhaps shown most basically from the fact that the resolution of the abuse claims will necessarily affect how much is demanded from the insurers.  The Committee's recent motion to intervene in the adversary proceeding, premised on the assertion that the Committee's interests in insurance is "at odds with the Debtor's goals or issue positions," is further proof that the insurers should have a seat at the mediation table along with Debtor and the Committee because of the intertwined nature of all of the issues.[8]

9.     Moving Insurers repeatedly have informed the Debtor and this Court that they are prepared to participate in an appropriate mediation process.  The Court should ensure that the insurers have the opportunity to do so by declining the Request.

**II.     The Debtor Should Not be Permitted to Misuse Mediation Confidentiality.**

7.     The proposed mediation order is also improper because it could deprive Moving Insurers and other insurers of the opportunity to seek appropriate and necessary discovery.  More broadly, the proposed order also seeks to conceal how the Debtor and the Committee determine that the Debtor will acknowledge, validate and compensate abuse claims as part of its bankruptcy reorganization – a reorganization it concedes is driven by those very claims.  No doubt the Debtor will ask the Court to find both that the plan it proposes is put forth in good faith under §

---

[8]     The Official Committee of Unsecured Creditors' Motion to Intervene in Adversary Proceeding No. 24-00072, Dkt. No. 76 at 7, 8, *Roman Catholic Archbishop of Baltimore v. American Cas. Co. of Reading, Pa.*, Adv. Proc. No. 24-00072 (Bankr. D. Md. May 28, 2024) (stating that the Committee's goal "to obtain the largest possible return for unsecured creditors, the vast majority of whom are Survivors" is at odds with the Debtor's goal to "compromise or concede issues that reduce payments to Survivors in exchange for a more prompt and less expensive resolution of the Adversary Proceeding").

1129(a)(3) and that the procedures for the settlement trust to allow abuse claims are fair and reasonable under Bankruptcy Rule 9019.  By definition, those are fact-intensive findings based on the circumstances under which the plan is proposed.  In making their Request, the Debtor and Committee seek to prevent any scrutiny (and discovery) into those circumstances.  This is improper.  *See Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 513 (D. Del. 2005) ("[A] party should not be permitted to use the privilege to shield information which it has deliberately chosen to use offensively.").

8.     Rule 408 of the Federal Rules of Evidence does not preclude discovery of settlement discussions; it simply limits the introduction of such discussions for some purposes into evidence.  And where a debtor has used mediation to cloak settlement discussions in secrecy and then asks the court to bless the product of those discussions as proposed in good faith, courts have limited the mediation privilege.  For example, in *Boy Scouts of America*, the bankruptcy court held that the insurers and other parties in interest were entitled to discovery into the mediation process because the debtor put the mediation at issue as evidence of good faith:

> Debtors were quite candid at the hearing about the evidence that they will adduce at confirmation to meet this [Section 1129(c)(3) good faith] requirement.  Debtors are going to put into evidence the fact of mediation itself, the mediation order, the identity of the mediating parties, the identity of the mediators, the number of mediation sessions, and the dates of the sessions.
>                                     *   *   *
> In making the good faith determination courts must consider the totality of the circumstances focusing more to the process of plan development then the content of the plan.  Good faith is shown when the plan has been proposed for the purpose of reorganizing the debtor, preserving the value of the bankruptcy estate and delivering value to creditors.  Good faith has been found to be lacking if a plan is proposed with ulterior motives.
>                                     *   *   *
> First, debtors want to use the fact of mediation as evidence of good faith.  From the argument, it appears that the act of mediation may be the primary evidence debtors will induce to meet the good faith standard; as

8

such, they have put the mediation, at least with respect to good faith of the TDPs, at issue. . . . It cannot be the case that if a party is relying on the very fact of mediation to meet its standard of proof, that discovery is prohibited regarding the *bona fides* of the mediation. . . . Third, debtors do not suggest that evidence with respect to the negotiation of the trust distribution procedures is otherwise available from another source outside the mediation process; accordingly, I deny debtors' motion to the extent that debtors seek to shield [from] discovery communications, oral or written, regarding the trust distribution procedures, based on the mediation privilege.

