**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**

In re:

ROMAN CATHOLIC ARCHBISHOP OF
BALTIMORE

Case No:  23-16969-MMH
Chapter 11

Debtor.[1]

**HARTFORD ACCIDENT AND INDEMNITY COMPANY, HARTFORD CASUALTY**
**INSURANCE COMPANY, HARTFORD FIRE INSURANCE COMPANY**
**AND TWIN CITY FIRE INSURANCE COMPANY'S (I) OBJECTION TO THE**
**MONTHLY FEE STATEMENT OF BURNS BAIR LLP, AS SPECIAL INSURANCE**
**COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR**
**SERVICES RENDERED AND EXPENSES INCURRED FOR THE PERIOD**
**NOVEMBER 1, 2024 THROUGH NOVEMBER 30, 2024 AND (II) CROSS-MOTION**
**FOR APPOINTMENT OF A FEE EXAMINER**

      Hartford Accident and Indemnity Company ("Hartford A&I"), Hartford Casualty

Insurance Company ("Hartford Casualty"), Hartford Fire Insurance Company ("Hartford Fire")

and Twin City Fire Insurance Company ("Twin City") (collectively, "Hartford") respectfully

submit this Objection to the Burns Bair LLP monthly fee statement for services rendered and

expenses incurred for the period November 1, 2024 through November 30, 2024 [Dkt. No. 890]

and Cross-Motion seeking appointment of a fee examiner for professional fees going forward.

      1.     This is a complicated case with various constituencies whose interests needs to be

properly represented.  The Court clearly appreciates this, which is why by our count it has

approved the appointment of ten estate and committee professionals, including the following:

      a.   Holland & Knight, counsel to debtor;

      b.   YVS Law, LLC, Maryland counsel to debtor;

---

[1]     The last four digits of the Debtor's federal tax identification number are: 1535.  The Debtor's principal place of business is located at 320 Cathedral Street, Baltimore, Maryland 21201.

    c.   Blank Rome LLP, special insurance counsel to debtor;

    d.   Gallagher Evelius & Jones LLC, defense counsel to debtor;

    e.   Keegnan Linscott & Associates, PC, debtor's financial advisor;

    f.   Stinson LLP, Committee counsel;

    g.   Tydings & Rosenberg LLP, Committee's Maryland counsel;

    h.   Burns Bair LLP, Committee special insurance counsel;

    i.   Berkley Research Group, Committee financial advisor; and

    j.   Stout Risius Ross, LLC, expert valuation consultant for the Committee.

However, even though the appointment of these professionals was appropriate, the professionals' services and expenses must still be necessary and a benefit to the administration of the estate and its creditors.  Burns Bair's November 2024 statement includes nearly $12,000 in charges on an issue that the Fourth Circuit never has recognized as legitimate or appropriate and, worse, suggests that Burns Bair is focused on litigating, not mediating to see if the parties can reach a consensual plan in the best interests of all parties in interest.  While $12,000 is a modest amount, the Court should not allow the estate to pay illegitimate fees and expenses or for the Committee's coverage counsel to derail the mediation.  Given these concerns and the number of professionals and fee statements, Hartford believes the Court should appoint a fee examiner to ensure that professional fees sought to be charged to the estate meet the statutory requirements for professional compensation.

## **BACKGROUND**

2.    On September 29, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the

United States Bankruptcy Court for the District of Maryland.  *See* Chapter 11 Voluntary Petition [Dkt. No. 1].

3.     On October 11, 2023, in accordance with Section 1102 of the Bankruptcy Code, the United States Trustee appointed the Official Committee of Unsecured Creditors in this case (the "Creditors Committee").  *See* Notice of Appointment of Creditors' Committee [Dkt. No. 81].

4.     The Debtor continues to operate and manage its affairs as a debtor in possession within the meaning of Sections 1107 and 1108 of the Bankruptcy Code.

5.     On November 6, 2023, this Court entered the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (the "Compensation Order") [Dkt. No. 176].

6.     The Compensation Order creates a procedure for estate professionals to submit Interim Fee Applications and provides that "all parties shall have at least twenty-one (21) days from service of an Interim Fee Application to file an objection to such Interim Fee Application." *See* Compensation Order at 4.

