# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
# (Baltimore Division)

| | |
|---|---|
| In re:<br><br>Roman Catholic Archbishop of Baltimore,<br><br>    Debtor. | Case No. 23-16969-MMH<br>(Chapter 11) |
| The Official Committee of Unsecured Creditors,<br><br>v.<br><br>Roman Catholic Archbishop of Baltimore,<br><br>    Defendant. | Adv. Proc. No._____-MMH |

## COMPLAINT FOR DECLARATORY JUDGMENT

The Official Committee of Unsecured Creditors appointed in the above-captioned chapter 11 case (the "Committee"), as and for its Complaint against the debtor and debtor in possession, the Roman Catholic Archbishop of Baltimore (the "Debtor"), states and alleges as follows:

## PARTIES

1. Pursuant to 11 U.S.C. § 1102, the Office of the United States Trustee appointed the Committee on October 11, 2023 in the Debtor's chapter 11 case, Case No. 23-16969 (Bankr. D. Md.).

2. The Debtor is a corporation sole organized under the laws of the State of Maryland.

## JURISDICTION

3. Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and Standing Order 2012-05 from the United

States District Court for the District of Maryland. Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" ) and Rule 7012-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland (the "Local Rules"), the Committee consents to the entry of a final judgment or order with respect to the Complaint if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4. Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

5. On September 29, 2023, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Petition Date"). The Debtor is continuing in possession of its property and the management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. In the years preceding the Petition Date, the Maryland Office of the Attorney General conducted an investigation and issued a report in April 2023, stating over six hundred children were known at that time to have been abused by at least 156 priests, teachers, lay-employees, and/or other individuals employed, supervised, or otherwise associated with the Debtor.

7. The Maryland General Assembly enacted the Child Victims Act of 2023 (the "CVA"), which eliminated the statute of limitations in Maryland for survivors of childhood sexual assault (collectively, "Survivors") to bring claims against individuals and institutions who may be civilly liable for the atrocities perpetrated upon Survivors.

8. The CVA was passed with the purpose of holding organizations, like the Debtor, liable and responsible for the damages they caused Survivors.

9. As children, nearly all Survivors were, and many remain still as adults, part of the Debtor's congregation of faithful Catholics.

10. Survivors trusted the Debtor to not only minister to them spiritually, but to protect their physical wellbeing at times when they were entrusted to the Debtor's care.

11. The Debtor failed Survivors in all of these respects by prioritizing the Catholic Church's reputation, influence, finances, and power, over the physical safety of children, resulting in decades of egregious harm and suffering to Survivors—physically, mentally, emotionally, and spiritually.

12. The Debtor filed this chapter 11 case because it faced potentially catastrophic liabilities from hundreds of Survivors' claims following the passage of the CVA.

13. The Debtor also filed this chapter 11 case to compensate Survivors for the harms occasioned upon them in the past by the Debtor and its priests, teachers, lay-employees, and other individuals employed, supervised, or otherwise associated with the Debtor.

14. Paying Survivors is part of the Debtor's organizational mission.

15. In April 2023, Archbishop Lori explained:

> Since the 1980s, the Archdiocese has invested more than $13.2 million into the care and monetary compensation for 301 victim-survivors. This includes $6.8 million toward 105 voluntary settlements under a mediation program… Regardless of how long ago abuse occurred, our offer to pay for counseling is available to all victim-survivors. Also, since 2007, the Archdiocese's financial mediation program has been available for victim-survivors, *regardless of legal liability*, including for those whose legal claims are barred by the statute of limitations.

16. On November 15, 2023, during the meeting of creditors required under 11 U.S.C. § 341 (the "Meeting of Creditors"), the Debtor's representative testified under oath that outreach and support of Survivors is part of the Debtor's mission.[1]

---

[1] *See* Transcript of Meeting of Creditors, November 15, 2023 at 137:4-10 (**Q:** "[the Informational Brief] says 'Chapter 11 proceedings commenced to continue outreach in support of survivors in

17. On November 15, 2023, during the Meeting of Creditors, the Debtor's representative testified under oath that providing compensation to Survivors falls within the Debtor's mission.[2]

18. More than 1,000 proofs of claim have been filed in this chapter 11 case alleging that the Debtor is liable for claims arising from child sexual assault and/or other sexual abuse encompassed by the CVA.

