# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE,<br><br>Debtor. | Case No. 23-16969-MMH<br><br>Chapter 11<br><br>Judge Michelle M. Harner |

## MOTION OF STINSON LLP TO ESTABLISH CONFIDENTIALITY REPORTING PROCEDURES REGARDING DATA SECURITY

Stinson LLP, as counsel to the Official Committee of Unsecured Creditors (the "Committee") appointed in the Roman Catholic Archbishop of Baltimore's (the "Debtor") chapter 11 bankruptcy case hereby moves this Court (the "Motion") for entry of an order establishing procedures to file confidential status reports under seal. In support of the Motion, Stinson respectfully states as follows:

### BACKGROUND

1. The Debtor filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code on September 29, 2023 (the "Petition Date"). The Debtor is operating as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

2. On January 16, 2024, the Court entered its Order (I) Establishing Deadlines for Filing Proofs of Claim; (II) Approving Sexual Abuse Claim Supplement; (III) Approving Form and Manner of Notice; and (IV) Approving Confidentiality Procedures (the "Confidentiality Order"), Dkt. 316.

3. As part of the Confidentiality Order the Court approved and adopted the "Confidentiality Agreement," attached as Exhibit 4 thereto.

4. On June 12, 2025, the Court held a status conference where Stinson disclosed that, in February of 2025, it experienced a security incident, whereby cyber criminals, known in the cyber security industry as "Threat Actors," used criminal means to access and exfiltrate information on part of Stinson's systems that included a small subset of information that was provided to Stinson under the Confidentiality Agreement.

5. At the status conference, Stinson provided details concerning the incident, the impacted documents relating to these proceedings, and the measures taken to address the security incident and to safeguard, to the degree possible in these situations, against disclosure of the information that was exfiltrated.

6. The Court requested that Stinson consider additional efforts to update Survivors, the Court, and other interested parties as to the status of Stinson's efforts to address the security incident, including by providing updates to the Court under seal if necessary.

7. Section D of the Confidentiality Agreement provides the following protocols for filing Confidential Information, with the Court:

> (a) such Confidential Information is submitted to the Court's chambers marked "Confidential Information," and is filed with the Clerk of the Court under seal; (b) counsel for all Parties is notified in writing of the proposed use of such Confidential Information three (3) business days before such pleading is filed so that the applicable Producing Party may seek appropriate protective relief; and (c) there is no public disclosure unless the filing Party or Authorized Recipients obtains an order of the Court, after notice to all Parties and an in camera determination from the Court, on whether the Confidential Information may be publicly disclosed.

## **REQUEST FOR RELIEF**

8. To keep Survivors and other interested parties updated on the status of the security incident, Stinson requests that the Court adopt the following procedures for the filing of status reports related to the security incident:

a) Not more than once every three months (i.e., quarterly) Stinson may file under seal, an unredacted version of a status report (each a "Quarterly Status Report") for the purpose of providing the Court, and other authorized parties, with updates on the security incident.

b) This Motion shall constitute the motion contemplated by Local Rules, Appendix H(VII)(A), and no further motions shall be required in order for each of the Quarterly Status Reports to be filed under seal.

c) Stinson may provide a copy of the unredacted Quarterly Status Reports to any Authorized Recipient, as that term is used in the Confidentiality Agreement, provided the Authorized Recipient makes a written request to Stinson for service of such reports. Stinson will send an unredacted Quarterly Status Report to the Authorized Recipient by email or other secured file transmission method.

d) Stinson will not be required to file an unredacted or public version of any Quarterly Status Report, without further order of the Court.

e) Contemporaneously with the filing of a Quarterly Status Report, Stinson will post updates on the Committee's website, https://baltimoresurvivors.com/, that provides any non-Confidential Information from the Quarterly Status Reports.

f) In addition to any Confidential Information contained in the Quarterly Status Reports, each Quarterly Status Report should be considered Confidential Information, regardless of any markings on such documents.

g) Notwithstanding anything in the Confidentiality Agreement to the contrary, the Office of the United States Trustee (including any attorneys appearing in this chapter 11 case on its behalf), and any attorney representing a Survivor who is

affected by the security incident, which attorney or law firm is not already an Authorized Recipient, may become an Authorized Recipient by signing Exhibit A to the Confidentiality Agreement, but solely as to Confidential Information contained in the Quarterly Status Reports and that is necessary for such attorney to evaluate the nature of the security incident's effect on her/his client. But this provision should not be construed to prevent the Office of the United States Trustee or any attorney or law firm from accessing other Confidential Information in the manner provided in the Confidentiality Agreement.

