

**MICHELLE M. HARNER
U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

In re:                                    *
                                          *
Roman Catholic Archbishop of Baltimore,   *      Case No. 23-16969-MMH
                                          *
          Debtor.                         *      Chapter 11
                                          *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### <u>MEMORANDUM OPINION</u>

Chapter 11 is a powerful tool. The mere filing of a petition triggers an automatic stay of

most all actions concerning a debtor's prepetition financial affairs, including litigation seeking to

impose liability on the debtor or otherwise affect its assets. The automatic stay necessarily affects

the rights of the debtor's creditors and others whose lives have been impacted by, or intersected

with, the debtor.

Such is the case before the Court. The debtor in this case filed its chapter 11 petition in

anticipation of being named as a defendant in hundreds, if not thousands, of lawsuits relating to

claims of child sexual abuse. The imposition of the automatic stay in this case was notable for at

least two reasons. First, the case was filed immediately before a change in state law eliminating

the statute of limitations on claims asserted by the survivors of child sexual abuse. Second, the

Court determined that the stay extended to protect not only the debtor in this case but also property of the debtor and the debtor's estate, namely prepetition insurance policies.[1]

Although the Court has tried to narrowly craft its orders concerning the scope of the automatic stay, this case has precluded many individuals from being able to pursue their claims and causes of action against the debtor and certain nondebtor entities covered by the debtor's insurance policies for almost two years. Those individuals are parties in interest in this case and should be provided appropriate opportunities to address the Court and others. Not only is this approach warranted under the particular circumstances of this case, but it is also consistent with, and contemplated by the Court's authority under, sections 105(a) and (d)(1), 362, and 1109(b) of the Bankruptcy Code[2] and Federal Rule of Bankruptcy Procedure 5001(b).[3]

The Court is mindful of the need to proceed carefully to ensure that all parties' rights are protected, preserved, and addressed in accordance with the Code and the Bankruptcy Rules. The Court thus explains the grounds underlying its decision to hold an additional status conference in this case for certain claimants and sets forth the parameters of that conference.

---

[1] *See* ECF 173 (the "Stay Order"); 1127 (the "Supplemental Stay Order"). The Court did modify the automatic stay in this case for a limited period and purpose, as set forth in the Supplemental Stay Order. In addition, both the Stay Order and the Supplemental Stay Order provide a procedure for individuals to determine whether they are affected by the automatic stay in this case.

[2] 11 U.S.C. §§ 101 et seq. (the "Code"). The Court sets forth certain references and citations in the footnotes of this Opinion solely to allow for the provision of more (rather than less) information; the use of footnotes is not intended to minimize the importance of the materials or their relevance to the Court's holding.

[3] Referred to herein as the "Bankruptcy Rules." Bankruptcy Rule 5001(b) largely tracks the language of Federal Rule of Civil Procedure 77(b). Civil Rule 77(b)'s "permission for private conferences for non-trial matters 'articulates the traditional authority of a judge to speak, privately with the parties to a suit, whether in bench conferences or in chambers.' 14 Moore's Federal Practice § 77.03 (3d ed. 2024) (quoting B.H. v. McDonald, 49 F.3d 294 (7th Cir. 1995))." *In re Roman Cath. Bishop of Sacramento*, 667 B.R. 577, 580–81 (Bankr. E.D. Cal. 2025). In addition, Bankruptcy Rule 7016 incorporates Federal Rule of Civil Procedure 16. Civil Rule 16 "does not mandate any particular procedures for initial case management conferences … some judges conduct these kind of conferences much less formally, with counsel in chambers, with appearances by telephone or videoconferencing, or even off the record. Fed. R. Civ. P. 16; Fed. R. Bankr. P. 7016; 14 Moore's § 16.35[1] [a]." *Id*. at 581. Although Bankruptcy Rule 7016 does not automatically apply in contested matters, a bankruptcy judge may invoke its provisions. Fed. R. Bankr. P. 9014(c)(1) ("At any stage of a contested matter, the court may order that one or more other Part VII rules apply.").

## I.    Relevant Background

### A.    Filing and Automatic Stay

The Roman Catholic Archbishop of Baltimore (the "Debtor") filed a petition for relief under chapter 11 of the Code on September 29, 2023.[4] ECF 1. On that same date, the Debtor filed a Motion to Extend the Automatic Stay (the "Stay Motion") to certain related entities included as additional insureds under the Debtor's various current and legacy insurance programs. ECF 12. The Court entered an interim order granting certain of the relief requested by the Stay Motion, which was then continued under the Stay Order. ECF 52, 173.

