## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE,<br><br>         Debtor. | Case No. 23-16969-MMH<br><br>Chapter 11<br><br>Judge Michelle M. Harner |

## MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR DERIVATIVE STANDING TO COMMENCE, PROSECUTE, AND SETTLE CAUSES OF ACTION ON BEHALF OF THE DEBTOR'S BANKRUPTCY ESTATE

The Official Committee of Unsecured Creditors (the "Committee") appointed in the Roman Catholic Archbishop of Baltimore's (the "Debtor") chapter 11 bankruptcy case hereby moves this Court (the "Motion") for entry of an order granting the Committee derivative standing to commence, prosecute, and (if the Court Approves) settle certain causes of action on behalf of the Debtor's bankruptcy estate. Pursuant to Local Rule 9013-2, the Committee will rely on the facts and law asserted in this Motion and will not submit a supplemental memorandum of law. In support of the Motion, the Committee respectfully states as follows:

### INTRODUCTION

The Debtor, the Committee, and their respective professionals continue to collaborate to progress this case towards a global settlement that will enable Survivors to recover just compensation for their suffering. To ensure those recoveries are as large and as equitable as possible, the Committee asked the Debtor on multiple occasions to pursue certain causes of action (the "Avoidance Actions") to avoid and recover for the benefit of the estate some of the transfers that were made within the ninety (90) days prior to the petition date to non-Debtor, Catholic

entities or other vendors (the "Proposed Defendants").[1]  The Avoidance Actions could bring more than one million dollars back into the estate for the benefit of Survivors. Yet the Debtor has unjustifiably refused to pursue the Avoidance Actions despite the Committee's demands to do so.

The expected benefits to the estate, both in terms of dollar recoveries and the resolution of more broadly applicable legal and factual issues, will far outweigh the costs of pursuing the Avoidance Actions.  For that reason, and in light of the Debtor's unreasonable refusal to pursue them, the Committee now asks the Court for derivative standing and authority to commence, prosecute, and (if the Court approves, any eventual settlement) settle those claims on behalf and for the benefit of the estate.

## BACKGROUND

1.      In the years preceding Debtor's bankruptcy filing on September 29, 2023 (the "Petition Date"), the Debtor faced mounting civil liabilities to Survivors and was at acute risk of insolvency.

2.      The statute of limitations for sex abuse claims was first expanded from the general three-year limitation to seven years in 2003.[2] It was expanded again in 2017 to the later of 20 years after a Survivor reached majority or three years after the defendant is convicted of certain related crimes (the "2017 Act").[3]

3.      The Maryland Office of the Attorney General then conducted an investigation and released its report in April 2023 finding that over 600 young people had been abused by at least

---

[1] The Avoidance Actions include claims for preferential transfers under 11 U.S.C. § 547(b) and constructive and actual fraudulent transfers under 11 U.S.C. §§ 548(a)(1) and 544(b)(1) and Maryland's Uniform Fraudulent Conveyance Act (Md. Code Ann., Com. Law, §§ 15-201, et seq.)(2025) ("MUFCA").  The facts justifying the Avoidance Actions are set out in the complaints (the "Complaints") attached as **Exhibits 1-5** to this Motion.

[2] See generally 2003 Md. Laws, Ch. 360.

[3] See 2017 Md. Laws, Chs. 12 & 656; 2003 Md. Laws, Ch. 360.

156 clergy members.[4] Throughout this time, Debtor continued to settle with Survivors while another expansion of the statute of limitations was looming.

4.      On April 11, 2023, the 2023 Maryland Child Victims Act (the "CVA") was signed into law abolishing the statute of limitations for childhood sex abuse claims, with an effective date of October 1, 2023.[5]

5.      The Debtor filed its bankruptcy petition on September 29, 2023, two days before the CVA effective date. Since then, nearly 1,000 Survivors have filed claims in this case.[6]

6.      Among those claims, at least eighty were not barred by the statute of limitations in the three years preceding the Petition Date. The value of each of those claims likely exceeded $500,000 in non-economic damages, and at least as much in economic damages[7]—placing Debtor's total exposure at no less $80,000,000.

