# EXHIBIT 2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re: | Case No. 23-16969-MMH |
| Roman Catholic Archbishop of Baltimore, | (Chapter 11) |
| Debtor. | |

| | |
|---|---|
| The Official Committee of Unsecured Creditors, | |
| v. | Adv. Proc. No._____-MMH |
| Commissariat of the Holy Land for the United States of America, | |
| Defendant. | |

## COMPLAINT TO AVOID AND RECOVER TRANSFERS
## PURSUANT TO 11 U.S.C. §§ 544, 547, 548 AND 550

The Official Committee of Unsecured Creditors (the "Committee") of the Roman Catholic Archbishop of Baltimore, Maryland (the "Debtor") alleges as follows upon knowledge with respect to itself, and upon information and belief as to all other matters:

### INTRODUCTION

1.      This adversary proceeding is brought to avoid and recover (i) preferential transfers that occurred during the ninety (90) day period prior to the commencement of the bankruptcy case pursuant to 11 U.S.C. §§ 547 and 550; and (ii) fraudulent transfers pursuant to 11 U.S.C. §§ 544, 548, and 550, and Maryland Uniform Fraudulent Conveyance Act (Md. Code Ann. §§ 15-201, *et seq.*) ("MUFCA").

2.    The Debtor transferred funds to the Commissariat of the Holy Land for the United States of America ("CHL") within the 90 days prepetition and were either made in connection with services provided by the CHL on account of an antecedent debt which enabled CHL to receive more than it would if this were a chapter 7 case, or in the alternative, made without receiving reasonably equivalent value in exchange.

3.    Moreover, those transfer of funds of the Debtor's property, which occurred on the date shown in Exhibit A, were made while the Debtor was insolvent or believed that it would incur debts to its creditors—including without limitation the survivors of sexual abuse ("Survivors") with claims against the Debtor—exceeding the Debtor's ability pay.

4.    For years the Catholic Church erred by prioritizing its own reputation over the safety and sanctity of children.

5.    That error caused untold harm to countless individuals, exacerbated by the Church's practice of denying wrongdoing and obfuscating the truth.

6.    The Debtor should not be permitted to use this bankruptcy process to repeat these behaviors.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b), and Standing Order 2012-05 from the United States District Court for the District of Maryland.

8.    This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(H).

9.    The statutory predicates for the relief requested herein are Sections 544, 547, 548, and 550 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 7001, *et seq.* of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

CORE/3529758.0002/230991589.2

10.    This action is brought as an adversary proceeding pursuant to Bankruptcy Rule 7001(a).

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a) because this is a core proceeding arising in a bankruptcy case pending in this district.

12.    Pursuant to Rule 7008 of the Bankruptcy Rules and Rule 7012-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland (the "Local Rules"), the Committee consents to the entry of a final judgment or order with respect to the Complaint if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## THE PARTIES

13.    The Committee is the Official Committee of Unsecured Creditors appointed by the United States Trustee pursuant to 11 U.S.C. § 1102(a)(1).

14.    The Debtor, a corporation solely organized under the laws of the State of Maryland, is the debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy case.

15.    The CHL is a non-profit corporation headquartered, registered, and organized under the laws of Washington, D.C., with a principal place of business at 1400 Quincy St. NE, Washington, District of Columbia 20017, and with a registered agent of Rev. David Grenier, 1400 Quincy St. NE, Washington, District of Columbia 20017.

16.    Pursuant to the Order Granting Official Committee of Unsecured Creditors' Motion for Derivative Standing to Commence, Prosecute, and Settle Cause of Action on Behalf of the Debtor's Bankruptcy Estate entered on _____, 2025 by the Bankruptcy Court for the District of Maryland in the above-captioned chapter 11 case (see Docket No. _____), the Committee has standing to bring these claims in the place of the trustee (i.e., the debtor-in-possession).

CORE/3529758.0002/230991589.2

## FACTUAL BACKGROUND

**Maryland Statute of Limitations Reform**

17.    As early as 1994, the Maryland General Assembly considered establishing a longer limitations period for child sex abuse claims than the general three-year statute of limitation to civil claims.

