# EXHIBIT 3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re:<br><br>Roman Catholic Archbishop of Baltimore,<br><br>Debtor. | Case No. 23-16969-MMH<br>(Chapter 11) |
| The Official Committee of Unsecured Creditors,<br><br>v.<br><br>Maryland Catholic Conference, LLC,<br><br>Defendant. | Adv. Proc. No. _____-MMH |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS
PURSUANT TO 11 U.S.C. §§ 544, 548 AND 550**

The Official Committee of Unsecured Creditors (the "Committee") of the Roman Catholic Archbishop of Baltimore, Maryland (the "Debtor") alleges as follows upon knowledge with respect to itself, and upon information and belief as to all other matters:

**INTRODUCTION**

1. This adversary proceeding is brought to avoid and recover fraudulent transfers pursuant to 11 U.S.C. §§ 544, 548, and 550, and Maryland Uniform Fraudulent Conveyance Act (Md. Code Ann. §§ 15-201, *et seq.*) ("MUFCA").

2. The Debtor transferred funds to the Maryland Catholic Conference, LLC ("MCC") within the three years prepetition without receiving reasonably equivalent value in exchange.

3. Moreover, those transfers of the Debtor's property, which occurred on the dates tabulated in Exhibit A, were made while the Debtor was insolvent or believed that it would incur

debts to its creditors—including without limitation the survivors of sexual abuse ("Survivors") with claims against the Debtor—exceeding the Debtor's ability pay.

4. For years the Catholic Church erred by prioritizing its own reputation over the safety and sanctity of children.

5. That error caused untold harm to countless individuals, exacerbated by the Church's practice of denying wrongdoing and obfuscating the truth.

6. The Debtor should not be permitted to use this bankruptcy process to repeat these behaviors.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b), and Standing Order 2012-05 from the United States District Court for the District of Maryland.

8. This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(H).

9. The statutory predicates for the relief requested herein are Sections 544, 548, and 550 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 7001, *et seq.* of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

10. This action is brought as an adversary proceeding pursuant to Bankruptcy Rule 7001(a).

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a) because this is a core proceeding arising in a bankruptcy case pending in this district.

12. Pursuant to Rule 7008 of the Bankruptcy Rules and Rule 7012-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland (the "Local Rules"), the Committee consents to the entry of a final judgment or order with respect to the

2

Complaint if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## THE PARTIES

13. The Committee is the Official Committee of Unsecured Creditors appointed by the United States Trustee pursuant to 11 U.S.C. § 1102(a)(1).

14. The Debtor, a corporation solely organized under the laws of the State of Maryland, is the debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy case.

15. The MCC is Maryland limited liability company headquartered, registered, and organized under the laws of the State of Maryland, with a principal place of business at 10 Francis Street, Annapolis, MD 21401, and with a registered agent of David W. Kinkopf, 218 N. Charles St., Suite 400, Baltimore, MD 21201.

16. Pursuant to the Order Granting Official Committee of Unsecured Creditors' Motion for Standing and Authority to Commence, Prosecute, and Settle Cause of Action on Behalf of the Debtor's Bankruptcy Estate entered on _____, 2025 by the Bankruptcy Court for the District of Maryland in the above-captioned chapter 11 case (see Docket No. _____), the Committee has standing to bring these claims in the place of the trustee (i.e., the debtor-in-possession).

## FACTUAL BACKGROUND

**Maryland Statute of Limitations Reform**

17. As early as 1994, the Maryland General Assembly considered establishing a longer limitations period for child sex abuse claims than the general three-year statute of limitation to civil claims.

18. The Maryland General Assembly first expanded the statute of limitation to seven years in 2003. *See generally* 2003 Md. Laws, Ch. 360.

3

19. Then again in 2017, the legislature expanded the statute of limitation (the "2017 Act") to permit filing an action for sex abuse within the later of 20 years after the survivor reaches the age of majority or three years after the defendant is convicted of certain related crimes, effective on October 1, 2017. *See* 2017 Md. Laws, Chs. 12 & 656

20. The Maryland Office of the Attorney General then conducted an investigation and issued a report in April 2023.

21. The report detailed a "history of repeated dismissal or cover up" of abuse by the Catholic Church hierarchy and found that more than 600 young people had been abused by at least 156 clergy members since the 1940s within the Archdiocese of Baltimore.

