**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
<u>(Baltimore Division)</u>**

| | |
|---|---|
| In re: | Case No. 23-16969 |
| Roman Catholic Archbishop of Baltimore, | Chapter 11 |
| Debtor. | Judge Michelle M. Harner |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' LIMITED
OBJECTION TO DEBTOR'S NOTICE OF DISPOSITION OF LEASED PROPERTY
*(UNIMPROVED ACREAGE LOCATED IN BALTIMORE COUNTY, MD)***

The Official Committee of Unsecured Creditors (the "Committee") respectfully submits this limited objection (the "Objection") to the *Notice of Debtor's Disposition of Leased Property (Unimproved Acreage Located in Baltimore County, MD)* (the "Notice") (ECF No. 1255) for the entry of an order sustaining the Objection to the extent that: (i) the Notice fails to provide adequate disclosures under 11 U.S.C. § 363(b) and Fed. R. Bankr. P. 6004, and (ii) the Debtor has requested the Committee enter into a non-disclosure agreement or otherwise keep information confidential in a manner that would impair the Committee's ability to evaluate the proposed transaction consistent with the Committee's duties to unsecured creditors. In support of the Objection, the Committee submits as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction to consider this objection to the Claims Administrator Motion, pursuant to 28 U.S.C. §§ 157 and 1334 and Standing Order 2012-05 from the United States District Court for District of Maryland. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper before the Court, pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

3. On September 29, 2023, the Debtor commenced this case under Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its properties as debtor in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

4. On August 5, 2025, the Debtor filed the Notice seeking to lease unimproved real property located at York Road and Belfast Road in Baltimore County, Maryland. (ECF No. 1255.)

5. According to the Notice, the Debtor owns 102 acres at this location, and proposes to lease between 35-53 acres to an undisclosed "uninterested third party" for "the purpose of constructing and operating certain facilities", that the property "is owned solely by the Debtor and is not encumbered by any lien, claim, or interest" and that "the proposed lease terms were negotiated at arms-length."

6. The proposed lease terms described in the Notice include an initial exclusivity period of 24 months, extendable for two additional 6-month periods; initial 5-year operating term following the exclusivity period; the unidentified Lessee's sole right to extend for up to three additional 5-year terms; and, total potential lease term of up to 30 years.

7. Rent will be "based upon the acreage leased and qualification percentage for federal investment tax credit, with the first year operating rent ranging from not less than $4,600 per acre depending on the applicable qualified percentage for federal investment tax credits available to the Lessee."

8. The Notice provides: "Disclosure of the Lessee's identity and/or a copy of the proposed lease will be made available upon written request to the undersigned counsel."

9. Shortly after the Notice was filed, the Committee made a written inquiry to Debtor's counsel regarding the lessee's identity and complete lease terms, and Debtor responded by requiring that the Committee execute a non-disclosure agreement ("NDA").

10. The Committee did not execute the NDA.

11. On August 25, 2025, the Debtor provided the Committee with information regarding the identity of the lessee, the specifics of the transaction, and the Debtor's marketing process. These discussions occurred in a confidential mediation session, and so the Committee cannot use any information obtained for purposes of this Objection or otherwise provide context for its more substantive concerns with the Notice.

## ARGUMENT

The Debtor has spent months negotiating a substantial lease transaction with an unidentified party without any involvement by the Committee or oversight from this Court. The Debtor has provided no evidence that this is a good deal for creditors. More importantly, the Debtor has given the Committee no time to evaluate alternatives to this transaction. The Debtor's approach to this transaction is unfortunate. The Committee understands that time is of the essence to maximize the value of the transaction, but that failing is on the Debtor when it undertook to negotiate a complex deal without the involvement of its creditors.

The Committee is committed to overcoming the Debtor's oversights and to secure a fair return for creditors from this proposed transaction, but it cannot do so by means of the process proposed by the Debtor. The Debtor must (i) justify its demand for secrecy and obtain Court approval for any process conducted out of the view of creditors, (ii) provide the Committee with meaningful information on the identity of the lessee, its connections to the Debtor, the value of the transaction, and show its benefit to creditors, and (iii) consult with the Committee in the Debtor's

decision to accept the highest and best offer. Unless the Debtor is willing to remedy these shortcomings to the Committee's satisfaction, the Court should deny the Debtor's request to lease property under Section 363(b).

The Committee objects to the Debtor's Notice because: (i) the Debtor has failed to meet its burden under 11 U.S.C. § 363(b) as the Notice provides inadequate information for creditors to evaluate whether the proposed lease serves a sound business purpose and aids the Debtor's reorganization; and (ii) the Debtor's requirement that the Committee execute an NDA to obtain complete transaction information would force the Committee to conduct its investigation and file any objections under seal, undermining the public nature of bankruptcy proceedings and the Committee's statutory oversight duties.

