IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re:<br><br>ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE,<br><br>　　　　　　　　Debtor. | Chapter 11<br><br>Case No. 23-16969 (MMH) |

**AD HOC COMMITTEE OF PARISHES, SCHOOLS, AND AFFILIATES'
MEMORANDUM IN OPPOSITION TO OFFICAL COMMITTEE OF UNSECURED
CREDITORS' CONTINGENT MOTION TO DISMISS THE BANKRUPTCY CASE**

The Ad Hoc Committee of Parishes, Schools, and Affiliates (the "Ad Hoc Committee") hereby objects to the Official Committee of Unsecured Creditors' Contingent Motion to Dismiss the Bankruptcy Case (the "Contingent Motion") and requests, for the reasons discussed below, requests that the Contingent Motion be denied.

### I.   INTRODUCTION

1.   The Contingent Motion rests on the false logic that (i) the Debtor's preservation of its rights under the long-established Maryland charitable immunity doctrine is *ipso facto* bad faith; (ii) if the Court rules favorably for the Debtor in the Adversary Proceeding and recognizes charitable immunity, any Chapter 11 plan proposed by the Debtor would be unfair to creditors and the Creditors' Committee will urge creditors not to vote for the plan; and (iii) therefore this case is objectively futile and should be dismissed as a bad-faith filing.  As discussed below, the premises of this argument are wrong as a matter of law, as is its conclusion.

2.   In addition, the Official Committee of Unsecured Creditors (the "Creditors' Committee") has made clear that dismissal of the Debtor's Chapter 11 case is not really what it wants, and that the relief requested in the Contingent Motion should only be granted in the event of entry of a final and non-appealable order that denies the relief requested by the Creditors'

Committee in the Adversary Proceeding. Under well-established law, the peculiar nature of the Contingent Motion requires that it be dismissed on the grounds that it is not ripe for adjudication.

3. In the interest of avoiding repetition, the Ad Hoc Committee joins the Debtor's Objection to Official Committee of Unsecured Creditors' Contingent Motion to Dismiss Bankruptcy Case, Docket No. 1399 ("<u>Debtor's Opposition</u>") and incorporates the arguments therein by reference. A few points are worth emphasizing in asking the Court to dismiss the Contingent Motion.

## II.   ARGUMENT

**A.   The Contingent Motion should be dismissed as not ripe for adjudication.**

4. The Contingent Motion expressly makes clear that the relief requested—dismissal of the Debtor's Chapter 11 case under section 1112 of the Bankruptcy Code—is not what the Creditors' Committee truly wants. What the Creditors' Committee wants is to win its argument that the Debtor, a nonprofit charitable religious organization, is not entitled to the long-established right to assert charitable immunity in connection with this Chapter 11 case. As stated in the Contingent Motion, only if the Debtor prevails on its Counterclaim in the pending Adversary Proceeding does the Committee request dismissal of the case. Contingent Motion, ¶24.

5. To make the Creditors' Committee's wishes even more clear, the Contingent Motion states that the Committee will withdraw the motion "if the Court issues a judgment in favor of the Committee on any of its claims in Adversary Proceeding, No. 25-00084 and that judgment becomes a final non-appealable order." Contingent Motion, ¶26.

6. As recognized by the Supreme Court in *Texas v. U.S.*, 523 U.S. 296 (1998), "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* at 300 (quoting *Thomas v. Union Carbide*

*Agricultural Products Co.,* 473 U.S. 568, 580–581 (1985) and 13A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3532, p. 112 (1984)).

7. The party seeking relief bears the burden of establishing that an issue is ripe for a court's decision. *Wild Virginia v. Council on Env't Quality*, 56 F.4th 281, 293 (4th Cir. 2022).

8. The arguments raised by the Creditors' Committee against application of charitable immunity in this case are novel and lack any clear legal basis. Even if the Court were to find favor in any of the Creditors' Committee's arguments, there surely will be an appeal, so that a final and non-appealable judgment would not occur for a very long time.[1] Consequently, the Contingent Motion is nonjusticiable and should be dismissed as not ripe for adjudication, without prejudice to the Creditors Committee's right to refile the motion in the event that the outcome of this Adversary Proceeding is not the one the Creditors' Committee wanted.

