## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
## (BALTIMORE DIVISION)

|  |  |
|---|---|
| In re: | |
| ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE, | Chapter 11 |
| Debtor.[1] | Case No. 23-16969-MMH |

## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' CHAPTER 11 PLAN OF REORGANIZATION FOR THE ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE

Dated: October 3, 2025

/s/ *Edwin H. Caldie*

**Tydings & Rosenberg LLP**

Alan M. Grochal, Fed. Bar No.: 01447
Richard L. Costella, Fed. Bar No. 14095
1 East Pratt Street, Suite 901
Baltimore, Maryland 21202
Tel: (410) 752-9772
Fax: (410) 727-5460
Email: rcostella@tydings.com
        agrochal@tydings.com

*Local Counsel to the Official Committee of Unsecured Creditors*

**Stinson LLP**

Edwin H. Caldie (MN # 388930)
Andrew Glasnovich (MN # 0398366)
Christopher Sevedge (MO # 68383)
Nicole Khalouian (NY #5755681)
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Main: 612-335-1500
Facsimile: 612-335-1657
Email: ed.caldie@stinson.com
        drew.glasnovich@stinson.com
        chris.sevedge@stinson.com
        nicole.khalouian@stinson.com

*Counsel to the Official Committee of Unsecured Creditors*

---

[1] The last four digits of the Debtor's federal tax identification number are 1535. The Debtor's principal place of business is located at 320 Cathedral Street, Baltimore, Maryland 21201.

## INTRODUCTION

The Official Committee of Unsecured Creditors (the "Committee"), appointed in the bankruptcy of the Roman Catholic Archbishop of Baltimore, the above-captioned debtor and debtor in possession (the "Archdiocese"), proposes the following Chapter 11 Plan of Reorganization (the "Plan") pursuant to chapter 11 of title 11 of the United States Code. The Committee is the proponent of this Plan (the "Plan Proponent") and the accompanying Disclosure Statement (the "Disclosure Statement") within the meaning of section 1129 of the Bankruptcy Code.

This Plan provides for the financial restructuring of the Archdiocese and the settlement of all, or substantially all, Claims against the Archdiocese, including, without limitation, the settlement of all Abuse Claims against the Archdiocese and the Participating Parties.

As set forth in more detail below, the Plan (i) provides for payment in full of all Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims, Professional Fee Claims, and U.S. Trustee Fee Claims, (ii) modifies the rights of holders of certain Allowed Secured Claims in accordance with section 1123(b)(2) of the Bankruptcy Code, (iii) leaves unimpaired any Pass-Through claims, (iv) provides deferred payments equal to the full Allowed amount of any General Unsecured Claims, and (v) establishes the Abuse Claims Settlement Fund to be held by the Trust to compensate holders of Abuse Claims. Archdiocese

The Plan's treatment of Abuse Claims has been approved by the Committee in consultation with attorneys representing Committee members who collectively represent approximately sixty-four percent (64%) of all Abuse Claimants who have asserted Abuse Claims against the Archdiocese ("State Court Counsel").

**The Plan provides that funding for the Trust and the Abuse Claims Settlement Fund will be provided from, among other potential sources of recovery: (i) a monetary contribution by the Archdiocese and other Participating Parties in the aggregate amount of $888,973,974.00; and, in addition, (ii) insurance settlement payments paid pursuant to the Insurance Settlement Agreements with various Settling Insurers, and (iii) the proceeds of Insurance Policies issued to the Archdiocese and/or other Participating Parties by any Non-Settling Insurer(s).**

To the extent the Archdiocese, Committee, and any Non-Settling Insurer(s) can reach agreement on Insurance Settlement Agreements or other terms of settlement prior to confirmation of the Plan, the Plan provides that such Non-Settling Insurers may become Settling Insurers and for settlement proceeds resulting therefrom to be used to further supplement the Abuse Claims Settlement Fund. The Plan does not permit Non-Settling Insurers to become Settling Insurers (as such term is used in the Plan) after the Plan Effective Date. To the extent no settlement is achieved, the Plan provides for the assignment of Insurance Claims held by the Archdiocese or other Participating Parties to the Trust and establishes a framework for post-confirmation litigation of Insurance Claims and other Litigation Claims seeking recovery from Non-Settling Insurers. The Committee, in consultation with State Court Counsel representing sixty-four percent (64%) of all

Abuse Claimants, has acknowledged and accepted the risk inherent in pursuing post-confirmation recovery from Non-Settling Insurers in the absence of a settlement.

All holders of Claims against the Archdiocese are encouraged to read this Plan and the Disclosure Statement and other Plan Documents in their entirety before voting to accept or reject this Plan. Among other things, the Disclosure Statement provides further information regarding the Archdiocese, events prior to and during the Chapter 11 Case, and a summary and analysis of the Plan. No solicitation materials, other than the Disclosure Statement, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

The Plan Documents, once Filed, can be obtained free of charge by visiting the Archdiocese's case management website at https://dm.epiq11.com/case/rcabaltimore/info, and shall also be available for review in the Office of the Clerk of the Bankruptcy Court during the Bankruptcy Court's normal hours of operation. Holders of Claims may also obtain copies of the Plan Documents by contacting counsel for the Committee in writing at the address on the cover page of the Plan. Each Plan Document is an integral part of the Plan and is hereby incorporated by reference and made a part of the Plan.

CORE/9990000.2173/232191179.1

## SECTION 1.  DEFINITIONS AND INTERPRETATION

### 1.1    Definitions.

The following terms used herein shall have the respective meanings defined below:

1.1.1    *Abuse* means any actual or alleged

a.    sexual conduct or misconduct, sexual abuse or molestation, indecent assault and/or battery, rape, pedophilia, hebephilia, ephebophilia, lascivious behavior, undue familiarity, or sexually-related physical, psychological, or emotional harm, or contacts, or interactions of a sexual nature between a child and an adult, or a nonconsenting adult and another adult, sexual assault, sexual battery, sexual psychological or emotional abuse, humiliation, or intimidation, any other sexual misconduct, or any conduct constituting a sexual offense, incest, use of a child in a sexual performance;

b.    non-sexual assault, battery, corporal punishment and other non-sexual nonsexual acts of physical, psychological, mental or emotional abuse, humiliation or intimidation (including physical abuse or bullying without regard to whether such physical abuse or bullying is of a sexual nature), and all other non-sexual tortious behavior of any type whatsoever; or

For the avoidance of doubt, "*Abuse*" also includes: any actual, alleged, or threatened sexual conduct, misconduct, behavior, misbehavior, abuse, or molestation, including: (a) "Sexual Abuse" as defined in Md. Code Ann., Crim. Law § 3-602; (b) any sexual offense as laid out in Md. Code Ann., Crim. Law § 3-307; (c) any other sexually related act, contact, or interaction, indecent assault and/or battery, rape, indecent or lascivious behavior, undue familiarity, harassment, pedophilia, or ephebophilia; (d) any act that causes or allegedly causes sexually-related physical, psychological, or emotional harm, or any other contacts or interactions of a sexual nature, including any such contacts or interactions between a child and an adult, or a non-consenting adult and another adult; (e) contacts or interactions of a sexual nature; (f) assault, battery, corporal punishment, or any other act of physical, psychological, mental, or emotional abuse, humiliation, or intimidation. Abuse may occur whether or not this activity involves explicit force, whether or not it involves genital or other physical contact, and whether or not there is physical, psychological, or emotional harm to the person; or (g)other such conduct defined as "sexual abuse" in Md. Code. Ct. and Jud. § 5-117(a).

1.1.2    *Abuse Action* means a lawsuit asserting an Abuse Claim against the Archdiocese or any Participating Party.

1.1.3    *Abuse Claim* means any Claim that has been or could be asserted against the Archdiocese or any Participating Party that is attributable to, arises from, is based upon, or results from, in whole or in part, directly, indirectly, or derivatively, Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or any other relief under any theory of liability, law, or equity whatsoever, including contribution, indemnity, vicarious liability, *respondeat superior*, conspiracy, fraud (including fraud in the inducement), any negligence-based or employment-based theory (including negligent hiring, supervision, retention,

or misrepresentation), any other theory based upon misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory (including any theory based upon public policy) or any act or failure to act by the Archdiocese or any Participating Party, or any other Person for whose acts or failures to act the Archdiocese or any Participating Party is or was alleged to be responsible.

For the avoidance of doubt, "***Abuse Claim***" includes (a) all Unknown Abuse Claims, Timely-Filed Abuse Claims, Late-Filed Abuse Claims, or any other Claim or cause of action described in the CVA against the Archdiocese or any Participating Party and (b) any Claim against the Archdiocese or any Participating Party that is attributable to, arises from, is based upon, relates to, or results from Abuse that, as of the Petition Date is barred by any applicable statute of limitations, and in each case, irrespective of whether (x) such Claims also involve the conduct of Joint Tortfeasors, (y) such Claims arise under, or were revived pursuant to, the CVA, or any future reviver law, statute, or binding precedential decision passed or issued on or after the Effective Date, or (z) a proof of claim has been Filed or an Abuse Action has been commenced with respect to such Claim.

       1.1.4    ***Abuse Claim Ballot*** means the ballot approved by the Court for Abuse Claimants to vote to accept or reject the Plan.

       1.1.5    ***Abuse Claim Discharge Date*** means the date on which the Archdiocese Discharge becomes effective with respect to an Abuse Claim, as determined in accordance with the provisions of Section 12.2.3 of the Plan.

       1.1.6    ***Abuse Claimant*** means the holder of an Abuse Claim, the estate of a deceased individual who held an Abuse Claim, the personal executor or personal representative of the estate of a deceased individual who held an Abuse Claim, or the assignee of any of the foregoing, as the case may be. For the avoidance of doubt, the holder of an Unknown Abuse Claim and/or Late-Filed Abuse Claim is an Abuse Claimant.

       1.1.7    ***Abuse Claims Reviewer*** means the Person, including the designee of such Person, who will assess Abuse Claims under the Allocation Protocol.

       1.1.8    ***Abuse Claims Settlement Fund*** means a fund established by the Trust from which Distributions to Class 6 Claims will be made.

       1.1.9    ***Action*** means any lawsuit, proceeding, or other action in a court, or any arbitration.

       1.1.10    ***Administrative Claim*** means a Claim against the Archdiocese for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including, but not limited to: (i) any actual and necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the business of the Archdiocese; (ii) Professional Fee Claims; (iii) any Claim specified in section 503(b)(9) of the Bankruptcy Code; and (iv) any Claim arising from or related to any Abuse alleged to have first occurred after the Petition Date but prior to the Effective Date, unless the Archdiocese elects to treat such Claim as a Pass-Through Claim.

1.1.11    ***Administrative Claims Bar Date*** means the deadline for filing requests for payment of Administrative Claims, as follows: (i) with respect to Administrative Claims other than Professional Fee Claims, shall be 30 days after the Effective Date; and (ii) with respect to Professional Fee Claims, shall be 60 days after the Effective Date.

1.1.12    ***Affiliate*** means any past, present, or future Person that controls, is controlled by, or is under control with, another Person, including parents, subsidiaries, merged Persons, holding Persons, and acquired Persons, or any predecessor to such Person.

1.1.13    ***Agent*** means any past and present employee; officer; director; managing agent or other agent; shareholder; principal; teacher; staff; member; board member; administrator; priest; deacon; brother, sister, nun, or other member of a religious order; clergy; Person bound by a monastic vow; volunteer; attorney; claim handling administrator; and representatives of a Person, in each case in their capacities as such.

1.1.14    ***Alleged Insured*** has the meaning ascribed to such term in Section 12.5.2.b of the Plan.

1.1.15    ***Allocation Protocol*** or ***Abuse Claim Allocation Protocol*** means the protocol developed by the Committee by which the Abuse Claims Reviewer shall assess Abuse Claims. The Allocation Protocol is attached as **Exhibit [Reserved]**, and incorporated into the Trust Agreement.

1.1.16    ***Allowed*** means: means: (a) a Claim that has been scheduled by the Debtor in its Schedules as other than disputed, contingent, or unliquidated and as to which the Debtor or any other party in interest has not filed an objection; (b) a Claim that either is not a Disputed Claim or has been allowed by a Final Order; (c) a Claim that is allowed in a stipulation or settlement executed prior to or after the Effective Date; (d) a Claim relating to a rejected executory contract or unexpired lease that is not a Disputed Claim or has been allowed by a Final Order, only if a Proof of Claim has been timely filed; (e) a Claim as to which a Proof of Claim has been timely filed and as to which the Debtor or any party in interest has not filed an objection; or (f) an Abuse Claim assessed by the Abuse Claims Reviewer in accordance with the Trust Distribution Plan and determined to be entitled to a Trust Distribution; and with respect to all Claims, only after reduction for applicable setoff and similar rights of the Debtor or Reorganized Debtor, as applicable.

1.1.17    ***AOB*** means The Roman Catholic Archbishop of Baltimore, the debtor and debtor in possession in this Chapter 11 Case

1.1.18    ***AOB Entities' Cash Contribution*** means the Archdiocese Cash Contribution plus the Participating Parties' Cash Contribution to be contributed by or on behalf of the Archdiocese and the Participating Parties to the Trust and used to fund the payment of Abuse Claims and Trust Expenses pursuant to the Plan and the Trust Agreement.

1.1.19    ***Archbishop*** means Most Reverend William E. Lori, the Archbishop of Baltimore, and his predecessors and successors.

CORE/9990000.2173/232191179.1

1.1.20    ***Archdiocese of Baltimore*** means the geographic territorial area decreed by the Roman Catholic Church as the "Archdiocese of Baltimore" encompassing Baltimore City and 10 counties in Maryland.

1.1.21    ***Assumed Agreement*** means a contract, lease, or other agreement listed on **Exhibit [Reserved]** to this Plan.

1.1.22    ***Avoidance Action*** means any claim, cause of action, or right to property of the Debtor or Estate under sections 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code.

1.1.23    ***Bankruptcy Code*** means title 11 of the United States Code, as now in effect or hereafter applicable to the Chapter 11 Case.

1.1.24    ***Bankruptcy Court*** means the United States Bankruptcy Court for the District of Maryland or such other court of competent jurisdiction that properly exercises jurisdiction over part or all of the Chapter 11 Case, to the extent that the reference of part or all of the Chapter 11 Case is withdrawn.

1.1.25    ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure, as amended.

1.1.26    ***Bar Date*** means the deadline by which proofs of claim forms for prepetition Claims, including Abuse Claims, were required to be Filed against the Archdiocese. The Bar Date for all Claims was May 31, 2024 at 11:59 p.m. (Eastern time).

1.1.27    ***Barred Claim*** means all Channeled Claims (specifically including, but not limited to, Abuse Claims, Medicare Claims, and Extra-Contractual Claims), Non-Participating Abuse Claims, Non-Participating Insurance Claims, Released Insurance Claims, Unknown Abuse Claims, Related Insurance Claims, Insurer Contribution Claims, Direct Action Claims, GMVA Claims, and every other Claim that (a) is under, arises out of, relates (directly or indirectly) to, or connects in any way with an Abuse Claim or any of the Settling Insurer Policies or (b) is released pursuant to any Insurance Settlement Agreement. For the avoidance of doubt, "***Barred Claim***" includes all Claims exempted from the injunctions set forth in Sections 12.2.1 and 12.3 of the Plan pursuant to Sections 12.2.2.a and 12.2.2.b of the Plan.

1.1.28    ***Business Day*** means any day of the calendar week, except Saturday, Sunday, a "legal holiday", as defined in Bankruptcy Rule 9006(a), any day on which commercial banks are authorized or required by law to close in Baltimore, Maryland, and any day on which the Archdiocese's business offices are closed in observance of a religious holiday.

1.1.29    ***Cash*** means cash and cash equivalents including, without limitation, checks and wire transfers.

1.1.30    ***Causes of Action*** means, except as provided otherwise in this Plan, the Confirmation Order, or any document, instrument, release, or other agreement entered into in connection with this Plan, all Claims of the Debtor, the Estate, or the Trusts (as successor(s) to the Debtor or Estate including in any Avoidance Action), whether or not pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date; provided, however, that any

7

affirmative defense or cross-claim asserted with respect to a Claim shall not be deemed a Cause of Action to the extent such affirmative defense or cross-claim seeks to disallow, reduce, or serve as an offset against such Claim.

1.1.31     ***Channeled Claim*** means any of the following Claims that have been or could have been asserted against any of the Protected Parties or any Settling Insurer(s) to the extent that such Claim directly or indirectly relates to the same injury, damages, facts, or circumstances giving rise to an Abuse Claim, including each and every: (a) Abuse Claim; (b) Indirect Claim; (c) Direct Action Claim; (d) Contribution Claim; (e) Medicare Claim; and (f) Extra-Contractual Claim relating to the Claims listed in subsections (a)–(e) of this sentence; *provided, however*, that ***Channeled Claims*** shall not include: (i) a Claim against an individual who perpetrated an act of Abuse; (ii) a Claim against any religious order, diocese (other than the Archdiocese), or archdiocese, unless such Entity is identified as a Participating Party on **Exhibit 1**; (iii) a Claim against an Excluded Insurer; or (iv) a Claim exempted from the injunctions set forth in Sections 12.2.1 and 12.3 of the Plan pursuant to Sections 12.2.2.a and 12.2.2.b of the Plan; *provided further*, if any Claim identified in the foregoing proviso also asserts liability against a Protected Party, then such Claim shall be a Channeled Claim as to the Protected Party. For the avoidance of doubt (i) a Channeled Claim includes any Claim against a Protected Party based on allegations that it is an alter ego of a Person that is not a Protected Party or that the Protected Party's corporate veil should be pierced on account of Claims against a Person that is not a Protected Party or based on any other theory under which the legal separateness of any Person and any other Person may be disregarded to impose liability for a claim on either such Person.

1.1.32     ***Channeling Injunction*** means the injunction contained in Section 12.3 of this Plan.

1.1.33     ***Chapter 11*** means chapter 11 of the Bankruptcy Code.

1.1.34     ***Chapter 11 Case*** means the above-captioned bankruptcy case.

1.1.35     ***Child Protection Protocols*** means the document entitled "Child Protection Protocols for The Roman Catholic Archbishop of Baltimore, Maryland" and the related documents attached as **Exhibit [Reserved]**.

1.1.36     ***Claimant*** means any Person who alleges or alleged any Claim.

1.1.37     ***Claim*** means a claim, as that term is defined in section 101(5) of the Bankruptcy Code, including, without limitation, any claim, Action, assertion of right, complaint, cross-complaint, counterclaim, liabilities, obligations, rights, request, allegation, mediation, litigation, direct action, administrative proceeding, cause of action, Lien, encumbrances, indemnity, equitable indemnity, right of subrogation, equitable subrogation, defense, injunctive relief, controversy, contribution, exoneration, covenant, agreement, promise, act, omission, trespass, variance, damages, judgment, compensation, set-off, reimbursement, restitution, cost, expense, loss, exposure, execution, attorney's fee, obligation, order, affirmative defense, writ, demand, inquiry, request, directive, obligation, proof of claim in a bankruptcy proceeding or submitted to a trust established pursuant to the Bankruptcy Code, government claim or Action, settlement, and/or any liability whatsoever, whether past, present or (to the extent it arises prior to the Effective Date)

future, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, matured or unmatured, liquidated or unliquidated, direct, indirect or otherwise consequential, whether in law, equity, admiralty, under the Bankruptcy Code, or otherwise, whether currently known or unknown, whether compromised, settled or reduced to a consent judgment, that may exist now or hereinafter for property damages, compensatory damages (such as loss of consortium, wrongful death, survivorship, proximate, consequential, general and special damages), punitive damages, bodily injury, personal injury, public and private claims, or any other right to relief whether sounding in tort, contract, extra-contractual or bad faith, statute, strict liability, equity, nuisance, trespass, statutory violation, wrongful entry or eviction or other eviction or other invasion of the right of private occupancy, and any amounts paid in respect of any judgment, order, decree, settlement, contract, or otherwise.

1.1.38    ***Claim Filing Deadline*** means May 31, 2024.

1.1.39    ***Claims Objection Deadline*** means, with respect to any Non-Abuse Claim, the date which is 90 days after the latter of the Effective Date and the date such Claim is Filed.

1.1.40    ***Class*** means a class or category of Claims as classified and described in Section 2 of this Plan.

1.1.41    ***Class 1 Claim*** means School Bond Claims.

1.1.42    ***Class 2 Claim*** means PNC Secured Claims.

1.1.43    ***Class 3 Claim*** means Other Secured Claims.

1.1.44    ***Class 4 Claim*** means Other Priority Claims.

1.1.45    ***Class 5 Claim*** means General Unsecured Claims.

1.1.46    ***Class 6 Claim*** means Abuse Claims.

1.1.47    ***Class 7 Claim*** means Unknown Abuse Claims.

1.1.48    ***Class 8 Claim*** means Non-Abuse Litigation Claims.

1.1.49    ***Class 9 Claim*** means Inbound Contribution Claims.

1.1.50    ***Co-Insured Entities*** means the Debtor, Parishes, Schools, and Related Non-Debtor Entities covered by Insurance Policies.

1.1.51    ***Committee*** means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case by the United States Trustee pursuant to section 1102 of the Bankruptcy Code, as constituted from time to time, but does not mean the members of the Committee in their individual capacities.

1.1.52     ***Compensation and Benefits Programs*** means all employment agreements and policies and all employment, compensation, and benefit plans, policies, savings plans, retirement plans, deferred compensation plans, supplemental executive retirement plans, healthcare plans, disability plans, severance benefit agreements, plans, or policies, incentive plans, life and accidental death and dismemberment insurance plans, and programs of the Debtor, and all amendments and modifications to the foregoing, applicable to the Debtor's employees, former employees, retirees, and non-employee directors, and the employees, retirees, and non-employee directors of the Parishes, Schools, and Related Non-Debtor Entities.

1.1.53     ***Confirmation Date*** means the date the Confirmation Order is entered by the clerk of the Court on the Court's docket.

1.1.54     ***Confirmation Hearing*** means the hearing on confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code.

1.1.55     ***Confirmation Order*** means the order entered by the Court confirming this Plan in accordance with Chapter 11 of the Bankruptcy Code.

1.1.56     ***Consenting Abuse Claim*** means any and all Abuse Claims held by a Consenting Abuse Claimant.

1.1.57     ***Consenting Abuse Claimant*** means any holder of an Abuse Claim who has not either (i) affirmatively indicated on their Abuse Claim Ballot that they are withholding their consent to the Channeling Injunction and releases provided for in the Plan with respect to the Protected Parties; or (ii) Filed a timely objection to confirmation of the Plan indicating that they are withholding their consent to the Channeling Injunction and releases provided for in the Plan with respect to the Protected Parties.

1.1.58     ***Consenting Abuse Claim Release Agreement*** means an agreement, in the form attached as **Exhibit [Reserved]**, that (a) releases the Archdiocese and all other Protected Parties from any and all Abuse Claims held by a Consenting Abuse Claimant and (b) releases the Settling Insurer Releasees and each Settling Insurer's Related Persons from any and all Barred Claims (including Extra-Contractual Claims and Direct Action Claims) held by a Consenting Abuse Claimant, in each case in accordance with the terms of this Plan. Each Consenting Abuse Claimant must execute a Consenting Abuse Claim Release Agreement as a condition to receiving any Distribution.

1.1.59     ***Contribution Claim*** means all Claims by an Insurer against any Settling Insurer, which are most commonly expressed in terms of contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, or reimbursement, or any other indirect or derivative recovery, for the payment of money where such Insurer contends that it has paid more than its equitable or proportionate share of a Abuse Claim against a Protected Party to the extent that such Claim, directly or indirectly, relates to the same injury, damages, facts, or circumstances giving rise to a Abuse Claim (including an Unknown Abuse Claim); *provided, however*, **Contribution Claims** do not include any Claim for contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, or reimbursement, or any other indirect or derivative recovery,

that a Settling Insurer might have arising from the payment of any amounts under an Insurance Settlement Agreement.

1.1.60    **Coverage Claim** means any Claim against an Insurer under or relating to an Insurance Policy, or the rights and obligations thereunder, or the breach thereof, including Claims seeking insurance coverage.

1.1.61    **Court** means the Bankruptcy Court, the District Court, or any court with appellate jurisdiction over any order entered by the Bankruptcy Court and/or the District Court in the Chapter 11 Case, as applicable.

1.1.62    **Creditor** means a holder of a Claim.

1.1.63    **Cure Amount** means a Claim based upon the Debtor's monetary defaults under an executory contract or unexpired lease that is to be paid in connection with the assumption of such contract or lease under section 365 of the Bankruptcy Code in the amount set forth on **Exhibit [Reserved]** to this Plan.

1.1.64    **CVA** means the Maryland Child Victim's Act, which codified changes in, among other places, the Maryland Code Courts and Judicial Proceedings Article § 5-117.

1.1.65    **Debtor** means the Roman Catholic Archbishop of Baltimore, the debtor and debtor in possession in the Chapter 11 Case.

1.1.66    **Archdiocese** means The Roman Catholic Archbishop of Baltimore, the debtor and debtor in possession in this Chapter 11 Case.

1.1.67    **Archdiocese Abuse Claims Settlement Sub-Fund** means that portion of the Abuse Claims Settlement Fund consisting solely of the portion of the Archdiocese Cash Contribution necessary to make distributions to holders of Non-Participating Abuse Claimant(s) pursuant to Section 4.4 of the Plan. For avoidance of doubt, no portion of any of (i) the Participating Parties' Cash Contribution, (ii) the Settling Insurers' Cash Contribution, (iii) any payment by a Settling Insurer pursuant to an Insurance Settlement Agreement, (iv) any Insurance Claim Proceeds, (v) proceeds of Litigation Awards, (vi) proceeds of Outbound Contribution Claims, or (vii) any other proceeds which the Trust may obtain pursuant to the terms of the Plan shall be included in the Archdiocese Abuse Claim Settlement Sub-Fund.

1.1.68    **Archdiocese Cash Contribution** means that portion of the AOB Entities' Cash Contribution funded by the Archdiocese, which shall be in the aggregate amount of $615,000,000.

1.1.69    **Archdiocese Discharge** means the complete extinguishment of the liability of the Archdiocese in respect to any Claim or debt, as and to the extent further described in Section 12 of the Plan.

1.1.70    **Direct Action Claim** means any Claim against a Settling Insurer that is similar or identical to an Abuse Claim, in that it seeks to recover from the Settling Insurer damages based on actual or alleged Abuse by the Archdiocese or a Participating Party, whether such Claim

arises by contract, in tort, or under the laws of any jurisdiction, including any statute that gives a third-party a direct cause of action against an Insurer.

1.1.71    ***Disallowed*** means a Claim, or any portion thereof, that: (a) has been disallowed by a Final Order; (b) has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law, except any Unknown Abuse Claim; (c) has not been listed in the Schedules and as to which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law, except any Unknown Abuse Claim; or (d) is a Abuse Claim assessed by the Abuse Claims Reviewer in accordance with the Trust Distribution Plan and determined to not be entitled to a Trust Distribution.

1.1.72    ***Disclosure Statement*** means the Disclosure Statement dated [reserved], and approved by the Bankruptcy Court on [reserved], as altered, modified or amended in accordance with the Bankruptcy Code and the Bankruptcy Rules.

1.1.73    ***Disputed*** means, with respect to a Claim, or any portion thereof, that such Claim or portion thereof is neither an Allowed Claim nor a Disallowed Claim, and includes, without limitation, all Abuse Claims and Inbound Contribution Claims together with any Non-Abuse Claim that: (i) is not included on the Archdiocese's Schedules or is reflected on the Schedules as being valued at zero dollars, or as contingent, unliquidated or disputed; or (ii) is the subject of an objection Filed in the Bankruptcy Court that has not been withdrawn or overruled by a Final Order of the Bankruptcy Court.

1.1.74    ***Distribution*** means any payment to the holder of a Claim as provided in this Plan.

1.1.75    ***District Court*** means the United States District Court for the District of Maryland.

1.1.76    ***Donor Restrictions*** means, with respect to any charitable assets in the Archdiocese's possession or control, any expressly stated donor-imposed restrictions upon the use of such assets.

1.1.77    ***Effective Date*** means (i) the last Business Day of the month in which (a) all conditions to effectiveness of this Plan have been satisfied or waived in accordance with Sections 11.1 and 11.2 of the Plan, and (b) no stay of the Confirmation Order is in effect; *provided*, *however*, that if the first date on which all conditions to effectiveness or of the Plan have been satisfied or waived occurs on or after the twentieth (20th) day of such month, the Effective Date shall occur on the last Business Day of the immediately following month; or (ii) such other date as may be mutually agreed by both Plan Proponents and all Settling Insurers.

1.1.78    ***Employee Priority Claim*** means a Claim held by an employee that is entitled to priority under section 507(a)(4) or 507(a)(5) of the Bankruptcy Code.

1.1.79    ***Enjoined Party*** means all Persons who have held, hold, or may hold Claims or causes of action that have been released or discharged or are subject to exculpation, the

Channeling Injunction, or the Settling Insurer Injunction, pursuant to this Plan, the Confirmation Order, or the Sale Order(s).

1.1.80    ***Entity*** has the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

1.1.81    ***Epiq*** means Epiq Corporate Restructuring, LLC, in its capacity as the claims and noticing agent for the Archdiocese.

1.1.82    ***Estate*** means the estate created for the Debtor in this Chapter 11 Case under sections 301 and 541 of the Bankruptcy Code upon the commencement of this Chapter 11 Case.

1.1.83    ***Excluded Insurer Claims*** means Claims, causes of action and enforceable rights of an Abuse Claimant, the Archdiocese and any Participating Party against an Excluded Insurer, whether sounding in contract, tort, or otherwise, including equity and bad faith.

1.1.84    ***Excluded Insurer*** means [reserved].

1.1.85    ***Excluded Insurer Policy*** means any Insurance Policy that any Excluded Insurer issued, subscribed any interest in, or has underwritten any risk in.

1.1.86    ***Exculpated Parties*** means collectively the: (a) Protected Parties; (b) Estate; (c) Unknown Claimants' Representative; (d) Committee; (e) respective Agents of the Protected Parties and Estate in their capacities as such, including with respect to their service or participation in an outside board on which they serve at the request of the Debtor or Archbishop, in their capacity as such; (f) Settling Insurers; and (g) professionals of a Person identified in the preceding clauses (a) through (f).

1.1.87    ***Extra-Contractual Claim*** means any Claim against any Settling Insurer Releasee, in its capacity as an Insurer, seeking any type of relief other than coverage or benefits under, or with respect to, the Insurance Policies. Extra-Contractual Claims include Claims for compensatory, exemplary, or punitive damages, or attorneys' fees, interests, costs, or any other type of relief, alleging any of the following with respect to (i) any Insurance Policy; (ii) any Claim allegedly or actually covered under an Insurance Policy; or (iii) the conduct of a Settling Insurer with respect to (i) or (ii): (a) bad faith; (b) failure to provide insurance coverage under any Insurance Policy, including any failure to investigate or to provide a defense or adequate defense; (c) failure or refusal to compromise and settle any Claim insured under any Insurance Policy; (d) failure to act in good faith; (e) violation or breach of any covenant or duty of good faith and fair dealing, whether express, implied, or otherwise; (f) violation of any state insurance codes, state surplus lines statutes or similar codes or statutes; (g) violation of any unfair claims practices act or similar statute, regulation or code, including any statute, regulation, or code relating to unlawful, unfair, or fraudulent competition, business, or trade practices, and/or untrue or misleading advertising; (h) any type of misconduct; or (i) any other act or omission of any type by a Settling Insurer Releasee for which the claimant seeks relief other than coverage or benefits under an Insurance Policy. Extra-Contractual Claims further include all Claims relating to any Settling Insurer Releasee's (x) handling of any Claims under the Insurance Policies, (y) conduct in negotiating the Insurance Settlement Agreements and/or the Plan, and (z) conduct in the settlement of any Claims.

