UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

In re:

ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE,

Debtor.[1]

Chapter 11

Case No. 23-16969-MMH

**MOTION FOR ORDER AUTHORIZING DEBTOR TO
RECORD PREPETITION EXECUTED FEE SIMPLE DEEDS**

The Roman Catholic Archbishop of Baltimore (the "Debtor"), a Corporation Sole, by undersigned counsel, files this Motion for Order Authorizing Debtor to Record Prepetition Executed Fee Simple Deeds and states as follows:

**INTRODUCTION & BACKGROUND**

This Motion seeks an order permitting the Debtor to record in the Land Records of Baltimore City, Maryland (the "Land Records") deeds (the "Deeds") that transferred legal title to certain real to each of the following parishes:

1. St. Gregory the Great, Roman Catholic Congregation, Incorporated ("St. Gregory") in January 2010, nearly sixteen years ago.

2. St. Ambrose Roman Catholic Congregation, Incorporated ("St. Ambrose") in December 2009, sixteen years ago.

3. St. Rose of Lima Roman Catholic Congregation, Incorporated ("St. Rose") in December 2009, sixteen years ago.

4. St. Wenceslaus' Roman Catholic Congregation, Incorporated ("St. Wenceslaus") in December 2009, sixteen years ago.

5. St. Thomas More Roman Catholic Congregation, Incorporated ("St. Thomas More" and together with St. Gregory, St. Ambrose, St. Rose and St. Wenceslaus, the "Parishes"), in January 2010, nearly sixteen years ago.

Copies of the deeds respectively transferring ownership to the Parishes (each a "Deed" and together the "Deeds") are attached hereto as **Exhibits A through E** and the respective properties are described more fully therein with complete legal descriptions (each a "Property"

---

[1] The last four digits of the Debtor's federal tax identification number are 1535. The Debtor's principal place of business is located at 320 Cathedral Street, Baltimore, Maryland 21201.

and together the "Parish Properties"). The purpose of the transfer was to reconcile the church's Code of Canon Law with Maryland law with respect to parish ownership of real property.

Prior to approximately 2009, the Debtor, as a corporation sole, held legal title to all of the respective parish properties for the use and benefit of the parishes. At that time, under the Code of Canon Law (the governing laws of the Roman Catholic Church), each parish owned its parish property notwithstanding that the corporation sole was the legal titleholder of each parish property under Maryland civil law. Therefore, the parish had beneficial ownership of its parish property even though it did not hold legal title to the parish property.

Each Parish was (and is) a Maryland religious corporation, organized under Subtitle 3 of Title 5 of the Corporations and Associations Article of the Annotated Code of Maryland. Parish operations have been and are currently located on each Parish Property.

In or around 2009, the Debtor began executing and delivering fee simple deeds to its parishes conveying legal title to the Parishes with regard to their respective Parish Properties. The transfers enabled the Debtor to comply with Corporations and Associations Section 5-305, which states that "If a church forms a religious corporation, any assets held in trust for the church by any person shall be conveyed immediately to the religious corporation." Accordingly the Deed enabled the Parishes to hold not only beneficial interest, but legal title to the Parish Properties.

## LEGAL ARGUMENT

St. Gregory now seeks to sell its respective Property, and in connection with the closing of that sale, and title requirements of its purchaser, St. Gregory is required to record its Deed and has requested that the Debtor record the Deed in the Land Records in accordance with title requirements pertaining to the sale.[2] The Debtor recognizes that Maryland law dictates that each of the Parish Properties are titled to the respective Parish located on its Property, not the Debtor, and that the recordation of the Deeds in Land Records will permit the record title to reflect the

---

[2] St. Gregory has been administratively combined with St. Bernadine's parish and no longer will be using its Property in accordance with the Debtor's Seek the City to Come directive, thus leading to St. Gregory's contemplated sale. St. Gregory retains its status as a separate, civil corporation from St. Bernadine's parish, and the proceeds from the sale of the St. Gregory property will be held by St. Gregory.

true and actual ownership of the Properties. The Debtor seeks an order of this Court authorizing it to properly record the Deeds with Land Records to enable St. Gregory to sell its Property and, with respect to the other four Parishes, to ensure that record title accurately reflects the current state of ownership of each of the Parish Properties.

