IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
<u>(Baltimore Division)</u>

In re:

Roman Catholic Archbishop of Baltimore,

Debtor.

Case No. 23-16969-MMH
(Chapter 11)

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' FURTHER RESPONSE IN OPPOSITION TO THE DEBTOR'S MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 105(a) AND 362 OF THE BANKRUPTCY CODE, EXTENDING THE AUTOMATIC STAY**

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the Roman Catholic Archbishop of Baltimore's (the "**Debtor**") bankruptcy case files this further response in opposition to the Debtor's *Motion for Entry of an Order, Pursuant to Sections 105(a) and 362 of the Bankruptcy Code, Extending the Automatic Stay* (the "**Injunction Motion**").[1] The Committee has previously joined in the *Preliminary Objection of Eva Dittrich to Debtor's Motion for Entry of an Order, Pursuant to Sections 105(a) and 362 of the Bankruptcy Code, Extending the Automatic Stay* and the subsequent follow-on objection by Eva Dittrich (together, the "**Dittrich Objection**")[2] and has previously filed its own response in opposition to the Debtor's *Motion for Entry of an Order, Pursuant to Sections 105(a) and 362 of the Bankruptcy Code, Extending the Automatic Stay* (the "**Committee's Response**", collectively with the Dittrich Objection, the "**Objections**").[3] While the parties resolved the Injunction Motion via stipulation on an interim basis more than two years ago, the Committee is separately noticing the Injunction Motion for a

---

[1] Dkt. No. 12.
[2] Dkt. Nos. 27, 129.
[3] Dkt. No. 162.

final hearing. In support of the Committee's Response in advance of that hearing, the Committee respectfully states as follows:

## **PRELIMINARY STATEMENT**

The Injunction Motion was filed nearly two and a half years ago. Litigation of Survivors' claims against hundreds of Debtor affiliates, specifically its parishes and schools, has thus not progressed for the entire pendency of this case. The premise of the Injunction Motion was that this litigation freeze was necessary and desirable, not just for the Debtor but for Survivors, so that the Debtor could avoid (a) the diversion of its resources and the attention of "key personnel" away from reorganization efforts and instead towards litigation matters involving non-debtor parties; (b) hypothesized collateral estoppel and similar effects flowing from litigation against non-debtor parties; and (c) the dissipation of the Debtor's alleged insurance assets that might occur *if creditors were allowed to collect debts* owed them by non-debtor parties.[4]

On the first hearing on the Injunction Motion, the Debtor represented to this Court that the extension of the stay to non-debtor parties was important because "we don't want 600 lawsuits", and "[w]e also don't want 600 motions to enforce the automatic stay because that, cost effectively, [would be] the same."[5] At the same hearing, counsel for Survivors presciently observed:

> When the Debtor inevitably takes the position that certain of its assets belong to it alone and those of its parishes belong to them, and those assets are not assets of the estate, this Court has to appreciate the way a survivor looks at that, survivors here who were abused at a very young age by the people that they were told were there to care for them both spiritually and emotionally and that's been ripped from them.[6]

---

[4] *See* Injunction Motion, Dkt. No. 12, at ¶ 3 (emphasis added).
[5] Trans. of October 3, 2023 Hearing, 74:18-23.
[6] Trans. of October 3, 2023 Hearing, 104:25-105:7.

On February 10, 2026, eight hundred and sixty-one days after the initial hearing on the Injunction Motion, the Debtor filed a Motion to Establish Procedures for Objections to Proofs of Claim and Responses Thereto (the "**Claim Objections Motion**").[7] The Claim Objections Motion acknowledged that the Debtor has already filed more than 600 claim objections in this case.[8] The Claim Objections Motion expresses the Debtor's intention to use the claim objection process "to determine against whom the claim is asserted for purposes of formulating a fair and equitable resolution of this case", to resolve the Debtor's objections to claims it contends "are not a liability of the Debtor or any entity related to the Debtor, in an effort to refine and formulate an appropriate analysis of what assets should be made available and by whom in the resolution of this case", and to "establish with reasonable clarity which entities (i.e., the Debtor or related parishes or schools) do and do not have liabilities in this case and, correspondingly, which entities need to contribute what in connection with a plan of reorganization."[9]

