Entered: April 2nd, 2026
Signed: April 2nd, 2026

**SO ORDERED**



**MICHELLE M. HARNER**
**U.S. BANKRUPTCY JUDGE**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Roman Catholic Archbishop of Baltimore, | * | Case No. 23-16969-MMH |
| | * | |
| Debtor. | * | Chapter 11 |
| | * | |
| *  *  *  *  *  * | * | *  *  *  *  *  * |
| Official Committee of Unsecured Creditors, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Adv. No. 26-00041-MMH |
| | * | |
| Roman Catholic Archbishop of Baltimore, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| *  *  *  *  *  * | * | *  *  *  *  *  * |

## ORDER GRANTING PRELIMINARY INJUNCTION WITH LIMITED CARVEOUTS

A debtor in a case under the U.S. Bankruptcy Code[1] is granted a stay of most all actions against it, its property, and property of the bankruptcy estate. This protection, commonly referred to as the automatic stay of section 362(a) of the Code, is a hallmark of bankruptcy relief and affords a debtor an opportunity to catch its financial breath, without the pressure of collection actions by creditors.[2] 11 U.S.C. § 362(a). In addition, a debtor's nondebtor affiliates may, in some cases,

---

[1] 11 U.S.C. §§ 101 et seq. (the "Code").

[2] As this Court has previously stated,

> The automatic stay is a core and critical component of the bankruptcy system. It "provides the debtor with a 'breathing spell' from the harassing actions of creditors, and it protects the interests of all creditors by preventing 'dismemberment' of the debtor's assets before the debtor can formulate a repayment plan or, in

benefit indirectly from the automatic stay because actions against them implicate property of the debtor's estate. Indeed, property of a debtor's estate is broadly defined to capture all of a debtor's legal and equitable interests in property. 11 U.S.C. § 541. This latter concept is particularly relevant to the pending dispute.

In this adversary proceeding, the creditors' committee seeks a preliminary injunction of certain actions by the debtor and, in turn, its nondebtor affiliates. The basis of the committee's request is that those actions affect—either directly or indirectly—property of the debtor's bankruptcy estate. The debtor opposes the preliminary injunction, arguing that no actions are being taken against or concerning property of the estate. On the preliminary record before the Court, the committee has presented adequate evidence for the Court to impose a limited and temporary injunction, solely to allow the Court to proceed to an expedited trial on the merits. To do otherwise would risk dissipation of estate property to the detriment of the debtor and all of its creditors.

I.     Relevant Background

The Roman Catholic Archbishop of Baltimore (the "Debtor") filed a petition for relief under chapter 11 of the Code on September 29, 2023.[3] Case No. 23-16969, ECF 1. On that same date, the Debtor filed a Motion to Extend the Automatic Stay (the "Stay Motion") to certain related entities included as additional insureds under the Debtor's various current and legacy insurance

---

liquidation cases, the court can oversee equitable distribution of the debtor's assets." *In re Schwartz-Tallard*, 803 F.3d 1095, 1100 (9th Cir. 2015); *see also In re Pinkney*, No. 00-52385-C13W, 2002 WL 433151, at *3 (Bankr. N.D. N.C. Mar. 8, 2002).
*In re Siegal*, 591 B.R. 609, 620–21 (Bankr. D. Md. 2018).

[3] The Debtor is operating as a debtor in possession under section 1107 of the Code. 11 U.S.C. § 1107. All references to the Debtor herein include its role as a debtor in possession in the underlying chapter 11 case.

programs. *Id.*, ECF 12. The Court entered an interim order granting certain of the relief requested by the Stay Motion, which was then continued under the Stay Order. *Id.*, ECF 52, 173.

The Debtor has acknowledged that the filing of this case and the need for the Stay Order resulted from the Maryland Child Victims Act (the "CVA"), passed by the Maryland General Assembly in April 2023. The CVA eliminated the statute of limitations on civil lawsuits involving child sexual abuse. The CVA became effective on October 1, 2023, immediately after the filing of this case.[4]

Since that time, the Debtor, the Official Committee of Unsecured Creditors (the "Committee"), and the Debtor's insurance carriers (the "Insurers") have been engaged in this case, participating in mediation, and working towards an agreement on a plan of reorganization. The primary creditors in this case are the survivors of child sexual abuse ("Survivors"), and the members of the Committee are in fact Survivors themselves. The mediation is ongoing and is governed by the Agreed Order Directing Mediation, Appointing Mediators, and Ordering Mediation Discovery. *Id.*, ECF 705.

