**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**

In re:

ROMAN CATHOLIC ARCHBISHOP OF
BALTIMORE,

Debtor.[1]

Chapter 11

Case No. 23-16969-MMH

**JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR**
**THE ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE,**
<u>**A CORPORATION SOLE, AND ADDITIONAL DEBTORS**</u>

HOLLAND & KNIGHT LLP

Blake D. Roth (admitted *pro hac vice*)
Scott Kunde (admitted *pro hac vice*)
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone:  (615) 244-6380
Facsimile:  (615) 244-6804
Email:  blake.roth@hklaw.com
        scott.kunde@hklaw.com

HOLLAND & KNIGHT LLP

Philip T. Evans (Fed. Bar No. 11796)
800 17th Street, NW, Suite 1100
Washington, DC 20006
Telephone:  202.457.7043
Email: philip.evans@hklaw.com

YVS LAW, LLC

Catherine K. Hopkin (Fed. Bar No. 28257)
185 Admiral Cochrane Drive, Suite 130
Annapolis, MD 21401
Telephone:  (443) 569-0788
Facsimile:  (410) 571-2798
Email:  chopkin@yvslaw.com

*Counsel for the Debtor and Debtor in Possession*

Dated: May 15, 2026

---

[1] The last four digits of the Debtor's federal tax identification number are 1535. The Debtor's principal place of business is located at 320 Cathedral Street, Baltimore, Maryland 21201.

TABLE OF CONTENTS

**Contents**

ARTICLE 1 . DEFINITIONS................................................................................1

ARTICLE 2 . ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS..............................24

    2.1   ADMINISTRATIVE EXPENSE CLAIMS. ..............................................................24

    2.2   PROFESSIONAL FEE CLAIMS AGAINST THE DEBTOR OR ADDITIONAL DEBTORS. ............25

    2.3   STATUTORY FEES AND COURT COSTS OF THE DEBTOR AND ADDITIONAL DEBTORS. .....25

    2.4   PRIORITY TAX CLAIMS AGAINST THE DEBTOR AND ADDITIONAL DEBTORS. .................26

    2.5   EMPLOYEE PRIORITY CLAIMS AGAINST THE DEBTOR AND ADDITIONAL DEBTORS. .......26

ARTICLE 3 . CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS. ......26

    3.1   CLASSIFICATIONS OF CLAIMS AND INTERESTS. ................................................26

    3.2   TREATMENT OF CLAIMS AND INTERESTS. ......................................................28

    3.3   ELIMINATION OF VACANT CLASSES. ..............................................................31

    3.4   PRESUMED REJECTION BY VOTING CLASSES THAT DO NOT VOTE. ..............................31

    3.5   ACCEPTANCE BY IMPAIRED CLASSES. ............................................................32

    3.6   NONCONSENSUAL CONFIRMATION OF PLAN. ....................................................32

    3.7   NO EFFECT UPON CREDITORS' RIGHTS OF SETOFF OR RECOUPMENT. ..........................32

ARTICLE 4 . SURVIVOR COMPENSATION TRUST. ..........................................................32

    4.1   ESTABLISHMENT OF SURVIVOR COMPENSATION TRUST. ................................................32

    4.2   FUNDING OF THE SURVIVOR COMPENSATION TRUST. ................................................32

    4.3   VESTING OF SURVIVOR COMPENSATION TRUST ASSETS IN SURVIVOR
          COMPENSATION TRUST. ..............................................................................34

    4.4   SURVIVOR COMPENSATION TRUST LIABILITY FOR SURVIVOR CLAIMS. ..........................34

    4.5   APPOINTMENT OF SURVIVOR COMPENSATION TRUSTEE. ..............................................34

    4.6   RIGHTS AND RESPONSIBILITIES OF SURVIVOR COMPENSATION TRUSTEE. ......................35

    4.7   SURVIVOR COMPENSATION TRUST'S PURSUIT OF DEBTOR AND CO-INSURED
          ENTITIES. ..............................................................................................35

    4.8   SURVIVOR COMPENSATION TRUST'S RIGHTS WITH RESPECT TO SURVIVOR CLAIMS. .....35

    4.9   INVESTMENT POWERS; PERMITTED CASH EXPENDITURES. ............................................36

    4.10  REGISTRY OF BENEFICIAL INTERESTS. ..........................................................36

    4.11  NON-TRANSFERABILITY OF INTERESTS IN SURVIVOR COMPENSATION TRUST...............36

    4.12  SURVIVOR COMPENSATION TRUST TAX MATTERS. ......................................................36

    4.13  IMMUNITY; LIABILITY; INDEMNIFICATION.....................................................37

4.14    SURVIVOR COMPENSATION TRUST LIABILITY. ..................................................39

4.15    TERMINATION OF SURVIVOR COMPENSATION TRUST. ......................................39

ARTICLE 5 . INSURANCE TRUST. ......................................................................................39

5.1    ESTABLISHMENT OF INSURANCE TRUST. ......................................................39

5.2    FUNDING OF INSURANCE TRUST. ..................................................................39

5.3    VESTING OF INSURANCE TRUST ASSETS IN INSURANCE TRUST. ....................39

5.4    RETENTION OF INSURANCE CLAIMS BY DEBTOR AND CO-INSURED ENTITIES. ................40

5.5    INSURANCE TRUST'S ASSUMPTION OF RISK. ................................................41

5.6    INSURANCE TRUST LIABILITY FOR SURVIVOR CLAIMS. ................................41

5.7    APPOINTMENT OF THE INSURANCE TRUSTEE. ..............................................41

5.8    RIGHTS AND RESPONSIBILITIES OF THE INSURANCE TRUSTEE. ....................41

5.9    INSURANCE TRUST'S PURSUIT OF INSURANCE CLAIMS. ................................42

5.10    INSURANCE PROVISIONS. ............................................................................43

5.11    INVESTMENT POWERS; PERMITTED CASH EXPENDITURES. ............................46

5.12    REGISTRY OF BENEFICIAL INTERESTS. ........................................................46

5.13    NON-TRANSFERABILITY OF INTERESTS. ......................................................46

5.14    INSURANCE TRUST TAX MATTERS. ..............................................................47

5.15    IMMUNITY; LIABILITY; INDEMNIFICATION. ................................................47

5.16    INSURANCE TRUST LIABILITY. ....................................................................48

5.17    TERMINATION OF INSURANCE TRUST. ..........................................................48

ARTICLE 6 . SURVIVOR CLAIMS. ....................................................................................48

6.1    TRUST LIABILITY FOR SURVIVOR CLAIMS. ................................................48

6.2    ASSESSMENT OF SURVIVOR CLAIMS. ..........................................................49

6.3    SURVIVOR CLAIMANT ELECTION OF CLAIM TREATMENT. ............................49

6.4    TRUSTS' RIGHTS WITH RESPECT TO SURVIVOR CLAIMS. ............................50

6.5    LEGAL EFFECT OF ESTIMATION OF SURVIVOR CLAIMS AND SURVIVOR COMPENSATION TRUST DISTRIBUTIONS. ......................................................51

6.6    RELEASE AND DISCHARGE OF SURVIVOR CLAIMS. ......................................52

6.7    SURVIVOR COMPENSATION TRUST DISTRIBUTIONS TO SURVIVOR CLAIMANTS. ................52

6.8    DISMISSAL OF PENDING LITIGATION REGARDING SURVIVOR CLAIMS. ..........52

6.9    SURVIVOR CLAIM WITHDRAWAL. ................................................................52

6.10    MEDICARE PROCEDURES. ............................................................................53

ARTICLE 7 . SETTLING INSURERS. ..................................................................................54

2

7.1 INSURANCE SETTLEMENT AGREEMENTS. ....................................................54

7.2 SALE FREE AND CLEAR OF INTERESTS OF SETTLING INSURER POLICIES. ........................54

7.3 RESOLUTION OF CLAIMS INVOLVING SETTLING INSURERS. ..............................................54

7.4 SETTLING INSURER PAYMENTS. ....................................................55

7.5 FURTHER ASSURANCES; NON-MATERIAL MODIFICATIONS. ..............................................55

7.6 WAIVER/CONSENT. ....................................................55

7.7 TIMING. ....................................................55

ARTICLE 8 . NON-SETTLING INSURERS. ....................................................56

8.1 PRESERVATION OF RIGHTS AND OBLIGATIONS. ..............................................56

8.2 POST-EFFECTIVE DATE INSURANCE OBLIGATIONS. ..............................................56

8.3 TRUST POWERS WITH RESPECT TO SURVIVOR CLAIMS AND NON-SETTLING INSURERS. ....................................................57

ARTICLE 9 . MEANS FOR IMPLEMENTATION OF THE PLAN. ..............................................57

9.1 GENERAL SETTLEMENT OF CLAIMS AND INTERESTS. ..............................................57

9.2 PLAN IMPLEMENTATION. ....................................................57

9.3 SOURCES OF CONSIDERATION FOR DISTRIBUTIONS. ..............................................58

9.4 PAYMENTS EFFECTIVE UPON TENDER. ..............................................58

9.5 NON-MONETARY PLAN PROVISIONS. ..............................................58

9.6 CORPORATE ACTION. ....................................................58

9.7 AGREEMENTS, INSTRUMENTS, AND DOCUMENTS. ..............................................58

9.8 CONTINUATION OF INSURANCE POLICIES. ..............................................59

9.9 EFFECTUATING DOCUMENTS; FURTHER TRANSACTIONS; TRANSFER TAX EXEMPTIONS. ....................................................59

9.10 ADDITIONAL DEBTORS CLAIMS. ....................................................59

9.11 CONTINUED CORPORATE EXISTENCE AND VESTING OF ASSETS. ....................................................62

ARTICLE 10 . DISTRIBUTIONS AND CLAIMS ADMINISTRATION FOR CLAIMS OTHER THAN SURVIVOR CLAIMS. ....................................................63

10.1 DISTRIBUTIONS. ....................................................63

10.2 METHOD OF PAYMENT. ....................................................63

10.3 RESERVATION OF RIGHTS TO OBJECT TO CLAIMS. ..............................................63

10.4 FILING OF OBJECTIONS. ....................................................63

10.5 PROCEDURES FOR TREATING AND RESOLVING DISPUTED CLAIMS. ..............................................64

10.6 RECORD DATE. ....................................................64

10.7    DE MINIMIS DISTRIBUTIONS. .................................................................................65

10.8    UNCLAIMED PAYMENTS. ........................................................................................65

10.9    TIME BAR TO CHECK PAYMENTS. ........................................................................65

10.10   COMPLIANCE WITH TAX REQUIREMENTS. ...........................................................65

10.11   SETOFFS AND RECOUPMENTS. ..............................................................................66

ARTICLE 11 . EXECUTORY CONTRACTS AND UNEXPIRED LEASES. ...........................66

11.1    ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES. .....66

11.2    CURE OF DEFAULTS. ..............................................................................................66

11.3    BAR DATES FOR REJECTION DAMAGE CLAIMS. ...................................................67

11.4    CONTRACTS AND LEASES ENTERED AFTER THE PETITION DATE. ..................................68

11.5    COMPENSATION AND BENEFITS PROGRAMS. .........................................................68

11.6    WORKERS' COMPENSATION PROGRAMS. ..............................................................68

11.7    MODIFICATIONS, AMENDMENTS, SUPPLEMENTS, RESTATEMENTS, OR OTHER
        AGREEMENTS. ........................................................................................................69

11.8    RESERVATION OF RIGHTS. .....................................................................................69

ARTICLE 12 . CONFIRMATION AND CONSUMMATION OF THE PLAN. .........................69

12.1    CONDITIONS PRECEDENT TO CONFIRMATION. .....................................................69

12.2    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE. ............................................70

12.3    WAIVER OF CONDITIONS PRECEDENT TO THE EFFECTIVE DATE. .........................71

12.4    EFFECT OF NON-OCCURRENCE OF CONDITIONS. ..................................................71

ARTICLE 13 . EFFECTS OF CONFIRMATION. .................................................................71

13.1    BINDING EFFECT. ..................................................................................................71

13.2    DISCHARGE. ..........................................................................................................71

13.3    CHANNELING INJUNCTION PREVENTING PROSECUTION OF CLAIMS AGAINST
        PROTECTED PARTIES AND SETTLING INSURERS. ..................................................72

13.4    SUPPLEMENTAL SETTLING INSURER INJUNCTION. ...............................................74

13.5    [RESERVED.] ..........................................................................................................75

13.6    GATEKEEPER INJUNCTION. ...................................................................................75

13.7    INJUNCTION AGAINST INTERFERENCE WITH PLAN. .............................................76

13.8    EXCULPATION OF EXCULPATED PARTIES. ............................................................76

13.9    LIMITATION OF LIABILITY FOR PAYMENTS TO SURVIVORS. .................................77

13.10   INJUNCTIONS IN FULL FORCE AND EFFECT. .........................................................77

13.11   SETTLEMENTS, INJUNCTIONS, AND RELEASES INTEGRAL TO PLAN. .....................77

4

| | | |
|---|---|---|
| 13.12 | TIMING. | 77 |
| 13.13 | TITLE TO AND VESTING OF ASSETS. | 77 |
| 13.14 | CANCELLATION OF INSTRUMENTS. | 78 |
| 13.15 | DISSOLUTION OF THE COMMITTEE. | 78 |
| ARTICLE 14 . | RETENTION OF JURISDICTION. | 78 |
| 14.1 | BY THE BANKRUPTCY COURT. | 78 |
| 14.2 | BY THE DISTRICT COURT. | 80 |
| 14.3 | ACTIONS TO COLLECT AMOUNTS OWED PURSUANT TO THE PLAN. | 80 |
| 14.4 | CASE CLOSURE. | 80 |
| ARTICLE 15 . | MISCELLANEOUS PROVISIONS. | 81 |
| 15.1 | MODIFICATION OF THE PLAN. | 81 |
| 15.2 | UNITED STATES TRUSTEE REPORTS. | 81 |
| 15.3 | SEVERABILITY OF PLAN PROVISIONS. | 81 |
| 15.4 | REGULATED RATES. | 81 |
| 15.5 | SUCCESSORS AND ASSIGNS. | 81 |
| 15.6 | GOVERNING LAW. | 81 |
| 15.7 | CONSTRUCTION. | 82 |
| 15.8 | REVOCATION. | 82 |
| 15.9 | CONTROLLING DOCUMENTS. | 82 |
| 15.10 | NOTICES. | 82 |
| 15.11 | FILING OF ADDITIONAL DOCUMENTS. | 83 |
| 15.12 | DIRECTION TO A PARTY. | 84 |
| 15.13 | CERTAIN ACTIONS. | 84 |
| 15.14 | PLAN AS SETTLEMENT COMMUNICATION. | 84 |
| 15.15 | OTHER RIGHTS. | 84 |
| ARTICLE 16 . | BANKRUPTCY RULE 9019 REQUEST. | 85 |
| ARTICLE 17 . | CONFIRMATION REQUEST. | 85 |
| ARTICLE 18 . | RECOMMENDATION AND CONCLUSION. | 85 |

## INTRODUCTION

The Roman Catholic Archbishop of Baltimore, a corporation sole and the debtor and debtor in possession in the above-captioned chapter 11 case, and certain parishes, schools, and other entities located within the Archdiocese and contemplated as additional debtors collectively propose this chapter 11 plan of reorganization (the "*Plan*") pursuant to the provisions of the Bankruptcy Code.

All creditors are encouraged to consult the Disclosure Statement (as defined below) before voting to accept or reject this Plan. Among other information, the Disclosure Statement contains discussions regarding the Debtor, Additional Debtors, events prior to this chapter 11 case, and a summary and analysis of this Plan. No solicitation materials other than the Disclosure Statement have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

## Article 1.
## Definitions.

**1.1     Defined Terms.** For purposes of this Plan, except as expressly provided otherwise, all capitalized terms not otherwise defined in this Plan have the meanings ascribed to them below.

**1.1.1**   "*Abuse*" means any actual, alleged, or threatened sexual conduct, misconduct, behavior, misbehavior, abuse, or molestation, including: (a) any conduct that would constitute sexual abuse as defined in Md. Code Ann., Crim. Law § 3-602, Md. Code Ann., Fam. Law § 5-701, or Md. Code Ann., Cts. & Jud. Proc. § 5-117 (or a predecessor statute to any of the foregoing); (b) any sexual offense as laid out in Md. Code Ann., Crim. Law § 3-307 (or a predecessor statute thereto); (c) any other sexually related act, contact, or interaction, indecent assault and/or battery, rape, indecent or lascivious behavior, undue familiarity, harassment, pedophilia, hebephilia, or ephebophilia; (d) any act that causes or allegedly causes sexually-related physical, psychological, or emotional harm, or any other contacts or interactions of a sexual nature, including without limitation those stemming from the use of photography, video, or digital media, including any such contacts or interactions between a child and an adult, or a non-consenting adult and another adult; (e) contacts or interactions of sexual nature; (f) assault, battery, corporal punishment, or any other act of physical, psychological, mental, or emotional abuse, humiliation, or intimidation; or (g) any other conduct constituting a sexual offense, incest, or use of a child in a sexual performance (as such terms are defined in the Maryland Criminal Law Code). Abuse may occur whether or not this activity involves explicit force, whether or not it involves genital or other physical contact, and whether or not there is physical, psychological, or emotional harm to the person.

**1.1.2**   "*Action*" means any lawsuit, proceeding, or other action in a court, or any arbitration.

**1.1.3**   "*Additional Debtors*" means the Chapter 11 Additional Debtors and the Subchapter V Additional Debtors.

**1.1.4**   "*Additional Debtor Chapter 11 Cases*" means the chapter 11 cases filed or to be filed by the Additional Debtors on an Additional Debtor Petition Date, in accordance with the Prepack Procedures. Each Additional Debtor Chapter 11 Cases will be jointly administered with the Debtor's Chapter 11 Case, in accordance with the Prepack Procedures.

**1.1.5**   "*Additional Debtors Claims*" means all Claims against the Additional Debtors.

**1.1.6**   "*Additional Debtors Claims Filing Deadline*" means the last day for any Claimant to file a Claim in the Additional Debtor Chapter 11 Cases, which shall be [_] in accordance with the Prepack Procedures and this Plan.

**1.1.7**   "*Additional Debtors General Claims*" means all Additional Debtors Claims except Additional Debtors Survivor Claims.

**1.1.8**   "*Additional Debtor Petition Date*" means the date on which an Additional Debtor files a petition for relief under chapter 11 or subchapter V of chapter 11 of the Bankruptcy Code, in accordance with the Prepack Procedures.

**1.1.9**   "*Additional Reorganized Debtors*" means, collectively, the Additional Debtors from and after the Effective Date. Unless otherwise expressly stated or the context otherwise requires, references to "the Additional Debtor(s)" and "the Reorganized Debtor(s)" throughout various provisions of the Plan are an effort to anticipate whether an event may occur before or after the Effective Date. In this regard, and generally for purposes of the Plan, any written agreement made by an Additional Reorganized Debtor as part of the Plan before the Effective Date (unless provided otherwise) will survive the Confirmation Date and the Effective Date and will bind the Additional Reorganized Debtor and every other party to such agreement (including the provisions of the Plan as confirmed).

**1.1.10**   "*Additional Debtors Survivor Claims*" means all Survivor Claims that are asserted or could have been asserted against one or more Additional Debtors.

**1.1.11**   "*Administrative Expense*" means an unpaid administrative expense of the kind described in sections 503(b) and 507(a)(2) of the Bankruptcy Code against the Debtor or an Additional Debtor, including (a) the actual, necessary costs and expenses of preserving the Estate of the Debtor or any Additional Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case, (b) compensation and reimbursement of expenses of professionals to the extent allowable under sections 327, 328, 330(a), 331, 503(b), and/or 1103 of the Bankruptcy Code and actually Allowed pursuant to a Final Order of the Bankruptcy Court, and (c) all Statutory Fees and Court Costs; <u>provided</u>, <u>however</u>, for the avoidance of doubt, no Survivor Claim(s) shall be treated as an Administrative Expense.

**1.1.12**   "*Administrative Expense Claims Bar Date*" means the deadline for filing requests for payment of Administrative Expense Claims, which: (a) with respect to General

2

Administrative Expense Claims shall be thirty (30) days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be forty-five (45) days after the Effective Date.

**1.1.13** "*Affiliate*" means any past, present, or future Person that controls, is controlled by, or is under control with, another Person, including parents, subsidiaries, merged Persons, holding Persons, and acquired Persons, or any predecessor to such Person.

**1.1.14** "*Agent*" means any past and present employee, officer, director, managing agent or other agent, shareholder, principal, teacher, staff, member, board member, administrator, priest, deacon, brother, sister, nun, or other member of a religious order, clergy, Person bound by a monastic vow, volunteer, attorney, claim handling administrator, or any representatives of a Person in any of the foregoing capacities.

**1.1.15** "*Allowed*" means: (a) a Claim that has been scheduled by the Debtor or any Additional Debtor in its Schedules as other than disputed, contingent, or unliquidated and as to which the Debtor, an Additional Debtor, or any other party in interest has not filed an objection; (b) a Claim that either is not a Disputed Claim or has been allowed by a Final Order; (c) a Claim that is determined by the Debtor or an Additional Debtor, as applicable, to be allowed; (d) a Claim that is allowed in a stipulation or settlement executed prior to or after the Effective Date; (e) a Claim relating to a rejected executory contract or unexpired lease that is not a Disputed Claim or has been allowed by a Final Order, only if a Proof of Claim has been timely filed; (f) a Claim as to which a Proof of Claim has been timely filed and as to which the Debtor, an Additional Debtor, or any party in interest has not filed an objection; or (g) a Survivor Claim assessed by the Survivor Claims Reviewer in accordance with the Survivor Compensation Trust Distribution Plan and determined to be entitled to compensation from the Survivor Compensation Trust; and with respect to all Claims, only after reduction for applicable setoff and similar rights of the Debtor, Reorganized Debtor, an Additional Debtor, or an Additional Reorganized Debtor, as applicable.

**1.1.16** "*Archbishop*" means Most Reverend William E. Lori, the Archbishop of Baltimore, and his predecessors and successors.

**1.1.17** "*Archdiocese*" means the territorial area decreed by the Roman Catholic Church as the "Archdiocese of Baltimore" encompassing Baltimore City and 10 counties in Maryland.

**1.1.18** "*Assumed Agreement*" means a contract, lease, or other agreement listed on **Exhibit C** to this Plan.

**1.1.19** "*Avoidance Action*" means any claim, cause of action, or right to property of the Debtor, an Additional Debtor, or any Estate under sections 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code.

**1.1.20** "*Bankruptcy Code*" means title 11 of the United States Code.

3

**1.1.21** "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Maryland or such other court of competent jurisdiction that properly exercises jurisdiction over part or all of the Chapter 11 Case, to the extent that the reference of part or all of the Chapter 11 Case is withdrawn.

**1.1.22** "*Bankruptcy Rule*" means a Federal Rule of Bankruptcy Procedure.

**1.1.23** "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" in the United States.

**1.1.24** "*Cash*" means legal tender of the United States of America and equivalents of same.

**1.1.25** "*Catholic Family Contribution*" means the amount calculated as the sum of: (a) the liquidation value of the Debtor; plus (b) for each Subchapter V Additional Debtor with at least one (1) Allowed Survivor Claim asserted against it, the lesser of (i) the uninsured value of all Allowed Survivor Claims against such Subchapter V Additional Debtor and (ii) the projected disposable income of such Subchapter V Additional Debtor to be received in the three (3) year period beginning on the Effective Date of this Plan; plus (c) for each Chapter 11 Additional Debtor with at least one (1) Allowed Survivor Claim asserted against it, the lesser of (i) the uninsured value of all Allowed Survivor Claims asserted against such Chapter 11 Additional Debtor and (ii) the liquidation value of such Chapter 11 Additional Debtor. As of the filing of this Plan, the Catholic Family Contribution is estimated to be [_] ($[_]), which is calculated as the sum of: (a) Forty-Three Million, Nine Hundred Thirty-Nine Thousand Five Hundred Two Dollars ($43,939,502) (i.e., the liquidation value of the Debtor); plus (b) [_] ($[_]) (i.e., the amounts paid by the Subchapter V Additional Debtors); plus (c) [_] ($[_]) (i.e., the amounts paid by Chapter 11 Additional Debtors).

**1.1.26** "*Causes of Action*" means, except as provided otherwise in this Plan, the Confirmation Order, or any document, instrument, release, or other agreement entered into in connection with this Plan, all Claims, including all Claims of the Debtor, Additional Debtors, the Estates, or the Trusts as successor(s) to the Debtor, Additional Debtors, or Estates including in any Avoidance Action, whether or not pending on the Effective Date or instituted by the Reorganized Debtor or any Reorganized Additional Debtor after the Effective Date; provided, however, that any affirmative defense or cross-claim asserted with respect to a Claim shall not be deemed a Cause of Action to the extent such affirmative defense or cross-claim seeks to disallow, reduce, or serve as an offset against such Claim.

**1.1.27** "*Channeled Claim*" means any of the following Claims that have been or could have been asserted against any of the Protected Parties or any Settling Insurer(s) to the extent that such Claim directly or indirectly relates to the same injury, damages, facts, or circumstances giving rise to a Survivor Claim, including each and every: (a) Survivor Claim; (b) Indirect Claim; (c) Contribution Claim; (d) Non-Settling Insurer Contribution Claim; (e) Medicare Claim; and (f) Extra-Contractual Claim relating to the Claims listed in subsections (a)–(e) of this sentence; provided, however, that "*Channeled Claims*" shall not include a Claim against an individual who perpetrated an act of Abuse.

4

**1.1.28** "*Channeling Injunction*" means the injunction incorporated in this Plan by Section 13.3 of this Plan.

**1.1.29** "*Chapter 11 Additional Debtors*" means the Parishes, Schools, and Other Archdiocesan-Related Entities that elect to file a chapter 11 case in accordance with the Prepack Procedures but do not qualify as a debtor under Subchapter V of Chapter 11 of the Bankruptcy Code, as such entities are listed on **Exhibit A** to this Plan.

**1.1.30** "*Chapter 11 Case*" means the Debtor's bankruptcy case pending in the Bankruptcy Court under chapter 11 of the Bankruptcy Code and which is captioned at the top of this Plan.

**1.1.31** "*Claim*" (a) has the meaning ascribed in section 101(5) of the Bankruptcy Code and (b) also means any past, present or (to the extent it arises before the Effective Date) future claim, Action, Cause of Action, suit, debt, dues, sum of money, account, reckonings, bond, bill, specialty, assertion of right, complaint, cross-complaint, counterclaim, liability, obligation, right, request, allegation, mediation, litigation, direct action, administrative proceeding, lien, encumbrance, indemnity, equitable indemnity, right of subrogation, equitable subrogation, defense, injunctive relief, controversy, contribution, exoneration, covenant, agreement, promise, act, omission, trespass, variance, damages, judgment, compensation, set-off, reimbursement, restitution, cost, expense, loss, exposure, execution, attorneys' fee, obligation, order, affirmative defense, writ, demand, inquiry, request, directive, obligation, Proof of Claim in a bankruptcy proceeding or submitted to a trust established pursuant to the Bankruptcy Code, government claim or Action, settlement, or any liability whatsoever, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, matured or unmatured, liquidated or unliquidated, direct, indirect, derivative or otherwise consequential, whether in law, equity, admiralty or otherwise, whether compromised, settled, or reduced to a consent judgment, that may exist no or hereinafter for property damages, compensatory damages (such as loss of consortium, wrongful death, survivorship, proximate, consequential, general and special damages), punitive damages, bodily injury, personal injury, public and private claims, or any other right to relief whether sounding in tort, contract, extra-contractual or bad faith, statute, strict liability, equity, nuisance, trespass, statutory violation, wrongful entry or eviction or other eviction or other invasion of the right of private occupancy, and any amounts paid in respect of any judgment, order, decree, settlement, contract, or otherwise.

**1.1.32** "*Claims and Noticing Agent*" means Epiq Corporate Restructuring, LLC the claims and noticing agent in this Chapter 11 Case pursuant to that *Order (I) Authorizing and Approving the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent and (II) Granting Related Relief* (Dkt. No. 47).

**1.1.33** "*Claim Filing Deadline*" means May 31, 2024.

**1.1.34** "*Claimant*" means any Person who alleges, alleged, or could have alleged any Claim.

5

**1.1.35**  "*Class*" means a category of holders of Claims as set forth in Article 3 in this Plan and under section 1122(a) of the Bankruptcy Code.

**1.1.36**  "*Class 1 Claim*" means a School Bond Claim.

**1.1.37**  "*Class 1 Claimant*" means a holder of a Class 1 Claim.

**1.1.38**  "*Class 2 Claim*" means a PNC Secured Claim.

**1.1.39**  "*Class 2 Claimant*" means a holder of a Class 2 Claim.

**1.1.40**  "*Class 3 Claim*" means an Other Priority Claim.

**1.1.41**  "*Class 3 Claimant*" means a holder of a Class 3 Claim.

**1.1.42**  "*Class 4 Claim*" means an Other Secured Claim.

**1.1.43**  "*Class 4 Claimant*" means a holder of a Class 4 Claim.

**1.1.44**  "*Class 5 Claim*" means a General Unsecured Claim.

**1.1.45**  "*Class 5 Claimant*" means a holder of a Class 5 Claim.

**1.1.46**  "*Class 6 Claim*" means a Survivor Claim.

**1.1.47**  "*Class 6 Claimant*" means a holder of a Class 6 Claim.

**1.1.48**  "*Class 7 Claim*" means a Non-Survivor Litigation Claim.

**1.1.49**  "*Class 7 Claimant*" means a holder of a Class 7 Claim.

**1.1.50**  "*Class 8 Claim*" means a Co-Insured Entity Claim.

**1.1.51**  "*Class 8 Claimant*" means a holder of a Class 8 Claim.

**1.1.52**  "*Class 9 Claim*" means an Additional Debtors General Claim.

**1.1.53**  "*Class 9 Claimant*" means a holder of a Class 9 Claim.

**1.1.54**  "*CMS*" means the Centers for Medicare and Medicaid Services of the United States Department of Health and Human Services or any other Agent or Successor Person charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA for reimbursement of Medicare Claims.