*See* Transcript of Oct. 25, 2021 Telephonic Ruling at 7:9-14; 8:20-9:2; 13:13-15:7, *In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-10343 (LSS) (Bankr. D. Del. Oct. 26, 2021) (Dkt. No. 6798) (attached hereto as Rolain Decl., Ex. B).

9.    To be consistent with orders entered in other cases,[9] any mediation order in this case should include the following language, which is consistent with Federal Rule of Evidence 408 and is necessary to ensure that the Debtor and the Committee cannot cloak potentially collusive settlement discussions under the mantle of good faith mediation:

The provisions of Appendix G of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland pertaining to the "Confidentiality" of the Bankruptcy Dispute Resolution Program shall govern the mediation; provided, however, that if a Mediation Party (a) seeks to rely on the fact and/or outcome of the Mediation as evidence of its "good faith" under 11 U.S.C. § 1129(a)(3) and/or of the reasonableness of any settlement or any claims allowance procedures under any plan or trust distribution procedures under Fed. R. Bankr. P. 9019, or (b) or puts at issue any finding of good faith concerning the mediation made under 11 U.S.C. § 1129(a)(3), or of the reasonableness of any settlement or claims allowance procedures resulting from the mediation made under Fed. R. Bankr. P. 9019, in any subsequent actions concerning insurance coverage, the rights of other parties to seek discovery into, concerning, or related to the Mediation are preserved.

---

[9]    *See, e.g.*, Order (I) Appointing Mediators, (II) Referring Certain Matters to Mediation, and (III) Granting Related Relief ¶7, *In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-10343 (LSS) (Bankr. D. Del. June 9, 2020) (Dkt. No. 812) (attached hereto as Rolain Decl., Ex. C); Interim Order Referring Certain Matters to Mandatory Global Mediation ¶3, *In re The Roman Catholic Diocese of Albany, N.Y.*, Case No. 23-10244 (Bankr. N.D.N.Y. Nov. 28, 2023) (Dkt. No. 640) (attached hereto as Rolain Decl., Ex. D).

10.     Any discussions and/or documents exchanged that are relevant to a later good-faith inquiry, or to an inquiry into whether the agreed claims-allowance procedures were reasonable and consistent with the insurers' legal and contractual rights, should not be shielded from discovery.  *See*, *e.g.*, *Princeton Digit. Image Corp. v. Off. Depot Inc.*, C.A. No. 13-239-LPS, 2017 WL 3420947, at *2 (D. Del. Aug. 9, 2017) (admitting exhibits that relate to settlements for the purpose of establishing the plaintiff acted in bad faith in breaching an agreement); *Rader v. ShareBuilder Corp.*, 772 F. Supp. 2d 599, 605 (D. Del. 2011) (denying motion to dismiss based on Rule 408, finding if settlement letter was means by which defendant engaged in bad faith, then letter was potentially admissible to prove those separate wrongs); *Brocklesby v. U.S.*, 767 F.2d 1288, 1292 (9th Cir. 1985) (admitting, under Rule 408, a settlement agreement between the defendants – to which the plaintiffs were not a party – to establish the relationship between the parties and attack witness credibility); *Gunchick v. Fed. Ins. Co.*, No. CV 14-1162 RSWL, 2015 WL 1781467, at *2 (C.D. Cal. Apr. 20, 2015) (admitting, under Rule 408, settlement documents from a prior dispute between the parties to prove the affirmative defense of unclean hands); *In re Quigley Co., Inc.*, 437 B.R. 102, 153-54 (Bankr. S.D.N.Y. 2010) (finding waiver of Rule 408 and declining to seal settlement agreements that were part of a strategy conceived and executed in bad faith to manipulate claimant votes).