7.     Hartford is a "party" under the terms of the Compensation Order and is a party in interest in this chapter 11 case.  Hartford accordingly has a legitimate interest in any issue that may affect reorganization efforts.  This includes the unnecessary depletion of estate assets that might otherwise be devoted to a settlement as part of a chapter 11 plan.  Indeed, Hartford's participation is particularly important here.  Debtors (and their professionals) often have a disincentive to challenge creditor fee applications, leaving third parties such as the Debtor's insurers as the only party willing to pursue such a challenge.  *See, e.g.*, *Truck Ins. Exch. v. Kaiser*

*Gypsum Co.*, 602 U.S. 268, 282 (2024) (noting importance of standing where the insurer "may

well be the only entity with an incentive to identify problems . . . .").

### **HARTFORD'S OBJECTION TO THE FEE APPLICATION**

8.     On May 1, 2024, this Court entered an order pursuant to Section 327 of the

Bankruptcy Code appointing Burns Bair LLP as special insurance counsel to the Committee.

*See* Order Approving Application to Employ Burns Bair LLP as Special Insurance Counsel for

The Official Committee of Unsecured Creditors [Dkt. No. 503].  As part of its application for

employment in this case, Burns Bair pointed towards its extensive knowledge and experience in

diocesan bankruptcy cases such as this case.

9.     Section 330 governs compensation of appointed professionals such as Burns Bair.

That provision provides for "reasonable compensation" for "actual, necessary services rendered"

by the professional.  11 U.S.C. § 330(a)(1).  Whether services are actual and necessary, in turn,

depends on taking into consideration all relevant factors including:

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or
beneficial at the time at which the service was rendered toward the
completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of
time commensurate with the complexity, importance, and nature of the
problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board
certified or otherwise has demonstrated skill and experience in the
bankruptcy field; and

(F) whether the compensation is reasonable based on the customary
compensation charged by comparably skilled practitioners in cases other
than cases under this title.

11 U.S.C. § 330(a)(3).

10.     Services that are not necessary to the administration of the estate or that do not benefit the estate or its creditors, on the other hand, are not reimbursable under Section 330.  *See* 11 U.S.C. § 330(a)(4).  The professional seeking reimbursement bears the burden to establish that its fees are reasonable and necessary and are of benefit to the estate and its creditors.

11.     Courts consistently recognize that any award of interim compensation is discretionary and subject to re-examination during the course of the chapter 11 case.  *See, e.g.*, *In re Nana Daly's Pub, Ltd.*, 67 B.R. 782, 787 (Bankr. E.D.N.Y. 1986) ("Any award of interim compensation is within the discretion of the court and will be considered based upon the circumstances of the particular case.").

12.     On December 23, 2024, Burns Bair filed its interim fee application for the period November 1, 2024 through November 30, 2024.  *See* Line Filing Statement of Services for Burns Bair LLP covering the Period November 1, 2024 through November 30, 2024 [Dkt. No. 890] (the "Interim Application").  As part of that Interim Application, Burns Bair seeks fees totaling at least $11,967.50 billed to the estate for research and preparation of a "derivative insurance declaratory judgment complaint."  A chart reflecting these charges is attached as Exhibit A to the Declaration of Joshua D. Weinberg ("Weinberg Decl.").

13.     From the descriptions associated with these entries, it appears that Burns Bair has spent considerable time drafting a complaint by which they would seek to stand in the debtor's shoes and assert the debtor's alleged causes of action against its insurers to establish insurance coverage.  This appears to be part of a nationwide strategy by Burns Bair, which has charged numerous bankruptcy estates across the country thousands of dollars to research and draft similar complaints.  In the *Rockville Centre* bankruptcy case, for example, Burns Bair spent nearly

$100,000 researching and drafting a similar derivative standing complaint.[2]  The bankruptcy court rejected those efforts there, finding derivative standing was not warranted.  *See In re Roman Catholic Diocese of Rockville Centre, New York*, 654 B.R. 212, 221-22 (Bankr. S.D.N.Y. 2023).   Notwithstanding the *Rockville Centre* court's previous admonition, Burns Bair still seeks to charge this estate substantial sums for similar work.  The charges associated with this work are not reasonable and do not create a compensable benefit for the estate or its creditors.