19. If not for the Debtor's liability with respect to the claims filed by Survivors, the Debtor's assets would greatly exceed its liabilities.

20. If not for the Debtor's liability with respect to the claims filed by Survivors, the Debtor would not require reorganization and/or protection under the Bankruptcy Code.

21. All of the members of the Committee are Survivors who have asserted claims against the Debtor.

22. Prior to the Petition Date, the Debtor asserted that the doctrine of charitable immunity provides a complete legal defense under Maryland law to the obligation to pay Survivor claims that are not covered, or to the extent the claim exceeds the limits provided, by third-party insurance.

23. After the Petition Date, the Debtor continues to assert that the doctrine of charitable immunity provides a meritorious defense under Maryland law against the obligation to pay

---

an ongoing ministry.' … Given that statement, is it fair to say that outreach in support of survivors is part of the archdiocese's mission? **A:** Yes, I would say that's correct.").

[2] *Id.* at 137:11-19 (**Q: "**Based on the reading from the informational brief … the Roman Catholic Archbishop of Baltimore believes failure to commence this chapter 11 proceeding would have resulted in some survivors who have not yet brought claims failing to receive compensation. Is providing compensation to survivors, does that fall within the archdiocese's mission? **A:** Yes.").

4

Survivor claims filed in this chapter 11 case that are not covered by, or to the extent the claim exceeds the limits available under, third-party insurance.

24.     The Debtor's expressed position on charitable immunity is fundamentally inconsistent with its election to file for bankruptcy.

25.     On April 1, 2025, the Committee filed a limited notice of impasse with respect to the mediation negotiations with the Debtor concerning the Debtor's reliance on the doctrine of charitable immunity as a meaningful protection of its assets in the bankruptcy process. (BKY No. 23-16969 (Bankr. D. Md.), Dkt. No. 1032).

26.     The Committee commences this action for the limited purpose of resolving justiciable and ripe issues that are relevant to the Debtor's invocation of the charitable immunity defense within the bankruptcy case, as described in further detail below.

27.     The factual and legal issues involved in this litigation are specific to the actions of the Debtor, involve common circumstances asserted in all Survivor's claims, and are not dependent on the unique allegations contained in any specific Survivor's claim.

28.     For the avoidance of doubt, the Committee *does not* commence this action for the purpose of seeking any relief as it pertains to the charitable immunity defense for any individual Survivor's claim if such defense requires an inquiry into issues specific to that Survivor's claim.

## COUNT I - Declaratory Judgment
### (No Charitable Immunity: Unavailable in Bankruptcy)

29.     The Committee incorporates and restates all of the preceding paragraphs by reference as if fully set forth herein.

30.     This Court may issue a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, which provides that, "[i]n a case of actual controversy within its jurisdiction … any court of the United States … may declare the rights and other legal relations of any

interested party seeking such declaration, whether or not further relief is or could be sought." *BnP Ventures, LLC v. G-Force Sportfishing, Inc.,* 499 F.Supp. 3d 175, 179 (D. Md. 2020) (citing 28 U.S.C. § 2201).

31. Survivors have asserted more than 1,000 personal injury tort claims against the Debtor arising from acts encompassed by the CVA.

32. Since the Petition Date, the Debtor has contended that the doctrine of charitable immunity shields it and its non-insurance assets from liability for those tort claims.

33. The Committee asserts that the Debtor is not entitled to raise the defense of charitable immunity as it relates to Survivor claims in this (or any other) bankruptcy proceeding.

34. Specifically, the Debtor affirmatively waived the protections of charitable immunity as to it and its assets when it filed for bankruptcy.

35. This waiver acts to defeat the charitable immunity defense at least for so long as the Debtor's bankruptcy case remains active.