9. The Quarterly Status Reports may contain, among other relevant updates,

   a) A brief history of the security incident and a summary of past reports and relevant background information;

   b) Disclosure of any further information that was unlawfully accessed or other relevant updates on the scope of the security incident;

   c) a report on any findings Stinson has made regarding the disclosure of Confidential Information on the internet, including the so-called "dark web";

   d) Statistics on the number of inquiries received from Survivors or their counsel regarding the security incident;

   e) An update on changes made to the https://baltimoresurvivors.com/ website regarding relevant resources and updates;

   f) An update on monitoring efforts undertaken by Stinson in the relevant period along with a report on the results of such efforts; and/or

   g) Any changes to other services provided by Stinson related to the security incident.

**ARGUMENT**

I. **THE COURT SHOULD AUTHORIZE STINSON TO FILE THE QUARTERLY STATUS REPORTS UNDER SEAL.**

Section 107(b)(2) of the Bankruptcy Code provides that the Court should "protect a person with respect to scandalous or defamatory matter contained in paper filed in a case under this title." 11 U.S.C. § 107(b)(2); *see also* Fed. R. Bankr. P. 9018 ("On motion or on its own initiative, with or without notice, the court may make any order which justice requires . . . to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code."). Additionally, in relation to any schedules and lists, Bankruptcy Rule 1007(j) provides:

> (j) IMPOUNDING OF LISTS. On motion of a party in interest and for cause shown the court may direct the impounding of lists filed under this rule, and may refuse to permit inspection by any entity. The court may permit inspection or use of lists, however, by any party in interest on terms prescribed by the court. Fed. R. Bankr. P. 1007(j)

At least one bankruptcy court has proposed that the language of section 107 of the Bankruptcy Code eliminates a court's discretion to keep confidential certain documents by making it mandatory for a court to protect those documents that fall into one of the enumerated exceptions of section 107. *See In re ACandS, Inc.*, 462 B.R. 88, 102 n.21 (Bankr. D. Del. 2011), rev'd on other grounds, sub nom, *In re Motions for Access of Garlock Sealing Techs. LLC*, 488 B.R. 281 (D. Del. 2013), as corrected (Mar. 15, 2013) (specifying "that the bankruptcy court shall" provide specified protections on "request of a party in interest" (emphasis added)). Because section 107(b) of the Bankruptcy Code imposes this mandatory requirement, it eliminates the balancing of public and private interests required by the common law rule, if a document is scandalous or defamatory. *Id.*

Here, this Court has already determined that Confidential Information should be protected from public disclosure in this case. The information Stinson proposes to file in the Quarterly Status

CORE/3529758.0002/200449310.3

Reports will likely contain the name of Survivors of child sexual abuse, each of whom have shared in detail the most horrific experiences of their lives. This type of information is exactly the kind of information that the Bankruptcy Code and Bankruptcy Rules are designed to protect from public disclosure. The Court has already provided protocols and procedures for limiting access of this information to the parties interested in this case, and Stinson's proposed procedures adheres closely to the Confidentiality Order.

## CONCLUSION

For these reasons, the Court should adopt Stinson's requested procedures and permit Stinson to filing the Quarterly Status Reports under seal for the duration of this chapter 11 case.

DATED: August 4, 2025

/s/*Edwin H. Caldie*
Edwin H. Caldie (admitted pro hac vice)
Andrew J. Glasnovich (admitted pro hac vice)
**STINSON LLP**
50 South Sixth St.
STE 2600
Minneapolis, MN 55402
6512.335.1500
Ed.caldie@stinson.com
Drew.glasnovich@stinson.com

CORE/3529758.0002/200449310.3