The Stay Order was grounded, in part, on a finding that the Debtor's prepetition insurance policies are property of the Debtor's bankruptcy estate under section 541 of the Code. 11 U.S.C. § 541(a). The insurance policies name the Debtor as an insured and may be available to pay covered claims asserted against the Debtor in this case. The Stay Order is intended to preserve the value of estate assets for the benefit of all claimants and remains in effect to prevent parties from commencing or continuing litigation against the Debtor and certain of the Debtor's related entities that are also covered by the Debtor's insurance policies.

The Debtor has acknowledged that the filing of this case and the need for the Stay Order resulted primarily from the Maryland Child Victims Act (the "CVA"), passed by the Maryland General Assembly in April 2023. The CVA eliminated the statute of limitations on civil lawsuits involving claims of child sexual abuse. The CVA became effective on October 1, 2023, immediately after the filing of this case.[5]

---

[4] The Debtor is operating as a debtor in possession under section 1107 of the Code. 11 U.S.C. § 1107. All references to the Debtor herein include its role as a debtor in possession in this case.

[5] The Committee filed a motion to clarify the scope of the Stay Order (the "Committee Stay Motion"). ECF 1043. The Committee Stay Motion addressed important and time-sensitive issues facing Survivors (as defined below), the Debtor, the Debtor's nondebtor affiliates, and the Insurers, relating to an amendment to the CVA adopted by the Maryland General Assembly in April 2025. The Court held a hearing on the Committee Stay Motion and all related papers on May 1, 2025, and entered the Supplemental Stay Order shortly thereafter. ECF 1127.

B.  Mediation

Since that time, the Debtor, the Official Committee of Unsecured Creditors (the "Committee"), and the Debtor's insurance carriers (the "Insurers") have been engaged in this case, participating in mediation, and working towards a plan of reorganization. The primary creditors in this case are the survivors of child sexual abuse ("Survivors"), and the members of the Committee are in fact Survivors themselves. The mediation is ongoing and is governed by the Agreed Order Directing Mediation, Appointing Mediators, and Ordering Mediation Discovery (the "Mediation Order"). ECF 705.

C.  Prior Status Conferences

The Court has held several status conferences in this case.[6] Some have been set at the request of parties in interest; others have been set by the Court to understand the progress being made towards a chapter 11 plan of reorganization and to provide general information to parties in interest who may not be privy to the status of the mediation or the ongoing negotiations.

In addition, early in this case, the Committee filed a Notice of Presentation of Survivor Statements (the "First Notice"). ECF 418. By the First Notice, the Committee requested that the Court reserve two dates to permit Survivor statements from certain members of the Committee and other Survivor claimants who expressed a willingness and desire to address the Court. The Court reviewed the First Notice and considered, among other things, the issues and authority discussed in this Memorandum Opinion. The Court then issued an Order Granting Committee Request to Reserve Time for Presentation of Survivor Statements (the "First Order"). ECF 432.

---

[6] The Court has held approximately ten status conferences in this case since the petition date, addressing a variety of matters including the plan of reorganization process and notice and privacy issues in the case. For example, status conferences have been held on April 15, 2024 (set by Order entered at ECF 437), July 29, 2024, April 15, 2025 (set by Notice entered at ECF 1037), June 12, 2025 (set on Line Request for Status Conference filed at ECF 1186). In addition, the Court held two status conferences with Survivors under the First Order as discussed herein.

4

The First Order set two status conferences to allow Survivors to address the Court, the Debtor, and other parties in interest. The First Order set certain parameters to (i) ensure appropriate protections for Survivors given the nature of their claims; (ii) protect the integrity of the Court and the bankruptcy system; (iii) preserve the rights and remedies of all parties in this chapter 11 case; and (iv) limit the time allocated to any statements. Although those status conferences were considered off the record and not transcribed, the Court complied with applicable rules and general protocols.[7] All parties in interest and the public were able to attend the status conferences. No party contested the First Order; asked the Court to reconsider, vacate, or otherwise change the First Order; or objected to the participation of Survivors at the status conferences themselves.[8] Even after the first status conference under that order, no objections were lodged.