7.      At the same time, Debtor transferred more than $1,014,539.70 of its own money to various entities, many of whom are affiliated with the Archdiocese, as more fully detailed in the Complaints attached as Exhibits 1-5.

8.      On June 30, 2025, counsel for the Committee sent Debtor's counsel a letter asking for a list of all pre-petition transfers the Debtor considered to be plausibly avoidable and all the avoidance actions the Debtor planned to pursue.[8]

---

[4] Maryland Child Victims Act of 2023, 2023 Session Senate Bill 686, Acts 2023, c. 5, § 1, eff. Oct. 1, 2023 (the "CVA"); Attorney General of Maryland, REPORT OF CHILD SEXUAL ABUSE IN THE ARCHDIOCESE OF BALTIMORE, REDACTED (April 2023).

[5] *Id.*

[6] *See generally* Claims Register, Bky. No. 23-16969.

[7] *See* Md. Code Ann., Courts and Judicial Proceedings Code § 11-108 (2025).

[8] *See Declaration of Andrew Glasnovich in Support of the Committee's Motion for Derivative Standing*, filed contemporaneously herewith.

9.      Debtor's counsel responded on July 1, 2025 stating that it did not believe any transfers were fraudulent and requesting that the Committee identify any transfers that may be avoidable.

10.     Despite it not being the Committee's fiduciary obligation to investigate and pursue avoidance claims in the first instance, the Committee sent a second letter on July 15, 2025 that provided, among other things, a list of transfers that occurred within ninety (90) days prepetition that may be avoidable, and requesting that the Debtor commence avoidance actions for those transfers or explain why the Debtor would not pursue such actions.[9]

11.     The Debtor's counsel responded on July 25, 2025, providing reasons why the transfers the Committee identified were not worth pursuing and protesting the fees spent in pursing those transfers "far outweighed" any benefit.[10]

12.     In turn—and based on the Debtor's refusal—the Committee sent a third letter on August 8, 2025, demanding that the Debtor commence avoidance actions for the identified transfers that had no meritorious defense.[11] The Committee also informed the Debtor that the Committee would seek derivative standing to pursue those actions if the Debtor refused.[12]

13.     Finally, on August 11, and 12, 2025, Stinson and Debtor's counsel exchanged emails wherein Debtor's counsel continued to argue that the Committee's identified transfers should not be pursued and Stinson asserted that, based on further information, transfers identified

---

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

in the Complaints were still viable actions.[13] The Debtor continues to refuse to pursue the transfers identified in the Complaints.[14]

14.     Following this extensive series of correspondence and fact investigation, the Committee now seeks derivative standing to pursue the Avoidance Actions. The Debtor has left the Committee with no other choice. Debtor's counsel has not provided the Committee with information sufficient to justify the Debtor's refusal to pursue the Avoidance Actions.

15.     While the Debtor and Committee were not able to reach agreement on the Avoidance Actions, the parties were able to agree on a one-year tolling period as to claims the Committee is investigating against 79 of the Debtor's affiliated schools, parishes, and funds. Those tolling agreements are forthcoming. As provided in the tolling agreements, the Committee reserves all rights to pursue those actions at a future date.

## JURISDICTION AND VENUE

16.     The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Standing Order 2012-05 from the United States District Court for the District of Maryland.

17.     The Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court has Constitutional authority to rule on this Motion by final order.