18.    The Maryland General Assembly first expanded the statute of limitation to seven years in 2003. *See generally* 2003 Md. Laws, Ch. 360.

19.    Then again in 2017, the legislature expanded the statute of limitation (the "2017 Act") to permit filing an action for sex abuse within the later of 20 years after the survivor reaches the age of majority or three years after the defendant is convicted of certain related crimes, effective on October 1, 2017. *See* 2017 Md. Laws, Chs. 12 & 656

20.    The Maryland Office of the Attorney General then conducted an investigation and issued a report in April 2023.

21.    The report detailed a "history of repeated dismissal or cover up" of abuse by the Catholic Church hierarchy and found that more than 600 young people had been abused by at least 156 clergy members since the 1940s within the Archdiocese of Baltimore.

22.    Following the Attorney General's report, the Maryland General Assembly passed the Maryland Child Victims Act of 2023, 2023 Session Senate Bill 686, Acts 2023, c. 5, § 1, eff. Oct. 1, 2023 (the "CVA"), which was signed into law on April 11, 2023, and subsequently amended after the Petition Date.

23.    The CVA eliminated the statute of limitations for all civil claims arising out of a claim of sexual abuse that occurred when the victim was a minor.

24.    The CVA was passed with the purpose of holding organizations, like the Debtor, liable and responsible for the damages they caused Survivors.

CORE/3529758.0002/230991589.2

25.    On September 29, 2023, (the "Petition Date") the Debtor filed its petition for relief under chapter 11 of title 11 of the United States Code.

26.    The CVA became effective on October 1, 2023, meaning Survivors' claims for sexual abuse against the Debtor would no longer be time-barred on or after that date.

27.    During the ninety days (90) days before the Petition Date, that is between July 1, 2023 and September 29, 2023 (the "Preference Period"), the Debtor continued to operate and transfer property to various entities.

28.    Debtor made transfers of interest of Debtor's property to or for the benefit of the CHL during the Preference Period through payment(s) aggregating to an amount of not less than $184,747.25

**The Debtor's Pre-Petition Efforts to Address its Liability to Survivors**

29.    Debtor has historically faced a multitude of sex abuse claims dating back to at least the 1940s.

30.    In the three years preceding the Petition Date, between September 29, 2020 September 29, 2023, Debtor entered into settlement agreements with more than a dozen Survivors of historical priest misconduct.

31.    The sex abuse claims and related settlements that occurred in the three years preceding the Petition Date is only a small subset of all claims against Debtor.

32.    The Debtor's civil liability exposure for historical sex abuse claims that were previously barred by the 2017 Act became imminent when the CVA was passed.

33.    The Debtor's decision to file for bankruptcy was prompted by the massive liabilities it faced as a result of its history with child sexual abuse and the revival of those claims by the CVA.

34.    But prior to the CVA, and between September 29, 2020, and September 29, 2023, the Debtor's liability exposure for sex abuse claims under the 2017 Act was still in the tens of millions.

35.    Nearly 1,000 Survivors have filed claims against the Debtor in the chapter 11 case.

36.    Among those claims, dozens were not barred by any applicable statute of limitations between September 29, 2020 and September 29, 2023.

37.    The value for each of those non-time barred claims likely exceeded $500,000 in non-economic damages (*see* Md. Courts and Judicial Proceedings Code § 11-108), and at least as much in economic damages.

38.    Consequently, in the three years preceding the Petition Date, Debtor faced at least $80,000,000 in exposure for sex abuse claims under the 2017 Act.

39.    The exposure for those non-time barred claims today under the CVA is a value of not less than $120,000,000.

**The Debtor's Transfer and Relationship with the CHL**

40.    The CHL is a non-profit corporation incorporated in 1898 in Washington, D.C.

41.    One purpose of the CHL under civil law is to organize and conduct religious, charitable, and social welfare work.

42.    The Debtor made a transfer to the CHL on July 6, 2023 and in the amount of $131,413.82 as shown on Exhibit A (the "Transfer"), from bank accounts titled in the name of the Debtor and used by the Debtor for its general operations.