22. Following the Attorney General's report, the Maryland General Assembly passed the Maryland Child Victims Act of 2023, 2023 Session Senate Bill 686, Acts 2023, c. 5, § 1, eff. Oct. 1, 2023 (the "CVA"), which was signed into law on April 11, 2023, and subsequently amended after the Petition Date.

23. The CVA eliminated the statute of limitations for all civil claims arising out of a claim of sexual abuse that occurred when the victim was a minor.

24. The CVA was passed with the purpose of holding organizations, like the Debtor, liable and responsible for the damages they caused Survivors.

25. On September 29, 2023, (the "Petition Date") the Debtor filed its petition for relief under chapter 11 of title 11 of the United States Code.

26. The CVA became effective on October 1, 2023, meaning Survivors' claims for sexual abuse against the Debtor would no longer be time-barred on or after that date.

**The Debtor's Pre-Petition Efforts to Address its Liability to Survivors**

27. Debtor has historically faced a multitude of sex abuse claims dating back to at least the 1940s.

28. In the three years preceding the Petition Date, between September 29, 2020 September 29, 2023, Debtor entered into settlement agreements with more than a dozen Survivors of historical priest misconduct.

29. The sex abuse claims and related settlements that occurred in the three years preceding the Petition Date is only a small subset of all claims against Debtor.

30. The Debtor's civil liability exposure for historical sex abuse claims that were previously barred by the 2017 Act became imminent when the CVA was passed.

31. The Debtor's decision to file for bankruptcy was prompted by the massive liabilities it faced as a result of its history with child sexual abuse and the revival of those claims by the CVA.

32. But prior to the CVA, and between September 29, 2020, and September 29, 2023, the Debtor's liability exposure for sex abuse claims under the 2017 Act was still in the tens of millions.

33. Nearly 1,000 Survivors have filed claims against the Debtor in the chapter 11 case.

34. Among those claims, dozens were not barred by any applicable statute of limitations between September 29, 2020 and September 29, 2023.

35. The value for those non-time barred claims likely exceeded $500,000 in non-economic damages (*see* Md. Courts and Judicial Proceedings Code § 11-108), and at least as much in economic damages.

36. Consequently, in the three years preceding the Petition Date, Debtor faced at least $80,000,000 in exposure for sex abuse claims under the 2017 Act.

37. The exposure for those non-time barred claims today under the CVA is a value of not less than $120,000,000.

**The Debtor's Transfers and Relationship with the MCC**

38. The MCC is a limited liability corporation incorporated in 2011 in Maryland.

39. On information and belief, Archbishop Lori has a role and voice in the governance of the MCC and is a member of the MCC.

40. On information and belief, Archbishop Lori exercises unfettered control and discretion over the MCC and its operations.

41. On information and belief, one purpose of the MCC is to represent and speak officially for the Archdiocese of Baltimore, Archdiocese of Washington, and Diocese of Wilmington on public policy matters.

42. The Debtor made a transfer to the MCC on the dates and in the amounts tabulated in Exhibit A (the "Transfer"), from a bank account titled in the name of the Debtor and used by the Debtor for its general operations.

43. On information and belief, the Debtor has never received any monetary remuneration or other value in return for this Transfer. For example, despite MCC's purported role as the public voice for the Debtor, the Debtor has stated that no person, including MCC, has engaged in efforts to lobby the Maryland General Assembly on behalf of the Debtor. Accordingly, the Committee believes that MCC has provided no services to the Debtor in exchange for the Transfers.

6

44. The funds transferred by the Debtor to the MCC were at all times property of the Debtor or funds over which the Debtor maintained substantial control, dominion, and/or discretion.

45. The funds transferred by the Debtor to the MCC came from bank accounts owned and controlled by, and titled in the name of, the Debtor.

46. The Committee has completed an analysis of all readily available information about the Debtor and is seeking to avoid all of the funds transferred by the Debtor from its general operating account to the MCC that occurred as shown on Exhibit A. During the course of this proceeding, the Committee may learn (through discovery or otherwise) of additional transfers made to the MCC.