I. **THE DEBTOR CANNOT MEET ITS BURDEN UNDER SECTION 363(b) AND BANKRUPTCY RULE 6004.**

12. The Debtor has not met its burden of demonstrating that the proposed lease serves a sound business purpose and will further the Debtor's reorganization, as the Notice lacks basic information necessary for creditors to evaluate the proposed transaction.

13. Under Section 363(b) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 6004, the party requesting the "use, sale, or lease" of estate property outside the ordinary course of business must provide adequate notice of both the proposed agreement and its terms. *See In re Naron & Wagner, Chartered*, 88 B.R. 85, 88-89 (Bankr. D. Md. 1988); 11 U.S.C. § 363(b)(1).

14. Consequently, "a judge determining a § 363(b) application [must] expressly find from the evidence presented before him at the hearing a good business reason to grant such an application." *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983).

15. The Notice also fails to satisfy the requirement that a motion include "the terms and conditions of any private sale." (Fed R. Bankr. P. 6004(c)); s*ee In re Garcia*, Case No. 12-93049 (Bankr. E.D. Cal., November 30, 2012), [Docket No. 868, p. 6] ("The court cannot, and will not, approve a sale to an anonymous entity, especially when . . . there is no evidence presented that the property has been properly marketed in good faith[.]").

16. As this court has observed, "adequate notice" in the context of a sale requires the disclosure of, *inter alia*, "the full terms of the sale, **including the identity of the purchaser** . . . [and must] **explain why the proposed price is reasonable and why the sale** . . . is in the best interests of the estate." *Naron & Wagner, Chartered*, 88 B.R. at 89 (emphasis added); *see also In re Fischer,* No. 03–13704, 2010 WL 2746329, at *10 (Bankr. D. Md. July 9, 2010) ("[C]ourts generally apply standards that, although stated variously [sic] ways, represent essentially a business judgment test."); *In re Exaeris Inc.,* 380 B.R. 741, 743 (Bankr.D.Del.2008) ("The sale of assets which is not in the debtor's ordinary course of business requires **proof** that: (1) there is a sound business purpose for the sale; (2) the **proposed sale price is fair**; (3) the debtor has provided **adequate and reasonable notice**; and (4) **the buyer** has acted in good faith.") (emphasis added). Because the Court should "consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike … a debtor applying under § 363(b) carries the burden of demonstrating that a use, sale or lease out of the ordinary course of business will aid the debtor's reorganization." *In re Lionel Corp.*, 722 F.2d at 1071.

17. The Notice fails to meet the Debtor's burden in all respects. The Debtor does not identify the proposed lessee, provide complete lease terms, include a market analysis or appraisals,

or explain why this particular transaction in the form of a long-term lease serves the estate's best interests.

18. The Committee cannot form a sufficiently-educated perspective regarding the proposed transaction based on the Notice (or even the confidential information so-far provided,) if creditors would be better off had the Debtor simply sold the real estate, rather than engaged in a 30-year lease agreement. Instead, the Debtor provided creditors with skeletal terms while promising that complete information will be available only upon written request. Unfortunately if a creditor were to have made a written request for more information, it would have been blocked by the Debtor's confidentiality requirement.

19. This secret Notice procedure cannot satisfy the Debtor's burden to show it exercised sound business judgment throughout this sale process. For these reasons the Court should deny the Debtor's request to enter into the Noticed transaction.

II. **THE DEBTOR'S CONFIDENTIALITY RESTRICTIONS AND UNILATERAL APPROACH IS FUNDAMENTALLY INCONSISTENT WITH THE COMMITTEE'S STATUTORY DUTIES.**

20. The Debtor has conducted what appears to be an extensive negotiation and marketing process entirely without the Committee's knowledge or input, despite the Committee's statutory duties under 11 U.S.C. § 1103 to investigate the Debtor's affairs and participate in matters affecting the estate.

21. The Committee first became aware of the identity of the proposed lessee, the basic terms of the lease, and the efforts the Debtor undertook to evaluate the deal on Monday, August 25, 2025, when certain information was disclosed to the Committee subject to mediation privilege.

22. Despite the Debtor's apparent engagement in extensive negotiations for this lease over an extended period, **including the engagement of professional consultants to run and**

**evaluate the bidding process**, the Debtor made no effort to inform the Committee of the transaction's existence, the marketing process, the criteria for bidding, proposed bids, or the negotiation of lease terms.

23. The Debtor's conduct represents a troubling and emerging pattern of behavior, including consistent failure to provide the Committee with advance notice of real estate transactions and marketing efforts for the Debtor and other Catholic entities who are protected by the automatic stay during this chapter 11 case.

24. The Committee is now aware of the Debtor's use of professionals to facilitate this and other transactions without the Committee's knowledge and without obtaining court approval under Section 327 of the Bankruptcy Code. The Committee instead understands the Debtor has used the Court's ordinary course professionals order to employee consultants to engage in the extraordinary act of negotiating, for instance a complex, 30 year lease of estate property.