9. Although it is appropriate to consider any hardship to the parties from withholding a court decision when considering whether a claim is ripe,[2] dismissal of the Contingent Motion at this juncture will cause no hardship. To the contrary, dismissal will leave the Creditors' Committee in the same position it would have been in had the Contingent Motion not been filed. In the event the Court enters a final and non-appealable order granting the relief requested in the

---

[1] The Creditors' Committee may have filed its Contingent Motion, as well as the Complaint initiating the Adversary Proceeding, thinking that this turn to litigation tactics rather than a greater effort in the mediation process would accelerate the parties' ability to reach a negotiated resolution of this case. The Ad Hoc Committee disagrees with that thinking and believes that litigation will only result in prolonging the process of reaching a global resolution in the form of a consensual Chapter 11 plan, with one exception. The Ad Hoc Committee is hopeful that the Court's recognition of the availability of charitable immunity in this case will encourage the Creditors' Committee to devote its efforts to the mediation process and work with the Debtor to reach agreement on a Chapter 11 plan of reorganization.

[2] *Wild Virginia v. Council on Env't Quality*, 56 F.4th at 294.

66911/0001-51384000v3

Debtor's Counterclaim, the Creditors' Committee may then refile a motion to dismiss if the Creditors' Committee at that future time determines that there are grounds for doing so.[3]

**B.  There are no grounds for dismissal of this case under Section 1112(b) of the Bankruptcy Code.**

10. "In the Fourth Circuit, a court may dismiss a Chapter 11 filing as a bad faith filing only when the bankruptcy reorganization is both (i) objectively futile *and* (ii) filed in subjective bad faith." *In re Bestwall LLC*, 605 B.R. 43, 48 (Bankr. W.D.N.C. 2019), *cert. denied by Off. Comm. of Asbestos Claimants of Bestwall, LLC v. Bestwall LLC (In re Bestwall LLC)*, No. 19-408, 2019 WL 13512209 (4th Cir. Nov. 14, 2019) (citing *Carolin Corp. v. Miller*, 886 F.2d 693, 700–01 (4th Cir. 1989). The burden of proving these elements is on the movant. *In re Landmark Atl. Hess Farm, LLC*, 448 B.R. 707, 711 (Bankr. Md. 2011); *In re Sydnor*, 431 B.R. 584, 590 (Bankr. D. Md. 2010). As the evidence will confirm, there is no basis to find that this case is either objectively futile or filed with subjective bad faith.

**1.  This case is not objectively futile.**

11. Objective futility is "a high standard for dismissal" because it "is inherently drastic and not lightly to be made.'" *In re Aldrich Pump LLC*, No. 20-30608, 2023 WL 9016506, at *23 (Bankr. W.D.N.C. Dec. 28, 2023) (citing *Carolin*, 886 F.2d at 700). "The objective futility prong focuses on 'assessing whether there is no going concern to preserve [and] no hope of rehabilitation, except according to the debtor's terminal euphoria.'" *Id.* (citing *Carolin*, 886 F.2d at 700).

12. The Creditors' Committee has not, and cannot, meet its high burden of showing that this bankruptcy case is objectively futile. The Creditors' Committee's theory rests solely on its claim that the Debtor cannot possibly confirm a plan because they do not intend to support a

---

[3] In the Ad Hoc Committee's view, there are no grounds now and none in the foreseeable future for filing a motion to dismiss the Debtor's case.

4

plan.  This is not the law.  Objective futility requires a showing that there is "no hope of rehabilitation," not merely that one constituency has announced it will vote no.

13. Furthermore, the Creditors' Committee's assertion that it will never vote to confirm a plan cannot be sufficient to find objective futility.  If that were all it takes to prevent the reorganization process, then any creditor constituency or committee could sink any Chapter 11 case whenever they wanted simply by declaring in advance that it will not vote for a plan.  The Bankruptcy Code does not give a creditors' committee a veto over a debtor's statutory right to file for bankruptcy and to reorganize what clearly is a viable enterprise.

14. There is good reason for optimism that even the Creditors' Committee in this case will move from its current inflexible position as this case progresses.  This is not the first diocese case, and as confirmed by the results in the dozens of other diocese cases, cases like the present one, due to the complexity of the issues involved, often take years before the key parties—the debtor, the creditors' committee and insurance companies—reach an agreement on a Chapter 11 plan for the payment of tort claims.  *See, e.g.*, *In re Diocese of Rochester*, Case No. 19-20905 (PRW) (Bankr. W.D.N.Y.) (confirming a plan after nearly six years); *In re Diocese of Camden, New Jersey*, Case No. 20-21257 (JNP) (Bankr. D.N.J.) (confirming a plan after nearly four years); *In re the Roman Catholic Diocese of Rockville Centre, New York*, Case No. 20-12345 (MG) (Bankr. S.D.N.Y) (confirming a plan after four years).