13

1.1.88   ***File*** or ***Filed*** means (i) properly filed with the clerk of the Court in the Chapter 11 Case or any appeal therefrom, as reflected on the official docket of the clerk of the Court for the Chapter 11 Case or such appeal, or the actual delivery of proofs of claim in paper or electronic form to Epiq in accordance with the terms of the Bankruptcy Court's *Order (I) Establishing Deadlines for Filing Proofs of Claim; (II) Approving Sexual Abuse Claim Supplement; (III) Approving Form and Manner of Notice; and (IV) Approving Confidentiality Procedures* [Docket No. 316]; or (ii) with respect to any Abuse Action, properly filed with the clerk of the court in which the Abuse Action is commenced, as reflected on the official docket of the clerk of that court.

1.1.89   ***Filed Abuse Claim*** means any Timely-Filed Abuse Claim or Late-Filed Abuse Claim.

1.1.90   ***Final Decree*** means the decree contemplated under Bankruptcy Rule 3022.

1.1.91   ***Final Order*** means an order as to which the time to appeal, petition for *certiorari*, petition for review, or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, review, reargue, or rehear shall have been waived in writing in form and substance satisfactory to each applicable litigant waiving such right and their respective counsel or, in the event that an appeal, *writ of certiorari*, petition for review, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or *certiorari* or review has been denied or from which reargument or rehearing was sought, and the time to take any further appeal, petition for *certiorari,* petition for review, or move for reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code, or Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure may be, but has not been, Filed with respect to such order shall not cause such order not to be a Final Order.

1.1.92   ***General Unsecured Claim*** means a Claim against the Archdiocese of any kind or nature including, without limitation, on account of trade credit, contract, personal injury (other than personal injury arising from or related to Abuse), or arising from the rejection of an executory contract or unexpired lease, that (i) is not secured by property of the Estate or otherwise entitled to treatment as a secured claim under section 506 of the Bankruptcy Code; (ii) is not otherwise entitled to priority under sections 503 or 507 of the Bankruptcy Code; and (iii) is not otherwise an Abuse Claim, Administrative Claim, Professional Fee Claim, Claim for U.S. Trustee Fees, Priority Tax Claim, Non-Tax Priority Claim, Secured Claim, or Pass-Through Claim.

1.1.93   ***Impaired*** means, with respect to any Class, that such Class is "impaired" under the Plan within the meaning of section 1124 of the Bankruptcy Code. ***Impair*** and ***Impairment*** shall have correlative meanings.

1.1.94   ***Inbound Contribution Claim*** means any Claim against the Archdiocese or any Participating Party asserting rights of contribution, indemnity, equitable indemnity,

14

subrogation, equitable subrogation, allocation, reallocation, reimbursement, or any other direct, indirect or derivative recovery, arising from or related to any Abuse Claim.

1.1.95    ***Indemnified Claims*** has the meaning ascribed to such term in Section 8.14 of this Plan.

1.1.96    ***Indirect Claim*** means any Claim asserted against a Protected Party or a Settling Insurer by any Person that is not an Insurer (an "***Indirect Claim Claimant***") for contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, reimbursement, or any other indirect or derivative recovery, on account of, or with respect to, any Protected Party's actual or alleged liability for any Claim against such Indirect Claim Claimant that relates to Abuse that took place in whole or in part prior to the Effective Date.

1.1.97    ***Insurance Claims*** means all Claims, causes of action and enforceable rights against a Non-Settling Insurer that is not an Excluded Insurer, whether sounding in contract, tort, or otherwise, including equity and bad faith, held by: (i) the Archdiocese or an Abuse Claimant for any reason related to any Abuse Claim asserted or alleged against the Archdiocese, including those for (a) indemnity and payment of any such Abuse Claim, (b) any Non-Settling Insurer's failure or refusal to provide insurance coverage for any such Abuse Claim under any Insurance Policy, (c) any Non-Settling Insurer's tortious or wrongful claims handling including the failure or refusal of any Non-Settling Insurer to timely compromise and settle any such Abuse Claims against the Archdiocese pursuant to any Insurance Policy, (d) to the extent not otherwise encompassed by section (c) above, any Non-Settling Insurer's failure or refusal to reasonably settle such Abuse Claims, and (e) the interpretation or enforcement of the terms of any Insurance Policy as it pertains to any of the foregoing; and/or (ii) any of the Participating Parties, Settling Insurers, or any Consenting Abuse Claimant for any reason related to any Consenting Abuse Claim against the Participating Party or Settling Insurer, whether independently or jointly liable with the Archdiocese on such Consenting Abuse Claim, including for (a) indemnity and payment of any such Consenting Abuse Claim, (b) any Insurer's failure or refusal to provide insurance coverage under any Insurance Policy for any such Consenting Abuse Claim against the Archdiocese, a Participating Party, (c) any Non-Settling Insurer's tortious or wrongful claims handling including the failure or refusal of any Non-Settling Insurer to timely compromise and settle any such Consenting Abuse Claims against a Participating Party pursuant to any Insurance Policy, (d) to the extent not otherwise encompassed by section (c) above, any Non-Settling Insurer's failure or refusal to reasonably settle such Consenting Abuse Claims, and (e) the interpretation or enforcement of the terms of any Insurance Policy as it pertains to any of the foregoing. For avoidance of doubt, the term "Insurance Claim" does not include any Non-Participating Insurance Claims.

1.1.98    ***Insurance Claims Assignment*** means the transfer or assignment of Insurance Claims to the Trust as set forth in Section 8.2.4, herein. For the avoidance of doubt, Related Insurance Claims expressly are excluded from the Insurance Claims Assignment.

1.1.99    ***Insurance Claim Proceeds*** means any amount recovered by the Trust in respect of any Insurance Claims against Non-Settling Insurers assigned to the Trust pursuant to the Insurance Claims Assignment.

1.1.100    ***Insurance Policy*** means any known or unknown contract, binder, certificate, or policy of insurance or certificate of liability coverage that any Insurer issued, subscribed any interest in, or has underwritten any risk in, in effect on or before the Effective Date, which actually, allegedly, or potentially provides liability coverage for the Archdiocese, and/or any Participating Party, or any of their respective Related Persons.

1.1.101    ***Insurance Settlement Agreement*** means a settlement agreement among the Archdiocese and the applicable Participating Parties, with the Committee's consent, and a Settling Insurer, consistent with the terms of the Plan, to be included in the . For the avoidance of doubt, subject to the entry of an order authorizing the Archdiocese to enter into such settlement agreements.

1.1.102    ***Insurance Settlement Amount*** means the funds payable by a Settling Insurer pursuant to an Insurance Settlement Agreement.

1.1.103    ***Insurer*** means a Person that has, or is alleged to have, issued, subscribed any interest in, assumed any liability for, or underwritten any risk in an Insurance Policy, whether or not a regulated insurance company, including all of such Person's affiliates, successors, and assigns, and all Agents of the foregoing.

1.1.104    ***Insurer Contribution Claim*** means any Claim held by an Insurer pursuant to which such Insurer alleged it has paid more than its equitable or proportionate share of a Abuse Claim, whether express in terms of contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, allocation, reallocation, reimbursement, or any other direct, indirect, or derivative recovery.

1.1.105    ***Interests*** means all Claims, "interests" as that term is used in Section 363 of the Bankruptcy Code, and all other rights of any nature, whether at law or in equity, including all interests or other rights under Maryland law or any other applicable law.

1.1.106    ***Joint Tortfeasor*** means any Person, other than the Archdiocese or a Participating Party, who is alleged to be a joint tortfeasor with the Archdiocese and/or any Participating Party in connection with an Abuse Claim or the Abuse or alleged Abuse giving rise to an Abuse Claim.

1.1.107    ***Late-Filed Abuse Claim*** means any Abuse Claim Filed after the Bar Date, but is Filed on or before the Effective Date.

1.1.108    ***Lien*** means any "lien" as defined in section 101(37) of the Bankruptcy Code.

1.1.109    ***Litigation Award*** means a judgment or verdict determining that the Archdiocese and/or any Participating Party is/are liable to a Litigation Claimant on account of a Litigation Claim.

1.1.110    ***Litigation Claim*** means any Abuse Claim held by a Litigation Claimant, to the extent the Trustee has (i) determined in good faith that such Abuse Claim is covered, in whole or in part, by one or more Non-Settling Insurer Policies, and (ii) authorized such Litigation Claimant

16

to liquidate their Abuse Claim in accordance with the Plan, Allocation Protocol, and the Trust Agreement.

1.1.111    ***Litigation Claimant*** means any Abuse Claimant who may pursue a Litigation Claim.

1.1.112    ***Litigation Claimant Agreement*** means an agreement, in the form attached as **Exhibit [reserved]** to the , pursuant to which each Litigation Claimant agrees and acknowledges that: (i) if and when authorized by the Trustee to pursue a Litigation Claim, they may pursue such Litigation Claim solely for the purposes of (a) establishing whether the Archdiocese and/or any Participating Party may have any liability with respect to their Litigation Claim, (b) determining the amount of that liability, and (c) permitting the Trust to pursue Insurance Claims against Non-Settling Insurers; (ii) any Litigation Award obtained in respect of any Litigation Claim may not be enforced (a) against any Protected Party and/or any of the non-insurance assets of the Archdiocese or any Participating Party or (b) otherwise in any manner that violates the Settling Insurer Injunction; (iii) all Claims held by such Litigation Claimant against the Archdiocese or any Participating Party shall automatically and without further action be fully released and discharged upon the occurrence of the applicable Abuse Claims Discharge Date; (iv) if the Litigation Claimant obtains a judgment against the Archdiocese or any Participating Party, the Litigation Claimant shall take any action reasonably requested of them to enable the Archdiocese or any Participating Party (or any successor Person) to transfer, mortgage, or otherwise encumber any real or personal property free and clear of any judgment Lien, so long as such action does not have a material adverse effect on the Litigation Claimant's or Trustee's rights with respect to any Insurance Claim arising from the Litigation Claim; and (v) each of the Protected Parties is an intended third party beneficiary of such Litigation Claimant Agreement.

1.1.113    ***Mediators*** means the Hon. Robert J. Faris, Mr. Brian Nash, and Mr. Marc E. Isserles.

1.1.114    ***Medicaid*** means medical assistance provided under a state plan approved under title XIX of the Social Security Act.

1.1.115    ***Medicare*** means the health insurance program for the aged and disabled under title XVIII of the Social Security Act.

1.1.116    ***Medicare Beneficiary*** means an individual who is entitled to Medicare benefits and/or who has been determined to be eligible for Medicaid.

1.1.117    ***Medicare Claim*** means all Claims by CMS, and/or any Agent or successor of CMS charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA or pursuing Claims under MSPA, relating to any payments in respect of any Abuse Claims, including Claims for reimbursement of payments made to Abuse Claimants who recover or receive any Distribution from the Trust, and Claims relating to reporting obligations.

1.1.118    ***Medicare Eligible*** means an Abuse Claimant who is eligible to receive, is receiving, or has received Medicare benefits.

1.1.119    ***MMSEA*** means section 111 of the "Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L. 110-173)" which imposes reporting obligations on those Persons with payment obligations under the MSPA.

1.1.120    ***MSPA*** means 42 U.S.C. § 1395 et seq., or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection therewith or amendments thereto.

1.1.121    ***Neutrality Parties*** means, collectively, (i) the Archdiocese; (ii) the Participating Parties; (iii) the Committee; (iv) the Trustee; (v) the Abuse Claimants; (vi) the Abuse Claims Reviewer; and (vii) all Non-Settling Insurers*.*

1.1.122    ***Non-Abuse Claim*** means any Claim against the Archdiocese that is not an Abuse Claim or Inbound Contribution Claim.

1.1.123    ***Non-Participating Abuse Claim*** means an Abuse Claim held by a Non-Participating Abuse Claimant.

1.1.124    ***Non-Participating Abuse Claimant*** means the holder of an Abuse Claim who affirmatively withholds their consent to the Channeling Injunction and releases provided for in the Plan with respect to Protected Parties other than the Archdiocese by (i) indicating as such on their Abuse Claim Ballot; or (ii) Filing an objection to the Plan indicating that they do not consent to the Channeling Injunction and releases provided for in the Plan with respect to Protected Parties other than the Archdiocese; and who has not, prior to entry of the Confirmation Order, agreed in writing to provide such consent, to grant such releases, and to be treated as a Consenting Abuse Claimant for all purposes.

1.1.125    ***Non-Participating Abuse Claim Release Agreement*** means an agreement, in the form attached as Exhibit [reserved], releasing the Archdiocese from any and all Abuse Claims held by a Non-Participating Abuse Claimant in accordance with the terms of this Plan, to be executed by the Non-Participating Abuse Claimant as a condition of receiving any Distribution in respect of their Non-Participating Abuse Claim.

1.1.126    ***Non-Participating AOB Abuse Claim*** means that portion of any Non-Participating Abuse Claim for which the Archdiocese is, or is alleged to be, liable.

1.1.127    ***Non-Participating PP Abuse Claim*** means that portion of any Non-Participating Abuse Claim for which one or more Participating Parties are, or are alleged to be, liable.

1.1.128    ***Non-Participating Insurance Claim*** means all Claims, causes of action and enforceable rights against a Non-Settling Insurer, whether sounding in contract, tort, or otherwise, including equity and bad faith, held by any Participating Party or any Non-Participating Abuse Claimant for any reason related to any Non-Participating Abuse Claim asserted or alleged against a Participating Party, whether independently or jointly liable with the Archdiocese on such Non-Participating Abuse Claim, including for (i) indemnity and payment of any such Non-Participating Abuse Claim, (ii) any Non-Settling Insurer's failure or refusal to provide insurance coverage under any Insurance Policy for any such Non-Participating Abuse Claim against a

Participating Party, (iii) any Non-Settling Insurer's tortious or wrongful claims handling including the failure or refusal of any Non-Settling Insurer to timely compromise and settle any such Non-Participating Abuse Claims against a Participating Party pursuant to any Insurance Policy, (iv) to the extent not otherwise encompassed by section (iii) above, any Non-Settling Insurer's failure or refusal to reasonably settle such Non-Participating Abuse Claims, and (v) the interpretation or enforcement of the terms of any Insurance Policy as it pertains to any of the foregoing.

      1.1.129    ***Non-Participating Litigation Claimant Agreement*** means an agreement, in the form attached as __**Exhibit [reserved]**__ pursuant to which a Non-Participating Abuse Claimant agrees and acknowledges (i) that they may pursue their Non-Participating AOB Abuse Claim solely for purposes of establishing whether the Archdiocese may have any liability with respect to their Non-Participating AOB Abuse Claim and the amount, if any, of such liability; (ii) any judgment or verdict obtained in respect of such Non-Participating AOB Abuse Claim may not be enforced (a) against the Archdiocese or any Protected Party or (b) in any manner that violates the Settling Insurer Injunction, but may be presented to the Trustee to establish the Non-Participating Abuse Claimant's entitlement to additional Distributions from the Archdiocese Abuse Claims Settlement Sub-Fund solely as provided for in Section 4.4. of the Plan; and (iii) if the Non-Participating Abuse Claimant obtains a judgment against the Archdiocese, he or she shall take any action reasonably requested to enable the Archdiocese to transfer, mortgage or otherwise encumber any real or personal property free and clear of any judgment Lien.

      1.1.130    ***Non-Settling Insurer*** means any Insurer that is not a Settling Insurer or an Excluded Insurer.

      1.1.131    ***Non-Settling Insurer Policy*** means any Insurance Policy any Non-Settling Insurer issued, subscribed any interest in, or has underwritten any risk in. For the avoidance of doubt, no Settling Insurer Policy is a Non-Settling Insurer Policy.

      1.1.132    ***Non-Abuse Litigation Claim*** means a Claim other than an Abuse Claim on account of which a Proof of Claim was timely filed and for which a civil action had been commenced on or before the Petition Date.

      1.1.133    ***Non-Tax Priority Claim*** means a Claim against the Archdiocese, other than an Administrative Claim, Priority Tax Claim, or Professional Fee Claim, which is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code.

      1.1.134    ***Other Catholic Organization*** means a Person that (a) is, or allegedly is, insured or covered under a Settling Insurer Policy (as a named insured, additional insured, or otherwise) and/or (b) has, prior to confirmation of the Plan, actually or allegedly acquired or been assigned the right to make a Claim for coverage under a Settling Insurer Policy and is listed on Exhibit 1. For the avoidance of doubt, "Other Catholic Organization" does not include the Archdiocese, any Parish, or any School.

      1.1.135    ***Outbound Contribution Claim*** means any Claim or cause of action related to a Consenting Abuse Claim that may be asserted by the Archdiocese or any Participating Party against any Person that is not a Protected Party.

1.1.136   **Parish** means any past or present Roman Catholic parish located within the geographical territory of the Archdiocese or subject to the canonical jurisdiction of the Archbishop of Baltimore, together with any corporation or other entity recognized under civil law that holds title to temporal property for, or on behalf of, any such parish, including those identified on **Exhibit 1**.

1.1.137   **Parish Claim** means every Claim held by a Parish against the Debtor as of the Petition Date, including Claims based upon (a) reimbursement for overpayments to the self-insurance fund maintained by the Debtor, (b) reimbursement for overpayments to the group insurance fund maintained by the Debtor, (c) indemnification and contribution relating to Abuse Claims, (d) the Debtor's use of donations received as part of its annual appeal for donations, and (e) the Debtor's use of funds held in trust.

1.1.138   **Participating Parties' Cash Contribution** means that portion of the AOB Entities' Cash Contribution funded by Participating Parties, which shall be in the aggregate amount of at least $100,000,000.00, and individually by each Participating Party in the amount set forth on **Exhibit 1**.  The maximum total Participating Parties' Cash Contribution set out on Exhibit 1 is $273,973,974.00.

1.1.139   **Participating Party** means any Parish, School, Other Catholic Organizations, or other Person listed on Exhibit 1 attached hereto, who contributes its Insurance Claims to the Trust **and** contributes funds to the AOB Entities' Cash Contribution in the amount stated on Exhibit 1; provided that no Parish, School, Other Catholic Organizations, or other Person is a Participating Party unless the aggregate amount paid by to the Participating Parties Cash Contribution is not less than $100,000,000.00. A Parish, School, Other Catholic Organizations, or other Person who elects not to contribute both its Insurance Claims and pay the amount stated on Exhibit 1, shall not be a Participating Party. Any Parish, School, Other Catholic Organizations, or other Person who elects to be a Participating Party must provide the Committee written notice of its election on or before the date of the Confirmation Hearing.

1.1.140   **Pass-Through Claim** means any Disputed Non-Abuse Claim, which the Archdiocese elects to treat as a Pass-Through Claim pursuant to the terms of the Plan.

1.1.141   **Perpetrator(s)** means the individual natural person(s) who perpetrated the acts of Abuse or alleged Abuse giving rise to any Abuse Claims.

1.1.142   **Person** means an individual, corporation, corporation sole, partnership, association, limited liability company, limited liability partnership, joint venture, association, joint stock company, proprietorship, trust, estate, unincorporated organization, governmental unit, quasi-governmental entity, or government (or agency or political subdivision thereof), including any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency, department, board or instrumentality thereof, any other entity, and any successor in interest, heir, executor, administrator, trustee, trustee in bankruptcy, or receiver of any entity, and also has the meaning set forth in Section 101(41) of the Bankruptcy Code. For the avoidance of doubt, an Entity is a "**Person**," as is each of the Protected Parties.

1.1.143   **Petition Date** means September 29, 2023.

CORE/9990000.2173/232191179.1

1.1.144    *Plan* means this Chapter 11 Plan of Reorganization as it may be altered, modified, or amended in accordance with the Bankruptcy Code and the Bankruptcy Rules.

1.1.145    *Plan Documents* means the Plan and the Disclosure Statement, all exhibits and schedules attached thereto, and all Plan Supplements, either in their present form or as each may be amended, supplemented or otherwise modified from time to time.

1.1.146    *Plan Proponents* means, collectively, the Archdiocese and the Committee.

1.1.147    **Plan Supplement** means one or more supplements to the Plan to be Filed with the Bankruptcy Court, which shall contain (a) the Allocation Protocol, a list of known Insurance Policies, the Child Protection Protocols, the form of Litigation Claimant Agreement, all in form and substance acceptable to each of the Plan Proponents in their respective sole discretion; (b) a list of all executory contracts and leases designated by the Archdiocese in its sole discretion to be assumed or assumed and assigned pursuant to the Plan; and (c) the form of Consenting Abuse Claim Release Agreement, the form of Non-Participating Abuse Claimant Agreement, the form of Trust Agreement, and each Insurance Settlement Agreement entered into prior to the Confirmation Date.

1.1.148    *PNC Secured Claims* means those Claims by PNC Bank, National Association pursuant to the PNC Loan Agreement, PNC Notes, Pledge Agreement, and Swap Agreements, as defined and more fully described in the *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and Granting Adequate Protection, (II) Scheduling a Final Hearing on the Use of Cash Collateral, and (III) Granting Related Relief* (Dkt. No. 9) filed in the Chapter 11 Case.

1.1.149    *Post-Effective Date Preconditions to Coverage* means those preconditions and contractual requirements (if any): (a) which the Archdiocese and Participating Parties may be required to satisfy under Non-Settling Insurer Policies and applicable law as a predicate to the pursuit of an Insurance Claim, and (b) that the Non-Settling Insurer Policies and applicable law impose as a condition to providing coverage under such Non-Settling Insurer Policies, in each case to the extent required to be satisfied or performed following the Effective Date.

1.1.150    *Priority Tax Claim* means any Claim against the Archdiocese entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

1.1.151    *Professional Fee Claim* means a Claim for compensation for legal or other professional services and related reimbursement of expenses under sections 327, 328, 330(a), 331 or 503(b) of the Bankruptcy Code.

1.1.152    *Professionals* means all professionals employed in the Chapter 11 Case pursuant to sections 327, 328 or 1103 of the Bankruptcy Code.

1.1.153    *Protected Parties* means the Archdiocese, the Participating Parties, the Settling Insurers, and any Settling Insurer Covered Persons.

CORE/9990000.2173/232191179.1

1.1.154    ***Purchased Property*** means the Settling Insurer Policies and all Claims purchased by, and sold to, a Settling Insurer pursuant to such Settling Insurer's Insurance Settlement Agreement.

1.1.155    ***Reduction Amount*** has the meaning ascribed to such term in section 12.5.2.b. of the Plan.

1.1.156    ***Related Insurance Claims*** means:

(i)    all Claims, causes of action and enforceable rights against any Settling Insurer Releasee or any Settling Insurer's Related Persons, whether sounding in contract, tort, or otherwise, including equity and bad faith, held by the Archdiocese, any Participating Party, or any Abuse Claimant (whether a Consenting Abuse Claimant or a Non-Participating Claimant) for any reason related to any Abuse Claim asserted or alleged against the Archdiocese or any Participating Party (whether a Consenting Abuse Claim or a Non-Participating Abuse Claim), including those for (i) indemnity and payment of any such Abuse Claim; (ii) any Settling Insurer's failure or refusal to provide insurance coverage for any such Abuse Claim under any Insurance Policy; (iii) any Settling Insurer's tortious or wrongful claims handling including the failure or refusal of any Settling Insurer to timely compromise and settle any such Abuse Claims against the Archdiocese or any Participating Party pursuant to any Insurance Policy; (iv) to the extent not otherwise encompassed by section (iii) above, any Settling Insurer's failure or refusal to reasonably settle such Abuse Claims; and (v) the interpretation or enforcement of the terms of any Insurance Policy as it pertains to any of the foregoing; and

(ii)    all Extra-Contractual Claims against any Settling Insurer Releasee or any Settling Insurer's Related Persons; and

(iii)    all other Claims and causes of action against any Settling Insurer Releasee or any Settling Insurer's Related Persons that are under, arise out of, relate (directly or indirectly to) or connect in any way with the Insurance Policies.

1.1.157    ***Related Person*** means, with respect to any Person, such Person's predecessors, successors, assigns, and present and former shareholders, members, affiliates, subsidiaries, employees, Agents, brokers, adjusters, managing agents, claims agents, underwriting agents, administrators, officers, directors, trustees, partners, attorneys, financial advisors, accountants, and consultants, each in their capacities solely as such.

1.1.158    ***Released Insurance Claims*** means all Claims purchased by the Settling Insurers and/or released by the Archdiocese and the Participating Parties pursuant to the Insurance Settlement Agreements.

1.1.159    ***Released Parties*** means (i) the Archdiocese; (ii) the Participating Parties; and (iii) each Settling Insurer, but only to the extent that such Settling Insurer's liability is under,

arises out of, relates (directly or indirectly) to or connects in any way with the Settling Insurer Policies or otherwise from liabilities covered by the Settling Insurer Policies (including for the avoidance of doubt, Related Insurance Claims); *provided, however*, that "***Released Parties***" shall not include: (i) any Person who perpetrated an act of Abuse; or (ii) any religious order, diocese (other than the Archdiocese), or archdiocese, unless such Entity is identified as a Participating Party on __Exhibit 1__.

1.1.160    ***Releasing Parties*** has the meaning ascribed to such term in Section 12.7 of the Plan.

1.1.161    ***Reorganized Debtor*** means the Debtor from and after the Effective Date. Unless otherwise expressly stated or the context otherwise requires, references to "the Debtor" and "the Reorganized Debtor" throughout various provisions of the Plan are an effort to anticipate whether an event may occur before or after the Effective Date. In this regard, and generally for purposes of the Plan, any written agreement made by the Debtor as part of the Plan before the Effective Date (unless provided otherwise) will survive the Confirmation Date and the Effective Date and will bind the Reorganized Debtor and every other party to such agreement (including the provisions of the Plan as confirmed).

1.1.162    ***Residual Assets*** means, after payment of the Archdiocese Cash Contribution, the Insurance Claims Assignment, and the transfer of Outbound Contribution Claims to the Trust, and except for (i) any Insurance Policies to be retained by the Archdiocese pursuant to Section 7.5 of this Plan and (ii) the Purchased Property and Released Insurance Claims, all residual property and assets of the Archdiocese and/or the Estate, including all charitable assets subject to Donor Restrictions, all property to which the Archdiocese holds legal title only, and all rights with respect to any Avoidance Actions or other causes of action belonging to the Archdiocese or its Estate.

1.1.163    ***Sale Order or Sale Orders*** means the order or orders approving the Insurance Settlement Agreements.

1.1.164    ***Schedules*** means the schedules of assets and liabilities and the statement of financial affairs Filed by the Archdiocese in this Chapter 11 Case on October 31, 2023 [Docket No. 146], as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as amended or supplemented through the Effective Date.

1.1.165    ***School*** means a past or present Catholic school, including any Catholic School owned by the Archdiocese or any Participating Party, and including those identified on __Exhibit 1__.

1.1.166    ***School Bond Claims*** means those Claims pursuant to that certain Indenture of Trust dated as of June 1, 2007, relating to those $24,165,000 Maryland Health and Higher Educational Facilities Authority Revenue Bonds, Archdiocese of Baltimore Schools Issue, Series 2007, as more fully described in the *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and Granting Adequate Protection, (II) Scheduling a Final Hearing on the Use of Cash Collateral, and (III) Granting Related Relief* (Dkt. No. 9) filed in the Chapter 11 Case.

1.1.167    ***Secured*** means, with respect to any Claim against the Archdiocese, a Claim to the extent (i) secured by a Lien on property of the Estate (a) as set forth in the Plan, (b) as agreed to by the holder of such Claim and the Archdiocese, or (c) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (ii) subject to any setoff right of the holder of such Claim under section 553 of the Bankruptcy Code but, with respect to both of the foregoing clauses (i) and (ii), only to the extent of the value of the interest of such holder in the Estate's interest in the property securing such Claim or the amount subject to setoff, as applicable.

1.1.168    ***Settling Insurer*** means any Insurer that is party to an Insurance Settlement Agreement with the consent of the Committee and the Archdiocese. A Settling Insurer's Related Persons shall receive the benefits and protections afforded to a Settling Insurer under the Plan; *provided*, that if such Related Person is a Related Person by virtue of being a predecessor, successor, or assign of the applicable Settling Insurer, then such Related Person shall only receive the benefits and protections afforded to a Settling Insurer under the Plan to the extent that: (i) such predecessor's liability was assumed by the Settling Insurer, and not independent of the liability of such Settling Insurer; and (ii) such successor's or assign's liability is derivative of the liability of the Settling Insurer and not independent of the liability of the Settling Insurer.

1.1.169    ***Settling Insurer Covered Person*** means any Person that has or may have a Claim to insurance coverage under a Settling Insurer Policy.

1.1.170    ***Settling Insurer Policy*** means each Insurance Policy (or the coverage part(s) of such policy) that is canceled, settled, or sold back to a Settling Insurer pursuant to the Insurance Settlement Agreement with such Settling Insurer.

1.1.171    ***Settling Insurer Releasee*** means each Settling Insurer and each of its or their respective past, present, and future parents, subsidiaries, affiliates, and divisions; each of the foregoing Persons' respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions, and acquired companies; each of the foregoing Persons' respective past, present, and future directors, officers, shareholders, employees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators, solely in their respective capacities as such; and each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, solely in their respective capacities as such, and all Persons acting on behalf of, by, through, or in concert with them. "***Settling Insurer Releasee***" further includes the reinsurers and retrocessionaires of each Settling Insurer, solely in their capacities as such with respect to a Settling Insurer Policy.

1.1.172    ***Settling Insurer Injunction*** means the permanent injunction provided for in Section 12.4 of this Plan.

1.1.173    ***Statutory Fees and Court Costs*** means the court costs and fees payable by the Debtor under 28 U.S.C. § 1930 and United States Trustee fees.

1.1.174    ***Target Policy*** means any Insurance Policy issued by a Non-Settling Insurer that is alleged to afford coverage for any Litigation Claim.

1.1.175    ***Timely-Filed Abuse Claim*** means any Abuse Claim filed in a court of competent jurisdiction before the Bar Date.

1.1.176    *Trust* means the trust to be established pursuant to the Plan and the Trust Agreement for the satisfaction of all Abuse Claims.

1.1.177    *Trust Agreement or Trust Documents* shall mean the trust agreement between and among the Archdiocese, the Committee and the Trustee establishing and governing the Trust, including the Allocation Protocol, as it may be amended, together with such additional documents as may be executed in connection with the Trust Agreement.

1.1.178    *Trust Assets* means the Insurance Claims against Non-Settling Insurers assigned to the Trust pursuant to the Plan, Outbound Contribution Claims, and all other property transferred to the Trust pursuant to this Plan, or otherwise acquired by the Trust following the Effective Date, together with any proceeds thereof. For avoidance of doubt, the Trust Assets shall specifically exclude (i) all of the Residual Assets; and (ii) all Settling Insurer Policies, all Claims against Settling Insurers (including, for the avoidance of doubt, Extra-Contractual Claims) settled, sold and/or released pursuant to the Insurance Settlement Agreements, and all other Purchased Property and Related Insurance Claims.