Each Parish is the legal owner of its respective Parish Property as of the date of delivery, which dates all fall between December 2009 and January 2010, in accordance with Md. Code Ann., Real Prop. §3-201, which provides:

> The effective date of a deed is the date of delivery, and the date of delivery is presumed to be the date of the last acknowledgment, if any, or the date stated on the deed, whichever is later. Every deed, when recorded, takes effect from its effective date as against the grantor, his personal representatives, every purchaser with notice of the deed, and every creditor of the grantor with or without notice.

Md. Code Ann., Real Prop. § 3-201

With regard to a purchaser of St. Gregory, the Deed is effective as of January 4, 2010, for any purchaser with notice of the Deed and also with regard to any creditors of the Debtor. The same would be true with respect to any purchaser of any of the other four Parish Properties.

Maryland law further provides that "If a grantee under an unrecorded deed is in possession of the land and his possession is inconsistent with the record title, his possession constitutes constructive notice of what an inquiry of the possessor would disclose as to the existence of the unrecorded deed." Md. Code Ann., Real Prop. §3-202.

Here, the Parishes have been in possession of their respective Parish Properties as follows: (a) for St. Gregory, since 1884; (b) for St. Ambrose, since 1924; (c) for St. Rose, since 1915; (d) for St. Wenceslaus, since 1902; and (e) for St. Thomas More, since 1959. There is signage on each Parish Property clearly indicating that it is the physical location for the respective Parish's worship, prayer and all church functions related to the Parish, in addition to the actual church building constructed on the property.

As a result, the Deeds are also effective against any purchasers because §3-202 provides that any purchaser would have had notice of the Deeds since the Parishes were each clearly in possession of the Property. *See, e.g., Balt. Cty. V. AT&T Corp.*, 735 F. Supp. 2d 1063, 1074

(S.D. Ind. 2010). In that case, the United States District Court for the District of Southern Indiana reviewed the interplay between Md. Code Ann. Real Prop. §3-201, 202 and 203, and held that CSX railroad could grant AT&T permission to lay lines under a railroad track in Baltimore County against Baltimore County's objection as an adjacent landowner, because CSC's ownership of a railroad pursuant to an unrecorded deed was effective against subsequent grantees having constructive notice of that deed. In *Balt. Cty. V. AT&T*, the unrecorded deeds at issue were executed in the mid 1800s and not recorded until 2006, but that court held that they were nevertheless effective as of the delivery date in the 1800's because CSX had obviously been in possession of the land *vis a vis* the railroad tracks that CSX built and maintained.

While a straightforward application of Maryland law confirms that the relief requested herein is both appropriate and required under state law, the Debtor also wishes to address the interplay between state law and Bankruptcy Code §544. Although the Official Committee of Unsecured Creditors (the "Committee") has not consented to the relief requested herein as of the filing of this Motion,[3] the Debtor anticipates that the Committee will object to the instant relief requested on the basis that the Debtor should, as a hypothetical bona fide purchaser in accordance with 11 U.S.C. §544 (and specifically, presumably under §544(a)(3)), instead seek to characterize the Parish Properties as property of the Debtor's bankruptcy estate.

The Debtor does not intend to pursue avoidance of the Deeds because Bankruptcy Code §544(a)(3) does not defeat the language in Md. Code Ann. Real Prop. §3-202 that imputes constructive knowledge on the Debtor even as a hypothetical bona fide purchaser. This Court has recognized this issue in other cases involving the Debtor's ability to reform a deed notwithstanding the status conferred by §544. *Barclays Am./Mortgage Corp. v. Wilkinson (In re Wilkinson),* 186 B.R. 186, 191 (Bankr. D. Md. 1995). Because §544 does not convey the status of a bona fide purchaser without knowledge if state law specifically imputes such knowledge on

---

[3] The Debtor reached out to the Committee by email to its counsel on November 23, 2025, to attempt to provide information about the relief requested herein with respect to St. Gregory's. At that time, the Committee expressed that it had limited bandwidth to consider any such relief with regard to the Deeds. In an effort to acknowledge the Committee's limited bandwidth in light of the forthcoming charitable immunity trial in this case in mid-December (which has now been resolved), the Debtor sought an extension of a proposed sale of St. Gregory's Property in order to permit the Committee and other parties-in-interest sufficient time to respond to this Motion rather than filing it on an expedited basis.