The Claim Objections Motion makes explicit the concerns held by the Committee and Survivors' counsel and expressed to this Court more than two years ago. The Debtor has weaponized the extension of the stay in order to delay the progression of litigation against non-Debtor entities and, now, to resolve those matters in a forum that it unilaterally deems preferable to state court litigation. Any residual support that the governing Fourth Circuit authorities may have provided for the Debtor's Injunction Motion two and a half years ago has eroded with the passage of time and has been undermined by the Debtor's representations and positions in this case. The Injunction Motion should be rejected and the extension of the stay to non-debtor affiliates should be terminated.

---

[7] Dkt. No. 2021.
[8] Dkt. No. 2021 at ¶ 1.
[9] Dkt. No. 2021 at ¶¶ 53, 54, 56.

**FACTUAL BACKGROUND**

The Debtor filed the Injunction Motion on September 29, 2023. The Court is familiar with the parties' 2023 briefing on the Injunction Motion and the stipulated interim resolution of the Injunction Motion. The Committee incorporates the Objections by reference into this filing and will not undertake to rehash exhaustively matters previously addressed in connection with the Injunction Motion.

In the Claim Objections Motion filed on February 10, 2026, the Debtor represented that it has "carefully reviewed each claim filed in this case" and lodged approximately six hundred claim objections to "ensur[e] that only valid claims against the Debtor participate in distributions;"[10] that its employees and advisors have been actively reviewing and reconciling the Proofs of Claim since May 31, 2024;[11] and that the Debtor "anticipates other and additional claim objections may be necessary as part of reaching a resolution of this Chapter 11 Case."[12] Specifically, the Debtor indicated that it expected to file omnibus claim objections on grounds including that "the Debtor is not liable to the claimant for the amount or claim asserted."[13] The Debtor indicated its belief that this work is necessary in order to "refine and formulate an appropriate analysis of what assets should be made available and by whom in the resolution of this case", including the Debtor's asserted need to "establish with reasonable clarity which entities (i.e., the Debtor or related parishes or schools) do and do not have liabilities in this case and, correspondingly, which entities need to contribute what in connection with a plan of reorganization."[14]

---

[10] Dkt. No. 2021 at ¶ 1.
[11] Dkt. No. 2021 at ¶ 13.
[12] Dkt. No. 2021 at ¶¶ 23, 34.
[13] Dkt. No. 2021 at ¶ 35.
[14] Dkt. No. 2021 at ¶¶ 54, 56.

6526537.2

4

238147249

**ARGUMENT**

I. **LEGAL STANDARD**

The Committee incorporates by reference the standards articulated in the Objections. Because the Motion seeks to extend the benefits of the stay to non-debtor entities, the Debtor bears the burden of demonstrating that the actions that are the subject of its request either are consistent with the types of actions described in 11 U.S.C. § 362(a) or otherwise necessary to facilitate a reorganization under 11 U.S.C. § 105. *See A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 997 (4th Cir. 1986).

While the Fourth Circuit has held that this relief may be appropriate even as to claims against non-debtors under "unusual circumstances", a Debtor seeking such relief must make a showing that "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor, or where proceedings against non-debtor codefendants would reduce or diminish the property of the debtor such as the debtor's insurance fund or pool to the detriment of the debtor's creditors as a whole." *Credit Alliance Corp. v. Williams*, 851 F.2d 119, 121 (4th Cir. 1988). After all, "Congress knew how to extend the automatic stay to non-bankrupt parties when it intended to do so." *Id.*

The Injunction Motion suffers from a fundamental and fatal disconnect between the authorities cited therein and the factual basis (allegedly) presented by the Debtor's Injunction Motion. This disconnect is made explicit in paragraph 31 of the Injunction Motion, which asserts in relevant part:

> [B]ecause the Debtor and Covered Parties participate in a central and shared insurance program, any Abuse Action against a Covered Party will inevitably require the depletion of the Debtor's insurance coverage to the detriment of the Debtor's bankruptcy estate. Stated another way, **when Abuse Actions are asserted against a Covered Party** and <u>**the Covered Party** seeks insurance coverage</u>, <u>**the Covered Party** will be seeking to utilize assets that are both property of the estate</u> and an asset of the Covered Party. Therefore, any Abuse Action seeking damages from a Covered Party would be seeking to recover money from the Debtor's estate, which would or otherwise should be prohibited from the automatic stay.[15]

The Debtor's ultimate conclusion is misplaced. The assertion of an Abuse Action against a Covered Party is not itself an effort to recover money from the Debtor's estate. Instead, it is *the Covered Party's* subsequent bid for insurance coverage that places at issue the potential erosion of the insurance asset property of the estate. *See In re Roman Catholic Diocese of Rockville Centre, New York,* 651 B.R. 622, 644 (Bankr. S.D.N.Y. June 1, 2023) (drawing the same conclusion and noting that "nothing on the face of the State Court Actions establishes that the relief sought *must* be satisfied from insurance proceeds.") (emphasis added).

The Covered Parties have benefited from the extension of the stay and a total reprieve from lawsuits against them for nearly two and a half years while, at the same time, Survivor claimants who had already waited decades for acknowledgment were forced to continue waiting. The Covered Parties should not be allowed to continue enjoying the protections of the automatic stay while, at the same time, having the claims against them litigated to resolution by the Debtor through claim objections. This is particularly the case where there is no guarantee that the non-debtor entities, or any of them, will ultimately agree to contribute to or otherwise be bound by a plan of reorganization in this case.

---

[15] Injunction Motion, Dkt. 12, at ¶ 31.

This Court should terminate the benefit of the extension of the stay for the non-debtor entities as it pertains to the advancement of Abuse Actions against them; permit Abuse Action lawsuits to proceed against the non-debtor entities; and protect the Debtor's estate by entering an order under 11 U.S.C. § 105(a) preventing the non-debtor entities from accessing the Debtor's insurance assets without further order of the Court.

## II.  THE DEBTOR HAS NOT ESTABLISHED ITS ENTITLEMENT TO RELIEF

### A.  Neither § 362(a)(1) nor § 362(a)(3) support the relief sought in the Injunction Motion.

The paragraphs of § 362 on which the Injunction Motion appears to rest are §§ 362(a)(1) and (a)(3). Paragraph (a)(1) concerns:

> the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . .

On its face, § 362(a)(1) only applies to actions against the debtor. As the Fourth Circuit observed in *A.H. Robins*, § 362(a)(1) does not warrant stay relief in "the situation where the third-party defendant was independently liable as, for example, where the debtor and another are joint tort feasors or where the nondebtor's liability rests upon his own breach of duty" because "in such a case the automatic stay would clearly not extend to such non debtor." *A.H. Robins*, 788 F.2d at 999 (favorably citing *In re Metal Center*, 31 B.R. 458 (Bankr. D. Conn. 1983)).

With respect to the Abuse Actions at issue in the Injunction Motion, this generally is a case where the non-debtor entities are alleged to be independently liable. The Debtor's own Claim Objections Motion concedes the point by making clear that the Debtor intends to seek to

commence claim objection proceedings for this exact purpose: the Debtor is seeking to resolve issues concerning "what assets should be made available *and by whom*."[16]

The Debtor's Claim Objections Motion specifically expresses the Debtor's intention to "establish with reasonable clarity which entities (i.e., the Debtor *or related parishes or schools*) do and do not have liabilities in this case and, correspondingly, *which entities need to contribute what in connection with a plan of reorganization*."[17]

Again, cases holding that § 362(a)(1) extend to claims nominally against other third parties do so where "the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *A.H. Robbins*, 788 F.2d at 999. As a threshold matter, as the party seeking injunctive relief, the Debtor bears the burden to demonstrate that the identity of interest between the parties is such that a claim against one may be binding against the other. The Debtor has not made that showing.