Although the parties have made some progress in the underlying chapter 11 case, they have encountered several challenges and have yet to set a plan confirmation schedule. One of the more recent challenges appears to be disagreements concerning what the Debtor and its nondebtor affiliates may do with certain assets, which resulted in the filing of this adversary proceeding. The Committee argues that the Debtor's "Seek the City to Come" ("Seek the City") initiative implicates property of the Debtor's estate and should be subject to Court oversight and approval under

---

[4] The Committee filed a motion to clarify the scope of the Stay Order (the "Committee Stay Motion"). Case No. 23-16969, ECF 1043. The Committee Stay Motion addressed important and time-sensitive issues facing Survivors (as defined below), the Debtor, the Debtor's nondebtor affiliates, and the Insurers, relating to an amendment to the CVA adopted by the Maryland General Assembly in April 2025. The Court held a hearing on the Committee Stay Motion and all related papers on May 1, 2025, and entered the Supplemental Stay Order shortly thereafter. Case No. 23-16969, ECF 1127.

section 363(b) of the Code. The Debtor disagrees with this characterization of Seek the City and counters that Canonical Law, the First Amendment of the U.S. Constitution, and the Code preclude this Court from intervening.[5]

Shortly after commencing this adversary proceeding, the Committee filed a Motion for Preliminary Injunction (the "Motion"). ECF 13. The Debtor, in turn, filed a Motion to Dismiss Adversary Proceeding (the "Motion to Dismiss"). ECF 15. On March 31, 2026, the Court entered an Order directing the parties to discuss scheduling issues relating to these matters. ECF 16. That Order further stated that, if the parties could not reach an agreement on a temporary stay of the activities at issue in the Motion pending an evidentiary hearing on the Motion and arguments on the Motion to Dismiss on April 15, 2026, the Court would hold a preliminary hearing on the Motion on April 2, 2026 (the "Hearing"). No agreement was reached, and the Hearing was held.[6]

II.     Analysis

To resolve the Motion, the Court must consider the requested relief under the standard governing preliminary injunctions in civil matters. According to the U.S. Supreme Court, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see also In re Chicora Life Ctr., LC*, 553 B.R. 61, 64 (D.S.C. 2016); *Moore v. Kempthorne*, 464 F. Supp.2d 519, 525 (E.D. Va. 2006).

---

[5] These arguments are largely set forth in the Debtor's Motion to Dismiss [ECF 15] but were referenced at various points during the Hearing.

[6] The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Local Rule 402 of the United States District Court for the District of Maryland. This proceeding is a "core proceeding" under 28 U.S.C. § 157(b)(2).

4

Courts analyzing preliminary injunctions in the context of bankruptcy cases generally rely on case law and a bankruptcy court's equitable powers under section 105 of the Code.[7] Notably, the Court's section 105 powers are not unlimited but may be used in furtherance of the Code's statutory provisions. *See, e.g., Law v. Siegel*, 571 U.S. 415, 421 (2014).[8] The relevant Code section here is section 363—specifically whether and to what extent the Debtor's actions are subject to section 363 of the Code. In addition, Rule 65 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7065, provides that "[t]he court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65; Fed. R. Bankr. P. 7065.

Under the four elements of the preliminary injunction standard, the Court finds that the Committee has met its burden and that a preliminary injunction is warranted under the particular facts and circumstances of this proceeding.

Seek the City is a broad-based initiative that, among other things, combines parishes[9] and potentially alters the revenue streams flowing to the Debtor from its various nondebtor affiliates.[10] It also requires use of the Debtor's time, talents, and resources in a manner that, at this preliminary stage, appears out of the ordinary course of business.[11] Although the Committee identifies other

---

[7] Section 105(a) of the Code provides, in pertinent part, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. The Court herein relies primarily on the preliminary injunction standards and section 105 of the Code.