**1.1.55**  "*Co-Insured Entities*" means the Debtor, Reorganized Debtor, Additional Debtors, Additional Reorganized Debtors, Related Non-Debtor Entities, and their respective Agents covered by Insurance Policies.

6

**1.1.56** "*Co-Insured Entity Claims*" means, collectively, Related Non-Debtor Entity Claims, Other Archdiocesan-Related Entity Claims, Parish Claims, and School Claims.

**1.1.57** "*Committee*" means the Official Committee of Unsecured Creditors appointed in this Chapter 11 Case, as such committee may be constituted from time to time.

**1.1.58** "*Compensation and Benefits Programs*" means all employment agreements and policies and all employment, compensation, and benefit plans, policies, savings plans, retirement plans, deferred compensation plans, supplemental executive retirement plans, healthcare plans, disability plans, severance benefit agreements, plans, or policies, incentive plans, life and accidental death and dismemberment insurance plans, and programs of the Debtor and Additional Debtors, and all amendments and modifications to the foregoing, applicable to the Debtor's employees, former employees, retirees, and non-employee directors, and the employees, retirees, and non-employee directors of the Additional Debtors.

**1.1.59** "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order.

**1.1.60** "*Confirmation Order*" means the order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which becomes a Final Order.

**1.1.61** "*Contribution Claim*" means all Claims by an Insurer against any Settling Insurer, which are most commonly expressed in terms of contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, or reimbursement, or any other indirect or derivative recovery, for the payment of money where such Insurer contends that it has paid more than its equitable or proportionate share of a Survivor Claim against a Protected Party to the extent that such Claim, directly or indirectly, relates to the same injury, damages, facts, or circumstances giving rise to a Survivor Claim (including an Unknown Survivor Claim); provided, however, "*Contribution Claims*" do not include any Claim for contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, or reimbursement, or any other indirect or derivative recovery, that a Settling Insurer might have arising from the payment of any amounts under an Insurance Settlement Agreement, nor does it include any Claims by any Insurer, whether a Settling Insurer or otherwise, under reinsurance, retrocession or similar agreements.

**1.1.62** "*Coverage Claim*" means any Claim against an Insurer under or relating to an Insurance Policy, or the rights and obligations thereunder, or the breach thereof, including Claims seeking insurance coverage.

**1.1.63** "*Creditor*" means a Person entitled to Distributions under the Plan whether or not their Claim has been disallowed.

**1.1.64** "*Cure Amount*" means a Claim based upon the Debtor's or an Additional Debtor's, as applicable, monetary defaults under an executory contract or unexpired lease

that is to be paid in connection with the assumption of such contract or lease under section 365 of the Bankruptcy Code in the amount set forth on **Exhibit C** to this Plan.

**1.1.65** "*Debtor*" means the Roman Catholic Archbishop of Baltimore, a corporation sole, the debtor and debtor in possession in the Chapter 11 Case.

**1.1.66** "*Disallowed Claim*" means a Claim, or any portion thereof, that: (a) has been disallowed by a Final Order; (b) has been listed in the Debtor's or an Additional Debtor's Schedules at zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law, except any Unknown Survivor Claim; (c) has not been listed in the Debtor's or an Additional Debtor's Schedules and as to which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law, except any Unknown Survivor Claim; or (d) is a Survivor Claim assessed by the Survivor Claims Reviewer in accordance with the Survivor Compensation Trust Distribution Plan and determined to not be entitled to a Trust Distribution.

**1.1.67** "*Discharge*" shall mean the complete extinguishment of the Debtor's and each Additional Debtor's liability in respect of any Claim or debt as and to the extent further described in Section 13.2 of this Plan.

**1.1.68** "*Discharge Injunction*" means the injunction set forth in Section 13.2.3 of this Plan.

**1.1.69** "*Disclosure Statement*" means the Disclosure Statement for this Plan, as the same may be further amended, supplemented, or otherwise modified from time to time.

**1.1.70** "*Disputed Claim*" means, with respect to a Claim against the Debtor, an Additional Debtor, property of the Debtor, or property of any Additional Debtor: (a) a Claim that was scheduled by the Debtor or an Additional Debtor in its Schedules as a disputed, contingent, or unliquidated claim and that has not been otherwise Allowed; (b) a Claim that is not an Allowed Claim because the Debtor has objected to allowance of the claim under sections 502(b) or 503 of the Bankruptcy Code and Bankruptcy Rule 3007; (c) any secured or unsecured portions of a secured Claim that is the subject of a motion for determination of the values of security under section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012; (d) any Claim held by a Creditor against which the Debtor has demanded the recovery of property pursuant to section 502(d) of the Bankruptcy Code, without regard to whether such Claim was previously an Allowed Claim. The processes for handling "*Disputed Claims*" do not apply to Survivor Claims, which shall be handled pursuant to and in accordance with Article 6 of this Plan.

**1.1.71** "*Distribution*" means any payment to the holder of a Claim pursuant to, in accordance with, or in connection with this Plan.

**1.1.72** "*Distribution Claim*" means a Survivor Claim that is not a Litigation Claim.

8

**1.1.73** "*Distribution Claimant*" means a Survivor Claimant who is not a Litigation Claimant.

**1.1.74** "*District Court*" means the United States District Court for the District of Maryland.

**1.1.75** "*Effective Date*" means the day on which the conditions of Section 12.2 of this Plan have been satisfied.

**1.1.76** "*Employee Priority Claim*" means a Claim held by an employee that is entitled to priority under section 507(a)(4) or 507(a)(5) of the Bankruptcy Code.

**1.1.77** "*Enjoined Party*" means all Persons who have held, hold or may hold Claims or Causes of Action that have been released or discharged or are subject to exculpation, the Channeling Injunction, the Discharge Injunction, or the Supplemental Settling Insurer Injunction pursuant to the Plan, the Confirmation Order, or the Insurance Settlement Approval Order.

**1.1.78** "*Estate*" means the estate created for the Debtor in this Chapter 11 Case and each Additional Debtor in each Additional Debtor's Chapter 11 Case under sections 301 and 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case or Additional Debtor's Chapter 11 Case, as applicable.

**1.1.79** "*Exculpated Parties*" means collectively the: (a) Protected Parties; (b) Estates; (c) Committee; (d) respective Agents of the Protected Parties and Estates in their capacities as such, including with respect to their service or participation in an outside board on which they serve at the request of the Debtor, Archbishop, or Additional Debtors, in their capacity as such; (e) Settling Insurers; and (f) professionals of a Person identified in the preceding clauses (a) through (e).

**1.1.80** "*Extra-Contractual Claim*" means any Claim against any Insurer seeking any type of relief in connection with the alleged obligations of the Insurers to the Protected Parties before the Effective Date other than coverage or benefits under the Insurance Policies, including Claims for compensatory, exemplary, or punitive damages or attorneys' fees, interests, costs, or any other type of relief, alleging with respect to (i) any Insurance Policy, (ii) any Claim allegedly or actually covered under an Insurance Policy, or (iii) the conduct of an Insurer with respect to (i) or (ii) any of the following: (a) bad faith; (b) failure to provide insurance coverage under any Insurance Policy; (c) failure or refusal to compromise and settle any Claim insured under any Insurance Policy; (d) failure to act in good faith; (e) violation of any covenant or duty of good faith and fair dealing; (f) violation of any state insurance codes, state surplus lines statutes or similar codes or statutes; (g) violation of any unfair claims practices act or similar statute, regulation, or code; (h) any type of misconduct; or (i) any other act or omission of any type for which the Claimant seeks relief other than coverage or benefits under an Insurance Policy. "*Extra-Contractual Claims*" include all Claims relating to the Insurers' (x) handling of any Coverage Claim under the Insurance Policies, (y) conduct relating to the negotiation of

9

Insurance Settlement Agreements and Plan, and (z) conduct relating to the settlement of any Coverage Claim.

**1.1.81** "*Fee Notice*" shall have the meaning ascribed to it in <u>Section 5.8.4(c)</u> of this Plan.

**1.1.82** "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

**1.1.83** "*Final Order*" means an order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) that has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; <u>provided</u>, <u>however</u>, that the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order to not be a Final Order.

**1.1.84** "*Gatekeeper Injunction*" means the injunction incorporated in this Plan by Section 13.6 of this Plan.

**1.1.85** "*General Administrative Expense Claim*" means an Administrative Expense Claim other than a Professional Fee Claim or a Claim for Statutory Fees and Court Costs.

**1.1.86** "*General Unsecured Claim*" means an unsecured Claim against the Debtor or an Additional Debtor but which is not an Administrative Expense Claim, Priority Tax Claim, Employee Priority Claim, Other Priority Claim, Survivor Claim, Indirect Claim, Contribution Claim, Non-Settling Insurer Contribution Claim, or Non-Survivor Litigation Claim.

**1.1.87** "*Impaired*" means "impaired" within the meaning of section 1124 of the Bankruptcy Code. "*Impair*" and "*Impairment*" shall have correlative meanings.

**1.1.88** "*Indirect Claim*" means any Claim asserted against a Protected Party or a Settling Insurer by any Person that is not an Insurer (an "*Indirect Claim Claimant*") for contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, reimbursement, or any other indirect or derivative recovery, on account of, or with respect to, any Protected Party's or Settling Insurer's actual or alleged liability for any Claim

against such Indirect Claim Claimant that relates to Abuse that took place in whole or in part prior to the Effective Date.

**1.1.89** "*Insurance Claim*" means all Coverage Claims and Extra-Contractual Claims.

**1.1.90** "*Insurance Policy*" means any known or unknown contract, binder, certificate, or policy of insurance or certificate of liability coverage that any Insurer issued, subscribed any interest in, or has underwritten any risk in, that were in effect on or before the Effective Date and were issued or allegedly issued to, for the benefit of, or otherwise actually, allegedly, or potentially insure the Debtor, any Additional Debtors, or a Related Non-Debtor Entity, or any of their respective predecessors in interest, successors, or assigns, with respect to any Survivor Claim.

**1.1.91** "*Insurance Settlement Agreement*" means a settlement agreement among the Debtor, other Protected Parties, and applicable Settling Insurer(s) that is listed on **Exhibit B** to this Plan or is subsequently entered into by the Debtor, other Protected Parties, and a Settling Insurer.

**1.1.92** "*Insurance Settlement Amount*" means the funds payable by a Settling Insurer pursuant to an Insurance Settlement Agreement.

**1.1.93** "*Insurance Settlement Approval Order*" means an order of the Bankruptcy Court in the Chapter 11 Case approving a motion to approve one or more Insurance Settlement Agreements and, among other things, authorizing the parties to each applicable Insurance Settlement Agreement to undertake the transactions contemplated therein, including the applicable Settling Insurers' buyback of the applicable Settling Insurer Policies and Extra-Contractual Claims free and clear of all liens, Claims, and Interests of all Persons to the extent provided in each Applicable Insurance Settlement Agreement pursuant to sections 363(b), (f), and (m) of the Bankruptcy Code and any other applicable provisions of the Bankruptcy Code.

**1.1.94** "*Insurance Trust*" means the trust created pursuant to Article 5 of this Plan for the purposes of assuming the Debtor's and each Additional Debtor's: (a) liability for Survivor Claims relating to Non-Settling Insurers and Non-Settling Insurer Policies; and (b) rights and obligations under Non-Settling Insurer Policies.

**1.1.95** "*Insurance Trust Agreement*" or "*Insurance Trust Documents*" means the trust agreement establishing the Insurance Trust, as may be amended, supplemented, or modified from time to time, together with such additional documents as may be executed in connection with the Insurance Trust Agreement.

**1.1.96** "*Insurance Trust Assets*" means all property of any kind to be transferred to the Insurance Trust pursuant to the terms of this Plan, the Confirmation Order, or any other Plan Documents.

11

**1.1.97**  "*Insurance Trustee*" means the Person appointed as trustee of the Insurance Trust in accordance with the terms of this Plan, the Confirmation Order, and Insurance Trust Agreement.

**1.1.98** "*Insurer*" means a Person (including all of its predecessors in interest, successors, and assigns) that has, or is alleged to have, issued, subscribed any interest in, assumed any liability for, or underwritten any risk in, an Insurance Policy, whether or not a regulated insurance company.

**1.1.99**  "*Interest*" means all Claims, including any "interests" as that term is used in section 363 of the Bankruptcy Code, and other rights or any nature, whether at law or in equity, including all interests or other rights under Maryland law or other applicable law.

**1.1.100**  "*Joint Tortfeasor*" means any Person alleged to be a joint tortfeasor with any Protected Party in connection with the Abuse relating to a Survivor Claim.

**1.1.101**  "*Known Survivor Claim*" means a Survivor Claim for which a Survivor Claimant filed a Proof of Claim on or before the Claim Filing Deadline.

**1.1.102**  "*Late-Filed Survivor Claim*" means a Survivor Claim for which a Survivor Claimant filed a Proof of Claim after the Claim Filing Deadline or Additional Debtors Claims Filing Deadline, as applicable, but before the Effective Date. For the avoidance of doubt, Late-Filed Survivor Claims do not include Untimely Survivor Claims.

**1.1.103**  "*Lien*" means any "lien" as defined in section 101(37) of the Bankruptcy Code.

**1.1.104**  "*Litigation Award*" means any judgment or verdict determining that a Protected Party is liable with respect to a Litigation Claim.

**1.1.105**  "*Litigation Claim*" means any Survivor Claim held by a Litigation Claimant to the extent the Survivor Compensation Trustee has (a) determined in good faith that such Survivor Claim is covered, in whole or in part, by one or more Non-Settling Insurer Policies and (b) authorized such Litigation Claimant to treat their Survivor Claim as a Litigation Claim in accordance with this Plan, the Survivor Compensation Trust Distribution Plan, and Survivor Compensation Trust Agreement.

**1.1.106**  "*Litigation Claimant*" means any Survivor Claimant who elects to be treated as a Litigation Claimant, to the extent the Survivor Compensation Trustee has: (a) determined in good faith that such Survivor Claimant holds a Survivor Claim that is covered, in whole or in part, by one or more Non-Settling Insurer Policies; and (b) authorized such Litigation Claimant to treat their Survivor Claim as a Litigation Claim in accordance with this Plan, the Survivor Compensation Trust Distribution Plan, and Survivor Compensation Trust Agreement.

**1.1.107**  "*Litigation Claimant Agreement*" means an agreement substantially in the form attached to this Plan as **Exhibit I** pursuant to which a Litigation

Claimant agrees and acknowledges that: (a) if authorized by the Survivor Compensation Trustee to pursue a Litigation Claim, such Litigation Claim may only be pursued for the purposes of (i) establishing whether the Debtor, any Additional Debtor, or any other Protected Party or Settling Insurer has any liability with respect to such Litigation Claim, (ii) determining the amount of any such liability, and (iii) permitting the Survivor Compensation Trust or Insurance Trust, as applicable, to pursue Insurance Claims against Non-Settling Insurers; (b) any Litigation Award obtained shall be solely satisfied in accordance with the Survivor Compensation Trust Distribution Plan, and Survivor Compensation Trust Agreement and may not be enforced or pursued against any Protected Party, Settling Insurer, or any assets of such Protected Party or Settling Insurer; (c) all Claims held by such Litigation Claimant shall be fully released and discharged upon the occurrence of the applicable Survivor Claim Discharge Date; and (d) each Protected Party and Settling Insurer is an intended third party beneficiary of each Litigation Claimant Agreement.

　　　　1.1.108　　　　"*Medicaid*" means the medical assistance provided under any state plan approved under title XIX of the Social Security Act.

　　　　1.1.109　　　　"*Medicare*" means the health insurance program for the aged and disabled under title XVIII of the Social Security Act.

　　　　1.1.110　　　　"*Medicare Beneficiary*" means an individual who is entitled to Medicare benefits or has been determined to be eligible for Medicare.

　　　　1.1.111　　　　"*Medicare Claims*" means any and all Claims against the Trusts, any Settling Insurer, or any other Protected Party, brought or asserted by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services or any other agent or successor Person charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA and pursuing Claims under MSPA, relating to any payments in respect of any Survivor Claims (including Claims for reimbursement of payments made to Survivor Claimants who recover or receive any distribution from the Trusts) and Claims relating to reporting obligations.

　　　　1.1.112　　　　"*MMSEA*" means section 111 of the "Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L. 110-173)," which imposes reporting obligations on those Persons with payment obligations under the MSPA.

　　　　1.1.113　　　　"*MSPA*" means 42 U.S.C. § 1395y *et seq*., or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection with same or amendments to same.

　　　　1.1.114　　　　"*Non-Replenishment Determination*" shall have the meaning ascribed to it in Section 5.8.4(d) of this Plan.

　　　　1.1.115　　　　"*Non-Settling Insurer(s)*" means any Insurer that is not a Settling Insurer.

13

**1.1.116**        "*Non-Settling Insurer Contribution Claim*" means any Claim held by a Non-Settling Insurer pursuant to which such Non-Settling Insurer alleged it has paid more than its equitable or proportionate share of a Survivor Claim, whether express in terms of contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, allocation, reallocation, reimbursement, or any other direct, indirect, or derivative recovery. "*Non-Settling Insurer Contribution Claim*" does not include any Claims by a Non-Settling Insurer under reinsurance, retrocession, or similar agreements.

**1.1.117**        "*Non-Settling Insurer Policy(ies)*" means, collectively: (a) all Insurance Policies that are <u>not</u> subject of an Insurance Settlement Agreement; and (b) all known and unknown Insurance Policies to the extent a Non-Settling Insurer issued, subscribed any interest in, assumed any liability for, or has underwritten any risk in, such Insurance Policy; <u>provided</u>, <u>however</u>, that if a Non-Settling Insurer Policy was not subscribed on behalf of the Debtor or an Additional Debtor but provides coverage to the Debtor, an Additional Debtor, or a Related Non-Debtor Entity, then it is a Non-Settling Insurer Policy to the extent it insures the Debtor, an Additional Debtor, or a Related Non-Debtor Entity, but not to the extent it insures any other Person.

**1.1.118**        "*Non-Survivor Litigation Claim*" means a Claim other than a Survivor Claim on account of which a Proof of Claim was timely filed and for which a civil action had been commenced on or before the Petition Date or Additional Debtor's Petition Date, as applicable.

**1.1.119**        "*Other Archdiocesan-Related Entities*" means the entities listed on **Exhibit A** that are not Schools or Parishes.

**1.1.120**        "*Other Archdiocesan-Related Entity Claim*" means every Claim held by an Other Archdiocesan-Related Entity against the Debtor as of the Petition Date or against an Additional Debtor as of the applicable Additional Debtor's Petition Date, as applicable, including Claims based upon (a) reimbursement for overpayments to the self-insurance fund maintained by the Debtor, (b) reimbursement for overpayments to the group insurance fund maintained by the Debtor, (c) indemnification and contribution relating to Survivor Claims, (d) the Debtor's use of donations received as part of its annual appeal for donations, and (e) the Debtor's use of funds held in trust.

**1.1.121**        "*Other Priority Claim*" means any Claim against the Debtor or an Additional Debtor that is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than Administrative Expense Claims, Professional Fee Claims, Statutory Fees and Court Costs, and Priority Tax Claims.

**1.1.122**        "*Other Secured Claim*" means any Secured Claim against the Debtor or any Additional Debtor other than the School Bond Claims and PNC Secured Claims.

**1.1.123**        "*Outbound Contribution Claim*" means any Claims by a Protected Party against a third party other than another Protected Party or Settling Insurer, which Claims are most commonly expressed in terms of contribution, indemnity, equitable

14

indemnity, subrogation, or equitable subrogation, or reimbursement, or any other indirect or derivative recovery, for the payment of money where such Protected Party contends that it has paid more than its equitable or proportionate share of a Survivor Claim against such Protected Party to the extent that such Claim, directly or indirectly, relates to the same injury, damages, facts, or circumstances giving rise to a Survivor Claim (including an Unknown Survivor Claim).

1.1.124　　"*Parish*" means all past and present parishes within the Archdiocese, including those identified on **Exhibit A** to this Plan.

1.1.125　　"*Parish Claim*" means every Claim held by a Parish against the Debtor as of the Petition Date or against an Additional Debtor as of the Additional Debtor's Petition Date, as applicable, including Claims based upon (a) reimbursement for overpayments to the self-insurance fund maintained by the Debtor, (b) reimbursement for overpayments to the group insurance fund maintained by the Debtor, (c) indemnification and contribution relating to Survivor Claims, (d) the Debtor's use of donations received as part of its annual appeal for donations, and (e) the Debtor's use of funds held in trust.

1.1.126　　"*Person*" means any individual or entity, including any corporation, limited liability company, partnership, general partnership, limited partnership, limited liability partnership, limited liability limited partnership, proprietorship, association, joint stock company, joint venture, estate, trust, trustee, personal executor or personal representative, unincorporated association, or other entity, including any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency or instrumentality thereof and any other individual or entity within the definition of (a) "person" in section 101(41) of the Bankruptcy Code or (b) "entity" in section 101(15) of the Bankruptcy Code.

1.1.127　　"*Petition Date*" means September 29, 2023.

1.1.128　　"*Plan*" means this Chapter 11 Plan for the Roman Catholic Archbishop of Baltimore and the Additional Debtors.

1.1.129　　"*Plan Documents*" shall have the meaning ascribed to it in Section 1.4 of this Plan.

1.1.130　　"*Plan Proponents*" shall mean, collectively, the Debtor and the Additional Debtors.

1.1.131　　"*PNC Secured Claims*" means those Claims by PNC Bank, National Association pursuant to the PNC Loan Agreement, PNC Notes, Pledge Agreement, and Swap Agreements, as defined and more fully described in the *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and Granting Adequate Protection, (II) Scheduling a Final Hearing on the Use of Cash Collateral, and (III) Granting Related Relief* (Dkt. No. 9) filed in the Chapter 11 Case.

15

**1.1.132** "*Post-Effective Date Costs*" means all fees and expenses reasonably incurred by the Debtor, Additional Debtors, Reorganized Debtor, Additional Reorganized Debtors, or any Co-Insured Entity in connection with performing any of their respective duties or obligations under the Plan with respect to any Survivor Claims or Insurance Claims, including, without limitation, in connection with: (i) any attempt by the Trusts to enforce or recover Insurance Claims against Non-Settling Insurers; (ii) responding to and defending against any legal action taken by any Survivor Claimants; or (iii) upon request by the Insurance Trustee, Survivor Compensation Trustee, or the Survivor Claims Reviewer, assisting with the administration of the Survivor Compensation Trust Distribution Plan or any Insurance Claims. For the avoidance of doubt, such costs include any costs and expenses incurred by the Debtor, Additional Debtors, Reorganized Debtor, Additional Reorganized Debtors, or any Co-Insured Entity in connection with such efforts by any Trust, or in connection with any depositions, discovery, or other litigation matters relating in any way to Litigation Claimants or Insurance Claims, including, without limitation, any attorney's fees, expert fees, applicable self-insured retention obligations, if any, arising out of any Survivor Claim or under any Non-Settling Insurer Policy, and other costs and expenses.

**1.1.133** "*Post-Effective Date Costs Reserve*" shall have the meaning set forth in Section 5.8.4(a) of this Plan.

**1.1.134** "*Post-Effective Date Insurance Obligations*" means those preconditions and contractual requirements, if any, that: (a) the Non-Settling Insurer Policies and applicable law impose as a condition to providing coverage under such Non-Settling Insurer Policies, in each case to the extent required to be satisfied or performed following the Effective Date; and (b) the Insurance Trust may be required to satisfy under Non-Settling Insurer Policies and applicable law as a predicate to the pursuit of an Insurance Claim.

**1.1.135** "*Prepack Procedures*" means the process and procedures with respect to the petition filings for the Additional Debtors, as approved by the Bankruptcy Court.

**1.1.136** "*Previously Asserted Claims*" means any Claim (including any Survivor Claim) for which the Claimant (including a Survivor Claimant) has, on or before May 15, 2026, filed a Proof of Claim in the Chapter 11 Case, against the Debtor or any Additional Debtor, regardless of whether such Proof of Claim was timely filed, and regardless of whether such Proof of Claim is or was a Disallowed Claim.

**1.1.137** "*Priority Tax Claim*" means a Claim that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

**1.1.138** "*Professional*" means any Person retained by the Debtor, Additional Debtor, or a statutory committee, if any, pursuant to a Final Order entered under sections 327, 328, 363, or 1103 of the Bankruptcy Code.

**1.1.139** "*Professional Fee Claim*" means any Claim of a Professional for allowance and award by the Bankruptcy Court of compensation for services rendered and reimbursement of costs or expenses incurred in the Chapter 11 Case or any Additional Debtor Chapter 11 Case for the period from the Petition Date or Additional Debtor Petition Date, as applicable, to and including the Effective Date under sections 328, 330, 331, or 503(b) of the Bankruptcy Code.

**1.1.140** "*Proof of Claim*" means a proof of Claim filed in the Chapter 11 Case or an Additional Debtor Chapter 11 Case pursuant to section 501 of the Bankruptcy Code or pursuant to any order of the Bankruptcy Court, together with any supporting documents.

**1.1.141** "*Protected Party*" or "*Protected Parties*" means any or all of: (a) the Debtor and Reorganized Debtor; (b) the Additional Debtors and Additional Reorganized Debtors; (c) Related Non-Debtor Entities; (d) each of the foregoing Persons' respective predecessors in interest, successors, and assigns; and (e) solely to the extent of and in their capacity as such, and all of the foregoing Persons' respective past and present Agents. Nothing in the foregoing is intended to suggest that such Persons are Agents of the Debtor or subject to its control. For the avoidance of doubt, the following are not Protected Parties: (y) any individual who perpetrated an act of Abuse that forms the basis of a Survivor Claim; or (z) any religious order, archdiocese or diocese, other than the Debtor.

**1.1.142** "*Record Date*" means the last date on which a transfer of a Claim will be recognized. The Record Date is the Confirmation Date.

**1.1.143** "*Reinstatement*" means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim or Interest entitles the holder of such Claim or Interest or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date or Additional Debtor's Petition Date, as applicable, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim or Interest as such maturity existed before such default; (iii) compensating the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or applicable law; (iv) if such Claim or Interest arises from any failure to perform a nonmonetary obligation, compensating the holder of such Claim or Interest (other than the Debtor, an Additional Debtor, or an "insider" of the Debtor or an Additional Debtor within the meaning of section 110(31) of the Bankruptcy Code) for any actual pecuniary loss incurred by such holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim or Interest entitles the holder thereof. "*Reinstate*" and "*Reinstated*" shall have correlative meanings.

**1.1.144** "*Related Non-Debtor Entities*" means the Other Archdiocesan-Related Entities listed on **Exhibit A** that are not Additional Debtors.

**1.1.145**    "*Related Non-Debtor Entity Claim*" means every Claim held by a Related Non-Debtor Entity against the Debtor as of the Petition Date or against an Additional Debtor as of the applicable Additional Debtor's Petition Date, as applicable, including Claims based upon (a) reimbursement for overpayments to the self-insurance fund maintained by the Debtor, (b) reimbursement for overpayments to the group insurance fund maintained by the Debtor, (c) indemnification and contribution relating to Survivor Claims, (d) the Debtor's use of donations received as part of its annual appeal for donations, and (e) the Debtor's use of funds held in trust.

**1.1.146**    "*Released Claims*" means all Claims released by the Protected Parties pursuant to the Insurance Settlement Agreements.

**1.1.147**    "*Reorganized Debtor*" means the Debtor from and after the Effective Date. Unless otherwise expressly stated or the context otherwise requires, references to "the Debtor" and "the Reorganized Debtor" throughout various provisions of the Plan are an effort to anticipate whether an event may occur before or after the Effective Date. In this regard, and generally for purposes of the Plan, any written agreement made by the Debtor as part of the Plan before the Effective Date (unless provided otherwise) will survive the Confirmation Date and the Effective Date and will bind the Reorganized Debtor and every other party to such agreement (including the provisions of the Plan as confirmed).

**1.1.148**    "*Retained Claims*" means the Debtor's Claims and each Additional Debtor's Claims, including all Causes of Action, that are not otherwise settled pursuant to this Plan or agreements approved by the Bankruptcy Court on or prior to the Effective Date, any rights or Claims of the Debtor and Additional Debtors for indemnification, contribution, or fault allocation, and other Claims of the Debtor and Additional Debtors against any Person on account of any Claims that are or may be asserted against the Debtor or Additional Debtors. Retained Claims do not include any Claims transferred or assigned to the Trusts and expressly exclude any Claims against any Person released by the Debtor or Additional Debtors under this Plan or any Insurance Settlement Agreement(s).

**1.1.149**    "*School*" means all past and present Catholic schools within and affiliated with the Archdiocese, which are identified on **Exhibit A** to this Plan.