11.     Unless the Debtor is prepared to waive all rights to coverage, the Court also should not permit the Debtor to misuse mediation confidentiality to permit the disclosure of privileged and/or protected materials concerning the underlying claims, where such disclosure might prejudice the insurers' contractually guaranteed right to defend.  To the extent that the Debtor shares common interest privileged information with the Committee during the mediation that would harm the Debtor's defense of underlying claims, the insurers will have no way to

know whether their rights were violated, including whether the Debtor violated its contractual obligations to its insurers to assist them and cooperate with them in the defense of suits for which the Debtor seeks coverage.

12.     The Court should ensure that mediation is not used as a vehicle for the Debtor to covertly provide the Committee with sensitive and privileged defense information that would compromise the insurers' ability to defend the abuse claims or otherwise minimize liability.  Any mediation order consequently should include the following language:

> The Debtor shall not as part of the Mediation or otherwise provide the Committee or its counsel or any individual claimant or such claimant's counsel with any materials created or used in the defense and resolution of abuse claims that may be subject to an attorney client privilege, attorney work product privilege, common interest privilege (with Insurers or anyone else) or other rule of privilege or confidentiality, unless the Debtor first shares those materials with the Insurers and the Insurers consent to the disclosure of those materials.

13.     The cloak of confidentiality that the Debtor seeks should not be used as an end run around the common interest privilege.  It would be highly prejudicial to require the insurers to defend a claim or pay a judgment where sensitive common interest and/or joint defense materials relevant to the defense of the underlying claim has previously been disclosed to the Debtor's litigation adversaries.

## III.     The Court Should Require Fulsome Disclosures From the Proposed Mediators and Should Also Consider Alternative Candidates.

14.     Moving Insurers are disappointed that on the critical issues of the viability and treatment of abuse claims and plan negotiation issues, the Debtor and Committee offered mediators without receiving input from the insurers.  While the insurers previously heard Judge Faris's name mentioned, until the Request was filed, Moving Insurers were unaware that Debtor and the Committee were considering co-mediators, or that Brian Nash was in consideration.

11

Recent fee applications filed by the Debtor indicate that the Debtor and Committee have been considering co-mediator candidates since at least March 6, 2024,[10] and yet the Debtor never disclosed any of the candidates it considered, or any candidates suggested to it by the Committee at any point before their Request was filed.  In fact, when Hartford asked on April 2, the Debtor responded, "we have no specific mediators for your consideration at this juncture."[11]  That response, which the Debtor never amended, is disappointing.

15.    While Mr. Nash appears to be an experienced mediator with regard to medical malpractice and hospital malpractice cases, there is no suggestion that he has experience in mass tort, Chapter 11 bankruptcy cases.  The insurers (and the Court) should receive additional information to evaluate whether Mr. Nash has the proper experience.  This is particularly true because, while the insurers are open to considering Mr. Nash, there are perhaps other uniquely qualified candidates, such as, for example, David Geronemus, Esq. of JAMS, one of the nation's most experienced mediators in very complex matters who may be uniquely qualified to serve here given his experience in mediating sexual abuse-related liability and coverage issues arising out of other mass tort cases, including in the bankruptcy context.[12]

16.    With regard to Judge Faris, Moving Insurers have no information about how he proposes to execute the mediation and, despite Hartford's previous requests of the Debtor, Hartford has not been provided with an opportunity to speak to him.  Moving Insurers are aware that Judge Faris is a sitting bankruptcy court judge in the District of Hawaii with his own docket, so, logistically and practically, Moving Insurers have questions concerning how he intends to

---

[10]    *See Monthly Fee Statement of Holland & Knight LLP, for Allowance of Compensation for Services Rendered and Reimbursement of Expenses as Counsel to the Debtor for the Period of March 1, 2024 through March 31, 2024* [Dkt. No. 479] ("03/06/24  Blake Roth  Review communication from Committee counsel re: proposed additional mediator.  0.30.").

[11]    *See* Correspondence between B. Roth and J. Ruggeri (Mar. 28, 2024-Apr. 2, 2024) (attached hereto as Rolain Decl., Ex. E).