14.     Indeed, that is not the only time that Burns Bair has submitted statements for work that is not reimbursable under Section 330.  Also in the *Rockville Centre* bankruptcy case, Burns Bair spent more than $84,000 to prepare motions to lift stay in order to make demands on insurers.  Judge Glenn concluded that the work that Burns Bair had performed was "wasteful" and "unnecessary."  Accordingly, Judge Glenn reduced the Burns Bair fee application to eliminate those charges.  *See* Order Disallowing a Portion of Fees of Burns Bair LLP and Pachuslki Stang Ziehl & Jones LLP in Connection with Fees Incurred in Preparation of Motions to Lift Stay to Allow Claimants to Make Settlement Demands on Insurers at 4*, In re Roman Catholic Diocese of Rockville Centre, N.Y.*, Case No. 20-12345 (Bankr. S.D.N.Y. Dec. 19, 2023) [Dkt. No. 2742] (Weinberg Decl., Ex. C).

15.     For two principal reasons, the charges here are inappropriate.

16.     *First,* the time spent drafting a "derivative" complaint would not benefit creditors, including the claimants, unless the Committee were to obtain derivative standing to assert these causes of action on behalf of the Debtor.  The Fourth Circuit, however, has not recognized the doctrine of derivative standing in bankruptcy cases, noting that nothing in the Bankruptcy Code creates an exception from the general rule that causes of action are vested in the trustee or debtor

---

[2]     The fee applications from the *Rockville Centre* case and a chart summarizing the relevant charges are attached as Weinberg Decl.. Exhibit B.

in possession.  *See, e.g.*, *In re Balt. Emergency Servs. II, Corp.*, 432 F.3d 557, 561 (4th Cir. 2005) ("It is far from self-evident that the Bankruptcy Code permits creditor derivative standing."); *see also In re JKJ Chevrolet, Inc.*, 26 F.3d 481, 485 n.7 (4th Cir. 1994) (declining to decide whether derivative standing is permissible); *In re K&L Lakeland, Inc.*, 128 F.3d 203, 206-07 (4th Cir. 1997) (declining to grant administrative creditors standing to pursue § 506(c) claims against secured creditors).  And courts in this circuit have recognized that even those cases (from other circuits) that do recognize derivative standing do so only in the extreme circumstances where a debtor-in-possession has unreasonably refused to bring claims at issue that would have a clear benefit for the estate or where the debtor faces a disabling conflict in interest (*i.e.* claims brought against its own directors or officers).  *See, e.g.*, *In re Phillips*, 573 B.R. 626, 640-41 (Bankr. E.D.N.C. 2017) (citing *United Jersey Bank v. Morgan Guar. Trust Co. of N.Y. (In re Prime Motor Inns, Inc.)*, 135 B.R. 917, 919 (Bankr. S.D. Fla. 1992)); *In re Gibson Grp., Inc.*, 66 F.3d 1436, 1441 (6th Cir. 1995).

17.    There is no argument here that the Debtor has "unreasonably refused" to assert its insurance coverage claims or that it faces any sort of disqualifying conflict of interest.  On the contrary, the Debtor has asserted claims against its insurers.  And the Committee was permitted to intervene in that proceeding, leaving little doubt that its interests, if any, are protected fully.  *See* Complaint, *Roman Catholic Archbishop of Balt. et al. v. Am. Cas. Co. of Reading et al.*, Adv. No. 24-00072 (Bankr. D. Md. March 28, 2024) [Adv. Dkt. No. 1].  This is the opposite of a case where the Debtor has refused to act or faces a disabling conflict, such that it would be necessary (in jurisdictions where the doctrine is recognized, which is not the case here) to permit the Committee to seek standing to pursue estate causes of action to protect creditor interests.  Thus, even if derivative standing were permissible in this Circuit, a quick Westlaw search by

Burns Bair would have revealed that the Committee cannot meet the strict requirements that the Fourth Circuit would place on the doctrine.