36. In the alternative, the Debtor's deployment of the defense of immunity from tort liability is incompatible with the objectives and the purposes of title 11 of the United States Code.

37. The Debtor accordingly should not be permitted to raise the defense of charitable immunity from tort liability for so long as the Debtor's bankruptcy case remains active.

38. Under either scenario, the Debtor's act of filing for bankruptcy has terminated its charitable immunity defense for at least so long as the Debtor's bankruptcy case remains active.

39. There is an actual, real, current, and justiciable controversy concerning whether the Debtor is entitled to rely on the defense of charitable immunity in response to the Survivors' claims asserted in this bankruptcy case.

40. The controversy is ripe as, among other reasons, the controversy has triggered a limited notice of impasse in the mediation of this bankruptcy case as to the availability and viability of the charitable immunity defense to protect the Debtor and the Debtor's assets from tort liability as a result of Survivor's claims against the Debtor.

41. The Committee seeks a declaratory judgment to determine the rights and legal relations of unsecured creditors holding tort claims against the Debtor and its non-insurance assets in the bankruptcy case.

42. The Court should declare that the Debtor cannot rely upon the charitable immunity defense in response to the Survivors' claims in this bankruptcy case.

43. Accordingly, pursuant to 28 U.S.C. § 2201, Fed. R. Civ. P. 57, and Fed. R. Bank. P. 7001(9), the Committee requests that the Court declare that the Debtor cannot rely upon the charitable immunity defense in response to the Survivors' claims in this bankruptcy case, (a) because the Debtor's filing of the bankruptcy case constituted an affirmative waiver of the defense; and/or (b) because the defense is incompatible with the objectives and purpose of title 11 of the United States Code; and grant such other relief as is just and equitable.

### COUNT II - Declaratory Judgment
### (No Charitable Immunity: Abrogated by the CVA)

44. The Committee incorporates and restates all of the preceding paragraphs by reference as if fully set forth herein.

45. The doctrine of charitable immunity is unavailable with respect to any claims arising under the Maryland Child Victims Act of 2023.

46. In addition to modifying the operation of the statute of limitations with respect to Survivors' claims, the CVA also established mechanisms concerning liability caps with respect to permutations of particular defendants and "occurrences" at issue in a given Survivor's claim.

47. These mechanisms of the CVA, along with other available evidence, demonstrates the legislature's intent to abrogate the defense of charitable immunity for CVA claim defendants situated like the Debtor.

48. The Debtor's decision to file the bankruptcy case on the eve of the CVA's effective date notwithstanding its purported entitlement to an absolute shield of liability against its non-insurance assets, corroborates the Debtor's own understanding that the charitable immunity defense in fact does not apply with respect to Survivors' claims under the CVA.

49. The Debtor has nonetheless asserted that the doctrine of charitable immunity shields the Debtor and the Debtor's non-insurance assets from liability with respect to Survivors' claims in the bankruptcy case.

50. There is an actual, real, current, and justiciable controversy concerning whether or not the Debtor is entitled to rely on the defense of charitable immunity in response to the Survivors' claims asserted in this bankruptcy case.

51. The controversy is ripe as, among other reasons, the controversy has triggered a limited notice of impasse in the mediation of this bankruptcy case as to the availability and viability of the charitable immunity defense to protect the Debtor and the Debtor's assets from tort liability as a result of Survivor's claims against the Debtor.

52. The Committee seeks a declaratory judgment to determine the rights and legal relations of unsecured creditors holding tort claims against the Debtor and its non-insurance assets in the bankruptcy case.

53. The Court should declare that the Debtor cannot rely upon the charitable immunity defense in response to the Survivors' claims in this bankruptcy case.

54. Accordingly, pursuant to 28 U.S.C. § 2201, Fed. R. Civ. P. 57, and Fed. R. Bankr. P. 7001(9), the Committee requests that the Court declare that the Debtor cannot rely upon the charitable immunity defense in response to the Survivors' claims in this bankruptcy case brought under the Maryland Child Victims Act of 2023, because the CVA abrogated the charitable immunity defense for the Debtor with respect to such claims; and grant such other relief as is just and equitable.