The Committee has now filed a second Notice of Presentation of Survivor Statements (the "Second Notice"). ECF 1036. The Court heard comments from the Committee, the Debtor, and one of the Insurers at a status conference on June 2, 2025. That Insurer, Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century"), then filed an objection to the Second Notice (the "Objection"). ECF 1204. The Court held a hearing on the Second Notice and the Objection on August 4, 2025 (the "Hearing").[9]

---

[7] Among other things, as explained in the First Order, although the status conferences were not transcribed, they were recorded, "which is standard protocol for the Court and necessary for the Court to preside over the Conferences, *but the recordings of the Conferences will not be released or transcribed without further Order of the Court, after notice and hearing, and only if and to the extent mandated by law or consented to by the parties.*" ECF 432 (emphasis in original).

[8] Century addressed this point in its post-Hearing paper. ECF 1256. The Court acknowledges the explanation but focuses on the circumstances and proceedings in this case. The Court further examines Century's concerns below in Part II.B.

[9] Century argues, among other things, that the Committee's Second Notice is not a proper motion or means for requesting a status conference. Indeed, Century highlights that the Second Notice does not request a status conference. The Court acknowledges these points. Nevertheless, the United States Court of Appeals for the Fourth Circuit has encouraged courts to resolve papers on the merits and not on technical deficiencies. *See, e.g., Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (noting the "federal policy of resolving cases on their merits instead of disposing of them on technicalities.") (citations omitted); *Colleton Prep. Academy, Inc. v. Hoover Univ., Inc.*, 616 F.3d 413, 417

The Court acknowledges the issues raised by the Objection, which deserve thoughtful consideration and reflection.[10] The Court has now had an opportunity to thoroughly review the relevant issues, the First Order, and the parties' respective arguments.[11] As explained below, the Court finds that the status conferences set by the First Order and now this Memorandum Opinion and related Order are appropriate under the Code and the Bankruptcy Rules. To help the parties understand the nature of, and basis for, these status conferences, the Court provides additional analysis here, which was not explicitly set forth in the First Order. *And again, the Court underscores the limited scope, nature, and purpose of these status conferences.*[12]

## II.    Legal Analysis

A chapter 11 case is a collective proceeding. It brings together all of a debtor's assets, liabilities, claims, and creditors into a single forum. There are any number of issues and disputes that may be addressed within the chapter 11 case, typically accomplished through a contested matter or an adversary proceeding. Both contested matters and adversary proceedings may involve an evidentiary hearing or trial. In addition, a court may hold status conferences and pre-trial conferences throughout the pendency of the case.

---

(4th Cir. 2010). *See also Conley v. Gibson*, 355 U.S. 41, 48 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."). The Court could grant the Committee leave to file a proper motion or enter an order setting a status conference sua sponte. Section 105(d) specifically authorizes the Court to set a status conference "on its own motion or on the request of a party in interest." 11 U.S.C. § 105(d). Thus, acknowledging the points, the Court resolves the pending matter on the merits and in a manner consistent with the Code and the Bankruptcy Rules, despite how the parties might characterize the requested relief.

[10] The Court likewise has considered the arguments and additional information set forth in Century's post-Hearing supplemental paper. ECF 1256. The Court appreciates Century addressing two specific questions raised by the Court at the Hearing. This Memorandum Opinion reflects the Court's decision after review of all papers and arguments.

[11] The Court also has reviewed the cases cited by the Committee where courts have allowed Survivors or other creditors to address the court outside of a formal hearing or trial and those cited by Century where such opportunities were denied, limited, or deferred. The Court notes that the decision to hold a status conference in any case is not a generic ruling but must be made only upon the specific circumstances before the Court. The Court respects the decisions of the other courts cited by the parties. The Court enters this Memorandum Opinion based on the circumstances of this case and the applicable Code sections and Bankruptcy Rules.

[12] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. The District Court has referred this case and this matter to this Court under 28 U.S.C. § 157(a) and Local Rule 402 of the United States District Court for the District of Maryland.

6

Section 105(d) of the Code provides, in relevant part, that the Court "on its own motion or on the request of a party in interest—(1) shall hold such status conferences as are necessary to further the expeditious and economical resolution of the case . . . ." 11 U.S.C. § 105(d)(1).[13] Courts use status conferences for a variety of purposes in any given case, from discussing discovery issues, to exploring potential settlement, to understanding the progress (or lack thereof) in the matter.[14] A status conference is a vital administrative tool available to federal courts both in- and outside of bankruptcy.