18.     Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[13] *Id.*

[14] *Id.*

6430265.1

5

## ARGUMENT

A creditors' committee is permitted, under certain narrow conditions, to file an action in bankruptcy court in place of the debtor-in-possession or trustee.[15] Where permitted, the Bankruptcy Code implicitly assigns "'the privilege of prosecuting" various actions on behalf of the debtor's estate.[16] In determining whether a creditor may bring a derivative suit, a bankruptcy court may grant derivative standing to a creditors' committee in two limited circumstances: (1) when the debtor-in-possession unreasonably refuses to bring suit on its own, or (2) when the debtor-in-possession grants consent.[17]

In determining whether a creditor may acquire standing to pursue a claim without the debtor's consent, courts will consider whether the suit by the creditor is (a) in the best interest of the bankruptcy estate, and (b) necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings.[18]

Seeking consent of the Debtor is implicitly a prerequisite for derivative standing since "[t]he debtor's unreasonableness substitutes only for its consent."[19] Central to the Court's inquiry is whether the Committee holds a "colorable claim supporting recovery and whether such claims

---

[15] Although the Fourth Circuit has not directly addressed whether derivative suits are permitted in the bankruptcy courts of this circuit, there is apparent approval of allowing derivative standing under strict circumstances. *See In re Baltimore Emergency Servs. II, Corp.,* 432 F.3d 557, 560 (4th Cir. 2005) (relying on neighboring circuits).

[16] *Id.,* quoting 7 Collier on Bankruptcy ¶ 1109.05[1] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.2005); id. at nn. 3–5.

[17] *In re Baltimore Emergency Servs. II, Corp.,* 432 F.3d at 560 (apparent approval of neighboring circuits that allow derivative standing in instances with strict conditions).

[18] *In re Baltimore,* 432 F.3d at 561, quoting *In re Commodore Int'l, Ltd.,* 262 F.3d 96, 100 (2d Cir. 2001) (approving the *Commodore* Test from the Second Circuit in the consent-based context); *see also In re Airocare, Inc.,* Bankruptcy No. 10–14519–RGM2011, WL 2133526, at *2 (Bankr. E.D. Va. May 24, 2011) (finding that the same requirements should be met where the debtor unreasonably refuses to bring suit on its own).

[19] *In re Airocare, Inc.,* Bankruptcy No. 10–14519–RGM2011, WL 2133526, at *2; *see In re Platinum Corral, LLC,* Case No.: 21-00833-5-JNC, 2021 WL 4695327, at *4 (E.D.N.C. Oct. 7, 2021).

would be likely to benefit the bankruptcy estate."[20] As a matter of public policy, courts have a significant interest in "reducing the number of ancillary suits that can be brought in the bankruptcy context so as to advance the swift and efficient administration of the bankrupt's estate. This goal is achieved primarily by narrowly defining who has standing in a bankruptcy proceeding."[21]

The Committee's proposed actions carry a minimal cost but have the potential to return over one million to the estate and advance efforts to reach an overall global resolution. Moreover, the Complaints state colorable causes of action that the Debtor unjustifiably refuses to pursue despite requests and a written demand from the Committee.  In these circumstances, the Committee has a duty to take action and seek the Court's permission to do so.[22]

## I.   THE COMMITTEE DEMANDED THAT THE DEBTOR PURSUE THE AVOIDANCE ACTIONS AND THE DEBTOR UNREASONABLY REFUSED.

The Committee has communicated extensively with Debtor in an attempt to reach a mutual resolution on the Avoidance Actions and maximize recovery for the estate. Despite repeated attempts by the Committee to instigate action, the Debtor refuses to pursue litigation against its insider affiliates and trade vendors.[23] The Debtor's refusal to pursue the Avoidance Actions is not

---

[20] *Point Service Corp. v. Pritchard Mining Co., Inc.*, 3:09-0145, 2010 WL 1410673 at *4 (S.D.W. Va. Mar. 31, 2010), citing *Unsecured Creditors Comm. of Debtor STN Enters., Inc. v. Noyes (In re STN Enters.)*, 779 F.2d 901, 905 (2d Cir. 1985).