43.    On information and belief, the Transfer relates to the CHL's assistance to Debtor and Archbishop Lori in fulfilling their role and particular ministry to the Church. Alternatively, on

6

information and belief, the Debtor has never received any monetary remuneration or other value in return for this Transfer.

44.    The funds transferred by the Debtor to the CHL were at all times property of the Debtor or funds over which the Debtor maintained substantial control, dominion, and/or discretion.

45.    The funds transferred by the Debtor to the CHL came from bank accounts owned and controlled by, and titled in the name of, the Debtor.

46.    The Committee has completed an analysis of all readily available information about the Debtor and is seeking to avoid all of the funds transferred by the Debtor from its general operating account to the CHL that occurred as shown on Exhibit A. During the course of this proceeding, the Committee may learn (through discovery or otherwise) of additional transfers made to the CHL.

47.    The Committee reserves its right to amend this original Complaint to include: (i) further information regarding the funds transferred to the CHL, (ii) additional transfers, (iii) modifications of and/or revisions to the dates or amounts of the transfers, and (iv) additional defendants (collectively, the "Amendments"), that may become known to the Committee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

48.    The Committee also performed its own due diligence evaluation of the reasonably knowable affirmative defenses available to the CHL. As part of the Committee's due diligence, it reviewed the records in the Committee's possession and identified that the Debtor has potentially zero dollars in transfers that qualify for the subsequent new value defense. Additionally, the Committee reviewed the Debtor's records in the Committee's possession to examine whether CHL may be able to assert the subjective ordinary course of business defense. However, this is an

inherently factual endeavor, and the Committee puts the CHL to its burden of proof to establish it is entitled to the ordinary course of business affirmative defense. After performing its own due diligence, the Committee has determined that the fund transferred to the CHL may be avoided even after taking into account the CHL's alleged affirmative defenses.

### COUNT I
**(Avoidance of Preferential Transfer - 11 U.S.C. § 547)**

49. The Committee repeats, realleges, and incorporates by reference herein the allegations contained in paragraphs 1 through 49 of this Complaint as though fully set forth in this cause of action.

50. Debtor transferred funds to the CHL during the Preference Period in the aggregate amount of not less than $131,413.82 as more particularly described in Exhibit A.

51. The Transfer was made from one or more of Debtor's bank accounts and constituted a transfer of interest in property by the Debtor.

52. By virtue of its close affiliation with the Debtor, CHL is an insider of the Debtor.

53. The CHL was a creditor of Debtor at the time of the Transfer by virtue of supplying services identified in this Complaint, for which Debtor was obligated to pay.

54. The Transfer was to or for the benefit of a creditor within the meaning of section 547(b)(1) of the Bankruptcy Code because the Transfer either reduced or fully satisfied a debt or debts then owed by Debtor to the CHL.

55. The Transfer was made for, or on account of, an antecedent debt or debts owed by Debtor to the CHL before such Transfer was made, which constituted a claim of the CHL prior to being paid by Debtor.

8

56.    The Transfer was made while the Debtor was insolvent. Debtor is presumed insolvent when the Transfer was made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

57.    The Transfer was made during the Preference Period, as set forth in Exhibit A.

58.    As a result of the Transfer, the CHL received more than it would have received if (i) Debtor's case was under chapter 7 of the Bankruptcy Code; (ii) the Transfer had not been made; and (iii) the CHL received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by Debtor's schedules and the nearly 1000 claims filed by Survivors, among others, Debtor's liabilities exceed their assets.

59.    Based on the foregoing, the Transfer is avoidable pursuant to Section 547(b) of the Bankruptcy Code.

## COUNT II
### (Avoidance of Fraudulent Transfers - 11 U.S.C. § 548(a)(1)(A))

60.    The Committee repeats, realleges, and incorporates by reference herein the allegations contained in paragraphs 1 through 59 of this Complaint as though fully set forth in this cause of action.

61.    As set forth in Exhibit A, the Transfer occurred within two (2) years prior to the Petition Date.

62.    That amount was the Debtor's property and would have become property of the Debtor's bankruptcy estate if it had not been transferred.