47. The Committee reserves its right to amend this original Complaint to include: (i) further information regarding the transfers to the MCC, (ii) additional transfers, (iii) modifications of and/or revisions to the dates or amounts of the transfers, and (iv) additional defendants (collectively, the "Amendments"), that may become known to the Committee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## COUNT I
### (Avoidance of Fraudulent Transfers - 11 U.S.C. § 548(a)(1)(A))

48. The Committee repeats, realleges, and incorporates by reference herein the allegations contained in paragraphs 1 through 47 of this Complaint as though fully set forth in this cause of action.

49. As set forth in Exhibit A, the Debtor transferred $166,554.00 to the MCC within two (2) years prior to the Petition Date.

50. That amount was the Debtor's property and would have become property of the Debtor's bankruptcy estate if it had not been transferred.

CORE/3529758.0002/230991538.2

51. The Transfer was made to, or for the benefit of the MCC.

52. On information and belief, the Transfer was gratuitous without any commercial or operational basis, or in the alternative, amounted to an interest free loan for which the Debtor received no value.

53. On information and belief, the Transfer was made with actual intent to hinder, delay, or defraud creditors, chief among whom are the Survivors.

54. Based upon the foregoing, the Transfer constitutes an avoidable fraudulent transfer pursuant to Section 548(a)(1)(A) of the Bankruptcy Code.

## COUNT II
### (Avoidance of Fraudulent Transfers - 11 U.S.C. § 548(a)(1)(B))

55. The Committee repeats, realleges, and incorporates by reference herein the allegations contained in paragraphs 1 through 54 of this Complaint as though fully set forth in this cause of action.

56. On information and belief, the Debtor received less than a reasonably equivalent value in exchange for the Transfer.

57. Due to its mounting civil liabilities to Survivors, on the date of the Transfer, the Debtor: (i) was insolvent or became insolvent as a result of such transfer; or (ii) believed that it would incur debts beyond its ability to pay as such debts matured.

58. Based upon the foregoing, the Transfer constitutes an avoidable fraudulent transfer pursuant to Section 548(a)(1)(B) of the Bankruptcy Code.

## COUNT III
### (Avoidance of Fraudulent Transfers - 11 U.S.C. § 544 and Md. Code § 15-207)

59. The Committee repeats, realleges, and incorporates by reference herein the allegations contained in paragraphs 1 through 58 of this Complaint as though fully set forth in this cause of action.

60. The Debtor transferred $166,554.00 to the MCC within three (3) years prior to the Petition Date.

61. The Transfer was the Debtor's property and would have become property of the Debtor's bankruptcy estate if it had not been transferred.

62. The Transfer was made to, or for the benefit of, the MCC.

63. On information and belief, the Transfer was gratuitous without any commercial or operational basis, or in the alternative, amounted to an interest free loan for which the Debtor received no value.

64. On information and belief, the Debtor made the Transfer with actual intent to hinder, delay, or defraud its creditors, chief among whom are the Survivors.

65. Because Archbishop Lori has unfettered control and a role in the governance of the MCC, the MCC is an insider.

66. Before and after the Transfer, the Debtor had been sued and threatened with suit by creditors in the Bankruptcy Case or by persons with claims similar to those creditors.

67. On information and belief, the value of the consideration received by the Debtor in exchange for the Transfer was not reasonably equivalent to the value of the Transfer.

68. The Debtor was insolvent or became insolvent shortly after the Transfer occurred.

69. The Transfer occurred shortly before and after the Debtor incurred substantial liabilities.

9

70. Based upon the foregoing, the Transfer constitutes avoidable fraudulent transfer pursuant to Section 544 of the Bankruptcy Code and MUFCA § 15-207.

## COUNT IV
### (Avoidance of Fraudulent Transfers - 11 U.S.C. § 544 and Md. Code § 15-206)

71. The Committee repeats, realleges, and incorporates by reference herein the allegations contained in paragraphs 1 through 70 of the Complaint as though fully set forth in this cause of action.