25. When the Committee sought additional information, it was told that disclosure was condition on the execution of non-disclosure agreement. This requirement undermines the Committee' statutory duties to creditors and the public nature of bankruptcy proceedings by forcing the Committee to choose between (i) remaining in the dark about a substantial use of estate property or (ii) being complicit in the Debtor's decision to keep this transaction out of the view of creditors and the public.

26. In any other bankruptcy, a Debtor would have requested approval of bid procedures that were negotiated with (not imposed upon) the creditor's committee. This is especially true if the nature of the transaction is so sensitive that it requires the parties to depart from the core expectation of public disclosure in bankruptcy sales.

27. By conditioning even the most basic details of the deal on executing NDAs and claiming mediation privilege, the Debtor effectively shields its decision making from creditors' and this Court's scrutiny as required by Section 363(b).

28. Likewise, the Committee cannot fulfill its statutory duties or provide meaningful input on a transaction of this magnitude when essential information is locked behind confidentiality restrictions unilaterally imposed by the Debtor.

29. Unless this Court approves, and creditors have a chance to weigh-in on, a procedure for handling sensitive sale transactions, the Committee cannot be complicit in secret deals with this Debtor. To do otherwise would undermine the trust placed in the Committee by unsecured creditors, nearly all of whom are Survivors of child sexual assault by priests, teachers, and other of the Debtor's employees. Survivors remain skeptical of the Debtor and have an inarguably legitimate basis for their skepticism. In the Committee's view, the Debtor must do more to earn the trust and support of Survivors for this transaction. For these reasons the Court should reject the Debtor's proposal to consummate this transaction outside the view of creditors.

## CONCLUSION

For the foregoing reasons, the Committee respectfully requests the Court enter an order sustaining this Objection to the extent that: (i) the Notice fails to provide adequate disclosures under Section 363(b) and Fed. R. Bankr. P. 6004, and (ii) order the Debtor to cooperate with the Committee in its evaluation of this transaction by providing all requested information without requiring execution of non-disclosure agreements or other confidentiality restrictions that would impair the Committee's ability to fulfill its statutory duties and determine whether the proposed transaction is in the best interests of the estate.

Date:  September 2, 2025

Respectfully submitted,

/s/ Alan M. Grochal
Alan M. Grochal, Fed. Bar No.: 01447
Richard L. Costella, Fed. Bar No. 14095
**Tydings & Rosenberg LLP**
1 East Pratt Street, Suite 901
Baltimore, Maryland 21202
Tel: (410) 752-9772
Fax: (410) 727-5460
Email: rcostella@tydings.com
         agrochal@tydings.com

*Local Counsel to the Official Committee of Unsecured Creditors*

-and-

Robert T. Kugler (MN # 194116)
Edwin H. Caldie (MN # 388930)
Andrew Glasnovich (MN # 0398366)
Christopher Sevedge (MO # 68383)
Nicole Khalouian (NY #5755681)
**Stinson LLP**
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Main: 612-335-1500
Facsimile:  612-335-1657
Email: robert.kugler@stinson.com
         ed.caldie@stinson.com
         drew.glasnovich@stinson.com
         chris.sevedge@stinson.com
         nicole.khalouian@stinson.com