### 2. This case was not filed in bad faith.

15. Subjective bad faith is a question of fact.  "No single factor is determinative of the good faith inquiry, and the Court must examine the totality of the circumstances. "*In re Auto Money N. LLC*, 650 B.R. 245, 258 (Bankr. D.S.C. 2023) (citing *Carolin*, 886 F.2d at 701).  The Creditors' Committee cannot meet its burden of proving that this case was filed in subjective bad faith.

16. The complete lack of any basis for the Creditors' Committee's "bad faith" argument is fully addressed in the Debtor's Opposition, ¶¶ 36–63. The only point worth emphasizing here is to highlight that the Contingent Motion is premised on the argument that the Debtor's preservation of its right to charitable immunity is subjective bad faith, even though the Debtor has made clear that it supports a Chapter 11 plan that will include substantial funding not only from insurance but also the Debtor's own assets. Contrary to the Creditors' Committee's argument, section 558 of the Bankruptcy Code expressly recognizes that the Debtor's estate, as a matter of law, "shall have the benefit of any defense available to the debtor." 11 U.S.C. §558; *see The Ad Hoc Committee of Parishes, Schools, and Affiliates' Memorandum in Opposition to the Official Committee of Unsecured Creditors' Motion for Summary Judgment* [Docket No. 81-2], at ¶¶ 2–3. It cannot be bad faith for the Debtor to preserve charitable immunity subject to plan negotiations when the Bankruptcy Code itself provides that even "[a] waiver of any such defense by the debtor after the commencement of the case does not bind the estate." 11 U.S.C. §558.

3. **Denying the Contingent Motion to Dismiss will best serve the public interest and the public policy favoring a successful reorganization.**

17. There should be no dispute that this is a very important case. Many thousands of people in Maryland are served by and/or depend on not only the Debtor, but also the many parishes, schools and affiliates whose charitable missions are devoted to serving others.

18. It is well established that the public policy underlying Chapter 11 "is to permit successful rehabilitation of debtors." *See N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 527 (1984). As recognized by the Fourth Circuit: "The 'fundamental purpose' of chapter 11 is rehabilitation of the debtor …. To protect reorganizing debtors and their creditors from piecemeal litigation, the bankruptcy laws 'centralize all disputes concerning [a debtor's legal obligations] so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other

arenas.'" *In re White Mountain Mining Co., L.L.C.*, 403 F.3d 164, 170 (4th Cir. 2005) (cleaned up) (internal citations omitted).

19. The policy of Chapter 11 favoring a successful reorganization, as well as the public interest, will be best served by denying the Contingent Motion to Dismiss and allowing the reorganization process to proceed for the benefit of creditors and all parties in interest.

### III.     CONCLUSION

For these reasons, as well as the arguments and evidence to be presented by the Debtor at the evidentiary hearing scheduled to be held on October 6, 2025, the Ad Hoc Committee respectfully requests that the Contingent Motion be dismissed.

[*Signature Page Follows*]

Dated:  September 29, 2025                    **COLE SCHOTZ P.C.**

*/s/ Irving E. Walker*
Irving E. Walker (Bar No. 00179)
1201 Wills Street, Suite 320
Baltimore, MD  21231
(410) 230-0660
(410) 230-0667 (fax)
iwalker@coleschotz.com

and

Ford Elsaesser (admitted *pro hac vice*)
ELSAESSER ANDERSON, CHTD.
519 High Street
P.O. Box 369
Priest River, ID 83856
(208) 448-2990
felsaesser@eaidaho.com

*Attorneys for the Ad Hoc Committee of Parishes, Schools, and Affiliates*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 29, 2025, the foregoing Memorandum in Opposition to the Official Committee of Unsecured Creditors' Contingent Motion to Dismiss the Bankruptcy Case will be served by electronic means through the Court's ECF system to all parties receiving notices in this case.

/s/ Irving E. Walker
Irving E. Walker