1.1.179    *Trust Distribution* means a Distribution by the Trust, in accordance with the provisions of the Plan, the Allocation Protocol, Trust Documents and the Confirmation Order. For the avoidance of doubt, the payment of Trust Expenses shall not be considered Trust Distributions.

1.1.180    *Trust Expenses* means the costs of administering the Trust, including, without limitation payments to the Trustee and professionals retained to represent the Trust in accordance with the terms of the Trust Agreement.

1.1.181    *Trustee* means the trustee of the Trust, as identified in the Trust Agreement, and any successor trustee appointed pursuant to the terms of the Plan and/or Trust Agreement.

1.1.182    *Unimpaired* means, with respect to any Class, that such Class is not Impaired.

1.1.183    *United States Trustee* means the Office of the United States Trustee for Region 4, which includes the District of Maryland.

1.1.184    *Unknown Abuse Claim* means any Abuse Claim asserted against the Archdiocese and/or a Participating Party that alleges Abuse that occurred prior to the Petition Date for which a proof of claim is not Filed on or before the Effective Date of the Plan and one of the following condition applies (a) the Claimant is under eighteen years of age on the Bar Date; (b) the Claimant neither discovered nor reasonably should have discovered before the Bar Date that his or her injury was caused by Abuse on account of one of the following: (i) Claimant's insanity or other mental illness; or (ii) the Claimant was a member of the United States Armed Services deployed in active duty on the Bar Date; or (c) the Claimant was known to the Archdiocese as holding or likely holding an Abuse Claim but did not receive actual or constructive notice of the Bar Date. For the avoidance of doubt, an Unknown Abuse Claim does not include any claim filed after the Bar Date which does not satisfy either (a), (b), or (c) of the proceeding sentence.

CORE/9990000.2173/232191179.1

1.1.185    ***Unknown Abuse Claimant*** means a holder of an Unknown Abuse Claim.

1.1.186    ***Unknown Claimant Representative*** means [reserved], the representative appointed by the Bankruptcy Court to serve as legal representative for Unknown Abuse Claimants, any successor legal representative appointed by the Bankruptcy Court, or, on and after the Effective Date, any successor legal representative appointed in accordance with the Trust Agreement.

1.1.187    ***U.S. Trustee Fees*** means all fees and charges assessed against the Estate of the Archdiocese under 28 U.S.C. § 1930 together with interest, if any, under 31 U.S.C. § 3717.

1.1.188    ***Voting Deadline*** means the deadline established by the Court for claimants entitled to vote on the Plan to submit ballots accepting or rejecting the Plan.

**1.2      Interpretation: Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The words "herein", "hereof", "hereto", "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Section, Subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Disclosure Statement, and if not defined therein, in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified. If a time or date is specified for any payments or other Distribution under the Plan, it shall mean on or as soon as reasonably practicable thereafter. Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral.

**1.3      Exhibits.**

All exhibits to the Plan and any other Plan Documents are hereby incorporated by reference and made part of the Plan as if set forth fully herein.

**1.4      Time Periods.**

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. Enlargement of any period of time prescribed or allowed by the Plan shall be governed by the provisions of Bankruptcy Rule 9006(b).

***

CORE/9990000.2173/232191179.1

## SECTION 2.          TREATMENT OF CLAIMS

### 2.1    Unclassified Claims.

2.1.1    *Administrative Claims*. Except as provided for otherwise in this Plan, and subject to section 503(b)(1)(D) of the Bankruptcy Code, holders of General Administrative Expense Claims not previously Allowed by a Final Order must file and serve on the Debtor request for the payment of such Administrative Claims in accordance with the procedures set forth in the Confirmation Order on or before the Administrative Claims Bar Date, or such Administrative Claims shall be automatically considered Disallowed Claims and shall be forever barred from assertion and unenforceable against the Debtor, Reorganized Debtor, Estate, or property of the foregoing, without the need for any objection by the Reorganized Debtor or further notice to, or action, order, or approval of, the Bankruptcy Court, and any such Administrative Claim shall be deemed fully satisfied, released, and discharged.

With respect to any trade Claims arising after the Petition Date representing obligations incurred by the Archdiocese in the ordinary course of its business consistent with past practice, such trade Claims shall be paid in the ordinary course of business. As to other Allowed Administrative Claims, except as otherwise provided in the Plan, each holder of an Allowed Administrative Claim: (i) shall be paid by the Archdiocese as soon as reasonably practicable after the Effective Date or on the date the Order allowing such Administrative Claim becomes a Final Order; and (ii) shall receive, on account of and in full satisfaction of such Allowed Administrative Claim, Cash equal to the amount thereof, unless the holder agrees to less favorable treatment of such Allowed Administrative Claim.

Except to the extent a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment with respect to such Allowed Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim shall receive on account of and in full and complete settlement, release, and discharge of, and in exchange for, such Allowed Administrative Expense Claim, payment of Cash in an amount equal to such Allowed Administrative Expense Claim on or as soon as reasonably practicable after the later of: (a) the Effective Date; (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; (c) such other date(s) as such holder and the Debtor or Reorganized Debtor shall have agreed; or (d) such other date ordered by the Bankruptcy Court; *provided, however*, that Allowed Administrative Expense Claims that arise in the ordinary course of the Debtor's operations during the Chapter 11 Case may be paid by the Debtor or Reorganized Debtor in the ordinary course of business and in accordance with the terms and conditions of the particular agreements governing such obligations, course of dealing, course of operations, or customary practice.

Allowed Administrative Claims based upon liabilities incurred by the Debtor in the ordinary course of its business shall be satisfied by the Reorganized Debtor pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claims, without any further action by the holders of such Administrative Claims or further approval by the Bankruptcy Court.

As further described below in this Plan, holders of Administrative Claims based on liabilities incurred by the Debtor in the ordinary course of its business shall not be required to file or serve any request for payment of such Administrative Claims. Such Administrative Claims shall be satisfied pursuant to <u>Section 2.1.1</u> of this Plan.

2.1.2   ***Priority Tax Claims.*** Except to the extent a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive on account of and in full and complete settlement, release, and discharge of, and in exchange for, such Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim on or as soon as reasonably practicable after, the later of: (a) the Effective Date; (b) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course; provided, however, that the Debtor and Reorganized Debtor reserve the right to prepay all or a portion of any such amounts at any time under this option without penalty or premium.

Notwithstanding the foregoing, the holder of an Allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to, or in connection with, the Allowed Priority Tax Claim. Any such Claim or demand for any such penalty shall be subject to treatment in Class 5 (General Unsecured Claims), if not subordinated to Class 5 claims pursuant to an order of the Bankruptcy Court. The holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtor, the Reorganized Debtor, or their respective property.

2.1.3   ***Non-Tax Priority Claims***. Unless the holder of an Allowed Non-Tax Priority Claim agrees to a different treatment, on, or as soon as reasonably practicable after, the later of: (i) the Effective Date; or (ii) the date on which such Non-Tax Priority Claim becomes an Allowed Claim, each holder of such an Allowed Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Allowed Claim, (a) Cash equal to the unpaid portion of such Allowed Claim or (b) such other less favorable treatment as to which the Archdiocese and the holder of such Allowed Claim shall have agreed upon in writing. The Trust shall not be responsible for payment of Non-Tax Priority Claims. Notwithstanding anything in the Plan to the contrary, the holder of an Allowed Non-Tax Priority Claim may be paid on such other date and upon such other terms as may be agreed upon by the holder of an Allowed Administrative Claim and the Archdiocese.

2.1.4   ***Professional Fee Claims***. All Professionals or other Persons requesting the final allowance and payment of compensation or reimbursement of expenses pursuant to sections 328, 330, 331, or 503(b) of the Bankruptcy Code for services rendered during the period from the Petition Date to and including the Effective Date shall file and serve final applications for allowance and payment of Professional Fee Claims on counsel to the Debtor and the United States Trustee no later than the first Business Day that is sixty (60) days after the Effective Date. Objections to any Professional Fee Claim must be filed and served on the Reorganized Debtor and the applicable Professional within twenty-one (21) calendar days after the filing of the final fee application that relates to the Professional Fee Claim (unless otherwise agreed by the Debtor or

Reorganized Debtor, as applicable, and the Professional requesting allowance and payment of a Professional Fee Claim).

Allowed Professional Fee Claims shall be paid in full in Cash and in such amounts as are Allowed by the Bankruptcy Court on or as soon as reasonably practicable after the later of: (a) the date upon which an order relating to any such Allowed Professional Fee Claim is entered; and (b) such other date(s) as the holder of the Allowed Professional Fee Claim and the Debtor or Reorganized Debtor, as applicable, shall have agreed.

The Reorganized Debtor is authorized to pay compensation for services rendered or reimbursement of expenses incurred by its Professionals after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

Professional Fee Claims of Professionals employed by the Committee, which are incurred prior to the Effective Date of the Plan in connection with the implementation and consummation of the Plan, shall be paid by the Archdiocese, after notice and a hearing in accordance with this Section 2.1.4. For the avoidance of doubt, Professional Fee Claims of Professionals employed by the Archdiocese for services rendered prior to the Effective Date, shall not be paid by the Trust.

2.1.5    ***Statutory Fees and Court Costs.*** Statutory Fees and Court Costs will be paid in full in Cash by the Reorganized Debtor on the Effective Date or as soon as reasonably practicable thereafter or as required under the Office of the United States Trustee's quarterly payment guidelines. After the Effective Date, the Reorganized Debtor will continue to pay quarterly fees to the Office of the United States Trustee and file quarterly reports with the Office of the United States Trustee until the Chapter 11 Case is closed, dismissed, or converted.

2.1.6    ***Employee Priority Claims.*** The holder of an Allowed Employee Priority Claim will receive, in full satisfaction of such Allowed Employee Priority Claim; (a) payment in full of the unpaid amount of such Allowed Employee Priority Claim in cash as soon as practicable after the later of (i) the Effective Date and (ii) the date such Allowed Employee Priority Claim becomes Allowed; or (b) such other treatment as agreed in writing by the holder of such Allowed Employee Priority Claim or ordered by the Bankruptcy Court.

## 2.2    <u>Classification and Specification of Treatment of Claims.</u>

All Claims, except those described in Section 2.1, are placed in the following Classes of Claims, pursuant to section 1123(a)(1) of the Bankruptcy Code, which section specifies the treatment of such Classes of Claims and of their Impaired or Unimpaired status, pursuant to sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of the Class and is classified in a different Class to the extent that the Claim qualifies within the description of that different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released, withdrawn, waived, or otherwise satisfied under this Plan. Unless this Plan expressly provides otherwise, when a Class includes a subclass, each subclass is a separate Class for all purposes under the Bankruptcy Code, including, without limitation, voting and Distribution.

Subject to all other applicable provisions of this Plan (including its Distribution provisions), classified Claims shall receive the respective treatments set forth below. Unless otherwise provided herein, this Plan will not provide any Distribution on account of a Claim to the extent that such Claim has been Disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third parties. Except as specifically provided in this Plan, this Plan will not provide any Distribution on account of a Claim, the payment of which has been assumed by a third party. Except as otherwise specifically provided in this Plan or by further order of the Bankruptcy Court, all treatment, allowances, or payments of Claims which have been specified or otherwise fixed or required by order of the Bankruptcy Court shall not be Impaired by this Plan and the rights of the holders of such Claims as provided in such orders shall not be altered by this Plan. Any holder of any Claim in any Class may agree, pursuant to section 1123(a)(4) of the Bankruptcy Code, to a treatment of such Claim that is less favorable (but not more favorable) than any other Claim in such Class.

The categories of Claims listed below classify Claims for all purposes, including voting, confirmation of the Plan, and Distributions pursuant to the Plan:

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| N/A | Administrative Claims | No | Deemed to Accept |
| N/A | Priority Tax Claims | No | Deemed to Accept |
| N/A | Non-Tax Priority Claims | No | Deemed to Accept |
| N/A | Professional Fee Claims | No | Deemed to Accept |
| N/A | Statutory Fees and Court Costs | No | Does Not Vote |
| N/A | Employee Priority Claims | No | Deemed to Accept |
| 1 | School Bond Claims | No | Deemed to Accept |
| 2 | PNC Secured Claims | No | Deemed to Accept |
| 3 | Other Secured Claims | No | Deemed to Accept |
| 4 | Other Priority Claims | No | Deemed to Accept |
| 5 | General Unsecured Claims | No | Deemed to Accept |
| 6 | Abuse Claims | Yes | Yes |
| 7 | Unknown Abuse Claims | Yes | Yes |
| 8 | Non-Abuse Litigation Claims | No | Deemed to Accept |
| 9 | Inbound Contribution Claims | Yes | Deemed to Reject |

**2.3** **Classes of Claims.**

*Class 1 – School Bond Claims*

**Classification:** Class 1 consists of the School Bond Claims.

**Treatment:** Except to the extent the holder(s) of the School Bond Claims agree to less favorable treatment, on the Effective Date, the School Bond Claims shall be Reinstated and all loan documents and provisions relating to the School Bond Claims shall remain in full force and effect until all obligations of the Debtor have been indefeasibly paid in full.

**Voting:** The School Bond Claims are Unimpaired. As a result, each holder of a School Bond Claim is conclusively presumed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of School Bond Claims are not entitled to vote to accept or reject the Plan, and the votes of holders of School Bond Claims will not be solicited with respect to the School Bond Claims.

### Class 2 – PNC Secured Claims.

**Classification:** Class 2 consists of the PNC Secured Claims.

**Treatment:** Except to the extent the holder(s) of the PNC Secured Claims agree to less favorable treatment, on the Effective Date, the PNC Secured Claims shall be Reinstated and all loan documents and provisions relating to the PNC Secured Claims shall remain in full force and effect until all obligations of the Debtor have been indefeasibly paid in full.

**Voting:** The PNC Secured Claims are Unimpaired. As a result, each holder of a PNC Secured Claim is conclusively presumed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of PNC Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of holders of PNC Secured Claims will not be solicited with respect to the PNC Secured Claims.

### Class 3 – Other Secured Claims

**Classification:** Class 3 includes all Other Secured Claims.

**Treatment:** Except to the extent a holder of an Other Secured Claim agrees to less favorable treatment, in exchange for full and final satisfaction of such Allowed Other Secured Claim, each holder of an Other Secured Claim will receive, at the sole option of the Debtor or Reorganized Debtor, as applicable: (a) Cash in an amount equal to the Allowed amount of such Other Secured Claim, including the payment of any interest required to be paid under section 506(b) of the Bankruptcy Code, payable on or as soon as reasonably practicable after the last to occur of (i) the Effective Date, (ii) the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, and (iii) the date on which the holder of such Other Secured Claim and the Debtor or Reorganized Debtor, as applicable, shall otherwise agree in writing; (b) satisfaction of such Other Secured Claim in any other manner that renders the Allowed Other Secured Claim Unimpaired, including Reinstatement; or (c) return of the applicable collateral on the Effective Date or as soon as reasonably practicable after the Effective Date.

**Voting:** Other Secured Claims are Unimpaired. As a result, each holder of an Other Secured Claim is conclusively presumed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of holders of Other Secured Claims will not be solicited with respect to Other Secured Claims.

CORE/9990000.2173/232191179.1

### Class 4 – Other Priority Claims

**Classification:** Class 4 includes all Other Priority Claims.

**Treatment:** Except to the extent that a Class 4 Claimant agrees to less favorable treatment of their Class 4 Claim, in exchange for full and final satisfaction of their Class 3 Claim, at the sole option of the Reorganized Debtor, each Class 4 Claimant shall receive: (i) payment in Cash in an amount equal to such Allowed Class 4 Claim, payable on or as soon as reasonably practicable after the last to occur of (A) the Effective Date, (B) the date on which such Class 4 Claim becomes an Allowed Class 4 Claim, and (C) the date on which a Class 4 Claimant and the Debtor or Reorganized Debtor, as applicable, shall otherwise agree in writing; or (ii) satisfaction of their Allowed Class 4 Claim in any other manner that renders the Allowed Class 4 Claim Unimpaired, including Reinstatement.

**Voting:** Other Priority Claims are Unimpaired. As a result, each holder of an Other Priority Claim is conclusively presumed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Priority Claims are not entitled to vote to accept or reject the Plan, and the votes of holders of Other Priority Claims will not be solicited with respect to Other Priority Claims.

### Class 5 – General Unsecured Claims

**Classification:** Class 5 includes all General Unsecured Claims.

**Treatment:** Except to the extent a holder of a General Unsecured Claim agrees to less favorable treatment of their General Unsecured Claim, in exchange for full and final satisfaction of such Allowed General Unsecured Claim, each holder of a General Unsecured Claim shall receive payment in Cash in an amount equal to such Allowed General Unsecured Claim (excluding interest), which shall be payable on or as soon as reasonably practicable after the later to occur of: (i) the Effective Date; (ii) the date on which the applicable General Unsecured Claim becomes an Allowed General Unsecured Claim; and (iii) the date on which the holder of such General Unsecured Claim and the Debtor or Reorganized Debtor, as applicable, shall otherwise agree in writing. No Participating Party may be a Class 5 Claimant.

**Voting:** General Unsecured Claims are Unimpaired. As a result, each holder of a General Unsecured Claim is conclusively presumed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of General Unsecured Claims are not entitled to vote to accept or reject the Plan, and the votes of holders of General Unsecured Claims will not be solicited with respect to General Unsecured Claims .

### Class 6 – Abuse Claims

**Classification:** Class 6 include all Abuse Claims.

**Treatment:**

a.      The Plan provides for the establishment of the Trust to fund Distributions to Class 6 Claimants. The Trust shall be funded as provided in Section 8 of the Plan. Distributions from the Trust shall be made to Class 6 Claimants on a fair and equitable basis, pursuant to and in accordance with Sections 4.4 and 4.9 of the Plan, the Trust Agreement, and the Allocation Protocol, which shall represent the sole recovery available to Class 6 Claimants in respect to any obligation owed by the Protected Parties; *provided*, *however*, that nothing in this Plan shall prevent Non-Participating Abuse Claimants from asserting their respective Non-Participating PP Abuse Claims against Participating Parties or any Non-Participating Insurance Claims they may have against any Non-Settling Insurer; *provided further*, that (i) all holders (including Class 6 Claimants) of Channeled Claims against the Settling Insurers are subject to the Channeling Injunction and (ii) all holders (including Class 6 Claimants) of Barred Claims against the Settling Insurers are subject to the Settling Insurer Injunction.

b.      As of the Effective Date of the Plan, and without any further order from the Bankruptcy Court or further action by any party, the Trust shall fully assume (i) the liability of the Archdiocese for all Class 6 Claims, the liability of the Participating Parties for all Class 6 Claims other than Non-Participating PP Abuse Claims, and the liability of the Settling Insurers for all Channeled Claims and Non-Participating Abuse Claims, in each case pursuant to the Channeling Injunction set forth in Section 12.3 of the Plan; and (ii) the liability (if any) of the Settling Insurers for any and all Barred Claims. All Class 6 Claims shall be satisfied solely from the Trust as set forth in the Plan, the Trust Agreement, and the Allocation Protocol; *provided*, *however*, Distributions made by the Trust to holders of Class 6 Claims shall not prevent holders of Class 6 Claims that are also Litigation Claimants from asserting Litigation Claims to the extent provided for herein; and *provided further*, that nothing in this Plan shall prevent Non-Participating Abuse Claimants from asserting their respective Non-Participating PP Abuse Claims against Participating Parties or any Non-Participating Insurance Claims they may have against any Non-Settling Insurer. Notwithstanding the foregoing or anything herein to the contrary, the Channeling Injunction and Settling Insurer Injunction respectively prohibit any Person (including all Litigation Claimants and Non-Participating Abuse Claimants) from asserting, enforcing, or attempting to assert or enforce any Channeled Claim or Barred Claim against any Settling Insurer Releasees, any Settling Insurer's Related Persons, or the property or assets of either of the foregoing (including Purchased Property).

c.      In addition to any other requirements set forth in this Plan, in any of the Plan Documents, or in the Confirmation Order that must be satisfied before a Class 6 Claimant is eligible to receive a Distribution from the Trust, no Class 6 Claimant shall receive any Distribution until and unless he or she has executed and delivered to the Trust, as applicable based on their status as a Consenting Abuse Claimant or a Non-Participating Abuse Claimant, either a Consenting Abuse Claim Release Agreement or a Non-Participating Abuse Claim Release Agreement. Notwithstanding the foregoing, to preserve coverage under Non-Settling Insurer Policies, and subject to the provisions of Section 8.2.6 and 12.2 of the Plan, Consenting Abuse Claimants specifically reserve, and do not release, any and all Claims that they may have against the Archdiocese or any Participating Party, to the extent that such Claims implicate coverage under Non-Settling Insurer Policies, but recourse is limited to the proceeds of Non-Settling Insurer Policies and all other damages (including extra-contractual damages), awards, judgments in excess of policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable by the Trust from any Non-Settling Insurers because of their conduct concerning insurance coverage for, or defense or settlement of, any Abuse Claim, and any proceeds from such judgments

or awards will be Distributed in accordance with Section 4.9 of the Plan. Consenting Abuse Claimants may not under any circumstance recover any Channeled Claim (including any Abuse Claim) or Barred Claim from any Settling Insurer Releasees, and Settling Insurer's Related Persons, or the property or assets of either of the foregoing (including Purchased Property); all such Claims are subject to the Channeling Injunction and Settling Insurer Injunction and are released as set forth herein. The Trust must provide copies of all executed Consenting Abuse Claim Release Agreements and Non-Participating Abuse Claim Release Agreements to the Protected Parties; and (ii) any Joint Tortfeasor, upon reasonable request and provision of an appropriate, executed non-disclosure or confidentiality agreement.

       d.    Except with respect to Non-Participating PP Abuse Claims (which are preserved as against the Participating Parties under the Plan), Class 6 Claims will be released as against the Archdiocese and the Participating Parties upon the occurrence of the applicable Abuse Claim Discharge Date as provided in Sections 12.2.3 and 12.7 below. For the avoidance of doubt, nothing herein shall require a Consenting Abuse Claimant to release any Person that is not a Protected Party, Settling Insurer Releasee, or Settling Insurer Related Person.

       e.    The Non-Settling Insurers remain fully liable for their obligations related in any way to the Class 6 Claims, and their obligations are not reduced by the Archdiocese being in bankruptcy or by the Trust Distributions Class 6 Claimants receive, or are entitled to receive, based on the Plan, Trust Agreement, or Allocation Protocol. For the avoidance of doubt, (i) determinations by the Abuse Claims Reviewer and/or any Distributions Abuse Claimants may receive from the Trust shall not constitute a determination of the Archdiocese's or any Participating Party's liability or damages for Class 6 Claims; and (ii) under no circumstances shall the Abuse Claims Reviewer's review of a Class 6 Claim affect, or be construed to affect, the rights of a Non-Settling Insurer. The Trust may continue efforts to obtain recoveries from Non-Settling Insurers related to the Class 6 Claims. Any recoveries by the Trust or a Class 6 Claimant from Non-Settling Insurers shall become Trust Assets to be distributed pursuant to Section 4.9 of this Plan and the Allocation Protocol.

       f.    Nothing in this Plan affects, diminishes or impairs any Class 6 Claimant's rights against any Joint Tortfeasor, including with respect to that Joint Tortfeasor's comparative fault or independent and several liability for Abuse, if any. In any litigation against a Joint Tortfeasor, nothing in this Plan or the Plan Documents shall be deemed an adjudication of a Class 6 Claim for any purpose or a limitation on the recovery against such Joint Tortfeasor; *provided, however*, that the Channeling Injunction and Settling Insurer Injunction respectively bar any recovery of a Channeled Claim or Barred Claim from any Settling Insurer Releasees, any Settling Insurer's Related Persons, or the property or assets of either (including the Purchased Property).

       g.    No Person, other than the Committee or, following the Effective Date, the Trustee, may: (i) object to any Abuse Claim; or (ii) challenge the merit, validity, or amount of any Abuse Claim, except that nothing in the Plan shall prevent the Archdiocese or any Participating Party, or with respect to any Abuse Claim implicating a Non-Settling Insurer Policy, a Non-Settling Insurer, from asserting any legal or factual defenses that the Archdiocese, Participating Party, and/or Non-Settling Insurer may have in response to any Litigation Claim or Non-Participating Abuse Claim. Any objection or challenge to an Abuse Claim pending in the Chapter 11 Case as of the Effective Date is deemed withdrawn and shall not be refiled. With the exception

CORE/9990000.2173/232191179.1

of the Trustee's objections or challenges to a Consenting Abuse Claim, or the adjudication or settlement of a Litigation Claim, Consenting Abuse Claims shall be treated in accordance with the Allocation Protocol and shall not be subject to any other review or judicial consideration. For the avoidance of doubt, nothing in the Plan shall in any way restrict the Archdiocese, any Participating Party, or any other Person from objecting to or otherwise contesting any Non-Participating Abuse Claim on any basis in any proceeding or action outside of the Chapter 11 Case. Nothing in this Plan or the Plan Documents shall constitute an admission by any Protected Party as to the validity or amount of any Class 6 Claim, nor shall anything herein or therein (i) restrict the Archdiocese or the Participating Parties from satisfying any Post-Effective Date Preconditions to Coverage; or (ii) modify the terms of any Non-Settling Insurer Policy with respect to any failure of the Archdiocese or the Participating Parties to satisfy any Post-Effective Date Preconditions to Coverage.

       h.     [reserved].

**Voting:** Class 6 Claims are Impaired, and each holder of a Class 6 Claim is entitled to vote to accept or reject the Plan. Only for purposes of voting, each Class 6 Claim is deemed to be Allowed in the amount of $1.00.

### Class 7 – Unknown Abuse Claims

**Classification:** Class 6 includes all Unknown Abuse Claims.

**Treatment:** This Plan creates a Trust to facilitate the Reorganized Debtor's payment of Class 7 Claims, and pursue to Insurance Claims and Extra-Contractual Claims relating, to Unknown Abuse Claimants entitled to such payments under this Plan, the Trust Agreement, and Allocation Plan. As of the Effective Date, the liability of Protected Parties and Settling Insurers for all Unknown Abuse Claims that are Channeled Claims shall be: (i) assumed fully by the Reorganized Debtor, without further act, deed, or court order; and (ii) pursuant to the Discharge Injunction and Channeling Injunction, satisfied solely from the assets of the Reorganized Debtor as set forth in this Plan and the Confirmation Order. No Unknown Abuse Claimant shall receive any payment from the Reorganized Debtor unless and until such Unknown Abuse Claimant has executed a Abuse Claim Consenting Abuse Claimant Release Agreement or Non-Participating Abuse Claim Release Agreement (as applicable) attached, respectively, as **Exhibits [ ]** to this Plan.

**Voting:** Unknown Abuse Claims are Impaired and, therefore, Unknown Claimant Representative is entitled to vote to accept or reject this Plan on Unknown Abuse Claimants' behalf.

### Class 8 – Non-Abuse Litigation Claims

**Classification:** Class 8 consists of Non-Abuse Litigation Claims.

**Treatment:** Except to the extent a holder of a Non-Abuse Litigation Claim agrees to less favorable treatment, in exchange for full and final satisfaction of Allowed Non-Abuse Litigation Claims, the holder of each Non-Abuse Litigation Claim shall seek to collect upon such Non-Abuse Litigation Claim solely from applicable insurance proceeds. No holder of a Non-Abuse Litigation Claim shall: (i) seek to compel the Debtor or Reorganized Debtor to pay any deductible,

retainage, or any other amount for or on account of any insurance carrier, provider, broker, or policy; or (ii) obtain any distribution from the Debtor, Estate, or Reorganized Debtor in or arising out of any Non-Abuse Litigation Claim.

**Voting:** Class 8 is Unimpaired, and each holder of a Non-Abuse Litigation Claim. is conclusively presumed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Non-Abuse Litigation Claim are not entitled to vote to accept or reject the Plan, and the votes of holders of General Unsecured Claims will not be solicited with respect to Non-Abuse Litigation Claim.

### *Class 9 – Inbound Contribution Claims.*

**Classification:** Class 9 Inbound Contribution Claims include any Claim asserted against the Archdiocese for indemnity, contribution, or reimbursement arising out of, or related to, the Claimant's liability to pay or defend any Abuse Claim.

**Treatment:** Class 9 Claims shall be Disallowed and extinguished and there will be no Distributions to the holders of Class 9 Claims on account of such Class 9 Claims.

**Voting:** Class 9 Inbound Contribution Claimants will not receive or retain any property under the Plan and therefore are deemed to have rejected the Plan. Class 9 will not vote on the Plan.

36

## SECTION 3.  ACCEPTANCE OR REJECTION OF THE PLAN

### 3.1    Impaired Classes Vote.

In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

### 3.2    Presumed Acceptance of the Plan.

Class 1, Class 2, Class 3, Class 4, Class 5, and Class 8 Claims are Unimpaired under the Plan and the holders of Class 3 Claims are presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

### 3.3    Presumed Rejection of the Plan.

Class 9 Claims will not receive or retain any property under this Plan. Holders of Class 9 Clams are therefore deemed to reject this Plan pursuant to section 1126(g) of the Bankruptcy Code. **NOTWITHSTANDING SUCH PRESUMED REJECTION, HOLDERS OF CLASS 9 CLAIMS WILL BE DEEMED TO CONSENT TO THE INJUNCTIONS AND RELEASES SET FORTH IN THE PLAN UNLESS THEY FILE A TIMELY OBJECTION TO CONFIRMATION OF THE PLAN IN ACCORDANCE WITH SECTION 12.2.2(B).**

### 3.4    Voting Classes.

Class 6 and Class 7, Claims are Impaired, and the holders of Claims in those Classes are entitled to vote to accept or reject this Plan.

### 3.5    Modification of Treatment of Claims.

The Archdiocese may modify the treatment of any Allowed Claim in any manner adverse only to the holder of such Claim at any time after the Effective Date upon the consent of the Committee and the holder of the Claim whose Allowed Claim is being adversely affected, or as Allowed by Bankruptcy Court order prior to the Effective Date.

### 3.6    Elimination of Vacant Classes.

Any Class of Claims that does not have, as of the Confirmation Date, at least one Allowed Claim, or at least one Claim temporarily Allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for purposes of (i) voting on the acceptance or rejection of the Plan and (ii) determining acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code. Likewise, any Class of Claims where no Allowed Claimant returns a ballot indicating either acceptance or rejection of the Plan, shall be deemed deleted from the Plan for purposes of determining acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

## SECTION 4.        ABUSE CLAIMS.

### 4.1    Trust Liability for Abuse Claims.

On the Effective Date, the Trust shall automatically and without further act or deed assume: (i) all liability, if any, of the Protected Parties and Settling Insurers in respect of Channeled Claims and Barred Claims; (ii) the responsibility for preserving, managing and distributing Trust Assets pursuant to the Allocation Protocol and the Trust Agreement; and (iii) the right to pursue Insurance Claims against Non-Settling Insurers. Except as otherwise provided herein, the Trust shall only assume the liabilities of the Archdiocese and Participating Parties with respect to Abuse Claims upon the occurrence of the applicable Abuse Claim Discharge Date.