the purchaser; the only thing that §544 conveys upon the Debtor in this situation is "… the power to avoid a transfer that is voidable by a bona fide purchaser." *Id.* That power does not extend to a purchaser with knowledge of the Parishes' physical possession of the Parish Properties in accordance with Md. Code Ann. Real Prop. Art. §§3-202 and 201. Similarly, a trustee generally can avoid an unrecorded transfer of land, but not after having been put on constructive notice or inquiry notice of a prior claim. *See, e.g., 5 Collier on Bankruptcy* P 544.05 (16th 2025) ("… a trustee generally can avoid an unrecorded transfer of land, but not after having been put on constructive notice or inquiry notice of a prior claim.") *citing, Argent Mortgage Co., LLC v. Drown (In re Bunn),* 578 F.3d 487 (6th Cir. 2009); *In re Professional Inv. Props. of Am.,* 955 F.2d 623, 627, 26 C.B.C.2d 528 (9th Cir.), *cert. denied,* 506 U.S. 818, 113 S. Ct. 63, 121 L. Ed. 2d 31, *reh'g denied,* 506 U.S. 1014, 113 S. Ct. 638, 121 L. Ed. 2d 569 (1992); *In re Seaway Exp. Corp.,* 912 F.2d 1125, 1128 (9th Cir. 1990).

      Although Bankruptcy Code §544(a)(3) operates "…without regard to any knowledge of the trustee or of any creditor…" this Court held in *Barclays* that the language in §544 "without regard to any knowledge of the trustee or any creditor" does not allow a debtor-as-trustee to prevail under §544(a)(3) where state law specifically confers constructive knowledge on a purchaser. This is because the existence of such state-specific law defeats a trustee-as-bona-fide-purchaser where "[i]t is clear under Maryland law, that such hypothetical bona fide purchaser would prevail … unless the bona fide purchaser did not take in good faith or **had constructive notice of the prior transaction**." *Barclays Am./Mortgage Corp. v. Wilkinson (In re Wilkinson),* 186 B.R. 186, 192, *citing Hoffman v. Chapman*, 182 Md. 208, 211, 34 A.2d 438, 440 (1943); *see also Hopkins v Martinez (In re Espino)*, 648 B.R. 235 (Bankr. D. Idaho 2022) (Open possession will put a trustee on constructive notice even if no deed or other instrument regarding the property has been filed.) Simply put, §544 only permits the trustee-debtor to avoid a transfer that is, under state law, avoidable as to a bona fide purchaser. Because Maryland law does not permit the Debtor to avoid the transfer as against any purchasers that have constructive knowledge; and §3-202 imputes *all* purchasers with constructive knowledge where the Parish physically and

5

openly possessed the Property; the Debtor cannot avoid the transfer and thus it is not avoidable even under §544.

The *Hoffman* and *Barclays* holdings are also consistent with the Fourth Circuit holding in *In re Hartman Paving, Inc.*, where the Fourth Circuit held that a debtor could not invoke §544 to avoid a deed of trust that was invalid under West Virginia law, but enforceable as against any purchasers for value with notice. *In re Hartman Paving, Inc.*, 745 F.2d 307, 310 (4th Cir. 1984). In so holding, the Fourth Circuit considered the purpose and intent of not only §544, but also that of §551, finding that despite §544's reference to the trustee of the conveyance from the debtor to the creditor/note holder.  "… one who purchases with actual notice, even if a subsequent purchaser, is not subject to the same dangers of fraud as a subsequent purchaser who is dependent solely on record notice. To treat both the same simply because each is a subsequent purchaser would elevate form over substance."

Here, Md. Code. Ann., Real Prop. §3-201 together with §3-202 dictate that the Parishes' respective physical possession of the Parish Properties going back as far as 1884 constitutes constructive notice of all potential purchasers of not only the Parishes' beneficial ownership, but as of the effectiveness of the Deeds and the resulting legal title to the Parish Properties that the Debtor conveyed to the Parishes in December 2009 through January 2010.

Applying the holdings and rationale of *Barclays* and *In re Hartman Paving, Inc.,* the Deeds are effective as of the date of delivery in December 2009 or January 2010 (with regard to each delivery date for each of the Deeds) and the Parish Properties are not property of this Debtor's bankruptcy estate.  The Debtor thus seeks an order permitting it to record the Deeds, consistent with the Parishes' current legal title of the Parish Properties, or otherwise to permit the Parishes or any party acting on their behalf, to record the Deeds.