Second, the requisite scenario clearly does not apply here, where the Debtor has expressly represented to the Court that claims against the Debtor, parishes, or schools concern liabilities distinct to each. This is the purported rationale behind the Claim Objections Motion; namely, the Debtor's perceived need for an entity-by-entity liability and contribution determination. The Debtor's position is fundamentally inconsistent with the notion that "a judgment against the third-party [non-debtor] defendant will in effect be a judgment or finding against the debtor", as was contemplated in *A.H. Robbins*.

Similarly, § 362(a)(3) concerns the stay against:

> any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

---

[16] Claim Objections Motion, Dkt. 2021, at ¶ 54 (emphasis added).
[17] Claim Objections Motion, Dkt. 2021, at ¶ 56 (emphasis added).

As the Debtor's Claim Objections Motion makes clear, the Debtor's position in this case is that the non-debtor parish and school entities have separate liabilities, separate asset pools, and ought to contribute separate amounts to a plan of reorganization in light of those alleged differences.[18] To be clear, the Committee does not believe these contentions by the Debtor to be true. On the contrary, the Committee views the Debtor and its affiliates to constitute a single, fully-integrated entity. The Committee's point is that the Debtor has not carried its burden on the Injunction Motion.

On its face the Claim Objections Motion appears to disclaim any argument based on § 362(a)(3) other than an assertion of shared insurance assets. But the issue of shared insurance is a non-sequitur in the context of the Debtor's §§ 362(a)(1) and (a)(3) challenges to litigation against those entities, because the Court may craft an order under § 105(a) precluding those non-debtor entities from accessing and diminishing the insurance assets available to the Debtor's estate. Judge Glenn in the Southern District of New York recently reached a similar conclusion in a case separately cited by the Debtor in support of its own Claim Objections Motion,[19] observing:

> Neither party disputes that the Debtor and DRVC Related Parties may be entitled to the same finite amount of proceeds. As such, *those* proceeds are property of the estate. Actions to obtain or control *those* proceeds violate the stay. But nothing on the face of the State Court Actions establishes that the relief sought must be satisfied from insurance proceeds. To the extent that the DRVC Related Parties contend that *they* will need to first access the insurance proceeds to defend against these claims, they may bring a lift stay motion . . .

---

[18] *See* Claim Objections Motion, Dkt. 2021, at ¶¶ 54, 56.
[19] *See* Claim Objections Motion, Dkt. 2021, at ¶ 60 (citing Judge Glenn's January 10, 2023 Order Approving Claim Objection Procedures and Granting Related Relief in *In re Roman Catholic Diocese of Rockville Centre*, entered approximately six months prior to Judge Glenn's June 1, 2023 Order terminating the stay as to non-debtor entities).

6526537.2

9

238147249

*In re Roman Catholic Diocese of Rockville Centre, New York*, 651 B.R. 622, 644-45 (Bankr. S.D.N.Y. June 1, 2023) (emphasis added).[20]

Since the unit of analysis that actually places at issue the insurance assets is the *Covered Party's* bid to access those assets, the fact of shared insurance cannot, by itself, support the extension of stay relief to non-debtor entities against third-party claims.

>    B.    **With respect to the other arguments advanced in the Injunction Motion, the Motion is unsupported by competent evidence concerning the various legal and factual conclusions on which it rests.**

Even if, hypothetically, some of the Abuse Actions did seek to recover directly against the Debtor's insurance policies via a co-insured defendant, the Injunction Motion is unsupported by competent evidence to demonstrate that such access would actually affect the Debtor's ability to access its own rights. Missing evidence includes evidence pertaining to the nature of the shared insurance rights, the impact and scope of potential indemnification claims, and the extent to which the insurance rights are (or are not) zero-sum or otherwise diminishing assets. The Committee incorporates by reference the arguments raised in the Objections filed in 2023.[21]

Since those Objections were filed, further developments have continued to undermine the supposed evidentiary basis of the Injunction Motion. For example, the Injunction Motion was ostensibly supported by several paragraphs in John Matera's Declaration in Support of First Day Motions filed on September 29, 2023 at Dkt. 6 (the "**Matera Declaration**"). This Court is familiar with constraints on Mr. Matera's personal knowledge concerning insurance matters from the

---

[20] To clarify, Judge Glenn refrained from entering an order under § 105(a) on the theory that his opinion merely confirmed the contours of the automatic stay, which applies automatically to bids to access the Debtor's insurance. *Id.* at 645-46. But this Court could, nonetheless, craft relief targeted to address the potential erosion of insurance assets issue under § 105(a) to the extent the Court deems necessary.