[8] As the Supreme Court explained,

> It is hornbook law that § 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code." 2 Collier on Bankruptcy ¶ 105.01[2], p. 105–6 (16th ed. 2013). Section 105(a) confers authority to "carry out" the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits. That is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere.

*Siegel*, 571 U.S. at 421.

[9] *See* ECF 13-1, Ex. A ("The former 61 parishes merged into 30 worship and ministry sites in Baltimore City and in some of the immediate suburbs.").

[10] *See id.*, Ex. E, Matera Trans. (32:18–33:13, 34:20–35:10); Ex. L, Report on Allocation and Use of Cathedraticum, slide 5.

[11] At the Hearing, counsel discussed the role of the Debtor in Seek the City. Although more evidence is needed, it appears that the Debtor has a potentially significant role in overseeing and implementing the initiative. The

elements of Seek the City that implicate the estate, these two aspects are sufficient focal points for purposes of this Order.

The Debtor argues strongly that Seek the City does not involve estate property or concern its chapter 11 case. The Debtor points to Canonical Law, the U.S. Constitution, and the Code to support its position that no oversight from this Court is necessary or appropriate. The Court is not insensitive to these issues. The Court is always mindful of its obligation to implement the language of the Code and respect the limitations of its jurisdiction and judicial powers.

Based on the preliminary record, the Court finds sufficient merit to the Committee's argument that the bankruptcy estate is impacted by at least certain elements of Seek the City. The kinds of transactions being pursued through Seek the City, whether those decisions are governed by Canonical Law, the Code, or state law, involve resources and revenue of the Debtor. At a minimum, it appears that the Debtor should disclose the nature of these transactions and their potential impact on the bankruptcy estate. From the Court's perspective, disclosure is critically important in terms of reviewing and evaluating any plan of reorganization pursued by the Debtor. It is unclear whether the Debtor is willing to provide those disclosures,[12] putting aside any potentially required Court approval of the transactions under the Code.[13]

---

Committee's counsel also stated that one of the firms retained by the Debtor in the chapter 11 case is working on the real estate transactions included in Seek the City and that the firm is being paid by the bankruptcy estate. Again, more evidence is needed on this point. The Court encourages the parties to provide additional details and evidence on these and related issues concerning how Seek the City works and how it does or does not impact the estate. That said, the Affidavit of Andrew Glasnovich and the supporting Exhibits (save Exhibits C, D, H, J, K, which the Court did not admit or consider) adequately support the Committee's position. ECF 13-1. [Note that ECF 13-1 references two documents as Exhibit J, but the second of those is docketed as Exhibit L. The Court did not consider the first document, docketed as Exhibit J.]

[12] The Debtor's counsel indicated that certain of the information had been shared with the Committee's counsel but acknowledged that it had not been filed on the docket. The Debtor's counsel also stressed the third parties involved in at least some of the transactions at issue in Seek the City. As the Court noted on the record, it is primarily concerned about the Debtor and its estate and how the Debtor is using the Code.

[13] As the Court noted at the Hearing, disclosure may be sufficient but that also may depend on the extent of estate resources at issue. The Code and the applicable rules are nimble enough to provide notice and disclosure without necessarily creating significant cost or delay.

In addition, as the Committee highlights, the Debtor voluntarily chose to file for chapter 11 protection. The Debtor cannot accept all the benefits of chapter 11 while rejecting its burdens. Indeed, the Debtor and its nondebtor affiliates have enjoyed over two and one-half years of protection from state court litigation. And the primary basis of that protection is grounded in the intricate relationship between the Debtor and its nondebtor affiliates and the broad definition of property of the estate. The Court must ensure that the provisions of the Code are consistently used throughout this case; a more robust and complete record is necessary for this purpose.[14]

The Committee also argues that it—or more precisely creditors in this case, who are largely Survivors—will be irreparably harmed without a preliminary injunction. The Committee's evidence that Seek the City affects the Debtor's cash flow and income streams,[15] as well as the suggestion that any proceeds from Seek the City will not be used to pay creditors in this case,[16] support the Committee's position at this preliminary stage.