**1.1.150**    "*School Bond Claims*" means those Claims pursuant to that certain Indenture of Trust dated as of June 1, 2007, relating to those $24,165,000 Maryland Health and Higher Educational Facilities Authority Revenue Bonds, Archdiocese of Baltimore Schools Issue, Series 2007, as more fully described in the *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and Granting Adequate Protection, (II) Scheduling a Final Hearing on the Use of Cash Collateral, and (III) Granting Related Relief* (Dkt. No. 9) filed in the Chapter 11 Case.

**1.1.151**    "*School Claim*" means every Claim held by a School against the Debtor as of the Petition Date or against an Additional Debtor as of the applicable Additional Debtor's Petition Date, as applicable, including Claims based upon (a) reimbursement for overpayments to the self-insurance fund maintained by the Debtor,

18

(b) reimbursement for overpayments to the group insurance fund maintained by the Debtor, (c) indemnification and contribution relating to Survivor Claims, (d) the Debtor's use of donations received as part of its annual appeal for donations, and (e) the Debtor's use of funds held in trust; provided, however, "***School Claim***" does not include School Bond Claims.

        **1.1.152**        "***Secured***" means, with respect to any Claim, a Claim to the extent: (a) secured by a Lien on property of the Estate (i) as set forth in this Plan, (ii) as agreed by the holder of such Claim and the Debtor or Additional Debtor, as applicable, or (iii) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (b) subject to any setoff right of the holder of such Claim under section 553 of the Bankruptcy Code; but, with respect to both of the foregoing clauses (a) and (b), only to the extent of the value of the interest of such holder in the applicable Estate's interest in the property securing such Claim or the amount subject to setoff, as applicable.

        **1.1.153**        "***Settling Insurer(s)***" means (a) the Person(s) listed on **Exhibit B** to this Plan in their capacity as an Insurer and whose Insurance Settlement Agreement has been approved by an Insurance Settlement Approval Order that becomes a Final Order and (b) any other Insurer that enters into a settlement, sale, or other transaction with the Debtor Additional Debtors, the Estates, or any successor thereto, that is approved pursuant to the Confirmation Order or separate order of the Bankruptcy Court, including any settlement, compromise, buyback or similar agreement concerning an Insurance Policy; provided, however, an Insurer shall not be a Settling Insurer to the extent such Insurer's Insurance Settlement Agreement is terminated in accordance with its terms; provided, further, that any Person listed on **Exhibit B** to this Plan shall, immediately upon filing this Plan, be a Settling Insurer with respect to all consent and consultation rights provided under this Plan unless such Person's Insurance Settlement Agreement is terminated in accordance with its terms. Solely in connection with insurance under any Settling Insurer Policies, Settling Insurer also includes the applicable Settling Insurer's past, present, and future parents, subsidiaries, affiliates, divisions, reinsurers, and retrocessionaires, including Persons released pursuant to the applicable Insurance Settlement Agreement; each of the foregoing Person's respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions, and acquired companies, including the Persons released pursuant to the applicable Insurance Settlement Agreement; each of the foregoing Person's respective past, present, and future directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and Claims handling administrators; and each of the foregoing Person's respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through, or in concert with them, except to the extent, if any, such Person's actual or alleged rights, duties, obligations, or liabilities arise out of or relate to their state as, or conduct, acts, or omissions on behalf of a Person that is not listed as a Settling Insurer on **Exhibit B** to this Plan.

        **1.1.154**        "***Settling Insurer Policy(ies)***" means, collectively: (a) all Insurance Policies that are subject of an Insurance Settlement Agreement; and (b) all known and unknown Insurance Policies to the extent a Settling Insurer has or is alleged to have issued, subscribed any interest in, assumed any liability for, or has underwritten any risk in, such

19

Insurance Policy; provided, however, that if a Settling Insurer Policy that is not listed in any exhibit or attachment of any Insurance Settlement Agreement was not subscribed on behalf of the Debtor but provides coverage to the Debtor, an Additional Debtor or a Related Non-Debtor Entity, then it is a Settling Insurer Policy to the extent it insures the Debtor, an Additional Debtor or a Related Non-Debtor Entity, but not to the extent it insures any other Person.

**1.1.155** "*Sexual Abuse Claim Supplement*" means the Sexual Abuse Claim Supplement, substantially in the form attached as **Exhibit 1** to the *Order (I) Establishing Deadlines for Filing Proofs of Claim; (II) Approving Sexual Abuse Claim Supplement; (III) Approving Form and Manner of Notice; and (IV) Approving Confidentiality Procedures* (Dkt. No. 316).

**1.1.156** "*Statutory Fees and Court Costs*" means the court costs and fees payable by the Debtor and Additional Debtors under 28 U.S.C. § 1930 and United States Trustee fees.

**1.1.157** "*Subchapter V Additional Debtors*" means the Parishes, Schools, and Other Archdiocesan-Related Entities that elect to file a Subchapter V Petition in accordance the Prepack Procedures, as such entities are listed on **Exhibit A** to this Plan.

**1.1.158** "*Supplemental Settling Insurer Injunction*" means the injunction set forth in Section 13.4 of this Plan, as incorporated from each Insurance Settlement Agreement and Insurance Settlement Approval Order.

**1.1.159** "*Survivor Claim*" means any Claim, whether Allowed or not, for which any Protected Party is or may be liable, relating to, in whole or in part, directly or indirectly, Abuse that took place in whole or in part prior to the Effective Date. For the avoidance of doubt, Survivor Claim includes any Known Survivor Claim, Unknown Survivor Claim, Late-Filed Survivor Claim, Untimely Survivor Claim, and Additional Debtors Survivor Claim regardless of whether such Survivor Claim is barred by any applicable statute of limitations or statute of repose, whether before or after the Effective Date, Petition Date or Additional Debtor's Petition Date, as applicable; provided, however, Survivor Claim does not include Contribution Claims, Non-Settling Insurer Contribution Claims, Indirect Claims, or Medicare Claims.

**1.1.160** "*Survivor Claim Discharge Date*" means the date on which the Discharge becomes effective with respect to a Survivor Claim, as set forth Section 13.2 of this Plan.

**1.1.161** "*Survivor Claimant*" means the holder of a Survivor Claim.

**1.1.162** "*Survivor Claimant Release*" means the release attached to this Plan as **Exhibit H**.

20

**1.1.163**      "*Survivor Claims Reviewer*" means the Person, including the designee of such Person, who will assess Survivor Claims under the Survivor Compensation Trust Distribution Plan.

**1.1.164**      "*Survivor Compensation Trust*" means the trust created for the benefit of Survivor Claimants, as more specifically set forth in Article 4 of this Plan, the Confirmation Order, and Survivor Compensation Trust Agreement.

**1.1.165**      "*Survivor Compensation Trust Agreement*" or "*Survivor Compensation Trust Documents*" means the trust agreement establishing the Survivor Compensation Trust, as may be amended, supplemented, or modified from time to time, together with such additional documents as may be executed in connection with the Survivor Compensation Trust Agreement.

**1.1.166**      "*Survivor Compensation Trust Assets*" means all property of any kind to be transferred to the Survivor Compensation Trust pursuant to the terms of this Plan, the Confirmation Order, or any other Plan Documents.

**1.1.167**      "*Survivor Compensation Trust Distribution*" means a distribution by the Survivor Compensation Trust pursuant to the Survivor Compensation Trust Distribution Plan, this Plan, and any other Plan Documents.

**1.1.168**      "*Survivor Compensation Trust Distribution Plan*" means the guidelines and protocols for making distributions to Survivor Claimants, which is attached to this Plan as **Exhibit G**.

**1.1.169**      "*Survivor Compensation Trustee*" means the Person appointed as trustee of the Survivor Compensation Trust in accordance with the terms of this Plan, the Confirmation Order, and Survivor Compensation Trust Agreement.

**1.1.170**      "*Trust Distribution*" means a Distribution by either of the Trusts pursuant to and in accordance with the terms of this Plan, the Survivor Compensation Trust Agreement, Insurance Trust Agreement, or Confirmation Order.

**1.1.171**      "*Trusts*" shall mean, together, the Insurance Trust and Survivor Compensation Trust.

**1.1.172**      "*Unclassified Claims*" means Administrative Expense Claims, Professional Fee Claims, Statutory Fees and Court Costs, and Priority Tax Claims.

**1.1.173**      "*Unimpaired*" means any Claim or Interest that is not Impaired, including any Claim or Interest that is Reinstated.

**1.1.174**      "*United States Trustee*" means the Office of the United States Trustee for Region 4, which includes the District of Maryland.

**1.1.175**      "*Unknown Survivor Claim*" means any Survivor Claim: (a) relating to, in whole or in part, directly or indirectly, Abuse that took place in whole or in part prior

21

to the Effective Date; (b) on account of which no Proof of Claim was filed or deemed filed in the Chapter 11 Case, or otherwise Allowed by the Court prior to the Effective Date; and (c) is held by an individual who was under a disability or other condition recognized by Maryland law that would toll the statute of limitations on such Survivor Claim at all times from the Petition Date or Additional Debtor's Petition Date, as applicable, through the Effective Date. For the avoidance of doubt, Unknown Survivor Claims do not include Untimely Survivor Claims.

**1.1.176**   "*Unknown Survivor Claims Reserve*" shall have the meaning set forth in Section 4.2.6 of this Plan.

**1.1.177**   "*Untimely Survivor Claim*" means any Survivor Claim: (a) relating, in whole or in part, directly or indirectly, to Abuse that took place in whole or in part prior to the Effective Date; (b) on account of which no Proof of Claim was filed or deemed filed in the Chapter 11 Case, or otherwise Allowed by the Court prior to the Effective Date; and (c) is held by an individual who was **not** under a disability or other condition recognized by Maryland law that would toll the statute of limitation on such Survivor Claim at all times from the Petition Date or Additional Debtor's Petition Date, as applicable, through the Effective Date.

**1.1.178**   "*Workers' Compensation Program*" means the written contracts, agreements, agreements of indemnity, self-insured bonds, policies, programs, and plans for workers' compensation and workers' compensation insurance issued to or entered into at any time by the Debtor.

**1.2**   **Interpretation.** For purposes of this Plan:

(a)   any term that is not defined in this Plan but is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules, as applicable;

(b)   the term "including" or "includes" is intended to be illustrative and not exhaustive and shall be construed as "including, but not limited to" or "includes, but is not limited to";

(c)   the phrase "relating to" or "relates to" means "with regard to, with respect to, by reason of, on account of, based on, arising out of, relating to, or in any way connected with";

(d)   whenever the context requires, terms shall include the plural as well as the singular number, and the masculine gender shall include the feminine and the feminine gender shall include the masculine;

(e)   the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply;

22

(f)  unless the context should otherwise require, all references to documents to be filed shall refer to filing with the Bankruptcy Court in accordance with the Bankruptcy Code and Bankruptcy Rules;

(g)  any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(h)  any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, supplemented, or otherwise modified from time to time;

(i)  unless otherwise specified, all references in the Plan to "Articles," "Sections," "Schedules," and "Exhibits" are references to Articles, Sections, Schedules, and Exhibits of or to this Plan;

(j)  the words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan;

(k)  captions and headings to Articles and Sections are inserted for ease of reference only and shall not be considered a part of the Plan or otherwise affect the interpretation of the Plan; and

(l)  this Plan supersedes all prior drafts of this Plan and all prior negotiations, agreements, and understandings with respect to this Plan, evidence of which shall not affect the interpretation of any provision in this Plan.

**1.3**  **Time Periods.** In computing any period of time for purposes of this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. Enlargement of any period of time for purposes of this Plan shall be governed by the provisions of Bankruptcy Rule 9006(b).

**1.4**  **Plan Exhibits.** All Exhibits to this Plan and any other supplemental documents filed by the Debtor (collectively with the Plan, the "***Plan Documents***") are incorporated by reference and made part of this Plan as if set forth fully at length in this Plan. The Exhibits to this Plan include the following:

- Exhibit A — Parishes, Schools, and Other Archdiocesan-Related Entities
- Exhibit B — Settling Insurers
- Exhibit C — Assumed Agreements
- Exhibit D — Outbound Contribution Claims
- Exhibit E — Insurance Trust Agreement
- Exhibit F — Survivor Compensation Trust Agreement
- Exhibit G — Survivor Compensation Trust Distribution Plan
- Exhibit H — Survivor Claimant Release
- Exhibit I — Litigation Claimant Agreement

23

▪ Exhibit J— Child Protection Policies and Procedures

**Article 2.**
**Administrative Expense and Priority Claims.**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims, Statutory Fees and Court Costs, and Priority Tax Claims have not been classified and are excluded from the classification of Claims set forth in Article 3 of this Plan. Allowed Unclassified Claims will be treated as follows:

**2.1    Administrative Expense Claims.**

**2.1.1    Administrative Expense Claims Bar Date.**

Except as provided for otherwise in this Plan, and subject to section 503(b)(1)(D) of the Bankruptcy Code, holders of General Administrative Expense Claims not previously Allowed by a Final Order must file and serve on the Debtor or Additional Debtor, as applicable, request for the payment of such General Administrative Expense Claims in accordance with the procedures set forth in the Confirmation Order on or before the Administrative Expense Claims Bar Date, or such General Administrative Expense Claims shall be automatically considered Disallowed Claims and shall be forever barred from assertion and unenforceable against the Debtor, Additional Debtors, Reorganized Debtor, Reorganized Additional Debtors, Estates, or property of the foregoing, without the need for any objection by the Reorganized Debtor or any Additional Reorganized Debtor or further notice to, or action, order, or approval of, the Bankruptcy Court, and any such General Administrative Expense Claim shall be deemed fully satisfied, released, and discharged.

As further described below in this Plan, holders of Administrative Expense Claims based on liabilities incurred by the Debtor or an Additional Debtor in the ordinary course of its business shall not be required to file or serve any request for payment of such Administrative Expense Claims. Such Administrative Expense Claims shall be satisfied pursuant to Section 2.1.3 of this Plan.

**2.1.2    Administrative Expense Claims Against the Debtor and Additional Debtors.**

Except to the extent a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment with respect to such Allowed Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim shall receive on account of and in full and complete settlement, release, and discharge of, and in exchange for, such Allowed Administrative Expense Claim, payment of Cash in an amount equal to such Allowed Administrative Expense Claim on or as soon as reasonably practicable after the later of: (a) the Effective Date; (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; (c) such other date(s) as such holder and the Debtor, Additional Debtor, Reorganized Debtor, or Additional Reorganized Debtor, as applicable, shall have agreed; or (d) such other date ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims that arise in the ordinary course of the

24

Debtor's operations during the Chapter 11 Case or any Additional Debtor Chapter 11 Case may be paid by the Debtor, Additional Debtors, Reorganized Debtor, or Additional Reorganized Debtors, as applicable, in the ordinary course of business and in accordance with the terms and conditions of the particular agreements governing such obligations, course of dealing, course of operations, or customary practice.

### 2.1.3   Ordinary Course Liabilities of the Debtor and Additional Debtors.

Allowed Administrative Expense Claims based upon liabilities incurred by the Debtor or any Additional Debtor in the ordinary course of its business shall be satisfied by the Reorganized Debtor or applicable Additional Reorganized Debtor pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Expense Claims, without any further action by the holders of such Administrative Expense Claims or further approval by the Bankruptcy Court.

### 2.2   Professional Fee Claims Against the Debtor or Additional Debtors.

All Professionals or other Persons requesting the final allowance and payment of compensation or reimbursement of expenses pursuant to sections 328, 330, 331, or 503(b) of the Bankruptcy Code for services rendered during the period from the Petition Date to and including the Effective Date shall file and serve final applications for allowance and payment of Professional Fee Claims on counsel to the Debtor and the United States Trustee no later than the first Business Day that is forty-five (45) days after the Effective Date. Objections to any Professional Fee Claim must be filed and served on the Reorganized Debtor and the applicable Professional within twenty-one (21) calendar days after the filing of the final fee application that relates to the Professional Fee Claim (unless otherwise agreed by the Debtor or Reorganized Debtor, as applicable, and the Professional requesting allowance and payment of a Professional Fee Claim).

Allowed Professional Fee Claims shall be paid in full in Cash and in such amounts as are Allowed by the Bankruptcy Court on or as soon as reasonably practicable after the later of: (a) the date upon which an order relating to any such Allowed Professional Fee Claim is entered; and (b) such other date(s) as the holder of the Allowed Professional Fee Claim and the Debtor or Reorganized Debtor, as applicable, shall have agreed.

The Reorganized Debtor is authorized to pay compensation for services rendered or reimbursement of expenses incurred by its Professionals after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

### 2.3   Statutory Fees and Court Costs of the Debtor and Additional Debtors.

Statutory Fees and Court Costs will be paid in full in Cash by the Reorganized Debtor and Additional Reorganized Debtors on the Effective Date or as soon as reasonably practicable thereafter or as required under the Office of the United States Trustee's quarterly payment guidelines. After the Effective Date, the Reorganized Debtor and Additional Reorganized Debtors will continue to pay quarterly fees to the Office of the United States Trustee and file quarterly reports with the Office of the United States Trustee until the Chapter 11 Case is closed, dismissed, or converted. In the event the Survivor Compensation Trustee or Insurance Trustee opposes the

closure of the Chapter 11 Case, the applicable Trust will be responsible for the payment of all Statutory Fees and Court Costs from the date of the filing of any such opposition through the closure of the Chapter 11 Case. In the event the Chapter 11 Case is reopened, the Survivor Compensation Trust shall be responsible for the payment of Statutory Fees and Court Costs. If either Trust is responsible to pay Statutory Fees and Court Costs but fails to do so, the Reorganized Debtor or any Additional Reorganized Debtor may pay the applicable Statutory Fees and Court Costs and seek reimbursement from the applicable Trust.

### 2.4 Priority Tax Claims Against the Debtor and Additional Debtors.

Except to the extent a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive on account of and in full and complete settlement, release, and discharge of, and in exchange for, such Allowed Priority Tax Claim Cash in an amount equal to such Allowed Priority Tax Claim on or as soon as reasonably practicable after, the later of: (a) the Effective Date; (b) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course; provided, however, that the Debtor, Additional Debtors, Reorganized Debtor, and Additional Reorganized Debtors reserve the right to prepay all or a portion of any such amounts at any time under this option without penalty or premium.

Notwithstanding the foregoing, the holder of an Allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to, or in connection with, their Allowed Priority Tax Claim. Any such Claim or demand for any such penalty shall be subject to treatment in Class 5 (General Unsecured Claims), if not subordinated to Class 5 Claims pursuant to an order of the Bankruptcy Court. The holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtor, any Additional Debtor, the Reorganized Debtor, any Additional Reorganized Debtor, or their respective property.

### 2.5 Employee Priority Claims Against the Debtor and Additional Debtors.

The holder of an Allowed Employee Priority Claim will receive, in full satisfaction of such Allowed Employee Priority Claim; (a) payment in full of the unpaid amount of such Allowed Employee Priority Claim in cash as soon as practicable after the later of (i) the Effective Date and (ii) the date such Allowed Employee Priority Claim becomes Allowed; or (b) such other treatment as agreed in writing by the holder of such Allowed Employee Priority Claim or ordered by the Bankruptcy Court.

### Article 3.
### Classification and Treatment of Claims and Interests.

### 3.1 Classifications of Claims and Interests.

#### 3.1.1 Classification in General.

A Claim or Interest is placed into a particular Class for all purposes, including voting, confirmation, and Distribution under this Plan and sections 1122 and 1123(a)(1) of the Bankruptcy

Code. A Claim or Interest is placed into a particular Class only to the extent that such Claim or Interest is Allowed in that Class (if applicable) and has not been satisfied, released, or otherwise settled prior to the Effective Date. If a Claim is acquired or transferred, the Claim will be placed in the Class where it would have been placed if it were owned by the original holder of such Claim. If a holder of a Claim has more than one Claim in the same Class, such Claims will be aggregated and treated as a single Claim. If a holder of a Claim has Claims in different classes, such Claims will be aggregated only within the same Class and not between Classes.

### 3.1.2   Summary of Classification.

The following table designates the Classes of Claims and Interests and specifies which of those Classes are (a) Impaired or Unimpaired by this Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) presumed to accept or deemed to reject this Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Unclassified Claims have not been classified.

| Class | Designation | Impaired/ Unimpaired | Entitled to Vote |
|---|---|---|---|
| 1 | School Bond Claims | Unimpaired | Deemed to Accept |
| 2 | PNC Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Other Priority Claims (Against the Debtor and Additional Debtors) | Unimpaired | Deemed to Accept |
| 4 | Other Secured Claims (Against the Debtor and Additional Debtors) | Unimpaired | Deemed to Accept |
| 5 | General Unsecured Claims (Against the Debtor) | Impaired | Yes |
| 6 | Survivor Claims (Against the Debtor and Additional Debtors) | Impaired | Yes |
| 7 | Non-Survivor Litigation Claims (Against the Debtor and Additional Debtors) | Impaired | Yes |
| 8 | Co-Insured Entity Claims | Impaired | Yes |
| 9 | Additional Debtors General Claims (Against Additional Debtors) | Unimpaired | Deemed to Accept |

27

**3.2      Treatment of Claims and Interests.**

**3.2.1    Class 1—School Bond Claims.**

(a)      Classification. Class 1 consists of the School Bond Claims.

(b)      Treatment. Except to the extent the holder(s) of the School Bond Claims agrees to less favorable treatment, on the Effective Date, the School Bond Claims shall be Reinstated and all loan documents and provisions relating to the School Bond Claims shall remain in full force and effect until all obligations of the Debtor have been indefeasibly paid in full.

(c)      Voting. The School Bond Claims are Unimpaired. As a result, each holder of a School Bond Claim is conclusively presumed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of School Bond Claims are not entitled to vote to accept or reject the Plan, and the votes of holders of School Bond Claims will not be solicited with respect to the School Bond Claims.

**3.2.2    Class 2—PNC Secured Claims.**

(a)      Classification. Class 2 consists of the PNC Secured Claims.

(b)      Treatment. Except to the extent the holder(s) of the PNC Secured Claims agrees to less favorable treatment, on the Effective Date, the PNC Secured Claims shall be Reinstated and all loan documents and provisions relating to the PNC Secured Claims shall remain in full force and effect until all obligations of the Debtor have been indefeasibly paid in full.

(c)      Voting. The PNC Secured Claims are Unimpaired. As a result, each holder of a PNC Secured Claim is conclusively presumed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of PNC Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of holders of PNC Secured Claims will not be solicited with respect to the PNC Secured Claims.

**3.2.3    Class 3—Other Priority Claims.**

(a)      Classification. Class 3 includes all Other Priority Claims.

(b)      Treatment. Except to the extent that a Class 3 Claimant agrees to less favorable treatment of its Class 3 Claim, in exchange for full and final satisfaction of its Class 3 Claim, at the sole option of the Reorganized Debtor or applicable Additional Reorganized Debtor, each Class 3 Claimant shall receive: (i) payment in Cash in an amount equal to such Allowed Class 3 Claim, payable on or as soon as reasonably practicable after the last to occur of (A) the Effective Date, (B) the date on which such Class 3 Claim becomes an Allowed Class 3 Claim, and (C) the date on which a Class 3 Claimant and the Debtor, Additional Debtor, Reorganized Debtor, or Additional Reorganized Debtor, as applicable, shall otherwise agree in writing; or (ii) satisfaction of its Allowed Class 3 Claim

28

in any other manner that renders the Allowed Class 3 Claim Unimpaired, including Reinstatement.

(c)     <u>Voting.</u> Other Priority Claims are Unimpaired. As a result, each holder of an Other Priority Claim is conclusively presumed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Priority Claims are not entitled to vote to accept or reject the Plan, and the votes of holders of Other Priority Claims will not be solicited with respect to Other Priority Claims.

### 3.2.4   Class 4—Other Secured Claims.

(a)     <u>Classification.</u> Class 4 includes all Other Secured Claims.

(b)     <u>Treatment.</u> Except to the extent a holder of an Other Secured Claim agrees to less favorable treatment, in exchange for full and final satisfaction of such Allowed Other Secured Claim, each holder of an Other Secured Claim will receive, at the sole option of the Debtor, Additional Debtor, Reorganized Debtor, or Additional Reorganized Debtor, as applicable: (a) Cash in an amount equal to the Allowed amount of such Other Secured Claim, including the payment of any interest required to be paid under section 506(b) of the Bankruptcy Code, payable on or as soon as reasonably practicable after the last to occur of (i) the Effective Date, (ii) the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, and (iii) the date on which the holder of such Other Secured Claim and the Debtor, Additional Debtor, Reorganized Debtor, or Additional Reorganized Debtor, as applicable, shall otherwise agree in writing; (b) satisfaction of such Other Secured Claim in any other manner that renders the Allowed Other Secured Claim Unimpaired, including Reinstatement; or (c) return of the applicable collateral on the Effective Date or as soon as reasonably practicable after the Effective Date.

(c)     <u>Voting.</u> Other Secured Claims are Unimpaired. As a result, each holder of an Other Secured Claim is conclusively presumed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of holders of Other Secured Claims will not be solicited with respect to Other Secured Claims.

### 3.2.5   Class 5—General Unsecured Claims.

(a)     <u>Classification.</u> Class 5 includes all General Unsecured Claims.

(b)     <u>Treatment.</u> Except to the extent a holder of a General Unsecured Claim agrees to less favorable treatment of their General Unsecured Claim, in exchange for full and final satisfaction of such Allowed General Unsecured Claim, each holder of a General Unsecured Claim shall receive payment in Cash in an amount equal to such Allowed General Unsecured Claim (excluding interest), which shall be payable on or as soon as reasonably practicable after the later to occur of: (i) the Effective Date; (ii) the date on which the applicable General Unsecured Claim becomes an Allowed General Unsecured Claim; and (iii) the date on which the holder of such General Unsecured Claim and the

Debtor, Additional Debtor, Reorganized Debtor, or Additional Reorganized Debtor, as applicable, shall otherwise agree in writing.

(c)　　Voting. General Unsecured Claims are Impaired. As a result, each holder of a General Unsecured Claim is entitled to vote to accept or reject this Plan.

### 3.2.6　Class 6—Survivor Claims.

(a)　　Classification. Class 6 includes all Survivor Claims.

(b)　　Treatment. This Plan creates a Survivor Compensation Trust and Insurance Trust to fund payments and pursue Insurance Claims relating to Survivor Claimants entitled to such payments under this Plan, the Survivor Compensation Trust Agreement, and Survivor Compensation Trust Distribution Plan. As of the Effective Date, the liability of Protected Parties and Settling Insurers for all Survivor Claims shall be: (i) assumed fully by the Insurance Trust and Survivor Compensation Trust, as applicable, without further act, deed, or court order; and (ii) pursuant to the Discharge Injunction, Channeling Injunction, and Supplemental Settling Insurer Injunction, satisfied solely from the Survivor Compensation Trust and Insurance Trust as set forth in this Plan and the Confirmation Order. No Survivor Claimant shall receive any payment on account of their Survivor Claim unless and until such Survivor Claimant has executed a Survivor Claimant Release attached as **Exhibit H** to this Plan.

(c)　　Voting. Survivor Claims are Impaired and, therefore, each holder of a Survivor Claim is entitled to vote to accept or reject this Plan.

### 3.2.7　Class 7—Non-Survivor Litigation Claims.

(a)　　Classification. Class 7 consists of Non-Survivor Litigation Claims.

(b)　　Treatment. Except to the extent a holder of a Non-Survivor Litigation Claim agrees to less favorable treatment, in exchange for full and final satisfaction of Allowed Non-Survivor Litigation Claims, the holder of each Non-Survivor Litigation Claim shall seek to collect upon such Non-Survivor Litigation Claim solely from applicable insurance proceeds, other than any policies or proceeds of a Settling Insurer. No holder of a Non-Survivor Litigation Claim shall: (i) seek to compel the Debtor, Additional Debtors, Reorganized Debtor, or Additional Reorganized Debtors to pay any deductible, retention, or any other amount for or on account of any insurance carrier, provider, broker, or policy; or (ii) obtain any distribution from the Debtor, Additional Debtors, Estates, Reorganized Debtor, or Additional Reorganized Debtors, in or arising out of any Non-Survivor Litigation Claim.

(c)　　Voting. Class 7 is Impaired, and each holder of a Non-Survivor Litigation Claim is entitled to vote to accept or reject this Plan.

### 3.2.8　Class 8—Co-Insured Entity Claims.

(a)　　Classification. Class 8 consists of Co-Insured Entity Claims.

(b)     <u>Treatment.</u> This Plan is intended to resolve all claims between the Debtor, on the one hand, and the other Co-Insured Entities, on the other hand. As a component of this Plan, and to maximize recovery for Survivor Claimants, the Co-Insured Entities have agreed to waive all rights to Distributions on account of their respective Claims, as applicable, and the Debtor has agreed to waive all Claims against any Co-Insured Entity. As a result, there will be no Distribution to the holders of Co-Insured Entity Claims.

(c)     <u>Voting.</u> Class 8 is Impaired, and each holder of a Co-Insured Entity Claim is entitled to vote to accept or reject this Plan.

### 3.2.9   Class 9—Additional Debtors General Claims.

(a)     <u>Classification.</u> Class 9 consists of Additional Debtors General Claims.