[12]    Mr. Geronemus's list of selected professional engagements is attached hereto as Rolain Decl., Ex. F.

conduct a Baltimore-based mediation and whether he can do so effectively given his other commitments and his physical location thousands of miles and many time zones removed from this Court.  This is a complicated case with complex issues that Moving Insurers believe would benefit from in-person mediation.  Moreover, the selection of Judge Faris without the input of the insurers, coupled with their proposed exclusion from mediation of the issues involving the valuation of claims and plan negotiations, again suggests that the Debtor and the Committee are using this proposed "separate" mediation as part of a larger strategy to effect a resolution without any input from the insurers, but which they will then ask the insurers to fund in large part, if not in whole.

17.     Notably, the Debtor and the Committee have not supplied the Court or the insurers with full disclosures of their proposed mediators' interests in accordance with Section § 327 of the Bankruptcy Code, implemented by Rule 2014(a) of the Federal Rules of Bankruptcy Procedure:

> The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).  Section § 327 of the Bankruptcy Code and Bankruptcy Rule 2014(a) do not expressly state whether a mediator is a "professional" that is subject to disclosure requirements, but bankruptcy courts have concluded that a mediator is a professional required to make fulsome Rule 2014 disclosures.  *See, e.g.*, *In re Smith*, 524 B.R. 689, 694 (Bankr. S.D. Tex. 2015) (holding mediators that play a central role in bankruptcy disputes should be governed by provision of code regulating employment of professional persons; citing standing orders from

13

various federal courts requiring Rule 2014 disclosures); *see also* Excerpt of Hr'g Tr. at 158:12-160:22, *In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-10343 (LSS) (Bankr. D. Del. May 20, 2020) (Dkt. No. 675) (attached hereto as Rolain Decl., Exhibit G) (holding request by insurers for Rule 2014 disclosures of potential mediators important to aid all parties in understanding any potential predisposed biases of candidates).  Particularly in a case where, as here, the parties appear to be rushing to mediate and to judgment, Rule 2014 disclosures are essential so that all parties involved, and the Court, can be assured of the mediators' disinterestedness, lack of bias, and impartiality.

18.    Moving Insurers submit that any decision on the Debtor and Committee's proposed mediators is premature.  At a minimum, the Court should order each proposed mediator to submit Rule 2014 disclosures, with an opportunity for Moving Insurers and the other insurers to object.

**IV.    The Debtor Should Produce Relevant Information as Part of the Process.**

19.    Finally, any order authorizing mediation should direct the Debtor to provide the insurers information that is vital to a successful mediation and, hopefully, a global resolution of this chapter 11 case.

20.    As part of a global mediation, the insurers need information to determine, for each claim, (i) the nature and extent of abuse, (ii) the existence of evidence to corroborate the claim, (iii) what additional evidence, if any, is available to determine the Debtor's potential legal liability for abuse (including information that could be relevant to defenses against such claim), and (iv) when the Debtor first learned of the abuse (or other abuse by the same perpetrator) and what steps the Debtor or others took to investigate any allegations of abuse.

14

21.     The proof of claim forms (and claimant supplements, where available) provide only some of this information.  In addition, while the Debtor has made some additional materials (of its own choosing) available, those materials are not complete.  The insurers need all of the files that pertain to perpetrators and any investigations of abuse including:  (i) all of the files and documents provided to the Maryland Attorney General as part of his investigation; (ii) the "bad boy" files regarding perpetrators that are referenced in the Maryland AG report; (iii) the so-called "secret files" maintained by the Archdiocese regarding alleged perpetrators; and (iv) the claim files maintained by the Gallagher Evelius & Jones law firm, which has represented the Debtor in investigations and lawsuits concerning abuse for decades.  While mediation can begin at a time that the Court deems appropriate, no global resolution can be achieved until the insurers have access to these critical documents.

## CONCLUSION

Moving Insurers respectfully request that the Court should deny the Request and should, instead, order that (i) the insurers are mediation parties who must be permitted to participate in any mediation involving claim and/or plan negotiations, (ii) the Debtor, the Committee, and the insurers must meet and confer regarding a revised proposed mediation order, to encompass all issues, and (iii) Judge Faris, Mr. Nash, and Mr. Geronemus should file Rule 2014 disclosures, to which any of the Debtor, the Committee, and any insurer may object.