18.    *Second,* the Court has ordered the parties to mediate and to try to reach a global, consensual settlement that would allow the Debtor to emerge from bankruptcy and the claimants to receive distributions in a timely fashion.  That Burns Bair has spent time researching and drafting a coverage complaint raises serious questions about whether it, the Committee's coverage counsel, is really trying in good faith to get to a deal, or rather, whether it intends to litigate endlessly (as has happened in so many diocesan Chapter 11 cases that have yet to resolve).  Even if derivative standing were permitted in this Circuit, the Debtor already asserted its claims for insurance coverage and all parties – including the Committee – subsequently agreed to dismiss the insurance adversary proceeding as part of a consensual mediation order. *See* Agreed Order Directing Mediation, Appointing Mediators, and Ordering Mediation Discovery, Adv. Proc. (July 29, 2024) [Adv. Dkt. No. 196].  Mediation is ongoing.  There is no reason for Committee professionals to draft a complaint asserting claims that the Committee *agreed* and the Court *ordered* should not be litigated while the parties mediate.

19.    If Burns Bair or any other Committee professional is not serious about meditating to try to negotiate a consensual plan that has the support of all constituencies, including the insurers, it should so inform the Court.  But if it is interested in compromise, it should not be expending estate resources drafting adversarial complaints.  In either event, the Court should not reimburse Burns Bair for these costs.  *See* 11 U.S.C. § 330(a)(4).

20.    The Court should reduce any allowed amount of the Interim Application by the amounts reflected on Exhibit A, totaling $11,967.50.

## HARTFORD'S CROSS-MOTION FOR APPOINTMENT OF A FEE EXAMINER

21.     The Court should consider appointing a Fee Examiner to review the mounting

professional fees in this case and to ensure that those fees benefit the estate as Section 330 of the

Bankruptcy Code requires.

22.     In the nearly sixteen months since the Debtor filed its chapter 11 case, estate and

committee professionals have already incurred nearly $2.5 million in fees (through the December

23, 2024 filings).  The Debtor asserts that it has limited resources, so amounts that are diverted to

payment for estate professionals will not be available to be put towards a global resolution of this

case.  It is therefore imperative that the Court ensure, in accordance with Section 330(a), that

professional fees benefit the estate.

23.     Bankruptcy courts presiding over complex chapter 11 cases have appointed

independent fee examiners pursuant to Section 105 of the Bankruptcy Code to ensure that

professional fees sought to be charged to the estate meet the statutory requirements for

compensation under Section 330.  The fee examiner is not explicitly defined in the Bankruptcy

Code, but the role is different from that of an examiner appointed under 11 U.S.C. § 1104(c) who

is charged with conducting "an investigation of the debtor as is appropriate."  11 U.S.C. § 1104;

see also *In re Collins & Aikman Corp.*, 368 B.R. 623, 625-627 (Bankr. E.D. Mich. 2007).  Fee

examiners are limited to determining whether fees are reimbursable under Section 330.

24.     Fee examiners or fee review committees have been appointed in many significant

and complex bankruptcy cases, including but not limited to the following:  Notice from Court re

Order Appointing Fee Examiner at 1, *In re Kidde-Fenwal, Inc.*, Case No. 23-10638-LSS (Bankr.

D. Del. Sept. 19, 2023) [Dkt. No. 460, 460-1] (Weinberg Decl., Ex. D); *see* Stipulation and

Order Appointing a Fee Committee at 2, *In re Energy Future Holdings*, Case No. 14-10979-CSS