### COUNT III - Declaratory Judgment
### (No Charitable Immunity: Charitable Mission)

55. The Committee incorporates and restates all of the preceding paragraphs by reference as if fully set forth herein.

56. The doctrine of charitable immunity is unavailable as a matter of Maryland state law with respect to any claim against any defendant whose charitable mission includes compensating victims of such claims.

57. The Debtor has repeatedly stated, in both public-facing statements and under oath in this bankruptcy case, that its charitable mission extends to, includes, and encompasses providing support for Survivors who suffered sex abuse as a result of the actions of Debtor and its representatives.

58. The Debtor has repeatedly stated, in both public-facing statements and under oath in this bankruptcy case, that its charitable mission extends to, includes, and encompasses compensating Survivors who suffered sex abuse as a result of the actions of Debtor and its representatives.

59. The Debtor has asserted that the doctrine of charitable immunity shields the Debtor and the Debtor's non-insurance assets from liability with respect to Survivors' claims in the bankruptcy case.

60. There is an actual, real, current, and justiciable controversy concerning whether or not the Debtor is entitled to rely on the defense of charitable immunity in response to the Survivors' claims asserted in this bankruptcy case.

61. The controversy is ripe as, among other reasons, the controversy has triggered a limited notice of impasse in the mediation of this bankruptcy case as to the availability and viability of the charitable immunity defense to protect the Debtor and the Debtor's assets from tort liability as a result of Survivor's claims against the Debtor.

62. The Committee seeks a declaratory judgment to determine the rights and legal relations of unsecured creditors holding tort claims against the Debtor and its non-insurance assets in the bankruptcy case.

63. The Court should declare that the Debtor cannot rely upon the charitable immunity defense in response to the Survivors' claims in this bankruptcy case.

64. Accordingly, pursuant to 28 U.S.C. § 2201, Fed. R. Civ. P. 57, and Bankruptcy Rule 7001(9), the Committee requests that the Court declare that the Debtor cannot rely upon the charitable immunity defense in response to the Survivors' claims in this bankruptcy case because the defense is unavailable to a defendant, like the Debtor, whose mission includes (a) providing support for individuals, like Survivors, who have suffered harms while in the care of the Catholic Church in Maryland; and/or (b) compensating individuals, like Survivors, who have suffered harms while in the care of the Catholic Church in Maryland; and grant such other relief as is just or equitable.

### COUNT IV - Declaratory Judgment
**(No Charitable Immunity: Non-Existence of Charitable Trust)**

65. The Committee incorporates and restates all of the preceding paragraphs by reference as if fully set forth herein.

66. The the doctrine of charitable immunity is unavailable as a matter of Maryland state law with respect to any defendant that fails to establish its entitlement to the protections of a charitable trust, either as an organization or as to particular property not held subject to a charitable trust.

67. The Debtor is not a charitable trust.

68. The Debtor cannot establish its entitlement to the protections of a charitable trust.

69. The Debtor does not have articles of incorporation, as are necessary to establish its entitlement to either charitable trust status and/or the charitable immunity defense.

70. Upon information and belief, the Debtor's organizational documents do not adequately restrict the use of the Debtor's assets to a specific charitable purpose, as would be required to establish its entitlement to either charitable trust status and/or the charitable immunity defense.

71. The Debtor's organizational documents do not create any kind of charitable purpose restriction and otherwise fail to establish a charitable purpose restriction that would exclude the use of the Debtor's assets for supporting or compensating Survivors like those asserting claims in this bankruptcy case.

72. A substantial portion of the Debtor's non-insurance assets are not held in a charitable trust for a specific charitable purpose or otherwise qualified for protection under the charitable immunity defense.

73. The Debtor has asserted that the doctrine of charitable immunity shields the Debtor and all of the Debtor's non-insurance assets from liability with respect to Survivors' claims in the bankruptcy case.