---

[13] As *Collier on Bankruptcy* notes,

> As part of the Bankruptcy Reform Act of 1994, Congress added section 105(d) regarding status conferences. This provision . . . permits even broader latitude to bankruptcy judges in managing their own docket, especially in chapter 11 cases. . . . Subsection (a) authorizes bankruptcy court judges to hold status conferences in bankruptcy cases and thereby manage their dockets in a more efficient and expeditious manner. Notwithstanding the adoption of Bankruptcy Rules 7016 (relating to pretrial conferences), some judges have appeared reluctant to do so without clear and explicit statutory authorization. This provision clarifies that such authority exists in the Bankruptcy Code in adversary and nonadversary proceedings.

2 COLLIER ON BANKRUPTCY ¶ 105.LH [5] and n.16 (16th ed. 2025) (notes and citations omitted). Congress further amended section 105(d) in 2005 to expressly state that the court also may hold status conferences in adversary proceedings. "The relevant congressional report states that the 2005 amendment 'mandate[s] that a bankruptcy court hold status conferences as are necessary to further the expeditious and economical resolution of a bankruptcy case.' H. Rep. No. 109-31, 109th Cong., 1st Sess. 93 (2005), *reprinted in* App. Pt. 10(b) *infra*." *Id.* at n.18.

[14] *See, e.g., In re Diocese of Buffalo, N.Y.*, 665 B.R. 198, 205 (Bankr. W.D.N.Y. 2024) ("To facilitate this process [advancing the case to confirmation], Congress amended the Bankruptcy Code in 2005 to permit status conferences. Thus, 11 U.S.C. § 105(d)(1) now provides that the Court, on its own motion, 'shall hold such status conferences as are necessary to further the expeditious and economical resolution of the case.'").

> Courts both in- and outside bankruptcy use status conferences in a variety of ways to manage and facilitate the effective resolution of cases pending before them; status conferences are not limited to scheduling matters. *See, e.g., Accident, Injury and Rehabilitation, PC v. Azar*, 336 F.Supp.3d 599 (D.S.C. 2018) (noting that the court held a status conference to discuss a pending motion and the possibility of settlement); *U.S. v. Agape Senior Community, Inc.*, 848 F.3d 330, 335 (4th Cir. 2017) (explaining that "[t]he various bases for the Attorney General's objection were stated and discussed during a series of status conferences conducted by the district court in an effort to determine if this action could be settled"); *Marsh v. Bottoms Up Gentlemen's Club, LLC*, No. EA-23-1157, 2024 WL 4838826 (D. Md. Nov. 20, 2024) (discussing a status conference held regarding discovery disputes); *In re CSC Developers, LLC*, No. 18-02053, 18-02054, 2019 WL 2306610 (Bankr. D.S.C. May 29, 2019) (noting prior status conferences held in the case); *Adams v. School Bd. Of Hanover Cty.*, No. 3:05cv310, 2008 WL 5070454, at *1–2 (E.D. Va. Nov. 26, 2008) (noting that at least two status conferences had been held to discuss "unaddressed issues," the possibility of settlement, and "the future of the litigation plan"); *In re Wakar*, No. 07-12557, 2007 WL 4353800 (Bankr. E.D. Va. Dec. 7, 2007) (citing section 105(d) relating to a status conference held at which new issues were raised in the case); *In re The Lady H Coal Company, Inc.*, 193 B.R. 233 (Bankr. S.D.W.V. 1996) (discussing status conference held to encourage settlement and hear updates on factual matters relating to the debtor).

A.    <u>Status Conferences in this Case</u>

In this case, the Court has set status conferences to discuss the status of mediation and negotiations concerning a chapter 11 plan; to understand the scope of data breaches potentially affecting Survivors and others involved in the case; and to allow Survivors to address the Court, the Debtor, and other parties in interest. The latter status conferences have been subject to certain safeguards and limitations, given the nature of the claims asserted by Survivors. Those conferences were nevertheless held only after notice and were open to the public.[15] The Court is not conducting proceedings behind closed doors or shutting parties out of the process. To the contrary, the Court finds the opportunity for individuals affected by this case to be engaged in the process necessary to the continued administration of the case.