[21]  *Richman v. First Woman's Bank* (*In re Richman*), 104 F.3d 654, 656–57 (4th Cir.1997)

[22] *In re first Capital Holdings Corp.*, 146 B.R. 7, 11 (Bankr. C.D. Cal. 1992) ("A creditors' committee has a duty to take action when the debtor fails to take appropriate action for the benefit of the estate. … [I]t may seek court permission to institute an action itself on behalf of the estate.  If the committee believes that the debtor has failed to fulfill its duty to prosecute actions, the committee has an obligation to bring this to the attention of the Court."); *See also In re Eastman Kodak Co.*, No. 12-10202 ALG, 2012 WL 2501071, at *3 (Bankr. S.D.N.Y. June 28, 2012) (stating that a committee has a duty to maximize value for the bankruptcy estate).

[23]  *See Declaration of Andrew Glasnovich in Support of the Committee's Motion for Derivative Standing*, filed contemporaneously herewith.

only unjustified, but is also a violation of Debtor's fiduciary duty—as a debtor-in-possession—to maximize the estate for the benefit of creditors.

A debtor-in-possession owes fiduciary duties to its creditors and must act with diligence to preserve the assets of the bankruptcy estate.[24]  In light of those duties, analyzing a debtor's refusal to take action with respect to estate assets "focuses on whether a clear benefit to the estate can be identified or whether only insignificant benefits would be realized."[25]  Rather than conduct a mini-trial to evaluate a request for derivative standing, a court must weigh the potential costs against the plausible benefits of the action.[26]

Here, the Debtor obviously feels uncomfortable admitting that transfers were imprudently made at a time when the Debtor was acutely aware of the mounting wave of child sex abuse claims that would lead to this chapter 11 case.  Likewise, the Debtor is likely concerned about litigating against the Proposed Defendants, many of whom are affiliated with the Archdiocese and the Catholic Church. But, the Debtor elected to put aside that discomfort and concern when it invoked the protection of the Bankruptcy Code.

The Committee has worked in good faith with the Debtor to illustrate that the Avoidance Actions are colorable claims with the potential to return significant funds to the estate.  The Debtor has no valid justification for refusing to take-up these Avoidance Actions, and therefore the Court should permit the Committee to step in and recover assets when the Debtor will not.

---

[24] *See generally Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985) ("The fiduciary duty of the trustee runs to shareholders as well as to creditors.").

[25] *In re Foster*, 516 B.R. 537, 542–43 (B.A.P. 8th Cir. 2014), *aff'd*, 602 Fed. Appx. 356 (8th Cir. 2015).

[26] *See, e.g., In re Adelphia Comm'ns. Corp.*, 330 B.R. 364, 386 (Bankr. S.D.N.Y. 2005); *In re Roman Cath. Bishop of Great Falls, Montana*, 584 B.R. 335, 338–39 (Bankr. D. Mont. 2018) (citing *In re Yellowstone Mountain Club, LLC*, 2009 WL 982207 *6 (Bankr. D. Mont. 2009).

6430265.1

## II.   THE COMPLAINTS STATE COLORABLE CAUSES OF ACTIONS.

In the context of a creditor's request for derivative standing, the creditor's proposed action is "colorable" if it would survive a motion to dismiss.[27]  Establishing a colorable claim is a low standard that is easily met.[28]  To meet this standard, the Committee need only show that, if the alleged facts were taken as true, it would have a plausible claim or cause of action.[29]

Taking the alleged facts as true, the various claims under one or more of the five Complaints together state seven colorable causes of action.  Those claims include: (1) transfers to the transferee within the 90 days prepetition are avoidable as a preference under  § 547 of the Bankruptcy Code; (2) certain transfers to the transferee within two years of the Petition Date were actual fraudulent transfers avoidable under § 548(a)(1)(A) of the Bankruptcy Code; (3) certain transfers to the transferee within two years of the Petition Date were constructive fraudulent transfers avoidable under § 548(a)(1)(B) of the Bankruptcy Code; (4) certain transfers to the transferee within three years of the Petition Date were actual fraudulent transfers under Maryland's UFCA § 15-207 and are avoidable under § 544(b)(1) of the Bankruptcy Code; (5) certain transfers to the transferee within three years of the Petition Date were constructive fraudulent transfers under Maryland's UFCA § 15-206 and are avoidable under § 544(b)(1) of the Bankruptcy Code; (6) certain transfers to the transferee within three years of the Petition Date were constructive