63.    The Transfer was made to, or for the benefit of the CHL.

64.    To the extent that the Transfer identified in Exhibit A was not made on account of antecedent debt, the Committee pleads in the alternative that, on information and belief, the

Transfer was gratuitous without any commercial or operational basis, or in the alternative, amounted to an interest free loan for which the Debtor received no value.

65.     On information and belief, the Transfer was made with actual intent to hinder, delay, or defraud creditors, chief among whom are the Survivors.

66.     Based upon the foregoing, the Transfer constitutes an avoidable fraudulent transfer pursuant to Section 548(a)(1)(A) of the Bankruptcy Code.

## COUNT III
### (Avoidance of Fraudulent Transfers - 11 U.S.C. § 548(a)(1)(B))

67.     The Committee repeats, realleges, and incorporates by reference herein the allegations contained in paragraphs 1 through 66 of this Complaint as though fully set forth in this cause of action.

68.     To the extent that the Transfer identified in Exhibit A was not made on account of antecedent debt, the Committee pleads in the alternative that, on information and belief, the Debtor received less than a reasonably equivalent value in exchange for the Transfer.

69.     Due to its mounting civil liabilities to Survivors, on the date of the Transfer, the Debtor: (i) was insolvent or became insolvent as a result of such transfer; or (ii) believed that it would incur debts beyond its ability to pay as such debts matured.

70.     Based upon the foregoing, the Transfer constitutes an avoidable fraudulent transfer pursuant to Section 548(a)(1)(B) of the Bankruptcy Code.

## COUNT IV
### (Avoidance of Fraudulent Transfers - 11 U.S.C. § 544 and Md. Code § 15-207)

71.     The Committee repeats, realleges, and incorporates by reference herein the allegations contained in paragraphs 1 through 70 of this Complaint as though fully set forth in this cause of action.

CORE/3529758.0002/230991589.2

72.     As set forth in Exhibit A, the Transfer occurred within three (3) years prior to the Petition Date.

73.     The Transfer was the Debtor's property and would have become property of the Debtor's bankruptcy estate if it had not been transferred.

74.     The Transfer was made to, or for the benefit of, the CHL.

75.     To the extent that the Transfer identified in Exhibit A was not made on account of antecedent debt, the Committee pleads in the alternative that, on information and belief, the Transfer was gratuitous without any commercial or operational basis, or in the alternative, amounted to an interest free loan for which the Debtor received no value.

76.     On information and belief, the Debtor made the Transfer with actual intent to hinder, delay, or defraud its creditors, chief among whom are the Survivors.

77.     On information and belief, before and after the Transfer, the Debtor had been threatened with suit by creditors in the Bankruptcy Case or by persons with claims similar to those creditors.

78.     To the extent that the Transfer identified in Exhibit A was not made on account of antecedent debt, the Committee pleads in the alternative that, on information and belief, the value of the consideration received by the Debtor in exchange for the Transfer was not reasonably equivalent to the value of the Transfer.

79.     The Debtor was insolvent or became insolvent shortly after the Transfer occurred.

80.     The Transfer occurred shortly before and after the Debtor incurred substantial liabilities.

81.     Based upon the foregoing, the Transfer constitutes an avoidable fraudulent transfer pursuant to Section 544 of the Bankruptcy Code and MUFCA § 15-207.

11

## COUNT V
### (Avoidance of Fraudulent Transfers - 11 U.S.C. § 544 and Md. Code § 15-206)

82.    The Committee repeats, realleges, and incorporates by reference herein the allegations contained in paragraphs 1 through 81 of the Complaint as though fully set forth in this cause of action.

83.    To the extent that the Transfer identified in Exhibit A was not made on account of antecedent debt, the Committee pleads in the alternative that, without receiving fair consideration in exchange for the Transfer, the Debtor believed or reasonably should have believed at the time it made the Transfer that it would incur debts beyond its ability to pay as they became due.

84.    Based upon the foregoing, the Transfer constitutes an avoidable fraudulent transfer pursuant to Section 544 of the Bankruptcy Code and MUFCA § 15-206.

## COUNT VI
### (Avoidance of Fraudulent Transfers - 11 U.S.C. § 544 and Md. Code § 15-204)

85.    The Committee repeats, realleges, and incorporates by reference herein the allegations contained in paragraphs 1 through 84 of the Complaint as though fully set forth in this cause of action.