72. Without receiving fair consideration in exchange for the Transfer, the Debtor believed or reasonably should have believed at the time it made the Transfer that it would incur debts beyond its ability to pay as they became due.

73. Based upon the foregoing, the Transfer constitutes an avoidable fraudulent transfer pursuant to Section 544 of the Bankruptcy Code and MUFCA § 15-206.

## COUNT V
### (Avoidance of Fraudulent Transfers - 11 U.S.C. § 544 and Md. Code § 15-204)

74. The Committee repeats, realleges, and incorporates by reference herein the allegations contained in paragraphs 1 through 73 of the Complaint as though fully set forth in this cause of action.

75. On information and belief, the Debtor made the Transfer without receiving fair consideration in exchange.

76. Due to its mounting civil liabilities to Survivors, on the date of Transfer, the Debtor was insolvent or became insolvent as a result of the Transfer.

77. Based upon the foregoing, the Transfer constitutes an avoidable fraudulent transfer as to creditors whose claims arose before the Transfer pursuant to Section 544 of the Bankruptcy Code and MUFCA § 15-204.

CORE/3529758.0002/230991538.2

## COUNT V
### (Recovery of Fraudulent Transfers - 11 U.S.C. § 550)

78. The Committee repeats, realleges, and incorporates by reference herein the allegations contained in paragraphs 1 through 77 of the Complaint as though fully set forth in this cause of action.

79. The Committee is entitled to avoid the Transfer pursuant to Sections 544 and 548 of the Bankruptcy Code and the MUFCA.

80. The MCC was the initial transferee of the Transfer, or the entity for whose benefit the Transfer was made, or was the immediate or mediate transferee of the initial transferee receiving the Transfer.

81. Pursuant to Section 550(a) of the Bankruptcy Code, the Committee is entitled to recover the Transfer (or the value thereof) from the MCC, plus interest thereon to the date of payment and the costs of this action.

82. By reason of the foregoing, the Transfer is recoverable pursuant to Section 550(a) of the Bankruptcy Code.

### PRAYER FOR RELIEF

WHEREFORE, the Committee respectfully requests that the Court enter a judgment against the MCC:

1. Avoiding the Transfer pursuant to Sections 544 and 548 of the Bankruptcy Code and Maryland's UFCA;

2. Determining that the Committee is entitled to recover the Transfer, plus interest and costs, pursuant to Section 550 of the Bankruptcy Code and requiring the MCC to pay forthwith such amounts; and

3. granting such other and further relief as the Court deems just and proper.

11

Date: _____, 2025                                Respectfully submitted,

/s_____
Alan M. Grochal, Fed. Bar No.: 01447
Richard L. Costella, Fed. Bar No. 14095
Tydings & Rosenberg LLP
1 East Pratt Street, Suite 901
Baltimore, Maryland 21202
Tel: (410) 752-9772
Fax: (410) 727-5460
Email: rcostella@tydings.com
         agrochal@tydings.com

*Local Counsel to the Official Committee of Unsecured Creditors*

-and-

Edwin H. Caldie (MN # 388930)
Andrew J. Glasnovich (MN #398366)
Stinson LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Main: 612-335-1500
Facsimile: 612-335-1657
Email: ed.caldie@stinson.com
         drew.glasnovich@stinson.com

*Counsel to the Official Committee of Unsecured Creditors*

CORE/3529758.0002/230991538.2

**EXHIBIT A**

**BRG ARCHDIOCESE OF BALTIMORE**
**NON-RELATED PARTY CASH DISBURSEMENTS ACTIVITY 90 DAY PERIOD (07/01/2023 - 09/29/2023)**

Petition Date: September 29, 2023

| Trans ID | Date | GL Account | GL Account Name | Reference | VendorList_Name | Payee ID | Payee | Transaction Des | Document Number(s) | Batch Description(s) | Amount | 90DAY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 100145 | 7/13/2023 | 1010 | Checking - General | 521780 | Maryland Catholic Conference | 100062 | Maryland Catholic Conference | 1st Qtr. FY24 AOB Contribution | 511911;708 | 708 | $ (166,554.00) | S |

CORB/232573E D022/2207935-43.1