*Counsel to the Official Committee of Unsecured Creditors*

**The following parties received CM/ECF notice of the filing:**

Nathan D. Adler, Esquire: nda@nqgrg.com
Philip D. Anker, Esquire: philip.anker@wilmerhale.com
Sam Alberts, Esquire: sam.alberts@dentons.com
Monique D. Almy, Esquire: malmy@crowell.com
G. Calvin Awkward, III, Esquire: cawkward@goldbergsegalla.com
Gary Bahena, Esquire: garybahena@bahenalaw.com
Hugh M. Bernstein, Esquire: hugh.m.bernstein@usdoj.gov
Diane C. Bristow, Esquire: dcb@nqgrg.com
Edwin H. Caldie, Esquire: ed.caldie@stinson.com
Richard L. Costella, Esquire: rcostella@tydings.com
PhilipTucker Evans, Esquire: philip.evans@hklaw.com
Kevin Foreman, Esquire: kforeman@carltonfields.com
Andrew Freeman, Esquire: adf@browngold.com
Andrew Glasnovich, Esquire: drew.glasnovich@stinson.com
Gary R. Greenblatt, Esquire: grg@cooncolelaw.com
Geoffrey Grivner, Esquire: geoffrey.grivner@bipc.com
Alan M. Grochal, Esquire: agrochal@tydings.com
Megan Harmon, Esquire: megan.harmon@bge.com
Catherine Keller Hopkin, Esquire: chopkin@yvslaw.com
Robert Keith Jenner: rjenner@jennerlawfirm.com
Steven J. Kelly, Esquire: skelly@gelaw.com
Nicole Khalouian, Esquire: nicole.khalouian@stinson.com
Robert T. Kugler, Esquire: robert.kugler@stinson.com
C. Scott Kunde, Jr., Esquire: scott.kunde@hklaw.com
Anthony May, Esquire: amay@browngold.com
Gordon Z. Novod, Esquire: gnovod@gelaw.com
Timothy P. Palmer, Esquire: timothy.palmer@bipc.com
Mark David Plevin, Esquire: mplevin@crowell.com
David Kendall Roberts, Esquire: droberts2@omm.com
Annette Rolain, Esquire: arolain@ruggerilaw.com
Blake D. Roth, Esquire: blake.roth@hklaw.com
James P. Ruggeri, Esquire: jruggeri@ruggerilaw.com
Jonathan Schapp, Esquire: jschapp@goldbergsegalla.com
U.S. Trustee – Baltimore: ustpregion04.ba.ecf@usdoj.gov
Irving Edward Walker, Esquire: iwalker@coleschotz.com
Jonathan Schochor, Esquire; jschochor@sfspa.com
Kerry Staton, Esquire; kstaton@sfspa.com
Joshua F. Kahn, Esquire; jkahn@sfspa.com
Thomas F. Yost, Esquire; tyost@yostlaw.com
Desirae Krislie C. Tongco, Esquire; dtongco@omm.com

Joshua D. Weinberg, Esquire: jweinberg@ruggerilaw.com
Adam R. Dunst, Esquire, adunst@goldbergsegalla.com
Samantha J. Hanson-Lenn, Esquire, Samantha.hansonlenn@stinson.com
Eric G. Korphage, Esquire, korphagee@whiteandwilliams.com
Robert H. Kline, Esquire, kliner@whiteandwilliams.com
Matthew M. Weiss, Esquire, mweiss@phrd.com
John E. Bucheit, Esquire, jbucheit@phrd.com
Matthew G. Roberts, Esquire, mroberts@phrd.com
John Grossbart, Esquire, john.grossbart@dentons.com
Siobhain P. Minarovich, Esquire, manarovics@whiteandwilliams.com
Justin P. Fasano, Esquire, jfasano@mhlawyers,com
Matthew C. Nelson, Esquire, matthew.nelson@kennedyslaw.com
Jillian G. Dennehy, Esquire, jillian.dennehy@kenedyslaw.com
James R. Murray, Esquire, jim.murray@blankrome.com
James D. Carter, Esquire, james.carter@blankrome.com
Robyn L. Michaelson, Esquire, robyn.michaelson@blankrome.com
Sara G. Klein, Esquire, sklein@manlystewart.com
Gary P. Seligman, Esquire, gseligman@wiley.law
Ezhan S. Hasan, Esquire, ahasan@wiley.com
Michael J. Belsky, Esquire, mbelsky@sbwdlaw.com
Catherine A. Dickinson, Esquire, cdickinson@sbwdlaw.com
Isabella R. Sayyah, Esquire, isayyah@gibsondunn.com
Matthew A. Hoffman, Esquire, mhoffman@gibsondunn.com
Ryan S. Appleby, Esquire, rappleby@gibsondunn.com
Michael A. Rosenthal, Esquire, mrosenthal@gibsondunn.com
Todd C. Jacobs, Esquire, tjacobs@phrd.com
Jesse J. Bair, Esquire, jbair@burnsbair.com
Timothy W. Burns, Esquire, tburns@burnsbair.com
Jared Zola, Esquire, jared.zola@blankrome.com
Anthony J.M. Kikendall, Esquire, kikendalla@whiteandWilliams.com
Eileen King Bower, Esquire,  Eileen.kingbower@clydeco.us
Robert M. Westra, Esquire, rwestra@ppsrlaw.com
Kevin A. Clasing, Esquire, kclasing@ppsrlaw.com
Morgan K. Stippel, Esquire, mstippel@burnsbair.com
Justine M. Daniels, Esquire, jdaniels@omm.com
Ryan S, Perlin, Esquire, perlin@mdtrialfirm.com
Emily C. Malarkey, Esquire, malarkey@mdtrialfirm.com
Jodie E. Bekman, Esquire, jbekman@gfrlaw.com
Timothy Karcher, Esquire, tkarcher@proskauer.com
Paul Possinger, Esquire, ppossinger@proskauer.com
Christopher White, Esquire, Christopher.white@clydeco.us
Clinton Cameron, Esquire, Clinton.cameron@clydeco.us
Bret Kabacinski, Esquire, bret.kabacinski@clydeco.us
Douglas McGill, Esquire, dmcgill@webbermcgill.com
Christopher Sevedge, Esquire; Christopher.Sevedge@Stinson.com