### 4.2    Assessment of Abuse Claims.

Abuse Claims will be assessed in accordance with the Allocation Protocol, which is designed to provide an expeditious, efficient, and inexpensive method for determining whether an Abuse Claimant is entitled to a Distribution from the Trust. The Archdiocese and the Participating Parties shall reasonably cooperate with the Abuse Claims Reviewer and the Trustee in connection with any inquiries by either related to the administration of the Allocation Protocol, but shall not be required to act in any way that prevents the satisfaction of any Post-Effective Date Preconditions to Coverage under any Non-Settling Insurer Policy, if any (including, if applicable, any Post-Effective Date Precondition to Coverage concerning cooperation with a Non-Settling Insurer). Under no circumstance shall the Abuse Claims Reviewer's review of an Abuse Claim or a Distribution to an Abuse Claimant have any effect on the rights, defenses, or obligations of any Non-Settling Insurer.

### 4.3    Treatment of Consenting Abuse Claims.

Each holder of a Consenting Abuse Claim shall be a Litigation Claimant and will receive, in full and final satisfaction and discharge of their Abuse Claim: (i) rights, to the extent set forth in the Plan and Allocation Protocol, to Distributions from the Trust; and (ii) the right, prior to the occurrence of the applicable Abuse Claim Discharge Date, and subject to the Trustee authorizing them to pursue a Litigation Claim in accordance with the provisions of this Plan, to liquidate their Consenting Abuse Claim for its full amount according to proof in order to determine the liability of the Archdiocese or any Participating Party (as applicable) for purposes of the Trust obtaining or seeking recovery from any Non-Settling Insurer that is or may be liable on the Consenting Abuse Claim or any Insurance Claim arising therefrom, pursuant to Section 8.8 of this Plan. For the avoidance of doubt, the Settling Insurers shall not have any duties or obligations to any Person in connection with a Litigation Claim (including without limitation, any duty to defend or indemnify any Person). Further, under no circumstances will a Litigation Claimant or any other Person be able to obtain any recovery whatsoever against (i) any Settling Insurer Releasee, any Settling Insurer's Related Persons, or the property or assets of either (including Purchased Property), or (ii) any asset of the Archdiocese or the Participating Parties (except for collecting proceeds from any Non-Settling Insurer Policy or other amounts for which a Non-Settling Insurer is deemed to be liable), in connection with a Litigation Claim.

Prior to authorizing a Consenting Abuse Claimant that elects to be treated as a Litigation Claimant to proceed with their Litigation Claim, the Trustee shall (a) consult with counsel for the Litigation Claimant, and the Archdiocese and/or any Participating Party against whom such Abuse Claimant's Claim is asserted, to establish, among other things, a mutually acceptable litigation schedule; and (b) require the Litigation Claimant to execute and deliver a Consenting Abuse Claim Release Agreement and a Litigation Claimant Agreement. For the avoidance of doubt, the foregoing sentence does not limit any right a Non-Settling Insurer may have to participate in the formation of a litigation schedule as may be required under applicable law or by the court overseeing adjudication of the Litigation Claims.

The Trustee shall provide a copy of each Consenting Abuse Claim Release Agreement and Litigation Claimant Agreement to the Archdiocese upon execution thereof, and to any other Protected Parties upon the reasonable request of such party. For the avoidance of doubt, the Trustee shall have the sole discretion to (a) authorize a Litigation Claimant to pursue their Litigation Claim; (b) make a final decision as to whether a Litigation Claim is pursued; and (c) make final decisions relating to the management and timing of litigation relating to Litigation Claims. ArchdioceseFor the further avoidance of doubt, nothing set forth in Section 4.3 regarding the Trustee's discretion to make final decisions relating to the management and timing of litigation relating to Litigation Claims shall have any impact on the authority of any court overseeing the litigation of a Litigation Claim or limit any right a Non-Settling Insurer may have under applicable law.

### 4.4    Treatment of Non-Participating Abuse Claims.

4.4.1    *Default Distribution.* Each Non-Participating Abuse Claimant shall receive, in full and final satisfaction of their Non-Participating AOB Abuse Claim: (i) a Distribution from the Archdiocese Abuse Claims Settlement Sub-Fund in the amount of $5,000.00; and (ii) the opportunity to establish an entitlement to further Distributions from the Archdiocese Abuse Claims Settlement Sub-Fund solely as provided for in this Section 4.4 of the Plan and the Allocation Protocol.

4.4.2    *Establishing Liability.*

a.    If a Non-Participating Abuse Claimant wishes to obtain a Distribution in excess of the default Distribution set forth in Section 4.4.1 above, he or she must first execute and deliver to the Archdiocese and Trustee a Non-Participating Litigation Claimant Agreement.

b.    Non-Participating Abuse Claimants who deliver to the Archdiocese an executed Non-Participating Litigation Claimant Agreement may, subject to the terms of this Plan and the other Plan Documents, litigate their Non-Participating AOB Abuse Claim in any court of competent jurisdiction.

c.    Notwithstanding any judgment or settlement obtained by a Non-Participating Abuse Claimant with respect to their Non-Participating AOB Abuse Claim, any recovery against the Archdiocese by such Non-Participating Abuse Claimant shall be limited to the Distributions provided for in this Plan and the Allocation Protocol.

39

### 4.4.3 *Additional Distribution Upon Successful Litigation.*

a.      Once a Non-Participating Abuse Claimant's Non-Participating AOB Abuse Claim is fully adjudicated or settled on a final and non-appealable basis, and if (i) as a result of such adjudication or settlement the Archdiocese is determined to be liable to such Non-Participating Abuse Claimant on their Non-Participating AOB Abuse Claim in an amount greater than the default Distribution provided in Section 4.4.1 above, and (ii) the Trust has not been terminated in accordance with the terms of the Trust agreement on or before the date on which the Non-Participating Abuse Claimant first presents their final and non-appealable judgment or settlement to the Trustee, such Non-Participating Abuse Claimant shall be entitled to a further Distribution from the Trust.

b.      Such further Distribution shall be made on or before the date that is 120 days after the date on which the Non-Participating Abuse Claimant presents their final and non-appealable judgment or settlement to the Trustee and shall be in an amount equal to the lesser of (i) the amount of the Archdiocese's liability for the applicable Non-Participating AOB Abuse Claim as set forth in such judgment or settlement and (ii) the amount determined as a result of the Abuse Claim Reviewer's assessment of the Non-Participating Claimant's Non-Participating AOB Abuse Claim pursuant to the Allocation Protocol, in each case less the default Distribution previously paid pursuant to Section 4.4.1.

(i)      To provide for the event that the Trust may be required to make a further Distribution to a Non-Participating Abuse Claimant under Section 4.4.3(b) to the extent such Non-Participating Abuse Claimant establishes liability against the Archdiocese pursuant to Section 4.4.2, the Trust shall add the *pro-rata* portion of the Archdiocese Cash Contribution that the Non-Participating Abuse Claimant would have received had they been a Consenting Abuse Claimant to the Archdiocese Abuse Claims Settlement Sub-Fund.

(ii)      For the avoidance of doubt, Distributions to Non-Participating Abuse Claimants pursuant to clause (ii) of Section 4.4.3(b) above shall be limited to the *pro-rata* portion of the Archdiocese Abuse Claims Settlement Sub-Fund allocable to such Non-Participating Abuse Claimant's Non-Participating AOB Abuse Claim, and holders of Non-Participating Abuse Claims shall not be entitled to receive any Distribution of any other Trust Assets, including, without limitation, any Trust Assets consisting of (a) the Participating Parties' Cash Contribution, (b) the Settling Insurers' Cash Contribution, (c) any payment by a Settling Insurer pursuant to an Insurance Settlement Agreement, (d) any Insurance Claim Proceeds, (e) proceeds of Litigation Awards, (f) proceeds of Outbound Contribution Claims, or (g) any other proceeds which the Trust may obtain pursuant to the terms of the Plan.

CORE/9990000.2173/232191179.1

c.    Any funds held in the Archdiocese Abuse Claims Settlement Sub-Fund that are not distributable to Non-Participating Abuse Claimants pursuant to the Plan and the Allocation Protocol shall revert to the Abuse Claims Settlement fund and be distributed to Consenting Abuse Claimants in accordance with Section 4.9.2.a of the Plan.

***Retention of Non-Participating PP Abuse Claims and Non-Participating Insurance Claim.*** Each Non-Participating Abuse Claimant shall retain the right to assert any Non-Participating PP Abuse Claim they may have against any Participating Party and any Non-Participating Insurance Claim they may have against any Non-Settling Insurer, but only after the Non-Participating Abuse Claimant executes and delivers to the Archdiocese and Trustee a Non-Participating Litigation Claimant Agreement**,** and in all respects, in accordance with, and subject to, the terms and provisions of the Plan.

4.4.3    ***No Recourse Against Settling Insurers***. For the avoidance of doubt, and notwithstanding anything to the contrary herein, the Settling Insurer Injunction bars all Non-Participating Abuse Claimants from asserting, enforcing, or seeking to assert or enforce any Barred Claim (including, for the avoidance of doubt, any Non-Participating Abuse Claim, Non-Participating Insurance Claim, or judgment or settlement in respect thereof) against any Settling Insurer Releasees, any Settling Insurer's Related Persons, or the property or assets of either of the foregoing (including Purchased Property).

## 4.5    Unknown Claimant Treatment.

The Unknown Claimant Representative, on [reserved], Filed on the docket of the Chapter 11 Case [Dkt. No. [reserved]], written notice that Unknown Abuse Claimants will be treated as Consenting Abuse Claims under the Plan. Except to the extent that a Unknown Abuse Claimant agrees to less favorable treatment of such Claim, each Unknown Abuse Claimant shall be a Litigation Claimant in accordance with Section 4.3.1 of the Plan, and in full and final satisfaction, settlement, release, and discharge of, and in exchange for, their respective Unknown Abuse Claim, each holder of a Unknown Abuse Claim shall receive Distributions from the Reorganized Debtor as provided in Section 4.9.2.c of the Plan and in the Trust Documents.

## 4.6    Trust's Rights Against Non-Settling Insurers with Respect to Abuse Claims.

4.6.1    ***Trust's Rights with Respect to Litigation Claims***. The Trust retains the right to pursue Non-Settling Insurers for the Archdiocese's and any other Protected Party's liability to Litigation Claimants. To the extent that either a settlement is achieved with a Non-Settling Insurer as to any Target Policy or a Litigation Claimant obtains a judgment against the Archdiocese or any Participating Party and the Trust obtains a recovery from a Non-Settling Insurer as to such judgment, such recovery shall be added to the Abuse Claims Settlement Fund; *provided, however*, such recovery shall first go to reimburse the Trust or the Litigation Claimant, as the case may be, for all costs (including attorneys' fees) incurred in connection with pursuing the recovery against the Non-Settling Insurer(s) relating to the Litigation Claim, so long as such amounts are reasonable

41

and were agreed to in advance by the Trust. Any amount remaining shall be distributed in a manner consistent with Section 4.9.2 of the Plan and the Allocation Protocol.

       4.6.2    ***No Rights with Respect to Settled and Released Claims against Settling Insurers.*** Once a Settling Insurer pays to the Trust the Insurance Settlement Amount due from such Settling Insurer, the Trust shall neither have nor retain any right to take any action against, or pursue any recovery from, such Settling Insurer for any Claim settled, released, and/or sold pursuant to the Settling Insurer's Insurance Settlement Agreement (including without limitation, Released Insurance Claims and Related Insurance Claims). For the avoidance of doubt, the Trust may enforce its rights (if any) and/or each Settling Insurer's obligations under the applicable Insurance Settlement Agreement(s).

      **4.7**    **Legal Effect of Estimation of Claims and Distributions Under the Allocation Protocol.**

      The Abuse Claims Reviewer's determinations are for estimation and Distribution purposes only and shall not constitute findings as to, or the fixing of, facts or liability concerning the Abuse Claims with any binding legal effect. The determination of the Abuse Claimants' qualifications, the estimation of Abuse Claims, and Trust Distributions to Abuse Claimants shall not be construed as an admission of liability by the Archdiocese, any Participating Party, or the Trust with respect to any Abuse Claim and shall have no *res judicata* or collateral estoppel effect on the Archdiocese, any Participating Party, the Trust, or any Non-Settling Insurer.

      The Trust's act of making a Distribution to an Abuse Claimant is immaterial to, and shall not be construed as, a determination or admission of the Archdiocese's, any Participating Party's, or any Non-Settling Insurers' liability for, or damages with respect to, any Abuse Claim, nor shall the Trust present any Non-Settling Insurer with a demand for payment of said Distribution. The determination of qualification, estimation of Abuse Claims, and the payment of Distributions is not a settlement, release, accord, or novation of any Abuse Claim and cannot be used by any Joint Tortfeasor as a defense to any alleged joint liability; *provided, however*, that the Channeling Injunction and Settling Insurer Injunction respectively prohibit any Person (including all Abuse Claimants) from asserting, enforcing, or attempting to assert or enforce any Channeled Claim or Barred Claim against any Settling Insurer Releasees, any Settling Insurer's Related Persons, or the assets or property of either of the foregoing (including Purchased Property). The determination of qualification, estimation of claims, and payment of partial Distributions does not impair a Litigation Claimant's right to obtain a judgment, including a judgment based on joint and several liability, against the Archdiocese and/or a Participating Party or any Non-Settling Insurer, for purposes of establishing the Archdiocese's and/or a Participating Party's liability with respect to their Litigation Claim; *provided*, *however*, that (a) recourse on such judgment shall be limited to the proceeds of Non-Settling Insurer Policies and all other damages (including extra-contractual damages), awards, judgments in excess of policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable against any Non-Settling Insurers because of their conduct concerning insurance coverage for, or defense or settlement of, any Abuse Claim or any Insurance Claim arising therefrom, and any proceeds from such judgments or awards will be Distributed in accordance with Section 4.9 of the Plan; and (b) the Channeling Injunction and Settling Insurer Injunction respectively shall prohibit any Person (including all Litigation Claimants) from asserting, enforcing, or attempting to assert or enforce any Channeled Claim or Barred Claim against any

CORE/9990000.2173/232191179.1

Settling Insurer Releasees, any Settling Insurer's Related Persons, or the assets or property of either of the foregoing (including Purchased Property). Neither the Abuse Claims Reviewer's review of an Abuse Claim and determination of qualification, nor the Trust's estimation of an Abuse Claim or the payment of Distributions shall: (i) constitute a trial, an adjudication on the merits, or evidence of liability or damages in any litigation with the Archdiocese or the Participating Parties, Non-Settling Insurers, or any other Person, or (ii) constitute, or be deemed, a determination of the reasonableness of the amount of any Litigation Claim, either individually or in the aggregate with other Litigation Claims, in any coverage litigation with any Non-Settling Insurers. The payment of Trust Distributions does not create an admission of the fact of liability, or the extent of damages, on behalf of the Archdiocese and/or any Participating Parties.

## 4.8     Release and Discharge of Abuse Claims.

Notwithstanding anything to the contrary herein, each Abuse Claimant must, prior to receiving a Distribution from the Trust, execute and deliver to the Trustee (i) a Consenting Abuse Claim Release Agreement in the form attached as **Exhibit [reserved]** if such Abuse Claimant is a Consenting Abuse Claimant or (ii) a Non-Participating Abuse Claim Release Agreement in the form attached as **Exhibit [reserved]** if such Abuse Claimant is a Non-Participating Abuse Claimant; *provided, however,* to preserve coverage under Non-Settling Insurer Policies, Consenting Abuse Claimants specifically reserve, and do not release, subject to the occurrence of the applicable Abuse Claim Discharge Date, any and all Abuse Claims that they may have against the Archdiocese and/or any Participating Party that implicate coverage under Non-Settling Insurer Policies, but recourse on such Abuse Claims prior to their release is limited to any Trust Distributions as set forth in the Plan, the Trust Agreement, and the Allocation Protocol, and the proceeds of Non-Settling Insurer Policies and all other damages (including extra-contractual damages), awards, judgments in excess of policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable by the Trust from any Non-Settling Insurers because of their conduct concerning insurance coverage for, or defense or settlement of, any Abuse Claim, and any such judgments or awards will be handled in accordance with the Plan.

Consenting Abuse Claims will be released or enjoined as against the Archdiocese and Participating Parties for any Abuse that may be covered under Non-Settling Insurer Policies only upon the occurrence of the applicable Abuse Claim Discharge Date, as set forth in Section 12.2.3 and 12.7. Consenting Abuse Claimants will expressly reserve their rights against other Persons (other than Protected Parties, Settling Insurer Releasees, or Settling Insurer Related Persons), including Joint Tortfeasors, who will remain severally liable with respect to any Consenting Abuse Claims. For the avoidance of doubt, neither the Channeling Injunction nor the Settling Insurer Injunction, nor any release of a Consenting Abuse Claim, shall be subject to any delayed effectiveness with respect to the Settling Insurers; each shall be immediately effective as to a Settling Insurer upon receipt by the Trust of that Settling Insurer's Insurance Settlement Amount.

Non-Participating AOB Abuse Claims will be released or enjoined as against the Archdiocese upon the occurrence of the applicable Abuse Claim Discharge Date, as set forth in Section 12.2.3 and 12.7. All Barred Claims (including Non-Participating Abuse Claims) against the Settling Insurer Releasees, any Settling Insurer's Related Persons, or the property or assets of either (including Purchased Property) are subject to the Settling Insurer Injunction.

CORE/9990000.2173/232191179.1

Any Person that is, or was alleged to be, a Joint Tortfeasor with the Archdiocese or any of the Participating Parties in connection with any Abuse Claim, or the Abuse or alleged Abuse that forms the basis of any Abuse Claim, shall not be liable for any share of causal liability or fault attributable to the Archdiocese or any Participating Party and neither the Archdiocese nor any Participating Party shall be liable for the share of causal liability or fault attributable to any Joint Tortfeasor or other Person.

For the avoidance of doubt, with respect to all Non-Abuse Claims, except as otherwise provided in the Plan, the Archdiocese's liability on account of such Claims shall be discharged pursuant to the provisions of 1141(d).

### 4.9    Distributions to Abuse Claimants.

4.9.1    ***Distributions Generally.***

a.    ***Tax Considerations.*** Any Distribution to an Abuse Claimant constitutes a payment for damages on account of a personal physical injury or sickness arising from an occurrence, within the meaning of section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

b.    ***Distribution Limitations.*** Consenting Abuse Claimants' recoveries under the Plan shall be limited to their Trust Distributions, if any, as set forth in this Section 4.9, the Allocation Protocol, and the Trust Documents. Abuse Claimants shall not be entitled to collect personally, or otherwise, any additional amounts whatsoever from the Archdiocese, any Participating Party, or their respective assets, for any Abuse Claims that are Channeled Claims, even if they are denied a Trust Distribution. Abuse Claimants shall not be entitled to collect any portion of a Channeled Claim or Barred Claim (including, for the avoidance of doubt, an Abuse Claim) from any Settling Insurer Releasee, any Settling Insurer's Related Persons, or the property or assets of either (including Purchased Property) under any circumstance.

c.    ***No Impact on Non-Settling Insurers***. Nothing in this Plan shall affect in any way the Non-Settling Insurers' rights to argue that any Abuse Claim (whether or not allowed by the Abuse Claims Reviewer for purposes of Distribution) is legally inviable, including by way of illustration and not limitation, the fact that (i) Abuse Claimants may receive Trust Distributions that are determined on the basis of when their claim was filed in relation to the Bar Date; and (ii) holders of Disallowed Abuse Claims may be entitled to distribution pursuant to the Allocation Protocol.

For the avoidance of doubt, Trust Distributions made to Litigation Claimants shall have no impact on Litigation Claimants' rights to obtain a judgment, including a judgment based on joint and several liability, against the Archdiocese, any Participating Party, or any Non-Settling Insurer, but recourse is limited to any Trust Distributions as set forth in the Plan, the Trust Agreement, and the Allocation Protocol, and the proceeds of Non-Settling Insurer Policies and all other damages

44

(including extra-contractual damages), awards, judgments in excess of policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable against any Non-Settling Insurers because of their conduct concerning insurance coverage for, or defense or settlement of, any Abuse Claim or any Insurance Claim arising therefrom, and any proceeds from such judgments or awards will be Distributed in accordance with Section 4.9 of the Plan.

Neither the Trust's Distributions to Abuse Claimants, nor the Abuse Claims Reviewer's review of Abuse Claims, shall: (1) constitute a trial, an adjudication on the merits, or evidence of liability or damages, either individually or in the aggregate, in any litigation whatsoever, or (2) constitute, or be deemed, a determination of the reasonableness or unreasonableness of the amount of any Abuse Claim or any Insurance Claim, either individually or in the aggregate with other Abuse Claims, in any coverage litigation with any Non-Settling Insurers.

Any Trust Distribution to a Litigation Claimant that has obtained a judgment or settlement does not affect, diminish or impair the Trust's right to collect the policy proceeds in respect of such Litigation Claimant's Claim from any Non-Settling Insurer, nor does it affect, diminish or impair the Trust's right to bring any Insurance Claims against the Non-Settling Insurer that have been assigned to the Trust or that belong to the Trust by operation of law.

4.9.2    ***Distributions to Abuse Claimants.*** An Abuse Claimant whom the Abuse Claims Reviewer determines to be entitled to a Distribution pursuant to the Allocation Protocol will receive a Distribution from the Trust in the amount(s) and at the time(s) provided for in this Section 4.9.2. Such Distributions may commence only after the entry of a final decree in this Chapter 11 Case.

a.    ***Distributions to Consenting Abuse Claimants***. Distributions to Consenting Abuse Claimants who, on or prior to the Effective Date, Filed an Abuse Claim, shall be made by the Trustee, in his or her discretion, upon determining the allocable portion of the Abuse Claims Settlement Fund available for Distribution to such Consenting Abuse Claimants in accordance with the Abuse Claims Reviewer's evaluation pursuant to the Allocation Protocol.

b.    ***Distributions to Non-Participating Abuse Claimants.*** Distributions to Non-Participating Abuse Claimants who, on or prior to the Effective Date, Filed an Abuse Claim, shall be made by the Trustee, in his or her discretion, upon determining the allocable portion of the Archdiocese Abuse Claims Settlement Sub-Fund available for Distribution to such Non-Participating Abuse Claimants in accordance with Section 4.4 of the Plan and the Abuse Claims Reviewer's evaluation pursuant to the Allocation Protocol.

c.    ***Distributions to Unknown Abuse Claimants that are Consenting Abuse Claimants.*** Distributions to Unknown Abuse Claimants that are Consenting Abuse Claimants shall paid by the Reorganized Debtor as follows:

CORE/9990000.2173/232191179.1

d.    Upon the assertion of an Unknown Abuse Claim by an Unknown Abuse Claimant that is a Consenting Abuse Claimant, the Abuse Claims Reviewer shall evaluate and assign a score to such Unknown Abuse Claim pursuant to the Allocation Protocol and notify the Trustee of the same. The Trustee, then, but only after the Unknown Abuse Claimant executes and delivers a Consenting Abuse Claim Release Agreement to the Trustee, shall deliver the claim to the Reorganized Debtor, who shall immediately make an initial Distribution to the Unknown Abuse Claimant in the amount of $10,000.

e.    Except as provided in Section 4.9.2.c.iii of the Plan, upon termination of the Trust, the Trustee shall, after accounting for any Distributions made to Unknown Abuse Claimants under Section 4.9.2(d), calculate and deliver to the Reorganized Debtor the payment amount for a final, pro-rata Distribution to Unknown Abuse Claimants that are Consenting Abuse Claimants based on the score each Unknown Abuse Claimant's Unknown Abuse Claim was assigned by the Abuse Claims Reviewer pursuant to the Allocation Protocol and in an amount equal to the amount the Unknown Abuse Claimant would have received had the Claimant received a Distribution from the Trust as a Consenting Class 6 Claimant.

f.    ***Distributions to Unknown Abuse Claimants that are Non-Participating Abuse Claimants.*** Unknown Abuse Claimants that are Non-Participating Abuse Claims shall receive, in full and final satisfaction of their Non-Participating AOB Abuse Claims, Distributions in accordance with the provisions of Section 4.4 of the Plan, except that (i) all such Distributions, including an initial payment in the amount of $10,000.00 shall be funded solely by the Reorganized Debtor and (ii) any additional Distributions payable to Unknown Abuse Claimants who successfully litigate their Claim in accordance with Section 4.4.3 of the Plan shall be paid by the Reorganized Debtor in an amount equal to the amount the Unknown Abuse Claimant would have received had the Claimant received a Distribution from the Trust as a Non-Participating Class 6 Claimant.

g.    ***Obligations of the Reorganized Debtor***. *On the Effective Date, t*he Reorganized Debtor's shall be obligated under this Section 4.9.2 for payment of Unknown Abuse Claims notwithstanding anything in the Plan, including any injunction, release, discharge, or otherwise.

**4.10    Archdiocese Dismissal of Pending Litigation.**

Upon the occurrence of the applicable Abuse Claim Discharge Date, as defined in Section 12.2.3, the subject Abuse Claim asserted in any lawsuit against any Protected Party pending in state or federal court shall be dismissed, with prejudice, and without fees and costs being recoverable against any Protected Party, except that nothing in the Plan shall require Non-Participating Abuse Claimants to dismiss their Non-Participating PP Abuse Claims against Participating Parties.

46

**4.11** **Claim Withdrawal.**

An Abuse Claimant may withdraw his or her Abuse Claim at any time on written notice to the Trustee. If withdrawn, the Abuse Claim will be withdrawn with prejudice and may not be reasserted, and such Abuse Claimant shall still be bound by the Archdiocese Discharge and all injunctive provisions of this Plan, including the Channeling Injunction to the same extent that such provisions applied to such Abuse Claimant's Abuse Claim prior to its withdrawal.

**4.12** **Medicare Procedures.**

With respect to all Abuse Claims, the Trust shall maintain sufficient funds to perform the following duties**:**

a.    With respect to all Abuse Claims, the Trust shall maintain sufficient funds to pay any Medicare Claims.

b.    Prior to making any Distribution on behalf of an Abuse Claim (including any Distribution disbursed to an Abuse Claimant's counsel), the Trustee may obtain in respect of any Channeled Claim a certification from the Claimant that said Claimant has or will provide for the payment and/or resolution of any obligations owing or potentially owing under MSPA relating to such Channeled Claim. If the Trust does not receive such certification, the Trust shall (i) withhold funds sufficient to assure that all obligations owing or potentially owing for Medicare Claims are paid to CMS; and (ii) provide for the payment and/or resolution of any obligations owing or asserted under 42 U.S.C. § 1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Claimant's Channeled Claim.

c.    The Trust shall confirm whether the holder of any Abuse Claims that occurred after December 5, 1980, is enrolled in Medicare Parts A and B (fee-for-service), Part C (Medicare Advantage), or Medicare Part D (drug coverage). This includes implementing an appropriate process to gather the necessary information for querying CMS on such determination, including, the Claimant's first and last name, date of birth, gender, address, and social security number or health insurance claim number.

d.    Upon request, the Trust shall provide to a Settling Insurer or the Archdiocese information sufficient to perform their own queries to CMS, to the extent they wish to do so, including a report setting forth (I) each Abuse Claimant whom the Trustee has determined to be a Medicare Beneficiary; (II) the amount of (a) all Conditional Payments to each such Medicare Beneficiary, (b) the amount of the reserve maintained by the Trust for each Medicare Claim based upon such Conditional Payments.

Nothing in the Plan shall imply, or constitute an admission, that the Protected Parties are "applicable plans" within the meaning of MMSEA, or that they have any legal obligation to report

any actions undertaken by the Trust or contributions to the Trust under MMSEA or any other statute or regulation.

## SECTION 5.  SETTLING INSURERS

### 5.1    Insurance Settlement Agreements.

Each Insurance Settlement Agreement shall be effective and binding upon all Persons who have notice and any such Person's successors and assigns, upon entry of an Insurance Settlement Approval Order that is a Final Order with respect to such Insurance Settlement Agreement and satisfaction of all of such Insurance Settlement Agreement's conditions precedent. Payments by the applicable Settling Insurer to the Trust, as applicable, and the releases by the Debtor and other Protected Parties of the applicable Settling Insurer shall occur and become effective according to the terms of each Insurance Settlement Agreement and Insurance Settlement Approval Order. Each Insurance Settlement Agreement and Insurance Settlement Approval Order shall survive the confirmation, effectiveness, and consummation of this Plan. The rights of the parties under any Insurance Settlement Agreement and Insurance Settlement Approval Order shall be determined exclusively under the applicable Insurance Settlement Agreement, Insurance Settlement Approval Order, this Plan, and the Confirmation Order.

### 5.2    Sale Free and Clear of Interests of Settling Insurer Policies.

Each Settling Insurer Policy shall be sold to the applicable Settling Insurer, pursuant to sections 105, 363, and 1123 of the Bankruptcy Code, free and clear of all liens, Claims, and Interests of all Persons, to the extent provided in each applicable Insurance Settlement Agreement.

### 5.3    Resolution of Claims Involving Settling Insurers.

The Confirmation Order shall provide that the Archdiocese or the Trust, as the case may be, shall dismiss with prejudice any claims against each Settling Insurer related to Abuse Claims, and each Settling Insurer shall dismiss with prejudice any claims against the Archdiocese (or, if applicable, the Trust) related to Abuse Claims, in accordance with the term(s) and timeline(s) set forth in such Settling Insurer's Insurance Settlement Agreement. Each side will bear its own fees and costs.

The Confirmation Order shall provide that upon payment of a Settling Insurer's Insurance Settlement Amount, all: (a) releases set forth in the applicable Settling Insurer's Insurance Settlement Agreement shall be in full force and effect; and (b) all injunctive relief set forth in the applicable Insurance Settlement Approval Order shall become effective as set forth in such Insurance Settlement Agreement, Insurance Settlement Approval Order, and this Plan

### 5.4    The Settling Insurer's Payments.

Each Settling Insurer shall pay to the Trust, as applicable, such Settling Insurer's Insurance Settlement Amount on the terms set forth in the applicable Insurance Settlement Agreement, to the extent applicable, but in no event shall such payments be later than 60 days after the Effective Date.

### 5.5    Further Assurances; Non-Material Modifications.

From and after the Effective Date, the Debtor, Reorganized Debtor, other Protected Parties, and each Settling Insurer shall be authorized to enter into, execute, adopt, deliver, or implement all notes, contracts, security agreements, instruments, releases, and other agreements or documents necessary to effectuate or memorialize the Insurance Settlement Agreements without further order of the Bankruptcy Court. The Debtor, Reorganized Debtor, other Protected parties, and each Settling Insurer may make technical or immaterial alterations, amendments, modifications, waiver, or supplements to the terms of any Insurance Settlement Agreement, subject to (a) the terms and conditions of the applicable Insurance Settlement Agreement and (b) the consent of the Trustee, which consent shall not be unreasonably withheld.

### 5.6    Waiver/Consent.

In consideration of the releases, Channeling Injunction, and other covenants set forth in this Plan, subject to the occurrence of the Effective Date and satisfaction of the conditions precedent in the applicable Insurance Settlement Agreement, each of the Protected Parties: (a) irrevocably and unconditionally, without limitation, releases, acquits, forever discharges, and waives any Claims it has or might have now or in the future against the other Protected Parties and any Settling Insurers with respect to any contribution, subrogation, indemnification, or other similar Claim arising from or relating to Channeled Claims covered or alleged to be covered under any Settling Insurer Policy; (b) consents to the sale of the Debtor's and Co-Insured Parties' Claims, if any, related to the Settling Insurer Policies in accordance with each Insurance Settlement Agreement; (c) consents to the contribution of the proceeds of the sale of any Settling Insurer Policies to the Trust, as applicable, pursuant to and in accordance with this Plan, each Insurance Settlement Agreement. For the avoidance of doubt, nothing in this Section 5.6 shall be construed to bar or otherwise prohibit: (x) a Claim based upon Abuse against a Person who is not a Protected Party; or (y) a Claim by such Person for insurance coverage under an Insurance Policy that is not a Settling Insurer Policy.