Finally, the Debtor seeks authorization to execute other documents to more properly reflect the current ownership as of 2025 and to enable to Debtor to comply with Maryland law requiring recordation only of original copies of the Deeds, as follows:

    (i)    The Debtor has original copies of the Deeds for the St. Wenceslaus,  St. Ambrose and St. Rose Properties, and has photocopies of the Deeds for the St. Gregory the Great

and St. Thomas More Properties. To the extent that Land Records refuses to accept a photocopy of the other Deeds, the Debtor seeks permission to execute replacement Deeds identical to the original deeds other than as to the signor of the grantor (which signor will be the Debtor) and the date of execution of the respective Deed, together with any rider, affidavit or similar document as may be required by the Land Records and/or a title company issuing a title insurance policy to a purchaser of a Property to record replacement Deeds indicating that legal title was conveyed to the Parishes when the initial Deeds were executed and delivered to the Parishes.

(ii) As to St. Rose, its Deed conveyed title to three parcels, but St. Rose previously conveyed two of the parcels in 2011[4]. Thus, the Debtor also seeks to execute any rider, affidavit or similar document to the original Deed as may be required by the Land Records referencing the two lots that have been conveyed and referring to the deeds of conveyance for those two lots, which will be recorded with the St. Rose Deed.

(iii) As to St. Gregory, its Deed conveyed two parcels, but one of the two parcels was previously conveyed in 2017.[5] Thus, the Debtor also seeks to execute any rider, affidavit or similar document to the original Deed as may be required by the Land Records and/or the title company issuing a title insurance policy to the purchaser of the St. Gregory property referencing the one lot that has been conveyed and referring to the deeds of conveyance for that lot, which will be recorded with the St. Gregory Deed.

## Conclusion

For the reasons articulated above, Maryland law dictates that the Deeds are effective as of their delivery dates in December 2009 through January 2010, and that the Parishes have been and are the title owner of their respective Parish Properties at all times relevant to this bankruptcy proceeding. The Debtor respectfully requests an order (i) granting this Motion; (ii) authorizing the Debtor to record the Deeds in the Land Records; and (iii) granting any other such relief as is just and appropriate.

[SIGNATURES ON NEXT PAGE]

---

[4] The St. Rose's Deed conveyed (a) 3810 5th Street (Tax account ID: 25-06-7101-015); (b) 3811 4th Street (Tax account ID: 25-06-7101-001); and (c) 3803 4th Street (Tax Account ID: 26-06-7101-007). St. Rose's already sold 3810 5th Street and 3811 4th Street in 2011.

[5] The St. Gregory's Deed conveyed both (a) 1542 North Gilmor Street, tax account ID – 15-14-0022-010; and (b) 1507 N. Smallwood Street, tax account ID – 15-38-2325-0003A. The latter property (1507 N. Smallwood Street) was conveyed in 2017.

December 26, 2025

Respectfully submitted,

      /s/ Catherine K. Hopkin
Catherine Keller Hopkin (Fed. Bar No. 28257)
YVS LAW, LLC
185 Admiral Cochrane Drive, Suite 130
Annapolis, Maryland  21401
Telephone: 443.569.0788
Facsimile: 410.571.2798
Email: chopkin@yvslaw.com

-and-

Philip T. Evans (Fed. Bar No. 11796)
HOLLAND & KNIGHT LLP
800 17th Street, NW, Suite 1100
Washington, DC 20006
Telephone: 202.457.7043
Email: philip.evans@hklaw.com

-and-

Blake D. Roth (admitted pro hac vice)
C. Scott Kunde (admitted pro hac vice)
HOLLAND & KNIGHT LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: 615.244.6380
Facsimile: 615.244.6804
Email: blake.roth@hklaw.com
scott.kunde@hklaw.com

Attorneys for the Debtor and Debtor In Possession

CERTIFICATE OF SERVICE

    I hereby certify that, on this 26th day of December 2025, a true and accurate copy of the foregoing was filed with the Clerk of the Court by electronic case filing, and the electronic case filing system provides a "Notice of Electronic Filing" to all counsel of record.

                                                /s/ Catherine Keller Hopkin
                                                Catherine Keller Hopkin