[21] *See, e.g.*, Committee Response, Dkt. 162, at p. 9-10 (no evidence as to General Insurance Program); 10-12 (no evidence as to shared insurance policies); 20-21 (no evidence as to collateral effect of litigation); 22-23 (no evidence as to indemnity claims); Dittrich Response, Dkt. 129, at ¶¶ 5-7, 9, 11-12, 24, 26-28, 30, 34-35, 37, 47-49.

adversary proceeding concerning charitable immunity in this case, Adv. Proc. No. 25-00084 (the "**Adversary Proceeding**"). Those issues were separately briefed before the Court in the Adversary Proceeding,[22] and in response to those objections concerning limitations on Mr. Matera's personal knowledge or otherwise competence to testify on these matters, the Debtor attempted to introduce additional witnesses (including one with supposed knowledge of insurance matters)[23] despite having previously stipulated that they would not do so in the Adversary Proceeding.[24]

Given the course of discovery on matters concerning insurance in the Adversary Proceeding and its similarities to the Debtor's approach to presentment of similar evidence on the Injunction Motion, it is now even more apparent than it was in 2023 that Mr. Matera is unqualified to provide opinion or summary testimony concerning matters involving liability insurance. As a result, this Court should afford no weight to Mr. Matera's conclusory and self-serving testimony in the Matera Declaration, including that "the Debtor and Covered Parties are intertwined such that a judgment against a Covered Party in any Abuse Action would effectively be a judgment against a Debtor", that "the Debtor may face issues of collateral estoppel and claim preclusion", that "recovery against a Covered Party would have an adverse impact on the Debtor's estate", that "[i]f the automatic stay is not extended to the Covered Parties, the Debtor and its estate will be irreparably harmed", and that "the continued collection by creditors of debts owed to them by a Covered Party will deplete the estate's assets, namely insurance coverage."[25] Mr. Matera is not an

---

[22] *See, e.g.,* Committee's Opposition to Debtor's Cross-Motion for Summary Judgment, Adv. Proc. 25-00084, Dkt. 93, at p. 4 (identifying Matera's reliance on hearsay and not personal knowledge in a similar declaration presented in the Adversary Proceeding).

[23] *See, e.g.,* Debtor's Witness List in Adv. Proc. 25-00084, Dkt. 148 (identifying Thomas Alban as a previously undisclosed witness).

[24] *See, e.g.*, Committee's Motion in Limine to exclude the testimony of Thomas Alban, Adv. Proc. 25-00084, Dkt. 150, at p. 4 (objecting to the Debtor's attempt to replace similar testimony from Matera in the Adversary Proceeding with, presumably, testimony from Thomas Alban).

[25] *See* Matera Declaration, Dkt. 6, at ¶¶ 174-176.

attorney and has no personal knowledge or expertise concerning the effects of claims by third parties against non-debtor entities on the Debtor's insurance assets.

In particular, there is no evidence in the Injunction Motion demonstrating that the Debtor's legacy insurance policies, or some of them, contain aggregate limits or that defense costs borne by insurers erode applicable limits. The Committee has reviewed the insurance information presented by the Debtor in this case and has concluded that multiple policies do not have these features. As a result, it is conceivable that at least certain payments by certain insurers with respect to certain claims would not diminish funds otherwise available to the Debtor from those insurance policies. These issues can be navigated in the event an Abuse Action against a non-debtor entity is permitted to proceed, and they can be resolved in an orderly manner in the context of that non-debtor entity's bid for relief from stay to access insurance proceeds where appropriate (*i.e.*, where doing so would not erode funds otherwise available to the Debtor).