The last two factors of the relevant test also support a preliminary injunction—the balance of the equities favors maintaining the status quo for a short period of time and the preliminary injunction is in the public interest. Again, the Court is imposing here a limited and temporary injunction solely to allow the Court to better understand the parties' respective positions and to receive all relevant evidence relating to the Motion. Moreover, the Court will carve out those

---

[14] Again, as noted above, the Court encourages the parties to create a more robust evidentiary record but for purposes of this Order, the Affidavit of Andrew Glasnovich and the supporting Exhibits (save Exhibits C, D, H, J, K, which the Court did not admit or consider) are sufficient. ECF 13-1. [Note that ECF 13-1 references two documents as Exhibit J, but the second of those is docketed as Exhibit L. The Court did not consider the first document, docketed as Exhibit J.]

[15] *See* ECF 13-1, Ex. E, Matera Trans. (32:18–33:13, 34:20–35:10); Ex. L, Report on Allocation and Use of Cathedraticum, slide 5.

[16] *See, e.g.,* ECF 13, p. 5. On the limited and preliminary record before the Court, the Court cannot discern how sale proceeds should be allocated or how they would have been allocated absent the chapter 11 case. For example, the nondebtor affiliates may have an obligation to reimburse the Debtor for expenses, or to use a portion of the proceeds for amounts due and owing to the Debtor. Although the Court asked about interorganizational (typically called intercompany or insider) debt, neither party offered evidence on the issue. The Court needs the benefit of a full evidentiary record to discern such nuanced and important facts.

transactions identified by the Debtor as time sensitive to mitigate any potential harm to the Debtor or other parties.

Likewise, the Committee has presented sufficient evidence that a temporary injunction serves the public interest. Transparency and disclosure are imperative in chapter 11 cases, not only for the debtors' creditors but also for the public more generally. Chapter 11 is a process that allows debtors to fix and discharge most prepetition obligations; it gives the debtors a fresh start despite that past debt. Creditors and the public must be able to rely on the integrity of the system—the process and the disclosures—to find the results fair and just. On balance, particularly with the guardrails imposed by this Order, any harm to the Debtor is outweighed by the potential prejudice to the Survivors, other creditors in this case, and the general public.

Accordingly, it is, by the United States Bankruptcy Court for the District of Maryland,

**ORDERED**, that the Motion is granted on the terms and subject to the conditions set forth herein; and it is further

**ORDERED**, that the Court hereby issues a preliminary injunction in favor of the Committee and against the Debtor with respect to the actions identified in the Motion, pending an evidentiary hearing on the Motion and arguments on the Motion to Dismiss **on April 15, 2026, at 2:00 p.m., ET, in person in Courtroom 9-C in Baltimore**; and it is further

**ORDERED**, that, pursuant to Federal Rule of Bankruptcy Procedure 7065, the Committee must post security pursuant to Federal Rule of Civil Procedure 65(c) in the amount of $10,000.00, which requirement shall be satisfied by a lien against the escrowed fees of the Committee's counsel, Stinson LLP, in this case; such lien shall be perfected upon entry of this Order and shall be released or distributed only upon further Order of this Court; and it is further

**ORDERED**, that notwithstanding the terms and spirit of this Order, the Debtor and its nondebtor affiliates may move forward with and close the transactions involving Shrine of the

8

Little Flower, St. Thomas Aquinas, and Church of the Annunciation, *provided, however, that the Debtor and those nondebtor affiliates shall hold the sale proceeds in escrow (including the five percent administrative fee payable to the Debtor) pending further Order of the Court*; and it is further

**ORDERED**, that the Committee shall be responsible for providing notice of this Order under Federal Rule of Civil Procedure 65(d)(2) which is incorporated by Federal Rule of Bankruptcy Procedure 7065.

cc:
Debtor
Debtor's Counsel
Official Committee of Unsecured Creditors
Committee's Counsel
U.S. Trustee
All parties in interest in Case No. 23-16969

**END OF ORDER**