(b)     <u>Treatment.</u> Except to the extent that a Claimant holding an Allowed Additional Debtors General Claim agrees to less favorable treatment of such Additional Debtors General Claim, each Reorganized Additional Debtor will pay each Allowed Additional Debtors General Claim of such Reorganized Additional Debtor in accordance with the terms and conditions otherwise governing such Allowed Additional Debtors General Claim so that such Allowed Additional Debtors General Claim is rendered Unimpaired by the Plan and will pass through after the Effective Date for all purposes as if the applicable Additional Debtor Chapter 11 Case had never been filed.

(c)     <u>Voting.</u> Class 9 is Unimpaired. As a result, each holder of an Additional Debtors General Claim is conclusively presumed to have accepted this Plan, pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Additional Debtors General Claims are not entitled to vote to accept or reject this Plan, and the votes of holders of Additional Debtors General Claims will not be solicited with respect to Additional Debtors General Claims.

### 3.3     Elimination of Vacant Classes.

Any Class of Claims that, as of the commencement of the confirmation hearing, does not have at least one holder of a Claim that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class. For the avoidance of doubt, this <u>Section 3.3</u> of the Plan shall not apply to Known Survivor Claims or Unknown Survivor Claims.

### 3.4     Presumed Rejection by Voting Classes That Do Not Vote.

If a Class contains Claims eligible to vote on the Plan and no holder of a Claim in such Class eligible to vote on the Plan votes to accept or reject the Plan, the Plan shall be presumed rejected by the Class and the Debtor and Additional Debtors will seek confirmation of this Plan with respect to such Class pursuant to section 1129(b) or 1191(b), as applicable.

**3.5     Acceptance by Impaired Classes.**

An Impaired Class will have accepted this Plan if, not counting the vote of any Claimant designed under section 1126(e) of the Bankruptcy Code, the Claimants holding: (a) at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote in such Class have voted to accept this Plan; and (b) more than one-half (1/2) in number of the Allowed Claims that actually vote in such Class have voted to accept this Plan.

**3.6     Nonconsensual Confirmation of Plan.**

The Debtor and each Additional Debtor reserve and preserve the right to request confirmation of the Plan under sections 1129(b) and 1191(b) of the Bankruptcy Code, as applicable, with respect to any Impaired Class that has not accepted or is deemed to have rejected the Plan.

**3.7     No Effect Upon Creditors' Rights of Setoff or Recoupment.**

Nothing in this Plan shall expand or enhance a Creditor's right of setoff or recoupment, which shall be determined as of the Petition Date. Nothing in this Plan is intended, nor shall it be interpreted, to approve any Creditor's effectuation of a post-Petition Date setoff or recoupment without the consent of the Debtor or any applicable Additional Debtor, unless prior Bankruptcy Court approval has been obtained.

**Article 4.**
**Survivor Compensation Trust.**

**4.1     Establishment of Survivor Compensation Trust.**

On the Effective Date, or as soon as practicable after the Effective Date, the Survivor Compensation Trust shall be established in accordance with the Survivor Compensation Trust Documents for the exclusive benefit of Survivor Claimants. The Survivor Compensation Trust will assume all liability for and rights concerning all Insurance Settlement Agreements. The Survivor Compensation Trust will distribute all Survivor Compensation Trust Assets pursuant to and in accordance with the Survivor Compensation Trust Distribution Plan, the Survivor Compensation Trust Agreement, the Plan, and the Confirmation Order. The Survivor Compensation Trustee shall establish and maintain a reserve for expenses of the Survivor Compensation Trust, which shall be paid pursuant to the terms of the Survivor Compensation Trust Agreement.

**4.2     Funding of the Survivor Compensation Trust.**

The Survivor Compensation Trust will be funded from the sources and in the manner set forth in this Section 4.2 of the Plan. In addition to the contributions described in this Section 4.2, the Protected Parties will waive certain Claims against the Debtor, Additional Debtors, and Settling Insurers, as set forth more specifically in this Plan.

### 4.2.1    Transfers from the Debtor and Additional Debtors to the Survivor Compensation Trust.

The Debtor and the Additional Debtors will transfer or otherwise cause to be transferred to the Survivor Compensation Trust the Debtor's and the Additional Debtors' share of the Catholic Family Contribution within ten (10) Business Days of the Effective Date.

**THE DEBTOR'S AND EACH ADDITIONAL DEBTOR'S CONTRIBUTION TO THE SURVIVOR COMPENSATION TRUST IS BEING MADE NOTWITHSTANDING, AND WITHOUT WAIVING, APPLICABILITY OF CHARITABLE IMMUNITY UNDER MARYLAND LAW WITH RESPECT TO SURVIVOR CLAIMS.**

### 4.2.2    Transfers from Related Non-Debtor Entities.

The Related Non-Debtor Entities will transfer or otherwise cause to be transferred to the Survivor Compensation Trust $[_] within ten (10) Business Days of the Effective Date.

**EACH RELATED NON-DEBTOR ENTITY'S CONTRIBUTION TO THE SURVIVOR COMPENSATION TRUST IS BEING MADE NOTWITHSTANDING, AND WITHOUT WAIVING, APPLICABILITY OF CHARITABLE IMMUNITY UNDER MARYLAND LAW WITH RESPECT TO SURVIVOR CLAIMS.**

### 4.2.3    Settling Insurer Contributions.

All rights to receive payment under any Insurance Settlement Agreements shall be assigned to the Survivor Compensation Trust, and each Settling Insurer will pay its Insurance Settlement Amount to the Survivor Compensation Trust within the time set forth in the applicable Insurance Settlement Agreement. As of the date of this Plan, the total amount to be paid into the Survivor Compensation Trust pursuant to Insurance Settlement Agreements is One Hundred Twenty-Five Million Dollars ($125,000,000).

### 4.2.4    Transfers from Insurance Trust.

Upon the completion of all duties and obligations of the Insurance Trustee and Insurance Trust, any funds remaining in the Insurance Trust shall be distributed to the Survivor Compensation Trust for distribution in accordance with this Plan, the Survivor Compensation Trust Agreement, and the Survivor Compensation Trust Distribution Plan.

### 4.2.5    Outbound Contribution Claims.

On the Effective Date, all Outbound Contribution Claims are automatically and without further act or deed assigned to the Survivor Compensation Trust, including those Outbound Contribution Claims set forth on **Exhibit D** to this Plan.

### 4.2.6    Unknown Survivor Claims Reserve.

For a period of [_] months, the Survivor Compensation Trust shall be obligated to maintain in a segregated account for the benefit of Unknown Survivor Claimants an amount not less than

33

the lesser of: (a) the aggregate amount of all awards to Unknown Survivor Claimants finally determined in accordance with this Plan, the Survivor Compensation Trust Documents, and other Plan Documents; and (b) $[_] (such amount, the "***Unknown Survivor Claims Reserve***"). The Unknown Survivor Claims Reserve shall be administered as provided in the Survivor Compensation Trust Documents. The Unknown Survivor Claims Reserve amount set forth above is the maximum amount to be contributed by the Debtor, Additional Debtors, Reorganized Debtor, Additional Reorganized Debtors, or Survivor Compensation Trust for any Unknown Survivor Claims.

**4.3    Vesting of Survivor Compensation Trust Assets in Survivor Compensation Trust.**

On the Effective Date, all Survivor Compensation Trust Assets shall vest in the Survivor Compensation Trust, and the Co-Insured Entities shall be deemed for all purposes to have transferred all of their respective Interests in the Survivor Compensation Trust Assets to the Survivor Compensation Trust. On the Effective Date, or as soon as practicable after the Effective Date, the Co-Insured Entities shall take all actions reasonably necessary to transfer any Survivor Compensation Trust Assets to the Survivor Compensation Trust. Upon the transfer of control of the Survivor Compensation Trust Assets in accordance with this Section 4.3, the Co-Insured Entities shall have no further Interests in or with respect to the Survivor Compensation Trust Assets.

**4.4    Survivor Compensation Trust Liability for Survivor Claims.**

On the Effective Date, the Survivor Compensation Trust shall automatically and without further act or deed assume: (a) all liability, if any, of the Protected Parties and Settling Insurers with respect to Channeled Claims, to the extent such Channeled Claims do not relate to Non-Settling Insurer Policies; (b) responsibility for preserving, managing, and distributing Survivor Compensation Trust Assets pursuant to and in accordance with this Plan and the Survivor Compensation Trust Documents; and (c) the right to receive proceeds of Insurance Claims against Non-Settling Insurers after the payment of expenses of the Insurance Trust or otherwise from such proceeds in accordance with the Insurance Trust Agreement. Except as otherwise provided in this Plan, the Survivor Compensation Trust shall only assume the liabilities of the Protected Parties with respect to any particular Survivor Claims upon the occurrence of the Survivor Claim Discharge Date with respect to such Survivor Claims.

**4.5    Appointment of Survivor Compensation Trustee.**

The initial Survivor Compensation Trustee has been identified in **Exhibit F** to this Plan. The Survivor Compensation Trustee shall commence serving as the Survivor Compensation Trustee on the Effective Date; provided, however, that the Survivor Compensation Trustee shall be permitted to act in accordance with the terms of the Survivor Compensation Trust Agreement from such earlier date, as authorized by the Debtor and Additional Debtors, and shall be entitled to seek compensation in accordance with the terms of the Survivor Compensation Trust Agreement and this Plan.

**4.6** **Rights and Responsibilities of Survivor Compensation Trustee.**

The Survivor Compensation Trust shall be established for the purposes described in this Section 4.6 of the Plan. The Survivor Compensation Trust shall receive, and be deemed to be the sole recipient of, the transfer and assignment of the Survivor Compensation Trust Assets as set forth in this Article 4 of the Plan. The Survivor Compensation Trustee shall be responsible for the evaluation of Survivor Claims and making Survivor Compensation Trust Distributions to the Survivor Claimants, pursuant to and in accordance with this Plan, the Survivor Compensation Trust Agreement, and Survivor Compensation Trust Distribution Plan. All costs and expenses in executing the obligations of the Survivor Compensation Trust shall be paid by the Survivor Compensation Trust. All obligations of the Survivor Compensation Trust shall be undertaken with the aim of maximizing Survivor Compensation Trust Assets available to make Survivor Compensation Trust Distributions to Survivor Claimants and with no objective to continue or engage in the conduct of any trade or business. The proposed Survivor Compensation Trust Agreement and Survivor Compensation Trust Distribution Plan are attached to this Plan as **Exhibit F** and **Exhibit G**, respectively.

Upon the Effective Date, the Survivor Compensation Trustee: (a) may take any action required to enforce the Insurance Settlement Agreements; (b) may seek enforcement of the Plan, Confirmation Order, or any other Final Order entered by the Bankruptcy Court in the Chapter 11 Case or any Additional Debtor Chapter 11 Case that may affect the Survivor Compensation Trust's administration of Survivor Compensation Trust Assets or otherwise perform its duties pursuant to the Plan; (c) shall liquidate and convert to Cash the Survivor Compensation Trust Assets, make timely Survivor Compensation Trust Distributions, and not unduly prolong the duration of the Survivor Compensation Trust; (d) may request an expedited determination of taxes of the Survivor Compensation Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Survivor Compensation Trust for all taxable periods through the dissolution of the Survivor Compensation Trust; and (e) may retain professionals on behalf of the Survivor Compensation Trust, at the Survivor Compensation Trust's sole expense, as reasonably necessary and to carry out the obligations of the Survivor Compensation Trustee under this Plan, the Survivor Compensation Trust Agreement, and Survivor Compensation Trust Distribution Plan. The Confirmation Order shall state that, absent permission of the Bankruptcy Court, no Action shall be commenced in any forum other than the Bankruptcy Court against the Survivor Compensation Trustee in its official capacity relating to or otherwise arising out of the Survivor Compensation Trustee's duties, powers, acts, or omissions as Survivor Compensation Trustee.

**4.7** **Survivor Compensation Trust's Pursuit of Debtor and Co-Insured Entities.**

The Survivor Compensation Trust's pursuit of any Co-Insured Entities shall be limited to enforcing specific performance of Section 4.2.1 and Section 4.2.2 of this Plan.

**4.8** **Survivor Compensation Trust's Rights With Respect to Survivor Claims.**

The Survivor Compensation Trust retains the right to assert and liquidate Survivor Claims, including Litigation Claims, against the Insurance Trust to the extent such Survivor Claims relate to Insurance Claims against Non-Settling Insurers. To the extent a settlement is achieved with the Insurance Trust or a Non-Settling Insurer as to any Survivor Claims, such recovery shall be

distributed: (a) <u>first</u>, to the Insurance Trust in accordance with the terms of such settlement; (b) <u>second</u>, to the Survivor Compensation Trust pursuant to and in accordance with <u>Section 5.7</u> and <u>Section 6.4.2</u> of this Plan and the Insurance Trust Agreement; and (c) <u>third</u>, to Survivors and expenses of the Survivor Compensation Trust, pursuant to and in accordance with the Survivor Compensation Trust Agreement and Survivor Compensation Trust Distribution Plan.

**4.9     Investment Powers; Permitted Cash Expenditures.**

All funds held by the Survivor Compensation Trust shall be invested in Cash or short-term highly liquid investments that are readily convertible to known amounts of Cash as more particularly described in the Survivor Compensation Trust Agreement. The Survivor Compensation Trustee may expend such Cash in a manner consistent with the terms of the Survivor Compensation Trust Agreement.

**4.10     Registry of Beneficial Interests.**

To evidence the beneficial interest in the Survivor Compensation Trust of each holder of such an Interest, the Survivor Compensation Trustee shall maintain a registry of beneficiaries.

**4.11     Non-Transferability of Interests in Survivor Compensation Trust.**

Any transfer of an Interest in the Survivor Compensation Trust shall be ineffective until and unless the Survivor Compensation Trustee receives written notice of such transfer.

**4.12     Survivor Compensation Trust Tax Matters.**

The Survivor Compensation Trust is intended to qualify as a "Designated" or "Qualified Settlement Fund" pursuant to Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder. The Debtor and Additional Debtors are the "transferors" within the meaning of Treasury Regulation Section 1.468B-1(d)(1). The Survivor Compensation Trustee shall be classified as the "administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3). The Survivor Compensation Trust Documents, including the Survivor Compensation Trust Agreement, are incorporated in this <u>Section 4.12</u> of the Plan by reference. The Survivor Compensation Trust shall not be deemed to be the same legal entity as any Co-Insured Entity, but only the assignee of certain assets of the Co-Insured Entities and a representative of the Estates for delineated purposes within the meaning of section 1123(b)(3) of the Bankruptcy Code. The Survivor Compensation Trust is expected to be tax exempt. The Survivor Compensation Trustee shall file such income tax and other returns and documents as are required to comply with the applicable provisions of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1 et seq., as may be amended, and the regulations promulgated thereunder, 31 C.F.R. §§ 900 et seq., and Maryland law and the regulations promulgated thereunder, and shall pay from the Survivor Compensation Trust all taxes, assessments, and levies upon the Survivor Compensation Trust or Survivor Compensation Trust Assets, if any.

### 4.13   Immunity; Liability; Indemnification.

#### 4.13.1   No Liability for Reorganized Debtor, Additional Reorganized Debtors, Related Non-Debtor Entities, or Survivor Compensation Trustee.

Neither the Reorganized Debtor, any Additional Reorganized Debtor, any Related Non-Debtor Entity, their respective Agents, nor the Survivor Compensation Trustee or its Agents shall be liable for the acts or omissions of the Survivor Compensation Trustee or its Agents, except that the Survivor Compensation Trustee shall be liable for its specific acts or omissions resulting from such Survivor Compensation Trustee's willful misconduct, gross negligence, fraud, or breach of the fiduciary duty of loyalty. The Survivor Compensation Trustee may, in connection with the performance of its functions and in its sole and absolute discretion, consult with its Agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Agents. Notwithstanding such authority, the Survivor Compensation Trustee shall not be under any obligation to consult with its Agents, and its determination not to do so shall not result in the imposition of liability on the Survivor Compensation Trustee unless such determination is based on the Survivor Compensation Trustee's recklessness, gross negligence, willful misconduct, or fraud.

#### 4.13.2   No Recourse Against Survivor Compensation Trustee.

No recourse shall ever be had, directly or indirectly, against the Survivor Compensation Trustee personally, or against any Agent retained in accordance with the terms of the Survivor Compensation Trust Agreement or the Plan by the Survivor Compensation Trustee, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Survivor Compensation Trustee in implementation of the Survivor Compensation Trust Agreement or the Plan, or by reason of the creation of any indebtedness by the Survivor Compensation Trustee under the Plan for any purpose authorized by the Survivor Compensation Trust Agreement or the Plan, it being expressly understood and agreed that all such liabilities, covenants, and Survivor Compensation Trust Agreements of the Survivor Compensation Trust whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Survivor Compensation Trust Assets. Notwithstanding the foregoing, the Survivor Compensation Trustee may be held liable for its recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud; and if liability on such grounds is established, recourse may be had directly against the Survivor Compensation Trustee. The Survivor Compensation Trust shall not be covered by a bond.

#### 4.13.3   Indemnification by Survivor Compensation Trust.

The Survivor Compensation Trust shall defend, indemnify, and hold harmless the Survivor Compensation Trustee and its Agents to the fullest extent permitted under the laws of Maryland in the performance of their duties under the Survivor Compensation Trust Agreement and this Plan.

Each Protected Party, and each of their respective Agents, who was or is a party, or is threatened to be made a party to any threatened or pending judicial, administrative, or arbitrative action, by reason of any act or omission of the Survivor Compensation Trust or Survivor

37

Compensation Trustee or their respective Agents, relating to (a) the assessment or liquidation of any Survivor Claims, (b) the administration of the Survivor Compensation Trust, or (c) any and all activities in connection with the Survivor Compensation Trust Agreement, shall be indemnified and defended by the Survivor Compensation Trust, to the fullest extent that a corporation or trust organized under the laws of Maryland is from time to time entitled to indemnify and defend its Agents against Claims.

Pursuant to and in accordance with the applicable Insurance Settlement Agreement, each Settling Insurer, and each of their respective Agents who was or is a party, or is threatened to be made a party to any threatened or pending judicial, administrative, or arbitrative action, relating to (a) any and all Claims that arise out of or are based on the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Conveyance Act, section 548 of the Bankruptcy Code, and parallel state laws, or (b) any and all Channeled Claims, including all such Claims made by any Person (i) claiming to be insured (as a named insured, additional insured, or otherwise) under any Settling Insurance Policy, (ii) who has made, will make, or can make a Survivor Claim that is or may be covered pursuant to, or is under, arises out of, relates (directly or indirectly) to, or connects in any way with a Settling Insurance Policy, or (iii) who has actually or allegedly acquired or been assigned the right to make a Claim under any Settling Insurance Policy (collectively, the "***Settling Insurer Indemnified Claims***"), shall be indemnified and defended by the Survivor Compensation Trust to the fullest extent that a corporation or trust organized under the laws of Maryland is from time to time entitled to indemnify and defend its Agents against Claims.

Each Settling Insurer: (a) shall have the right (but not the obligation) to defend any applicable Settling Insurer Indemnified Claim identified in this Section 4.13.3 of the Plan and shall do so in good faith; (b) may (but is not required to) undertake the defense of any applicable Settling Insurer Indemnified Claim on receipt of such Settling Insurer Indemnified Claim; and (c) agrees to notify the Survivor Compensation Trust as soon as practicable of any additional Settling Insurer Indemnified Claims and, to the extent the Settling Insurer intends to undertake the defense, its choice of counsel. If a Settling Insurer declines to defend any Settling Insurer Indemnified Claim, the Survivor Compensation Trust shall undertake the defense of such Settling Insurer Indemnified Claim.

The Survivor Compensation Trust shall reimburse all reasonable and necessary attorneys' fees, expenses, costs, and amounts incurred by a Settling Insurer in defending Settling Insurer Indemnified Claims. Each Settling Insurer may settle or otherwise resolve a Settling Insurer Indemnified Claim only with the prior consent of the Survivor Compensation Trust, which consent shall not be unreasonably withheld. The Survivor Compensation Trust may settle or otherwise resolve a Settling Insurer Indemnified Claim only with the prior consent of the applicable Settling Insurer, which consent shall not be unreasonably withheld. A Settling Insurer's defense, settlement, or other resolution of any Settling Insurer Indemnified Claim pursuant to this Section 4.13.3 of the Plan shall not diminish the obligations of the Survivor Compensation Trust to indemnify the applicable Settling Insurer for such Settling Insurer Indemnified Claim(s) pursuant to and in accordance with this Section 4.13.3 of the Plan.

**4.14     Survivor Compensation Trust Liability.**

On the Effective Date, the Survivor Compensation Trust shall automatically and without further act or deed assume: (a) all liability, if any, of the Co-Insured Entities and Settling Insurers with respect to Channeled Claims, except to the extent a Channeled Claim is a Survivor Claim that is or may be related to an Insurance Claim against a Non-Settling Insurer; and (b) the responsibility for preserving, managing, and distributing Survivor Compensation Trust Assets.

**4.15     Termination of Survivor Compensation Trust.**

The Survivor Compensation Trust shall terminate after its liquidation, administration, and distribution of the Survivor Compensation Trust Assets in accordance with the terms of this Plan and the Survivor Compensation Trust's full performance of all other duties and functions set forth in this Plan and the Survivor Compensation Trust Agreement. Notwithstanding the foregoing, absent further order of the Bankruptcy Court, the Survivor Compensation Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date.

**Article 5.
Insurance Trust.**

**5.1     Establishment of Insurance Trust.**

On the Effective Date, or as soon as practicable after the Effective Date, the Insurance Trust shall be established in accordance with the Insurance Trust Documents. The Insurance Trust will assume all liability for and rights concerning: (a) all Channeled Claims, including the rights to settle Channeled Claims, solely to the extent such Channeled Claims relate to Insurance Claims against Non-Settling Insurers or Non-Settling Insurer Policies; (b) all Non-Settling Insurer Policies assumed, assigned, or otherwise transferred pursuant to Article 7 of this Plan; and (c) all Insurance Claims relating to Survivor Claims solely to the extent related to Non-Settling Insurers or Non-Settling Insurer Policies.

**5.2     Funding of Insurance Trust.**

The Survivor Compensation Trust will transfer or otherwise cause to be transferred to the Insurance Trust $[_] within ten (10) Business Days of the Effective Date.

**5.3     Vesting of Insurance Trust Assets in Insurance Trust.**

**5.3.1   Insurance Contracts.**

On the Effective Date, the Non-Settling Insurer Policies shall be assumed and assigned to the Insurance Trust, pursuant to and in accordance with section 365 of the Bankruptcy Code.

**5.3.2   Transfer of Insurance Claims.**

In addition to the assumption and assignment of the Non-Settling Insurer Policies pursuant to Section 5.3.1 of this Plan, and to the extent such assumption and assignment pursuant to Section 5.3.1 of this Plan is otherwise ineffective for any reason, the Debtor, Additional Debtors,

39

and Related Non-Debtor Entities, as applicable, shall transfer or otherwise cause to be transferred all Insurance Claims against any Non-Settling Insurer to the Insurance Trust as follows:

(a)    On the Effective Date, and without further action by any Person, the Co-Insured Entities will be deemed to have assigned to the Insurance Trust the Co-Insured Entities' rights, if any, to all Insurance Claims, and recoveries on account of such Insurance Claims, against the Non-Settling Insurers.

(b)    The transfer of rights to the Insurance Claims set forth in Section 5.3.2(a) and Section 5.3.2(b) of this Plan shall be effective to the maximum extent permissible under applicable law and shall not be construed: (i) as an assignment of the Insurance Policies; or (ii) to entitle any Person to pursue Insurance Claims other than those Persons entitled to coverage under the terms of the Non-Settling Insurer Policies. For the avoidance of doubt, the Insurance Trust shall be solely responsible for satisfying, to the extent required under applicable law, any self-insured retention obligations on account of any Survivor Claim or arising out of any Non-Settling Insurer Policy. To the extent any Co-Insured Entity pays any self-insured retention, the Insurance Trust shall reimburse such Co-Insured Entity for any amounts actually paid. Unless otherwise required by applicable law, nothing in this paragraph shall obligate any Non-Settling Insurer or any Co-Insured Entity to advance any self-insured retention.

## 5.4    Retention of Insurance Claims by Debtor and Co-Insured Entities.

In the event the transfers set forth in Section 5.3.1, Section 5.3.2(a) and Section 5.3.2(b) of this Plan are inconsistent with the Bankruptcy Code, then each applicable Co-Insured Entity shall retain their respective Insurance Claims and, to the extent reasonably requested by the Insurance Trust, will assert and pursue any such retained Insurance Claims. In the event a Co-Insured Entity asserts and pursues any Insurance Claims, the applicable Co-Insured Entity shall retain counsel reasonably acceptable to the Insurance Trustee to prosecute such Insurance Claims (subject to any defenses the Non-Settling Insurers may have under applicable law) and the Insurance Trust shall pay all attorney's fees, expert fees, and other costs and expenses incurred by the applicable Co-Insured Entity in prosecuting the Insurance Claims. For the avoidance of doubt, any efforts by a Co-Insured Entity to prosecute Insurance Claims shall be an accommodation to the Insurance Trust, and any costs and expenses incurred in connection with such accommodation shall be paid by the Insurance Trust in full. In addition, the Insurance Trust shall have a common interest with each applicable Co-Insured Entity in prosecuting Insurance Claims and may appear and be heard in connection with the prosecution of any Insurance Claims, at its own expense, unconditionally, subject only to any limitations of applicable law and equity. No Co-Insured Entity shall settle any retained Insurance Claims without the prior written consent of the Insurance Trustee, which consent shall not be unreasonably delayed or denied. All recoveries on account of retained Insurance Claims will be paid to the Insurance Trust, net of any unreimbursed attorney's fees, expert fees, and other costs and expenses associated with the prosecution of such retained Insurance Claims.

**5.5**     **Insurance Trust's Assumption of Risk.**

Except as specifically set forth in Section 5.3.2 and Section 8.2 regarding Post-Effective Date Insurance Obligations, no Co-Insured Entity makes any representations or warranties or shall have any duties or obligations whatsoever to the Insurance Trust. The Insurance Trust assumes all risks with respect to the Insurance Claims.

**5.6**     **Insurance Trust Liability for Survivor Claims.**

On the Effective Date, the Insurance Trust shall automatically and without further act or deed assume: (a) all liability, if any, of the Protected Parties with respect to Channeled Claims, to the extent such Channeled Claims relate to Insurance Claims against Non-Settling Insurers; (b) responsibility for preserving, managing, and distributing Insurance Trust Assets pursuant to and in accordance with this Plan and the Insurance Trust Documents; and (c) the right to pursue Insurance Claims against Non-Settling Insurers.

**5.7**     **Appointment of the Insurance Trustee.**

The initial Insurance Trustee has been identified in **Exhibit E**. The Insurance Trustee shall commence serving as the Insurance Trustee on the Confirmation Date; provided, however, the Insurance Trustee shall be permitted to act in accordance with the terms of the Insurance Trust Agreement from such earlier date, as authorized by the Debtor and Additional Debtors, and shall be entitled to seek compensation in accordance with the terms of the Insurance Trust Agreement and this Plan.

**5.8**     **Rights and Responsibilities of the Insurance Trustee.**

The Insurance Trust is established for the purposes set forth in the Insurance Trust Agreement and this Article 5 of the Plan. The Insurance Trust shall receive, and be deemed to be the sole assignee or recipient of, the transfer or assignment of the Insurance Trust Assets as provided in this Article 5 of the Plan. The Insurance Trust shall fund the costs and expenses in executing its functions in accordance with the Insurance Trust Agreement and this Plan with the aim of preserving, managing, and maximizing the Insurance Trust Assets and with no objective to continue or engage in the conduct of a trade or business. The proposed Insurance Trust Agreement is attached to this Plan as **Exhibit E**.

Upon the Effective Date, the Insurance Trust may take any action required to fulfill the Insurance Trust's purposes and comply with the terms of this Plan. The Insurance Trust may seek enforcement of this Plan, the Confirmation Order, or any other Final Order entered by the Bankruptcy Court in the Chapter 11 Case that may affect the Insurance Trust's administration of Insurance Trust Assets or fulfillment of the Insurance Trust's purposes. To that end, the Insurance Trustee: (a) shall liquidate and convert to Cash the Insurance Trust Assets and make distributions pursuant to and in accordance with the Insurance Trust Documents in a timely manner, and not unduly prolonging the duration of the Insurance Trust; (b) may request an expedited determination of taxes of the Insurance Trust under section 505(b) of the Bankruptcy Code for all returns filed on behalf of the Insurance Trust for all taxable periods through the dissolution of the Insurance Trust; and (c) may retain professionals, including Agents on behalf of the Insurance Trust, at the

41

Insurance Trust's sole expense, as reasonably necessary to carry out the obligations of the Insurance Trustee under this Plan and the Insurance Trust Agreement. The Confirmation Order shall state that, absent permission from the Bankruptcy Court, no Action shall be commenced in any forum other than the Bankruptcy Court against the Insurance Trustee in its official capacity, with respect to its status, duties, powers, acts, or omissions as Insurance Trustee.