Dated:  June 6, 2024                          Respectfully submitted,

                                              */s/ James P. Ruggeri*

                                              James P. Ruggeri (Fed. Bar No. 21926)
                                              Joshua D. Weinberg (admitted *pro hac vice*)
                                              Annette P. Rolain (admitted *pro hac vice*)
                                              RUGGERI PARKS WEINBERG LLP
                                              1875 K Street NW, Suite 600

Washington, DC  20006
Tel: (202) 984-1400
jruggeri@ruggerilaw.com
jweinberg@ruggerilaw.com
arolain@ruggerilaw.com

and

Philip D. Anker (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
Tel: (212) 230-8890
philip.anker@wilmerhale.com

*Counsel for Hartford Accident and Indemnity
Company, Hartford Casualty Insurance
Company, Hartford Fire Insurance Company
and Twin City Fire Insurance Company*

/s/ Sam J. Alberts
_____

Sam J. Alberts (D. Md. Bar No. 22745)
DENTONS US LLP
1900 K Street, NW
Washington, D.C. 20006
Tel: (202) 408-7004
sam.alberts@dentons.com

and

Patrick C. Maxcy (admitted *pro hac vice*)
Keith Moskowitz (admitted *pro hac vice*)
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, IL 60606-6361
Tel: (312) 876-8000
patrick.maxcy@dentons.com
keith.moskowitz@dentons.com

*Counsel for Travelers Casualty and Surety
Company formerly known as The Aetna
Casualty & Surety Company, The Travelers
Indemnity Company, St. Paul Fire and*

/s/ Adam R. Durst
_____

Jonathan Schapp (admitted *pro hac vice*)
Adam R. Durst (admitted *pro hac vice*)
Goldberg Segalla, LLP
665 Main Street
Buffalo, New York 14203
Tel: (716) 844-3474
jschapp@goldbergsegalla.com
adurst@goldbergsegalla.com

and

G. Calvin Awkward, III (Bar ID# 18652)
Goldberg Segalla, LLP
111 South Calvert Street, Suite 2000
Baltimore, MD 21202
Tel: (443) 615-7513
cawkward@goldbergsegalla.com

*Counsel for Employers Insurance Company
of Wausau*

16

*Marine Insurance Company, Northfield Insurance Company, and U.S. Fidelity and Guaranty Company*

| /s/ Matthew Nelson | /s/ Matthew A. Hoffman |
|---|---|

Matthew Nelson (D. Md. Bar No. 19352)
Margaret F. Catalano (*pro hac vice* forthcoming)
Jillian G. Dennehy (admitted *pro hac vice*)
**KENNEDYS CMK LLP**
222 Delaware Avenue, Suite 710
Wilmington, DE 19801
Tel: (302) 308-6647
Matthew.nelson@kennedyslaw.com
Meg.catalano@kennedyslaw.com
jillian.dennehy@kennedyslaw.com

*Counsel for United States Fire Insurance Company*

Matthew A. Hoffman (admitted *pro hac vice*)
Ryan S. Appleby (admitted *pro hac vice*)
Isabella R. Sayyah (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213-229-7584
mhoffman@gibsondunn.com
rappleby@gibsondunn.com
isayyah@gibsondunn.com

and

Michael A. Rosenthal (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166
Telephone: 212-351-3969
mrosenthal@gibsondunn.com

*Counsel to National Union Fire Insurance Company of Pittsburgh, PA, and New Hampshire Insurance Company*

| /s/ Monique Almy | /s/ Eric Korphage |
|---|---|

Monique Almy (Fed. Bar No. 04479)
Miranda H. Turner (admitted *pro hac vice*)
Jordan A. Hess (admitted *pro hac vice*)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Tel: (202) 624-2500
Fax: (202) 628-5116
Email:  mturner@crowell.com,