(Bankr. D. Del. Aug. 21, 2014 ) [Dkt. No. 1896] (Weinberg Decl., Ex. E); *see* Stipulation And Agreed Order With Respect to Appointment of An Independent Fee Examiner at 2, *In re Budd Co.*, Case No. 14-11873 (Bankr. N.D.IL. July 25, 2014) [Dkt. No. 346] (Weinberg Decl., Ex. F)*; see* Order Signed on 5/26/2009 Appointing Fee Committee and Approving Fee Protocol at 1, *In re Lehman Bros. Holdings*, Case No. 08-13555scc (Bankr. S.D.N.Y. May 26, 2009) [Dkt. No. 3651] (Weinberg Decl., Ex. G); *see* So Ordered Stipulation Signed on 12/23/2009, Re: Appointment of a Fee Examiner at 3, *In re Motors Liquidation*, Case No. 09-50026-reg (Bankr. S.D.N.Y Dec. 23, 2009) [Dkt. No. 4708] (Weinberg Decl., Ex. H), *see* Stipulation and Order with Respect to Appointment of a Fee Examiner at 2, *In re AMR Corp.*, Case No. 11-15463-shl (Bankr. S.D.N.Y. May 24, 2012) [Dkt. No. 2897] (Weinberg Decl., Ex. I); *see* Order Appointing Fee Examiner and Establishing Related Procedures for the Review of Professional Claims at 3, *In re Exide Technologies*, Case No. 13-11482-KJC (Bankr. D. Del. Jan. 28. 2014) [Dkt. No. 1283] (Weinberg Decl., Ex. J), *and* Order Appointing Fee Examiner and Establishing Related Procedures for the Review of Professional Claims at 2, *In re Mineral Park*, Case No. 14-11996-KJC (Bankr. D. Del. Dec. 8, 2014) [Dkt. No. 274] (Weinberg Decl., Ex. K).  Fee examiners in these cases have ensured that work done by professionals is appropriate, beneficial to the estate, and not duplicative.

25.     Diocesan bankruptcy cases are not immune from these issues.  In *Diocese of Rochester*, for example, Judge Warren recently issued an Order to Show Cause why an independent fee examiner should not be appointed.  *See* Order to Show Cause at 2, *In re Roman Catholic Diocese of Rochester*, Case No. 19-20905-RPW (Bankr. W.D.N.Y. Nov. 25, 2024) [Dkt. No. 2829] (Weinberg Decl., Ex. L).  In response to the Order to Show Cause, the Debtor acknowledged that there is substantial overlap of work done among different diocesan

bankruptcy cases for different diocesan clients – duplication that should be prevented.  *See* Response to Order to Show Cause Regarding the Appointment of an Independent Fee Examiner at 4, *In re Roman Catholic Diocese of Rochester*, Case No. 19-20905-RPW (Bankr. W.D.N.Y.) [Dkt. No. 2853] (Weinberg Decl., Ex. M) ("The Diocese acknowledges that various services performed in this Chapter 11 Case are also present in other Diocesan chapter 11 cases."). Despite the Debtor's assurances that duplicative fees were being split among diocesan cases, Judge Warren appointed a fee examiner to eliminate duplication and ensure that fees appropriately benefit the estate.  *See* Order Appointing Independent Fee Examiner and Establishing Related Procedures for the Review of Fee Applications of Retained Professionals at 3, (Dec. 16, 2024) [Dkt. No. 2870] (Weinberg Decl., Ex. N).

26.     Judge Warren's order is not unique.  Courts in a number of other diocesan cases have appointed fee examiners.  *See* Order Granting Motion/Application to Appoint Examiner, *In re Roman Catholic Diocese of Sacramento*, Case No. 24-21326 (Bankr. E.D. Cal. Dec. 3, 2024) [Dkt. No. 911] (Weinberg Decl. Ex O); *see* Order Appointing Fee Examiner and Establishing Procedures for Review of Interim and Final Fee Applications filed by Estate Professional at 2, *In re Roman Catholic Bishop of Oakland*, Case No. 23-40523 (Bankr. N.D. Cal. May 10, 2024) [Dkt. No. 1122] (Weinberg Decl., Ex. P).  Hartford submits this Court should do the same.

27.     Should the Court agree that appointment of a fee examiner is warranted, Hartford would be pleased for the Court to appoint one without input or to work with the Debtor and the other interested parties to offer one or more candidates for the Court's consideration.

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should (i) reduce the fees awarded pursuant to the Fee Application, and (ii) appoint a fee examiner.

Dated: January 13, 2025

Respectfully submitted,

*/s/ James P. Ruggeri*

James P. Ruggeri (Fed. Bar No. 21926)
Joshua D. Weinberg (admitted *pro hac vice*)
Annette P. Rolain (admitted *pro hac vice*)
RUGGERI PARKS WEINBERG LLP
1875 K Street NW, Suite 800
Washington, DC  20006
Tel: (202) 984-1400
jruggeri@ruggerilaw.com
jweinberg@ruggerilaw.com
arolain@ruggerilaw.com

and

Philip D. Anker (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE AND
DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
Tel: (212) 230-8890
philip.anker@wilmerhale.com