74. There is an actual, real, current, and justiciable controversy concerning whether or not the Debtor is entitled to rely on the defense of charitable immunity in response to the Survivors' claims asserted in this bankruptcy case, both as to the Debtor itself and as to particular assets held by the Debtor.

75. The controversy is ripe as, among other reasons, the controversy has triggered a limited notice of impasse in the mediation of this bankruptcy case as to the availability and viability of the charitable immunity defense to protect the Debtor and the Debtor's assets from tort liability as a result of Survivor's claims against the Debtor.

76. The Committee seeks a declaratory judgment to determine the rights and legal relations of unsecured creditors holding tort claims against the Debtor and its non-insurance assets in the bankruptcy case.

77. The Court should declare that the Debtor cannot rely upon the charitable immunity defense in response to the Survivors' claims in this bankruptcy case.

78. Accordingly, pursuant to 28 U.S.C. § 2201, Fed. R. Civ. P. 57, and Bankruptcy Rule 7001(9), the Committee requests that the Court declare that the Debtor cannot rely upon the charitable immunity defense in response to the Survivors' claims in this bankruptcy case because the defense is unavailable to a defendant, like the Debtor, that (a) cannot establish its entitlement to the protections of a charitable trust; (b) has not adequately restricted the use of its assets to a specific charitable purpose; (c) maintains assets that are not held in a charitable trust for a specific charitable purpose; and (d) cannot establish that any such charitable purpose for which it is organized and/or its assets are held **excludes** the charitable purpose of compensating and/or providing support to Survivors like those asserting claims in this bankruptcy case; and grant such other relief as is just or equitable.

**WHEREFORE**, the Committee respectfully requests that the Court enter judgment in its favor and against the Debtor:

A. DECLARING that:

I. The Debtor cannot rely upon the charitable immunity defense in response to the Survivors' claims in this case, because the Debtor's filing of the bankruptcy case constituted an affirmative waiver of the defense, and/or because the defense is incompatible with the objectives and purpose of title 11 of the United States Code;

II. The Debtor cannot rely upon the charitable immunity defense in response to the Survivors' claims in this bankruptcy case brought under the Maryland Child Victims Act of 2023, because the CVA abrogated the charitable immunity defense for the Debtor with respect to such claims;

III. The Debtor cannot rely upon the charitable immunity defense in response to the Survivors' claims in this bankruptcy case because the defense is unavailable to a defendant like the Debtor, whose mission includes (a) providing support for individuals, like Survivors, who have suffered harms while in the care of the Catholic Church in Maryland; and/or (b) compensating individuals, like Survivors, who have suffered harms while in the care of the Catholic Church in Maryland;

IV. The Debtor cannot rely upon the charitable immunity defense in response to the Survivors' claims in this bankruptcy case because the defense is unavailable to a defendant like the Debtor that: cannot establish its entitlement to the protections of a charitable trust; has not adequately restricted the use of its assets to a specific

charitable purpose; maintains assets that are not held in a charitable trust for a specific charitable purpose; and cannot establish that any such charitable purpose for which it is organized and/or its assets are held excludes the charitable purpose of compensating and/or providing support to Survivors like those asserting claims in this bankruptcy case; and

B.  granting such other and further relief as this Court deems just and proper.

Date: April 1, 2025                                   Respectfully submitted,

/s/ Richard L. Costella
Alan M. Grochal, Fed. Bar No.: 01447
Richard L. Costella, Fed. Bar No. 14095
Tydings & Rosenberg LLP
1 East Pratt Street, Suite 901
Baltimore, Maryland 21202
Tel: (410) 752-9772
Fax: (410) 727-5460
Email: rcostella@tydings.com
           agrochal@tydings.com

*Local Counsel to the Official Committee of Unsecured Creditors*

-and-

Robert T. Kugler (MN # 194116)
Edwin H. Caldie (MN # 388930)
Stinson LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Main: 612-335-1500
Facsimile:  612-335-1657
Email: robert.kugler@stinson.com
           ed.caldie@stinson.com

*Counsel to the Official Committee of Unsecured Creditors*

14