From the outset, all parties have recognized the impact of this case on Survivors.[16] The Court has noted several times that, while it will allow the parties to use the chapter 11 process to resolve claims asserted against the Debtor, it will not allow the parties to hide behind the process or unnecessarily delay it. To date, the Court has been willing to work with the parties' timeline,[17] acknowledging that the Committee is working to communicate with Survivors and that the Court has and can provide opportunities for Survivors to participate in the process. The Court

---

[15] Century raises some concern with the notice provided after the First Notice (dated March 15, 2024) and before the entry of the First Order (dated March 21, 2024). ECF 418, 432. The First Order set two status conferences, as noted above, on April 8, 2024, and May 20, 2024. There were approximately three weeks between the filing of the First Notice and the first status conference. In addition, as the Court explained at the Hearing, the Court reviewed the First Notice under sections 102(1), 105(d), and 362 of the Code, as well as the applicable rules, and determined it appropriate to set status conferences under section 105(d)(1), which the Court may do on its own motion, to provide the opportunity for Survivors to address the Court, the Debtor, and other parties in interest.

[16] "The Debtor has sought this process to provide reasonable and equitable compensation to survivors, not to avoid providing compensation to survivors." Tr. ECF 91, p. 14. "As I believe we told the Court at the beginning of this case, this is all about the survivors and compensating the survivors while making sure the Archdiocese continue[s] its mission and ministry." Tr. ECF 297, p. 13.

[17] As the Debtor's counsel, Mr. Roth, explained: "So I think the timeline's difficult, and here is why. There's two pieces that have to come together at a minimum. One is the structure itself. And that's why I wanted to put pen to paper once we discussed the structure so everyone can see it. Everyone can be comfortable with it." Tr. ECF 1184, p. 13.

8

acknowledges that the Survivors may ultimately litigate their claims against the Debtor, but the fact remains that this case has now delayed for almost two years that kind of litigation or direct participation by Survivors in the litigation process.[18]

      B.    <u>Issues Raised by the Objection</u>

The Objection raises several issues with the Court holding another status conference for Survivors to address the Court, the Debtor, and other parties in interest.[19] These issues include potential prejudice to the process and a lack of statutory authority. The Court appreciates the engagement of Century and the other Insurers in this case. It not only is important for all parties in interest to appear and be heard, but it also helps the Court thoroughly vet issues and make the best possible decisions for the case. 11 U.S.C. § 1109.[20] Access to the Court—whether for an insurance

---

[18] As discussed at the Hearing, any litigation on the merits of any Survivor's claim against the Debtor would most likely be conducted outside the bankruptcy court. *See also In re Roman Cath. Bishop of Sacramento*, 667 B.R. 577, 580 (Bankr. E.D. Cal. 2025) ("The key relevant point regarding this Court is that it is *not* the trier of fact in the sex abuse personal injury tort actions. Nor, in light of 28 U.S.C. § 157(b)(5), could it ever be the trier of fact.") (emphasis in original).

[19] Century also posits that the Court could ask another bankruptcy judge in the district to preside over any status conference involving Survivors. Although that approach might be used in an appropriate case—perhaps under the Court's authority to appoint neutrals or mediators—the Court does not find it necessary or appropriate in this case. *See* Md. L. Bankr. R. 9019-2; *see also* 28 U.S.C. § 154(a). As explained herein, the Court has the authority to hold a status conference on a variety of matters in cases pending before it. The Court is likewise bound by the Code and the applicable federal rules (including the Federal Rules of Evidence) in any hearing or trial held in the case or any related adversary proceeding. A status conference does not change or affect the nature of any hearing or trial on the merits.

[20] Section 1109(b) of the Code shows Congress' desire to facilitate full participation in the chapter 11 process. As the United States Supreme Court has explained,

    In 1978, Congress enacted the Bankruptcy Code containing § 1109(b), which continued the expansion of participatory rights in reorganization proceedings. Congress moved from an exclusive list to the general and capacious term "party in interest," accompanied by a nonexhaustive list of parties in interest. These parties "may raise and may appear and be heard on any issue." 11 U.S.C. § 1109(b). "Section 206 ... and Chapter X Rule 10–210(a), the predecessor provisions of section 1109(b) of the Code, constituted an effort to encourage and promote greater participation in reorganization cases.... Section 1109(b) continues in this tradition and should be understood in the same way." *In re Amatex Corp.*, 755 F.2d 1034, 1042 (C.A.3 1985).

*Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268, 280 (2024). Although the Court agrees with Century that the Supreme Court's focus in *Kaiser* was the insurance companies' right to be heard on the proposed plan of reorganization, the Court finds no basis in the language of the *Kaiser* opinion or the Bankruptcy Code to limit participation by parties in interest to only formal hearings or trials set by the Court.

company, trade creditor, or Survivor—is vital to instilling confidence in the process and any ultimate resolution.[21]

The Court acknowledges that Century does not oppose the Survivors filing papers or participating in formal hearings or trials in the case; from the Court's perspective, the Objection focuses on whether Survivors should be provided an opportunity to participate in "any other act … or proceeding" held in the case outside a formal hearing or trial. Fed. R. Bankr. P. 5001(b). As explained below, the Court finds no grounds to foreclose that opportunity to Survivors. In addition, allowing Survivors to participate in a status conference or other non-evidentiary proceeding before the Court poses no greater risk of bias or prejudice than providing similar opportunities to any other party in interest in a bankruptcy case. This Court frequently hears statements from parties in interest in the courtroom that are not evidence or offered as part of an evidentiary hearing or trial. The Court can allow parties to speak without prejudicing the record.[22]

Courts regularly hold status conferences in bankruptcy cases.[23] As noted above, section 105(d) of the Code expressly authorizes the Court to conduct status conferences;

---

[21] The purpose of section 1109(b), namely allowing parties in interest to participate with respect to "the ultimate disposition of his or her interest . . . traces its origins to basic considerations of due process: that no person directly affected by a judicial proceeding should suffer the consequences of the proceeding without a meaningful opportunity to appear and be heard." 7 COLLIER ON BANKRUPTCY ¶ 1109.04 [2][b] (16th ed. 2025). Notably, the term "judicial proceeding" generally refers to "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment." PROCEEDING, Black's Law Dictionary (12th ed. 2024).

[22] Century raises a concern of potential bias and cites statements from other cases involving similar claims. ECF 1256. The Court is sensitive to this concern in this case and every case pending before it. Bankruptcy cases involve difficult issues. People lose their homes, their businesses, their jobs, their retirement benefits, and much more, and often the circumstances surrounding these events are not pleasant and can be emotional for the parties. Regardless of statements made in the courtroom during any act or other proceeding outside a formal hearing or trial, as stated in a prior note, the Court is bound by, and will follow, the Code and the applicable federal rules (including the Federal Rules of Evidence) in any hearing or trial held in the case or any related adversary proceeding.

[23] Again, as discussed in a prior note, courts use status conferences for a variety of reasons in any given bankruptcy or civil case. Although section 105(d)(2) identifies procedural reasons to set a status conference, section 105(d)(1) is not so limited. 11 U.S.C. § 105(d). In addition, parties may discuss information and aspects of the case or proceeding pending before the court at a status conference—whether for settlement purposes, scheduling purposes, or otherwise— but those statements do not turn the status conference into an evidentiary hearing or trial. *See, e.g.*, *Hines v. Koons*, No. 1:21-cv-01394, 2022 WL 3445162, at *2 (S.D. Ind. Aug. 16, 2022) ("Mr. Hines's statement that the incident occurred in 2018 was made verbally at a status conference, not in a "pleading." *Federated Mut. Ins. Co. v. Coyle*

conferences to, among other things, facilitate progress in the case and further other provisions of the Code. The relief requested by the Second Notice falls squarely within the Court's authority under the Code and the Bankruptcy Rules.

     1.  <u>The Applicable Code Sections and Bankruptcy Rules</u>

The filing of this chapter 11 case and section 362(a) of the Code stayed most all actions against the Debtor, the Debtor's property, and property of the estate. In maintaining the automatic stay, which necessarily affects the rights of the Debtor's creditors and other parties in interest, the Court must carefully balance competing interests and tailor the relief to the extent necessary and appropriate. As set forth in the Stay Order and the Supplemental Stay Order, the Court continues to find grounds to maintain the automatic stay in this case. The Court also, however, finds grounds under sections 105(d) and 362 of the Code and Bankruptcy Rule 5001(b) to hold additional status conferences in this case,[24] both to ensure continued progress and to provide an opportunity for creditors to address the Court, the Debtor, and other parties in interest.