---

[27] *In re Roman Cath. Bishop of Great Falls, Montana*, 584 B.R. 335, 339 (Bankr. D. Mont. 2018) ("[T]he Diocese does not dispute that the Committee's claims challenging the affiliates' interests are indeed colorable, i.e., that they could surely survive a motion to dismiss.").

[28] *See, e.g., Adelphia Comm'ncs Corp. v. Bank of America NA (In re Adelphia Commc'ns Corp.)*, 330 B.R. 364, 376 (Bankr. S.D.N.Y. 2005) (holding that the requisite standard for presenting a "colorable" claim is not a difficult one to meet); *Official Comm. of Unsecured Creditors v. Hudson United Bank (In re America's Hobby Ctr.)*, 223 B.R. 275, 288 (Bankr. S.D.N.Y. 1998) (observing that only if the claim is "facially defective" should standing be denied).

[29] *E.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (citations omitted).

fraudulent transfers under Maryland's UFCA § 15-204, and are avoidable under § 544(b)(1) of the Bankruptcy Code; and (7) all the avoidable transfers are recoverable for the benefit of the estate under § 550 of the Bankruptcy Code.

The Debtor transferred more than $1,014,539.70 to Proposed Defendants within the 90 days prepetition. These transfers were: (i) on account of antecedent debt and allowed the Proposed Defendant to receive more than it would if this was a Chapter 7 case;  (ii) provided no equivalent value to the Debtor;and/or, (iii) were donations by the Debtor to the Proposed Defendant likely for charitable purposes, which, while an admirable sentiment, are not a permissible expenditure when an entity faces millions of dollars of liabilities arising from claims of child sexual abuse. The defenses raised by the Debtor are twofold: that Debtor was a mere conduit for one or more of the transfers and/or the transfers were in the ordinary course of business under § 547(c)(2) of the Code.

The Debtor has produced insufficient evidence to support its positions, especially given the high evidentiary burden imposed on a party claiming a trust or other custodial relationship over assets to which it holds legal title. There is not clear and convincing evidence to suggest that the Debtor was a mere conduit for the transfers at issue, an affirmative defense to an action for recovery under §§ 547 and 548 of the Code.[30] Indeed, the court in the Diocese of Santa Rosa chapter 11 case recently permitted the unsecured creditors committee to initiate actions notwithstanding the same asserted defense on the same type of gratuitous transfers.[31] Instead, the current evidence presented by the Debtor, shows the Debtor made all transfer from its general operating account, commingled with the Debtor's operating funds, and used at least some of the

---

[30] *In re CVEO Corp.*, 327 B.R. 210, 216 (Bankr. D. Del. 2005).

[31] ORDER GRANTING OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR STANDING AND AUTHORITY TO COMMENCE, PROSECUTE, AND SETTLE CAUSE OF ACTION ON BEHALF OF THE DEBTOR'S BANKRUPTCY ESTATE, the Roman Catholic Bishop of Santa Rosa, 23-10113 (CN), Dkt. 1426.

alleged conduit funds for its general operations. This demonstrates to the Committee that the Debtor had dominion and control over the funds and was not a mere conduit.[32]

There is also insufficient evidence that any of the Proposed Defendants are entitled to the ordinary course of business defense, an affirmative defense to a preference claim under § 547 of the Code. The Debtor presented no regular history of payment or an expert opinion that the payments were paid on ordinary terms within the industry. Indeed, the Committee has not seen any evidence showing a history of payments to demonstrate the transfers were made in the ordinary course of dealings between the parties.[33]

At the very least, both affirmative defenses are fact intensive and must be proven, not by the Committee, but by the person alleging the affirmative defenses. Because the Committee has stated colorable claims, it should be permitted to pursue these valuable estate assets.