86.    To the extent that the Transfer identified in Exhibit A was not made on account of antecedent debt, the Committee pleads in the alternative that, on information and belief, the Debtor made the Transfer without receiving fair consideration in exchange.

87.    Due to its mounting civil liabilities to Survivors, on the date of the Transfer, the Debtor was insolvent or became insolvent as a result of the Transfer.

88.    Based upon the foregoing, the Transfer constitutes an avoidable fraudulent transfer as to creditors whose claims arose before the Transfers pursuant to Section 544 of the Bankruptcy Code and MUFCA § 15-204.

CORE/3529758.0002/230991589.2

<u>COUNT V</u>
**(Recovery of Transfers - 11 U.S.C. § 550)**

89.    The Committee repeats, realleges, and incorporates by reference herein the allegations contained in paragraphs 1 through 88 of the Complaint as though fully set forth in this cause of action.

90.    The Committee is entitled to avoid the Transfer pursuant to Sections 547, 548, and 544 of the Bankruptcy Code, and the MUFCA.

91.    The CHL was the initial transferee of the Transfer, or the entity for whose benefit the Transfer were made, or was the immediate or mediate transferee of the initial transferee receiving the Transfer.

92.    Pursuant to Section 550(a) of the Bankruptcy Code, the Committee is entitled to recover the Transfer (or the value thereof) from the CHL, plus interest thereon to the date of payment and the costs of this action.

93.    By reason of the foregoing, the Transfer is recoverable pursuant to Section 550(a) of the Bankruptcy Code.

**PRAYER FOR RELIEF**

WHEREFORE, the Committee respectfully requests that the Court enter a judgment against the CHL:

1.    Avoiding the Transfer pursuant to Sections 544, 547, and 548 of the Bankruptcy Code and Maryland's UFCA;

2.    Determining that the Committee is entitled to recover the Transfer, plus interest and costs, pursuant to Section 550 of the Bankruptcy Code and requiring the CHL to pay forthwith such amounts; and

3.    granting such other and further relief as the Court deems just and proper.

13

Date: _____, 2025                    Respectfully submitted,


                                        /s/ _____
                                        Alan M. Grochal, Fed. Bar No.: 01447
                                        Richard L. Costella, Fed. Bar No. 14095
                                        Tydings & Rosenberg LLP
                                        1 East Pratt Street, Suite 901
                                        Baltimore, Maryland 21202
                                        Tel: (410) 752-9772
                                        Fax: (410) 727-5460
                                        Email: rcostella@tydings.com
                                              agrochal@tydings.com

                                        *Local Counsel to the Official Committee of
                                        Unsecured Creditors*

                                        -and-

                                        Edwin H. Caldie (MN # 388930)
                                        Andrew J. Glasnovich (MN #398366)
                                        Stinson LLP
                                        50 South Sixth Street, Suite 2600
                                        Minneapolis, MN 55402
                                        Main: 612-335-1500
                                        Facsimile: 612-335-1657
                                        Email: ed.caldie@stinson.com
                                              drew.glasnovich@stinson.com

                                        *Counsel to the Official Committee of
                                        Unsecured Creditors*

14

**EXHIBIT A**

**BRG**  ARCHDIOCESE OF BALTIMORE
NON-RELATED PARTY CASH DISBURSEMENTS ACTIVITY 90 DAY PERIOD (07/01/2023 - 09/29/2023)

*Petition Date: September 29, 2023*

| Trans. ID | Date | GL Account | GL Account Name | Reference | Vendor/Int. Name | Payee ID | Payee | Transaction Description(s) | Document Number(s) | Batch Description(s) | | Amount | 90DAY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 90016 | 7/6/2023 | 1010 | Checking - General | 521608 | Regional Commissariat of the Holy Land | 100062 | Regional Commissariat of the Holy Land | 2023 Holy Land Collection | 511746,2023 COLLECTION | 2023 COLLECTION | $ | (131,413.82) | $ |

COMB153PTIKHSESXPPRE99.1