### 5.7    Rights Under Insurance Settlement Agreements.

All rights under any Insurance Settlement Agreement shall be determined exclusively under the applicable Insurance Settlement Agreement, this Plan, and the Confirmation Order.

### 5.8    Timing.

The injunctions, releases, and discharges to which any Settling Insurer is entitled pursuant to an Insurance Settlement Agreement, this Plan, the Confirmation Code, and the Bankruptcy Code shall become effective pursuant to and in accordance with the applicable Insurance Settlement Agreement.

CORE/9990000.2173/232191179.1

5.9     **Becoming a Settling Insurer.**

Prior to the Effective Date, a Person may become a Settling Insurer if it (a) is an Insurer, (i) who if listed on Exhibit [reserved] it agrees to pay the respective settlement amounts set forth on Exhibit [reserved], or (ii) who if not listed on Exhibit [reserved], reaches agreement with the Archdiocese and the Committee on its respective settlement amount; and (b) obtains approval from the Archdiocese, the Committee, and the Bankruptcy Court on the form of a written settlement agreement. The Archdiocese consent to any such form of a written settlement agreement shall not be unreasonably withheld.

**SECTION 6.  MATTERS RELATING TO NON-SETTLING INSURERS**

6.1     **Preservation of Rights and Obligations.**

If an Abuse Claim is liquidated through the Allocation Protocol or in any state or federal court as may be permitted by the Plan, the Allocation Protocol, or the Trust Agreement, then the Protected Parties, the Trust, and each Non-Settling Insurer shall retain the right to assert any and all rights and defenses of the Protected Parties with respect to such Abuse Claim and, except as set forth in this Section, all coverage defenses. The rights, duties, and obligations of each Non-Settling Insurer under the Non-Settling Insurer Policies with respect to Abuse Claims are not affected in any way by the Archdiocese Discharge.

The rights and obligations (if any) of the Protected Parties and every Non-Settling Insurer under the terms of the Non-Settling Insurer Policies and at law shall not be affected by the Allocation Protocol and shall be treated as if the determination by the Abuse Claims Reviewer had never occurred. Each Non-Settling Insurer shall be entitled to all rights and defenses as are provided under the terms of its Non-Settling Insurer Policies as if the determination by the Abuse Claims Reviewer had never occurred.

Nothing in the Plan, the Confirmation Order, or any Plan Document shall impose any obligation on any Non-Settling Insurer to provide a defense for, settle, or pay any judgment with respect to, any Abuse Claim, or grant to any Person any right to sue any Non-Settling Insurer directly, relating to an Abuse Claim. All such obligations with respect to Non-Settling Insurers shall be determined by and in accordance with the terms of the Non-Settling Insurer Policies and with applicable non-bankruptcy law.

6.2     **Estimations/Assessments of Abuse Claims Are Not Binding.**

Estimations of Abuse Claims for purposes of determination, qualification, assignment of points pursuant to the Allocation Protocol, and payment of Trust Distributions:

a.     shall not (i) constitute an admission of liability by any Person with respect to such Abuse Claims; (ii) have any *res judicata* or collateral estoppel effect on any Person; (iii) constitute a settlement, release, accord, satisfaction, or novation of such Abuse Claims; (iv) be used by any third-party as a defense to any alleged joint liability; or (v) otherwise prejudice any rights of the Trust, the Archdiocese, the Participating Parties, the Settling

Insurers, the Non-Settling Insurers, or Consenting Abuse Claimants in any other contexts or forums;

b.      shall be without prejudice to any and all rights of the Trust, the Non-Settling Insurers, and Consenting Abuse Claimants in any other contexts and forums; and

c.      shall not be deemed to be a determination of liability of the Archdiocese or any Participating Party or a determination of whether, or the extent to which, such Abuse Claim is covered under any Non-Settling Insurer Policy.

### 6.3      Post-Effective Date Preconditions to Coverage.

If the Trust believes the Archdiocese or a Participating Party has failed to satisfy any Post-Effective Date Preconditions to Coverage, the Trust shall give the Archdiocese or the Participating Party (as applicable) written notice identifying with specificity the Post-Effective Date Preconditions to Coverage at issue and the action the Trust believes must be taken in order to satisfy the same. Subject to further order of the Court, the Debtor, Reorganized Debtor, or other Protected Party, as applicable, shall have not less than sixty (60) days from such notice to: (a) take the actions requested by the applicable Trust; or (b) seek a determination from the Bankruptcy Court as to whether the requested action is required to satisfy any Post-Effective Date Insurance Obligations; provided, however, such determination shall not be binding upon any Non-Settling Insurer. With the exception of willful misconduct by the Debtor, Reorganized Debtor, or other Protected Party, the Trusts' sole remedy for any failure to satisfy any Post-Effective Date Insurance Obligations shall be specific performance as ordered by the Bankruptcy Court.

Nothing in this plan shall impair, and each Non-Settling Insurer expressly retains, all contractual defenses to coverage, if any, available under any Non-Settling Insurer Policy arising from or relating to any actual or alleged failure by the Debtor, Reorganized Debtor, or other Protected Party to satisfy their respective Post-Effective Date Insurance Obligations, if any.

### 6.4      Trust Powers With Respect to Abuse Claims and Non-Settling Insurers.

Solely as set forth in this Plan, the Allocation Protocol, or the Trust Agreement, the Trust may enter into a settlement of any Insurance Claim or any Abuse Claim, provided that nothing in this Section preempts or prevents a Non-Settling Insurer from raising any defense to such settlement or claim for coverage. For the avoidance of doubt, the Trustee may use the Trust Assets to prosecute any Insurance Claim. If the Trust successfully resolves an Insurance Claim or otherwise receives a recovery of insurance proceeds relating to any Abuse Claim from a Non-Settling Insurer, such proceeds shall become Trust Assets available for Distribution pursuant to the Allocation Protocol.

**SECTION 7.          MEANS FOR IMPLEMENTATION OF PLAN**

**7.1    Plan Implementation.**

All Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims, Secured Claims, and General Unsecured Claims will be paid by the Archdiocese. All Distributions to be made under the Plan on account of Abuse Claims will be paid solely from the Trust to be established for the purpose of receiving, liquidating, and distributing Trust Assets in accordance with this Plan, the Allocation Protocol, and the Trust Agreement. The Allocation Protocol is attached to the Plan as **Exhibit [reserved]** and is incorporated into the Trust Agreement. The proposed Trust Agreement is attached as **Exhibit [reserved]**.

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, in consideration for the classification, Distributions, releases, and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of Claims and Interests, including any controversies relating to the contractual, legal, and subordination rights that holders of Claim or Interests might have with respect to any Claim or Interests under this Plan. Distributions made to holders of Claim or Interests in any Class are intended to be final

**7.2    Corporate Action.**

All matters provided under this Plan involving the corporate structure of the Debtor or corporate action to be taken by or required by the Debtor or Reorganized Debtor shall be deemed to have occurred and be effective as provided by this Plan and shall be authorized and approved in all respects without any requirement for further approval by the Bankruptcy Court or any other governmental entity. For the avoidance of doubt, to the extent any corporate action or other transaction contemplated under this Plan would otherwise require approval under Maryland law, the entry of the Confirmation Order shall constitute such approval.

**7.3    Payments Effective Upon Tender.**

Whenever the Plan requires payment to be made to a Creditor, such payment will be deemed made and effective upon tender of such payment by the Debtor, Reorganized Debtor, Survivor Compensation Trustee, or Insurance Trustee, as appliable, to the applicable Creditor to whom payment is due. If a Creditor refuses a tender, the amount tendered and refused will be held by the Debtor, Reorganized Debtor, or Trustee, as applicable, for the benefit of such Creditor pending final adjudication of the dispute; *provided, however*, upon the adjudication of such dispute, the Creditor shall be obligated to apply the funds in accordance with this Plan as of the date of tender; *provided, further, however*, the Creditor shall not have the right to claim interest or other charges or to exercise any other rights while the dispute is pending.

**7.4    Agreements, Instruments, and Documents.**

All agreements, instruments, and other documents required by or under this Plan or as may be necessary, useful, or otherwise desirable in order to effectuate this Plan shall be executed before, on, or as soon as reasonably practicable after the Effective Date.

**7.5    Continuation of Insurance Policies.**

Any Insurance Policy that is neither (a) bought back under an Insurance Settlement Agreement nor (b) otherwise disposed of by the terms of the Plan shall, as applicable, either be deemed to be assumed by the Archdiocese pursuant to sections 365, 1123(a)(5)(A), and 1123(b)(2) of the Bankruptcy Code to the extent such Insurance Policy is or was an executory contract of the Archdiocese, or continued in accordance with its terms pursuant to section 1123(a)(5)(A) of the Bankruptcy Code, to the extent such Insurance Policy is not an executory contract of the Archdiocese, such that each of the parties' contractual, legal, and equitable rights under each such Insurance Policy shall remain unaltered. A list of all known Insurance Policies is attached as Exhibit [reserved]. To the extent that any or all such Insurance Policies are considered to be executory contracts, then the Plan shall constitute a motion to assume such Insurance Policies in connection with the Plan. Subject to the occurrence of the Effective Date, the Confirmation Order shall approve such assumption pursuant to sections 365(a), 1123(a)(5)(A), and 1123(b)(2) of the Bankruptcy Code and include a finding by the Bankruptcy Court that each such assumption is in the best interest of the Archdiocese, the Estate, and all parties in interest in this Chapter 11 Case. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Archdiocese existing as of the Effective Date with respect to any Insurance Policy. Subject to the terms of the Insurance Settlement Agreements, the Archdiocese reserves the right to seek rejection of any Insurance Policy or other available relief prior to the Effective Date.

**7.6    Bar Date for Professional Fee Claims.**

Each Professional retained or requesting compensation in the Chapter 11 Case, pursuant to sections 330, 331, or 503(b) of the Bankruptcy Code, must File with the Bankruptcy Court a final application requesting the allowance of a Professional Fee Claim no later than 60 days after the Effective Date. All applications for the allowance of Professional Fee Claims that are not timely Filed shall be forever barred. Objections to such applications may be Filed in accordance with the Bankruptcy Rules. The Bankruptcy Court shall determine all such Professional Fee Claims.

**7.7    Bar Date for Other Administrative Claims.**

Except as provided for herein or in an order of the Bankruptcy Court, and subject to section 503(b)(1)(D) of the Bankruptcy Code, holders of Administrative Claims must File and serve on the Archdiocese requests for the payment of such Administrative Claims not previously Allowed by a Final Order in accordance with the procedures specified in the Confirmation Order, on or before the Administrative Claims Bar Date, or such Administrative Claims shall be automatically considered Disallowed Claims, forever barred from assertion, and unenforceable against the Archdiocese, the Estate, or their property without the need for any objection by the Archdiocese further notice to, or action, order, or approval of the Bankruptcy Court, and any such Administrative Claims shall be deemed fully satisfied, released, and discharged.

**7.8**    **Effectuating Documents; Further Transactions; Transfer Tax Exemptions.**

The Debtor and Reorganized Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan. Pursuant to section 1146(a) of the Bankruptcy Code, the following shall not be subject to any stamp tax, real estate transfer tax, mortgage recording tax, sales or use tax, or other similar tax: (a) the creation of any mortgage, deed of trust, lien, or other security interest; (b) the making or assignment of any lease or sublease; or (c) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, or assignments executed in connection with any of the foregoing or pursuant to this Plan.

**SECTION 8.**        **THE TRUST**

**8.1**    **Establishment of Trust.**

On the Confirmation Date, or as soon as practicable thereafter, the Trust shall be established in accordance with the Trust Documents for the exclusive benefit of the holders of Abuse Claims. The Trust will assume all liability for and rights concerning all Channeled Claims, including the rights to settle the Channeled Claims. The Trust will make Distributions from the Abuse Claims Settlement Funds to Abuse Claimants pursuant to the terms of the Allocation Protocol, the Trust Agreement, the Plan, and the Confirmation Order.

**8.2**    **Funding of the Trust.**

8.2.1    ***Archdiocese Cash Contribution.*** On or before the Effective Date, the Archdiocese shall cause the Archdiocese Cash Contribution to be paid to the Trust. The Archdiocese Abuse Claims Settlement Sub-Fund shall be funded from the Archdiocese Cash Contribution in the amount necessary to effectuate distributions to any Non-Participating Abuse Claimant(s) pursuant to Section 4.4 of the Plan.

8.2.2    ***Participating Parties' Cash Contribution.*** On or before the Effective Date, each Parish, School, Other Catholic Organization, or other Person who is eligible to become, and who elects to be, a Participating Party, shall contribute the amount set forth on **Exhibit 1** and Participating Party is responsible to cause their respective payment of the Participating Parties' Cash Contribution to be paid to the Trust. If no Parish, School, Other Catholic Organization, or other Person is eligible to be a Participating Party on the Effective Date, this section 8.2.2 shall be deemed stricken from the Plan.

8.2.3    ***Settling Insurers' Cash Contribution.*** Each Settling Insurer will pay to the Trust the Insurance Settlement Amount set forth in such Settling Insurer's Insurance Settlement Agreement pursuant to, and in accordance with, the terms of such Insurance Settlement Agreement.

8.2.4    ***Insurance Claims Assignment.*** Insurance Claims against any Non-Settling Insurer shall be transferred to the Trust as follows:

a.    On the Effective Date, and without further action by any party, (i) the Archdiocese and the Consenting Abuse Claimants will be deemed to have assigned to the Trust their respective rights, if any, to all Insurance Claims and recoveries on account of such Insurance Claims against the Non-Settling Insurers; and (ii) each of the Participating Parties will assign to the Trust the Participating Parties' rights, if any, to all Insurance Claims against the Non-Settling Insurers and recoveries on account of such Insurance Claims. The foregoing transfer shall be effective to the maximum extent permissible under applicable law and shall not be construed: (i) as an assignment of any Insurance Policy; or (ii) to entitle any Person to insurance coverage other than those Persons entitled to coverage under the terms of the Non-Settling Insurer Policies. For the avoidance of doubt, the Trust shall be solely responsible for satisfying, to the extent required under applicable law, any self-insured retention obligations on account of any Consenting Abuse Claim or arising out of any Non-Settling Insurer Policy. Nothing herein shall obligate any Non-Settling Insurers to advance any self-insured retention, unless otherwise required by applicable law. Likewise, nothing herein shall obligate the Trust or the Archdiocese to pay any self-insured retention that is not otherwise required by applicable law.

b.    In the event that the Bankruptcy Court determines that the Insurance Claims Assignment is inconsistent with the Bankruptcy Code with respect to the Archdiocese, the Consenting Abuse Claimants and/or one or more Participating Parties, the Archdiocese, the Consenting Abuse Claimants, and each such Participating Party will retain their respective Insurance Claims against the Non-Settling Insurers. In that case, the Archdiocese or a Participating Party will, to the extent reasonably requested by the Trust, assert and pursue any such retained Insurance Claims against any Non-Settling Insurer. The Archdiocese or Participating Party will retain counsel acceptable to the Trustee to prosecute any retained Insurance Claims against any Non-Settling Insurer (subject to any defenses the Non-Settling Insurers may have under applicable state law) and the Trust shall pay all attorney's fees, expert fees, and other costs and expenses incurred by the Archdiocese or the Participating Party in prosecuting the Insurance Claims against any Non-Settling Insurer. For avoidance of doubt, any efforts by the Archdiocese or a Participating Party to prosecute Insurance Claims against any Non-Settling Insurer shall be an accommodation to the Trust and any costs and expenses incurred by the Archdiocese or a Participating Party in connection therewith shall be paid by the Trust in full. The Trust shall have a common interest with the Archdiocese in prosecuting Insurance Claims against any Non-Settling Insurer, and may appear and be heard in connection with the prosecution of such claims, at its own expense, unconditionally, subject only to any limitations of law and equity. The Archdiocese

and the Participating Parties shall not settle any retained Insurance Claims against any Non-Settling Insurer without the prior written consent of the Trustee, which consent shall not be unreasonably delayed or denied. As provided herein, the Trust shall pursue the Insurance Claims, if any, against any Non-Settling Insurer on behalf of the Consenting Abuse Claimants. All recoveries on account of retained Insurance Claims against any Non-Settling Insurer will be paid to the Trust, net of any unreimbursed or unpaid attorney's fees, expert fees and other costs and expenses associated with prosecuting such retained Insurance Claims.

c.      For the avoidance of doubt, except as specifically set forth in this Section 8.2.4 and in Section 6.3 with respect to satisfying Post-Effective Date Preconditions to Coverage, the Archdiocese, and the Participating Parties make no representations or warranties, and shall have no duty or obligations whatsoever, to the Trust with respect to the Insurance Claims. The Trust shall assume all risks with respect to the litigation, liquidation and collection of the Insurance Claims.

d.      For the further avoidance of doubt, and notwithstanding anything to the contrary herein, Related Insurance Claims shall not be transferred to the Trust or retained by the Archdiocese or Participating Parties but instead shall be sold to the Settling Insurers and/or settled and released, in each case as set forth in the Insurance Settlement Agreements.

8.2.5      ***Outbound Contribution Claims.*** Outbound Contribution Claims shall be automatically, and without further act or deed, assigned to the Trust on the Effective Date.

8.2.6      ***Excluded Insurer Claims***. Excluded Insurer Claims are not included in the Insurance Claims Assignment, or otherwise treated under this Plan, and any Holders of Excluded Insurer Claims shall retain whatever rights against Excluded Insurer Policies that they have under applicable law (subject to any defenses the Excluded Insurers may have under applicable law).

**8.3      Vesting of Trust Assets.**

On the Effective Date, all Trust Assets shall vest in the Trust, and the Protected Parties shall be deemed for all purposes to have transferred all of their respective right, title, and interest in the Trust Assets to the Trust. On the Effective Date, or as soon as practicable thereafter, the Protected Parties, as applicable, shall take all actions reasonably necessary to transfer any Trust Assets to the Trust. Upon the transfer of the Trust Assets in accordance with this paragraph, and subject to the Insurance Settlement Agreements, the Protected Parties shall have no further interest in or with respect to any Trust Assets.

**8.4      Child Protection Protocols.**

[Reserved]

**8.5      Appointment of the Trustee.**

The Trustee is identified in the Trust Agreement. The Trustee shall commence serving as the Trustee on the Effective Date; *provided*, *however*, that the Trustee shall be permitted to act in accordance with the terms of the Trust Agreement from such earlier date, as authorized by the Bankruptcy Court, and shall be entitled to seek compensation in accordance with the terms of the Trust Agreement and the Plan.

**8.6      Rights and Responsibilities of Trustee.**

The Trustee shall be deemed to be a fiduciary of the Trust under the terms of the Trust Agreement and shall have all rights, powers, authority, responsibilities, and benefits under Maryland law specified in this Plan and as reflected in the Trust Agreement, including commencing, prosecuting or settling causes of action, enforcing contracts, and asserting Claims, defenses, offsets and privileges. If there is any inconsistency or ambiguity between the Confirmation Order and the Trust Agreement with respect to the Trustee's authority to act, the provisions of the Trust Agreement shall control but shall not take precedence over any contrary provision in any Insurance Settlement Agreement(s) or the Sale Order(s) (in which case, the Sale Order(s) and the applicable Insurance Settlement Agreement(s) shall control and govern, in that order). Among other things, the Trustee: (1) shall liquidate and convert to Cash the Trust Assets, make timely Distributions and not unduly prolong the duration of the Trust; (2) may request an expedited determination of taxes of the Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Trust for all taxable periods through the dissolution of the Trust; and (3) may retain professionals, including legal counsel, accountants, financial advisors, auditors, and other Agents on behalf of the Trust, and at the Trust's sole expense, as reasonably necessary and to carry out the obligations of the Trustee hereunder and under the Trust Agreement.

The Trust shall not make Trust Distributions to the Abuse Claimants until after a final decree is entered in the Archdiocese's Chapter 11 Case. The Trust shall pursue Insurance Claims against any Non-Settling Insurers. The Trust shall not pursue any Related Insurance Claims against any Settling Insurer Releasee or any Settling Insurer's Related Persons, nor shall the Trust take any other action contrary to, or in violation of, the Insurance Settlement Agreements.

The Confirmation Order shall state that, absent permission of the Bankruptcy Court, no cause of action shall be commenced in any forum, other than the Bankruptcy Court, against the Trustee in its official capacity, with respect to its status, duties, powers, acts, or omissions as Trustee; *provided*, this limitation shall not apply with respect to any Claim or cause of action brought by a Settling Insurer for any actual or alleged (a) breach by the Trustee of such Settling Insurer's Settlement Agreement or (b) violation by the Trustee of any provision of the Sale Order(s).

**8.7      Unknown Claimant Representative.**

The Unknown Claimant Representative's services shall be limited to evaluating the adequacy and fairness of the Plan's treatment of Unknown Abuse Claims and making the election described in Section 4.5 of the Plan. The Unknown Claimant Representative will be compensated

for his services to the extent set forth in the order approving the Unknown Claimant Representative's retention.

### 8.8  <u>Trust Pursuit of Insurance Claims.</u>

8.8.1  ***Trust's Rights to Pursue Insurance Claims Against Non-Settling Insurers.*** If the assignment contemplated in Section 8.2.4 is approved, effective as of the Effective Date, the Insurance Claims against Non-Settling Insurers shall be assigned and transferred to the Trust.

a. The Trust shall be entitled to (i) all recoveries on account of Insurance Claims against Non-Settling Insurers that are assigned to the Trust as set forth in the Plan and the Confirmation Order, including the proceeds of any such Insurance Claims relating to or arising out of any Litigation Claim, and (ii) to assert against Non-Settling Insurers on behalf of any Consenting Abuse Claimant or combination of Consenting Abuse Claimants, to the extent permitted by the Non-Settling Insurer Policies and applicable non-bankruptcy law, any and all Insurance Claims that currently exist or may arise in the future.

b. The Trust shall also have the right to pursue Insurance Claims against Non-Settling Insurers related to the Archdiocese's and/or the Participating Parties' liability for Channeled Claims or the Non-Settling Insurers' obligations in respect of such Channeled Claims. The foregoing transfer shall not be construed to entitle any Person to insurance coverage other than those Persons entitled to such coverage from Non-Settling Insurers. For the avoidance of doubt, the Trust cannot present Non-Settling Insurers with a demand for Coverage or indemnification based upon Distributions made by the Trust to Abuse Claimants.

c. The Trust may act in its own name, or in the name of any Consenting Abuse Claimant, the Archdiocese and/or a Participating Party to enforce any right, title, or interest of any such party in the Insurance Claims against Non-Settling Insurers assigned to the Trust.

d. No limitations on recovery from Non-Settling Insurers shall be imposed by virtue of the fact the Archdiocese is in bankruptcy or by any Distribution from the Trust to an Abuse Claimant.

e. The Insurance Claims Assignment shall not affect any Non-Settling Insurer's duty to defend, but to the extent that the failure to defend or a separate agreement between the Archdiocese and/or a Participating Party and any Non-Settling Insurer gives rise to a monetary obligation to reimburse defense costs in lieu of a duty to defend, the Trust shall be entitled to the benefit of such monetary obligation or policy proceeds.

f. Any recovery by the Trust on Insurance Claims against Non-Settling Insurers shall become a Trust Asset and shall be distributed as provided in the Allocation Protocol.

g. The Trust's pursuit of the Archdiocese and Participating Parties shall be limited to enforcing specific performance of the Insurance Claims Assignment and any other rights or interests expressly granted to the Trust under the Plan. Neither the Trust nor the Trustee may pursue any Settling Insurer for any Claim released, waived, sold, or relinquished under such Settling Insurer's Insurance Settlement Agreement (including, for the avoidance of

doubt, Related Insurance Claims); *provided*, however, the Trust may enforce its rights (if any) and/or each Settling Insurer's obligations under the applicable Insurance Settlement Agreement(s)

h.      The Trust shall have full access to coverage under the Non-Settling Insurer Policies as permitted by applicable non-bankruptcy law, and the Non-Settling Insurers shall retain any and all rights and defenses to coverage under the Non-Settling Insurer Policies and applicable non-bankruptcy law.

i.      The Insurance Claims Assignment does not affect any right of the Archdiocese any Participating Party or any Non-Settling Insurer to contest any liability or the amount of damages in respect of any Abuse Claims.

8.8.2    *No Impact on Non-Settling Insurers.* Nothing in the Plan, the Allocation Protocol, the Trust Documents, the Plan Documents, any Confirmation Order (including any provision in the Confirmation Order), or any judgment, order, finding of fact, conclusion of law, determination or statement (written or verbal, on or off the record) made by the Bankruptcy Court, the District Court, or entered by any other court exercising jurisdiction over the Bankruptcy Case, including in any judgment, order, writ or opinion entered on appeal from any of the foregoing, shall in any Action brought by or against a Non-Settling Insurer, including the Insurance Coverage Adversary Proceeding:

a.      constitute an adjudication, judgment, trial, determination on the merits, finding, or conclusion of law establishing:

(i)      the liquidated liability (in the aggregate or otherwise) of (a) the Archdiocese, the Participating Parties, or the Trust, with respect to any Abuse Claims; or (b) any Non-Settling Insurer with respect to any Insurance Claim;

(ii)      the liability or obligation of the Archdiocese, Participating Parties, or Trust with respect to any Abuse Claim;

(iii)      that the aggregate value of the Abuse Claims is equal to the amount to be paid by the Archdiocese and/or the Participating Parties into the Trust;

(iv)      that it is reasonable, in good faith, or consistent with the terms and conditions of any Non-Settling Insurer Policy for any of the Archdiocese, the Participating Parties, or the Trust, to settle, allow, assign any value to, liquidate, and/or pay (or present to any Non-Settling Insurer for payment) any Abuse Claim on any terms or conditions contemplated by the Plan, the Allocation Protocol (including any procedures, matrices or criteria used or considered in valuing, estimating or allowing Abuse Claims thereunder), any other Plan Documents, or any other document or agreement;

(v)      that the Plan, any other Plan Document, or any other document or agreement (including any procedures, matrices or criteria used

or considered in valuing, estimating or allowing Abuse Claims thereunder) are reasonable or consistent with any procedures that were used to evaluate, settle, or pay Abuse Claims against the Archdiocese and the Participating Parties before the Petition Date or under the terms and conditions of any Non-Settling Insurer Policy or applicable nonbankruptcy law;

(vi)    that the conduct of the Archdiocese, Participating Parties, the Committee, or the Abuse Claimants, in connection with the negotiation, development, settlement and/or implementation of the Plan (including the aggregate value or amount of the AOB Entities' Cash Contribution), the other Plan Documents, or any related documents or agreements was, is, or will be consistent with the terms and conditions of any Non-Settling Insurer Policy or applicable nonbankruptcy law;

(vii)    that any Non-Settling Insurer was invited to participate in or participated in, consulted on, negotiated, and/or consented to the Allocation Protocol, the Trust Documents and other Plan Documents; and

b.    have any res judicata, collateral estoppel or other preclusive effect with respect to any matter set forth in Section 8.8.2(a) hereof, or otherwise prejudice, diminish, impair, or affect (under principles of waiver, estoppel, or otherwise) any defense, Claim or right any Non-Settling Insurer may have under any Non-Settling Insurer Policy or applicable non-bankruptcy law with respect thereto. Without limiting the foregoing, but subject to Section 8.8.4 below, it is expressly agreed by all Neutrality Parties that the Neutrality Parties are not litigating any issue set forth in Section 8.8.2(a) hereof or any other Non-Settling Insurer coverage defenses, rights, obligations, or other coverage issue of any kind in this Chapter 11 Case.

c.    constitute a decision on any matter at issue or which may be raised as an issue in any Action by or against a Non-Settling Insurer, including the Insurance Coverage Adversary Proceeding. Thus, any judgment, order, finding of fact, conclusion of law, determination or other statement of the Bankruptcy Court or issued or affirmed by the District Court in this Bankruptcy Case, or entered by any other court exercising jurisdiction over the bankruptcy case, including any Confirmation Order or the Allocation Protocol and/or other Plan Documents and any finding, conclusion or determination entered in connection therewith, is not intended—and shall not be construed—to constitute a finding, conclusion or determination regarding any matter set forth in Section 8.8.2(a) hereof or any other issue for any insurance coverage purpose whatsoever, and the Neutrality Parties shall not contend otherwise in any Action by or against a Non-Settling Insurer;

d.    subject to Section 8.8.4 below, impair any Non-Settling Insurer's legal, equitable, or contractual rights under any Non-Settling Insurer Policy or with respect to Insurance Claims, or any policyholder's legal, equitable or contractual rights under any Non-Settling Insurer Policy or with respect to Insurance Claims. The Neutrality Parties shall retain, and be permitted to assert, in any Action against

60

any Non-Settling Insurer, all Claims and/or defenses, including any coverage defenses related to the Abuse Claims, the Insurance Claims and/or the Non-Settling Insurer Policies, notwithstanding any provision of the Plan, Allocation Protocol, the Trust Documents, the other Plan Documents, the Confirmation Order, any findings of fact and/or conclusions of law with respect to the confirmation of the Plan, or any Final Order or opinion entered on appeal from the Confirmation Order; or

e.      subject to Section 8.8.4 below, impair any Non-Settling Insurer's Insurer Contribution Claims, which may be asserted as a defense or counterclaim against the Archdiocese, the Participating Parties or the Trust (as applicable) in any Action by or against any Non-Settling Insurer, including the Insurance Coverage Adversary Proceeding. To the extent the Insurer Contribution Claims of a Non-Settling Insurer are determined to be valid, the liability (if any) of such Non-Settling Insurer to the Trust shall be reduced by the amount of such Insurer Contribution Claims. For avoidance of doubt, and notwithstanding anything to the contrary in this Section 8.8.2, all Insurer Contribution Claims shall be channeled to the Trust in accordance with Section 12.5.1 of the Plan and no Insurer Contribution Claim shall be the basis for any affirmative recovery against the Archdiocese or any Protected Party.

f.      On and after the Confirmation Date, no Neutrality Party shall assert anything to the contrary of this Section 8.8.2 in any Action by or against a Non-Settling Insurer. Each Neutrality Party shall be entitled to enforce this Section 8.8.2.

8.8.3    ***Non-Settling Insurers' Remedies.*** Notwithstanding anything to the contrary in Section 8.8.2, the Non-Settling Insurers' remedies are limited to those available under applicable law and nothing in the Chapter 11 Case shall enhance any right(s) a Non-Settling Insurer may have under applicable law.

8.8.4    ***Preservation of Plan Provisions.*** For the avoidance of doubt, the provisions of Section 8.8.2 above are intended solely to ensure that the Plan leaves intact and does not alter or affect any rights or interests of the Non-Settling Insurers with respect to the Non-Settling Insurer Policies. Nothing set forth in Section 8.8.2 is intended to, nor shall it, impair the effectiveness of any provision of the Plan, including, without limitation, the Archdiocese Discharge, the Settling Insurer Injunction, Channeling Injunction, or any other release or injunctive provisions set forth in the Plan, as such Plan provisions relate to any rights, Claims, actions, defenses, interests, transactions or other dealings between or among (i) one or more Neutrality Parties who are not Non-Settling Insurers or (ii) any Neutrality Party who is not a Non-Settling Insurer and any Person who is not a Neutrality Party.