The Injunction Motion's references to indemnification claims are likewise unsubstantiated on this record and do not warrant the extension of the stay to third parties nearly nine hundred days after the commencement of this bankruptcy case. The Debtor has not presented evidence of particular indemnification claims that would, or could, render a judgment against a third party equivalent to a judgment against the Debtor. The absence of clear evidence that such claims are generally available to the non-debtor entities suggests that any such claims instead would be available, if at all, on a one-off basis. A stay against all Abuse Actions against non-debtor entities is unwarranted absent evidence that such claims would, generally, confer upon the non-debtor entities an absolute indemnity right against the Debtor. Again, specific indemnification claims may be addressed in the context of a lift stay motion by the party seeking indemnity or, potentially, by

the Debtor in connection with particular Abuse Actions that would trigger an absolute indemnity right.

III. **THE STATUS QUO EXTENSION OF THE STAY COMES AT A SUBSTANTIAL COST TO SURVIVORS AND NO LONGER CONFERS ANY TANGIBLE BENEFIT TO THE DEBTOR'S EFFORTS TO REORGANIZE**

The Claim Objections Motion expressly admits the concern first expressed by Survivors' counsel on October 3, 2023. Left to its own devices, the Debtor has allocated substantial time and energy of its employees and representatives to the evaluation of individual claims against the Debtor and non-debtor entities.[26] The Debtor (and the non-debtor entities) have done so against the backdrop of relief from state court litigation, not only for the benefit of the Debtor, but for entities that have not submitted to the requirements of an entity in bankruptcy.

They sought breathing room; they received it in abundance; and they are now using it to attempt to defeat the claims of Survivors in a bankruptcy venue without ever permitting Survivors to have their day in court.

This delay comes at a great cost to Survivors, who are not only denied the opportunity to move forward with their claims against the Debtor, but are denied the opportunity to move forward with their claims against non-debtor entities as well. The impact of this delay is compounded given the substantial volume of Survivor litigation in the state court system following the passage of the CVA and the Maryland state court system's efforts to administer those cases in an orderly fashion. Claims against non-debtor entities are now effectively behind many others that have commenced during the pendency of this case. These non-debtor entities, or some of them, may not participate in the plan of reorganization, if any, entered in this case. If and when it becomes necessary to commence litigation—whether to seek to recover against non-debtor entities that elect not to

---

[26] Dkt. No. 2021 at ¶ 13.

participate in a plan of reorganization, or whether to seek to recover in post-confirmation litigation against insurers—these Survivors will be at the end of the proverbial line through no fault of their own. Each additional day of delay in the commencement and pursuit of these Abuse Actions amplifies the harm to Survivors.

With no tangible theory of impact to the property of the Debtors' estate, the Injunction Motion is left grasping at straws concerning the logistical impact of Abuse Actions on its reorganization efforts. But the Debtor's Claim Objections Motion concedes that it has undertaken substantial work concerning the evaluation of liability and assets of the non-debtor entities specific to more than six hundred individual Abuse Action claims against those parties, and expects to assert even more objections. In other words, the stay has been pending for so long that the Debtor has voluntarily commenced its own offensive tactics mirroring the parade of horribles that it recited in its original request for the stay: that it might need to respond to "600 lawsuits" or "600 motions to extend the automatic stay".

Given the Debtor's voluntary election to undertake substantial analysis concerning entity-by-entity liability and asset analysis in the context of individual claims, the Debtor clearly has already gained a substantial amount of the benefit of the originally contemplated stay. It has been able to perform this analysis, and presumably several others in support of its reorganization efforts, without the pending distraction of state court litigation. If a further extension is necessary to permit reorganization efforts, the Debtor ought to provide particularized evidence as to what those efforts would be. The Committee believes it cannot. The interim order extending the stay to the non-debtor entities should be terminated.

**CONCLUSION**

The Court should terminate the protections of the Second Interim Order extending the stay to certain related entities, and to grant such other relief as is equitable or warranted in keeping with the same, for the reasons described above.