### 5.9 Insurance Trust's Pursuit of Insurance Claims.

#### 5.9.1 Trust's Right to Pursue Insurance Claims.

Upon the assumption and assignment of the Non-Settling Insurer Policies to the Insurance Trust and the transfer of Insurance Claims pursuant to Section 5.3.1 and Section 5.3.2 of this Plan, the Insurance Trust: (a) shall assume all rights and obligations under each Non-Settling Insurer Policy pursuant to section 365 of the Bankruptcy Code; and (b) may act in its own name or in the name of any Co-Insured Entity(ies) to enforce any right, title, or interest in the Non-Settling Insurer Policies or Insurance Claims relating to the Non-Settling Insurer Policies. The Insurance Trust shall: (x) be entitled to assert or assign to any Survivor Claimant or combination of Survivor Claimants, to the extent permitted by the Non-Settling Insurer Policies and applicable non-bankruptcy law, any and all Insurance Claims that currently exist or may arise in the future against Non-Settling Insurers; and (y) have the right to pursue Insurance Claims against Non-Settling Insurers relating to or arising out of any Co-Insured Entity's liability for Survivor Claims or the Non-Settling Insurers' obligations with respect to or relating to such Survivor Claims. For the avoidance of doubt, the foregoing transfer shall not, and shall not be construed to, entitle any Person to insurance coverage other than those Persons entitled to such coverage from Non-Settling Insurers or by Non-Settling Insurer Policies. Similarly, for the avoidance of doubt, the assignment or transfer of the Non-Settling Insurance Policies pursuant to Section 5.3.1 and Section 5.3.2 of this Plan does not affect any right of any Co-Insured Entity or any Non-Settling Insurer to contest any liability or amount of damages in respect to any Survivor Claim.

#### 5.9.2 Recoveries From or Arising Out of Insurance Claims.

Any recovery by the Insurance Trust on Insurance Claims against Non-Settling Insurers relating to any Co-Insured Entity's liability for Survivor Claims shall become an Insurance Trust Asset and shall be held by the Insurance Trust for: (a) payment of costs and expenses of pursuing Insurance Claims; and (b) distribution to the Survivor Compensation Trust. The Insurance Trust shall be entitled to all recoveries on account of Insurance Claims assigned to the Insurance Trust (which, for the avoidance of doubt, consist only of Insurance Claims against Non-Settling Insurers and excludes Insurance Claims against Settling Insurers), including the proceeds of any Insurance Claims relating to or arising out of any Litigation Claim. In addition, to the extent that the failure to defend or a separate agreement between any Co-Insured Entity, on the one hand, and a Non-Settling Insurer, on the other hand, gives rise to a monetary obligation to reimburse defense costs in lieu of a duty to defend, the Insurance Trust shall be entitled to the benefit of such monetary obligation or policy proceeds to the extent of any Protected Party's Post-Effective Date Costs actually paid by the Insurance Trust.

### 5.9.3   Insurance Trust's Pursuit of Debtor and Co-Insured Entities.

The Insurance Trust's pursuit of the Co-Insured Entities shall be limited to specific performance of the assignment of Insurance Claims to the Insurance Trust and any other rights or interests expressly granted to the Insurance Trust under this Plan.

### 5.10   Insurance Provisions.

### 5.10.1  Insurance Neutrality.

Nothing in this Plan, the Insurance Trust Documents, the Survivor Compensation Trust Documents, the Plan Documents, any Confirmation Order, or any judgment, order, finding of fact, conclusion of law, determination or statement made by the Bankruptcy Court, the District Court, or entered by any other court exercising jurisdiction over the Chapter 11 Case or the Additional Debtor Chapter 11 Cases, including in any judgment, order, writ, or opinion entered on appeal from any of the foregoing, shall in any Action against a Non-Settling Insurer:

(a)      constitute an adjudication, judgment, trial, determination on the merits, finding, or conclusion of law establishing: (i) the liability (in the aggregate or otherwise) of any Co-Insured Entity or the Insurance Trust with respect to any Survivor Claims; (ii) the liability (in the aggregate or otherwise) of any Non-Settling Insurer with respect to any Insurance Claim; (iii) that the aggregate value of the Survivor Claims is equal to the amount to be paid into the Insurance Trust or Survivor Compensation Trust by the Co-Insured Entities; (iv) that it is reasonable, in good faith, or consistent with the terms and conditions of any Non-Settling Insurer Policy for any of the Co-Insured Entities, Insurance Trust, or Survivor Compensation Trust to settle, allow, assign any value to, liquidate, or pay (or present to any Non-Settling Insurer for payment) any Survivor Claim on any terms or conditions contemplated by the Plan, the Survivor Compensation Trust Distribution Plan, any other Plan Documents, or any other document or agreement; (v) that the Plan, any other Plan Document, or any other document or agreement are reasonable or consistent with any procedures that were used to evaluate, settle, or pay Survivor Claims against the Co-Insured Entities prior to the Petition Date or Additional Debtor's Petition Date, as applicable, or under the terms and conditions of any Non-Settling Insurer Policy or applicable non-bankruptcy law; (vi) that the conduct of the Co-Insured Entities, the Committee, or the Survivor Claimants in connection with the negotiation, development, settlement, and implementation of the Plan, the other Plan Documents, or any related documents or agreements was, is, or will be consistent with the terms and conditions of any Non-Settling Insurer Policy or applicable non-bankruptcy law; or (vii) that any Non-Settling Insurer was invited to participate in or participated in, consulted on, negotiated, or consented to the Survivor Compensation Trust Distribution Plan, the Insurance Trust Documents, the Survivor Compensation Trust Documents, or other Plan Documents;

(b)      have any res judicata, collateral estoppel, or other preclusive effect or otherwise prejudice, diminish, impair, or affect (under principals of waiver, estoppel, or otherwise) any defense, Claim, or right any Non-Settling Insurer may have under any Non-Settling Insurer Policy or applicable non-bankruptcy law with respect to same;

(c)      constitute a decision on any matter at issue or which may be raised as an issue in any Action against a Non-Settling Insurer, such that no judgment, order, finding of fact, conclusion of law, determination or other statement of the Bankruptcy Court or issued or affirmed by the District Court in this Chapter 11 Case or the Additional Debtor Chapter 11 Cases, or entered by any other court exercising jurisdiction over the Chapter 11 Case or Additional Debtor Chapter 11 Cases, including any Confirmation Order, Survivor Compensation Trust Distribution Plan, or other Plan Documents and any finding, conclusion or determination entered in connection with same, is not intended and shall not be construed to constitute a finding, conclusion or determination for any insurance coverage purpose whatsoever;

(d)      impair: (i) any Non-Settling Insurer's legal, equitable, or contractual rights under any Non-Settling Insurer Policy or with respect to Insurance Claims; or (ii) any policyholder's legal, equitable or contractual rights under any Non-Settling Insurer Policy or with respect to Insurance Claims; or

(e)      impair any Non-Settling Insurer Contribution Claim, which may be asserted as a defense or counterclaim against the Co-Insured Entities, Survivor Compensation Trust, or Insurance Trust, as applicable, in any Action against any Non-Settling Insurer.

### 5.10.2  Denial of Coverage as Sole Remedy.

Notwithstanding anything to the contrary in Section 5.6 of this Plan, the sole remedy of any Non-Settling Insurer for any failure by any Co-Insured Entity or the Insurance Trust to observe and perform any Post-Effective Date Insurance Obligations (if any) or any other duties or obligations that may exist under a Non-Settling Insurer Policy shall be limited to asserting any defenses to providing insurance coverage under the applicable Non-Settling Insurer Policy, and nothing in this Plan shall serve as a basis for any Non-Settling Insurer to seek or be granted any affirmative relief against any Co-Insured Entity.

### 5.10.3  Non-Settling Insurer Insurance Contribution Claims.

To the extent any Non-Settling Insurer Contribution Claims are determined to be valid, the liability, if any, of the applicable Non-Settling Insurer to the Insurance Trust shall be reduced by the amount of such Non-Settling Insurer Contribution Claims. For the avoidance of doubt, and notwithstanding anything to the contrary in Section 5.6 of this Plan, all Non-Settling Insurer Contribution Claims shall be channeled to the Insurance Trust and no Non-Settling Insurer Contribution Claim shall be the basis for any affirmative recovery against any Co-Insured Entity.

### 5.10.4  Post-Effective Date Costs Procedures.

### (a)      Post-Effective Date Costs Reserve.

The Insurance Trust shall establish the Post-Effective Date Costs Reserve, which shall be funded in an initial amount of not less than $[_] from the contributions to the Survivor Compensation Trust from the Co-Insured Entities (the "***Post-Effective Date Costs Reserve***"). The Insurance Trustee shall provide the Co-Insured Entities with a written statement as to the balance

44

of the Post-Effective Date Costs Reserve on a quarterly basis or as otherwise reasonably requested from time to time by any Co-Insured Entity.

If the Insurance Trustee does not maintain the Post-Effective Date Costs Reserve balance at or above $[_], the Insurance Trustee shall immediately report the same to the Co-Insured Entities, after which the Insurance Trustee shall schedule a meet and confer with same regarding the (a) Insurance Trustee's expectations with respect to the continued prosecution of Insurance Claims and Litigation Claims, (b) balance of Post-Effective Date Costs that are incurred but outstanding, and (c) parties' collective expectations as to any additional Post-Effective Date Costs that are likely to be incurred in order to comply with any remaining Post-Effective Date Insurance Obligations.

**(b)** **Post-Effective Date Costs.**

Professionals representing any Co-Insured Entity in connection with the observance and performance of their respective Post-Effective Date Insurance Obligations, including, without limitation, their participation in any post-Effective Date discovery or litigation regarding Insurance Claims or Survivor Claims, will charge rates and expenses that are no higher than their usual and customary rate for similar work performed by such Professionals for clients generally at the time such services are provided, and such rates may be adjusted from time to time in accordance with the general practices of such Professionals.

Unless a Co-Insured Entity is reimbursed directly by any Non-Settling Insurer for any Post-Effective Date Costs contemporaneously with such Post-Effective Date Costs being incurred, all Post-Effective Date Costs shall be paid by the Insurance Trust from the Post-Effective Date Costs Reserve. The Insurance Trust's advancement or reimbursement of Post-Effective Date Costs shall not affect, diminish, or impair the Insurance Trust's right to bring any claims against any Non-Settling Insurers for refusing to defend or indemnify any Co-Insured Entity.

**(c)** **Payment and Dispute Resolution Regarding Post-Effective Date Costs.**

All invoices for Post-Effective Date Costs shall be submitted to the Insurance Trustee via e-mail within sixty (60) days following the end of the month in which Post-Effective Date Costs are incurred (such submission, a "*Fee Notice*"). All Fee Notices provided to the Insurance Trustee may be redacted to prevent the disclosure of privileged information or trial strategy. The Insurance Trustee shall keep all Fee Notices confidential and shall not share any information contained in any Fee Notices other than the amount of fees with any Litigation Claimant, counsel to any Litigation Claimant, any professional whose firm previously represented the Debtor, Additional Debtors, or Committee in the Chapter 11 Case or Additional Debtor Chapter 11 Cases, or any professional whose firm represents the Insurance Trust in connection with the litigation or assertion of any Insurance Claim or Litigation Claim.

The Insurance Trustee shall inform the Co-Insured Entities and any professional submitting a Fee Notice of any disputes regarding the requested fees and expenses within twenty-one (21) days of receipt of each applicable Fee Notice or shall pay the requested fees within such time. If a dispute regarding a Fee Notice cannot be resolved within twenty-one (21) days of notification of such dispute (or such other time agreed upon by the relevant parties), the dispute may be submitted

45

to the Bankruptcy Court for adjudication upon at least twenty-one (21) days' notice, unless the relevant parties mutually agree otherwise.

**(d)      Post-Effective Date Costs Reserve Non-Replenishment Determinations.**

If at any time the Insurance Trustee determines, in the Insurance Trustee's discretion, not to replenish the Post-Effective Date Costs Reserve before the balance of the Post-Effective Date Costs Reserve falls below $[_] (such determination, a "***Non-Replenishment Determination***"), the Insurance Trustee shall immediately (a) report such Non-Replenishment Determination to each Co-Insured Entity and (b) file an application with the Bankruptcy Court setting forth the basis for the Non-Replenishment Determination. If the Bankruptcy Court denies the Insurance Trustee's request to implement the Non-Replenishment Determination, the Insurance Trustee shall, subject to available funds, replenish the Post-Effective Date Costs Reserve to at least $[_]. If the Bankruptcy Court approves the Insurance Trustee's request to implement the Non-Replenishment Determination or the Insurance Trustee lacks sufficient funds to maintain the balance of the Post-Effective Date Costs Reserve above $[_], each Co-Insured Entity shall be irrevocably released from any further obligations they would otherwise have had under this Plan with respect to any Insurance Claims or Survivor Claims, including, without limitation, any obligations to comply with any Post-Effective Date Insurance Obligations or to assist in the administration of the Survivor Compensation Trust Distribution Plan.

For the avoidance of doubt: (a) the Insurance Trust shall remain responsible for the payment of all Post-Effective Date Costs incurred within one year following the date of such notice, to the extent such Post-Effective Date Costs are submitted in accordance with the procedures set forth in this Section 5.10.4 of this Plan; (b) all Non-Settling Insurers shall retain any defenses to coverage they may have as a result of any failure of any Co-Insured Entity to observe and perform any Post-Effective Date Insurance Obligations; and (c) nothing in this Section 5.10.4 shall be construed to address the rights of any Non-Settling Insurer or the Insurance Trust, as assignee of Insurance Claims, upon any withdrawal of cooperation in defense of Claims by any Co-Insured Entity.

**5.11      Investment Powers; Permitted Cash Expenditures.**

All funds held by the Insurance Trust shall be invested in Cash or short-term highly liquid investments that are readily convertible to known amounts of Cash as more particularly described in the Insurance Trust Agreement. The Insurance Trustee may expend such Cash in a manner consistent with the terms of the Insurance Trust Agreement.

**5.12      Registry of Beneficial Interests.**

To evidence the beneficial interest in the Insurance Trust of each holder of such an Interest, the Insurance Trustee shall maintain a registry of beneficiaries.

**5.13      Non-Transferability of Interests.**

Any transfer of an Interest in the Insurance Trust shall not be effective until and unless the Insurance Trustee receives written notice of such transfer.

46

### 5.14    Insurance Trust Tax Matters.

The Insurance Trust is intended to qualify as a "Designated" or "Qualified Settlement Fund" pursuant to Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder. The Debtor and Additional Debtors are the "transferors" within the meaning of Treasury Regulation Section 1.468B-1(d)(1). The Insurance Trustee shall be classified as the "administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3). The Insurance Trust Documents, including the Insurance Trust Agreement, are incorporated in this Section 5.14 of the Plan by reference. The Insurance Trust shall not be deemed to be the same legal entity as any Co-Insured Entity, but only the assignee of certain assets of the Co-Insured Entities and a representative of the Estates for delineated purposes within the meaning of section 1123(b)(3) of the Bankruptcy Code. The Insurance Trust is expected to be tax exempt. The Insurance Trustee shall file such income tax and other returns and documents as are required to comply with the applicable provisions of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1 et seq., as may be amended, and the regulations promulgated thereunder, 31 C.F.R. §§ 900 et seq., and Maryland law and the regulations promulgated thereunder, and shall pay from the Insurance Trust all taxes, assessments, and levies upon the Insurance Trust or Insurance Trust Assets, if any.

### 5.15    Immunity; Liability; Indemnification.

#### 5.15.1  No Liability for Reorganized Debtor, Additional Reorganized Debtors, Related Non-Debtor Entities, or Insurance Trustee.

Neither the Reorganized Debtor, Additional Reorganized Debtors, Related Non-Debtor Entities, their respective Agents, nor the Insurance Trustee or its Agents shall be liable for the acts or omissions of the Insurance Trustee or its Agents, except that the Insurance Trustee shall be liable for its specific acts or omissions resulting from such Insurance Trustee's willful misconduct, gross negligence, fraud, or breach of the fiduciary duty of loyalty. The Insurance Trustee may, in connection with the performance of its functions and in its sole and absolute discretion, consult with its Agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Agents. Notwithstanding such authority, the Insurance Trustee shall not be under any obligation to consult with its Agents, and its determination not to do so shall not result in the imposition of liability on the Insurance Trustee unless such determination is based on the Insurance Trustee's recklessness, gross negligence, willful misconduct, or fraud.

#### 5.15.2  No Recourse Against Insurance Trustee.

No recourse shall ever be had, directly or indirectly, against the Insurance Trustee personally, or against any Agent retained in accordance with the terms of the Insurance Trust Agreement or the Plan by the Insurance Trustee, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Insurance Trustee in implementation of the Insurance Trust Agreement or the Plan, or by reason of the creation of any indebtedness by the Insurance Trustee under the Plan for any purpose authorized by the Insurance Trust Agreement or the Plan, it being expressly understood and agreed that all such liabilities, covenants, and Insurance Trust Agreement of the Insurance Trust whether in writing or otherwise, shall be enforceable only

47

against and be satisfied only out of the Insurance Trust Assets. Notwithstanding the foregoing, the Insurance Trustee may be held liable for its recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud; and if liability on such grounds is established, recourse may be had directly against the Insurance Trustee. The Insurance Trust shall not be covered by a bond.

### 5.15.3  Indemnification of Insurance Trust.

The Insurance Trust shall defend, indemnify, and hold harmless the Insurance Trustee and its Agents to the fullest extent permitted under the laws of Maryland in the performance of their duties under the Insurance Trust Agreement and this Plan.

Additionally, each Protected Party and Settling Insurer, and each of their respective Agents, who was or is a party, or is threatened to be made a party to any threatened or pending judicial, administrative, or arbitrative action, by reason of any act or omission of the Insurance Trust or Insurance Trustee or respective Agents, relating to (a) the assessment or liquidation of any Insurance Claims or Survivor Claims, (b) the administration of the Insurance Trust, or (c) any and all activities in connection with the Insurance Trust Agreement, shall be indemnified and defended by the Insurance Trust, to the fullest extent that a corporation or trust organized under the laws of Maryland is from time to time entitled to indemnify and defend its Agents against Claims.

### 5.16    Insurance Trust Liability.

On the Effective Date, the Insurance Trust shall automatically and without further act or deed assume: (a) all liability, if any, of the Co-Insured Entities and Settling Insurers with respect to Channeled Claims, to the extent a Channeled Claim is a Survivor Claim that is or may be related to an Insurance Claim against a Non-Settling Insurer; and (b) the responsibility for preserving, managing, and distributing Insurance Trust Assets.

### 5.17    Termination of Insurance Trust.

The Insurance Trust shall terminate after its liquidation, administration, and distribution of the Insurance Trust Assets in accordance with the terms of this Plan and the Insurance Trust's full performance of all other duties and functions set forth in this Plan and the Insurance Trust Agreement. Notwithstanding the foregoing, absent further order of the Bankruptcy Court, the Insurance Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date.

### Article 6.
### Survivor Claims.

### 6.1    Trust Liability for Survivor Claims.

On the Effective Date, the Trusts shall automatically and without further act or deed assume all liability, if any, of the Protected Parties and Settling Insurers with respect to Channeled Claims, pursuant to and in accordance with Section 4.4 and Section 5.6 of this Plan.

**6.2    Assessment of Survivor Claims.**

Survivor Claims will be assessed in accordance with the Survivor Compensation Trust Distribution Plan, which is designed to provide an expeditious, efficient, reasonable, and equitable method for determining whether a Survivor Claimant is entitled to a Distribution from the Survivor Compensation Trust. The Co-Insured Entities shall reasonably cooperate with the Survivor Claims Reviewer and the Survivor Compensation Trustee in connection with any inquiries related to the administration of the Survivor Compensation Trust Distribution Plan but shall not be required to act in any way that violates any duty or prevents the satisfaction of any condition precedent under a Non-Settling Insurer Policy, if any. Under no circumstance shall the Survivor Claims Reviewer's review of a Survivor Claim or a distribution to a Survivor Claimant have any effect on the rights, defenses, or obligations of any Non-Settling Insurer.

**6.3    Survivor Claimant Election of Claim Treatment.**

No later than thirty (30) days after a Survivor Claimant is notified of the amount of their initial award under the Survivor Compensation Trust Distribution Plan, the Survivor Claimant shall elect in writing one of the following with respect to treatment of such Survivor Claimant's Survivor Claim:

(a)    ***Treatment as a Distribution Claimant.*** Any Survivor Claimant that is not a Litigation Claimant: (i) shall be considered a Distribution Claimant; and (ii) in full and final satisfaction and discharge of their Survivor Claim, will receive Distributions from the Survivor Compensation Trust in an amount determined pursuant to and in accordance with the Survivor Compensation Trust Distribution Plan. Each Distribution Claimant must execute and deliver to the Survivor Compensation Trustee a Survivor Claimant Release, in order to receive Distributions pursuant to and in accordance with the Survivor Compensation Trust Distribution Plan.

(b)    ***Treatment as a Litigation Claimant.*** Any Survivor Claimant that elects to have their Survivor Claim treated as a Litigation Claim: (i) shall be considered a Litigation Claimant; and (ii) in full and final satisfaction and discharge of their Survivor Claim, will receive (A) Distributions from the Survivor Compensation Trust, to the extent set forth in the Survivor Compensation Trust Distribution Plan and (B) the right, prior to the applicable Survivor Claim Discharge Date and subject to the Survivor Compensation Trustee granting authorization to pursue a Litigation Claim pursuant to Section 6.3(b)(i) of this Plan, to liquidate their Litigation Claim in the tort system in order to determine the liability of any Protected Party for purposes of the Insurance Trust seeking recovery from any Non-Settling Insurer that is or may be liable on the Litigation Claim or any Insurance Claim arising from same.

(i)    ***Survivor Compensation Trustee's Authorization to Pursue Litigation Claims.*** The Survivor Compensation Trustee shall have the sole discretion to: (i) authorize a Litigation Claimant to pursue a Litigation Claim; (ii) make a final decision as to whether a Litigation Claim is pursued; and (iii) make a final decision relating to the management and timing of litigation relating to Litigation Claims; provided, however, the Survivor Compensation Trust

49

Agreement shall direct that in making such determination, the Survivor Compensation Trustee shall take into consideration and use reasonable efforts to minimize the cumulative impact of post-Effective Date litigation on the business operations and legal and personnel resources of the applicable Co-Insured Entity(ies) and Insurance Trust. Prior to authorizing a Survivor Claimant to be treated as a Litigation Claimant and to proceed with the applicable Litigation Claim, the Survivor Compensation Trustee shall consult with counsel for the Survivor Claimant, the applicable Co-Insured Entity(ies) against which such proposed Litigation Claim would be asserted, and the Insurance Trust, to coordinate, among other things, a mutually acceptable litigation schedule and require the Survivor Claimant to execute and deliver a Survivor Claimant Release and a Litigation Claimant Agreement. The Survivor Compensation Trustee shall provide a copy of each Survivor Claimant Release and Litigation Claimant Agreement to the Reorganized Debtor upon execution of same and to any other Co-Insured Entity or Settling Insurer upon request.

(ii)     ***Limitation of Remedies for Litigation Claims.*** For the avoidance of doubt: (i) no Settling Insurer shall be obligated to defend or indemnify any Person in connection with a Litigation Claim or otherwise have any other duties or obligations to any Person in connection with a Litigation Claim; and (ii) except for the collection of proceeds from any Non-Settling Insurer Policy or other amounts for which a Non-Settling Insurer is deemed to be liable, under no circumstances will any Survivor Claimant or other Person be able to recover in connection with any Litigation Claim any amount from a Co-Insured Entity or Settling Insurer or to otherwise obtain any recovery, judgment or levy whatsoever against any assets of a Co-Insured Entity.

(c)     ***Default Election.*** If a Survivor Claimant does not elect to be treated as a Litigation Claimant pursuant to Section 6.3(b) or elects to be so treated but is not granted authority by the Survivor Compensation Trustee to pursue a Litigation Claim, the Survivor Claimant shall be treated as a Distribution Claimant prior to the occurrence of the applicable Survivor Claim Discharge Date.

## 6.4   Trusts' Rights With Respect to Survivor Claims.

### 6.4.1   Insurance Trust and Insurance Claims.

The Insurance Trust shall retain the right to pursue all Insurance Claims with respect to Non-Settling Insurers and Non-Settling Insurer Policies.

### 6.4.2   Survivor Compensation Trust and Litigation Claims.

The Survivor Compensation Trust retains the right to pursue recovery from the Insurance Trust for any Protected Party's liability for Litigation Claims, to the extent such Litigation Claims relate to one or more Non-Settling Insurer Policies. To the extent a Litigation Claimant settles or otherwise obtains a judgment with respect to a Litigation Claim, any recovery from a Non-Settling Insurer with respect such settlement or judgment shall be added to the Insurance Trust Assets to

be distributed in accordance with the Insurance Trust Documents; provided, however, such recovery shall first go to reimbursement for the reasonable costs: (a) of the Insurance Trust in connection with such Litigation Claim; and (b) incurred by the Litigation Claimant in pursuing the recovery against the Non-Settling Insurer relating to such Litigation Claim, so long as such costs were agreed upon by the Survivor Compensation Trust in advance.

### 6.4.3   Survivor Compensation Trust and Distribution Claims.

Notwithstanding a Survivor Claimant's election to have their Survivor Claim treated as a Distribution Claim, whether pursuant to Section 6.3(a) or Section 6.3(c) of this Plan, the Survivor Compensation Trust retains the right to pursue recovery from the Insurance Trust in accordance with Section 5.9 of this Plan with respect to Distribution Claims to the extent such Distribution Claims relate to Insurance Claims against one or more Non-Settling Insurers.

### 6.5   Legal Effect of Estimation of Survivor Claims and Survivor Compensation Trust Distributions.

The Survivor Claim Reviewer's determinations are for estimation and Survivor Compensation Trust Distribution purposes only and shall not constitute findings as to, or the determination of, the reasonableness, facts, or liability concerning the Survivor Claims with any binding legal effect. The determination, qualification, estimation, and payment of Survivor Compensation Trust Distributions regarding Survivor Claims: (a) shall not be construed as an admission of liability by any Protected Party, any Settling Insurer, any Non-Settling Insurer, or the Trusts with respect to any Survivor Claim and shall not be entitled to any preclusive effect; (b) is not a settlement, release, accord, or novation of any Survivor Claim and cannot be used by any Joint Tortfeasor as a defense to any alleged liability; (c) does not impair a Litigation Claimant's right to obtain a judgment, including a judgment based on joint and several liability, against any Co-Insured Entity or Non-Settling Insurer for purposes of establishing any Co-Insured Entity's or Non-Settling Insurer's liability with respect to such Litigation Claimant's Litigation Claim; provided, however, recourse on any such judgment shall be limited to the proceeds of Non-Settling Insurer Policies and all other damages (including extra-contractual damages), awards, judgments in excess of policy limits, penalties, punitive damages, and attorney's fees and costs that may be recoverable against any Non-Settling Insurers because of their conduct concerning insurance coverage for, or defense or settlement of, any Survivor Claim or any Insurance Claim, and any proceeds from such judgment(s) or award(s) shall be distributed in accordance with this Plan; (d) shall not constitute or be deemed to constitute: (i) a trial, adjudication of a Survivor Claim, or evidence of liability or damages in any litigation with any Co-Insured Entities, Non-Settling Insurers, Settling Insurers, or any other Person; or (ii) a determination of the reasonableness of the amount of any Litigation Claim(s) in any litigation with Non-Settling Insurers; and (e) does not create an admission of the fact of liability or the extent of damages on behalf of any Co-Insured Entities.

The Survivor Compensation Trust's distribution of a Survivor Compensation Trust Distribution shall not be construed as, and shall not be, an admission by or determination of any Protected Party's, any Settling Insurer's, any Non-Settling Insurer's, or the Insurance Trust's liability for or damages relating to any Survivor Claim.

### 6.6    Release and Discharge of Survivor Claims.

Notwithstanding anything to the contrary in this Plan, prior to receiving a Survivor Compensation Trust Distribution, each Survivor Claimant must execute and deliver to the Survivor Compensation Trustee a Survivor Claimant Release in the form attached to this Plan as **Exhibit H**; provided, however, to preserve coverage under Non-Settling Insurer Policies, each Survivor Claimant specifically reserves and does not release such Survivor Claimant's Survivor Claim to the extent such Survivor Claim implicates coverage under one or more Non-Settling Insurer Policy; provided, further, however, recourse on any such Survivor Claim is limited to any Survivor Compensation Trust Distributions made pursuant to and in accordance with this Plan, the Survivor Compensation Trust Agreement, Survivor Compensation Trust Distribution Plan, and proceeds of Insurance Claims and Extra-Contractual Claims against Non-Settling Insurers and Non-Settling Insurer Policies that may be recoverable by the Survivor Compensation Trust or Insurance Trust, as applicable.

Survivor Claims that implicate coverage under one or more Non-Settling Insurer Policies shall be released and enjoined only upon the occurrence of the applicable Survivor Claim Discharge Date, as set forth in this Plan; provided, however, such release and injunction of Survivor Claims pursuant to and in accordance with this Plan does not release and enjoin such Survivor Claim against Persons who are not Protected Parties or Settling Insurers. Joint Tortfeasors shall not be liable for any share of causal liability or fault attributable to any Protected Party, and no Protected Party shall be liable for their share of causal liability or fault attributable to any Joint Tortfeasor or other Person.

### 6.7    Survivor Compensation Trust Distributions to Survivor Claimants.

Survivor Claimants whom the Survivor Claims Reviewer determines to be entitled to a Survivor Compensation Trust Distribution pursuant to and in accordance with the Survivor Compensation Trust Distribution Plan will receive a Survivor Compensation Trust Distribution from the Survivor Compensation Trust in the amount(s) and at the time(s) provided for in the Survivor Compensation Trust Distribution Plan.