Eric Korphage (Federal Bar No. 27854)
Robert H. Kline (Federal Bar No. 20802)
**WHITE AND WILLIAMS LLP**
600 Washington Avenue, Suite 303
Towson, Maryland 21204
Tel: (443) 761-6500
Fax: (443) 761-6519
korphagee@whiteandwilliams.com
kliner@whiteandwilliams.com

jhess@crowell.com

Mark D. Plevin (admitted *pro hac vice*)
**CROWELL & MORING LLP**
Three Embarcadero Center, 26th Floor
San Francisco, California  94111
Tel: (415) 986-2800
Fax: (415) 986-2827
Email: mplevin@crowell.com

*Counsel to American Casualty Company of Reading, PA and The Continental Insurance Company as successor-in-interest to Glens Falls Insurance Company f/k/a Fidelity-Phoenix Insurance Company*

Siobhain P. Minarovich (admitted *pro hac vice*)
**WHITE AND WILLIAMS LLP**
7 Times Square, Suite 2900
New York, NY 10036
Tel: (212) 631-4415
Fax: (212) 631-1248
minarovichs@whiteandwilliams.com

Harris B. Winsberg, Esq.
(admitted *pro hac vice*)
Matthew M. Weiss, Esq.
(admitted *pro hac vice*)
Matthew G. Roberts, Esq.
(admitted *pro hac vice*)
**PARKER, HUDSON, RAINER & DOBBS LLP**
303 Peachtree Street, Suite 3600
Atlanta, GA 30308
Tel: (404) 523-5300
Fax: (404) 522-8409
hwinsberg@phrd.com
mweiss@phrd.com
mroberts@phrd.com

and

Todd C. Jacobs, Esq. (admitted *pro hac vice*)
John E. Bucheit, Esq. (admitted *pro hac vice*)
**PARKER, HUDSON, RAINER & DOBBS LLP**
Two N. Riverside Plaza, Suite 1850
Chicago, IL 60606
Tel: (312) 281-0295
tjacobs@phrd.com
jbucheit@phrd.com

*Counsel for Fireman's Fund Insurance Company and The American Insurance Company*

18

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 6th day of June, 2024, a true and correct copy of the foregoing document was filed and served via the Court's CM/ECF e-filing system on all parties of record.  Additionally, Epiq Corporate Restructuring, LLC will cause a true and correct copy of the foregoing document to be served on all parties required to be served, with a certificate or affidavit of service to be filed subsequently, in accordance with Local Rule 9013-4.

Blake D. Roth, Esquire: blake.roth@hklaw.com
Catherine Keller Hopkin, Esquire: chopkin@yvslaw.com
Hugh M. (UST) Bernstein, Esquire: hugh.m.bernstein@usdoj.gov
Gary R. Greenblatt, Esquire: grg@cooncolelaw.com
Marc E. Shach, Esquire: mes@cooncolelaw.com
Andrew D. Freeman, Esquire: adf@browngold.com
Anthony May, Esquire: AMay@browngold.com
Geoffrey Grivner, Esquire: geoffrey.grivner@bipc.com
Nathan D. Adler, Esquire: nda@nqgrg.com
Diane C. Bristow, Esquire: dcb@nqgrg.com
Tyler N. Layne, Esquire: Tyler.Layne@hklaw.com
Christopher Scott Kunde, Jr., Esquire: scott.kunde@hklaw.com
Steven J Kelly, Esquire: skelly@gelaw.com
Nicholas R. Miller, Esquire: nick.miller@hklaw.com
Timothy P. Palmer, Esquire: timothy.palmer@bipc.com
Gordon Z. Novod, Esquire: gnovod@gelaw.com
Philip Tucker Evans, Esquire: philip.evans@hklaw.com,
Megan Harmon, Esquire: megan.harmon@bge.com
Richard L. Costella, Esquire: rcostella@tydings.com
Alan M. Grochal, Esquire: agrochal@tydings.com
Robert T. Kugler, Esquire: robert.kugler@stinson.com
Edwin H. Caldie, Esquire: ed.caldie@stinson.com
Andrew J. Glasnovich, Esquire: drew.glasnovich@stinson.com
Nicole Khalouian, Esquire: nicole.khalouian@stinson.com
Hannah Berny, Esquire: Hannah.berny@hklaw.com
Monique D. Almy, Esquire: MAlmy@crowell.com
Miranda H. Turner, Esquire: MTurner@crowell.com
Mark D. Plevin, Esquire: MPlevin@crowell.com
Irving E. Walker, Esquire: iwalker@coleschotz.com
J. Michael Pardoe, Esquire: mpardoe@coleschotz.com
Robert K. Jenner, Esquire: rjenner@jennerlawfirm.com
David K. Roberts: droberts2@omm.com
Bruce A. Anderson, Esquire: banderson@eaidaho.com
Ford Elsaesser, Esquire: felsaesser@eaidaho.com
Mark Pfeiffer, Esquire: mark.pfeiffer@bipc.com
Jonathan Schapp, Esquire: jschapp@goldbergsegalla.com
Sam J. Alberts, Esquire: sam.alberts@dentons.com
David F. Cook, Esquire: david.f.cook@dentons.com