The Court disagrees with the suggestion in the Objection that the requested relief is unauthorized or inappropriate. The Court has an interest in monitoring matters under section 362 of the Code, the Court's related Stay Order and Supplemental Stay Order, and the Mediation Order, all of which affect Survivors. This interest, together with the Court's stated authority under section 105(d)(1) of the Code, provide ample support for the Court to hold a status conference in

---

*Mech. Supply Inc.*, 983 F.3d 307, 312 (7th Cir. 2020) ('Pleadings include the complaint, the answer, and any written instruments attached as exhibits.'). And there is no indication that the parties stipulated that Mr. Hines's statements were true. *See* dkt. 22; *United States v. Barnes*, 602 F.3d 790, 796 (7th Cir. 2010) ('A stipulation is a contract between two parties to agree that a certain fact is true.').").

[24] At the Hearing, Committee counsel also relied upon section 1129 of the Code, which governs confirmation of a plan of reorganization. 11 U.S.C. § 1129. Under section 105 *and* either section 362 *or* 1129 of the Code, a status conference to allow parties in interest to address the Court and share their perspectives on the case—whether concerning the speed with which it is proceeding, the fact that it was filed, or the party's interactions with the debtor—is appropriate and beneficial, as it informs all parties' understanding of the alternative paths forward in this case and whether a formal hearing is needed at this (or a future) time. Such status conferences are not evidentiary in nature, and the Court is not adjudicating any matters on evidence, legal argument, or otherwise.

this case for Survivors to address the Court, the Debtor, and other parties in interest.[25] In addition, Bankruptcy Rule 5001(b), as well as Bankruptcy Rule 7016, specifically recognize the Court's authority to conduct non-hearing/non-trial matters outside the traditional courtroom setting.

Bankruptcy Rule 5001(b) is derived from former Bankruptcy Rule 501(b). The committee note to former Bankruptcy Rule 501(b) explains that the rule follows Civil Rule 77(b),[26] with certain changes to accommodate the nature of bankruptcy cases.[27] 12 COLLIER ON BANKRUPTCY ¶ 501.6 (14th ed. 1978). In exploring the parameters of former Bankruptcy Rule 501(b), *Collier on Bankruptcy* notes that the last sentence of the rule, which is similar to the last two in Bankruptcy Rule 5001(b), "is in keeping with the judicial power to do all things and perform all acts necessary to speed the case to a conclusion save determinations to be made on the merits which are contested, i.e., hearings within the first sentence of" the rule.[28] *Id*. at ¶ 501.8.

Case law and the federal rules have long recognized a court's ability to manage its own docket and to conduct certain activities and proceedings in chambers or otherwise outside the designated courtroom.[29] In addition, section 753(b)(2) of title 28 of the United States Code

---

[25] *See Law v. Siegel*, 571 U.S. 415, 421 (2014) (reaffirming that some equitable powers do remain in the bankruptcy court with the caveat that "[section] 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.' 2 Collier on Bankruptcy ¶ 105.01[2], p. 105–6 (16th ed. 2013)").

[26] For a thoughtful discussion of the authority granted by Civil Rules 77(b) and 16 and how they relate to a bankruptcy case, see *In re Roman Cath. Bishop of Sacramento*, 667 B.R. 577, 580 (Bankr. E.D. Cal. 2025).

[27] When drafting the original version of the Bankruptcy Rules, the Rules Committee noted that it was "sensitive to the need for retaining the advantages of expedition, economy, and simplicity that have characterized summary proceedings in bankruptcy, as it endeavors to develop uniform rules prescribing conformity to the Civil Rules, or adaptations thereof, in the conduct of adversary proceedings that seem assimilable to ordinary civil litigation in federal courts." Report of Advisory Committee on Bankruptcy Rules (Sept. 1, 1966), https://www.uscourts.gov/forms-rules/records-rules-committees/committee-reports/advisory-committee-rules-bankruptcy-procedure-september-1966.

[28] The term "hearing" is frequently defined as "1. A formal, scheduled setting in which an affected person presents arguments to a decision-maker . . . 3. A judicial session, usu. open to the public, held for the purpose of deciding issues of fact or of law, sometimes with witnesses testifying." HEARING, Black's Law Dictionary (12th ed. 2024). The term "trial" is frequently defined as "1. A formal judicial examination of evidence and determination of legal claims in an adversary proceeding. 2. Any lawsuit hearing at which evidence is introduced." TRIAL, Black's Law Dictionary (12th ed. 2024). A status conference is neither a hearing nor a trial.

[29] The United States Supreme Court has observed,

This Court has also held that district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases. *See, e.g., Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936) (district court has inherent power to

---

provides certain exceptions to the recording and transcription of proceedings.[30] Notably, as set forth in the First Order, this Court is not proposing to hold any status conferences in secret, outside of the public forum, or without a proper recording.