## III.   THE AVOIDANCE ACTIONS ARE NECESSARY AND BENEFICIAL TO THE DEBTOR'S REORGANIZATION.

 The Avoidance Actions are the only mechanism by which to recover over one million dollars that the Debtor placed beyond the reach of its creditors in the days preceding the Petition Date.  The Avoidance Actions are necessary to maximize the value of the Debtor's bankruptcy estate. Furthermore, pursuing the Avoidance Actions would help progress the Debtor's reorganization proceedings in other ways as well.

Although the Committee is fully committed to prosecuting these Avoidance Actions, it would also propose to stay any litigation once the Complaints are filed and served, to allow for mediation to continue with the Debtor, in the hopes of reaching a consensual resolution to this

---

[32] *In re U.S. Interactive, Inc.*, 321 B.R. 388, 396 (Bankr. D. Del. 2005).

[33]  *In re Jeffrey Bigelow Design Group, Inc.*, 956 F.2d 479, 486 (4th Cir.1992) ("Those courts testing a transfer for 'ordinariness' under section 547(c)(2) have generally focused on the prior conduct of the parties ... and, particularly, whether payment resulted from any unusual action by either the debtor or creditor.").

6430265.1

chapter 11 case. If mediation breaks down, or if one or more of the Proposed Defendants wishes to continue litigation, the Committee would be fully prepared to see the adversary proceedings through to their conclusion.

Although litigation of the Avoidance Actions does not come without typical litigation expense, the amount at issue, over $1,014,539.70, will fully justify litigation through trial. Ultimately, the cost to litigate the Avoidance Actions is no more than that of any other claims brought under chapter 5 of the Bankruptcy Code—proceedings that this Court routinely oversees and awards reasonable attorneys' fees to trustees and debtors who choose to pursue such claims. More importantly, the development of facts and law during litigation might also illuminate other disputed issues in the case or impose internal and external pressure on the Debtor to reach a consensual settlement with the Committee to stave off these suits.

Because the Avoidance Actions seek to recover a substantial amount for the benefit of creditors, as well as develop important factual and legal issues integral to this chapter 11 case, the Court should permit the Committee to pursue these actions.

## IV. THE COURT SHOULD EQUITABLY TOLL THE TIME TO FILE THE AVOIDANCE ACTIONS UNDER SECTION 546(a) OF THE CODE.

The Court ordinarily has authority to equitably toll the running of a statute of limitations whenever a litigant establishes that "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."[34] The doctrine is appropriately invoked when, "due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice."[35]

---

[34] *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016).

[35] *Warfaa v. Ali*, 1 F.4th 289, 294 (4th Cir. 2021).

Here, the Committee has spent months investigating transfers made by the Debtor to its insiders, affiliates, and related Catholic and other transfers made within the 90 days prepetition. The Debtor, while claiming to have investigated avoidance actions and concluded none were actionable, and despite its affirmative duty to do so, had done little to develop any facts the Committee believes were actually necessary to properly evaluate these claims. The Committee is further justified in requesting tolling given the procedural hurdles imposed by having to seek court permission before filing its complaints. The Committee has done so timely, but acknowledges that the disposition of the request for relief is subject to court approval. If the Court grants the Committee derivative standing, the Committee will act with all haste to file the Complaints prior to the September 29, 2025 statutory deadline to initiate the Avoidance Actions.  But if the Committee is delayed in obtaining authority to file, the record supports a brief tolling of the time to act under Section 546(a) through and including January 29, 2026.