**8.9**    **Investment Powers; Permitted Cash Expenditures.**

All funds held by the Trust shall be held in Cash or invested in short-term highly-liquid investments that are readily convertible to known amounts of Cash as more particularly described in the Trust Agreement. The Trustee may expend such Cash in a manner consistent with the terms of the Trust Agreement.

### 8.10    Tax Matters.

The Trust is intended to qualify as a "Designated" or "Qualified Settlement Fund" pursuant to Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder. The Archdiocese is the "transferor" within the meaning of Treasury Regulation Section 1.468B-1(d)(1). The Trustee shall be classified as the "administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3). The Trust Documents, including the Trust Agreement, are incorporated herein by reference. The Trust shall not be deemed to be the same legal entity as the Archdiocese, but only the assignee of certain assets of the Archdiocese and a representative of the Estate for delineated purposes within the meaning of section 1123(b)(3) of the Bankruptcy Code. The Trust is expected to be tax exempt. The Trustee shall File such income tax and other returns and documents as are required to comply with the applicable provisions of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1 *et seq.*, as may be amended, and the regulations promulgated thereunder, 31 C.F.R. §§ 900 *et seq.*, and Maryland law and the regulations promulgated thereunder, and shall pay from the Trust all taxes, assessments, and levies upon the Trust, if any. The Trustee, may in its discretion, establish a disputed claims reserve for the Trust, which shall be administered in accordance with applicable law.

### 8.11    No Recourse Against Trustee.

No recourse shall ever be had, directly or indirectly, against the Trustee personally, or against any Agent retained in accordance with the terms of the Trust Agreement or the Plan by the Trustee, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Trustee in implementation of the Trust Agreement or the Plan, or by reason of the creation of any indebtedness by the Trustee under the Plan for any purpose authorized by the Trust Agreement or the Plan, it being expressly understood and agreed that all such liabilities, covenants, and Trust Agreements of the Trust whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Trust Assets or such part thereof as shall under the term of any such Trust Agreement be liable therefore or shall be evidence only of a right of payment out of the Trust Assets. Notwithstanding the foregoing, the Trustee may be held liable for its recklessness, gross negligence, willful misconduct, knowing and material violation of law, breach of the fiduciary duty of loyalty, or fraud, and if liability on such grounds is established, recourse may be had directly against the Trustee. The Trust shall not be covered by a bond.

None of the Protected Parties shall be liable for any acts or omissions by the Trust, the Trustee, or their respective Agents or Related Persons.

### 8.12    Indemnification by Trust.

The Trust shall defend, indemnify, and hold harmless the Trustee and its Agents to the fullest extent permitted under the laws of Maryland in the performance of their duties hereunder. For the avoidance of doubt, the Archdiocese, the Participating Parties, and their respective Agents shall not be deemed to be Agents of the Trust unless specifically authorized as such in writing by the Trustee.

The Trust shall defend, indemnify, and hold harmless each Settling Insurer, as set forth in such Settling Insurer's Insurance Settlement Agreement, from each and every one of the following "*Indemnified Claims*": any and all Channeled Claims, Barred Claims, and Claims otherwise enjoined by or subject to the Settling Insurer Injunction and/or such Settling Insurer's Insurance Settlement Agreement, including all such Claims made by (i) any Person claiming to be an insured (as a named insured, additional insured, or otherwise) under any of the Settling Insurer Policies; (ii) any Person who has made, will make, or can make (a) a Related Insurance Claim or (b) an Abuse Claim; and (iii) any Person who has actually or allegedly acquired or been assigned the right to make a Claim under any of the Settling Insurer Policies. For the avoidance of doubt, to the extent this Section 8.14.2 (including the subsections immediately below) conflicts or is inconsistent with the provisions of any Insurance Settlement Agreement that relate to Indemnified Claims, the provisions of the applicable Insurance Settlement Agreement(s) will control and govern.

        a.      Each Settling Insurer shall have the right (but not the obligation) to defend any Indemnified Claims brought or made against such Settling Insurer and shall do so in good faith. Each Settling Insurer (i) may, upon receipt of an Indemnified Claim brought or made against such Settling Insurer, undertake the defense of the Indemnified Claim but is not required to do so and (ii) agrees to notify the Trust as soon as practicable of such Indemnified Claim(s) and of the Settling Insurer's choice of counsel. If a Settling Insurer declines to defend an Indemnified Claim brought or made against it, the Trust shall undertake the defense thereof.

        b.      The Trust shall reimburse all reasonable and necessary attorneys' fees, expenses, costs, and amounts incurred by each Settling Insurer defending an Indemnified Claim. Such Settling Insurer may settle or otherwise resolve the Indemnified Claim only with the prior consent of the Trust, which consent shall not be unreasonably withheld. The Trust may settle or otherwise resolve an Indemnified Claim only with the prior consent of the applicable Settling Insurer, which consent shall not be unreasonably withheld. A Settling Insurer's defense, settlement, or other resolution of any Indemnified Claim brought or made against such Settling Insurer shall not diminish the obligations of the Trust to indemnify the Settling Insurer for the Indemnified Claim, as set forth in this Section 8.14.2.

        c.      The indemnification and hold harmless undertaking set forth in this Section 8.14.2 also extends to and for the benefit of the other Settling Insurer Releasees, all of which are third-party beneficiaries of the terms hereof.

**8.13    Trust Liability.**

Upon the occurrence of the Effective Date, the Trust shall automatically and without further act or deed assume all responsibility for preserving, managing, and distributing Trust Assets.

Subject to and upon the occurrence of each applicable Abuse Claim Discharge Date, the Trust shall automatically and without further act or deed assume all liability, if any, of the

CORE/9990000.2173/232191179.1

Participating Parties in respect of all Abuse Claims (other than Non-Participating PP Abuse Claims), which shall become Channeled Claims in accordance with the terms of the Plan. On the Effective Date, the Trust shall automatically and without further act or deed assume all liability, if any, of the Settling Insurers in respect of all Barred Claims and Channeled Claims.

### 8.14   Termination.

The Trust shall terminate after its liquidation, administration, and Distribution of the Trust Assets in accordance with the Plan, the Trust Agreement, and its full performance of all duties and functions set forth in the Trust Agreement.

## SECTION 9.        GENERAL CLAIMS ADMINISTRATION

### 9.1   Objections to Non-Abuse Claims.

Prior to the Effective Date, the Archdiocese shall have the authority to pursue any objection to the allowance of any Non-Abuse Claim. From and after the Effective Date, the Archdiocese will retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving and making any Distributions with respect to Non-Abuse Claims (including those Non-Abuse Claims that are subject to objection by the Archdiocese as of the Effective Date; *provided*, *however*, that nothing in this Section shall affect the right of any party in interest (including the Archdiocese and the Trustee) to object to any Non-Abuse Claim to the extent such objection is otherwise permitted by the Bankruptcy Code, the Bankruptcy Rules, and this Plan. Unless otherwise provided in this Plan or by order of the Bankruptcy Court, objections to Non-Abuse Claims will be Filed and served not later than the Claims Objection Deadline. The Claims Objection Deadline or any Bankruptcy Court-approved extension thereof, may be extended upon request by the Archdiocese by filing a motion without any requirement to provide notice to any Person, based upon a reasonable exercise of the Archdiocese's business judgment. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to this Plan.

### 9.2   Determination of Claims.

From and after the Effective Date, any Non-Abuse Claim as to which a proof of claim or motion or request for payment was timely Filed in this Chapter 11 Case, or deemed timely Filed by order of the Bankruptcy Court, may be determined and (so long as such determination has not been stayed, reversed, or amended, as to which determination (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired, (and as to which no appeal or petition for review or rehearing was Filed or, if Filed, remains pending)), liquidated pursuant to: (i) an order of the Bankruptcy Court; (ii) applicable bankruptcy law; (iii) agreement of the parties without the need for Bankruptcy Court approval; (iv) applicable non-bankruptcy law; or (v) the lack of (a) an objection to such Claim, (b) an application to equitably subordinate such Claim, and (c) an application to otherwise limit recovery with respect to such Claim Filed by the Archdiocese or any other party in interest on or prior to any applicable deadline for filing such objection or application with respect to such Claim. Any such Claim so determined and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be satisfied in accordance with this Plan. Nothing contained in this Section shall constitute or be deemed a waiver

64

of any Claims, rights, or causes of action that the Archdiocese may have against any Person in connection with or arising out of any Claim or Claims, including any rights under 28 U.S.C. § 157; *provided, however*, that any Claims against the Settling Insurers that the Archdiocese had, has, may have had, or may in the future have shall be waived and released in accordance with the terms of, and to the extent set forth in, the Settling Insurers' respective Insurance Settlement Agreements.

### 9.3    No Distributions Pending Allowance.

Except in the case of Abuse Claims paid pursuant to the Allocation Protocol, no Distribution will be made with respect to a Disputed Claim, or any portion thereof, unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim.

### 9.4    Claim Estimation.

To effectuate Distributions pursuant to the Plan and avoid undue delay in the administration of the Chapter 11 Case, with respect to Disputed Claims (except Abuse Claims), the Archdiocese, after notice and a hearing (which notice may be limited to the holder of such Disputed Claim), shall have the right to seek an order of the Bankruptcy Court or the District Court, pursuant to section 502(c) of the Bankruptcy Code, estimating or limiting the amount of: (i) property that must be withheld from or reserved for Distribution purposes on account of such Disputed Claim(s), (ii) such Claim for allowance or disallowance purposes, or (iii) such Claim for any other purpose permitted under the Bankruptcy Code; *provided*, *however*, that the Bankruptcy Court or the District Court, as applicable, shall determine: (y) whether such Claims are subject to estimation pursuant to section 502(c) of the Bankruptcy Code, and (z) the timing and procedures for such estimation proceedings.

### 9.5    Treatment of Contingent Claims.

Except with respect to Abuse Claims, until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed or absolute or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to Distributions under the Plan.

### 9.6    Controversy Concerning Impairment.

If a controversy arises as to whether any Claim or any Class of Claims is Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before confirming the Plan.

### 9.7    Treatment of Executory Contracts and Unexpired Leases.

Subject to the requirements of section 365 of the Bankruptcy Code, all executory contracts and unexpired leases of the Archdiocese except (i) Insurance Policies that have not been assumed and retained by the Archdiocese pursuant to Section 7.5, or (ii) executory contracts and unexpired leases that have been rejected by order of the Bankruptcy Court or are the subject of a motion to reject pending on the Confirmation Date, will be deemed to be assumed by the Archdiocese on the Effective Date. If any party to an executory contract or unexpired lease that is being assumed

objects to such assumption and assignment, the Bankruptcy Court may conduct a hearing on such objection on any date that is either mutually agreeable to the parties or fixed by the Bankruptcy Court. All payments to cure defaults that may be required under section 365(b)(1) of the Bankruptcy Code will be made by the Archdiocese, except that the Trust shall pay any cure costs under any Insurance Policy assumed and retained by the Archdiocese pursuant to Section 7.5. In the event of a dispute regarding the amount of any cure payments, or the ability of the Archdiocese to provide adequate assurance of future performance with respect to any executory contracts to be assumed by the Archdiocese, the Trust or the Archdiocese (as applicable) will make any payments required by section 365(b)(1) of the Bankruptcy Code after the entry of a Final Order resolving such dispute. The contracts and leases which will be assumed by the Archdiocese, and their respective cure costs, are identified in **Exhibit [reserved]**. For the avoidance of doubt, none of the Settling Insurer Policies will be assumed or assigned to the Archdiocese.

## SECTION 10.        PROVISIONS GOVERNING DISTRIBUTIONS

### 10.1    Disbursing Agents.

The Archdiocese shall be the disbursing agent for all aspects of the Plan except for Distributions made from the Trust. With respect to the Trust, the Trustee shall be the disbursing agent and be responsible for all Distributions made under the Trust.

### 10.2    Manner of Payment.

Unless otherwise agreed by the Archdiocese or the Trustee, as applicable, and the recipient of a Distribution under the Plan or the Plan Documents, all Distributions of Cash under the Plan may be made either by check via first class mail, postage prepaid, or by wire transfer from a domestic bank, at the option of the respective disbursing agent.

### 10.3    Distribution Only to Holders of Allowed Claims.

Except as otherwise provided in the Plan for Abuse Claims, Distributions under the Plan and the Plan Documents will be made only to the holders of Allowed Claims. Until a Disputed Non-Abuse Claim becomes an Allowed Claim, the holder of that Disputed Non-Abuse Claim will not receive any Distribution otherwise provided to Non-Abuse Claimants under the Plan or the Plan Documents. If necessary in determining the amount of a *pro rata* Distribution due to the holders of Allowed Claims in any Class, the Archdiocese will make the *pro rata* calculation as if all Disputed Non-Abuse Claims were Allowed Claims in the full amount claimed or in the estimated amount. When a Disputed Non-Abuse Claim in any Class becomes an Allowed Claim, the Archdiocese will make a full or partial Distribution, as applicable, with respect to such Allowed Claim, net of any setoff contemplated by the order, if any, allowing such Claim and any required withholding of applicable federal and state taxes.

### 10.4    Disputed Claim Reserve.

Except with respect to Trust Distributions made to Abuse Claimants pursuant to the Allocation Protocol, to the extent that a disbursing agent makes a Distribution hereunder to a Class prior to the resolution of all Disputed Claims of such Class, the respective disbursing agent shall

reserve an amount for any Disputed Claims in such Class equal to the amount that such holders of Disputed Claims in such Class would be entitled to receive under the Plan if such Disputed Claims were Allowed in the asserted amount of the Claim.

### 10.5   Transmittal of Distributions.

Except as otherwise provided in the Plan, in the Plan Documents, or in an order of the Bankruptcy Court, Distributions to be made under the Plan, Confirmation Order, or Trust Documents to Class 6 Claimants will be made by the Trust, and Distributions to all other Claimants will be made by the Archdiocese. Distributions to Class 6 Claimants will be made: (i) to the client trust account for the Claimant's attorney of record; or (ii) if the Class 6 Claimant does not have an attorney of record, to the latest mailing address set forth in a proof of claim Filed with Epiq or the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Trustee, as applicable, by such Claimant in writing; or (iii) if no such proof of claim has been Filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Archdiocese or Trustee, as applicable, to the mailing address set forth in the Schedules Filed by the Archdiocese in this Chapter 11 Case. Distributions to Claimants holding Non-Abuse Claims will be made by wire transfer or by check via first class United States mail, postage prepaid, (i) to the latest mailing address set forth in a proof of claim Filed with Epiq or the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Archdiocese, as applicable, by such Claimant in writing, or (ii) if no such proof of claim has been Filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Archdiocese, to the mailing address set forth in the Schedules Filed by the Archdiocese in the Chapter 11 Case. If a Claimant's Distribution is not mailed or is returned to the Archdiocese or to the Trustee because of the absence of a proper mailing address, the Archdiocese or the Trustee, as the case may be, shall make a reasonable effort to locate or ascertain the correct mailing address for such Claimant from information generally available to the public and from such party's own records, but shall not be liable to such Claimant for having failed to find a correct mailing address. The Trustee shall have no liability to a Class 6 Claimant on account of Distributions made to the client trust account of a Class 6 Claimant's attorney.

### 10.6   Timing of Distributions.

Unless otherwise agreed by the Archdiocese or the Trustee, as applicable, and the recipient of a Distribution under the Plan or the Plan Documents, whenever any payment to be made is due on a day other than a Business Day, such payment will instead be made on the next Business Day. Any Claimant that is otherwise entitled to an undeliverable Distribution and that does not, within thirty days after a Distribution is returned to the Archdiocese or to the Trustee, as applicable, as undeliverable or is deemed to be an undeliverable Distribution, provide the Archdiocese or the Trustee, as applicable, with a written notice asserting its Claim to that undeliverable Distribution and setting forth a current, deliverable address will be deemed to waive any Claim to such undeliverable Distribution and will be forever barred from receiving such undeliverable Distribution or asserting any Claim against the Archdiocese, the Trust, the Trustee, or its property. Any undeliverable Distributions to be made by the Trust that are not claimed under this Section will become available for the Trust to distribute to other Abuse Claimants. Any other undeliverable Distributions shall be retained by the Archdiocese in accordance with the Plan. Nothing in the Plan

requires the Archdiocese, the Trust, or the Trustee to attempt to locate any Claimant whose Distribution is undeliverable.

### 10.7 Time Bar to Check Payments.

If an instrument delivered as a Distribution to a Claimant by the Archdiocese or the Trust is not negotiated within 90 days after such instrument is sent to the Claimant, then the instrument shall be null and void, the Claimant shall be deemed to have waived such Distribution, and all Claims in respect of such voided check shall be discharged and forever barred. Any request for re-issuance of a check must be made on or before 90 days after issuance of a non-negotiated check. Except as otherwise provided herein, any Distribution under the Plan which is not negotiated after 90 days following issuance shall be forfeited, and such Distribution, together with any interest earned thereon, and shall return to and revest in the Archdiocese or to the Trust, as applicable.

### 10.8 No Professional Fees or Expenses.

No professional fees or expenses incurred by a Claimant will be paid by the Archdiocese or the Trust with respect to any Claim except as specified in the Plan or the Trust Documents.

### 10.9 No Interest on Claims.

Unless otherwise specifically provided for in the Plan, the Confirmation Order, or a post-petition agreement in writing between the Archdiocese and the holder of a Claim approved by an order of the Bankruptcy Court, post-petition interest shall not accrue or be paid on any Claim, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. In addition, and without limiting the foregoing or any other provision of the Plan, the Confirmation Order, or the Trust Agreement, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

### 10.10 Saturday, Sunday or Holiday.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the following Business Day, but shall be deemed to have been completed as of the required date.

### 10.11 Withholding Taxes.

The Archdiocese shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. As a condition to making any Distribution under the Plan, the Archdiocese may require that the holder of an Allowed Claim provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

68

**10.12    Setoffs and Recoupment.**

Subject to the terms of this Plan and pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, the Archdiocese may, but shall not be required to, setoff against or recoup from any Claim on which payments are to be made pursuant to the Plan, any Claims of any nature whatsoever the Archdiocese may have against the holder of such Claim.

**10.13    No *De Minimis* Distributions.**

Notwithstanding any other provisions of the Plan to the contrary, no payment of fractional cents will be made under the Plan. Cash (rounded to the nearest whole cent when and as necessary) will be issued to Claimants entitled to receive Distributions of Cash. Any Distribution of less than $25.00 will be considered *de minimis*, and holders of Allowed Claims that are entitled to Distributions of less than $25.00 will not receive any Distribution. Such funds will remain with, and revest in, the Archdiocese. For avoidance of doubt, this Section 10.13 shall not apply to any Distributions to be made by the Trust, which shall be governed solely by the Trust Documents.

**10.14    Prepayment.**

Except as otherwise provided in the Plan or the Confirmation Order, the Archdiocese shall have the right to prepay, without penalty, all or any portion of an Allowed Claim.

**SECTION 11.        EFFECTIVE DATE**

**11.1    Conditions Precedent to Effective Date.**

The Effective Date shall not occur, and the Plan shall not be consummated, unless each of the following conditions are satisfied or waived as set forth in Section 11.2 below

11.1.1    ***Confirmation Order.*** The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Plan Proponent. Without limiting the generality of the foregoing, the Confirmation Order shall, at a minimum, contain findings by the Bankruptcy Court that:

a.        the assignment of Insurance Claims against the Non-Settling Insurers, or alternatively, the retention and prosecution of such Claims following confirmation by the Archdiocese and other Participating Parties as contemplated in the Plan is authorized by, and does not conflict with, any provision of the Bankruptcy Code, and is therefore approved;

b.        all of the requirements for confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code have been met and that the Plan should be confirmed; and

c.        the Confirmation Order contains appropriate provisions for the examination fees to be paid by Abuse Claimants to their legal counsel under Maryland law.

69

11.1.2    ***Channeling and Insurer Injunctions.*** The Confirmation Order shall approve and implement the Channeling Injunction set forth in Section 12 of the Plan and shall ratify the Settling Insurer Injunction set forth in the Sale Order(s) approving the respective Insurance Settlement Agreements.

11.1.3    ***Plan Documents.*** The Plan Documents shall be in form and substance acceptable to the Plan Proponent.

11.1.4    ***Trust Formation.*** The Trust shall have been formed, the Bankruptcy Court shall have entered an order appointing the Trustee, and the Trustee and the Archdiocese shall have executed the Trust Agreement.

11.1.5    ***The AOB Entities' Cash Contribution.*** The AOB Entities' Cash Contribution shall have been made to the Trust; provided, however, that if no Parish, School, Other Catholic Organization, or other Person is eligible to be a Participating Party, then only the Archdiocese Cash Contribution shall have been made to the Trust.

11.1.6    ***Participating Parties Assignment.*** Each Participating Party shall assign its respective Insurance Claims against the Non-Settling Insurers, to the extent such Claims exist, by executing and delivering such agreements and instruments of assignment as the Trustee may reasonably request.

11.1.7    ***Insurance Settlement Agreements.*** Each Insurance Settlement Agreement agreed to prior to the Confirmation Date shall have been duly executed by all parties thereto and approved by the Bankruptcy Court, in each case in form and substance satisfactory to the Plan Proponents and applicable Settling Insurers.

11.1.8    ***The Settling Insurers' Contribution.*** Each Settling Insurer shall have paid to the Trust the Insurance Settlement Amount due under such Settling Insurer's Insurance Settlement Agreement, except to the extent the terms of such Insurance Settlement Agreement expressly provide that the applicable Insurance Settlement Amount will be made at a later date.

11.1.9    ***No Material Amendments.*** The Plan shall not have been materially amended, altered, or modified as confirmed by the Confirmation Order, unless such material amendment, alternation, or modification has been made with consent of the Plan Proponent.

**11.2    Waiver of Conditions.**

Any condition to the occurrence of the Effective Date set forth in Section 11.1 of this Plan may be waived only by the mutual written consent of the Plan Proponent.

**11.3    Occurrence of Effective Date.**

Prior to the occurrence of the Effective Date, those terms of the Plan that are necessary to allow Litigation Claims to proceed regardless of whether the Confirmation Order is a Final Order shall be implemented. Such terms include (a) the establishment of the Trust, (b) approval of the Trust Agreement, (c) the appointment of the Trustee, (d) the of the automatic stay

with respect to any Litigation Claims the Trustee may authorize to proceed pursuant to Section 4.3.1 of the Plan.

If the Effective Date has not occurred within 90 days of the date on which the Confirmation Order becomes a Final Order, the Plan Proponent may elect to withdraw the Plan in their respective sole and absolute discretion.

### 11.4    Notice of Effective Date.

The Plan Proponent shall File a notice of Effective Date with the Bankruptcy Court and serve it on all Creditors and parties in interest, within five Business Days after the occurrence of the Effective Date. Such notice shall include all relevant deadlines put into effect by the occurrence of the Effective Date.

### 11.5    Effect of Non-Occurrence of Condition.

If substantial consummation of the Plan does not occur, the Plan will be null and void in all respects, and nothing in this Plan or the Disclosure Statement will: (a) constitute a waiver or release of any Claims by or against the Protected Parties or any Settling Insurer; (b) prejudice in any manner the rights of the Protected Parties, the Trusts, or any Settling Insurer; (c) constitute an admission, acknowledgement, offer, or undertaking by the Protected Parties or any Settling Insurer in any respect, including in any Action against the Debtor; or (d) be admissible in any Action against the Protected Parties or any Settling Insurer in any court or other forum.

## SECTION 12.    EFFECTS OF PLAN CONFIRMATION AND EFFECTIVE DATE

### 12.1    General Injunction and Discharge.

12.1.1    *General Injunction*. EXCEPT WITH RESPECT TO ABUSE CLAIMS AND INBOUND CONTRIBUTION CLAIMS ADDRESSED IN SECTION 12.2 BELOW, AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, OR AS OTHERWISE PROVIDED IN ANY INSURANCE SETTLEMENT AGREEMENT OR SALE ORDER, ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OF ANY KIND OR NATURE AGAINST THE DIOCESE, WHETHER KNOWN OR UNKNOWN, WHETHER OR NOT GIVING RISE TO A RIGHT TO PAYMENT OR AN EQUITABLE REMEDY, THAT AROSE, DIRECTLY OR INDIRECTLY, FROM ANY ACTION, INACTION, EVENT, CONDUCT, CIRCUMSTANCE, HAPPENING, OCCURRENCE, AGREEMENT, OR OBLIGATION OF THE ARCHDIOCESE OR THE ARCHDIOCESE'S AGENTS, BEFORE THE CONFIRMATION DATE, OR THAT OTHERWISE AROSE BEFORE THE CONFIRMATION DATE, INCLUDING ALL INTEREST, IF ANY, ON ANY SUCH CLAIMS AND DEBTS, WHETHER SUCH INTEREST ACCRUED BEFORE OR AFTER THE DATE OF COMMENCEMENT OF THE CHAPTER 11 CASE, AND INCLUDING ALL CLAIMS AND DEBTS BASED UPON OR ARISING OUT OF NON-ABUSE CLAIMS AND FROM ANY LIABILITY OF THE KIND SPECIFIED IN SECTIONS 502(g), 502(h), AND 502(i) OF THE BANKRUPTCY CODE, WHETHER OR NOT (I) A PROOF OF CLAIM IS FILED OR IS DEEMED FILED UNDER SECTION 501 OF THE

BANKRUPTCY CODE, (II) SUCH CLAIM IS ALLOWED UNDER THE PLAN; OR (III) THE HOLDER OF SUCH CLAIM HAS ACCEPTED THE PLAN, ARE PERMANENTLY ENJOINED, ON AND AFTER THE CONFIRMATION DATE, FROM (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY SUCH CLAIM OR TAKING ANY ACT TO RECOVER SUCH CLAIM OUTSIDE OF THE CLAIMS ALLOWANCE PROCEDURE PROVIDED FOR IN THE PLAN AND THE BANKRUPTCY CODE AND BANKRUPTCY RULES, (B) THE ENFORCEMENT, ATTACHMENT, COLLECTION, OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DIOCESE ON ACCOUNT OF ANY SUCH CLAIM, (C) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DIOCESE ON ACCOUNT OF ANY SUCH CLAIM AND (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DIOCESE OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DIOCESE ON ACCOUNT OF ANY SUCH CLAIM.

12.1.2    Except as otherwise expressly provided in (a) the Plan, (b) the Confirmation Order, or (c) any Insurance Settlement Agreement or Sale Order, on the Effective Date, pursuant to section 1141(d) of the Bankruptcy Code, the Archdiocese and the Estate will be discharged from all liability for any and all Non-Abuse Claims. For the avoidance of doubt and notwithstanding anything to the contrary herein, none of the Archdiocese and the Estate will be discharged from its or their respective responsibilities (and corresponding liabilities) under or with respect to any Insurance Settlement Agreement.

### 12.2    Injunction and Discharge of Abuse Claims and Inbound Contribution Claims.

12.2.1    *Injunction of Abuse Claims and Inbound Contribution Claims.* EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN SECTION 12.2.2 BELOW OR IN THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE ALL PERSONS SHALL BE PERMANENTLY STAYED, ENJOINED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, FOR THE PURPOSES OF ASSERTING, ENFORCING, OR ATTEMPTING TO ASSERT OR ENFORCE AGAINST THE ARCHDIOCESE OR ANY PARTICIPATING PARTY, ANY ABUSE CLAIMS OR INBOUND CONTRIBUTION CLAIMS, KNOWN OR UNKNOWN, WHETHER OR NOT GIVING RISE TO A RIGHT TO PAYMENT OR AN EQUITABLE REMEDY, THAT AROSE, DIRECTLY OR INDIRECTLY, FROM ANY ACTION, INACTION, EVENT, CONDUCT, CIRCUMSTANCE, HAPPENING, OCCURRENCE, AGREEMENT, OR OBLIGATION OF THE ARCHDIOCESE, ANY PARTICIPATING PARTY, OR THE ARCHDIOCESE'S OR ANY PARTICIPATING PARTY'S AGENTS, BEFORE THE CONFIRMATION DATE, OR THAT OTHERWISE AROSE BEFORE THE CONFIRMATION DATE, INCLUDING ALL INTEREST, IF ANY, ON ANY SUCH CLAIMS AND DEBTS, WHETHER SUCH INTEREST ACCRUED BEFORE OR AFTER THE DATE OF COMMENCEMENT OF THE CHAPTER 11 CASE, AND INCLUDING ALL CLAIMS AND DEBTS BASED UPON OR ARISING OUT OF ABUSE CLAIMS AND FROM ANY LIABILITY OF THE KIND SPECIFIED IN SECTIONS 502(g), 502(h), AND 502(i) OF THE BANKRUPTCY CODE, WHETHER OR NOT: (I) A PROOF OF CLAIM IS

**FILED OR IS DEEMED FILED UNDER SECTION 501 OF THE BANKRUPTCY CODE; (II) SUCH CLAIM IS ALLOWED UNDER THE PLAN; OR (III) THE HOLDER OF SUCH CLAIM HAS ACCEPTED THE PLAN.**

**IN A SUCCESSFUL ACTION TO ENFORCE THE INJUNCTIVE PROVISIONS OF THIS SECTION IN RESPONSE TO A WILLFUL VIOLATION THEREOF, THE MOVING PARTY MAY SEEK AN AWARD OF COSTS (INCLUDING REASONABLE ATTORNEYS' FEES) AGAINST THE NON-MOVING PARTY, AND SUCH OTHER LEGAL OR EQUITABLE REMEDIES AS ARE JUST AND PROPER, AFTER NOTICE AND A HEARING.**

**THE DISCHARGE AND INJUNCTIONS CONTAINED IN THE PLAN AND THE RELEASES PROVIDED UNDER THE PLAN DO NOT RELEASE OR IMPAIR AN ABUSE CLAIMANT'S RIGHT TO RECOVER ON ANY ABUSE CLAIM AGAINST ANY PERPETRATOR OF ABUSE FOR ACTS OF ABUSE THAT ARE INDEPENDENT OF THE LIABILITY OF THE DIOCESE OR ANY PARTICIPATING PARTY.**

12.2.2 ***Limited Exceptions to Injunctions.***

a. <u>Non-Participating PP Abuse Claims Excepted</u>. The injunctions set forth in Section 12.2.1 above, and Section 12.3 below, shall not apply to prevent a Non-Participating Abuse Claimant from pursuing or enforcing his or her Non-Participating PP Abuse Claim (if any) against a Participating Party.

b. <u>Certain Inbound Contribution Claims Excepted</u>. The injunctions set forth in Section 12.2.1 above, and Section 12.3 below, shall not apply to prohibit the pursuit or enforcement of an Inbound Contribution Claim against a Participating Party by any Person who affirmatively indicates, by Filing a timely written objection to confirmation of the Plan, that they will not consent to having such Inbound Contribution Claim (if any) enjoined as contemplated in the Plan. Any Person who holds an Inbound Contribution Claim against a Participating Party, whether or not Filed with the Bankruptcy Court or in any Abuse Action, and who fails to File a timely written objection to confirmation of the Plan shall be conclusively deemed to consent to the injunction set forth in Sections 12.2.1 and 12.3 and shall be bound thereby.

c. <u>Preservation of Insurance Claims</u>.