Date: February 27, 2026

Respectfully submitted,

/s/ *Richard L. Costella*
Alan M. Grochal, Fed. Bar No.: 01447
Richard L. Costella, Fed. Bar No. 14095
**Tydings & Rosenberg LLP**
1 East Pratt Street, Suite 901
Baltimore, Maryland 21202
Tel: (410) 752-9772
Fax: (410) 727-5460
Email: rcostella@tydings.com
          agrochal@tydings.com

*Local Counsel to the Official Committee of Unsecured Creditors*

-and-

Robert T. Kugler (MN # 194116)
Edwin H. Caldie (MN # 388930)
Andrew Glasnovich (MN # 0398366)
Christopher Sevedge (MO # 68383)
Nicole Khalouian (NY #5755681)
**Stinson LLP**
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Main: 612-335-1500
Facsimile: 612-335-1657
Email: robert.kugler@stinson.com
          ed.caldie@stinson.com
          drew.glasnovich@stinson.com
          chris.sevedge@stinson.com
          nicole.khalouian@stinson.com

*Counsel to the Official Committee of Unsecured Creditors*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of February 2026, a copy of the foregoing ***RESPONSE IN OPPOSITION*** was served via the Court's ECF filing system on all parties that are registered to receive electronic filing through the CM/ECF system and as set forth on the service list below. .

/s/ Richard L. Costella
Richard L. Costella

**The following parties received CM/ECF notice of the filing:**

Nathan D. Adler, Esquire: nda@nqgrg.com
Philip D. Anker, Esquire: philip.anker@wilmerhale.com
Sam Alberts, Esquire: sam.alberts@dentons.com
G. Calvin Awkward, III, Esquire: cawkward@goldbergsegalla.com
Gary Bahena, Esquire: garybahena@bahenalaw.com
Hugh M. Bernstein, Esquire: hugh.m.bernstein@usdoj.gov
Diane C. Bristow, Esquire: dcb@nqgrg.com
Philip Tucker Evans, Esquire: philip.evans@hklaw.com
Kevin Foreman, Esquire: kforeman@carltonfields.com
Andrew Freeman, Esquire: adf@browngold.com
Gary R. Greenblatt, Esquire: grg@cooncolelaw.com
Geoffrey Grivner, Esquire: geoffrey.grivner@bipc.com
Megan Harmon, Esquire: megan.harmon@bge.com
Catherine Keller Hopkin, Esquire: chopkin@yvslaw.com
Robert Keith Jenner: rjenner@jennerlawfirm.com
Steven J. Kelly, Esquire: skelly@gelaw.com
Nicole Khalouian, Esquire: nicole.khalouian@stinson.com
C. Scott Kunde, Jr., Esquire: scott.kunde@hklaw.com
Timothy P. Palmer, Esquire: timothy.palmer@bipc.com
Mark David Plevin, Esquire: mplevin@crowell.com
David Kendall Roberts, Esquire: droberts2@omm.com
Annette Rolain, Esquire: arolain@ruggerilaw.com
Blake D. Roth, Esquire: blake.roth@hklaw.com
James P. Ruggeri, Esquire: jruggeri@ruggerilaw.com
Jonathan Schapp, Esquire: jschapp@goldbergsegalla.com
U.S. Trustee – Baltimore: ustpregion04.ba.ecf@usdoj.gov
Irving Edward Walker, Esquire: iwalker@coleschotz.com
Jonathan Schochor, Esquire; jschochor@sfspa.com
Kerry Staton, Esquire; kstaton@sfspa.com
Joshua F. Kahn, Esquire; jkahn@sfspa.com
Thomas F. Yost, Esquire; tyost@yostlaw.com
Desirae Krislie C. Tongco, Esquire; dtongco@omm.com
Joshua D. Weinberg, Esquire: jweinberg@ruggerilaw.com
Adam R. Dunst, Esquire, adunst@goldbergsegalla.com