### 6.8    Dismissal of Pending Litigation Regarding Survivor Claims.

Each Survivor Claim asserted in any Action against any Protected Party pending in state or federal court shall be dismissed, with prejudice and without fees and costs being recoverable against the applicable Protected Party, upon the occurrence of the applicable Survivor Claim Discharge Date.

### 6.9    Survivor Claim Withdrawal.

A Survivor Claimant may withdraw their Survivor Claim at any time on written notice to the Survivor Compensation Trustee. Any withdrawal of a Survivor Claim shall be with prejudice, and such withdrawn Survivor Claim may not be reasserted, with the applicable Survivor Claimant still to be bound by the Discharge and this Plan, including the Channeling Injunction and Supplemental Settling Insurer Injunction.

### 6.10    Medicare Procedures.

#### 6.10.1  No Reporting Obligations.

It is the Debtor's and each Additional Debtor's position that none of the Protected Parties, Settling Insurers, Insurance Trust, or Survivor Compensation Trust will have any reporting obligations in respect of their contributions to the Survivor Compensation Trust or in respect of any payments, settlements, resolutions, awards, or other Claim liquidations by the Survivor Compensation Trust, under the reporting provisions of MSPA or MMSEA.

#### 6.10.2  Survivor Claimant Certification.

Prior to making any Survivor Compensation Trust Distributions, the Survivor Compensation Trustee may obtain in respect of any Channeled Claim a certification from the Survivor Claimant that said Survivor Claimant has or will provide for the payment or resolution of any obligations owing or potentially owing under MSPA relating to such Channeled Claim. If the Survivor Compensation Trust receives no such certification, the Survivor Compensation Trust shall: (a) withhold funds sufficient to assure that all obligations owing or potentially owing for Medicare Claims are paid to CMS; and (b) provide for the payment or resolution of any obligations owing or asserted under 42 U.S.C. § 1395y(b) or any related rules, regulations, or guidance, in connection with or relating to such Survivor Claimant's Channeled Claim.

#### 6.10.3  Indemnification of Protected Parties.

The Survivor Compensation Trust shall indemnify and hold harmless the Protected Parties and the Settling Insurers from any Medicare Claims or similar reporting and payment obligations, whether relating to past conditional payments made, future payments to be made, or otherwise arising out of, relating to, or in connection with Channeled Claims, including any obligations owing or potentially owing under MMSEA or MSPA, and any Claims related to the Survivor Compensation Trust's obligations under this Plan, the Survivor Compensation Trust Documents, and Plan Documents. The Survivor Compensation Trustee also shall have the obligation to cooperate with the Protected Parties and the Settling Insurers in the assertion of the Channeling Injunction with respect to any Medicare Claims asserted against the Protected Parties related to Channeled Claims. The Survivor Compensation Trustee shall not have personal liability for the obligations under this Section 6.10, and the Survivor Compensation Trust shall not be required to create a reserve for these potential obligations. The Survivor Compensation Trust may seek recovery of any such payments from the applicable Survivor Claimant, including by withholding future Survivor Compensation Trust Distributions due to such applicable Survivor Claimant from the Survivor Compensation Trust.

#### 6.10.4  Indemnity of United States.

The Survivor Compensation Trust Assets shall also be used for payment of indemnity and expenses relating to reimbursing the United States government or its contractors for conditional payments made pursuant to the MSPA applicable to any Medicare Beneficiary on account of any Channeled Claim. The amount of such payment shall not exceed that Survivor Claimant's award under the Survivor Compensation Trust Documents. The Protected Parties shall not be responsible

for and will not pay indemnity or expenses relating to reimbursing the United States government or its contractors for conditional payments made pursuant to the MSPA applicable to any Medicare Beneficiary on account of any Channeled Claim.

### 6.10.5  No Obligations Upon Termination of Survivor Compensation Trust.

Upon the termination of the Survivor Compensation Trust in accordance with the Survivor Compensation Trust Agreement, the Survivor Compensation Trust shall have no further obligations under this Section 6.10.

### 6.10.6  Claims Prior to December 5, 1980.

Notwithstanding anything to the contrary in this Plan, no Trust, Protected Party, or Settling Insurer shall have any reporting obligations with respect to Survivor Claims that arise from or relate to alleged Abuse occurring prior to December 5, 1980.

### Article 7.
### Settling Insurers.

### 7.1  Insurance Settlement Agreements.

Each Insurance Settlement Agreement shall be effective and binding upon all Persons, and any such Person's successors and assigns, upon entry of an Insurance Settlement Approval Order that is a Final Order with respect to such Insurance Settlement Agreement and satisfaction of all of such Insurance Settlement Agreement's conditions precedent. Payments by the applicable Settling Insurer to the Survivor Compensation Trust and the releases by and between the Protected Parties of the applicable Settling Insurer shall occur and become effective according to the terms of each Insurance Settlement Agreement and Insurance Settlement Approval Order. Each Insurance Settlement Agreement and Insurance Settlement Approval Order shall survive the confirmation, effectiveness, and consummation of this Plan. The rights and obligations of the parties under any Insurance Settlement Agreement and Insurance Settlement Approval Order shall be determined exclusively under the applicable Insurance Settlement Agreement, Insurance Settlement Approval Order, this Plan, and the Confirmation Order.

### 7.2  Sale Free and Clear of Interests of Settling Insurer Policies.

Each Settling Insurer Policy shall be sold to the applicable Settling Insurer, pursuant to sections 105, 363, and 1123 of the Bankruptcy Code, free and clear of all liens, Claims, and Interests of all Persons, to the extent provided in each applicable Insurance Settlement Agreement and Insurance Settlement Approval Order.

### 7.3  Resolution of Claims Involving Settling Insurers.

The Confirmation Order shall provide that upon payment of a Settling Insurer's Insurance Settlement Amount (either directly to the Survivor Compensation Trust and/or into an escrow account pursuant to the terms of the applicable Insurance Settlement Agreement), all: (a) releases set forth in the applicable Settling Insurer's Insurance Settlement Agreement shall be in full force and effect; and (b) all injunctive relief set forth in the applicable Insurance Settlement Approval

54

Order shall become effective as set forth in such Insurance Settlement Agreement, Insurance Settlement Approval Order, and this Plan.

### 7.4    Settling Insurer Payments.

Each Settling Insurer shall pay to the Survivor Compensation Trust such Settling Insurer's Insurance Settlement Amount on the terms set forth in the applicable Insurance Settlement Agreement and Insurance Settlement Approval Order (either directly to the Survivor Compensation Trust and/or into an escrow account pursuant to the terms of the applicable Insurance Settlement Agreement).

### 7.5    Further Assurances; Non-Material Modifications.

From and after the Effective Date, the Protected Parties and each Settling Insurer shall be authorized to enter into, execute, adopt, deliver, or implement all notes, contracts, security agreements, instruments, releases, and other agreements or documents necessary to effectuate or memorialize the Insurance Settlement Agreements and Insurance Settlement Approval Orders without further order of the Bankruptcy Court. The Protected Parties and each Settling Insurer may make technical or immaterial alterations, amendments, modifications, waiver, or supplements to the terms of any Insurance Settlement Agreement, subject to (a) the terms and conditions of the applicable Insurance Settlement Agreement and Insurance Settlement Approval Order and (b) the consent of the Insurance Trustee and Survivor Compensation Trustee, which consent shall not be unreasonably withheld.

### 7.6    Waiver/Consent.

In consideration of the releases, Channeling Injunction, Supplemental Settling Insurer Injunction, and other covenants set forth in this Plan, subject to the occurrence of the Effective Date and satisfaction of the conditions precedent in the applicable Insurance Settlement Agreement, each of the Protected Parties: (a) irrevocably and unconditionally, without limitation, releases, acquits, forever discharges, and waives any Claims it has or might have now or in the future against the other Protected Parties and any Settling Insurers with respect to any contribution, subrogation, indemnification, or other similar Claim arising from or relating to Channeled Claims covered or alleged to be covered under any Settling Insurer Policy; (b) consents to the sale of the Co-Insured Entities' Claims, if any, related to the Settling Insurer Policies in accordance with each Insurance Settlement Agreement and Insurance Settlement Approval Order; (c) consents to the contribution of the proceeds of the sale of any Settling Insurer Policies to the Survivor Compensation Trust pursuant to and in accordance with this Plan, each Insurance Settlement Agreement, and each Insurance Settlement Approval Order. For the avoidance of doubt, nothing in this Section 7.6 shall be construed to bar or otherwise prohibit: (x) a Claim based upon Abuse against a Person who is not a Protected Party; or (y) a Claim by such Person for insurance coverage under an Insurance Policy that is not a Settling Insurer Policy.

### 7.7    Timing.

The injunctions, releases, and discharges to which any Settling Insurer is entitled pursuant to an Insurance Settlement Agreement, Insurance Settlement Approval Order relating to such

Insurance Settlement Agreement, this Plan, the Confirmation Order, and the Bankruptcy Code shall become effective pursuant to and in accordance with the applicable Insurance Settlement Agreement and Insurance Settlement Approval Order.

### Article 8.
### Non-Settling Insurers.

**8.1      Preservation of Rights and Obligations.**

All obligations with respect to Non-Settling Insurers shall be determined by and in accordance with the terms of the Non-Settling Insurer Policies and applicable non-bankruptcy law. In the event a Survivor Claim is liquidated through the Survivor Compensation Trust Distribution Plan or in any state or federal court as may be permitted pursuant to this Plan, the Survivor Compensation Trust Distribution Plan, or Survivor Compensation Trust Agreement: (a) the Debtor, Reorganized Debtor, Additional Debtors, Additional Reorganized Debtors, Related Non-Debtor Entities, Insurance Trust, and each Non-Settling Insurer shall retain the right to assert any and all rights and defenses with respect to such Survivor Claim; (b) the rights and obligations, if any, of the Debtor, Reorganized Debtor, Additional Debtors, Additional Reorganized Debtors, Related Non-Debtor Entities, Insurance Trust, and each Non-Settling Insurer under the terms of the Non-Settling Insurer Policies and at law shall not be affected and shall be treated as though such liquidation had never occurred; (c) nothing in this Plan, the Confirmation Order, or other Plan Document shall impose any obligation on any Non-Settling Insurer to provide a defense for, settle, or pay any judgment with respect to any Survivor Claim; and (d) nothing in this Plan, the Confirmation Order, or other Plan Document shall grant to any Person any right to sue any Non-Settling Insurer directly with respect to a Survivor Claim.

**8.2      Post-Effective Date Insurance Obligations.**

Notwithstanding the assumption and assignment of Non-Settling Insurer Policies pursuant to Section 5.3 of this Plan, subject to the payment of any Post-Effective Date Costs by the Insurance Trust, the Protected Parties shall (in addition to the Insurance Trust's obligations under Article 5 of this Plan) comply with and satisfy all Post-Effective Date Insurance Obligations, for the purposes of preserving and maintaining as much insurance coverage as possible for the benefit of the Insurance Trust and Survivor Compensation Trust.

If the Insurance Trust or Survivor Compensation Trust believes a Protected Party has failed to satisfy any Post-Effective Date Insurance Obligations, the Insurance Trust or Survivor Compensation Trust, as applicable, shall give the Reorganized Debtor and applicable Protected Party, if applicable, written notice identifying with specificity the Post-Effective Date Insurance Obligations such Trust believes have not been satisfied and the action(s) such Trust believes must be taken to satisfy same. The Reorganized Debtor and applicable Protected Party, as applicable, shall have not less than sixty (60) days from such notice to: (a) take the actions requested by the applicable Trust; or (b) seek a determination from the Bankruptcy Court as to whether the requested action is required to satisfy any Post-Effective Date Insurance Obligations; provided, however, such determination shall not be binding upon any Non-Settling Insurer. With the exception of willful misconduct by a Protected Party, the Trusts' sole remedy for any failure to

satisfy any Post-Effective Date Insurance Obligations shall be specific performance as ordered by the Bankruptcy Court.

Nothing in this plan shall impair, and each Non-Settling Insurer expressly retains, all contractual defenses to coverage, if any, available under any Non-Settling Insurer Policy arising from or relating to any actual or alleged failure by a Protected Party to satisfy their respective Post-Effective Date Insurance Obligations, if any.

**8.3    Trust Powers With Respect to Survivor Claims and Non-Settling Insurers.**

Solely as set forth in this Plan, the Survivor Compensation Trust Distribution Plan, Survivor Compensation Trust Agreement, and Insurance Trust Agreement, the Trusts may enter into a settlement of any Insurance Claim, Extra-Contractual Claim, or Survivor Claim; provided, however, nothing in this Section 8.3 prohibits or prevents a Non-Settling Insurer from raising any defense to such settlement or claim for coverage. For the avoidance of doubt, the Survivor Compensation Trustee and Insurance Trustee, as applicable, may use Survivor Compensation Trust Assets and Insurance Trust Assets, as applicable, to prosecute any Insurance Claim or Extra-Contractual Claim permitted by this Plan, the Survivor Compensation Trust Agreement, or Insurance Trust Agreement, as applicable. In the event of recovery from a Non-Settling Insurer or Non-Settling Insurer Policy based upon an Insurance Claim or Extra-Contractual Claim relating to any Survivor Claim, the proceeds of such recovery shall become assets of the Insurance Trust or Survivor Compensation Trust, pursuant to this Plan, the Insurance Trust Agreement, Survivor Compensation Trust Agreement, and Survivor Compensation Trust Distribution Plan.

**Article 9.**
**Means for Implementation of the Plan.**

**9.1    General Settlement of Claims and Interests.**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, in consideration for the classification, Distributions, releases, and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of Claims and Interests, including any controversies relating to the contractual, legal, and subordination rights that holders of a Claim or Interests might have with respect to any Claim or Interests under this Plan. Distributions made to holders of a Claim or Interests in any Class are intended to be final.

**9.2    Plan Implementation.**

All Distributions on account of Allowed Claims other than Survivor Claims shall be paid by the Debtor, Additional Debtors, Reorganized Debtor, or Additional Reorganized Debtors, as applicable, pursuant to and in accordance with this Plan. All Distributions on account of Survivor Claims shall be paid solely from the Trusts, pursuant to and in accordance with this Plan, the Confirmation Order, the Insurance Trust Agreement, the Survivor Compensation Trust Agreement, and Survivor Compensation Distribution Plan.

**9.3     Sources of Consideration for Distributions.**

The Debtor, Additional Debtors, Reorganized Debtor, Additional Reorganized Debtors, and other Protected Parties shall fund their obligations under this Plan using Cash on hand or otherwise available. Trust Distributions shall be funded solely from Survivor Compensation Trust Assets and Insurance Trust Assets, as applicable.

**9.4     Payments Effective Upon Tender.**

Whenever the Plan requires payment to be made to a Creditor, such payment will be deemed made and effective upon tender of such payment by the Debtor, Additional Debtor, Reorganized Debtor, Additional Reorganized Debtor, Survivor Compensation Trustee, or Insurance Trustee, as applicable, to the applicable Creditor to whom payment is due. If a Creditor refuses a tender, the amount tendered and refused will be held by the Debtor, Additional Debtor, Reorganized Debtor, Additional Reorganized Debtor, Survivor Compensation Trustee, or Insurance Trustee, as applicable, for the benefit of such Creditor pending final adjudication of the dispute; provided, however, upon the adjudication of such dispute, the Creditor shall be obligated to apply the funds in accordance with this Plan as of the date of tender; provided, further, however, the Creditor shall not have the right to claim interest or other charges or to exercise any other rights while the dispute is pending.

**9.5     Non-Monetary Plan Provisions.**

On February 13, 2026, the Bankruptcy Court entered the *Order Approving Joint Application to Employ Guidepost as Child Protection Consultant* (Dkt. No. 2049). Subject to the occurrence of the Effective Date, the Debtor, Additional Debtors, Reorganized Debtor, and Additional Reorganized Debtors have agreed to undertake certain non-monetary obligations to further enhance the existing child safety and protection policies and procedures within the Archdiocese, all as set forth in **Exhibit J** to this Plan.

**9.6     Corporate Action.**

All matters provided under this Plan involving the corporate structure of the Debtor, any Additional Debtor, or corporate action to be taken by or required by the Debtor, any Additional Debtor, Reorganized Debtor, or any Additional Reorganized Debtor shall be deemed to have occurred and be effective as provided by this Plan and shall be authorized and approved in all respects without any requirement for further approval by the Bankruptcy Court or any other governmental entity. For the avoidance of doubt, to the extent any corporate action or other transaction contemplated under this Plan would otherwise require approval under Maryland or other applicable law, the entry of the Confirmation Order shall constitute such approval.

**9.7     Agreements, Instruments, and Documents.**

All agreements, instruments, and other documents required by or under this Plan or as may be necessary, useful, or otherwise desirable in order to effectuate this Plan shall be executed before, on, or as soon as reasonably practicable after the Effective Date.

**9.8      Continuation of Insurance Policies.**

Except to the extent any Insurance Policy is sold pursuant to an Insurance Settlement Agreement and corresponding Insurance Settlement Approval Order or as otherwise provided by the terms of this Plan, all Insurance Policies shall be deemed: (a) assumed and assigned to the Insurance Trust, pursuant to sections 365, 1123(a)(5)(A), and 1123(b)(2) of the Bankruptcy Code to the extent such Insurance Policy is or was an executory contract of the Debtor or any Additional Debtor; or (b) continued in accordance with its terms pursuant to section 1123(a)(5)(A) of the Bankruptcy Code, to the extent such Insurance Policy is not an executory contract of the Debtor or an Additional Debtor, such that each of the parties' contractual, legal, and equitable rights under such Insurance Policy shall remain unaltered.

To the extent that any or all Insurance Policies are considered to be executory contracts (other than Insurance Policies sold pursuant to an Insurance Settlement Agreement and corresponding Insurance Settlement Approval Order or as otherwise provided by the terms of this Plan), this Plan shall constitute a motion to assume and assign or otherwise transfer such Insurance Policies to the Insurance Trust, pursuant to and in accordance with this Plan. Subject to the occurrence of the Effective Date, the Confirmation Order shall approve such assumption and assignment or other transfer of the Insurance Policies to the Insurance Trust.

**9.9      Effectuating Documents; Further Transactions; Transfer Tax Exemptions.**

The Debtor, Additional Debtors, Reorganized Debtor, and Additional Reorganized Debtors shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan. Pursuant to section 1146(a) of the Bankruptcy Code, the following shall not be subject to any stamp tax, real estate transfer tax, mortgage recording tax, sales or use tax, or other similar tax: (a) the creation of any mortgage, deed of trust, lien, or other security interest; (b) the making or assignment of any lease or sublease; or (c) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, or assignments executed in connection with any of the foregoing or pursuant to this Plan.

**9.10    Additional Debtors Claims.**

**9.10.1  Establishment of Additional Debtors' Claims Filing Deadline.**

Except for Additional Debtors Claims that are Previously Asserted Claims, all Proofs of Claim against any Additional Debtor, including those asserting Survivor Claims against one or more Additional Debtors, must be filed by no later than the Additional Debtors' Claims Filing Deadline.

Any Additional Debtors Claim, including any Additional Debtors Survivor Claim, that is not a Previously Asserted Claim and for which a timely Proof of Claim is not filed will automatically be disallowed, forever barred from assertion, and unenforceable against the Debtor, Reorganized Debtor, any Additional Debtors, any Reorganized Additional Debtors, their respective Estates, and

their respective property, without the need for any objection by the Reorganized Debtor or any Reorganized Additional Debtor or further notice to, or action, order, or approval of the Bankruptcy Court, and any such Additional Debtors Claim, including any Additional Debtors Survivor Claim, will be deemed fully satisfied, released, and discharged.

For the avoidance of doubt, the fact that any Additional Debtors Claim, including any Additional Debtors Survivor Claim, is or may be time-barred or subject to a statute of limitations or other defense under applicable non-bankruptcy law does not excuse the holder of such Additional Debtors Claim, including any Survivor Claimant, from compliance with the Plan, including this Section 9.9.1, the Additional Debtors' Claims Filing Deadline, or the Confirmation Order.

### 9.10.2  Procedures for Non-Survivor Claims Against Additional Debtors.

The following procedures govern the Filing of Proofs of Claim that assert Additional Debtors Claims that do not qualify as Previously Asserted Claims:

(a)      All Proofs of Claim asserting Additional Debtors Claims, including Additional Debtors Survivor Claims, shall be submitted by mail, hand delivery, or electronically as follows:

*If by First Class Mail:*

Roman Catholic Archbishop of Baltimore,
Claims Processing Center
c/o Epiq Corporate Restructuring, LLC
P.O. Box 4420
Beaverton, OR 97076-4420

*If by Hand Delivery or Overnight Mail:*

Roman Catholic Archbishop of Baltimore,
Claims Processing Center
c/o Epiq Corporate Restructuring, LLC
10300 SW Allen Blvd.
Beaverton, OR 97005

*If Electronically:*

By utilizing the website established by the Claims Agent using the interface available on such website located at https://dm.epiq11.com/RCABaltimore and following the instructions provided.

Proofs of Claim asserting an Additional Debtors Claim, including an Additional Debtors Survivor Claim, will be deemed filed only when actually received at the addresses listed above or via the Electronic Filing System for Survivor Proofs of Claim submitted electronically. ***Any Proof of Claim asserting an Additional Debtors Claim, including any***

*__Additional Debtors Survivor Claim, and sent by facsimile, telecopy, or electronic mail transmission will not be accepted.__*

(b)      Any Proof of Claim asserting an Additional Debtors Claim must (i) be signed by the Claimant or the Claimant's legal representative (including documentation confirming the legal ability of the signatory to act on behalf of the Claimant), (ii) include supporting documentation (if voluminous, attach a summary) or an explanation as to why documentation is not available, and (iii) be in the English language.

(c)      The Claims and Noticing Agent will assign to each Additional Debtors Claim, including each Additional Debtors Survivor Claim, a unique identifier code and will maintain a list of such Claimants, their corresponding identifier code, and the Proof of Claim associated with such Additional Debtors Claim.

### 9.10.3  Special Procedures for Additional Debtors Survivor Claims.

The following additional procedures govern the filing of Proofs of Claim asserting Additional Debtors Survivor Claims that do not constitute Previously Asserted Claims:

(a)      Persons asserting an Additional Debtors Survivor Claim shall include with their Proof of Claim sufficient information to substantiate the Additional Debtors Survivor Claim. **The failure to provide sufficient information to substantiate an Additional Debtors Survivor Claim may be a basis for an objection to such Additional Debtors Survivor Claim or otherwise result in a formal request for more information.** A Survivor Claimant may provide such information by completing (and attaching to the proof of claim form) a Sexual Abuse Claim Supplement. Alternatively, a Survivor Claimant may provide such information by including in the proof of claim form or an attachment thereto information substantially similar to the information requested by the Sexual Abuse Claim Supplement.

(b)      All Proofs of Claim asserting an Additional Debtors Survivor Claim shall be subject to the confidentiality procedures and treatment provided in *Order (I) Establishing Deadlines for Filing Proofs of Claim; (II) Approving Sexual Abuse Claim Supplement; (III) Approving Form and Manner of Notice; and (IV) Approving Confidentiality Procedures* (Dkt. No. 316).

(c)      Any Proof of Claim asserting an Additional Debtors Survivor Claim must (i) be signed by the Survivor Claimant or the Survivor Claimant's legal representative (including documentation confirming the legal ability of the signatory to act on behalf of the Survivor Claimant), (ii) include supporting documentation (if voluminous, attach a summary) or an explanation as to why documentation is not available, and (iii) be in the English language.

(d)      Pursuant to Bankruptcy Rule 3003(c)(2), all Claimants holding an Additional Debtors Survivor Claim who fail to comply with this Section 9.9 of the Plan by timely Filing a Proof of Claim in appropriate form will not be treated as a Survivor Claimant with respect to such Survivor Claim for the purpose of Survivor Compensation

Trust Distributions and automatically will be disallowed, forever barred from assertion, and unenforceable against the Debtor, Reorganized Debtor, any Additional Debtors, any Reorganized Additional Debtors, their respective Estates, and their respective property, without the need for any objection by the Reorganized Debtor or any Reorganized Additional Debtor or further notice to, or action, order, or approval of the Bankruptcy Court, and any such Additional Debtors Claim, including any Additional Debtors Survivor Claim, will be deemed fully satisfied, released, and discharged.

**9.10.4** The Debtor, Additional Debtors, and Claims and Noticing Agent are authorized and empowered to take such steps and perform such acts as may be necessary to implement and effectuate the terms of this Section 9.9 of the Plan.

**9.10.5** Nothing in this Section 9.9 of the Plan will (a) prejudice the right of the Additional Debtors, the Reorganized Additional Debtors, the Survivor Compensation Trust, the Survivor Compensation Trustee, any Covered Party, or any Non-Settling Insurers to dispute or assert offsets or defenses to any Survivor Claim, (b) limit the releases, discharges, and injunctions set forth elsewhere in the Plan or the Confirmation Order, or (c) be construed to modify, amend, or enlarge any Claimant's rights with respect to any Claim.

**9.11    Continued Corporate Existence and Vesting of Assets.**

As of the Effective Date: (a) the Debtor will continue, as the Reorganized Debtor, to exist as a legal entity, with all of the powers of such legal entity under applicable law and without prejudice to any right to alter or terminate such existence (by merger, dissolution or otherwise) under applicable law; (b) each Additional Debtor will continue, as a Reorganized Additional Debtor, to exist as a legal entity, with all of the powers of such legal entity under applicable law and without prejudice to any right to alter or terminate such existence (by merger, dissolution or otherwise) under applicable law, and (c) property of the respective Estates, and any property acquired by the Debtor, Reorganized Debtor, Additional Debtors, or Reorganized Additional Debtors, as applicable, will vest in the Reorganized Debtor or Reorganized Additional Debtors, as applicable, free and clear of all Claims, Liens, charges, and other interests, except as expressly provided in this Plan. Except as otherwise provided by this Plan, the Reorganized Debtor and Reorganized Additional Debtors may, on and after the Effective Date, operate, use, acquire, and dispose of property, and compromise or settle any Claims (other than Survivor Claims subject to this Plan), without supervision or approval by the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. On and after the Effective Date, the Debtor as the Reorganized Debtor and the Additional Debtors as the Reorganized Additional Debtors will continue to operate in accordance with the principles of their respective missions, Canon Law, and applicable laws.

**Article 10.**
**Distributions and Claims Administration for Claims Other Than Survivor Claims.**

**10.1    Distributions.**

Unless otherwise provided in this Plan, Distributions for Claims other than Survivor Claims shall be made by the Debtor, Additional Debtors, Reorganized Debtor, or Additional Reorganized Debtors, as applicable.

**10.2    Method of Payment.**

Except with respect to Survivor Claims, payments under this Plan will be made by check, mailed with first class postage prepaid, to the holder of each Claim at: (a) the address listed on its Proof of Claim as of the Record Date (or by such other method as may be agreed to by the Reorganized Debtor and holder of the applicable Claim); or (b) if no Proof of Claim has been filed by the date of the hearing on confirmation, to the address listed on the Schedules as of the Record Date. Holders of Claims as of the Record Date may contact the Reorganized Debtor and Additional Reorganized Debtors to amend their addresses as follows: (a) by e-mailing RCABaltimore@epiqglobal.com; (b) by first class mail to Roman Catholic Archbishop of Baltimore Claims Processing Center, c/o Epiq Corporate Restructuring, LLC, P.O. Box 4421 Beaverton, Oregon 97076-4421; or (c) by hand delivery or overnight mail to Roman Catholic Archbishop of Baltimore Claims Processing Center, c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, Oregon 97005.

**10.3    Reservation of Rights to Object to Claims.**

Unless a Claim is expressly described as an Allowed Claim pursuant to or under this Plan or otherwise becomes an Allowed Claim prior to the Effective Date, upon the Effective Date, the Reorganized Debtor, Additional Reorganized Debtors, Insurance Trustee, or Survivor Compensation Trustee, as applicable, shall have and retain any and all objections to any and all Claims and motions or other requests for the payment of Claims, including any and all objections to the validity or amount of any and all alleged Administrative Expenses and Priority Tax Claims. The failure to object to any Claim in this Chapter 11 Case or the Additional Debtor Chapter 11 Cases shall be without prejudice to the Reorganized Debtor's, any Additional Reorganized Debtor's, Insurance Trustee's, or Survivor Compensation Trustee's, as applicable, right to contest or otherwise defend against such Claim in the Bankruptcy Court when or if such Claim is sought to be enforced by the holder of such Claim.

**10.4    Filing of Objections.**

Except with respect to Survivor Claims or Administrative Expenses, any objections to Claims will be filed within ninety (90) days after the Effective Date, unless such day is not a Business Day in which case such deadline will be the next Business Day after the ninetieth (90th) day after the Effective Date, or at such later date as approved by the Bankruptcy Court upon request from the Reorganized Debtor or any Additional Reorganized Debtor. Any objections to Claims arising solely under section 502(d) of the Bankruptcy Code are not subject to the ninety (90) day deadline and may be pursued through an adversary proceeding asserting a Claim under Chapter 5

63

of the Bankruptcy Code. An objection to any Claim will be deemed properly served on the Claimant, if the Reorganized Debtor or Reorganized Additional Debtor, as applicable, effects service by any of the following methods: (a) in accordance with Bankruptcy Rule 7004; (b) by first class mail on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment to same; or (c) by first class mail on any counsel that has appeared on behalf of the holder of the Claim in the Chapter 11 Case.