Patrick C. Maxcy, Esquire: Patrick.maxcy@dentons.com
G. Calvin Awkward, Esquire: cawkward@goldbergsegalla.com
Gary K. Bahena, Esquire: garybahena@bahenalaw.com
U.S. Trustee – Baltimore: ustpregion04.ba.ecf@usdoj.gov
Adam R. Durst, Esquire, adurst@goldbergsegalla.com
Samantha J. Hanson-Lenn, Esquire, Samantha.hansonlenn@stinson.com
Eric G. Korphage, Esquire, korphagee@whiteandwilliams.com
Matthew M. Weiss, Esquire, mweiss@phrd.com
John E. Bucheit, Esquire, jbucheit@phrd.com
Matthew G. Roberts, Esquire, mroberts@phrd.com
John Grossbart, Esquire, john.grossbart@dentons.com
Harris B. Winsberg, Esquire, hwinsberg@phrd.com
R. David Gallo, Esquire, dgallo@phrd.com
Todd C. Jacobs, Esquire, tjacobs@phrd.com
Patrick C. Maxcy, Esquire, patrick.maxcy@dentons.com
M. Keith Moskowitz, Esquire, keith.moskowitz@dentons.com
Siobhain P. Minarovich, Esquire, Minarovichs@whiteandwilliams.com
Robert H. Kline, Esquire, kliner@whiteandwilliams.com
Adam P. Haberkorn, Esquire, ahaberkorn@omm.com
Tancred V. Schiavoni, Esquire, tschiavoni@omm.com
Jesse J. Bair, Esquire, jbair@burnsbair.com
Timothy W. Burns, Esquire, tburns@burnsbair.com
James R. Murray, Esquire, jim.murray@blankrome.com
James S. Carter, Esquire, james.carter@blankrome.com
Robyn L. Michaelson, Esquire, robyn.michaelson@blankrome.com
Sarah G. Klein, Esquire, sklein@manlystewart.com
Jillian G. Dennehy, Esquire, Jillian.Dennehy@kennedyslaw.com
Ezhan S. Hasan, Esquire, ahasan@wiley.law
Gary P. Seligman, Esquire, gseligman@wiley.law
Ryan S. Appleby, Esquire, RAppleby@gibsondunn.com
Matthew A. Hoffman, Esquire, MHoffman@gibsondunn.com
Michael A. Rosenthal, Esquire, MRosenthal@gibsondunn.com
Isabella R. Sayyah, Esquire, ISayyah@gibsondunn.com
Michael J. Belsky, Esquire, rjenner@jennerlawfirm.com
Catherine A. Dickinson, Esquire, cdickinson@sbwdlaw.com
Matthew C. Nelson, Esquire, Matthew.nelson@kennedyslaw.com
Justin P. Fasano, Esquire, jfasano@mhlawyers.com

*/s/ James P. Ruggeri*
    James P. Ruggeri