Rather, the Court will, as in the First Order, implement certain procedural guardrails to protect the identities of the Survivors and to preclude any party (including the Survivors) from using statements made at the status conference for any purpose whatsoever. Those protections are justified by the nature of the claims in this case, the ongoing mediation and stayed nonbankruptcy litigation, and the Court's prior order on confidentiality. ECF 316.

That said, the Court does agree with the overarching caution urged by the Objection and by Century's counsel at the Hearing. The Court must maintain control of the case, not allow parties to manipulate the process, and respect the general public nature of court proceedings. The Court is mindful of the need to preserve the integrity of the process in this case; it will not allow any party to get out in front of the mediation or other aspects of the plan of reorganization negotiations.

The Court is also, however, unwilling to allow parties to be shut out of the process or unnecessarily silenced by it. A status conference allowing Survivors to address the Court, the

---

stay proceedings pending resolution of parallel actions in other courts); *Link,* 370 U.S., at 631–632, 82 S.Ct. 1386 (district court has inherent power to dismiss case *sua sponte* for failure to prosecute); *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (district court has inherent power to vacate judgment procured by fraud); *United States v. Morgan,* 307 U.S. 183, 197–198, 59 S.Ct. 795, 83 L.Ed. 1211 (1939) (district court has inherent power to stay disbursement of funds until revised payments are finally adjudicated).
*Dietz v. Bouldin,* 579 U.S. 40, 47 (2016); *see also B.H. v. McDonald*, 49 F.3d 294, 298 (7th Cir. 1995) ("Rule 77(b) simply articulates the traditional authority of a judge to speak privately with the parties to a suit, whether in bench conferences or in chambers."); *In re Flint Water Cases*, No. 16-cv-10444, 2021 WL 2457986, at *2–3 (E.D. Mich. June 16, 2021) (discussing grounds for court's decision to hold two settlement conferences in chambers).
[30] 28 U.S.C. § 753(b)(2) ("Proceedings to be recorded under this section include … (2) all proceedings in other cases had in open court unless the parties with the approval of the judge shall agree specifically to the contrary …"); *see also, e.g., U.S. v. Jeffers*, 570 F.3d 557, 564–65 (4th Cir. 2009) ("Pertinent to this issue, the Seventh Circuit has explained that the Court Reporter Act 'does not require the conference on jury instructions to be held in open court.'") (citing *United States v. Murphy*, 768 F.2d 1518, 1535 (7th Cir. 1985)); *U.S. v. Piascik*, 559 F.2d 545, 548 (9th Cir. 1977) ("We do not suggest that every word spoken during a criminal trial must be recorded as, for example, during a bench conference where neither party requests that the conference be recorded. We note, also, that the statute refers to proceedings 'in open court' which probably excludes the pre-charge discussions of court and counsel when in chambers.").

Debtor, and other parties in interest is appropriate, an authorized tool available to the Court, and *needed* in this particular case to maintain confidence in the process and facilitate continued discussions and progress.

      2.  Relief Warranted in this Case

The Court will grant the relief requested by the Second Notice, subject to the terms and conditions of this Memorandum Opinion and the related Order. One such condition, which was only implicit in the First Order, is that any Survivors participating in the status conference must establish that they have filed proofs of claim in this case and are parties in interest under section 1109(b) of the Code. The Court will allow Survivors to provide the necessary information to the Committee, and the Committee to then certify that information to the Court in a manner that complies with the privacy and confidentiality provisions applicable in this case.

In addition, the status conference is intended by the Court to allow Survivors, as parties in interest, to have access to the Court in a setting frequently made available to debtors and creditors, namely a status conference and not a formal hearing or trial. Although related to the maintenance of the automatic stay in this case and the ongoing plan of reorganization process, the status conference is just that—an opportunity for Survivors to check in with the Court and, more importantly, the Debtor and other parties in this case and share their perspective. The status conference is not evidentiary in nature. No party will be testifying or offering evidence or legal argument. The Court will not be adjudicating any matters.

Finally, if Century or other parties in interest want to be heard on a status basis on matters pending in, or affecting, this case, the Court will consider setting additional status conferences upon proper motion or request.

The Court will enter a separate Order consistent with this Memorandum Opinion.

cc:     All parties in interest

**END OF MEMORANDUM OPINION**