## CONCLUSION

For the foregoing reasons, the Committee seeks authority to recover assets of the estate for the benefit of creditors.  The Committee's proposed actions are reasonable under the circumstances and will cost the estate little, particularly compared to the potential value of the recoverable transfers at issue.

Date: August 18, 2025                                Respectfully submitted,

                                                     /s/ Alan M. Grochal
                                                     Alan M. Grochal, Fed. Bar No.: 01447
                                                     Richard L. Costella, Fed. Bar No. 14095
                                                     Tydings & Rosenberg LLP
                                                     1 East Pratt Street, Suite 901
                                                     Baltimore, Maryland 21202
                                                     Tel: (410) 752-9772
                                                     Fax: (410) 727-5460
                                                     Email: rcostella@tydings.com
                                                            agrochal@tydings.com

6430265.1

13

*Local Counsel to the Official Committee of Unsecured Creditors*

-and-

Edwin H. Caldie (MN # 388930)
Andrew J. Glasnovich (MN #398366)
Stinson LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Main: 612-335-1500
Facsimile:  612-335-1657
Email:  ed.caldie@stinson.com
        drew.glasnovich@stinson.com

*Counsel to the Official Committee of Unsecured Creditors*

6430265.1

14

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 18th day of August 2025, a copy of the foregoing *MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR DERIVATIVE STANDING, EXHIBITS AND PROPOSED ORDER* were served on all parties that are registered to receive electronic filing through the CM/ECF system on the attached list.


*/s/Alan M. Grochal*
Alan M. Grochal

6430265.1

**The following parties received CM/ECF notice of the filing:**

Nathan D. Adler, Esquire: nda@nqgrg.com
Philip D. Anker, Esquire: philip.anker@wilmerhale.com
Sam Alberts, Esquire: sam.alberts@dentons.com
Monique D. Almy, Esquire: malmy@crowell.com
G. Calvin Awkward, III, Esquire: cawkward@goldbergsegalla.com
Gary Bahena, Esquire: garybahena@bahenalaw.com
Hugh M. Bernstein, Esquire: hugh.m.bernstein@usdoj.gov
Diane C. Bristow, Esquire: dcb@nqgrg.com
Edwin H. Caldie, Esquire: ed.caldie@stinson.com
Richard L. Costella, Esquire: rcostella@tydings.com
PhilipTucker Evans, Esquire: philip.evans@hklaw.com
Kevin Foreman, Esquire: kforeman@carltonfields.com
Andrew Freeman, Esquire: adf@browngold.com
Andrew Glasnovich, Esquire: drew.glasnovich@stinson.com
Gary R. Greenblatt, Esquire: grg@cooncolelaw.com
Geoffrey Grivner, Esquire: geoffrey.grivner@bipc.com
Alan M. Grochal, Esquire: agrochal@tydings.com
Megan Harmon, Esquire: megan.harmon@bge.com
Catherine Keller Hopkin, Esquire: chopkin@yvslaw.com
Robert Keith Jenner: rjenner@jennerlawfirm.com
Steven J. Kelly, Esquire: skelly@gelaw.com
Nicole Khalouian, Esquire: nicole.khalouian@stinson.com
Robert T. Kugler, Esquire: robert.kugler@stinson.com
C. Scott Kunde, Jr., Esquire: scott.kunde@hklaw.com
Anthony May, Esquire: amay@browngold.com
Gordon Z. Novod, Esquire: gnovod@gelaw.com
Timothy P. Palmer, Esquire: timothy.palmer@bipc.com
Mark David Plevin, Esquire: mplevin@crowell.com
David Kendall Roberts, Esquire: droberts2@omm.com
Annette Rolain, Esquire: arolain@ruggerilaw.com
Blake D. Roth, Esquire: blake.roth@hklaw.com
James P. Ruggeri, Esquire: jruggeri@ruggerilaw.com
Jonathan Schapp, Esquire: jschapp@goldbergsegalla.com
U.S. Trustee – Baltimore: ustpregion04.ba.ecf@usdoj.gov
Irving Edward Walker, Esquire: iwalker@coleschotz.com
Jonathan Schochor, Esquire: jschochor@sfspa.com
Kerry Staton, Esquire; kstaton@sfspa.com
Joshua F. Kahn, Esquire; jkahn@sfspa.com
Thomas F. Yost, Esquire; tyost@yostlaw.com
Desirae Krislie C. Tongco, Esquire; dtongco@omm.com