(i) To facilitate the pursuit of Insurance Claims against Non-Settling Insurers, the injunctions set forth in Section 12.2.1 above and 12.3 below shall not prevent the prosecution of Abuse Actions against the Archdiocese or any Participating Party (i) by one or more Litigation Claimants authorized by the Trustee to pursue their Litigation Claims, at such Litigation Claimants' expense, in any court of competent jurisdiction solely for the purpose of determining any liability that the Archdiocese and/or any Participating Party may have with respect to such Litigation Claimant's Litigation Claim, and the amount of that liability; (ii) as the Trustee may deem necessary in order to prosecute the Insurance Claims against Non-Settling Insurers; or (iii) as the Trustee may deem necessary in order

to effectuate settlement of any Abuse Claims; *provided*, *however*, that all collection efforts against the Archdiocese and/or any Protected Party shall be enjoined and any Litigation Award obtained as a result of litigating such Abuse Actions shall be enforceable solely against Non-Settling Insurers and not against any Protected Party. For avoidance of doubt, the limited exception set forth in this Section 12.2.2.c permits (subject to the terms hereof) only the prosecution of Abuse Actions against the Archdiocese and/or a Participating Party; all collection efforts against any Protected Party, Settling Insurer Releasee, or any Settling Insurer's Related Persons are permanently barred and enjoined, and any Litigation Award obtained as a result of litigating such Abuse Actions shall be enforceable solely against Non-Settling Insurers and not against any Protected Party, Settling Insurer Releasee, or any Settling Insurer's Related Persons (or any of their respective property or assets except for any Non-Settling Insurer Policy).

(ii)     To preserve coverage under any Non-Settling Insurer Policy, Abuse Claims will not be released or discharged as against the Archdiocese or any other Participating Party until the occurrence of the applicable Abuse Claim Discharge Date. For the avoidance of doubt, prior to the occurrence of the applicable Abuse Claim Discharge Date and subject to the limitations set forth in the Plan, a duly authorized Litigation Claimant or the Trust may name the Archdiocese or any Participating Party in a proceeding to adjudicate whether the Archdiocese or any Participating Party has liability for a Litigation Claim and the amount of any such liability, but recourse shall be limited to the proceeds of any Non-Settling Insurer Policies and all other damages that may be recoverable against any Non-Settling Insurers.

d.     Notwithstanding anything to the contrary herein: (i) the Archdiocese shall have no liability whatsoever for any Abuse Claims or Inbound Contribution Claims and any act by any Person to collect or enforce any Abuse Claim or Inbound Contribution Claim against the Archdiocese shall be permanently enjoined; and (ii) subject to and upon payment of a Settling Insurer's Insurance Settlement Amount, such Settling Insurer shall have no liability whatsoever for any Channeled Claim or Barred Claim, and the Channeling Injunction and Settling Insurer Injunction prohibit any Person (including all Litigation Claimants) from asserting, enforcing, or attempting to assert or enforce any Channeled Claim or Barred Claim against any such Settling Insurer, its corresponding Settling Insurer Releasees, its Related Persons, or the assets or property of any of the foregoing (including the Purchased Property of such Settling Insurer).

12.2.3     ***Discharge of Abuse Claims and Inbound Contribution Claims.*** Except as otherwise expressly provided in the Confirmation Order, pursuant to section 1141(d) of the Bankruptcy Code, the Archdiocese and its Estate will be discharged from: (i) all liability for any and all Inbound Contribution Claims on the Confirmation Date; and (ii) all liability for any and all Abuse Claims upon the occurrence of the applicable Abuse Claim Discharge Date.

The Abuse Claim Discharge Date with respect to each Abuse Claim shall be determined as follows:

a.    With respect to any Filed Abuse Claim held by a Non-Participating Abuse Claimant, the Abuse Claim Discharge Date shall be the Effective Date.

b.    With respect to any Filed Abuse Claim held by a Consenting Abuse Claimant who is authorized by the Trustee to liquidate his or her Litigation Claim on or before the first anniversary of the Effective Date, the Abuse Claim Discharge Date shall be the earlier of the date on which (a) all Litigation Claims asserted by such Litigation Claimant against the Archdiocese and/or any Participating Party have been fully adjudicated, settled or dismissed on a final and non-appealable basis and any Non-Settling Insurers' resulting liability with respect to such Litigation Claim, as determined by settlement or Final Order, has been fully satisfied by payment in accordance with the terms of such settlement or Final Order; or (b) the Trust enters into a settlement with respect to all Non-Settling Insurer Policies that are Target Policies of such Litigation Claim.

c.    With respect to any Filed Abuse Claim held by a Consenting Abuse Claimant who is not authorized by the Trustee to liquidate his or her Litigation Claim on or before the first anniversary of the Effective Date, the Abuse Claim Discharge Date shall be the first anniversary of the Effective Date.

d.    For the avoidance of doubt, notwithstanding anything to the contrary in sub-sections 12.2.3.a through 12.2.3.c above: (i) the Abuse Claim Discharge Date for any Abuse Claim shall be deemed to occur no later than the first day following the date on which the Trust has fully adjudicated, settled or dismissed on a final and non-appealable basis all Insurance Claims against any Non-Settling Insurers who issued Non-Settling Insurer Policies that are Target Policies of any Litigation Claimants' potential Litigation Claims, and (ii) the Abuse Claim Discharge Date for all Abuse Claims shall be deemed to occur no later than the first day following the earlier of (a) the date on which the Trust has fully adjudicated, settled or dismissed on a final and non-appealable basis all Insurance Claims against all Non-Settling Insurers and (b) the date on which the Trust is terminated.

12.2.4    *Preservation of Insurance Claims.* The Non-Settling Insurers remain fully liable for their obligations related in any way to the Abuse Claims, and their obligations are not reduced by the fact that the Archdiocese is in bankruptcy or by the amount of any Distributions Abuse Claimants receive, or may be entitled to receive, based on the Allocation Protocol. The Trust may continue efforts to obtain recoveries from Non-Settling Insurers related to the Abuse Claims as set forth in the Plan. Any such recoveries by the Trust from Non-Settling Insurers will be added to the Abuse Claims Settlement Fund to be distributed pursuant to the terms of the Plan, the Allocation Protocol and the Trust Documents. Nothing in this Plan shall be deemed to modify or abridge any rights of the Non-Settling Insurers under their respective Non-Settling Insurer Policies.

**12.3** **Channeling Injunction Preventing Prosecution of Channeled Claims Against Protected Parties.**

IN CONSIDERATION OF THE UNDERTAKINGS OF THE PROTECTED PARTIES HEREIN, THEIR CONTRIBUTIONS TO THE TRUST, AND OTHER CONSIDERATION GIVEN, AND, WHERE APPLICABLE, PURSUANT TO THEIR RESPECTIVE SETTLEMENTS WITH THE ARCHDIOCESE AND TO FURTHER PRESERVE AND PROMOTE THE AGREEMENTS BETWEEN AND AMONG THE PROTECTED PARTIES, AND TO SUPPLEMENT WHERE NECESSARY THE INJUNCTIVE EFFECT OF THE DISCHARGE AS PROVIDED IN SECTIONS 524 AND 1141 OF THE BANKRUPTCY CODE, AND PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE:

     A. ANY AND ALL CHANNELED CLAIMS ARE CHANNELED INTO THE TRUST AND SHALL BE TREATED, ADMINISTERED, DETERMINED, AND RESOLVED UNDER THE PROCEDURES AND PROTOCOLS AND IN THE AMOUNTS ESTABLISHED UNDER THIS PLAN, THE ALLOCATION PROTOCOL, AND THE TRUST AGREEMENT AS THE SOLE AND EXCLUSIVE REMEDY FOR ALL HOLDERS OF CHANNELED CLAIMS.

     B. ALL PERSONS WHO HAVE HELD OR ASSERTED, HOLD OR ASSERT, OR MAY IN THE FUTURE HOLD OR ASSERT, ANY CHANNELED CLAIMS, ARE HEREBY PERMANENTLY STAYED, ENJOINED, BARRED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, FOR THE PURPOSES OF ASSERTING, ENFORCING OR ATTEMPTING TO ASSERT OR ENFORCE ANY CHANNELED CLAIMS AGAINST THE PROTECTED PARTIES, INCLUDING:

     (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES OR AGAINST THE PROPERTY OF ANY OF THE PROTECTED PARTIES;

     (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, BY ANY MANNER OR MEANS, ANY JUDGMENT, AWARD, DECREE, OR ORDER WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES OR THE PROPERTY OF ANY OF THE PROTECTED PARTIES;

     (III) CREATING, PERFECTING, OR ENFORCING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, ANY LIEN OF ANY KIND RELATING TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES, OR THE PROPERTY OF THE PROTECTED PARTIES;

**(IV)   ASSERTING, IMPLEMENTING, OR EFFECTUATING ANY CHANNELED CLAIM OF ANY KIND AGAINST:**

**(A)   ANY OBLIGATION DUE ANY OF THE PROTECTED PARTIES;**

**(B)   ANY OF THE PROTECTED PARTIES; OR**

**(C)   THE PROPERTY OF ANY OF THE PROTECTED PARTIES.**

**(V)   TAKING ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO, OR COMPLY WITH, THE PROVISIONS OF THIS PLAN; AND**

**(VI)   ASSERTING OR ACCOMPLISHING ANY SETOFF, RIGHT OF INDEMNITY, SUBROGATION, CONTRIBUTION, OR RECOUPMENT OF ANY KIND AGAINST AN OBLIGATION DUE TO ANY OF THE PROTECTED PARTIES, OR THE PROPERTY OF ANY OF THE PROTECTED PARTIES.**

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION 12 OR OTHERWISE IN THE PLAN, LITIGATION CLAIMANTS AND THE TRUST SHALL BE PERMITTED TO NAME THE ARCHDIOCESE AND ANY PARTICIPATING PARTY IN ANY PROCEEDING TO RESOLVE WHETHER THE DIOCESE OR SUCH PARTICIPATING PARTY HAS LIABILITY FOR A LITIGATION CLAIM, AND THE AMOUNT OF ANY SUCH LIABILITY, FOR THE PURPOSE OF OBTAINING INSURANCE COVERAGE FROM NON-SETTLING INSURERS UNDER THE NON-SETTLING INSURER POLICIES, AND FOR THE PURPOSE OF PURSUING ANY AND ALL INSURANCE CLAIMS AGAINST THE NON-SETTLING INSURERS. ANY SUCH JUDGMENTS OR AWARDS WILL BE TURNED OVER TO THE TRUST FOR DISTRIBUTION IN ACCORDANCE WITH SECTION 4.6 OF THIS PLAN. FOR THE AVOIDANCE OF DOUBT, RECOURSE WITH RESPECT TO ANY AND ALL LITIGATION CLAIMS IS EXPRESSLY LIMITED TO THE PROCEEDS OF NON-SETTLING INSURER POLICIES AND ALL OTHER COSTS AND/OR DAMAGES THAT MAY BE RECOVERABLE AGAINST ANY NON-SETTLING INSURERS, AS AND TO THE EXTENT PERMITTED BY THIS PLAN.**

**THE CHANNELING INJUNCTION IS AN INTEGRAL PART OF THIS PLAN AND IS ESSENTIAL TO THE PLAN'S CONSUMMATION AND IMPLEMENTATION. IT IS INTENDED THAT THE CHANNELING OF THE CHANNELED CLAIMS AS PROVIDED IN THIS SECTION 12.3 OF THE PLAN SHALL INURE TO THE BENEFIT OF THE PROTECTED PARTIES. IN A SUCCESSFUL ACTION TO ENFORCE THE INJUNCTIVE PROVISIONS OF THIS SECTION IN RESPONSE TO A WILLFUL VIOLATION THEREOF, THE MOVING PARTY MAY SEEK AN AWARD OF COSTS (INCLUDING REASONABLE ATTORNEYS' FEES) AGAINST THE NON-MOVING PARTY, AND SUCH OTHER LEGAL OR EQUITABLE REMEDIES AS ARE JUST AND PROPER, AFTER NOTICE AND A HEARING.**

**12.4    Settling Insurer Injunction.**

PURSUANT TO SECTIONS 105(a), 363, AND 1123 OF THE BANKRUPTCY CODE, AND IN CONSIDERATION OF THE UNDERTAKINGS OF THE SETTLING INSURERS PURSUANT TO THE INSURANCE SETTLEMENT AGREEMENTS, INCLUDING THE SETTLING INSURERS' PURCHASE OF THE PURCHASED PROPERTY FREE AND CLEAR OF ALL CLAIMS AND INTERESTS PURSUANT TO SECTION 363(f) OF THE BANKRUPTCY CODE, THIS PLAN HEREBY INCORPORATES BY REFERENCE, ADOPTS, AND RATIFIES (AND THE CONFIRMATION ORDER SHALL ADOPT AND RATIFY) THE SETTLING INSURER INJUNCTION IN ALL RESPECTS.

**12.5    Litigation/Settlement of Certain Claims.**

12.5.1    Except as expressly set forth in Section 12.2.2 of the Plan, the Channeling Injunction shall channel all Inbound Contribution Claims and all Insurer Contribution Claims to the Trust; *provided, however,* that the channeling of Insurer Contribution Claims to the Trust shall not extinguish or reduce Insurer Contribution Claims held by Non-Settling Insurers. For the avoidance of doubt, unless otherwise provided in the Plan, the Allocation Protocol, or Trust Documents, the channeling of an Inbound Contribution Claim or Insurance Contribution Claim does not entitle the holder of such Channeled Claim to a Trust Distribution.

12.5.2    If, for any reason, any court does not recognize the channeling of the Insurer Contribution Claims of any Non-Settling Insurers to the Trust, or such Insurer Contribution Claims are not channeled for any reason, then the following shall apply:

a.    Settling Insurers shall retain their Insurer Contribution Claims; *provided*, *however*, that:

(i)    Settling Insurers shall not pursue any Insurer Contribution Claim against any Non-Settling Insurer: (A) that asserts an Insurer Contribution Claim solely against the Trust; (B) whose Insurer Contribution Claim is satisfied and extinguished entirely by the application of this Section 12.5; or (C) that does not assert an Insurer Contribution Claim against them;

(ii)    If a Non-Settling Insurer asserts its Insurer Contribution Claim only against the Trust, then Settling Insurers shall assign any Insurer Contribution Claims they may hold against such Non-Settling Insurer to the Trust, and the Trust shall be free to assert such Insurer Contribution Claims against such Non-Settling Insurer;

(iii)    If a Non-Settling Insurer releases its Insurer Contribution Claims, if any such exist, that it may have against Settling Insurers, then such released Settling Insurers shall release their Insurer Contribution Claims against such releasing Non-Settling Insurer.

b.    In any Action, including the Insurance Coverage Adversary Proceeding, involving the Archdiocese, a Participating Party, or the Trust (collectively, the "Alleged Insured") or an Abuse Claimant, as applicable, and one or more Non-Settling Insurers, where such Non-Settling Insurer could assert any Insurer Contribution Claim against any Settling Insurers, then any judgment or award obtained by such Alleged Insured or Abuse Claimant against such Non-Settling Insurer shall be automatically reduced by the amount, if any, that such Settling Insurer would be liable to pay such Non-Settling Insurer as a result of the Non-Settling Insurer's Insurer Contribution Claim (the "Reduction Amount"), so that the Non-Settling Insurer's Insurer Contribution Claim is thereby satisfied and extinguished entirely. To accomplish this reduction, the Alleged Insured or Abuse Claimant shall obtain a finding from that court or arbitrator(s), as applicable, establishing the Reduction Amount before obtaining an entry of judgment against such Non-Settling Insurer. The Settling Insurer(s) allegedly responsible for the Non-Settling Insurer's Insurer Contribution Claim shall upon request and at the sole expense of the Trust cooperate in good faith with the Archdiocese and/or the Trust to take reasonable steps to aid the Archdiocese and/or the Trust in defending against the Insurer Contribution Claim or to otherwise establish the Reduction Amount contemplated in this paragraph. In the event that the Reduction Amount is determined to be zero, then such Non-Settling Insurer shall fully reimburse the Archdiocese and/or the Trust their costs and expenses, including legal fees, incurred in defending against (or otherwise responding to) the Insurer Contribution Claim or in establishing the Reduction Amount, including all costs, expenses and fees incurred in seeking relief from the court.

c.    If an Alleged Insured or Abuse Claimant and a Non-Settling Insurer enter into an agreement settling one or more Abuse Claims, such agreement shall include a provision whereby such Non-Settling Insurer releases its Insurer Contribution Claims against Settling Insurers so long as Settling Insurers release their Insurer Contribution Claims against such Non-Settling Insurer.

d.    Nothing contained in this Section 12.5.2 shall be interpreted to require the Trust to maintain or allocate a specific reserve for the costs set forth in this Section 12.5.2.

e.    The above procedures shall bind, and inure to the benefit of, all Settling Insurers.

12.5.3    To ensure that the reduction contemplated in Section 12.5.2 is accomplished, the Settling Insurers shall be entitled to: (i) notice, within a reasonable time, of the initiation of any future Action against or future settlement negotiations with any Non-Settling Insurer in which an Insurer Contribution Claim could be asserted against any Settling Insurers, and periodic notices thereafter on at least an annual basis of the status of such Action or negotiations; (ii) the opportunity to participate in the Action or settlement negotiations, but only to the extent necessary to accomplish the reduction contemplated in Section 12.5.2; (iii) the reasonable cooperation of the applicable Alleged Insured, at the sole cost and expense of the Trust, so that the Settling Insurers (or, as applicable, the Trust) can assert Section 12.5.2 as a defense in any Action

against for an Insurer Contribution Claim; and (iv) have the court or appropriate tribunal issue such orders as are necessary to effectuate the judgment, award, or settlement reduction in order to protect the Settling Insurers from any Insurer Contribution Claim. The notice required above shall be given by: (i) the Alleged Insured that is a party to such Action or settlement negotiations; or (ii) if no Alleged Insured is such a party, the Non-Settling Insurer that is a party to such Action or settlement negotiations; or (iii) if no Alleged Insured or Non-Settling Insurer is a party to such Action or settlement negotiations, the Abuse Claimant bound by this Plan.

12.5.4    The Trust shall use reasonable efforts to obtain, from all Settling Insurers, agreements with terms similar to those contained in Section 12.5 hereof.

**12.6    Injunction Against Interference with Plan.**

Upon entry of the Confirmation Order, all holders of Claims shall be precluded and enjoined from taking any actions to interfere with the implementation and consummation of the Plan.

**12.7    Release by Holders of Channeled Claims.**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, ALL HOLDERS OF CHANNELED CLAIMS, INCLUDING CONSENTING ABUSE CLAIMS (THE "RELEASING PARTIES"), SHALL BE DEEMED TO PROVIDE A FULL RELEASE TO THE RELEASED PARTIES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS RELATING TO THE DIOCESE, THE PARTICIPATING PARTIES, THE ESTATE, THE CONDUCT OF THE DIOCESE'S AND THE PROTECTED PARTIES' BUSINESSES, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT OR PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO THE DISCLOSURE STATEMENT, THIS PLAN, THE FILING AND PROSECUTION OF THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION AND CONSUMMATION OF THIS PLAN, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THIS PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS AMONG THE RELEASING PARTIES AND ANY RELEASED PARTY, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE.**

**THE FOREGOING RELEASE SHALL BE EFFECTIVE UPON THE OCCURRENCE OF THE EFFECTIVE DATE, EXCEPT THAT, SOLELY WITH RESPECT TO ANY ABUSE CLAIM THEY MAY HOLD, EACH CONSENTING ABUSE CLAIMANT WILL RELEASE THE DIOCESE OR ANY PARTICIPATING PARTY UPON THE OCCURRENCE OF THE ABUSE CLAIM DISCHARGE DATE APPLICABLE TO SUCH ABUSE CLAIM.**

FOR THE AVOIDANCE OF DOUBT, PRIOR TO THE OCCURRENCE OF THE APPLICABLE ABUSE CLAIM DISCHARGE DATE AND SUBJECT TO THE LIMITATIONS SET FORTH IN THE PLAN, A DULY AUTHORIZED LITIGATION CLAIMANT MAY NAME THE DIOCESE OR ANY PARTICIPATING PARTY IN A CASE OR PROCEEDING TO ADJUDICATE WHETHER THE ARCHDIOCESE OR ANY PARTICIPATING PARTY HAS LIABILITY FOR AN ABUSE CLAIM AND THE AMOUNT OF ANY SUCH LIABILITY, BUT THAT LITIGATION CLAIMANT'S RECOURSE IN SUCH CASE OR PROCEEDING SHALL BE LIMITED TO THE PROCEEDS OF ANY NON-SETTLING INSURER POLICIES AND ALL OTHER COSTS AND/OR DAMAGES THAT MAY BE RECOVERABLE AGAINST ANY NON-SETTLING INSURERS. UNDER NO CIRCUMSTANCE MAY A LITIGATION CLAIMANT OR THE TRUST NAME, OR OTHERWISE PURSUE, ANY SETTLING INSURER RELEASEES OR ANY SETTLING INSURER'S RELATED PERSON (IN ANY ACTION OR OTHERWISE) FOR OR ON ACCOUNT OF A CHANNELED CLAIM FOLLOWING SUCH SETTLING INSURER'S PAYMENT OF THE APPLICABLE INSURANCE SETTLEMENT AMOUNT.

NOTHING IN THIS SECTION 12.7 SHALL BE DEEMED TO RELEASE ANY NON-PARTICIPATING PP ABUSE CLAIM A NON-PARTICIPATING ABUSE CLAIMANT MAY HAVE AGAINST A PARTICIPATING PARTY (IF ANY).

12.8    <u>Mutual Releases.</u>

EXCEPT FOR OBLIGATIONS ARISING UNDER ANY EXECUTORY CONTRACT ASSUMED BY THE ARCHDIOCESE, OBLIGATIONS ARISING UNDER THE PLAN, AND, SOLELY WITH RESPECT TO THE DIOCESE AND THE PARTICIPATING PARTIES, ABUSE CLAIMS SUBJECT TO DELAYED RELEASE IN ACCORDANCE WITH SECTION 12.7 OF THE PLAN, ON THE EFFECTIVE DATE, EACH OF THE PARTICIPATING PARTIES, THE COMMITTEE, THE TRUST, AND EACH CONSENTING ABUSE CLAIMANT, SHALL BE DEEMED TO WAIVE, RELEASE, AND DISCHARGE ANY AND ALL CLAIMS AND CAUSES OF ACTION OF EVERY KIND AND NATURE THAT THEY MAY HAVE AGAINST EACH OTHER. FOR THE AVOIDANCE OF DOUBT, CONSENTING ABUSE CLAIMANTS SHALL NOT WAIVE THEIR RIGHTS TO DISTRIBUTIONS UNDER THE TRUST IN ACCORDANCE WITH THE TRUST AGREEMENT AND THE ALLOCATION PROTOCOL, AND SHALL BE DEEMED TO RELEASE THEIR ABUSE CLAIMS AGAINST THE DIOCESE AND THE PARTICIPATING PARTIES AS OF THE APPLICABLE ABUSE CLAIM DISCHARGE DATE; *PROVIDED, HOWEVER*, THAT ALL OTHER CLAIMS AND CAUSES OF ACTION ANY CONSENTING ABUSE CLAIMANT MAY HOLD AGAINST ANY OF THE PROTECTED PARTIES SHALL BE RELEASED ON THE EFFECTIVE DATE, AND PROVIDED, FURTHER, THAT PRIOR TO THEIR RELEASE ANY SUCH ABUSE CLAIMS SHALL ONLY BE ENFORCEABLE AND COMPENSABLE PURSUANT TO THE TERMS OF THE PLAN AND PLAN DOCUMENTS. CONSENTING ABUSE CLAIMANTS WAIVE, RELEASE, AND DISCHARGE ANY AND ALL CLAIMS AND CAUSES OF ACTION OF EVERY KIND AND NATURE THAT THEY MAY HAVE AGAINST A SETTLING INSURER, SUCH SETTLING INSURER'S RELATED PERSONS, AND ALL OTHER OF SUCH

**SETTLING INSURER'S SETTLING INSURER RELEASEES ON THE DATE SUCH SETTLING INSURER REMITS ITS INSURANCE SETTLEMENT AMOUNT TO THE TRUST (BUT NO EARLIER THAN THE EFFECTIVE DATE).**

### 12.9    Exculpation; Limitation of Liability.

**FROM AND AFTER THE EFFECTIVE DATE, NONE OF THE EXCULPATED PARTIES SHALL HAVE OR INCUR ANY LIABILITY FOR ANY CLAIM BY ANY OTHER EXCULPATED PARTY, BY ANY HOLDER OF A CLAIM, OR BY ANY OTHER PARTY IN INTEREST, FOR ANY ACT OR OMISSION (I) THAT OCCURRED FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE IN CONNECTION WITH THIS CHAPTER 11 CASE OR (II) IN CONNECTION WITH THE FORMULATION, NEGOTIATION, OR PURSUIT OF CONFIRMATION OF A PLAN, EXCEPT FOR CLAIMS ARISING FROM THE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, FRAUD, OR BREACH OF THE FIDUCIARY DUTY OF LOYALTY OF ANY EXCULPATED PARTY, IN EACH CASE SUBJECT TO DETERMINATION OF SUCH BY FINAL ORDER OF A COURT OF COMPETENT JURISDICTION AND PROVIDED THAT ANY EXCULPATED PARTY SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO ITS DUTIES AND RESPONSIBILITIES (IF ANY) UNDER THIS PLAN. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE COMMITTEE, THE DIOCESE AND THEIR RESPECTIVE OFFICERS, TRUSTEES, BOARDS, COMMITTEE MEMBERS, EMPLOYEES, ATTORNEYS, FINANCIAL ADVISORS, EXPERTS, EXPERT WITNESSES, AND OTHER PROFESSIONALS SHALL BE ENTITLED TO AND GRANTED BENEFITS OF SECTION 1125(e) OF THE BANKRUPTCY CODE AND THE CHANNELING INJUNCTION.**

### 12.10   Gatekeeper Injunction

To the extent permitted by law, and subject in all respects to this Section 12, no Enjoined Party may commence or pursue against any Protected Party (a) an Abuse Claim or (b) any other Claim or cause of action that arose, arises from, or is related to an Abuse Claim, the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind-down or reorganization of the business of the Archdiocese, the administration of the Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or cause of action represents a colorable Claim against a Protected Party and (ii) subject in all respects to the Channeling Injunction and Settling Insurer Injunction, specifically authorizing such Enjoined Party to bring such Claim or cause of action against any such Protected Party. The Bankruptcy Court will have jurisdiction to determine whether a Claim or cause of action is colorable and, to the extent legally

permissible and as provided for in Section 13, have jurisdiction to adjudicate the underlying colorable Claim or cause of action.

For the avoidance of doubt, the Gatekeeper Injunction in this Section 12.10 does not apply to Claims commenced for the purpose of seeking recovery from Non-Settling Insurers.

### 12.11   Releases in Insurance Settlement Agreements.

The releases in the Insurance Settlement Agreements are hereby fully incorporated in this Plan by reference and are adopted and ratified in all respects, and the Confirmation Order shall adopt and ratify all such releases. For the avoidance of doubt, but without limiting the generality of the foregoing, the Confirmation Order shall provide that all such releases are binding upon the Archdiocese and the Participating Parties.

### 12.12   Injunctions in Full Force and Effect.

All injunctions and/or stays provided for in the Plan, the injunctive provisions of sections 524 and 1141 of the Bankruptcy Code, and all injunctions or stays protecting any Settling Insurer that has purchased Settling Insurer Policies, free and clear of all Claims pursuant to sections 105, 363, and 1123 of the Bankruptcy Code, are permanent and will remain in full force and effect following the Effective Date of the Plan and are not subject to being vacated or modified.

### 12.13   Injunctions and Releases Integral.

The foregoing injunctive provisions and releases are an integral part of the Plan and are essential to its implementation. The currently pending Abuse Actions commenced by Consenting Abuse Claimants, the continuation of which would violate Sections 12.1, 12.2, or 12.3 of this Plan, the releases provided for under the Plan, or the Insurance Settlement Agreements shall be dismissed with prejudice following the Trustee's receipt of a Consenting Abuse Claim Release Agreement executed by the applicable Abuse Claimant, except for Litigation Claims (or Abuse Claims that may become Litigation Claims), which will be released as against the Archdiocese and/or Participating Parties (as applicable) upon the applicable Abuse Claim Discharge Date in accordance with Sections 12.2.3 and 12.7 of this Plan.

### 12.14   Timing.

The injunctions, releases, and discharges (including the Channeling Injunction and the Settling Insurer Injunction) to which a Settling Insurer is entitled pursuant to such Settling Insurer's Insurance Settlement Agreement, the Plan, the Confirmation Order, the Sale Order approving such Insurance Settlement Agreement, and the Bankruptcy Code shall only become effective when (a) the Trust receives payment in full of the Insurance Settlement Amount from the Settling Insurer pursuant to the terms of such Settling Insurer's Insurance Settlement Agreement, and (b) all other conditions to the effectiveness of such Settling Insurer's Insurance Settlement Agreement are satisfied or waived in accordance with the terms thereof.

**12.15    Non-Settling Insurers.**

Notwithstanding anything to the contrary herein, the following shall apply to Non-Settling Insurers: (i) no Claim by an Abuse Claimant against a Non-Settling Insurer shall be a Channeled Claim; *provided*, *however*, any Consenting Abuse Claims which assert liability against a Non-Settling Insurer in conjunction with a Protected Party shall be Channeled Claims as to such Protected Party; (ii) no Claim by an Abuse Claimant against a Non-Settling Insurer shall be released by operation of this Plan; (iii) the injunctions provided in Section 12.1 and 12.2 of this Plan shall not apply to Claims by any Abuse Claimant against a Non-Settling Insurer; and (iv) all Claims by any Abuse Claimant against a Non-Settling Insurer are preserved.

**12.16    Title to and Vesting of Assets.**

All property of the Archdiocese and the Estate is dealt with by the Plan. Therefore, on the Effective Date, to the fullest extent allowed by sections 1123(a)(5), 1123(b)(2), 1123(b)(3), 1141(b) and 1141(c) of the Bankruptcy Code, all property of the Archdiocese and the Estate, and any property acquired by the Archdiocese pursuant to this Plan, shall revest in the Archdiocese and such property shall be free and clear of all Liens, Claims, charges or other encumbrances whatsoever, except that (a) any charitable assets subject to Donor Restrictions shall remain subject to such Donor Restrictions and (b) all Purchased Property shall be settled, sold, and/or released (as applicable) pursuant to the terms of the Insurance Settlement Agreements. On and after the Effective Date, except as otherwise provided in this Plan, the Archdiocese may operate and manage its affairs and may use, acquire, or dispose of such property without notice to any Person, and without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by Donor Restrictions, the Plan or the Confirmation Order. The Archdiocese may pay any charges incurred on or after the Effective Date for Professional Fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

**12.17    Continued Corporate Existence.**

The Archdiocese will continue to exist after the Effective Date as a corporation sole established by special act under Maryland law, having tax-exempt status under 26 U.S.C. § 501(c)(3) and applicable Maryland law, without prejudice to any right to alter or terminate such existence, or to change its corporate name, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith.