Samantha J. Hanson-Lenn, Esquire, Samantha.hansonlenn@stinson.com
Eric G. Korphage, Esquire, korphagee@whiteandwilliams.com
Robert H. Kline, Esquire, kliner@whiteandwilliams.com
Matthew M. Weiss, Esquire, mweiss@phrd.com
John E. Bucheit, Esquire, jbucheit@phrd.com
Matthew G. Roberts, Esquire, mroberts@phrd.com
John Grossbart, Esquire, john.grossbart@dentons.com
Siobhain P. Minarovich, Esquire, manarovics@whiteandwilliams.com
Justin P. Fasano, Esquire, jfasano@mhlawyers,com
Matthew C. Nelson, Esquire, matthew.nelson@kennedyslaw.com
Jillian G. Dennehy, Esquire, jillian.dennehy@kenedyslaw.com
James R. Murray, Esquire, jim.murray@blankrome.com
James D. Carter, Esquire, james.carter@blankrome.com
Robyn L. Michaelson, Esquire, robyn.michaelson@blankrome.com
Sara G. Klein, Esquire, sklein@manlystewart.com
Gary P. Seligman, Esquire, gseligman@wiley.law
Ezhan S. Hasan, Esquire, ahasan@wiley.com
Michael J. Belsky, Esquire, mbelsky@sbwdlaw.com
Catherine A. Dickinson, Esquire, cdickinson@sbwdlaw.com
Isabella R. Sayyah, Esquire, isayyah@gibsondunn.com
Matthew A. Hoffman, Esquire, mhoffman@gibsondunn.com
Ryan S. Appleby, Esquire, rappleby@gibsondunn.com
Michael A. Rosenthal, Esquire, mrosenthal@gibsondunn.com
Todd C. Jacobs, Esquire, tjacobs@phrd.com
Jesse J. Bair, Esquire, jbair@burnsbair.com
Timothy W. Burns, Esquire, tburns@burnsbair.com
Jared Zola, Esquire, jared.zola@blankrome.com
Anthony J.M. Kikendall, Esquire, kikendalla@whiteandWilliams.com
Eileen King Bower, Esquire, Eileen.kingbower@clydeco.us
Robert M. Westra, Esquire, rwestra@ppsrlaw.com
Kevin A. Clasing, Esquire, kclasing@ppsrlaw.com
Morgan K. Stippel, Esquire, mstippel@burnsbair.com
Justine M. Daniels, Esquire, jdaniels@omm.com
Ryan S, Perlin, Esquire, perlin@mdtrialfirm.com
Emily C. Malarkey, Esquire, malarkey@mdtrialfirm.com
Jodie E. Bekman, Esquire, jbekman@gfrlaw.com
Timothy Karcher, Esquire, tkarcher@proskauer.com
Paul Possinger, Esquire, ppossinger@proskauer.com
Christopher White, Esquire, Christopher.white@clydeco.us
Clinton Cameron, Esquire, Clinton.cameron@clydeco.us
Bret Kabacinski, Esquire, bret.kabacinski@clydeco.us
Douglas McGill, Esquire, dmcgill@webbermcgill.com
Ysabelle G. Reyes, Esquire, yreyes@wiley.law
Jon P. Newton, Esquire, jnewton@reidand riege.com
Benjamin M. Fischer, Esquire, bfischer@coleschotz.com
Richard A. Galbo, Esquire, rgalbo@goldberg segalla.com

Sheldon N. Jacobs, Esquire, sjacobs@snjlaw.com
Nicholas A. Dellefave, Esquire, Nicholas.dellefave@hklaw,com
Elizabeth Connell, Esquire, elizabeth@connellcounsel.com
Jacob C. Cohn, Esquire, jcohn@plevinturner.com
E. Christopher Amos, Esquire, eChrisamos@gmail.com
Edward J. Kelley, Esquire, ed@constantllp.com
W. Charles Meltmar, Esquire, cmeltmar@cochranfirmdc.com
Nathaniel L. Foote, Esquire, nate@vca.law
Michael J. Belsky, Esquire, mbelsky@sbwdlaw.com
Catherine A. Dickinson, Esquire, cdickinson@sbwdlaw.com