### 10.5 Procedures for Treating and Resolving Disputed Claims.

#### 10.5.1 No Distributions Pending Allowance.

Notwithstanding any other provision in this Plan, no payments or distributions will be made with respect to all or any portion of a Disputed Claim, unless and until all objections to such Disputed Claim have been settled, withdrawn, or determined by a Final Order.

#### 10.5.2 Claim Estimation.

Except with respect to Survivor Claims, the Debtor or the Additional Debtors may seek a Bankruptcy Court order requiring the estimation or limitation of any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code. Unless provided otherwise in an order of the Bankruptcy Court, the estimated amount shall constitute the Allowed amount of such Claim or a maximum limitation on such Claim, as the Bankruptcy Court may direct; provided, however, that if the estimate constitutes the maximum limitation on such Claim, the Debtor or Additional Debtor, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of such Claim; provided, further, however, nothing in this Section 10.5.2 shall limit the rights granted by section 502(j) of the Bankruptcy Code.

#### 10.5.3 No Distribution if Cause of Action Asserted.

Notwithstanding any other provision of this Plan, no payment or Distribution will be made with respect to all or any portion of a Claim or Allowed Claim held by a claimant against whom an Avoidance Action is asserted unless and until such Avoidance Action has been settled or withdrawn or has been determined by a Final Order.

#### 10.5.4 Payment Upon Allowance and Disallowance of Disputed Claims.

At such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the Reorganized Debtor or Additional Reorganized Debtor, as applicable, shall distribute to the holder of such Allowed Claim the Distribution(s) to which the holder is then entitled under this Plan. Such Distribution, if any, shall be made as soon as reasonably practicable after entry of a Final Order allowing such Claim.

### 10.6 Record Date.

The Record Date for Claim transfers is the Confirmation Date. Claim transfers will not be recognized after the Confirmation Date. Payment under the Plan will be mailed to the address of the holder of the Claim as of the Record Date until the holder of the Claim as of the Record Date notifies the Reorganized Debtor or applicable Additional Reorganized Debtor in writing of a

different address as follows: (a) by e-mailing RCABaltimore@epiqglobal.com; (b) by first class mail to Roman Catholic Archbishop of Baltimore Claims Processing Center, c/o Epiq Corporate Restructuring, LLC, P.O. Box 4421 Beaverton, Oregon 97076-4421; or (c) by hand delivery or overnight mail to Roman Catholic Archbishop of Baltimore Claims Processing Center, c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, Oregon 97005.

### 10.7    De Minimis Distributions.

The Reorganized Debtor and Additional Reorganized Debtors shall not be required to make any payment of less than fifty dollars ($50.00) with respect to any Allowed General Unsecured Claim.

### 10.8    Unclaimed Payments.

In the event a payment is returned to the Reorganized Debtor or an Additional Reorganized Debtor as unclaimed with no indication of the payee's forwarding address, the Reorganized Debtor or Additional Reorganized Debtor, as applicable, shall hold such payment for a period of one hundred eighty (180) days from the date of return. If not claimed by the payee by the end of the one hundred eighty (180) day period, the funds will be retained by the Reorganized Debtor or Additional Reorganized Debtor, as applicable, and the applicable claim shall be discharged and forever barred.

### 10.9    Time Bar to Check Payments.

Checks issued by the Reorganized Debtor or any Additional Reorganized Debtor shall be null and void if not negotiated within one hundred eighty (180) days from and after the date of issuance. Requests for reissuance of any check shall be made to the Reorganized Debtor or Additional Reorganized Debtor, as applicable, by the holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check must be made on or before two hundred ten (210) days after the date of issuance of such check. After two hundred ten (210) days after issuance of a non-negotiated check for which the holder of the Allowed Claim did not request reissuance, all claims in respect of voided checks shall be discharged and forever barred.

### 10.10   Compliance With Tax Requirements.

Notwithstanding any other provisions of this Plan: (a) each recipient of a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any taxing authority, including income, withholding, and other tax obligations on account of such Distribution; and (b) no Distribution shall be made to or on behalf of such recipient unless and until such holder has made arrangements satisfactory to the Reorganized Debtor or applicable Additional Reorganized Debtor for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon the Reorganized Debtor or Additional Reorganized Debtor, as applicable, in connection with such Distribution.

65

**10.11   Setoffs and Recoupments.**

The Reorganized Debtor, Additional Reorganized Debtors, Insurance Trustee, or Survivor Compensation Trustee, as applicable, may, pursuant to applicable non-bankruptcy law, set off against or recoup from any Distribution(s) to be made pursuant to the Plan, any Cause of Action the Debtor, Additional Debtors, Reorganized Debtor, Additional Reorganized Debtors, Insurance Trustee, or Survivor Compensation Trustee, as applicable, may hold against the holder of such Allowed Claim that are not otherwise waived, released, or compromised pursuant to or in accordance with this Plan; provided, however, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim under this Plan shall constitute a waiver or release of any such Causes of Action against a holder of a Claim.

## Article 11.
## Executory Contracts and Unexpired Leases.

**11.1   Assumption or Rejection of Executory Contracts and Unexpired Leases.**

Each Assumed Agreement shall be assumed as of the Effective Date, to the extent that each such Assumed Agreement has not already expired, concluded, or terminated under its own terms, without the need for any further notice to, or action, order, or approval of, the Bankruptcy Court under sections 365 and 1123 of the Bankruptcy Code. All other executory contracts, unexpired leases, or other agreements that are not Assumed Agreements and were not previously assumed or rejected by order of the Bankruptcy Court in the Chapter 11 Case shall be deemed rejected as of the Effective Date. Entry of the Confirmation Order shall constitute, pursuant to sections 365 and 1123 of the Bankruptcy Code, approval of the rejection of all such executory contracts and unexpired leases.

**11.2   Cure of Defaults.**

Not later than twenty-four (24) days prior to the confirmation hearing, the Debtor and Additional Debtors shall provide notices of proposed Cure Amounts to the counterparties to the Assumed Agreements proposed to be assumed under the Plan, which notices shall include a description of the procedures for objecting to the Cure Amount, the ability of the Debtor or applicable Additional Debtor to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code under the Assumed Agreement, and any other matter pertaining to assumption.

UNLESS OTHERWISE AGREED IN WRITING BY THE PARTIES TO THE APPLICABLE ASSUMED AGREEMENT, ANY OBJECTION BY A COUNTERPARTY TO AN ASSUMED AGREEMENT TO A PROPOSED ASSUMPTION OR RELATED CURE AMOUNT MUST BE FILED, SERVED, AND ACTUALLY RECEIVED BY COUNSEL TO THE DEBTOR AND ANY APPLICABLE ADDITIONAL DEBTOR WITHIN TWENTY-ONE (21) DAYS OF THE SERVICE OF THE NOTICE OF PROPOSED ASSUMPTION AND CURE AMOUNT, OR SUCH SHORTER PERIOD AS AGREED TO BY THE PARTIES OR AUTHORIZED BY THE BANKRUPTCY COURT. ANY COUNTERPARTY TO AN ASSUMED AGREEMENT THAT FAILS TO TIMELY OBJECT TO THE PROPOSED ASSUMPTION OR CURE AMOUNT SHALL BE DEEMED TO HAVE CONSENTED TO SUCH ASSUMPTION AND CURE AMOUNT AND SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM CONTESTING THE DEBTOR'S OR APPLICABLE ADDITIONAL

66

**DEBTOR'S ASSUMPTION OF THE APPLICABLE ASSUMED AGREEMENT AND FROM REQUESTING PAYMENT OF A CURE AMOUNT THAT DIFFERS FROM THE AMOUNTS PAID OR PROPOSED TO BE PAID BY THE DEBTOR, ADDITIONAL DEBTOR, REORGANIZED DEBTOR, OR ADDITIONAL REORGANIZED DEBTOR, IN EACH CASE WITHOUT THE NEED FOR ANY OBJECTION BY THE DEBTOR, ADDITIONAL DEBTOR, REORGANIZED DEBTOR, OR ADDITIONAL REORGANIZED DEBTOR OR ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT. THE REORGANIZED DEBTOR OR APPLICABLE ADDITIONAL REORGANIZED DEBTOR MAY SETTLE ANY CURE AMOUNT WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.**

The Debtor, Additional Debtors, Reorganized Debtor, or Additional Reorganized Debtors, as applicable, shall pay undisputed Cure Amounts, if any, on the Effective Date or as soon as reasonably practicable thereafter, or on such other terms as the parties may agree. If there is a dispute regarding the Cure Amount, the ability of the Debtor or an Additional Debtor, as applicable, to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code under the applicable Assumed Agreement, or any other matter pertaining to assumption, then the Debtor, Additional Debtor, Reorganized Debtor, or Additional Reorganized Debtor, as applicable, shall pay the applicable Cure Amount as soon as reasonably practicable after entry of a Final Order resolving such dispute and approving such assumption, or as may otherwise be agreed upon by the Debtor, Additional Debtor, Reorganized Debtor, or Additional Reorganized Debtor, as applicable, and the counterparty to the Assumed Agreement. The payment of Cure Amounts required by section 365(b)(1) of the Bankruptcy Code following the entry of a Final Order resolving the dispute and approving the assumption shall not prevent or delay implementation of the Plan or occurrence of the Effective Date.

The Debtor's and Additional Debtors' assumption of any Assumed Agreement pursuant to this Plan or otherwise and payment of the applicable Cure Amount shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Agreement at any time prior to the effective date of assumption.

**ANY AND ALL PROOFS OF CLAIM BASED UPON ASSUMED AGREEMENTS THAT HAVE BEEN ASSUMED IN THE CHAPTER 11 CASE OR THE ADDITIONAL DEBTOR CHAPTER 11 CASES, INCLUDING PURSUANT TO THE CONFIRMATION ORDER, SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE LATER OF (A) THE DATE OF ENTRY OF AN ORDER OF THE BANKRUPTCY COURT (INCLUDING THE CONFIRMATION ORDER) APPROVING SUCH ASSUMPTION, (B) THE EFFECTIVE DATE OF SUCH ASSUMPTION, AND (C) THE EFFECTIVE DATE, IN WHICH CASE WITHOUT THE NEED FOR ANY OBJECTION BY THE DEBTOR, ADDITIONAL DEBTORS, REORGANIZED DEBTOR, OR ADDITIONAL REORGANIZED DEBTORS OR ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.**

### 11.3    Bar Dates for Rejection Damage Claims.

To the extent not subject to a claim filing deadline set forth in any prior or subsequent order of the Bankruptcy Court, claims arising out of the rejection of an executory contract or unexpired lease pursuant to Section 11.1 of this Plan must be filed with the Bankruptcy Court no later than

67

thirty (30) days after the entry of the Confirmation Order and, upon allowance, shall be an Allowed General Unsecured Claim.

ANY CLAIM ARISING OUT OF THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT IS NOT TIMELY FILED SHALL BE AUTOMATICALLY DISALLOWED, FOREVER BARRED FROM ASSERTION, AND UNENFORCEABLE AGAINST THE DEBTOR, ADDITIONAL DEBTORS, REORGANIZED DEBTOR, ADDITIONAL REORGANIZED DEBTORS, ESTATES, OR ANY PROPERTY OF THE FOREGOING, WITHOUT THE NEED FOR ANY OBJECTION BY THE REORGANIZED DEBTOR OR ADDITIONAL REORGANIZED DEBTORS OR FURTHER ACTION, ORDER, OR APPROVAL BY THE BANKRUPTCY COURT, AND ANY SUCH CLAIM SHALL BE DEEMED FULLY SATISFIED, RELEASED, AND DISCHARGED, NOTWITHSTANDING ANY CLAIM OR PROOF OF CLAIM TO THE CONTRARY.

### 11.4    Contracts and Leases Entered After the Petition Date.

Contracts and leases entered into after the Petition Date by the Debtor or Additional Debtors, including any Assumed Agreement assumed by the Debtor or Additional Debtors, will be performed by the Debtor, Additional Debtors, Reorganized Debtor, or Additional Reorganized Debtors, as applicable, in the ordinary course of business. Accordingly, such contracts and leases, including any Assumed Agreements, shall survive and remain unaffected by entry of the Confirmation Order.

### 11.5    Compensation and Benefits Programs.

Other than any Compensation and Benefits Programs assumed by the Debtor or Additional Debtors prior to the entry of the Confirmation Order, all of the Compensation and Benefits Programs entered into before the Petition Date and not since terminated shall be deemed to be, and shall be treated as though they are, Assumed Agreements under this Plan and deemed assumed under sections 365 and 1123 of the Bankruptcy Code, and the Debtor's, Additional Debtors', Reorganized Debtor's, and Additional Reorganized Debtors' obligations under the Compensation and Benefits Programs survive and remain unaffected by entry of the Confirmation Order and will be fulfilled in the ordinary course of the Debtor's, Additional Debtors', Reorganized Debtor's, and Additional Reorganized Debtors' operations. Compensation and Benefits Programs assumed by the Debtor and Additional Debtors prior to the entry of the Confirmation Order shall continue to be fulfilled in the ordinary course of the Debtor's, Additional Debtors', Reorganized Debtor's, and Additional Reorganized Debtors' operations from and after the date of any order of the Bankruptcy Court authorizing the assumption of such Compensation and Benefits Programs.

### 11.6    Workers' Compensation Programs.

As of the Effective Date, the Debtor, Additional Debtors, Reorganized Debtor, and Additional Reorganized Debtors shall continue to honor their obligations under: (a) all applicable workers' compensation laws; and (b) the Workers' Compensation Program. For the avoidance of doubt, all written contracts and agreements related to the Workers' Compensation Program shall be deemed executory contracts and assumed as of the Petition Date. No Insurer shall be required to file a Proof of Claim, and any amount due and owing under a written contract or agreement related to the Workers' Compensation Program shall be paid in the ordinary course under such

written contract or agreement. All Proofs of Claim on account of the Workers' Compensation Program shall be deemed withdrawn automatically and without any further notice to or action, order, or approval of the Bankruptcy Court; provided, however, that nothing in this Plan shall limit, diminish, or otherwise alter the Debtor's, Additional Debtors', Reorganized Debtor's, or Additional Reorganized Debtors' defenses, Causes of Action, or other rights under applicable non-bankruptcy law with respect to the Workers' Compensation Program; provided, further, however, that nothing in this Plan shall be deemed to impose any obligations on the Debtor, Additional Debtors, or their Insurers in addition to what is provided for under the terms of the Workers' Compensation Program and applicable state law.

**11.7 Modifications, Amendments, Supplements, Restatements, or Other Agreements.**

Unless otherwise provided in this Plan, each Assumed Agreement that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Assumed Agreement, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless the Debtor or an applicable Additional Debtor rejects or repudiates any of the foregoing agreements. Modifications, amendments, and supplements to, or restatements of, prepetition Assumed Agreements that have been executed by the Debtor during the Chapter 11 Case or the Additional Debtors during the Additional Debtor Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Assumed Agreement, or the validity, priority, or amount of any Claims that may arise in connection with such Assumed Agreement.

**11.8 Reservation of Rights.**

Nothing contained in this Plan shall constitute an admission by the Debtor or any Additional Debtor that a contract or lease is in fact an Assumed Agreement or that the Reorganized Debtor or any Additional Reorganized Debtor has any liability under any contract or lease. If there is a dispute as of the Confirmation Date regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtor or applicable Additional Debtor, or, after the Effective Date, the Reorganized Debtor or applicable Additional Reorganized Debtor, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease, including by rejecting such contract or lease retroactive to the Confirmation Date.

**Article 12.**
**Confirmation and Consummation of the Plan.**

**12.1 Conditions Precedent to Confirmation.**

Confirmation of the Plan shall not occur unless all of the following conditions precedent have been satisfied:

(i).   the Confirmation Order is in form and substance acceptable to the Plan Proponents, Related Non-Debtor Entities, and any Settling Insurers;

69

(ii).     the Confirmation Order shall approve and implement the Channeling Injunction and Supplemental Settling Insurer Injunction as set forth in this Plan and any other Insurance Settlement Approval Order,

(iii).     any Insurance Settlement Approval Order related to any Insurance Settlement Agreement agreed to prior to the Confirmation Date shall have been entered; and

(iv).     the Plan Documents shall be in form and substance acceptable to the Plan Proponents and any Settling Insurers.

**12.2     Conditions Precedent to the Effective Date.**

The Effective Date shall not occur, and this Plan shall not be consummated, unless and until each of the following conditions have been satisfied:

(i).     the Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Plan Proponents, Related Non-Debtor Entities, and any Settling Insurers, the Confirmation Order shall be a Final Order, and no stay of the Confirmation Order shall then be in effect;

(ii).     each Insurance Settlement Agreement agreed to prior to the Confirmation Date shall have been duly executed by all parties to such Insurance Settlement Agreement and filed with the Bankruptcy Court, in each case in form and substance satisfactory to the Plan Proponents and applicable Settling Insurers;

(iii).     the Survivor Compensation Trustee, Reorganized Debtor, and Additional Reorganized Debtors shall have executed the Survivor Compensation Trust Agreement;

(iv).     the Insurance Trustee, Reorganized Debtor, and Additional Reorganized Debtors shall have executed the Insurance Trust Agreement;

(v).     each Insurance Settlement Approval Order shall have become a Final Order;

(vi).     the payments described in Section 4.2.1 and Section 4.2.2 shall have been made to, and received by, the Survivor Compensation Trust;

(vii).     the payments described in Section 5.2.1 and Section 5.2.2 shall have been made to, and received by, the Insurance Trust;

(viii).     this Plan shall not have been materially amended, altered, or modified as confirmed by the Confirmation Order, unless such material amendment, alteration, or modification has been made with the consent of the Plan Proponents and any Settling Insurers;

(ix).     the Debtor and Additional Debtors shall have obtained any approvals required by or pursuant to the Code of Canon Law;

(x).     the Additional Debtor Petition Dates shall have occurred; and

(xi).    the Debtor shall have filed a notice of occurrence of the Effective Date.

**12.3    Waiver of Conditions Precedent to the Effective Date.**

Each of the conditions precedent to the occurrence of the Effective Date set forth in Section 12.2 of this Plan may only be waived in whole or in part by the Plan Proponents with the written consent of any Settling Insurers, and shall not require notice to or leave or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

**12.4    Effect of Non-Occurrence of Conditions.**

If substantial consummation of the Plan does not occur, the Plan will be null and void in all respects, and nothing in this Plan or the Disclosure Statement will: (a) constitute a waiver or release of any Claims by or against the Protected Parties or any Settling Insurer; (b) prejudice in any manner the rights of the Protected Parties, the Trusts, or any Settling Insurer; (c) constitute an admission, acknowledgement, offer, or undertaking by the Protected Parties or any Settling Insurer in any respect, including in any Action against the Debtor or any Additional Debtor; or (d) be admissible in any Action against the Protected Parties or any Settling Insurer in any court or other forum.

**Article 13.**
**Effects of Confirmation.**

**13.1    Binding Effect.**

As of the Effective Date, all provisions of the Plan Documents shall be binding upon the Debtor, the Additional Debtors, the Estates, the Reorganized Debtor, the Additional Reorganized Debtors, all holders of Claims or Interests, each such holder's respective successors and assigns, and all other Persons that are affected in any manner by the Plan, including the Insurers, regardless of whether the Claim or Interest of such holder is Impaired under the Plan and whether such holder has accepted the Plan. Except as otherwise expressly provided in the Plan, all Plan Documents shall be given full force and effect and shall bind all Persons referred to therein on and after the Effective Date, whether or not such agreements are actually issued, delivered, or recorded on or after the Effective Date and whether or not such Persons have actually executed such agreement(s).

**13.2    Discharge.**

**13.2.1  Discharge of the Debtor.**

All consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, termination, and release of, all Claims and Interests of any nature whatsoever against or in the Debtor or any of the Debtor's assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date. As of the Effective Date and except as expressly provided in the Plan or the Confirmation Order, the Debtor shall be discharged and released, and each holder of a Claim or Interest (including any successor, assign, and Affiliate of such holder) shall be deemed to have forever waived, discharged, and released the Debtor, to the fullest extent permitted by section 1141

71

of the Bankruptcy Code, of and from any and all Claims and Interests based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, in each case whether or not (a) a proof of claim with respect to such Claim or Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a proof of claim with respect to such Claim or Interest is Allowed under section 502 of the Bankruptcy Code, or (c) the holder of such Claim or Interest is deemed to have accepted the Plan.

### 13.2.2  Discharge of the Additional Debtors.

All consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, termination, and release of, all Claims and Interests of any nature whatsoever against or in the Additional Debtors or any of the Additional Debtors' assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date. As of the Effective Date and except as expressly provided in the Plan or the Confirmation Order, the Additional Debtors shall be discharged and released, and each holder of a Claim or Interest (including any successor, assign, and Affiliate of such holder) shall be deemed to have forever waived, discharged, and released the Additional Debtors, to the fullest extent permitted by section 1141 or 1192 of the Bankruptcy Code, as applicable, of and from any and all Claims and Interests based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, in each case whether or not (a) a proof of claim with respect to such Claim or Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a proof of claim with respect to such Claim or Interest is Allowed under section 502 of the Bankruptcy Code, or (c) the holder of such Claim or Interest is deemed to have accepted the Plan.

### 13.2.3  Discharge Injunction.

As of the Effective Date, except as expressly provided in the Plan or the Confirmation Order, all holders of Claims or Interests of any nature whatsoever against or in the Debtor, Additional Debtors, or any of their assets or properties based upon an act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date shall be precluded and permanently enjoined from prosecuting or asserting any such discharged Claim or Interest against the Debtor, Additional Debtors, Reorganized Debtor, Additional Reorganized Debtors, or the property of the Debtor, Additional Debtors, Reorganized Debtor, or Additional Reorganized Debtors. In accordance with the foregoing, except as expressly provided in the Plan or Confirmation Order, the Confirmation Order shall be a judicial determination of discharge or termination of all Claims and Interests against or in the Debtor and Additional Debtors, pursuant to sections 105, 524, 1141, and 1192 of the Bankruptcy Code, as applicable, and such discharge shall void any judgment obtained against the Debtor or Additional Debtors to the extent such judgment relates to a discharged Claim or Interest.

**13.3     Channeling Injunction Preventing Prosecution of Claims Against Protected Parties and Settling Insurers.**

**As set forth in each Insurance Settlement Agreement and each Insurance Settlement Approval Order, in consideration of the undertakings of the Protected Parties and Settling Insurers under each Insurance Settlement Agreement, and this Plan, including their**

72

contributions to the Insurance Trust, contributions to the Survivors Compensation Trust, and other consideration, to further preserve and promote the agreements between and among the Protected Parties and Settling Insurers, and to supplement where necessary the injunctive effect of the discharge as provided in sections 524 and 1141 of the Bankruptcy Code, and pursuant to sections 105 and 363 of the Bankruptcy Code:

(a).    any and all Channeled Claims are channeled into the Trusts, as applicable, and shall be treated, administered, determined, and resolved under the procedures and protocols and in the amounts established under this Plan, the Insurance Trust Agreement, and the Survivor Compensation Trust Agreement, as the sole and exclusive remedy for all holders of Channeled Claims;

(b).    any and all Persons who have held or asserted, hold or assert, or may in the future hold or assert any Channeled Claims are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly, indirectly, or derivatively, for the purposes of asserting, enforcing, or attempting to assert or enforce any Channeled Claim against the Protected Parties or Settling Insurers, including:

(i).    commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any Action, suit, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world with respect to any Channeled Claim against or affecting any Protected Party, any Settling Insurer, or any property or interest in property of any Protected Party or Settling Insurer;

(ii).    enforcing, levying, attaching (including any prejudgment attachment), collecting, recovering, or seeking to accomplish any of the preceding by any manner or means with respect to, any judgment, award, decree, or order relating to a Channeled Claim against or affecting any Protected Party, any Settling Insurer, or any property or interest in property of any Protected Party or Settling Insurer;

(iii).    creating, perfecting, enforcing, or seeking to accomplish any of the preceding with respect to any lien or encumbrance of any kind relating to a Channeled Claim against or affecting any Protected Party, any Settling Insurer, or any property or interest in property of any Protected Party or Settling Insurer;

(iv).    asserting, implementing, or effectuating any Channeled Claim of any kind against: (A) any obligation due any Protected Party or Settling Insurer; (B) any Protected Party or Settling Insurer; or (C) the property of any Protected Party or Settling Insurer;

(v).    taking any act, in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of this Plan, the Plan

73

Documents, the Insurance Trust Documents, or the Survivor Compensation Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to the Survivor Compensation Trust; and

(vi).    asserting or accomplishing any setoff, right of indemnity or reimbursement, subrogation, contribution, or recoupment of any kind against an obligation owed to any Protected Party or Settling Insurer, or any property or interest in property of any Protected Party or Settling Insurer.

This Channeling Injunction is an integral part of: (y) each Insurance Settlement and this Plan; and (z) the implementation each Insurance Settlement Agreement and this Plan. It is intended that the channeling of the Channeled Claims provided in each Insurance Settlement Agreement, each Insurance Settlement Approval Order, and this Plan shall inure to the benefit of each Protected Party and Settling Insurer. The Channeling Injunction shall become effective with respect to: (a) each Settling Insurer as of the occurrence of all conditions to the effectiveness of such Settling Insurer's Insurance Settlement Agreement and the occurrence of the Effective Date; and (b) each Protected Party as of the occurrence of the Effective Date. In a successful Action to enforce the injunctive provisions of any Insurance Settlement Approval Order, or this Section 13.3 of the Plan in response to a willful violation of same, the moving party shall be entitled to recover all costs and expenses incurred, including reasonable attorney's fees and costs, from the non-moving part, and such other legal or equitable remedies as re just and proper.

13.4    Supplemental Settling Insurer Injunction.

As set forth in each Insurance Settlement Agreement and Insurance Settlement Approval Order, pursuant to sections 105(a), 363, and 1123 of the Bankruptcy Code, and in consideration of the undertakings of each Settling Insurer pursuant to the applicable Insurance Settlement Agreement and Insurance Settlement Approval Order, including each Settling Insurer's purchase of the applicable Settling Insurer Policies free and clear of all liens, Claims and Interests of all Persons pursuant to sections 363(b), (f), and (m) of the Bankruptcy Code, any and all Persons who have held, now hold, or who may in the future hold any Claims or Interests (including all debt holders, all equity holders, all Persons holding a Claim, governmental, tax, and regulatory authorities, lenders, trade and other creditors, Survivor Claimants, perpetrators, and all other holding Interests of any kind or nature whatsoever, including those Claims released or to be released pursuant to the Insurance Settlement Agreements and Insurance Settlement Approval Orders) against any of the Settling Insurers arising out of or relating in any way to such Settling Insurer's Settling Insurer Policies, including (i) Survivor Claims, Indirect Claims, and Released Claims, (ii) the payment of any of the Claims identified in (i), including Contribution Claims, Non-Settling Insurer Contribution Claims, and Medicare Claims, and (iii) Extra-Contractual Claims are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly, indirectly, or derivatively, to assert, enforce or attempt to assert or enforce any such Claim or Interest against the Settling Insurers or Settling Insurer Policies, including:

74

(a).      commencing, conducting, or continuing in any manner, whether directly, indirectly, or derivatively, any Action, suit, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world with respect to any Settling Insurer or any property or interest in property of any Settling Insurer;

(b).      enforcing, levying, attaching (including any prejudgment attachment), collecting, recovering, or seeking to accomplish any of the preceding by any manner or means with respect to, any judgment, award, decree, or order against or affecting any Settling Insurer or any property or interest in property of any Settling Insurer;

(c).      creating, perfecting, enforcing, or seeking to accomplish any of the preceding with respect to, any lien or encumbrance of any kind against or affecting any Settling Insurer or any property or interest in property of any Settling Insurer;

(d).      asserting, implementing, or effectuating any setoff, right of indemnity or reimbursement, subrogation, contribution, or recoupment of any kind against any obligation due any Settling Insurer or any property or interest in property of any Settling Insurer; or

(e).      taking any act, in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of this Plan, the Plan Documents, the Insurance Trust Documents, or the Survivor Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to the Survivor Compensation Trust.

This Supplemental Settling Insurer Injunction is an integral part of: (y) each Insurance Settlement Agreement and this Plan; and (z) the implementation of each Insurance Settlement Agreement and this Plan. The Supplemental Settling Insurer Injunction will be effective with respect to each Settling Insurer only as of the occurrence of: (i) all conditions necessary for the effectiveness of such Settling Insurer's Insurance Settlement Agreement and Insurance Settlement Approval Order; and (ii) the Effective Date. The Supplemental Settling Insurer Injunction bars the above-referenced actions against the Settling Insurers (and such Settling Insurers' Affiliates), property and interests in property of the Settling Insurers, and the Settling Insurer Policies, but against no other Person or thing; provided, however, the Supplemental Settling Insurer Injunction shall not limit or otherwise be deemed to limit the scope of the discharge or Channeling Injunction in favor of the Debtor, Reorganized Debtor, and other Protected Parties.

13.5      [Reserved.]