6430265.1

Joshua D. Weinberg, Esquire: jweinberg@ruggerilaw.com
Adam R. Dunst, Esquire, adunst@goldbergsegalla.com
Samantha J. Hanson-Lenn, Esquire, Samantha.hansonlenn@stinson.com
Eric G. Korphage, Esquire, korphagee@whiteandwilliams.com
Robert H. Kline, Esquire, kliner@whiteandwilliams.com
Matthew M. Weiss, Esquire, mweiss@phrd.com
John E. Bucheit, Esquire, jbucheit@phrd.com
Matthew G. Roberts, Esquire, mroberts@phrd.com
John Grossbart, Esquire, john.grossbart@dentons.com
Siobhain P. Minarovich, Esquire, manarovics@whiteandwilliams.com
Justin P. Fasano, Esquire, jfasano@mhlawyers,com
Matthew C. Nelson, Esquire, matthew.nelson@kennedyslaw.com
Jillian G. Dennehy, Esquire, jillian.dennehy@kenedyslaw.com
James R. Murray, Esquire, jim.murray@blankrome.com
James D. Carter, Esquire, james.carter@blankrome.com
Robyn L. Michaelson, Esquire, robyn.michaelson@blankrome.com
Sara G. Klein, Esquire, sklein@manlystewart.com
Gary P. Seligman, Esquire, gseligman@wiley.law
Ezhan S. Hasan, Esquire, ahasan@wiley.com
Michael J. Belsky, Esquire, mbelsky@sbwdlaw.com
Catherine A. Dickinson, Esquire, cdickinson@sbwdlaw.com
Isabella R. Sayyah, Esquire, isayyah@gibsondunn.com
Matthew A. Hoffman, Esquire, mhoffman@gibsondunn.com
Ryan S. Appleby, Esquire, rappleby@gibsondunn.com
Michael A. Rosenthal, Esquire, mrosenthal@gibsondunn.com
Todd C. Jacobs, Esquire, tjacobs@phrd.com
Jesse J. Bair, Esquire, jbair@burnsbair.com
Timothy W. Burns, Esquire, tburns@burnsbair.com
Jared Zola, Esquire, jared.zola@blankrome.com
Anthony J.M. Kikendall, Esquire, kikendalla@whiteandWilliams.com
Eileen King Bower, Esquire,  Eileen.kingbower@clydeco.us
Robert M. Westra, Esquire, rwestra@ppsrlaw.com
Kevin A. Clasing, Esquire, kclasing@ppsrlaw.com
Morgan K. Stippel, Esquire, mstippel@burnsbair.com
Justine M. Daniels, Esquire, jdaniels@omm.com
Ryan S, Perlin, Esquire, perlin@mdtrialfirm.com
Emily C. Malarkey, Esquire, malarkey@mdtrialfirm.com
Jodie E. Bekman, Esquire, jbekman@gfrlaw.com
Timothy Karcher, Esquire, tkarcher@proskauer.com
Paul Possinger, Esquire, ppossinger@proskauer.com
Christopher White, Esquire, Christopher.white@clydeco.us
Clinton Cameron, Esquire, Clinton.cameron@clydeco.us
Bret Kabacinski, Esquire, bret.kabacinski@clydeco.us
Douglas McGill, Esquire, dmcgill@webbermcgill.com
Christopher Sevedge, Esquire, Christopher.sevedge@stinson.com

6430265.1