Notwithstanding anything to the contrary in the Plan or otherwise, except to the extent necessary to honor any Donor Restrictions or to the extent it may expressly assume such obligations in the Plan or in writing on or after the Effective Date, the Archdiocese shall not be liable for any Claims arising on or prior to the Effective Date, provided, that this limitation of liability shall not apply to any Claims, liabilities, or obligations of the Archdiocese arising under any Insurance Settlement Agreement or Sale Order. All Persons and entities holding Liens, Claims and encumbrances, and other interests of any kind or nature whatsoever, against or in the Archdiocese or the Residual Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Archdiocese, the Residual Assets, or the operation of

the Residual Assets prior to the Effective Date shall be forever barred, estopped, and permanently enjoined from asserting against the Archdiocese such Liens, Claims, encumbrances, and other interests; *provided*, *however*, nothing herein shall prohibit any Person with standing to do so from taking any action to enforce Donor Restrictions, nor shall anything herein bar, estop, or enjoin any Settling Insurer from asserting or enforcing any Claims that arise under such Settling Insurer's Insurance Settlement Agreement or corresponding Sale Order.

### 12.18    Identity of Trustees and Officers.

In accordance with section 1129(a)(5) of the Bankruptcy Code, the identities and affiliations of the Persons proposed to serve as the trustees and officers of the Archdiocese on and after the Effective Date shall be: (i) The Most Reverend William E. Lori, Archbishop of Baltimore,; (ii) The Most Reverend Adam J. Parker; (iii) Dr. Diane Barr, Chancellor; and (iv) John Matera, Chief Financial Officer, all of whom have served in such capacities for the Archdiocese prior to and during this Chapter 11 Case and each of whom is affiliated with the Universal Roman Catholic Church.

### 12.19    Authority to Effectuate Plan.

Upon the Effective Date, all matters provided under the Plan shall be deemed to be authorized and approved without the requirement of further approval from the Bankruptcy Court or the Archdiocese. The Archdiocese shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action it may deem necessary or beneficial to achieve consummation of and carry out the Plan and to effectuate the transactions provided for thereunder.

### 12.20    Binding Effect.

Except as otherwise expressly provided in the Plan, on and after the Effective Date, the Plan shall bind all holders of Claims. Subject to the terms of the Plan, upon the Effective Date, every holder of a Claim shall be precluded and permanently enjoined from asserting against the Archdiocese any Claim based on any document, instrument, judgment, award, order, act, omission, transaction or other activity of any kind or nature that occurred before the Petition Date.

### 12.21    Dissolution of Committee.

On the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals, and Agents shall be released from any further duties and responsibilities in this Chapter 11 Case and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective orders entered during this Chapter 11 Case, including any orders regarding confidentiality issued by the Bankruptcy Court or Mediators, which shall remain in full force and effect according to their terms, provided that such parties shall continue to have a right to be heard with respect to any and all applications for Professional Fee Claims.

**12.22   Effect of Plan on Parishes, Schools, and Other Catholic Organizations.**

For the avoidance of all doubt, any Parish, School, or Other Catholic Organization who is not a Participating Party shall not receive any release, discharge, or other benefit from this Plan, including without limitation, any injunction, release, or discharge contained in this Article 12.

**12.23   Waiver of Charitable Immunity.**

On the Effective Date, the Reorganize Debtor and each Participating Party shall forever waive, disclaim, release, and forego the affirmative defense of charitable immunity with regard to any claim, lawsuit, cause of action, or other demand for payment arising out of or related to Abuse, whether known or unknown, now asserted or that will be asserted in the future; provided, however, that the Reorganize Debtor and each Participating Party shall preserve the defense of charitable immunity with regard to any other tort, claim, or cause of action to which such affirmative defense is available and applies under Maryland law.

**SECTION 13.          RETENTION OF JURISDICTION**

**13.1   By the Bankruptcy Court.**

Pursuant to sections 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code and 28 U.S.C. §§ 157 and 1334, on and after the Effective Date, the Bankruptcy Court shall retain: (a) original and exclusive jurisdiction over the Chapter 11 Case; (b) original, but not exclusive, jurisdiction to hear and determine all core proceedings arising under the Bankruptcy Code or arising in the Chapter 11 Case; and (c) original, but not exclusive, jurisdiction to hear and make proposed findings of fact and conclusions of law in any non-core proceedings related to the Chapter 11 Case and the Plan, including matters concerning the interpretation, implementation, consummation, execution, or administration of the Plan. Subject to, but without limiting the generality of the foregoing, the Bankruptcy Court's post-Effective Date jurisdiction shall include jurisdiction:

a.      over disputes concerning the ownership of Claims.

b.      over disputes concerning the distribution or retention of assets under the Plan.

c.      subject to the Plan Documents, over objections to Claims, motions to allow late-filed Claims and motions to estimate Claims.

d.      over proceedings to determine the extent, validity, or priority of any Lien asserted against property of the Archdiocese, the Estate, or the Trust, or property abandoned or transferred by the Archdiocese, the Estate or the Trust.

e.      over motions to approve Insurance Settlement Agreements entered into after the Effective Date by the Trustee.

f.      over matters related to the assets of the Estate or of the Trust, including the terms of the Trust, or the recovery, liquidation, or abandonment of Trust Assets.

g.    over matters related to the removal of the Trustee and the appointment of a successor Trustee.

h.    over matters relating to the subordination of Claims.

i.    to enter and implement such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated.

j.    to consider and approve modifications of or amendments to the Plan, to cure any defects or omissions or to reconcile any inconsistencies in any order of the Bankruptcy Court, including the Confirmation Order.

k.    to issue orders in aid of execution, implementation, or consummation of the Plan, including the issuance of orders enforcing any and all releases and injunctions issued under or pursuant to the Plan and any Insurance Settlement Agreement (including, without limitation, the Channeling Injunction, Settling Insurer Injunction, and Gatekeeper Injunction).

l.    over disputes arising from or relating to the Plan, the Confirmation Order, or any agreements, documents, or instruments executed in connection therewith.

m.    over requests for allowance of payment of Claims entitled to priority under sections 507(a)(2) and 503(b) of the Bankruptcy Code and any objections thereto.

n.    over all applications for compensation under sections 327, 328, 329, and 330 of the Bankruptcy Code.

o.    over matters concerning state, local, or federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

p.    over conflicts and disputes among the Trust, the Archdiocese, and holders of Claims.

q.    over disputes concerning the existence, nature, or scope of the Archdiocese Discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date.

r.    to issue injunctions, provide declaratory relief, or grant such other legal or equitable relief as may be necessary or appropriate to restrain interference with the Plan, the Archdiocese or its property, the Estate or its property, the Trust or its property, the Trustee, the Professionals, or the Confirmation Order.

s.    to enter a final decree closing the Chapter 11 Case.

t.    to enforce all orders previously entered by the Bankruptcy Court (including without limitation the Sale Order(s)).

CORE/9990000.2173/232191179.1

u.        over any and all other suits, adversary proceedings, motions, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Case or the Plan.

v.        to hear and determine any matters related to the indemnification obligations of the Trust under any Insurance Settlement Agreement and/or Section 8.14.2 of this Plan.

### 13.2    By the District Court.

Pursuant to sections 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code and 28 U.S.C. § 1334, on and after the Effective Date, the District Court shall retain original, but not exclusive, jurisdiction to hear and determine all matters arising under the Bankruptcy Code or arising in or related to the Chapter 11 Case.

### 13.3    Actions to Enforce the Plan.

The Archdiocese and the Trust may, but are not required to, commence an Action to enforce the terms of the Plan or to collect amounts owed pursuant to the Plan and any settlements set forth in the Plan or later approved by the Bankruptcy Court, which are not paid in accordance with the terms of the Plan or such settlement. Any such Action may be commenced by filing a motion with the Bankruptcy Court. On and after the Effective Date, the Trust shall have the sole and exclusive right to enforce the terms of the Plan against the Archdiocese and/or any Participating Party (except that the Archdiocese or any Participating Party may enforce the terms of the plan as against each other and the Trust) and may seek any appropriate remedy in law or equity from the Bankruptcy Court which shall retain exclusive jurisdiction over any such Action.

### 13.4    Case Closure.

The existence and continued operation of the Trust shall not prevent the Bankruptcy Court from closing the Chapter 11 Case upon a motion by the Archdiocese or any other Person. The Trustee shall not take any actions to unreasonably keep the Chapter 11 Case open. The Trustee, in his sole discretion, may seek to reopen the Chapter 11 Case to administer assets of the Trust. If the Chapter 11 Case is reopened upon request of the Trustee, the Trust, and the Archdiocese shall cooperate to assure that no disbursements are made from the Estate during the period when the Chapter 11 Case is reopened, and the case shall be closed at the earliest possibility.

## SECTION 14.        MISCELLANEOUS PROVISIONS

### 14.1    Amendment or Modification of this Plan.

The Plan Proponent may modify the Plan at any time prior to the Confirmation Hearing, in accordance with section 1127(a) of the Bankruptcy Code. After the Confirmation Date and prior to substantial consummation, the Plan Proponents may modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, by filing a motion on notice as required under the applicable Bankruptcy Rules, and the solicitation of all Creditors and other parties in interest shall not be required unless directed by the Bankruptcy Court. Notwithstanding the foregoing, those provisions of the Plan that implement, supplement, or relate to the Insurance Settlement Agreements may not

be severed, waived, amended, deleted or otherwise modified without the prior written approval of each Settling Insurer affected by such severance, waiver, amendment, deletion or modification.

### 14.2    Revocation or Withdrawal of this Plan.

The Plan Proponent reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order. If the Plan Proponent revokes or withdraws this Plan before the Confirmation Date, then this Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Archdiocese or the Committee or to prejudice in any manner the rights of the Archdiocese or the Committee in any further proceedings.

### 14.3    Reports.

From the Effective Date until the Chapter 11 Case is closed, the Reorganized Debtor shall, within thirty (30) days of the end of each fiscal quarter, file with the Bankruptcy Court and submit to the United States Trustee, quarterly reports setting forth all receipts and disbursements as required by the United States Trustee guidelines. The Reorganized Debtor will not be required to file monthly operating reports or provide copies of bank account statements. The first report shall be Filed within thirty days after the end of the quarter in which the Effective Date occurs.

### 14.4    Notices.

All notices or requests in connection with this Plan shall be in writing and given by mail or overnight mail (with a contemporaneous e-mail copy, which shall not constitute notice) addressed to:

To the Archdiocese:

> Roman Catholic Archbishop of Baltimore
> Attn: [reserved]
> 320 Cathedral Street
> Baltimore, Maryland 21201
> Email: [reserved]

with a copy to:

> HOLLAND & KNIGHT LLP
> Attn: Blake D. Roth
> 511 Union Street, Suite 2700
> Nashville, Tennessee 37219
> Email: blake.roth@hklaw.com

> *-and-*

> YVS LAW, LLC
> Attn: Catherine K. Hopkin

185 Admiral Cochrane Drive, Ste. 130
Annapolis, Maryland 21401
Email: chopkin@yvslaw.com

*-and-*

**GALLAGHER EVELIUS & JONES**
Attn: Thomas C. Dame
218 N. Charles Street, Ste. 400
Baltimore, Maryland 21201
Email: tdame@gejlaw.com

If to the Ad Hoc Committee of Parishes, Schools, and Related Entities:

**COLE SCHOTZ P.C.**
Attn: Irving Walker
1201 Wills Street, Ste. 320
Baltimore, Maryland 21231
Email: iwalker@coleschotz.com

*-and-*

**ELSAESSER ANDERSON, CHTD.**
Attn: Ford Elsaesser
P.O. Box 369
535 High Street
Priest River, Idaho 83856

To the Committee:

Edwin H. Caldie *(admitted pro hac vice)*
Andrew J. Glasnovich *(admitted pro hac vice)*
Stinson LLP
50 South Sixth Street
Minneapolis, Minnesota 55402
Telephone: (612) 335-1500
Facsimile: (612) 335-1657
Email:
ed.caldie@stinson.com
drew.glasnovich@stinson.com

90

    <u>To the Trust or the Trustee</u>

        At the address set forth in the Trust Agreement

All notices and requests to Persons holding any Claim in any Class shall be sent to them at (i) the latest mailing address set forth in a proof of claim Filed with Epiq or the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Archdiocese or Trustee, as applicable, by such Claimant in writing; or (ii) if no such proof of claim has been Filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Archdiocese or Trustee, as applicable, to the mailing address set forth in the Schedules Filed by the Archdiocese in this Chapter 11 Case.

### 14.5    <u>Severability.</u>

If, prior to confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration or interpretation.

### 14.6    <u>Validity and Enforceability.</u>

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the Confirmation Order, is valid and enforceable pursuant to its terms. Should any provision in this Plan be determined by the Bankruptcy Court or any appellate court to be unenforceable following the Effective Date, such determination shall in no way limit the enforceability and operative effect of any and all other provisions of this Plan.

### 14.7    <u>Controlling Documents.</u>

In the event and to the extent that any provision of the Plan or the Trust Documents is inconsistent with any provision of the Disclosure Statement, the provisions of the Plan or the Trust Documents, as applicable, shall control and take precedence. In the event and to the extent that any provision of the Trust Documents is inconsistent with any provision of the Plan, the Plan shall control and take precedence. In the event and to the extent that any provision of the Confirmation Order is inconsistent with any provision of the Plan or the Trust Documents, the provisions of the Confirmation Order shall control and take precedence.

### 14.8    <u>Filing of Additional Documents.</u>

At any time before substantial consummation of the Plan, the Archdiocese, or the Trust, as appropriate, may File with the Bankruptcy Court or execute, as appropriate, such agreements and

other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, or otherwise to comply with applicable law.

### 14.9  Direction to a Party.

On or after the Effective Date, the Trustee or the Archdiocese, as applicable, may apply to the Bankruptcy Court for entry of an Order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect the transfer of properties dealt with by the Plan, and to perform any other act (including satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of the Plan.

### 14.10  Certain Actions.

By reason of entry of the Confirmation Order prior to, on, or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the officers or trustees of the Archdiocese under the Plan, including: (i) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan; and (ii) the adoption, execution and implementation of other matters provided for under the Plan involving the Archdiocese or the organizational structure of the Archdiocese shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as appropriate), pursuant to applicable non-bankruptcy law, without any requirement of further action by the officers or trustees of the Archdiocese.

### 14.11  Waiver of Subordination.

Notwithstanding any provision of the Plan to the contrary, all holders of Claims shall be deemed to have waived any and all contractual subordination rights to which they may have with respect to the Distributions made pursuant to the Plan, and the Confirmation Order shall permanently enjoin, effective as of the Effective Date, all holders of Claims from enforcing or attempting to enforce any such rights against any Person receiving Distributions under the Plan.

### 14.12  Reservation of Rights.

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date has occurred.

### 14.13  Plan as Settlement Communication.

The Plan furnishes or offers or promises to furnish, or accepts or offers or promises to accept, valuable consideration in compromising or attempting to compromise Claims, Interests, and Causes of Action that are disputed as to validity or amount, including Abuse Claims and Insurance Claims. Accordingly, the Plan, the Disclosure Statement, and any communications regarding the Plan or Disclosure Statement are subject in all respects to Rule 408 of the Federal Rules of Evidence and any comparable provision(s) of applicable state law precluding their use as evidence of liability for, or the validity or invalidity of, any Dispute Claim or Cause of Action.

CORE/9990000.2173/232191179.1

### 14.14  **Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Maryland, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of the Plan transactions consummated or to be consummated in connection therewith.

### 14.15  **Headings.**

Headings are used in this Plan for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

### 14.16  **No Admissions.**

Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed as an admission by the Archdiocese, the Committee, any Participating Party, or any Settling Insurer with respect to any matter set forth herein.

*[Signature pages follow]*

93

**EXHIBIT 1**

(PARTICIPATING PARTIES)

| Debtor Internal ID | Type | Participating Party | Participating Party Cash Contribution |
|---|---|---|---|
| 1204 | Parish | St. Bernardine - 1204 | $ 628,016.55 |
| 1305 | Parish | St. Matthew - 1305 | $ 15,682.72 |
| 1417 | Parish | St. Francis Xavier - 1417 | $ 1,000.00 |
| CCSB | Parish | Holy Cross - 1405 | $ 2,511,163.94 |
| 2103 | Parish | Our Lady of Victory - 2103 | $ 1,000.00 |
| 1412 | Parish | St. Casimir - 1412 | $ 2,122,604.45 |
| 2210 | Parish | St. Ursula - 2210 | $ 389,226.61 |
| 1209 | Parish | St. Ambrose - 1209 | $ 1,000.00 |
| 1212 | Parish | Cathedral of Mary Our Queen - 1212 | $ 9,122,860.53 |
| 1312 | Parish | Our Lady of Fatima - 1312 | $ 99,281.62 |
| 2411 | Parish | St. Stephen - 2411 | $ 1,734,769.68 |
| 1208 | Parish | New All Saints - 1208 | $ 180,182.73 |
| 2307 | Parish | Our Lady of Hope - 2307 | $ 110,952.09 |
| 2101 | Parish | St. Clement (Lansdowne) - 2101 | $ 130,503.09 |
| 2211 | Parish | St. Michael the Archangel (Overlea) - 2211 | $ 339,534.76 |
| 2104 | Parish | St. Mark (Catonsville) - 2104 | $ 1,138,756.41 |
| 2113 | Parish | St. Gabriel (Woodlawn) - 2113 | $ 1,000.00 |
| 1112 | Parish | St. Veronica - 1112 | $ 354,934.50 |
| 1315 | Parish | Sacred Heart of Jesus (Baltimore) - 1315 | $ 166,159.85 |
| 2207 | Parish | Immaculate Heart of Mary - 2207 | $ 1,286,045.75 |
| 1401 | Parish | St. Athanasius - 1401 | $ 1,625,019.41 |
| 2205 | Parish | Church of the Immaculate Conception (Towson) - 2205 | $ 421,377.90 |
| 2114 | Parish | Holy Korean Martyrs - 2114 | $ 6,656,313.78 |
| 2303 | Parish | Our Lady, Queen of Peace - 2303 | $ 188,873.35 |
| 3116 | Parish | Our Lady of the Mountains - 3116 | $ 1,814,599.57 |
| 2201 | Parish | Sacred Heart (Glyndon) - 2201 | $ 3,285,368.93 |
| 2514 | Parish | St. Andrew by the Bay - 2514 | $ 1,254,846.50 |
| 1407 | Parish | St. Leo - 1407 | $ 690,516.92 |
| 1201 | Parish | St. Benedict - 1201 | $ 1,000.00 |
| 2668 | School | Our Lady of Mount Carmel School - 2668 | $ 1,427,652.95 |
| 1411 | Parish | Holy Rosary - 1411 | $ 1,442,090.44 |
| 2515 | Parish | St. Mary, Annapolis | $ 1,000.00 |
| 2304 | Parish | Our Lady of Mount Carmel (Middle River) - 2304 | $ 1,000.00 |
| 3311 | Parish | C.C. of Ascension & St. Augustine - 3311 | $ 2,081,229.23 |
| 2105 | Parish | St. Agnes - 2105 | $ 1,000.00 |
| 1102 | Parish | St. Alphonsus - 1102 | $ 1,274,295.68 |
| 2513 | Parish | St. John the Evangelist (Severna Park) - 2513 | $ 4,758,617.78 |
| 3306 | Parish | St. Louis - 3306 | $ 3,550,446.81 |
| 2508 | Parish | Christ the King - 2508 | $ 2,347,485.67 |
| 3108 | Parish | Divine Mercy Parish - 3108 | $ 2,115,258.09 |
| 1301 | Parish | SS. Philip & James - 1301 | $ 733,538.90 |
| 3303 | Parish | St. John (Westminster) - 3303 | $ 652,870.35 |
| 3210 | Parish | St. Joseph-On-Carrollton Manor - 3210 | $ 62,446.12 |
| 2402 | Parish | St. Margaret - 2402 | $ 2,709,758.17 |
| 3204 | Parish | St. Joseph (Hagerstown) - 3204 | $ 18,069.33 |

| 2518 | Parish | Our Lady of Sorrows - 2518 | $ | 326,880.42 |
|------|--------|----------------------------|---|-----------:|
| 2406 | Parish | Prince of Peace - 2406 | $ | 49,663.97 |
| 2506 | Parish | St. Elizabeth Ann Seton - 2506 | $ | 1,319,144.52 |
| 2410 | Parish | St. John the Evangelist (Long Green Valley) - 2410 | $ | 1,406,971.18 |
| 2212 | Parish | St. Joseph (Fullerton) - 2212 | $ | 1,678,006.47 |
| 3301 | Parish | St. Joseph (Taneytown) - 3301 | $ | 1,113,236.14 |
| 2502 | Parish | St. Lawrence Martyr - 2502 | $ | 216,763.06 |
| 2632 | School | St. Ursula School - 2632 | $ | 2,862,035.18 |
| 1611 | School | Archbishop Borders School - 1611 | $ | 1,000.00 |
| 1101 | Parish | Basilica of the Assumption - 1101 | $ | 2,665,650.49 |
| 2311 | Parish | Our Lady of LaVang - 2311 | $ | 426,678.88 |
| 2516 | Parish | Our Lady of Perpetual Help (Edgewater) - 2516 | $ | 860,465.62 |
| 2108 | Parish | St. Alphonsus Rodriguez - 2108 | $ | 1,245,742.19 |
| 2110 | Parish | St. Charles Borromeo - 2110 | $ | 1,815,970.94 |
| 3208 | Parish | St. Francis of Assisi (Brunswick) - 3208 | $ | 122,534.46 |
| 2403 | Parish | St. Ignatius (Hickory) - 2403 | $ | 2,536,869.23 |
| 3211 | Parish | St. Ignatius Loyola (Frederick) - 3211 | $ | 4,966,285.44 |
| 2511 | Parish | St. Jane Frances de Chantal - 2511 | $ | 377,425.62 |
| 2408 | Parish | St. Joan of Arc - 2408 | $ | 551,651.04 |
| 2204 | Parish | St. Joseph (Texas) - 2204 | $ | 3,165,929.85 |
| 3205 | Parish | St. Mary (Hagerstown) - 3205 | $ | 1,096,644.05 |
| 2409 | Parish | St. Patrick (Havre de Grace) - 2409 | $ | 626,294.30 |
| 3302 | Parish | St. Bartholomew - 3302 | $ | 821,472.69 |
| 1603 | School | Cardinal Shehan School - 1603 | $ | 1,000.00 |
| 2609 | School | Immaculate Heart of Mary School - 2609 | $ | 1,998,012.10 |
| 2621 | School | Our Lady of Hope - St. Luke School - 2621 | $ | 150,775.48 |
| 2611 | School | St. Joan of Arc School - 2611 | $ | 14,281.95 |
| 2615 | School | St. Joseph School (Fullerton) - 2615 | $ | 1,684,764.57 |
| 2631 | School | St. Stephen School - 2631 | $ | 1,032,996.98 |
| 2109 | Parish | Holy Family (Randallstown) - 2109 | $ | 619,232.43 |
| 3212 | Parish | St. John the Evangelist (Frederick) - 3212 | $ | 1,407,108.51 |
| 2602 | School | Msgr Slade Catholic School - 2602 | $ | 3,599,554.37 |
| 1104 | Parish | Corpus Christi | $ | 683,020.46 |
| 1105 | Parish | Church Of The Immaculate Conception | $ | 558,603.59 |
| 1106 | Parish | St Peter Claver | $ | 1,000.00 |
| 1107 | Parish | St Gregory The Great | $ | 75,175.00 |
| 1108 | Parish | St Pius V | $ | 706,077.89 |
| 1113 | Parish | Transfiguration | $ | 131,149.72 |
| 1202 | Parish | St Josephs Passionist Monastery | $ | 727,456.94 |
| 1203 | Parish | St William Of York | $ | 45,460.93 |
| 1205 | Parish | St Edward | $ | 1,000.00 |
| 1206 | Parish | St Cecilia | $ | 134,211.35 |
| 1210 | Parish | St Thomas Aquinas | $ | 50,962.33 |
| 1211 | Parish | Shrine Of The Sacred Heart | $ | 1,048,594.27 |
| 1303 | Parish | Blessed Sacrament | $ | 273,042.38 |
| 1304 | Parish | St Mary Of The Assumption | $ | 55,765.88 |
| 1306 | Parish | St Thomas More | $ | 842,400.14 |

| 1307 | Parish | St Dominic | $ | 1,000.00 |
|------|--------|-----------|---|----------|
| 1308 | Parish | St Francis Of Assisi | $ | 571,429.12 |
| 1309 | Parish | Shrine Of The Little Flower | $ | 471,778.02 |
| 1310 | Parish | St Anthony Of Padua | $ | 245,739.06 |
| 1311 | Parish | Most Precious Blood | $ | 1,000.00 |
| 1314 | Parish | Our Lady Of Pompei | $ | 67,316.31 |
| 1402 | Parish | St Rose Of Lima | $ | 409,710.60 |
| 1406 | Parish | St Vincent de Paul | $ | 1,187,755.99 |
| 1408 | Parish | St Patrick | $ | 570,646.99 |
| 1416 | Parish | St Wenceslaus | $ | 666,321.68 |
| 1419 | Parish | St Ignatius | $ | 218,325.58 |
| 1420 | Parish | St Ann | $ | 708,483.64 |
| 2112 | Parish | Our Lady Of The Angels Catholic Community | $ | 534,133.91 |
| 2202 | Parish | Church Of The Nativity | $ | 1,380,090.71 |
| 2203 | Parish | Our Lady Of Grace | $ | 469,920.21 |
| 2206 | Parish | St Pius X | $ | 1,000.00 |
| 2209 | Parish | St Isaac Jogues | $ | 1,352,993.17 |
| 2214 | Parish | St Francis Xavier | $ | 394,530.73 |
| 2301 | Parish | Church Of The Annunciation | $ | 498,187.53 |
| 2302 | Parish | St Clement Mary Hofbauer | $ | 195,215.90 |
| 2305 | Parish | St Clare | $ | 774,666.89 |
| 2306 | Parish | Sacred Heart Of Mary | $ | 108,105.33 |
| 2308 | Parish | St Rita | $ | 605,039.35 |
| 2310 | Parish | St Luke | $ | 328,901.81 |
| 2401 | Parish | St Mark | $ | 630,913.19 |
| 2404 | Parish | St Mary Of The Assumption | $ | 1,060,343.30 |
| 2405 | Parish | Church Of The Holy Spirit | $ | 186,180.67 |
| 2407 | Parish | St Francis de Sales | $ | 1,003,140.24 |
| 2501 | Parish | Resurrection Of Our Lord | $ | 515,869.07 |
| 2503 | Parish | St Bernadette | $ | 1,439,001.11 |
| 2504 | Parish | St Joseph | $ | 2,541,365.70 |
| 2505 | Parish | Our Lady Of The Fields | $ | 1,690,758.34 |
| 2507 | Parish | St Philip Neri | $ | 1,000.00 |
| 2512 | Parish | Our Lady Of The Chesapeake | $ | 356,074.12 |
| 2517 | Parish | Holy Family | $ | 472,759.20 |
| 3101 | Parish | St Peter The Apostle | $ | 30,344.12 |
| 3106 | Parish | St Mary Of The Annunciation | $ | 114,318.20 |
| 3107 | Parish | St Joseph | $ | 466,818.79 |
| 3201 | Parish | St Peter | $ | 845,400.29 |
| 3202 | Parish | St Michael | $ | 731,134.19 |
| 3203 | Parish | St Augustine | $ | 185,306.12 |
| 3206 | Parish | St Ann | $ | 579,651.14 |
| 3207 | Parish | St James | $ | 114,811.09 |
| 3213 | Parish | St Timothy | $ | 1,000.00 |
| 3214 | Parish | St Peter | $ | 2,011,431.67 |
| 3215 | Parish | Our Lady Of Mount Carmel | $ | 207,903.67 |
| 3216 | Parish | St Anthony Shrine | $ | 515,575.83 |

| 3217 | Parish | St Joseph | $ | 630,900.91 |
|------|--------|-----------|---|-----------|
| 3218 | Parish | Holy Family Catholic Community | $ | 211,827.49 |
| 3219 | Parish | St Katharine Drexel | $ | 738,668.81 |
| 3304 | Parish | St Joseph Catholic Community | $ | 4,157,989.33 |
| 3305 | Parish | St Michael | $ | 2,398,995.77 |
| 3307 | Parish | St John The Evangelist | $ | 2,640,926.83 |
| 3308 | Parish | Church Of The Resurrection | $ | 1,053,598.80 |
| 3309 | Parish | St Paul | $ | 596,828.13 |
| 3310 | Parish | Our Lady Of Perpetual Help | $ | 1,490,344.98 |
| 3312 | Parish | St Francis Of Assisi | $ | 571,241.98 |
| 1604 | School | School Of The Cathedral Of Mary Our Queen | $ | 5,906,927.17 |
| 1607 | School | St Francis Of Assisi School | $ | 108,224.99 |
| 1621 | School | St Casimir Catholic School | $ | 1,000.00 |
| 2601 | School | St Agnes School | $ | 1,000.00 |
| 2608 | School | Immaculate Conception School | $ | 4,364,783.34 |
| 2612 | School | St John The Evangelist School | $ | 730,849.41 |
| 2613 | School | St John The Evangelist School | $ | 2,056,544.57 |
| 2616 | School | St Joseph School | $ | 2,013,914.76 |
| 2617 | School | St Margaret School | $ | 3,767,863.92 |
| 2618 | School | St Mark School | $ | 880,810.08 |
| 2620 | School | St Michael - St Clement School | $ | 1,000.00 |
| 2626 | School | St Philip Neri School | $ | 1,544,808.63 |
| 2629 | School | Sacred Heart School | $ | 5,293,415.52 |
| 2635 | School | School Of The Incarnation | $ | 4,985,255.09 |
| 3601 | School | St Augustine School | $ | 1,000.00 |
| 3602 | School | St John School | $ | 1,861,449.99 |
| 3603 | School | St John Regional Catholic School | $ | 922,003.94 |
| 3605 | School | St Louis School | $ | 3,969,016.22 |
| 3606 | School | St Mary School | $ | 940,937.00 |
| 3610 | School | Resurrection - St Paul School | $ | 3,672,100.96 |
| 3613 | School | Our Lady Of Perpetual Help School | $ | 723,745.11 |
| 1628 | School | Mother Mary Lange Catholic School | $ | 1,000.00 |
| 2669 | Parish | St. Mary's Annapolis - 2669 (Parish, School, & High School) | $ | 19,802,485.40 |
| 1661 | School | Archbishop Curley High School - 1661 | $ | 5,651,823.35 |
| 2661 | School | Archbishop Spalding High School - 2661 | $ | 12,570,985.10 |
| BWS | School | Bishop Walsh School | $ | 1,000.00 |
| SMGHS | School | St. Maria Goretti High School | $ | 1,000.00 |
| Unknown | OCE | Associated Catholic Charities | $ | 13,208,447.00 |
| Unknown | OCE | New Cathedral Cemetary | $ | 12,451,546.00 |
| Unknown | OCE | John Carrol Fund | $ | 13,920,608.00 |
| Unknown | OCE | Roman Catholic Foundation | $ | 2,803,284.00 |
| Unknown | OCE | Maryland Catholic Conference | $ | 1,508,823.00 |
| Unknown | OCE | Mother Mary Lange Support Corporation | $ | 807,292.00 |
| 182 | | | | 273,973,974 |