13.6      Gatekeeper Injunction.

To the extent permitted by law, and subject in all respects to this Article 13, no Enjoined Party may commence or pursue against any Protected Party or Settling Insurer (a) a Survivor Claim or (b) any other Claim or Cause of Action that arose or arises from or is related to a Survivor Claim, the Chapter 11 Case, the Additional Debtor Chapter 11 Cases,

75

**the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the reorganization of the business of the Debtor, Additional Debtors, Reorganized Debtor, and Additional Reorganized Debtors, the administration of the Trusts, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim against a Protected Party or Settling Insurer that is not stayed, released, discharged, enjoined, restrained or otherwise barred under this Plan or an applicable Insurance Settlement Approval Order and (ii) subject in all respects to the Channeling Injunction, the Discharge Injunction, and the Supplemental Settling Insurer Injunction, specifically authorizing such Enjoined Party to bring such Claim or Cause of Action against any such Protected Party or Settling Insurer. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in <u>Article 14</u> of this Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action or, alternatively, with respect to a Survivor Claim, order that such Claim or Cause of Action be only pursued and resolved as expressly provided in <u>Article 6</u> of this Plan.**

**For the avoidance of doubt, the Gatekeeper Injunction in this <u>Article 13</u> does not apply to Claims seeking recovery from Non-Settling Insurers.**

**13.7    Injunction Against Interference With Plan.**

Upon entry of the Confirmation Order, all holders of Claims and Interests shall be precluded and enjoined from taking any actions to interfere with the implementation and consummation of the Plan.

**13.8    Exculpation of Exculpated Parties.**

**From and after the Effective Date, none of the Exculpated Parties shall have or incur any liability for, and each Exculpated Party shall be released from, any Claim by any other Exculpated Party, Claimant, or any other party in interest for any act or omission that occurred during and relating to the Chapter 11 Case, the Additional Debtor Chapter 11 Cases, or relating to the preparation and filing of the Chapter 11 Case and Additional Debtor Chapter Cases, formulation, negotiation, pursuit of confirmation, consummation of the Plan, or administration of the Plan or the property to be distributed under the Plan, the formulation and negotiation of an Insurance Settlement Agreement, or the seeking or obtaining of an Approval Order related to an Insurance Settlement Agreement, except for Claims arising from the gross negligence, willful misconduct, fraud, or breach of the fiduciary duty of loyalty of any Exculpated Party, in each case subject to determination of such by Final Order of a court of competent jurisdiction and provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities, if any, under the Plan; <u>provided</u>, <u>however</u>, nothing in this Section 13.8 shall serve to affect any claims against Stinson LLP or Berkeley Research Group, LLC with respect to or arising out of certain data breaches during the pendency of the Chapter 11 Case. Without limiting the generality of the foregoing, the Committee, Debtor, Additional Debtors, and their respective Agents shall be entitled to and granted the benefits of section 1125(e) of the Bankruptcy Code and the Channeling Injunction**.

**13.9    Limitation of Liability for Payments to Survivors.**

The Protected Parties, the Settling Insurers, the Trusts, the Survivor Compensation Trustee, Insurance Trustee, and professionals employed by each of the foregoing shall not have any liability to any Person, including any governmental entity or Insurer, on account of payments made to a Survivor Claimant, except as set forth in this Plan.

**13.10    Injunctions in Full Force and Effect.**

All injunctions or stays provided for in the Plan, the injunctive provisions of sections 524 and 1141 of the Bankruptcy Code, and all injunctions or stays protecting any Settling Insurer or other Protected Party are permanent and will remain in full force and effect following the Effective Date of the Plan and are not subject to being vacated or modified.

**13.11    Settlements, Injunctions, and Releases Integral to Plan.**

The foregoing settlements and corresponding injunctive provisions and releases are an integral part of the Plan and are essential to its implementation. Any and all currently pending court proceedings, the continuation of which would violate this Article 13 of the Plan or the releases provided for under the Plan or corresponding settlements shall be dismissed with prejudice within twenty-one (21) days of the Effective Date.

**13.12    Timing.**

The settlements, injunctions, releases, and discharges (including the Channeling Injunction, Supplemental Settling Insurer Injunction, and Gatekeeper Injunction) to which any Settling Insurer or other Protected Party is entitled pursuant to an Insurance Settlement Agreement, an Insurance Settlement Approval Order, this Plan, the Confirmation Order, and the Bankruptcy Code shall only become effective upon the occurrence of the Effective Date and all conditions precedent to the effectiveness of each applicable Insurance Settlement Agreement, as applicable.

**13.13    Title to and Vesting of Assets.**

All property of the Debtor, the Additional Debtors, and the Estates is dealt with by and administered under this Plan. Therefore, on the Effective Date, to the fullest extent allowed by sections 1141(b) and 1141(c) of the Bankruptcy Code, all property of the Debtor, the Additional Debtors, and the Estates, including Retained Claims, shall vest in the Reorganized Debtor and Additional Reorganized Debtors, as applicable, and such property shall be free and clear of all liens, Claims and Interests of all Persons, except as expressly provided in the Plan. From and after the Effective Date, the Reorganized Debtor and each Additional Reorganized Debtor may operate, use, acquire, and dispose of property in accordance with the Plan, free and clear of any restrictions of the Bankruptcy Code and the Bankruptcy Rules, and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code. The Reorganized Debtor and each Additional Reorganized Debtor may pursue any Retained Claims at the discretion of the Reorganized Debtor or applicable Additional Reorganized Debtor and retain the proceeds thereof, if any.

**13.14 Cancellation of Instruments.**

On the Effective Date, all instruments evidencing or creating any indebtedness or obligation of the Debtor or Additional Debtors, except such instruments that are authorized or issued under this Plan, shall be cancelled and extinguished. The holders of or parties to the cancelled notes and other agreements and instruments shall have no rights relating to such notes or instruments or the cancellation thereof, except any rights provided pursuant to this Plan.

**13.15 Dissolution of the Committee.**

On the Effective Date, the Committee shall be dissolved, and the members of the Committee and the professionals retained by the Committee shall be released and discharged from their respective fiduciary obligations.

**Article 14.**
**<u>Retention of Jurisdiction.</u>**

**14.1 By the Bankruptcy Court.**

Pursuant to sections 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code and 28 U.S.C. §§ 157 and 1334, on and after the Effective Date, the Bankruptcy Court shall retain: (a) original and exclusive jurisdiction over the Chapter 11 Case and Additional Debtor Chapter 11 Cases; (b) original, but not exclusive, jurisdiction to hear and determine all core proceedings arising under the Bankruptcy Code or arising in the Chapter 11 Case or Additional Debtor Chapter 11 Cases; and (c) original, but not exclusive, jurisdiction to hear and make proposed findings of fact and conclusions of law in any non-core proceedings related to the Chapter 11 Case, the Additional Debtor Chapter 11 Cases, and the Plan, including matters concerning the interpretation, implementation, consummation, execution, or administration of the Plan. Subject to, but without limiting the generality of the foregoing, the Bankruptcy Court's post-Effective Date jurisdiction shall include jurisdiction:

(a)     over disputes concerning the ownership of Claims;

(b)     over disputes concerning the distribution or retention of assets under the Plan;

(c)     over objections to Claims, motions to allow late-filed Claims, and motions to estimate Claims;

(d)     over proceedings to determine the extent, validity, or priority of any Lien asserted against property of the Debtor, any Additional Debtor, the Estates, or Trusts, or property abandoned or transferred by the Debtor, any Additional Debtor, the Estates, or the Trusts;

(e)     over motions to approve Insurance Settlement Agreements entered into after the Effective Date;

78

(f)   over matters related to the assets of the Estates or Trusts, including the terms of the Trusts, or the recovery, liquidation, or abandonment of Survivor Compensation Trust Assets or Insurance Trust Assets;

(g)   over removal of either Trustee and appointment of a successor Trustee;

(h)   over matters relating to the subordination of Claims;

(i)   to enter and implement such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(j)   to enforce the Channeling Injunction, the Discharge Injunction, the Supplemental Settling Insurer Injunction, and the Gatekeeper Injunction;

(k)   to consider and approve modifications of or amendments to the Plan, to cure any defects or omissions or to reconcile any inconsistencies in any order of the Bankruptcy Court, including the Confirmation Order;

(l)   to issue orders in aid of execution, implementation, or consummation of the Plan, including the issuance of orders enforcing any and all releases and injunctions issued under or pursuant to this Plan or settlements included in this Plan (including but not limited to the Channeling Injunction, the Discharge Injunction, the Supplemental Settling Insurer Injunction, and the Gatekeeper Injunction);

(m)   over disputes arising from or relating to the Plan, the Confirmation Order, or any agreements, documents, or instruments executed in connection with the foregoing;

(n)   over requests for allowance of payment of Claims entitled to priority under sections 507(a)(2) and 503(b) of the Bankruptcy Code and any objections to same;

(o)   over all applications for compensation under sections 327, 328, 329, and 330 of the Bankruptcy Code;

(p)   over matters concerning state, local, or federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(q)   over conflicts and disputes among either of the Trusts, Reorganized Debtor, any Additional Reorganized Debtor, and holders of Claims;

(r)   over disputes concerning the existence, nature, or scope of the Discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(s)   to issue injunctions, provide declaratory relief, or grant such other legal or equitable relief as may be necessary or appropriate to restrain interference with the Plan, the Debtor, Additional Debtors, or their property, the Reorganized Debtor,

Reorganized Additional Debtor, or their property, the Estates or their property, the Trusts or their property, Trustees, the Professionals, or the Confirmation Order;

(t)    to address issues raised by the United States Trustee regarding any obligation of the Debtor, Additional Debtors, Reorganized Debtor, or Additional Reorganized Debtors after confirmation of this Plan;

(u)    to enforce, interpret and resolve any disputes related to any Insurance Settlement Agreement or Insurance Settlement Approval Order;

(v)     to enter a Final Decree closing the Chapter 11 Case and the Additional Debtor Chapter 11 Cases;

(w)    to enforce all orders previously entered by the Bankruptcy Court; and

(x)    over any and all other suits, adversary proceedings, motions, applications, and contested matters that may be commenced or maintained pursuant to the Plan or otherwise in or relating to the Chapter 11 Case or Additional Debtor Chapter 11 Cases.

**14.2    By the District Court.**

Pursuant to sections 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code and 28 U.S.C. § 1334, on and after the Effective Date, the District Court shall retain original, but not exclusive, jurisdiction to hear and determine all matters arising under the Bankruptcy Code or arising in or related to the Chapter 11 Case or the Additional Debtor Chapter 11 Cases.

**14.3    Actions to Collect Amounts Owed Pursuant to the Plan.**

The Debtor, Additional Debtors, Reorganized Debtor, Additional Reorganized Debtors, and Trusts may, but are not required to, commence an Action to collect amounts owed pursuant to the Plan for any settlements referred to in this Plan or later approved by the Bankruptcy Court that are not paid in accordance with the terms of such settlement. Any such Action may be commenced by filing a motion in aid of confirmation with the Bankruptcy Court.

**14.4    Case Closure.**

The existence and continued operation of the Trusts shall not prevent the Bankruptcy Court from closing the Chapter 11 Case or the Additional Debtor Chapter 11 Cases. The Survivor Compensation Trustee and Insurance Trustee shall not take any actions to unreasonably keep the Chapter 11 Case or Additional Debtor Chapter 11 Cases open. In an action involving either of the Trusts, any costs incurred in reopening the Chapter 11 Case or Additional Debtor Chapter 11 Cases, including any Statutory Fees and Court Costs, will be paid by the Survivor Compensation Trustee or Insurance Trustee, as applicable, from Survivor Compensation Trust Assets or Insurance Trust Assets, as applicable.

**Article 15.**
**Miscellaneous Provisions.**

**15.1    Modification of the Plan.**

The Plan Proponents, with the consent of any Settling Insurers, may modify the Plan at any time prior to the confirmation hearing, in accordance with sections 1127(a) and 1193(a) of the Bankruptcy Code, as applicable. After the Confirmation Date and prior to substantial consummation, the Plan Proponents, with the consent of any Settling Insurers, may modify the Plan, in accordance with sections 1127(b) and 1193(b) of the Bankruptcy Code, as applicable, by filing a motion on notice as required under the applicable Bankruptcy Rules, and the solicitation of all creditors and other parties in interest shall not be required unless directed by the Bankruptcy Court. Notwithstanding the foregoing, those provisions of the Plan that implement and supplement the Insurance Settlement Agreements may not be severed, waived, amended, deleted, or otherwise modified without the prior written approval of all Settling Insurers affected by such severance, waiver, amendment, deletion, or modification.

**15.2    United States Trustee Reports.**

From the Effective Date until the Chapter 11 Case and Additional Debtor Chapter 11 Cases are closed, the Reorganized Debtor and Additional Reorganized Debtors shall, within thirty (30) days of the end of each fiscal quarter, file with the Bankruptcy Court and submit to the United States Trustee, quarterly reports setting forth all receipts and disbursements as required by the United States Trustee guidelines. The Reorganized Debtor and Additional Reorganized Debtors will not be required to file monthly operating reports or provide copies of bank account statements.

**15.3    Severability of Plan Provisions.**

Except as specifically provided in the Plan, the terms of the Plan constitute interrelated compromises and are not severable, and no provision of the Plan may be stricken, altered, or invalidated, except by amendment of the Plan by the Plan Proponents with the consent of Settling Insurers as provided in Section 15.1.

**15.4    Regulated Rates.**

This Plan affects no rates subject to approval by any governmental regulatory commission.

**15.5    Successors and Assigns.**

The rights, benefits, and obligations of any person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person.

**15.6    Governing Law.**

The rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the Bankruptcy Code and, to the extent not inconsistent with the Bankruptcy Code, Maryland law, without giving effect to principles of conflict of laws.

81

### 15.7    Construction.

The section headings contained in this Plan are for reference purposes and shall not affect in any way the meaning or interpretation of the Plan. To the extent of any inconsistencies between the information contained in the Disclosure Statement and the terms and provisions of the Plan, the terms and provisions of the Plan shall govern.

### 15.8    Revocation.

The Plan Proponents reserve the right to revoke and withdraw the Plan, prior to entry of the Confirmation Order.

### 15.9    Controlling Documents.

In the event and to the extent that any provision of the Plan, Survivor Compensation Trust Agreement, or Insurance Trust Agreement is inconsistent with any provision of the Disclosure Statement, the provisions of the Plan, Survivor Compensation Trust Agreement, or Insurance Trust Agreement, as applicable, shall control and take precedence. In the event and to the extent that any provision of the Survivor Compensation Trust Agreement or Insurance Trust Agreement (other than provisions relating to the Survivor Compensation Trustee's or Insurance Trustee's authority to act) is inconsistent with any provision of this Plan, this Plan shall control and take precedence. In the event and to the extent that any provision of the Confirmation Order is inconsistent with any provision of the Plan, Survivor Compensation Trust Agreement, or Insurance Trust Agreement, the provisions of the Confirmation Order shall control and take precedence. In the event this Plan or any provision of any agreement referred to in this Section 15.9 of this Plan is inconsistent with an Insurance Settlement Agreement, the Insurance Settlement Agreement shall control.

### 15.10    Notices.

Any notices or requests by parties in interest under or in connection with the Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

If to the Debtor or Reorganized Debtor:

Roman Catholic Archbishop of Baltimore
Attn: Archbishop of Baltimore
320 Cathedral Street
Baltimore, Maryland 21201

with a copy to:

**HOLLAND & KNIGHT LLP**
Attn: Blake D. Roth
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Email: blake.roth@hklaw.com

*-and-*

**YVS LAW, LLC**
Attn: Catherine K. Hopkin
185 Admiral Cochrane Drive, Ste. 130
Annapolis, Maryland 21401
Email: chopkin@yvslaw.com

*-and-*

**GALLAGHER EVELIUS & JONES**
Attn: Thomas C. Dame
218 N. Charles Street, Ste. 400
Baltimore, Maryland 21201
Email: tdame@gejlaw.com

If to the Additional Debtors or Additional Reorganized Debtors:

**COLE SCHOTZ P.C.**
Attn: Irving Walker
1201 Wills Street, Ste. 320
Baltimore, Maryland 21231
Email: iwalker@coleschotz.com

*-and-*

**ELSAESSER ANDERSON, CHTD.**
Attn: Ford Elsaesser
P.O. Box 369
535 High Street
Priest River, Idaho 83856

If to the Insurance Trust or Insurance Trustee:

[_]

If to the Survivor Compensation Trust or Survivor Compensation Trustee:

[_]

### 15.11   Filing of Additional Documents.

At any time before substantial consummation of this Plan, the Debtor, any Additional Debtor, either Trust, the Reorganized Debtor or any Additional Reorganized Debtor, as appropriate, may file with the Bankruptcy Court or execute such agreements and other documents

as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan or otherwise comply with applicable law.

### 15.12   Direction to a Party.

On and after the Effective Date, either Trust, the Reorganized Debtor, or any Additional Reorganized Debtor, as applicable, may apply to the Bankruptcy Court for entry of an order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or desirable to effect a transfer of properties dealt with by this Plan or to perform any other act (including satisfaction of any lien or security interest) that is reasonably necessary or desirable for consummation of this Plan.

### 15.13   Certain Actions.

By reason of entry of the Confirmation Order, prior to, on, or after the Effective Date, as applicable, all matters provided for under this Plan that would otherwise require approval of the officers of the Debtor or any Additional Debtor under the Plan, including (a) adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan or (b) adoption, execution, and implementation of other matters provided for under this Plan involving the Debtor or an Additional Debtor or organizational structure of the Debtor or an Additional Debtor, shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date, as applicable, pursuant to applicable non-bankruptcy law, without any requirement of further action by the officers of the Debtor or applicable Additional Debtor.

### 15.14   Plan as Settlement Communication.

The Plan furnishes or offers or promises to furnish, or accepts or offers or promises to accept, valuable consideration in compromising or attempting to compromise Claims, Interests, and Causes of Action that are disputed as to validity or amount, including Survivor Claims and Insurance Claims. Accordingly, the Plan, the Disclosure Statement, and any communications regarding the Plan or Disclosure Statement are subject in all respects to Rule 408 of the Federal Rules of Evidence and any comparable provision(s) of applicable state law precluding their use as evidence of liability for, or the validity or invalidity of, any Disputed Claim or Cause of Action.

### 15.15   Other Rights.

Except as expressly set forth in this Plan, nothing in this Plan shall preclude any Person from asserting in any proceeding or against any award or judgment entered in such proceeding any and all rights that may be accorded under Maryland law, or any other applicable statutory or common law, of contribution, indemnity, reduction, credit, or setoff, arising from the settlement and resolution of the Survivor Claims.

## Article 16.
## Bankruptcy Rule 9019 Request.

Pursuant to Rule 9019 of the Bankruptcy Rules, the Plan Proponents request approval of all compromises and settlements included in, or otherwise integral to, this Plan.

## Article 17.
## Confirmation Request.

The Plan Proponents request confirmation of the Plan under sections 1129 and 1191 of the Bankruptcy Code, as applicable, with respect to any Impaired Class that does not accept the Plan or is deemed to reject the Plan.

## Article 18.
## Recommendation and Conclusion.

The Plan Proponents believe the Plan is in the best interests of all Creditors and the Estates and urge the Creditors to accept the Plan and to evidence such acceptance by properly voting and timely returning their respective ballots.


Dated: May 15, 2026

_____/s/ Catherine Keller Hopkin_____
Catherine Keller Hopkin (Fed. Bar No. 28257)
**YVS LAW, LLC**
185 Admiral Cochrane Drive, Suite 130
Annapolis, MD 21401
Telephone:  (443) 569-0788
Facsimile:  (410) 571-2798
Email:  chopkin@yvslaw.com

*-and-*

Blake D. Roth (admitted *pro hac vice*)
Scott Kunde (admitted *pro hac vice*)
**HOLLAND & KNIGHT LLP**
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone:  (615) 244-6380
Facsimile:  (615) 244-6804
Email:  blake.roth@hklaw.com
        scott.kunde@hklaw.com

*-and-*

Philip T. Evans (Fed. Bar No. 11796)
**HOLLAND & KNIGHT LLP**
800 17th Street, NW, Suite 1100
Washington, DC 20006
Telephone:  202.457.7043
Email: philip.evans@hklaw.com

*Counsel for the Debtor and Debtor in Possession*

85

CERTIFICATE OF SERVICE

I hereby certify that, on the 15th day of May 2026, notice of filing the Joint Chapter 11 Plan of Reorganization for the Roman Catholic Archbishop of Baltimore, a Corporation Sole, and Additional Debtors was served by CM/ECF to those parties listed on the docket as being entitled to such electronic notices, which parties are identified on the attached service list.


                                /s/ Catherine Keller Hopkin
                                Catherine Keller Hopkin

The following parties received CM/ECF notice of the filing:

- Nathan D. Adler, Esquire - nda@nqgrg.com; terry@nqgrg.com
- Sam Alberts, Esquire - sam.alberts@dentons.com; docket.general.lit.wdc@dentons.com
- Monique Desiree Almy, Esquire - malmy@crowell.com; cbest@crowell.com; malmy@ecf.axosfs.com; monique-almy-7127@ecf.pacerpro.com
- Philip D. Anker, Esquire - philip.anker@wilmerhale.com; Yolande.Thompson@wilmerhale.com
- Ryan S. Appleby, Esquire - rappleby@gibsondunn.com; ryan-s-appleby-6523@ecf.pacerpro.com
- G. Calvin Awkward, Esquire - cawkward@goldbergsegalla.com; wbartholomew@goldbergsegalla.com
- Jesse Bair, Esquire - jbair@burnsbair.com; kdempski@burnsbair.com
- Jodie E. Bekman, Esquire - jbekman@gfrlaw.com; dferguson@gfrlaw.com
- Michael J. Belsky, Esquire - mbelsky@sbwdlaw.com
- Brian Bennett, Esquire - brianbennett1962@comcast.net
- Hugh M. (UST) Bernstein, Esquire - hugh.m.bernstein@usdoj.gov
- Eileen King Bower, Esquire - eileen.kingbower@clydeco.us, christopher.white@clydeco.us
- Diane C. Bristow, Esquire - dcb@nqgrg.com; taylor@nqgrg.com
- Timothy W. Burns, Esquire - tburns@burnsbair.com; kdempski@burnsbair.com,4756200420@filings.docketbird.com
- Edwin H Caldie, Esquire - ed.caldie@stinson.com; jess.rehbein@stinson.com
- Jacob C Cohn, Esquire - jcohn@grsm.com; tdonahue@grsm.com
- Elizabeth Connell, Esquire - elizabeth@connellcounsel.com
- Richard L. Costella, Esquire - rcostella@tydings.com; scalloway@tydings.com; MYoung@tydings.com; zjones@tydings.com; swilliams@tydings.com
- Nicholas Anthony Dellefave, Esquire - nicholas.dellefave@hklaw.com
- Jillian Dennehy, Esquire - jillian.dennehy@kennedyslaw.com
- Robert Wagner DiUbaldo, Esquire - rdiubaldo@carltonfields.com
- Adam Ross Durst, Esquire - adurst@goldbergsegalla.com
- Philip Tucker Evans, Esquire - philip.evans@hklaw.com; kimi.odonnell@hklaw.com; hapi@hklaw.com
- Justin Philip Fasano, Esquire - jfasano@mhlawyers.com; jfasano@ecf.courtdrive.com; tmackey@mhlawyers.com; mevans@mhlawyers.com; cmartin@mhlawyers.com; Fasano.JustinR92003@notify.bestcase.com
- Kevin Foreman, Esquire - kforeman@carltonfields.com
- Andrew Freeman, Esquire - adf@browngold.com; khill@browngold.com; ldyson@browngold.com
- Richard A Galbo, Esquire - rgalbo@goldbergsegalla.com
- Andrew Glasnovich, Esquire - drew.glasnovich@stinson.com
- Gary R. Greenblatt, Esquire - grg@cooncolelaw.com; cmh@cooncolelaw.com; mes@cooncolelaw.com
- Geoffrey Grivner, Esquire - geoffrey.grivner@bipc.com; donna.curcio@bipc.com
- Alan M. Grochal, Esquire - agrochal@tydingslaw.com; scalloway@tydings.com
- Adam P. Haberkorn, Esquire - ahaberkorn@omm.com; adam-haberkorn-2269@ecf.pacerpro.com
- Samantha Hanson-Lenn, Esquire - samantha.hansonlenn@stinson.com; mpl.lssteam5@stinson.com
- Megan Harmon, Esquire - megan.harmon@bge.com
- Ezhan Syed Hasan, Esquire - ahasan@wiley.law
- Matthew Allan Hoffman, Esquire - mhoffman@gibsondunn.com; matthew-a-hoffman-3853@ecf.pacerpro.com
- Catherine Keller Hopkin, Esquire - chopkin@yvslaw.com; pgomez@yvslaw.com; kreese@yvslaw.com; vmichaelides@yvslaw.com; yvslawcmecf@gmail.com; hopkincr39990@notify.bestcase.com
- Sheldon N Jacobs, Esquire - sheldon@sheldonjacobslaw.com
- Todd C. Jacobs, Esquire - tjacobs@phrd.com
- Robert Keith Jenner, Esquire - rjenner@jennerlawfirm.com
- Joshua Kahn, Esquire - jkahn@sfspa.com
- Steven J Kelly, Esquire - skelly@gelaw.com; vbeal@gelaw.com,gnovod@gelaw.com,4523903420@filings.docketbird.com
- Nicole Khalouian, Esquire - nicole.khalouian@stinson.com
- Anthony Kikendall, Esquire - kikendalla@whiteandwilliams.com
- Robert H. Kline, Esquire - kliner@whiteandwilliams.com
- Eric George Korphage, Esquire - korphagee@whiteandwilliams.com
- Robert T Kugler, Esquire - robert.kugler@stinson.com
- Christopher Scott Kunde, Esquire - scott.kunde@hklaw.com
- Emily C Malarkey, Esquire - malarkey@malperl.com
- Stephen A. Markey, Esquire - steve@markeyorsilaw.com; amy@markeylawfirm.com
- Siobhain Patricia Minarovich, Esquire - minarovichs@whiteandwilliams.com
- James R Murray, Esquire - Jim.Murray@blankrome.com
- Michael Raymond Naccarato, Esquire - mrnaccarato@gw-law.com
- Frank Natale, Esquire - fan121968@gmail.com
- Matthew Nelson, Esquire - matthew.nelson@kennedyslaw.com; linda.conigliero@kennedyslaw.com
- Janet M. Nesse, Esquire - jnesse@mhlawyers.com; jfasano@mhlawyers.com; cpalik@mhlawyers.com; jnesse@ecf.inforuptcy.com; tmackey@mhlawyers.com; cmartin@mhlawyers.com; kfeig@mhlawyers.com
- Gordon Z. Novod, Esquire - gnovod@gelaw.com
- Timothy P. Palmer, Esquire - timothy.palmer@bipc.com
- Ryan S. Perlin, Esquire - perlin@malperl.com
- Mark D. Plevin, Esquire - mplevin@plevinturner.com
- Mark David Plevin, Esquire - mplevin@crowell.com
- Marie Ysabelle Hope Gatmaitan Reyes, Esquire - yreyes@wiley.law
- David Kendall Roberts, Esquire - droberts2@omm.com; dave-roberts-9007@ecf.pacerpro.com
- Matthew Roberts, Esquire - mroberts@phrd.com
- Annette Rolain, Esquire - arolain@ruggerilaw.com; bkfilings@ruggerilaw.com
- Michael Rosenthal, Esquire - mrosenthal@gibsondunn.com
- Blake Daniel Roth, Esquire - blake.roth@hklaw.com; brooke.freeman@hklaw.com; cathy.young@hklaw.com
- James Pio Ruggeri, Esquire - jruggeri@ruggerilaw.com
- Isabella Sayyah, Esquire - isayyah@gibsondunn.com
- Jonathan Schapp, Esquire - jschapp@goldbergsegalla.com; bfaulkner@goldbergsegalla.com; kallen@goldbergsegalla.com
- Tancred Schiavoni, Esquire - tschiavoni@omm.com; tancred-schiavoni-9326@ecf.pacerpro.com

- Jeffrey R. Scholnick, Esquire - jscholnick@scholnicklaw.com; ccasado@scholnicklaw.com; scholnick.jeffreyb107952@notify.bestcase.com
- Gary Paul Seligman, Esquire - gseligman@wiley.law
- David J. Shuster, Esquire - dshuster@kg-law.com; ssohn@kg-law.com
- Alex B Silverman, Esquire - asilverman@carltonfields.com
- Natalie L. Soloperto, Esquire - NSoloperto@gibsondunn.com
- Morgan Kathleen Stippel, Esquire - mstippel@burnsbair.com; kdempski@burnsbair.com
- Miranda Turner, Esquire - mturner@plevinturner.com; miranda-turner-7827@ecf.pacerpro.com
- US Trustee - Baltimore, Esquire - USTPRegion04.BA.ECF@USDOJ.GOV
- Nora Anne Valenza-Frost, Esquire - nvalenza-frost@carltonfields.com
- John P Van Beek, Esquire - jvanbeek@goldmanvanbeek.com; gvbparalegal@goldmanvanbeek.com; hcurrier@goldmanvanbeek.com
- Irving Edward Walker, Esquire - iwalker@coleschotz.com; pratkowiak@coleschotz.com; bankruptcy@coleschotz.com
- Joshua D Weinberg, Esquire - jweinberg@ruggerilaw.com
- Matthew Michael Weiss, Esquire - mweiss@phrd.com
- Robert Matthew Westra, Esquire - rwestra@ppsrlaw.com; westrarr66199@notify.bestcase.com
- Harris B. Winsberg, Esquire - hwinsberg@phrd.com
- Thomas Yost, Esquire - staceyhare@yostlaw.com