**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| In re:<br><br>ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 23-16969-MMH |

**THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR**
**THE ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE, A CORPORATION SOLE**

HOLLAND & KNIGHT LLP

Blake D. Roth (admitted *pro hac vice*)
Scott Kunde (admitted *pro hac vice*)
Symphony Place
150 Third Avenue South, Ste. 2800
Nashville, TN 37201
Telephone:  (615) 244-6380
Facsimile:  (615) 244-6804
Email:  blake.roth@hklaw.com
        scott.kunde@hklaw.com

HOLLAND & KNIGHT LLP

Philip T. Evans (Fed. Bar No. 11796)
800 17th Street, NW, Suite 1100
Washington, DC 20006
Telephone:  202.457.7043
Email: philip.evans@hklaw.com

*Counsel for the Debtor and Debtor in Possession*

Dated: July 27, 2026

YVS LAW, LLC

Catherine K. Hopkin (Fed. Bar No. 28257)
185 Admiral Cochrane Drive, Suite 130
Annapolis, MD 21401
Telephone:  (443) 569-0788
Facsimile:  (410) 571-2798
Email:  chopkin@yvslaw.com

---

[1] The last four digits of the Debtor's federal tax identification number are 1535. The Debtor's principal place of business is located at 320 Cathedral Street, Baltimore, Maryland 21201.

TABLE OF CONTENTS

**Contents**

ARTICLE 1 . DEFINITIONS.................................................................................1

    1.1    DEFINED TERMS.................................................................................1

    1.2    INTERPRETATION.................................................................................20

    1.3    TIME PERIODS.................................................................................21

    1.4    PLAN EXHIBITS.................................................................................21

ARTICLE 2 . ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS.................................21

    2.1    ADMINISTRATIVE EXPENSE CLAIMS.................................................................................21

    2.2    PROFESSIONAL FEE CLAIMS AGAINST THE DEBTOR.................................................................................22

    2.3    STATUTORY FEES AND COURT COSTS OF THE DEBTOR.................................................................................23

    2.4    PRIORITY TAX CLAIMS AGAINST THE DEBTOR.................................................................................23

    2.5    EMPLOYEE PRIORITY CLAIMS AGAINST THE DEBTOR.................................................................................24

ARTICLE 3 . CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS. ......24

    3.1    CLASSIFICATIONS OF CLAIMS AND INTERESTS.................................................................................24

    3.2    TREATMENT OF CLAIMS AND INTERESTS.................................................................................25

    3.3    ELIMINATION OF VACANT CLASSES.................................................................................28

    3.4    PRESUMED REJECTION BY VOTING CLASSES THAT DO NOT VOTE.................................................................................29

    3.5    ACCEPTANCE BY IMPAIRED CLASSES.................................................................................29

    3.6    NONCONSENSUAL CONFIRMATION OF PLAN.................................................................................29

    3.7    NO EFFECT UPON CREDITORS' RIGHTS OF SETOFF OR RECOUPMENT.................................................................................29

ARTICLE 4 . SURVIVOR COMPENSATION TRUST.................................................................................29

    4.1    ESTABLISHMENT OF SURVIVOR COMPENSATION TRUST.................................................................................29

    4.2    FUNDING OF THE SURVIVOR COMPENSATION TRUST.................................................................................29

    4.3    VESTING OF SURVIVOR COMPENSATION TRUST ASSETS IN SURVIVOR COMPENSATION TRUST.................................................................................31

    4.4    SURVIVOR COMPENSATION TRUST LIABILITY FOR SURVIVOR CLAIMS.................................................................................31

    4.5    APPOINTMENT OF SURVIVOR COMPENSATION TRUSTEE.................................................................................31

    4.6    RIGHTS AND RESPONSIBILITIES OF SURVIVOR COMPENSATION TRUSTEE.................................................................................32

    4.7    SURVIVOR COMPENSATION TRUST'S PURSUIT OF DEBTOR AND CO-INSURED ENTITIES.................................................................................32

    4.8    SURVIVOR COMPENSATION TRUST'S RIGHTS WITH RESPECT TO SURVIVOR CLAIMS.................................................................................33

    4.9    INVESTMENT POWERS; PERMITTED CASH EXPENDITURES.................................................................................33

4.10   REGISTRY OF BENEFICIAL INTERESTS. ...................................................................33

4.11   NON-TRANSFERABILITY OF INTERESTS IN SURVIVOR COMPENSATION TRUST. ...............33

4.12   SURVIVOR COMPENSATION TRUST TAX MATTERS. ...................................................33

4.13   IMMUNITY; LIABILITY; INDEMNIFICATION. ...............................................................34

4.14   SURVIVOR COMPENSATION TRUST LIABILITY. ..........................................................36

4.15   TERMINATION OF SURVIVOR COMPENSATION TRUST. ................................................36

ARTICLE 5 . INSURANCE TRUST. ............................................................................................36

5.1   ESTABLISHMENT OF INSURANCE TRUST. ..................................................................36

5.2   FUNDING OF INSURANCE TRUST. .............................................................................36

5.3   VESTING OF INSURANCE TRUST ASSETS IN INSURANCE TRUST. .................................36

5.4   RETENTION OF INSURANCE CLAIMS BY DEBTOR AND CO-INSURED ENTITIES. .............38

5.5   INSURANCE TRUST'S ASSUMPTION OF RISK. .............................................................38

5.6   INSURANCE TRUST LIABILITY FOR SURVIVOR CLAIMS. ..............................................39

5.7   APPOINTMENT OF THE INSURANCE TRUSTEE. ...........................................................39

5.8   RIGHTS AND RESPONSIBILITIES OF THE INSURANCE TRUSTEE. ...................................39

5.9   INSURANCE TRUST'S PURSUIT OF INSURANCE CLAIMS. .............................................40

5.10   INSURANCE PROVISIONS. ........................................................................................41

5.11   INVESTMENT POWERS; PERMITTED CASH EXPENDITURES. ..........................................44

5.12   REGISTRY OF BENEFICIAL INTERESTS. .....................................................................44

5.13   NON-TRANSFERABILITY OF INTERESTS. ....................................................................45

5.14   INSURANCE TRUST TAX MATTERS. ..........................................................................45

5.15   IMMUNITY; LIABILITY; INDEMNIFICATION. ...............................................................45

5.16   INSURANCE TRUST LIABILITY. .................................................................................46

5.17   TERMINATION OF INSURANCE TRUST. ......................................................................46

ARTICLE 6 . SURVIVOR CLAIMS. ...........................................................................................46

6.1   TRUST LIABILITY FOR SURVIVOR CLAIMS. ...............................................................46

6.2   ASSESSMENT OF SURVIVOR CLAIMS. .......................................................................47

6.3   SURVIVOR CLAIMANT ELECTION OF CLAIM TREATMENT. ..........................................47

6.4   TRUSTS' RIGHTS WITH RESPECT TO SURVIVOR CLAIMS. ............................................50

6.5   LEGAL EFFECT OF ESTIMATION OF SURVIVOR CLAIMS AND SURVIVOR
COMPENSATION TRUST DISTRIBUTIONS. ..................................................................50

6.6   RELEASE AND DISCHARGE OF SURVIVOR CLAIMS. ....................................................51

6.7   SURVIVOR COMPENSATION TRUST DISTRIBUTIONS TO SURVIVOR CLAIMANTS. .............52

6.8     DISMISSAL OF PENDING LITIGATION REGARDING SURVIVOR CLAIMS. ..........................52

6.9     SURVIVOR CLAIM WITHDRAWAL. ..................................................................52

6.10    MEDICARE PROCEDURES. ............................................................................52

ARTICLE 7 .  SETTLING INSURERS. .......................................................................53

7.1     INSURANCE SETTLEMENT AGREEMENTS. ....................................................53

7.2     SALE FREE AND CLEAR OF INTERESTS OF SETTLING INSURER POLICIES. .......................54

7.3     RESOLUTION OF CLAIMS INVOLVING SETTLING INSURERS. ...............................54

7.4     SETTLING INSURER PAYMENTS. ...................................................................54

7.5     FURTHER ASSURANCES; NON-MATERIAL MODIFICATIONS. ............................54

7.6     WAIVER/CONSENT. ...................................................................................55

7.7     TIMING. ..................................................................................................55

ARTICLE 8 . NON-SETTLING INSURERS. ..................................................................55

8.1     PRESERVATION OF RIGHTS AND OBLIGATIONS. ...........................................55

8.2     POST-EFFECTIVE DATE INSURANCE OBLIGATIONS. ......................................57

8.3     TRUST POWERS WITH RESPECT TO SURVIVOR CLAIMS AND NON-SETTLING
        INSURERS. ...............................................................................................58

ARTICLE 9 . MEANS FOR IMPLEMENTATION OF THE PLAN. ...........................................58

9.1     GENERAL SETTLEMENT OF CLAIMS AND INTERESTS. .....................................58

9.2     PLAN IMPLEMENTATION. ...........................................................................58

9.3     SOURCES OF CONSIDERATION FOR DISTRIBUTIONS. .....................................58

9.4     PAYMENTS EFFECTIVE UPON TENDER. .......................................................59

9.5     NON-MONETARY PLAN PROVISIONS. ..........................................................59

9.6     CORPORATE ACTION. .................................................................................59

9.7     AGREEMENTS, INSTRUMENTS, AND DOCUMENTS. .......................................59

9.8     CONTINUATION OF INSURANCE POLICIES. ..................................................59

9.9     EFFECTUATING DOCUMENTS; FURTHER TRANSACTIONS; TRANSFER TAX
        EXEMPTIONS. ...........................................................................................60

9.10    [RESERVED]. ...........................................................................................60

9.11    CONTINUED CORPORATE EXISTENCE AND VESTING OF ASSETS. ...................60

ARTICLE 10 . DISTRIBUTIONS AND CLAIMS ADMINISTRATION FOR CLAIMS
        OTHER THAN SURVIVOR CLAIMS. .................................................................60

10.1    DISTRIBUTIONS. .......................................................................................60

10.2    METHOD OF PAYMENT. .............................................................................61

10.3    RESERVATION OF RIGHTS TO OBJECT TO CLAIMS. ...................................................61

10.4    FILING OF OBJECTIONS. ...................................................61

10.5    PROCEDURES FOR TREATING AND RESOLVING DISPUTED CLAIMS. ...............................62

10.6    RECORD DATE. ...................................................62

10.7    DE MINIMIS DISTRIBUTIONS. ...................................................63

10.8    UNCLAIMED PAYMENTS. ...................................................63

10.9    TIME BAR TO CHECK PAYMENTS. ...................................................63

10.10    COMPLIANCE WITH TAX REQUIREMENTS. ...................................................63

10.11    SETOFFS AND RECOUPMENTS. ...................................................63

ARTICLE 11 . EXECUTORY CONTRACTS AND UNEXPIRED LEASES. ...................................64

11.1    ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES. .....64

11.2    CURE OF DEFAULTS. ...................................................64

11.3    BAR DATES FOR REJECTION DAMAGE CLAIMS. ...................................................65

11.4    CONTRACTS AND LEASES ENTERED AFTER THE PETITION DATE. ...............................65

11.5    COMPENSATION AND BENEFITS PROGRAMS. ...................................................66

11.6    WORKERS' COMPENSATION PROGRAMS. ...................................................66

11.7    MODIFICATIONS, AMENDMENTS, SUPPLEMENTS, RESTATEMENTS, OR OTHER AGREEMENTS. ...................................................66

11.8    RESERVATION OF RIGHTS. ...................................................67

ARTICLE 12 . CONFIRMATION AND CONSUMMATION OF THE PLAN. .......................67

12.1    CONDITIONS PRECEDENT TO CONFIRMATION. ...................................................67

12.2    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE. ...................................................67

12.3    WAIVER OF CONDITIONS PRECEDENT TO THE EFFECTIVE DATE. ...................................68

12.4    EFFECT OF NON-OCCURRENCE OF CONDITIONS. ...................................................68

ARTICLE 13 . EFFECTS OF CONFIRMATION. ...................................................68

13.1    BINDING EFFECT. ...................................................68

13.2    DISCHARGE. ...................................................69

13.3    CHANNELING INJUNCTION PREVENTING PROSECUTION OF CLAIMS AGAINST PROTECTED PARTIES AND SETTLING INSURERS. ...................................................69

13.4    SUPPLEMENTAL SETTLING INSURER INJUNCTION. ...................................................71

13.5    [RESERVED.] ...................................................72

13.6    GATEKEEPER INJUNCTION. ...................................................72

13.7    INJUNCTION AGAINST INTERFERENCE WITH PLAN. ...................................................74

13.8    EXCULPATION OF EXCULPATED PARTIES. ........................................................74

13.9    LIMITATION OF LIABILITY FOR PAYMENTS TO SURVIVORS. ............................74

13.10   INJUNCTIONS IN FULL FORCE AND EFFECT. .................................................74

13.11   SETTLEMENTS, INJUNCTIONS, AND RELEASES INTEGRAL TO PLAN. ...............74

13.12   TIMING. ......................................................................................................75

13.13   TITLE TO AND VESTING OF ASSETS. ............................................................75

13.14   CANCELLATION OF INSTRUMENTS. ..............................................................75

13.15   DISSOLUTION OF THE COMMITTEE. ..............................................................75

ARTICLE 14 . RETENTION OF JURISDICTION. ................................................................75

14.1    BY THE BANKRUPTCY COURT. ....................................................................75

14.2    BY THE DISTRICT COURT. ...........................................................................77

14.3    ACTIONS TO COLLECT AMOUNTS OWED PURSUANT TO THE PLAN. ...............77

14.4    CASE CLOSURE. ..........................................................................................78

ARTICLE 15 . MISCELLANEOUS PROVISIONS. ..............................................................78

15.1    MODIFICATION OF THE PLAN. ......................................................................78

15.2    UNITED STATES TRUSTEE REPORTS. ............................................................78

15.3    SEVERABILITY OF PLAN PROVISIONS. ..........................................................78

15.4    REGULATED RATES. .....................................................................................78

15.5    SUCCESSORS AND ASSIGNS. ........................................................................79

15.6    GOVERNING LAW. ......................................................................................79

15.7    CONSTRUCTION. ..........................................................................................79

15.8    REVOCATION. ..............................................................................................79

15.9    CONTROLLING DOCUMENTS. ........................................................................79

15.10   NOTICES. ....................................................................................................79

15.11   FILING OF ADDITIONAL DOCUMENTS. ..........................................................80

15.12   DIRECTION TO A PARTY. ..............................................................................81

15.13   CERTAIN ACTIONS. ......................................................................................81

15.14   PLAN AS SETTLEMENT COMMUNICATION. .....................................................81

15.15   OTHER RIGHTS. ...........................................................................................81

ARTICLE 16 . BANKRUPTCY RULE 9019 REQUEST. ......................................................81

ARTICLE 17 . CONFIRMATION REQUEST. .....................................................................82

ARTICLE 18 . RECOMMENDATION AND CONCLUSION. ..................................................82

INTRODUCTION

The Roman Catholic Archbishop of Baltimore, a corporation sole and the debtor and debtor in possession in the above-captioned chapter 11 case, proposes this chapter 11 plan of reorganization (the "***Plan***") pursuant to the provisions of the Bankruptcy Code.

All creditors are encouraged to consult the Disclosure Statement (as defined below) before voting to accept or reject this Plan. Among other information, the Disclosure Statement contains discussions regarding the Debtor, events prior to this chapter 11 case, and a summary and analysis of this Plan. No solicitation materials other than the Disclosure Statement have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

**Article 1.**
**Definitions.**

1.1    **Defined Terms.**

For purposes of this Plan, except as expressly provided otherwise, all capitalized terms not otherwise defined in this Plan have the meanings ascribed to them below.

1.1.1    "***Abuse***" means any actual, alleged, or threatened sexual conduct, misconduct, behavior, misbehavior, abuse, or molestation, including: (a) any conduct that would constitute sexual abuse as defined in Md. Code Ann., Crim. Law § 3-602, Md. Code Ann., Fam. Law § 5-701, or Md. Code Ann., Cts. & Jud. Proc. § 5-117 (or a predecessor statute to any of the foregoing); (b) any sexual offense as laid out in Md. Code Ann., Crim. Law § 3-307 (or a predecessor statute thereto); (c) any other sexually related act, contact, or interaction, indecent assault and/or battery, rape, indecent or lascivious behavior, undue familiarity, harassment, pedophilia, hebephilia, or ephebophilia; (d) any act that causes or allegedly causes sexually-related physical, psychological, or emotional harm, or any other contacts or interactions of a sexual nature, including without limitation those stemming from the use of photography, video, or digital media, including any such contacts or interactions between a child and an adult, or a non-consenting adult and another adult; (e) contacts or interactions of sexual nature; (f) assault, battery, corporal punishment, or any other act of physical, psychological, mental, or emotional abuse, humiliation, or intimidation; or (g) any other conduct constituting a sexual offense, incest, or use of a child in a sexual performance (as such terms are defined in the Maryland Criminal Law Code). Abuse may occur whether or not this activity involves explicit force, whether or not it involves genital or other physical contact, and whether or not there is physical, psychological, or emotional harm to the person.

1.1.2    "***Action***" means any lawsuit, proceeding, or other action in a court, or any arbitration.

1.1.3    "***Administrative Expense***" means an unpaid administrative expense of the kind described in sections 503(b) and 507(a)(2) of the Bankruptcy Code against the Debtor, including (a) the actual, necessary costs and expenses of preserving the Estate of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case, (b) compensation and reimbursement of expenses

of professionals to the extent allowable under sections 327, 328, 330(a), 331, 503(b), and/or 1103 of the Bankruptcy Code and actually Allowed pursuant to a Final Order of the Bankruptcy Court, and (c) all Statutory Fees and Court Costs; provided, however, for the avoidance of doubt, no Survivor Claim(s) shall be treated as an Administrative Expense.

1.1.4    "*Administrative Expense Claims Bar Date*" means the deadline for filing requests for payment of Administrative Expense Claims, which: (a) with respect to General Administrative Expense Claims shall be thirty (30) days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be forty-five (45) days after the Effective Date.

1.1.5    "*Affiliate*" means any past, present, or future Person that controls, is controlled by, or is under control with, another Person, including parents, subsidiaries, merged Persons, holding Persons, and acquired Persons, or any predecessor to such Person.

1.1.6    "*Agent*" means any past and present employee, officer, director, managing agent or other agent, shareholder, principal, teacher, staff, member, board member, administrator, priest, deacon, brother, sister, nun, or other member of a religious order, clergy, Person bound by a monastic vow, volunteer, attorney, claim handling administrator, or any representatives of a Person in any of the foregoing capacities.

1.1.7    "*Allowed*" means: (a) a Claim that has been scheduled by the Debtor in its Schedules as other than disputed, contingent, or unliquidated and as to which the Debtor, or any other party in interest has not filed an objection; (b) a Claim that either is not a Disputed Claim or has been allowed by a Final Order; (c) a Claim that is determined by the Debtor to be allowed; (d) a Claim that is allowed in a stipulation or settlement executed prior to or after the Effective Date; (e) a Claim relating to a rejected executory contract or unexpired lease that is not a Disputed Claim or has been allowed by a Final Order, only if a Proof of Claim has been timely filed; (f) a Claim as to which a Proof of Claim has been timely filed and as to which the Debtor or any party in interest has not filed an objection; or (g) a Survivor Claim assessed by the Survivor Claims Reviewer in accordance with the Survivor Compensation Trust Distribution Plan and determined to be entitled to compensation from the Survivor Compensation Trust; and with respect to all Claims, only after reduction for applicable setoff and similar rights of the Debtor or Reorganized Debtor, as applicable.

1.1.8    "*Archbishop*" means Most Reverend William E. Lori, the Archbishop of Baltimore, and his predecessors and successors.

1.1.9    "*Archdiocese*" means the territorial area decreed by the Roman Catholic Church as the "Archdiocese of Baltimore" encompassing Baltimore City and 10 counties in Maryland.

1.1.10   "*Assumed Agreement*" means a contract, lease, or other agreement listed on **Exhibit C** to this Plan.

2

**1.1.11** "*Avoidance Action*" means any claim, cause of action, or right to property of the Debtor or the Estate under sections 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code.

**1.1.12** "*Bankruptcy Code*" means title 11 of the United States Code.

**1.1.13** "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Maryland or such other court of competent jurisdiction that properly exercises jurisdiction over part or all of the Chapter 11 Case, to the extent that the reference of part or all of the Chapter 11 Case is withdrawn.

**1.1.14** "*Bankruptcy Rule*" means a Federal Rule of Bankruptcy Procedure.

**1.1.15** "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" in the United States.

**1.1.16** "*Cash*" means legal tender of the United States of America and equivalents of same.

**1.1.17** "*Causes of Action*" means, except as provided otherwise in this Plan, the Confirmation Order, or any document, instrument, release, or other agreement entered into in connection with this Plan, all Claims, including all Claims of the Debtor, the Estate, or the Trusts as successor(s) to the Debtor or Estate including in any Avoidance Action, whether or not pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date; provided, however, that any affirmative defense or cross-claim asserted with respect to a Claim shall not be deemed a Cause of Action to the extent such affirmative defense or cross-claim seeks to disallow, reduce, or serve as an offset against such Claim.

**1.1.18** "*Channeled Claim*" means any of the following Claims that have been or could have been asserted against any of the Protected Parties or any Settling Insurer(s) as of the Effective Date to the extent that such Claim directly or indirectly relates to the same injury, damages, facts, or circumstances giving rise to a Survivor Claim, including each and every: (a) Survivor Claim; (b) Indirect Claim; (c) Contribution Claim; (d) Non-Settling Insurer Contribution Claim; (e) Medicare Claim; and (f) Extra-Contractual Claim relating to the Claims listed in subsections (a)–(e) of this sentence; provided, however, that "*Channeled Claims*" shall not include a Claim against an individual who perpetrated an act of Abuse; provided, further, however, solely with respect to Related Non-Debtor Entities, "*Channeled Claims*" shall be limited to those Channeled Claims that relate to or would give rise to any Coverage Claim or Extra-Contractual Claim that arises out of or relates in any to a Settling Insurer Policy or Non-Settling Insurer Policy.

**1.1.19** "*Channeling Injunction*" means the injunction incorporated in this Plan by Section 13.3 of this Plan.

**1.1.20** "*Chapter 11 Case*" means the Debtor's bankruptcy case pending in the Bankruptcy Court under chapter 11 of the Bankruptcy Code and which is captioned at the top of this Plan.

**1.1.21** "*Claim*" (a) has the meaning ascribed in section 101(5) of the Bankruptcy Code and (b) also means any past, present or (to the extent it arises before the Effective Date) future claim, Action, Cause of Action, suit, debt, dues, sum of money, account, reckonings, bond, bill, specialty, assertion of right, complaint, cross-complaint, counterclaim, liability, obligation, right, request, allegation, mediation, litigation, direct action, administrative proceeding, lien, encumbrance, indemnity, equitable indemnity, right of subrogation, equitable subrogation, defense, injunctive relief, controversy, contribution, exoneration, covenant, agreement, promise, act, omission, trespass, variance, damages, judgment, compensation, set-off, reimbursement, restitution, cost, expense, loss, exposure, execution, attorneys' fee, obligation, order, affirmative defense, writ, demand, inquiry, request, directive, obligation, Proof of Claim in a bankruptcy proceeding or submitted to a trust established pursuant to the Bankruptcy Code, government claim or Action, settlement, or any liability whatsoever, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, matured or unmatured, liquidated or unliquidated, direct, indirect, derivative or otherwise consequential, whether in law, equity, admiralty or otherwise, whether compromised, settled, or reduced to a consent judgment, that may exist no or hereinafter for property damages, compensatory damages (such as loss of consortium, wrongful death, survivorship, proximate, consequential, general and special damages), punitive damages, bodily injury, personal injury, public and private claims, or any other right to relief whether sounding in tort, contract, extra-contractual or bad faith, statute, strict liability, equity, nuisance, trespass, statutory violation, wrongful entry or eviction or other eviction or other invasion of the right of private occupancy, and any amounts paid in respect of any judgment, order, decree, settlement, contract, or otherwise.

**1.1.22** "*Claims and Noticing Agent*" means Epiq Corporate Restructuring, LLC the claims and noticing agent in this Chapter 11 Case pursuant to that *Order (I) Authorizing and Approving the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent and (II) Granting Related Relief* (Dkt. No. 47).

**1.1.23** "*Claim Filing Deadline*" means May 31, 2024.

**1.1.24** "*Claimant*" means any Person who alleges, alleged, or could have alleged any Claim.

**1.1.25** "*Class*" means a category of holders of Claims as set forth in <u>Article 3</u> in this Plan and under section 1122(a) of the Bankruptcy Code.

**1.1.26** "*Class 1 Claim*" means a School Bond Claim.

**1.1.27** "*Class 1 Claimant*" means a holder of a Class 1 Claim.

**1.1.28** "*Class 2 Claim*" means a PNC Secured Claim.

**1.1.29** "*Class 2 Claimant*" means a holder of a Class 2 Claim.

**1.1.30** "*Class 3 Claim*" means an Other Priority Claim.

**1.1.31** "*Class 3 Claimant*" means a holder of a Class 3 Claim.

**1.1.32** "*Class 4 Claim*" means an Other Secured Claim.

**1.1.33** "*Class 4 Claimant*" means a holder of a Class 4 Claim.

**1.1.34** "*Class 5 Claim*" means a General Unsecured Claim.

**1.1.35** "*Class 5 Claimant*" means a holder of a Class 5 Claim.

**1.1.36** "*Class 6 Claim*" means a Survivor Claim.

**1.1.37** "*Class 6 Claimant*" means a holder of a Class 6 Claim.

**1.1.38** "*Class 7 Claim*" means a Non-Survivor Tort Claim.

**1.1.39** "*Class 7 Claimant*" means a holder of a Class 7 Claim.

**1.1.40** "*Class 8 Claim*" means a Co-Insured Entity Claim.

**1.1.41** "*Class 8 Claimant*" means a holder of a Class 8 Claim.

**1.1.42** "*Class 9 Claim*" means an Inbound Contribution Claim.

**1.1.43** "*Class 9 Claimant*" means a holder of a Class 9 Claim.

**1.1.44** "*CMS*" means the Centers for Medicare and Medicaid Services of the United States Department of Health and Human Services or any other Agent or Successor Person charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA for reimbursement of Medicare Claims.

**1.1.45** "*Co-Insured Entities*" means the Debtor, Reorganized Debtor, Related Non-Debtor Entities, and their respective Agents covered by Insurance Policies.

**1.1.46** "*Co-Insured Entity Claims*" means, collectively, Other Archdiocesan-Related Entity Claims, Parish Claims, and School Claims.

**1.1.47** "*Committee*" means the Official Committee of Unsecured Creditors appointed in this Chapter 11 Case, as such committee may be constituted from time to time.

**1.1.48** "*Compensation and Benefits Programs*" means all employment agreements and policies and all employment, compensation, and benefit plans, policies, savings plans, retirement plans, deferred compensation plans, supplemental executive retirement plans, healthcare plans, disability plans, severance benefit agreements, plans, or policies, incentive plans, life and accidental death and dismemberment insurance plans, and programs of the Debtor, and all amendments and modifications to the foregoing, applicable to the Debtor's employees, former employees, retirees.

**1.1.49** "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order.

**1.1.50** "*Confirmation Order*" means the order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.1.51** "*Contribution Claim*" means all Claims by an Insurer against any Settling Insurer, which are most commonly expressed in terms of contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, or reimbursement, or any other indirect or derivative recovery, for the payment of money where such Insurer contends that it has paid more than its equitable or proportionate share of a Survivor Claim against a Protected Party to the extent that such Claim, directly or indirectly, relates to the same injury, damages, facts, or circumstances giving rise to a Survivor Claim (including an Unknown Survivor Claim); provided, however, "*Contribution Claims*" do not include any Claim for contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, or reimbursement, or any other indirect or derivative recovery, that a Settling Insurer might have arising from the payment of any amounts under an Insurance Settlement Agreement, nor does it include any Claims by any Insurer, whether a Settling Insurer or otherwise, under reinsurance, retrocession or similar agreements.

**1.1.52** "*Coverage Claim*" means any Claim against an Insurer under or relating to an Insurance Policy, or the rights and obligations thereunder, or the breach thereof, including Claims seeking insurance coverage.

**1.1.53** "*Creditor*" means a Person entitled to Distributions under the Plan whether or not their Claim has been disallowed.

**1.1.54** "*Cure Amount*" means a Claim based upon the Debtor's monetary defaults under an executory contract or unexpired lease that is to be paid in connection with the assumption of such contract or lease under section 365 of the Bankruptcy Code in the amount set forth on **Exhibit C** to this Plan.

**1.1.55** "*Debtor*" means the Roman Catholic Archbishop of Baltimore, a corporation sole, the debtor and debtor in possession in the Chapter 11 Case.

**1.1.56** "*Disallowed Claim*" means a Claim, or any portion thereof, that: (a) has been disallowed by a Final Order; (b) has been listed in the Debtor's Schedules at zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law, except any Unknown Survivor Claim; (c) has not been listed in the Debtor's Schedules and as to which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law, except any Unknown Survivor Claim; or (d) is a Survivor Claim assessed by the Survivor Claims Reviewer in accordance with the Survivor Compensation Trust Distribution Plan and determined to not be entitled to a Trust Distribution.

**1.1.57** "*Discharge*" shall mean the complete extinguishment of the Debtor's liability in respect of any Claim or debt as and to the extent further described in Section 13.2 of this Plan.

6

**1.1.58** "*Discharge Injunction*" means the injunction set forth in <u>Section 13.2.3</u> of this Plan.

**1.1.59** "*Disclosure Statement*" means the Disclosure Statement for this Plan, as the same may be further amended, supplemented, or otherwise modified from time to time.

**1.1.60** "*Disputed Claim*" means, with respect to a Claim against the Debtor or property of the Debtor: (a) a Claim that was scheduled by the Debtor in its Schedules as a disputed, contingent, or unliquidated claim and that has not been otherwise Allowed; (b) a Claim that is not an Allowed Claim because the Debtor has objected to allowance of the claim under sections 502(b) or 503 of the Bankruptcy Code and Bankruptcy Rule 3007; (c) any secured or unsecured portions of a secured Claim that is the subject of a motion for determination of the values of security under section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012; (d) any Claim held by a Creditor against which the Debtor has demanded the recovery of property pursuant to section 502(d) of the Bankruptcy Code, without regard to whether such Claim was previously an Allowed Claim. The processes for handling "*Disputed Claims*" do not apply to Survivor Claims, which shall be handled pursuant to and in accordance with <u>Article 6</u> of this Plan.

**1.1.61** "*Distribution*" means any payment to the holder of a Claim pursuant to, in accordance with, or in connection with this Plan.

**1.1.62** "*Distribution Claim*" means a Survivor Claim that is not a Litigation Claim.

**1.1.63** "*Distribution Claimant*" means a Survivor Claimant who is not a Litigation Claimant.

**1.1.64** "*District Court*" means the United States District Court for the District of Maryland.

**1.1.65** "*Effective Date*" means the day on which the conditions of <u>Section 12.2</u> of this Plan have been satisfied.

**1.1.66** "*Employee Priority Claim*" means a Claim held by an employee that is entitled to priority under section 507(a)(4) or 507(a)(5) of the Bankruptcy Code.

**1.1.67** "*Enjoined Party*" means all Persons who have held, hold or may hold Claims or Causes of Action that have been released or discharged or are subject to exculpation, the Channeling Injunction, the Discharge Injunction, or the Supplemental Settling Insurer Injunction pursuant to the Plan, the Confirmation Order, or the Insurance Settlement Approval Order.

**1.1.68** "*Estate*" means the estate created for the Debtor in this Chapter 11 Case under sections 301 and 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case, as applicable.

**1.1.69** "*Exculpated Parties*" means collectively the: (a) Debtor and Reorganized Debtor; (b) Related Non-Debtor Entities; (c) Estate; (d) Committee; (e) Settling Insurers;

(f) respective Agents of the Persons identified in the preceding clauses (a) through (e) in their capacities as such, including with respect to their service or participation in an outside board on which they serve at the request of a Person identified in the preceding clauses (a) through (e); and (g) professionals of a Person identified in the preceding clauses (a) through (e).

**1.1.70** "*Extra-Contractual Claim*" means any Claim against any Insurer seeking any type of relief in connection with the alleged obligations of the Insurers to the Protected Parties before the Effective Date other than coverage or benefits under the Insurance Policies, including Claims for compensatory, exemplary, or punitive damages or attorneys' fees, interests, costs, or any other type of relief, alleging with respect to (i) any Insurance Policy, (ii) any Claim allegedly or actually covered under an Insurance Policy, or (iii) the conduct of an Insurer with respect to (i) or (ii) any of the following: (a) bad faith; (b) failure to provide insurance coverage under any Insurance Policy; (c) failure or refusal to compromise and settle any Claim insured under any Insurance Policy; (d) failure to act in good faith; (e) violation of any covenant or duty of good faith and fair dealing; (f) violation of any state insurance codes, state surplus lines statutes or similar codes or statutes; (g) violation of any unfair claims practices act or similar statute, regulation, or code; (h) any type of misconduct; or (i) any other act or omission of any type for which the Claimant seeks relief other than coverage or benefits under an Insurance Policy. "*Extra-Contractual Claims*" include all Claims relating to the Insurers' (x) handling of any Coverage Claim under the Insurance Policies, (y) conduct relating to the negotiation of Insurance Settlement Agreements and Plan, and (z) conduct relating to the settlement of any Coverage Claim.

**1.1.71** "*Fee Notice*" shall have the meaning ascribed to it in Section 5.8.4(c) of this Plan.

**1.1.72** "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

**1.1.73** "*Final Order*" means an order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) that has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order to not be a Final Order.

8

**1.1.74** "*Gatekeeper Injunction*" means the injunction incorporated in this Plan by Section 13.6 of this Plan.

**1.1.75** "*General Administrative Expense Claim*" means an Administrative Expense Claim other than a Professional Fee Claim or a Claim for Statutory Fees and Court Costs.

**1.1.76** "*General Unsecured Claim*" means an unsecured Claim against the Debtor but which is not an Administrative Expense Claim, Priority Tax Claim, Employee Priority Claim, Other Priority Claim, Survivor Claim, Inbound Contribution Claim, Contribution Claim, Non-Settling Insurer Contribution Claim, or Non-Survivor Tort Claim.

**1.1.77** "*Impaired*" means "impaired" within the meaning of section 1124 of the Bankruptcy Code. "*Impair*" and "*Impairment*" shall have correlative meanings.

**1.1.78** "*Inbound Contribution Claim*" means an Indirect Claim against the Debtor.

**1.1.79** "*Indirect Claim*" means any Claim asserted against a Protected Party other than the Debtor or a Settling Insurer by any Person that is not an Insurer (an "*Indirect Claim Claimant*") for contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, reimbursement, or any other indirect or derivative recovery, on account of, or with respect to, any Protected Party's or Settling Insurer's actual or alleged liability for any Claim against such Indirect Claim Claimant that relates to Abuse that took place in whole or in part prior to the Effective Date.

**1.1.80** "*Insurance Claim*" means all Coverage Claims and Extra-Contractual Claims.

**1.1.81** "*Insurance Policy*" means any known or unknown contract, binder, certificate, or policy of insurance or certificate of liability coverage that any Insurer issued, subscribed any interest in, or has underwritten any risk in, that were in effect on or before the Effective Date and were issued or allegedly issued to, for the benefit of, or otherwise actually, allegedly, or potentially insure the Debtor or a Related Non-Debtor Entity, or any of their respective predecessors in interest, successors, or assigns, with respect to any Survivor Claim.

**1.1.82** "*Insurance Settlement Agreement*" means a settlement agreement among the Debtor, other Protected Parties, and applicable Settling Insurer(s) that is listed on **Exhibit B** to this Plan or is subsequently entered into by the Debtor, other Protected Parties, and a Settling Insurer.

**1.1.83** "*Insurance Settlement Amount*" means the funds payable by a Settling Insurer pursuant to an Insurance Settlement Agreement.

**1.1.84** "*Insurance Settlement Approval Order*" means an order of the Bankruptcy Court in the Chapter 11 Case approving a motion to approve one or more Insurance Settlement Agreements and, among other things, authorizing the parties to each applicable

Insurance Settlement Agreement to undertake the transactions contemplated therein, including the applicable Settling Insurers' buyback of the applicable Settling Insurer Policies and Extra-Contractual Claims free and clear of all liens, Claims, and Interests of all Persons to the extent provided in each Applicable Insurance Settlement Agreement pursuant to sections 363(b), (f), and (m) of the Bankruptcy Code and any other applicable provisions of the Bankruptcy Code.

**1.1.85** "*Insurance Trust*" means the trust created pursuant to Article 5 of this Plan for the purposes of assuming the Debtor's and Related Non-Debtor Entities': (a) liability for Survivor Claims relating to Non-Settling Insurers and Non-Settling Insurer Policies; and (b) rights and obligations under Non-Settling Insurer Policies.

**1.1.86** "*Insurance Trust Agreement*" or "*Insurance Trust Documents*" means the trust agreement establishing the Insurance Trust, as may be amended, supplemented, or modified from time to time, together with such additional documents as may be executed in connection with the Insurance Trust Agreement.

**1.1.87** "*Insurance Trust Assets*" means all property of any kind to be transferred to the Insurance Trust pursuant to the terms of this Plan, the Confirmation Order, or any other Plan Documents.

**1.1.88** "*Insurance Trustee*" means the Person appointed as trustee of the Insurance Trust in accordance with the terms of this Plan, the Confirmation Order, and Insurance Trust Agreement.

**1.1.89** "*Insurer*" means a Person (including all of its predecessors in interest, successors, and assigns) that has, or is alleged to have, issued, subscribed any interest in, assumed any liability for, or underwritten any risk in, an Insurance Policy, whether or not a regulated insurance company.

**1.1.90** "*Interest*" means all Claims, including any "interests" as that term is used in section 363 of the Bankruptcy Code, and other rights or any nature, whether at law or in equity, including all interests or other rights under Maryland law or other applicable law.

**1.1.91** "*Joint Tortfeasor*" means any Person alleged to be a joint tortfeasor with any Protected Party in connection with the Abuse relating to a Survivor Claim.

**1.1.92** "*Known Survivor Claim*" means a Survivor Claim for which a Survivor Claimant filed a Proof of Claim on or before the Claim Filing Deadline.

**1.1.93** "*Late-Filed Survivor Claim*" means a Survivor Claim for which a Survivor Claimant filed a Proof of Claim after the Claim Filing Deadline, as applicable, but before the Effective Date. For the avoidance of doubt, Late-Filed Survivor Claims do not include Untimely Survivor Claims.

**1.1.94** "*Lien*" means any "lien" as defined in section 101(37) of the Bankruptcy Code.

10

**1.1.95** "*Litigation Award*" means any judgment or verdict determining that a Protected Party is liable with respect to a Litigation Claim.

**1.1.96** "*Litigation Claim*" means any Survivor Claim held by a Litigation Claimant to the extent the Survivor Compensation Trustee has: (a) determined in good faith that such Survivor Claim is either (i) covered, in whole or in part, by one or more Non-Settling Insurer Policies or (ii) not covered by a Settling Insurer Policy or Non-Settling Insurer Policy; and (b) authorized such Litigation Claimant to treat their Survivor Claim as a Litigation Claim in accordance with this Plan, the Survivor Compensation Trust Distribution Plan, and Survivor Compensation Trust Agreement.

**1.1.97** "*Litigation Claimant*" means any Survivor Claimant who elects to be treated as a Litigation Claimant, to the extent the Survivor Compensation Trustee has: (a) determined in good faith that such Survivor Claimant holds a Survivor Claim that is either (i) covered, in whole or in part, by one or more Non-Settling Insurer Policies or (ii) not covered by a Settling Insurer Policy or Non-Settling Insurer Policy; and (b) authorized such Litigation Claimant to treat their Survivor Claim as a Litigation Claim in accordance with this Plan, the Survivor Compensation Trust Distribution Plan, and Survivor Compensation Trust Agreement.

**1.1.98** "*Litigation Claimant Agreement*" means an agreement substantially in the form attached to this Plan as **Exhibit I** pursuant to which a Litigation Claimant agrees and acknowledges the terms and conditions of pursuing a Litigation Claim.

**1.1.99** "*Medicaid*" means the medical assistance provided under any state plan approved under title XIX of the Social Security Act.

**1.1.100** "*Medicare*" means the health insurance program for the aged and disabled under title XVIII of the Social Security Act.

**1.1.101** "*Medicare Beneficiary*" means an individual who is entitled to Medicare benefits or has been determined to be eligible for Medicare.

**1.1.102** "*Medicare Claims*" means any and all Claims against the Trusts, any Settling Insurer, or any other Protected Party, brought or asserted by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services or any other agent or successor Person charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA and pursuing Claims under MSPA, relating to any payments in respect of any Survivor Claims (including Claims for reimbursement of payments made to Survivor Claimants who recover or receive any distribution from the Trusts) and Claims relating to reporting obligations.

**1.1.103** "*MMSEA*" means section 111 of the "Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L. 110-173)," which imposes reporting obligations on those Persons with payment obligations under the MSPA.

11

**1.1.104**    "*MSPA*" means 42 U.S.C. § 1395y *et seq*., or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection with same or amendments to same.

**1.1.105**    "*Non-Replenishment Determination*" shall have the meaning ascribed to it in Section 5.8.4(d) of this Plan.

**1.1.106**    "*Non-Settling Insurer(s)*" means any Insurer that is not a Settling Insurer.

**1.1.107**    "*Non-Settling Insurer Contribution Claim*" means any Claim held by a Non-Settling Insurer pursuant to which such Non-Settling Insurer alleged it has paid more than its equitable or proportionate share of a Survivor Claim, whether express in terms of contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, allocation, reallocation, reimbursement, or any other direct, indirect, or derivative recovery. "*Non-Settling Insurer Contribution Claim*" does not include any Claims by a Non-Settling Insurer under reinsurance, retrocession, or similar agreements.

**1.1.108**    "*Non-Settling Insurer Policy(ies)*" means, collectively: (a) all Insurance Policies that are not subject of an Insurance Settlement Agreement; and (b) all known and unknown Insurance Policies to the extent a Non-Settling Insurer issued, subscribed any interest in, assumed any liability for, or has underwritten any risk in, such Insurance Policy; provided, however, that if a Non-Settling Insurer Policy was not subscribed on behalf of the Debtor or a Related Non-Debtor Entity but provides coverage to the Debtor or Related Non-Debtor Entity, then it is a Non-Settling Insurer Policy to the extent it insures the Debtor or a Related Non-Debtor Entity, but not to the extent it insures any other Person.

**1.1.109**    "*Non-Survivor Tort Claim*" means a Claim against the Debtor for tort liability (other than Abuse) arising on or before the Effective Date.

**1.1.110**    "*Other Archdiocesan-Related Entities*" means the entities listed on **Exhibit A** that are not Schools or Parishes.

**1.1.111**    "*Other Archdiocesan-Related Entity Claim*" means every Claim held by an Other Archdiocesan-Related Entity against the Debtor as of the Effective Date, relating to or arising out of Settling Insurer Policies, Non-Settling Insurer Policies, or Survivor Claims, including Claims for contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, or reimbursement, or any other indirect or derivative recovery, for the payment of money where such Other Archdiocesan-Related Entity contends that it has paid more than its equitable or proportionate share of a Survivor Claim against such Other Archdiocesan-Related Entity to the extent that such Claim, directly or indirectly, relates to the same injury, damages, facts, or circumstances giving rise to a Survivor Claim (including an Unknown Survivor Claim). For the avoidance of doubt,

12

Other Archdiocesan-Related Entity Claims include Claims by Other Archdiocesan-Related Entities to the proceeds of Settling Insurer Policies and Non-Settling Insurer Policies.

**1.1.112** "*Other Priority Claim*" means any Claim against the Debtor that is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than Administrative Expense Claims, Professional Fee Claims, Statutory Fees and Court Costs, and Priority Tax Claims.

**1.1.113** "*Other Secured Claim*" means any Secured Claim against the Debtor other than the School Bond Claims and PNC Secured Claims.

**1.1.114** "*Outbound Contribution Claim*" means any Claims by a Protected Party against a third party other than another Protected Party or Settling Insurer, which Claims are most commonly expressed in terms of contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, or reimbursement, or any other indirect or derivative recovery, for the payment of money where such Protected Party contends that it has paid more than its equitable or proportionate share of a Survivor Claim against such Protected Party to the extent that such Claim, directly or indirectly, relates to the same injury, damages, facts, or circumstances giving rise to a Survivor Claim (including an Unknown Survivor Claim).

**1.1.115** "*Parish*" means all past and present parishes within the Archdiocese, including those identified on **Exhibit A** to this Plan.

**1.1.116** "*Parish Claim*" means every Claim held by a Parish against the Debtor as of the Effective Date, relating to or arising out of Settling Insurer Policies, Non-Settling Insurer Policies, or Survivor Claims, including Claims for contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, or reimbursement, or any other indirect or derivative recovery, for the payment of money where such Parish contends that it has paid more than its equitable or proportionate share of a Survivor Claim against such Parish to the extent that such Claim, directly or indirectly, relates to the same injury, damages, facts, or circumstances giving rise to a Survivor Claim (including an Unknown Survivor Claim). For the avoidance of doubt, Parish Claims include Claims by Parishes to the proceeds of Settling Insurer Policies and Non-Settling Insurer Policies.

**1.1.117** "*Person*" means any individual or entity, including any corporation, limited liability company, partnership, general partnership, limited partnership, limited liability partnership, limited liability limited partnership, proprietorship, association, joint stock company, joint venture, estate, trust, trustee, personal executor or personal representative, unincorporated association, or other entity, including any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency or instrumentality thereof and any other individual or entity within the definition of (a) "person" in section 101(41) of the Bankruptcy Code or (b) "entity" in section 101(15) of the Bankruptcy Code.

**1.1.118** "*Petition Date*" means September 29, 2023.

**1.1.119** "*Plan*" means this Chapter 11 Plan for the Roman Catholic Archbishop of Baltimore, a corporation sole.

**1.1.120** "*Plan Documents*" shall have the meaning ascribed to it in Section 1.4 of this Plan.

**1.1.121** "*Plan Proponent*" shall mean the Debtor.

**1.1.122** "*PNC Secured Claims*" means those Claims by PNC Bank, National Association pursuant to the PNC Loan Agreement, PNC Notes, Pledge Agreement, and Swap Agreements, as defined and more fully described in the *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and Granting Adequate Protection, (II) Scheduling a Final Hearing on the Use of Cash Collateral, and (III) Granting Related Relief* (Dkt. No. 9) filed in the Chapter 11 Case.

**1.1.123** "*Post-Effective Date Costs*" means all fees and expenses reasonably incurred by the Debtor, Reorganized Debtor, or any Co-Insured Entity in connection with performing any of their respective duties or obligations under the Plan with respect to any Survivor Claims or Insurance Claims, including, without limitation, in connection with: (i) any attempt by the Trusts to enforce or recover Insurance Claims against Non-Settling Insurers; (ii) responding to and defending against any legal action taken by any Survivor Claimants; or (iii) upon request by the Insurance Trustee, Survivor Compensation Trustee, or the Survivor Claims Reviewer, assisting with the administration of the Survivor Compensation Trust Distribution Plan or any Insurance Claims. For the avoidance of doubt, such costs include any costs and expenses incurred by the Debtor, Reorganized Debtor, or any Co-Insured Entity in connection with such efforts by any Trust, or in connection with any depositions, discovery, or other litigation matters relating in any way to Litigation Claimants or Insurance Claims, including, without limitation, any attorney's fees, expert fees, applicable self-insured retention obligations, if any, arising out of any Survivor Claim or under any Non-Settling Insurer Policy, and other costs and expenses.

**1.1.124** "*Post-Effective Date Costs Reserve*" shall have the meaning set forth in Section 5.8.4(a) of this Plan.

**1.1.125** "*Post-Effective Date Insurance Obligations*" means those preconditions and contractual requirements, if any, that: (a) the Non-Settling Insurer Policies and applicable law impose as a condition to providing coverage under such Non-Settling Insurer Policies, in each case to the extent required to be satisfied or performed following the Effective Date; and (b) the Insurance Trust may be required to satisfy under Non-Settling Insurer Policies and applicable law as a predicate to the pursuit of an Insurance Claim.

**1.1.126** "*Previously Asserted Claims*" means any Claim (including any Survivor Claim) for which the Claimant (including a Survivor Claimant) has, on or before May 15, 2026, filed a Proof of Claim in the Chapter 11 Case, against the Debtor, regardless

14

of whether such Proof of Claim was timely filed, and regardless of whether such Proof of Claim is or was a Disallowed Claim.

       **1.1.127**      "***Priority Tax Claim***" means a Claim that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

       **1.1.128**      "***Professional***" means any Person retained by the Debtor or a statutory committee, if any, pursuant to a Final Order entered under sections 327, 328, 363, or 1103 of the Bankruptcy Code.

       **1.1.129**      "***Professional Fee Claim***" means any Claim of a Professional for allowance and award by the Bankruptcy Court of compensation for services rendered and reimbursement of costs or expenses incurred in the Chapter 11 Case for the period from the Petition Date to and including the Effective Date under sections 328, 330, 331, or 503(b) of the Bankruptcy Code.

       **1.1.130**      "***Proof of Claim***" means a proof of Claim filed in the Chapter 11 Case pursuant to section 501 of the Bankruptcy Code or pursuant to any order of the Bankruptcy Court, together with any supporting documents.

       **1.1.131**      "***Protected Party***" or "***Protected Parties***" means any or all of: (a) the Debtor and Reorganized Debtor; (b) Related Non-Debtor Entities; (c) each of the foregoing Persons' respective predecessors in interest, successors, and assigns; and (d) solely to the extent of and in their capacity as such, and all of the foregoing Persons' respective past and present Agents. Nothing in the foregoing is intended to suggest that such Persons are Agents of the Debtor or subject to its control. For the avoidance of doubt, the following are not Protected Parties: (y) any individual who perpetrated an act of Abuse that forms the basis of a Survivor Claim; or (z) any religious order, archdiocese or diocese, other than the Debtor.

       **1.1.132**      "***Record Date***" means the last date on which a transfer of a Claim will be recognized. The Record Date is the Confirmation Date.

       **1.1.133**      "***Reinstatement***" means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim or Interest entitles the holder of such Claim or Interest or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim or Interest as such maturity existed before such default; (iii) compensating the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or applicable law; (iv) if such Claim or Interest arises from any failure to perform a nonmonetary obligation, compensating the holder of such Claim or Interest (other than the Debtor or an "insider" of the Debtor within the meaning of section 110(31) of the Bankruptcy Code) for any actual pecuniary loss incurred by such holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which

15

such Claim or Interest entitles the holder thereof. "**Reinstate**" and "**Reinstated**" shall have correlative meanings.

1.1.134    "**Related Non-Debtor Entities**" means the Parishes, Schools, and Other Archdiocesan-Related Entities listed on **Exhibit A**.

1.1.135    "**Released Claims**" means all Claims released by the Protected Parties pursuant to the Insurance Settlement Agreements.

1.1.136    "**Reorganized Debtor**" means the Debtor from and after the Effective Date. Unless otherwise expressly stated or the context otherwise requires, references to "the Debtor" and "the Reorganized Debtor" throughout various provisions of the Plan are an effort to anticipate whether an event may occur before or after the Effective Date. In this regard, and generally for purposes of the Plan, any written agreement made by the Debtor as part of the Plan before the Effective Date (unless provided otherwise) will survive the Confirmation Date and the Effective Date and will bind the Reorganized Debtor and every other party to such agreement (including the provisions of the Plan as confirmed).

1.1.137    "**Retained Claims**" means the Debtor's Claims, including all Causes of Action, that are not otherwise settled pursuant to this Plan or agreements approved by the Bankruptcy Court on or prior to the Effective Date, any rights or Claims of the Debtor for indemnification, contribution, or fault allocation, and other Claims of the Debtor against any Person on account of any Claims that are or may be asserted against the Debtor. Retained Claims do not include any Claims transferred or assigned to the Trusts and expressly exclude any Claims against any Person released by the Debtor under this Plan or any Insurance Settlement Agreement(s).

1.1.138    "**School**" means all past and present Catholic schools within and affiliated with the Archdiocese, which are identified on **Exhibit A** to this Plan.

1.1.139    "**School Bond Claims**" means those Claims pursuant to that certain Indenture of Trust dated as of June 1, 2007, relating to those $24,165,000 Maryland Health and Higher Educational Facilities Authority Revenue Bonds, Archdiocese of Baltimore Schools Issue, Series 2007, as more fully described in the *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and Granting Adequate Protection, (II) Scheduling a Final Hearing on the Use of Cash Collateral, and (III) Granting Related Relief* (Dkt. No. 9) filed in the Chapter 11 Case.

1.1.140    "**School Claim**" means every Claim held by a School against the Debtor as of the Effective Date, relating to or arising out of Settling Insurer Policies, Non-Settling Insurer Policies, or Survivor Claims, including Claims for contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, or reimbursement, or any other indirect or derivative recovery, for the payment of money where such School contends that it has paid more than its equitable or proportionate share of a Survivor Claim against such School to the extent that such Claim, directly or indirectly, relates to the same injury, damages, facts, or circumstances giving rise to a Survivor Claim (including an Unknown

16

Survivor Claim). For the avoidance of doubt, School Claims include Claims by Schools to the proceeds of Settling Insurer Policies and Non-Settling Insurer Policies.

**1.1.141** "*Secured*" means, with respect to any Claim, a Claim to the extent: (a) secured by a Lien on property of the Estate (i) as set forth in this Plan, (ii) as agreed by the holder of such Claim and the Debtor, or (iii) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (b) subject to any setoff right of the holder of such Claim under section 553 of the Bankruptcy Code; but, with respect to both of the foregoing clauses (a) and (b), only to the extent of the value of the interest of such holder in the applicable Estate's interest in the property securing such Claim or the amount subject to setoff, as applicable.

**1.1.142** "*Settling Insurer(s)*" means (a) the Person(s) listed on **Exhibit B** to this Plan in their capacity as an Insurer and whose Insurance Settlement Agreement has been approved by an Insurance Settlement Approval Order that becomes a Final Order and (b) any other Insurer that enters into a settlement, sale, or other transaction with the Debtor, the Estate, or any successor thereto, that is approved (i) pursuant to the Confirmation Order or separate order of the Bankruptcy Court or (ii) by the Insurance Trust, including any settlement, compromise, buyback or similar agreement concerning an Insurance Policy; provided, however, an Insurer shall not be a Settling Insurer to the extent such Insurer's Insurance Settlement Agreement is terminated in accordance with its terms; provided, further, that any Person listed on **Exhibit B** to this Plan shall, immediately upon filing this Plan, be a Settling Insurer with respect to all consent and consultation rights provided under this Plan unless such Person's Insurance Settlement Agreement is terminated in accordance with its terms. Solely in connection with insurance under any Settling Insurer Policies, Settling Insurer also includes the applicable Settling Insurer's past, present, and future parents, subsidiaries, affiliates, divisions, reinsurers, and retrocessionaires, including Persons released pursuant to the applicable Insurance Settlement Agreement; each of the foregoing Person's respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions, and acquired companies, including the Persons released pursuant to the applicable Insurance Settlement Agreement; each of the foregoing Person's respective past, present, and future directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and Claims handling administrators; and each of the foregoing Person's respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through, or in concert with them, except to the extent, if any, such Person's actual or alleged rights, duties, obligations, or liabilities arise out of or relate to their state as, or conduct, acts, or omissions on behalf of a Person that is not listed as a Settling Insurer on **Exhibit B** to this Plan.

**1.1.143** "*Settling Insurer Policy(ies)*" means, collectively: (a) all Insurance Policies that are subject of an Insurance Settlement Agreement; and (b) all known and unknown Insurance Policies to the extent a Settling Insurer has or is alleged to have issued, subscribed any interest in, assumed any liability for, or has underwritten any risk in, such Insurance Policy; provided, however, that if a Settling Insurer Policy that is not listed in any exhibit or attachment of any Insurance Settlement Agreement was not subscribed on behalf of the Debtor but provides coverage to the Debtor or a Related Non-Debtor Entity,

17

then it is a Settling Insurer Policy to the extent it insures the Debtor or a Related Non-Debtor Entity, but not to the extent it insures any other Person.

**1.1.144** "*Sexual Abuse Claim Supplement*" means the Sexual Abuse Claim Supplement, substantially in the form attached as **Exhibit 1** to the *Order (I) Establishing Deadlines for Filing Proofs of Claim; (II) Approving Sexual Abuse Claim Supplement; (III) Approving Form and Manner of Notice; and (IV) Approving Confidentiality Procedures* (Dkt. No. 316).

**1.1.145** "*Statutory Fees and Court Costs*" means the court costs and fees payable by the Debtor under 28 U.S.C. § 1930 and United States Trustee fees.

**1.1.146** "*Supplemental Settling Insurer Injunction*" means the injunction set forth in Section 13.4 of this Plan, as incorporated from each Insurance Settlement Agreement and Insurance Settlement Approval Order.

**1.1.147** "*Survivor Claim*" means any Claim, whether Allowed or not, for which any Protected Party is or may be liable, relating to, in whole or in part, directly or indirectly, Abuse that took place in whole or in part prior to the Effective Date. For the avoidance of doubt, Survivor Claim includes any Known Survivor Claim, Unknown Survivor Claim, Late-Filed Survivor Claim, and Untimely Survivor Claim regardless of whether such Survivor Claim is barred by any applicable statute of limitations or statute of repose, whether before or after the Effective Date or Petition Date, as applicable; provided, however, Survivor Claim does not include Contribution Claims, Non-Settling Insurer Contribution Claims, Indirect Claims, or Medicare Claims.

**1.1.148** "*Survivor Claimant*" means the holder of a Survivor Claim.

**1.1.149** "*Survivor Claimant Release*" means the release attached to this Plan as **Exhibit H**.

**1.1.150** "*Survivor Claims Reviewer*" means the Person, including the designee of such Person, who will assess Survivor Claims under the Survivor Compensation Trust Distribution Plan.

**1.1.151** "*Survivor Compensation Trust*" means the trust created for the benefit of Survivor Claimants, as more specifically set forth in Article 4 of this Plan, the Confirmation Order, and Survivor Compensation Trust Agreement.

**1.1.152** "*Survivor Compensation Trust Agreement*" or "*Survivor Compensation Trust Documents*" means the trust agreement establishing the Survivor Compensation Trust, as may be amended, supplemented, or modified from time to time, together with such additional documents as may be executed in connection with the Survivor Compensation Trust Agreement.

**1.1.153** "*Survivor Compensation Trust Assets*" means all property of any kind to be transferred to the Survivor Compensation Trust pursuant to the terms of this Plan, the Confirmation Order, or any other Plan Documents.

18

**1.1.154** "*Survivor Compensation Trust Distribution*" means a distribution by the Survivor Compensation Trust pursuant to the Survivor Compensation Trust Distribution Plan, this Plan, and any other Plan Documents.

**1.1.155** "*Survivor Compensation Trust Distribution Plan*" means the guidelines and protocols for making distributions to Survivor Claimants, which is attached to this Plan as **Exhibit G**.

**1.1.156** "*Survivor Compensation Trustee*" means the Person appointed as trustee of the Survivor Compensation Trust in accordance with the terms of this Plan, the Confirmation Order, and Survivor Compensation Trust Agreement.

**1.1.157** "*Trust Distribution*" means a Distribution by either of the Trusts pursuant to and in accordance with the terms of this Plan, the Survivor Compensation Trust Agreement, Insurance Trust Agreement, or Confirmation Order.

**1.1.158** "*Trusts*" shall mean, together, the Insurance Trust and Survivor Compensation Trust.

**1.1.159** "*Unclassified Claims*" means Administrative Expense Claims, Professional Fee Claims, Statutory Fees and Court Costs, and Priority Tax Claims.

**1.1.160** "*Unimpaired*" means any Claim or Interest that is not Impaired, including any Claim or Interest that is Reinstated.

**1.1.161** "*United States Trustee*" means the Office of the United States Trustee for Region 4, which includes the District of Maryland.

**1.1.162** "*Unknown Survivor Claim*" means any Survivor Claim: (a) relating to, in whole or in part, directly or indirectly, Abuse that took place in whole or in part prior to the Effective Date; (b) on account of which no Proof of Claim was filed or deemed filed in the Chapter 11 Case, or otherwise Allowed by the Court prior to the Effective Date; and (c) is held by an individual who was under a disability or other condition recognized by Maryland law that would toll the statute of limitations on such Survivor Claim at all times from the Petition Date through the Effective Date. For the avoidance of doubt, Unknown Survivor Claims do not include Untimely Survivor Claims.

**1.1.163** "*Unknown Survivor Claims Reserve*" shall have the meaning set forth in Section 4.2.6 of this Plan.

**1.1.164** "*Untimely Survivor Claim*" means any Survivor Claim: (a) relating, in whole or in part, directly or indirectly, to Abuse that took place in whole or in part prior to the Effective Date; (b) on account of which no Proof of Claim was filed or deemed filed in the Chapter 11 Case, or otherwise Allowed by the Court prior to the Effective Date; and (c) is held by an individual who was **not** under a disability or other condition recognized by Maryland law that would toll the statute of limitation on such Survivor Claim at all times from the Petition Date through the Effective Date.

19

**1.1.165** "*Workers' Compensation Program*" means the written contracts, agreements, agreements of indemnity, self-insured bonds, policies, programs, and plans for workers' compensation and workers' compensation insurance issued to or entered into at any time by the Debtor.

## 1.2 Interpretation.

For purposes of this Plan:

(a) any term that is not defined in this Plan but is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules, as applicable;

(b) the term "including" or "includes" is intended to be illustrative and not exhaustive and shall be construed as "including, but not limited to" or "includes, but is not limited to";

(c) the phrase "relating to" or "relates to" means "with regard to, with respect to, by reason of, on account of, based on, arising out of, relating to, or in any way connected with";

(d) whenever the context requires, terms shall include the plural as well as the singular number, and the masculine gender shall include the feminine and the feminine gender shall include the masculine;

(e) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply;

(f) unless the context should otherwise require, all references to documents to be filed shall refer to filing with the Bankruptcy Court in accordance with the Bankruptcy Code and Bankruptcy Rules;

(g) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(h) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, supplemented, or otherwise modified from time to time;

(i) unless otherwise specified, all references in the Plan to "Articles," "Sections," "Schedules," and "Exhibits" are references to Articles, Sections, Schedules, and Exhibits of or to this Plan;

(j) the words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan;

20

(k)     captions and headings to Articles and Sections are inserted for ease of reference only and shall not be considered a part of the Plan or otherwise affect the interpretation of the Plan; and

(l)     this Plan supersedes all prior drafts of this Plan and all prior negotiations, agreements, and understandings with respect to this Plan, evidence of which shall not affect the interpretation of any provision in this Plan.

**1.3     Time Periods.**

In computing any period of time for purposes of this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. Enlargement of any period of time for purposes of this Plan shall be governed by the provisions of Bankruptcy Rule 9006(b).

**1.4     Plan Exhibits.**

All Exhibits to this Plan and any other supplemental documents filed by the Debtor (collectively with the Plan, the "*Plan Documents*") are incorporated by reference and made part of this Plan as if set forth fully at length in this Plan. The Exhibits to this Plan include the following:

- Exhibit A—Parishes, Schools, and Other Archdiocesan-Related Entities
- Exhibit B—Settling Insurers
- Exhibit C—Assumed Agreements
- Exhibit D—Outbound Contribution Claims
- Exhibit E—Insurance Trust Agreement
- Exhibit F—Survivor Compensation Trust Agreement
- Exhibit G—Survivor Compensation Trust Distribution Plan
- Exhibit H—Survivor Claimant Release
- Exhibit I—Litigation Claimant Agreement
- Exhibit J—Child Protection Policies and Procedures

**Article 2.**
**Administrative Expense and Priority Claims.**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims, Statutory Fees and Court Costs, and Priority Tax Claims have not been classified and are excluded from the classification of Claims set forth in Article 3 of this Plan. Allowed Unclassified Claims will be treated as follows:

**2.1     Administrative Expense Claims.**

**2.1.1     Administrative Expense Claims Bar Date.**

Except as provided for otherwise in this Plan, and subject to section 503(b)(1)(D) of the Bankruptcy Code, holders of General Administrative Expense Claims not previously Allowed by a Final Order must file and serve on the Debtor request for the payment of such General Administrative Expense Claims in accordance with the procedures set forth in the Confirmation Order on or before the Administrative Expense Claims Bar Date, or such General Administrative

Expense Claims shall be automatically considered Disallowed Claims and shall be forever barred from assertion and unenforceable against the Debtor, Reorganized Debtor, Estate, or property of the foregoing, without the need for any objection by the Reorganized Debtor or further notice to, or action, order, or approval of, the Bankruptcy Court, and any such General Administrative Expense Claim shall be deemed fully satisfied, released, and discharged.

As further described below in this Plan, holders of Administrative Expense Claims based on liabilities incurred by the Debtor in the ordinary course of its business shall not be required to file or serve any request for payment of such Administrative Expense Claims. Such Administrative Expense Claims shall be satisfied pursuant to Section 2.1.3 of this Plan.

### 2.1.2   Administrative Expense Claims Against the Debtor.

Except to the extent a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment with respect to such Allowed Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim shall receive on account of and in full and complete settlement, release, and discharge of, and in exchange for, such Allowed Administrative Expense Claim, payment of Cash in an amount equal to such Allowed Administrative Expense Claim on or as soon as reasonably practicable after the later of: (a) the Effective Date; (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; (c) such other date(s) as such holder and the Debtor or Reorganized Debtor, as applicable, shall have agreed; or (d) such other date ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims that arise in the ordinary course of the Debtor's operations during the Chapter 11 Case may be paid by the Debtor or Reorganized Debtor, as applicable, in the ordinary course of business and in accordance with the terms and conditions of the particular agreements governing such obligations, course of dealing, course of operations, or customary practice.

### 2.1.3   Ordinary Course Liabilities of the Debtor.

Allowed Administrative Expense Claims based upon liabilities incurred by the Debtor in the ordinary course of its business shall be satisfied by the Reorganized Debtor pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Expense Claims, without any further action by the holders of such Administrative Expense Claims or further approval by the Bankruptcy Court.

### 2.2   Professional Fee Claims Against the Debtor.

All Professionals or other Persons requesting the final allowance and payment of compensation or reimbursement of expenses pursuant to sections 328, 330, 331, or 503(b) of the Bankruptcy Code for services rendered during the period from the Petition Date to and including the Effective Date shall file and serve final applications for allowance and payment of Professional Fee Claims on counsel to the Debtor and the United States Trustee no later than the first Business Day that is forty-five (45) days after the Effective Date. Objections to any Professional Fee Claim must be filed and served on the Reorganized Debtor and the applicable Professional within twenty-one (21) calendar days after the filing of the final fee application that relates to the Professional

Fee Claim (unless otherwise agreed by the Debtor or Reorganized Debtor, as applicable, and the Professional requesting allowance and payment of a Professional Fee Claim).

Allowed Professional Fee Claims shall be paid in full in Cash and in such amounts as are Allowed by the Bankruptcy Court on or as soon as reasonably practicable after the later of: (a) the date upon which an order relating to any such Allowed Professional Fee Claim is entered; and (b) such other date(s) as the holder of the Allowed Professional Fee Claim and the Debtor or Reorganized Debtor, as applicable, shall have agreed.

The Reorganized Debtor is authorized to pay compensation for services rendered or reimbursement of expenses incurred by its Professionals after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

### 2.3     Statutory Fees and Court Costs of the Debtor.

Statutory Fees and Court Costs will be paid in full in Cash by the Reorganized Debtor on the Effective Date or as soon as reasonably practicable thereafter or as required under the Office of the United States Trustee's quarterly payment guidelines. After the Effective Date, the Reorganized Debtor will continue to pay quarterly fees to the Office of the United States Trustee and file quarterly reports with the Office of the United States Trustee until the Chapter 11 Case is closed, dismissed, or converted. In the event the Survivor Compensation Trustee or Insurance Trustee opposes the closure of the Chapter 11 Case, the applicable Trust will be responsible for the payment of all Statutory Fees and Court Costs from the date of the filing of any such opposition through the closure of the Chapter 11 Case. In the event the Chapter 11 Case is reopened, the Survivor Compensation Trust shall be responsible for the payment of Statutory Fees and Court Costs. If either Trust is responsible to pay Statutory Fees and Court Costs but fails to do so, the Reorganized Debtor may pay the applicable Statutory Fees and Court Costs and seek reimbursement from the applicable Trust.

### 2.4     Priority Tax Claims Against the Debtor.

Except to the extent a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive on account of and in full and complete settlement, release, and discharge of, and in exchange for, such Allowed Priority Tax Claim Cash in an amount equal to such Allowed Priority Tax Claim on or as soon as reasonably practicable after, the later of: (a) the Effective Date; (b) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course; provided, however, that the Debtor and Reorganized Debtor reserve the right to prepay all or a portion of any such amounts at any time under this option without penalty or premium.

Notwithstanding the foregoing, the holder of an Allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to, or in connection with, their Allowed Priority Tax Claim. Any such Claim or demand for any such penalty shall be subject to treatment in Class 5 (General Unsecured Claims), if not subordinated to Class 5 Claims pursuant to an order of the Bankruptcy Court. The holder of an Allowed Priority Tax Claim shall

not assess or attempt to collect such penalty from the Debtor, the Reorganized Debtor, or their respective property.

**2.5    Employee Priority Claims Against the Debtor.**

The holder of an Allowed Employee Priority Claim will receive, in full satisfaction of such Allowed Employee Priority Claim; (a) payment in full of the unpaid amount of such Allowed Employee Priority Claim in cash as soon as practicable after the later of (i) the Effective Date and (ii) the date such Allowed Employee Priority Claim becomes Allowed; or (b) such other treatment as agreed in writing by the holder of such Allowed Employee Priority Claim or ordered by the Bankruptcy Court.

**Article 3.**
**Classification and Treatment of Claims and Interests.**

**3.1    Classifications of Claims and Interests.**

**3.1.1    Classification in General.**

A Claim or Interest is placed into a particular Class for all purposes, including voting, confirmation, and Distribution under this Plan and sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest is placed into a particular Class only to the extent that such Claim or Interest is Allowed in that Class (if applicable) and has not been satisfied, released, or otherwise settled prior to the Effective Date. If a Claim is acquired or transferred, the Claim will be placed in the Class where it would have been placed if it were owned by the original holder of such Claim. If a holder of a Claim has more than one Claim in the same Class, such Claims will be aggregated and treated as a single Claim. If a holder of a Claim has Claims in different classes, such Claims will be aggregated only within the same Class and not between Classes.

**3.1.2    Summary of Classification.**

The following table designates the Classes of Claims and Interests and specifies which of those Classes are (a) Impaired or Unimpaired by this Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) presumed to accept or deemed to reject this Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Unclassified Claims have not been classified.

| Class | Designation | Impaired/ Unimpaired | Entitled to Vote |
|---|---|---|---|
| 1 | School Bond Claims | Unimpaired | Deemed to Accept |
| 2 | PNC Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 4 | Other Secured Claims | Unimpaired | Deemed to Accept |

24

| 5 | General Unsecured Claims | Impaired | Yes |
| 6 | Survivor Claims | Impaired | Yes |
| 7 | Non-Survivor Tort Claims | Impaired | Yes |
| 8 | Co-Insured Entity Claims | Impaired | Yes |
| 9 | Inbound Contribution Claims | Impaired | Deemed to Reject |

**3.2    Treatment of Claims and Interests.**

### 3.2.1    Class 1—School Bond Claims.

(a)    Classification. Class 1 consists of the School Bond Claims.

(b)    Treatment. Except to the extent the holder(s) of the School Bond Claims agrees to less favorable treatment, on the Effective Date, the School Bond Claims shall be Reinstated and all loan documents and provisions relating to the School Bond Claims shall remain in full force and effect until all obligations of the Debtor have been indefeasibly paid in full.

(c)    Voting. The School Bond Claims are Unimpaired. As a result, each holder of a School Bond Claim is conclusively presumed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of School Bond Claims are not entitled to vote to accept or reject the Plan, and the votes of holders of School Bond Claims will not be solicited with respect to the School Bond Claims.

### 3.2.2    Class 2—PNC Secured Claims.

(a)    Classification. Class 2 consists of the PNC Secured Claims.

(b)    Treatment. Except to the extent the holder(s) of the PNC Secured Claims agrees to less favorable treatment, on the Effective Date, the PNC Secured Claims shall be Reinstated and all loan documents and provisions relating to the PNC Secured Claims shall remain in full force and effect until all obligations of the Debtor have been indefeasibly paid in full.

(c)    Voting. The PNC Secured Claims are Unimpaired. As a result, each holder of a PNC Secured Claim is conclusively presumed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of PNC Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of holders of PNC Secured Claims will not be solicited with respect to the PNC Secured Claims.

### 3.2.3    Class 3—Other Priority Claims.

(a)    Classification. Class 3 includes all Other Priority Claims.

25

(b)     Treatment. Except to the extent that a Class 3 Claimant agrees to less favorable treatment of its Class 3 Claim, in exchange for full and final satisfaction of its Class 3 Claim, at the sole option of the Reorganized Debtor, each Class 3 Claimant shall receive: (i) payment in Cash in an amount equal to such Allowed Class 3 Claim, payable on or as soon as reasonably practicable after the last to occur of (A) the Effective Date, (B) the date on which such Class 3 Claim becomes an Allowed Class 3 Claim, and (C) the date on which a Class 3 Claimant and the Debtor or Reorganized Debtor, as applicable, shall otherwise agree in writing; or (ii) satisfaction of its Allowed Class 3 Claim in any other manner that renders the Allowed Class 3 Claim Unimpaired, including Reinstatement.

(c)     Voting. Other Priority Claims are Unimpaired. As a result, each holder of an Other Priority Claim is conclusively presumed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Priority Claims are not entitled to vote to accept or reject the Plan, and the votes of holders of Other Priority Claims will not be solicited with respect to Other Priority Claims.

### 3.2.4   Class 4—Other Secured Claims.

(a)     Classification. Class 4 includes all Other Secured Claims.

(b)     Treatment. Except to the extent a holder of an Other Secured Claim agrees to less favorable treatment, in exchange for full and final satisfaction of such Allowed Other Secured Claim, each holder of an Other Secured Claim will receive, at the sole option of the Debtor or Reorganized Debtor, as applicable: (a) Cash in an amount equal to the Allowed amount of such Other Secured Claim, including the payment of any interest required to be paid under section 506(b) of the Bankruptcy Code, payable on or as soon as reasonably practicable after the last to occur of (i) the Effective Date, (ii) the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, and (iii) the date on which the holder of such Other Secured Claim and the Debtor or Reorganized Debtor, as applicable, shall otherwise agree in writing; (b) satisfaction of such Other Secured Claim in any other manner that renders the Allowed Other Secured Claim Unimpaired, including Reinstatement; or (c) return of the applicable collateral on the Effective Date or as soon as reasonably practicable after the Effective Date.

(c)     Voting. Other Secured Claims are Unimpaired. As a result, each holder of an Other Secured Claim is conclusively presumed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of holders of Other Secured Claims will not be solicited with respect to Other Secured Claims.

### 3.2.5   Class 5—General Unsecured Claims.

(a)     Classification. Class 5 includes all General Unsecured Claims.

(b)     Treatment. Except to the extent a holder of a General Unsecured Claim agrees to less favorable treatment of their General Unsecured Claim, in exchange for full and final satisfaction of such Allowed General Unsecured Claim, each holder of a General

Unsecured Claim shall receive payment in Cash in an amount equal to such Allowed General Unsecured Claim (excluding interest), which shall be payable on or as soon as reasonably practicable after the later to occur of: (i) the Effective Date; (ii) the date on which the applicable General Unsecured Claim becomes an Allowed General Unsecured Claim; and (iii) the date on which the holder of such General Unsecured Claim and the Debtor or Reorganized Debtor, as applicable, shall otherwise agree in writing.

(c)      Voting. General Unsecured Claims are Impaired. As a result, each holder of a General Unsecured Claim is entitled to vote to accept or reject this Plan.

### 3.2.6   Class 6—Survivor Claims.

(a)      Classification. Class 6 includes all Survivor Claims.

(b)      Treatment. This Plan creates a Survivor Compensation Trust and Insurance Trust to fund payments and pursue Insurance Claims relating to Survivor Claimants entitled to such payments under this Plan, the Survivor Compensation Trust Agreement, and Survivor Compensation Trust Distribution Plan. As of the Effective Date, the liability of Protected Parties and Settling Insurers for all Survivor Claims shall be: (i) assumed fully by the Insurance Trust and Survivor Compensation Trust, as applicable, without further act, deed, or court order; and (ii) pursuant to the Discharge Injunction, Channeling Injunction, and Supplemental Settling Insurer Injunction, satisfied solely from the Survivor Compensation Trust and Insurance Trust as set forth in this Plan and the Confirmation Order. No Survivor Claimant shall receive any payment on account of their Survivor Claim unless and until such Survivor Claimant has executed a Survivor Claimant Release attached as **Exhibit H** to this Plan. For the avoidance of doubt, each Survivor Claimant Release permits a Survivor Claimant to release the Debtor or all Protected Parties, which correspondingly impacts the amount to be distributed to a Survivor Claimant as set forth more fully in the Survivor Compensation Trust Distribution Plan and Article 6 of this Plan.

(c)      Voting. Survivor Claims are Impaired and, therefore, each holder of a Survivor Claim is entitled to vote to accept or reject this Plan.

### 3.2.7   Class 7—Non-Survivor Tort Claims.

(a)      Classification. Class 7 consists of Non-Survivor Tort Claims.

(b)      Treatment. Except to the extent a holder of a Non-Survivor Tort Claim agrees to less favorable treatment, in exchange for full and final satisfaction of Allowed Non-Survivor Tort Claims, the holder of each Non-Survivor Tort Claim shall seek to collect upon such Non-Survivor Tort Claim solely from applicable insurance proceeds, other than any policies or proceeds of a Settling Insurer. No holder of a Non-Survivor Tort Claim shall: (i) seek to compel the Debtor or Reorganized Debtor to pay any deductible, retention, or any other amount for or on account of any insurance carrier, provider, broker, or policy; or (ii) obtain any distribution from the Debtor, Estate, or Reorganized Debtor, in or arising out of any Non-Survivor Tort Claim.

27

(c)      Voting. Class 7 is Impaired, and each holder of a Non-Survivor Tort Claim is entitled to vote to accept or reject this Plan.

### 3.2.8    Class 8—Co-Insured Entity Claims.

(a)      Classification. Class 8 consists of Co-Insured Entity Claims.

(b)      Treatment. This Plan is intended to resolve all claims between the Debtor, on the one hand, and the other Co-Insured Entities, on the other hand, which arise under Settling Insurer Policies, Non-Settling Insurer Policies, or otherwise with respect to Survivor Claims. As an essential component of this Plan, and to maximize recovery for Survivor Claimants, the Co-Insured Entities have agreed that in exchange for their contribution of their rights under all Insurance Policies and interests in the proceeds of Settling Insurer Policies and Non-Settling Insurer Policies to the funding of the Plan, as of the Effective Date they will be entitled to receive the benefits of and rights to enforce the Channeling Injunction set forth in Section 13.3 of the Plan.  As part of this exchange, the Co-Insured Entities also have agreed to waive all rights to receive any Cash Distributions on account of their respective Co-Insured Entity Claims, as applicable, and the Debtor has agreed to waive all Co-Insured Entity Claims against any Co-Insured Entity. As a result, there will be no Cash Distribution to the holders of Co-Insured Entity Claims.

(c)      Voting. Class 8 is Impaired and each holder of a Co-Insured Entity Claim is entitled to vote to accept or reject this Plan; provided, however, Class 8 shall not be counted for purposes of satisfying 11 U.S.C. 1129(a)(10).

### 3.2.9    Class 9—Inbound Contribution Claims.

(a)      Classification. Class 9 consists of Inbound Contribution Claims.

(b)      Treatment. Each Inbound Contribution Claim shall be Disallowed and extinguished, with no Distributions to be made on account of Inbound Contribution Claims.

(c)      Voting. Class 9 will not receive or retain any property under this Plan and is deemed to have rejected this Plan. Class 9 will not vote to accept or reject this Plan.

### 3.3    Elimination of Vacant Classes.

Any Class of Claims that, as of the commencement of the confirmation hearing, does not have at least one holder of a Claim that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class. For the avoidance of doubt, this Section 3.3 of the Plan shall not apply to Known Survivor Claims or Unknown Survivor Claims.

28

**3.4     Presumed Rejection by Voting Classes That Do Not Vote.**

If a Class contains Claims eligible to vote on the Plan and no holder of a Claim in such Class eligible to vote on the Plan votes to accept or reject the Plan, the Plan shall be presumed rejected by the Class and the Debtor will seek confirmation of this Plan with respect to such Class pursuant to section 1129(b) or 1191(b), as applicable.

**3.5     Acceptance by Impaired Classes.**

An Impaired Class will have accepted this Plan if, not counting the vote of any Claimant designated under section 1126(e) of the Bankruptcy Code, the Claimants holding: (a) at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote in such Class have voted to accept this Plan; and (b) more than one-half (1/2) in number of the Allowed Claims that actually vote in such Class have voted to accept this Plan.

**3.6     Nonconsensual Confirmation of Plan.**

The Debtor reserves and preserves the right to request confirmation of the Plan under sections 1129(b) and 1191(b) of the Bankruptcy Code, as applicable, with respect to any Impaired Class that has not accepted or is deemed to have rejected the Plan.

**3.7     No Effect Upon Creditors' Rights of Setoff or Recoupment.**

Nothing in this Plan shall expand or enhance a Creditor's right of setoff or recoupment, which shall be determined as of the Petition Date. Nothing in this Plan is intended, nor shall it be interpreted, to approve any Creditor's effectuation of a post-Petition Date setoff or recoupment without the consent of the Debtor, unless prior Bankruptcy Court approval has been obtained.

**Article 4.**
**Survivor Compensation Trust.**

**4.1     Establishment of Survivor Compensation Trust.**

As soon as practicable after entry of the Confirmation Order, the Survivor Compensation Trust shall be established in accordance with the Survivor Compensation Trust Documents for the exclusive benefit of Survivor Claimants. The Survivor Compensation Trust will assume all liability for and rights concerning all Insurance Settlement Agreements. The Survivor Compensation Trust will distribute all Survivor Compensation Trust Assets pursuant to and in accordance with the Survivor Compensation Trust Distribution Plan, the Survivor Compensation Trust Agreement, the Plan, and the Confirmation Order. The Survivor Compensation Trustee shall establish and maintain a reserve for expenses of the Survivor Compensation Trust, which shall be paid pursuant to the terms of the Survivor Compensation Trust Agreement.

**4.2     Funding of the Survivor Compensation Trust.**

The Survivor Compensation Trust will be funded from the sources and in the manner set forth in this Section 4.2 of the Plan. In addition to the contributions described in this Section 4.2,

29

the Protected Parties will waive certain Claims against the Debtor and Settling Insurers, as set forth more specifically in this Plan.

### 4.2.1   Transfers from the Debtor to the Survivor Compensation Trust.

The Debtor will transfer or otherwise cause to be transferred to the Survivor Compensation Trust Sixty Million Nine Hundred Ten Thousand Two Hundred Twenty-Four Dollars ($60,910,224) no later than ten (10) Business Days of the Confirmation Order becoming a Final Order.

**THE DEBTOR'S CONTRIBUTION TO THE SURVIVOR COMPENSATION TRUST IS BEING MADE NOTWITHSTANDING, AND WITHOUT WAIVING, APPLICABILITY OF CHARITABLE IMMUNITY UNDER MARYLAND LAW WITH RESPECT TO SURVIVOR CLAIMS.**

### 4.2.2   Transfers from Related Non-Debtor Entities.

Pursuant to and in accordance with the Insurance Assignment and any Insurance Settlement Approval Orders, and subject to being provided the protections being afforded to the Related Non-Debtor Entities pursuant to Section 13.3, Section 13.4, Section 13.6, and Section 13.8 of this Plan, the Related Non-Debtor Entities will transfer or otherwise cause to be assigned all of their rights, title, and interests in the proceeds of the Settling Insurer Policies and all of their rights, title, and interests in the Non-Settling Insurer Policies and any proceeds of the Non-Settling Insurer Policies. For the avoidance of doubt, the transfer by the Related Non-Debtor Entities pursuant to this section of the Plan shall not affect the rights and protections afforded to the Related Non-Debtor Entities elsewhere pursuant to and in accordance with this Plan.

### 4.2.3   Settling Insurer Contributions.

All rights to receive payment under any Insurance Settlement Agreements shall be assigned to the Survivor Compensation Trust, and each Settling Insurer will pay its Insurance Settlement Amount to the Survivor Compensation Trust within the time set forth in the applicable Insurance Settlement Agreement. As of the date of this Plan, the total amount to be paid into the Survivor Compensation Trust pursuant to Insurance Settlement Agreements is Seventeen Million Dollars ($17,000,000) by the Archdiocesan Sexual Misconduct Self-Insurance Program as a Settling Insurer and One Hundred Eighty-Five Million Dollars ($185,000,000) from additional Settling Insurers.

### 4.2.4   Transfers from Insurance Trust.

Upon the completion of all duties and obligations of the Insurance Trustee and Insurance Trust, any funds remaining in the Insurance Trust shall be distributed to the Survivor Compensation Trust for distribution in accordance with this Plan, the Survivor Compensation Trust Agreement, and the Survivor Compensation Trust Distribution Plan.

### 4.2.5    Outbound Contribution Claims.

On the Effective Date, all Outbound Contribution Claims are automatically and without further act or deed assigned to the Survivor Compensation Trust, including those Outbound Contribution Claims set forth on **Exhibit D** to this Plan.

### 4.2.6    Unknown Survivor Claims Reserve.

For a period of thirty-six (36) months, the Survivor Compensation Trust shall be obligated to maintain in a segregated account for the benefit of Unknown Survivor Claimants an amount not less than the lesser of: (a) the aggregate amount of all awards to Unknown Survivor Claimants finally determined in accordance with this Plan, the Survivor Compensation Trust Documents, and other Plan Documents; and (b) Twelve Million Dollars ($12,000,000) (such amount, the "*Unknown Survivor Claims Reserve*"). The Unknown Survivor Claims Reserve shall be administered as provided in the Survivor Compensation Trust Documents. The Unknown Survivor Claims Reserve amount set forth above is the maximum amount to be contributed by the Debtor, Reorganized Debtor, or Survivor Compensation Trust for any Unknown Survivor Claims.

### 4.3    Vesting of Survivor Compensation Trust Assets in Survivor Compensation Trust.

On the Effective Date, all Survivor Compensation Trust Assets shall vest in the Survivor Compensation Trust, and the Co-Insured Entities shall be deemed for all purposes to have transferred all of their respective Interests in the Survivor Compensation Trust Assets to the Survivor Compensation Trust. On the Effective Date, or as soon as practicable after the Effective Date, the Co-Insured Entities shall take all actions reasonably necessary to transfer any Survivor Compensation Trust Assets to the Survivor Compensation Trust. Upon the transfer of control of the Survivor Compensation Trust Assets in accordance with this Section 4.3, the Co-Insured Entities shall have no further Interests in or with respect to the Survivor Compensation Trust Assets.

### 4.4    Survivor Compensation Trust Liability for Survivor Claims.

On the Effective Date, the Survivor Compensation Trust shall automatically and without further act or deed assume: (a) all liability, if any, of the Protected Parties and Settling Insurers with respect to Channeled Claims, to the extent such Channeled Claims do not relate to Non-Settling Insurer Policies; (b) responsibility for preserving, managing, and distributing Survivor Compensation Trust Assets pursuant to and in accordance with this Plan and the Survivor Compensation Trust Documents; and (c) the right to receive proceeds of Insurance Claims against Non-Settling Insurers after the payment of expenses of the Insurance Trust or otherwise from such proceeds in accordance with the Insurance Trust Agreement.

### 4.5    Appointment of Survivor Compensation Trustee.

The initial Survivor Compensation Trustee has been identified in **Exhibit F** to this Plan. The Survivor Compensation Trustee shall commence serving as the Survivor Compensation Trustee on the Effective Date; provided, however, that the Survivor Compensation Trustee shall be permitted to act in accordance with the terms of the Survivor Compensation Trust Agreement

31

from such earlier date, as authorized by the Debtor, and shall be entitled to seek compensation in accordance with the terms of the Survivor Compensation Trust Agreement and this Plan.

### 4.6      Rights and Responsibilities of Survivor Compensation Trustee.

The Survivor Compensation Trust shall be established for the purposes described in this Section 4.6 of the Plan. The Survivor Compensation Trust shall receive, and be deemed to be the sole recipient of, the transfer and assignment of the Survivor Compensation Trust Assets as set forth in this Article 4 of the Plan. The Survivor Compensation Trustee shall be responsible for the evaluation of Survivor Claims and making Survivor Compensation Trust Distributions to the Survivor Claimants, pursuant to and in accordance with this Plan, the Survivor Compensation Trust Agreement, and Survivor Compensation Trust Distribution Plan. All costs and expenses in executing the obligations of the Survivor Compensation Trust shall be paid by the Survivor Compensation Trust. All obligations of the Survivor Compensation Trust shall be undertaken with the aim of maximizing Survivor Compensation Trust Assets available to make Survivor Compensation Trust Distributions to Survivor Claimants and with no objective to continue or engage in the conduct of any trade or business. The proposed Survivor Compensation Trust Agreement and Survivor Compensation Trust Distribution Plan are attached to this Plan as **Exhibit F** and **Exhibit G**, respectively.

Upon the Effective Date, the Survivor Compensation Trustee: (a) may take any action required to enforce the Insurance Settlement Agreements; (b) may seek enforcement of the Plan, Confirmation Order, or any other Final Order entered by the Bankruptcy Court in the Chapter 11 Case that may affect the Survivor Compensation Trust's administration of Survivor Compensation Trust Assets or otherwise perform its duties pursuant to the Plan; (c) shall liquidate and convert to Cash the Survivor Compensation Trust Assets, make timely Survivor Compensation Trust Distributions, and not unduly prolong the duration of the Survivor Compensation Trust; (d) may request an expedited determination of taxes of the Survivor Compensation Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Survivor Compensation Trust for all taxable periods through the dissolution of the Survivor Compensation Trust; and (e) may retain professionals on behalf of the Survivor Compensation Trust, at the Survivor Compensation Trust's sole expense, as reasonably necessary and to carry out the obligations of the Survivor Compensation Trustee under this Plan, the Survivor Compensation Trust Agreement, and Survivor Compensation Trust Distribution Plan. The Confirmation Order shall state that, absent permission of the Bankruptcy Court, no Action shall be commenced in any forum other than the Bankruptcy Court against the Survivor Compensation Trustee in its official capacity relating to or otherwise arising out of the Survivor Compensation Trustee's duties, powers, acts, or omissions as Survivor Compensation Trustee.

### 4.7      Survivor Compensation Trust's Pursuit of Debtor and Co-Insured Entities.

The Survivor Compensation Trust's pursuit of any Co-Insured Entities shall be limited to enforcing specific performance of Section 4.2.1 and Section 4.2.2 of this Plan.

32

**4.8**      **Survivor Compensation Trust's Rights With Respect to Survivor Claims.**

The Survivor Compensation Trust retains the right to assert and liquidate Survivor Claims, including Litigation Claims, against the Insurance Trust to the extent such Survivor Claims relate to Insurance Claims against Non-Settling Insurers. To the extent a settlement is achieved with the Insurance Trust or a Non-Settling Insurer as to any Survivor Claims, such recovery shall be distributed: (a) first, to the Insurance Trust in accordance with the terms of such settlement; (b) second, to the Survivor Compensation Trust pursuant to and in accordance with Section 5.7 and Section 6.4.2 of this Plan and the Insurance Trust Agreement; and (c) third, to Survivors and expenses of the Survivor Compensation Trust, pursuant to and in accordance with the Survivor Compensation Trust Agreement and Survivor Compensation Trust Distribution Plan.

**4.9**      **Investment Powers; Permitted Cash Expenditures.**

All funds held by the Survivor Compensation Trust shall be invested in Cash or short-term highly liquid investments that are readily convertible to known amounts of Cash as more particularly described in the Survivor Compensation Trust Agreement. The Survivor Compensation Trustee may expend such Cash in a manner consistent with the terms of the Survivor Compensation Trust Agreement.

**4.10**      **Registry of Beneficial Interests.**

To evidence the beneficial interest in the Survivor Compensation Trust of each holder of such an Interest, the Survivor Compensation Trustee shall maintain a registry of beneficiaries.

**4.11**      **Non-Transferability of Interests in Survivor Compensation Trust.**

Any transfer of an Interest in the Survivor Compensation Trust shall be ineffective until and unless the Survivor Compensation Trustee receives written notice of such transfer.

**4.12**      **Survivor Compensation Trust Tax Matters.**

The Survivor Compensation Trust is intended to qualify as a "Designated" or "Qualified Settlement Fund" pursuant to Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder. The Debtor and Related Non-Debtor Entities shall be the "transferor" within the meaning of Treasury Regulation Section 1.468B-1(d)(1). The Survivor Compensation Trustee shall be classified as the "administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3). The Survivor Compensation Trust Documents, including the Survivor Compensation Trust Agreement, are incorporated in this Section 4.12 of the Plan by reference. The Survivor Compensation Trust shall not be deemed to be the same legal entity as any Co-Insured Entity, but only the assignee of certain assets of the Co-Insured Entities and a representative of the Estate for delineated purposes within the meaning of section 1123(b)(3) of the Bankruptcy Code. The Survivor Compensation Trust is expected to be tax exempt. The Survivor Compensation Trustee shall file such income tax and other returns and documents as are required to comply with the applicable provisions of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1 et seq., as may be amended, and the regulations promulgated thereunder, 31 C.F.R. §§ 900 et seq., and Maryland law and the regulations promulgated thereunder, and shall pay from the

33

Survivor Compensation Trust all taxes, assessments, and levies upon the Survivor Compensation Trust or Survivor Compensation Trust Assets, if any.

### 4.13   Immunity; Liability; Indemnification.

#### 4.13.1   No Liability for Reorganized Debtor, Related Non-Debtor Entities, or Survivor Compensation Trustee.

Neither the Reorganized Debtor, any Related Non-Debtor Entity, their respective Agents, nor the Survivor Compensation Trustee or its Agents shall be liable for the acts or omissions of the Survivor Compensation Trustee or its Agents, except that the Survivor Compensation Trustee shall be liable for its specific acts or omissions resulting from such Survivor Compensation Trustee's willful misconduct, gross negligence, fraud, or breach of the fiduciary duty of loyalty. The Survivor Compensation Trustee may, in connection with the performance of its functions and in its sole and absolute discretion, consult with its Agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Agents. Notwithstanding such authority, the Survivor Compensation Trustee shall not be under any obligation to consult with its Agents, and its determination not to do so shall not result in the imposition of liability on the Survivor Compensation Trustee unless such determination is based on the Survivor Compensation Trustee's recklessness, gross negligence, willful misconduct, or fraud.

#### 4.13.2   No Recourse Against Survivor Compensation Trustee.

No recourse shall ever be had, directly or indirectly, against the Survivor Compensation Trustee personally, or against any Agent retained in accordance with the terms of the Survivor Compensation Trust Agreement or the Plan by the Survivor Compensation Trustee, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Survivor Compensation Trustee in implementation of the Survivor Compensation Trust Agreement or the Plan, or by reason of the creation of any indebtedness by the Survivor Compensation Trustee under the Plan for any purpose authorized by the Survivor Compensation Trust Agreement or the Plan, it being expressly understood and agreed that all such liabilities, covenants, and Survivor Compensation Trust Agreements of the Survivor Compensation Trust whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Survivor Compensation Trust Assets. Notwithstanding the foregoing, the Survivor Compensation Trustee may be held liable for its recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud; and if liability on such grounds is established, recourse may be had directly against the Survivor Compensation Trustee. The Survivor Compensation Trust shall not be covered by a bond.

#### 4.13.3   Indemnification by Survivor Compensation Trust.

The Survivor Compensation Trust shall defend, indemnify, and hold harmless the Survivor Compensation Trustee and its Agents to the fullest extent permitted under the laws of Maryland in the performance of their duties under the Survivor Compensation Trust Agreement and this Plan.

Each Protected Party, and each of their respective Agents, who was or is a party, or is threatened to be made a party to any threatened or pending judicial, administrative, or arbitrative action, by reason of any act or omission of the Survivor Compensation Trust or Survivor Compensation Trustee or their respective Agents, relating to (a) the assessment or liquidation of any Survivor Claims, (b) the administration of the Survivor Compensation Trust, or (c) any and all activities in connection with the Survivor Compensation Trust Agreement, shall be indemnified and defended by the Survivor Compensation Trust, to the fullest extent that a corporation or trust organized under the laws of Maryland is from time to time entitled to indemnify and defend its Agents against Claims.

Pursuant to and in accordance with the applicable Insurance Settlement Agreement, each Settling Insurer, and each of their respective Agents who was or is a party, or is threatened to be made a party to any threatened or pending judicial, administrative, or arbitrative action, relating to (a) any and all Claims that arise out of or are based on the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Conveyance Act, section 548 of the Bankruptcy Code, and parallel state laws, or (b) any and all Channeled Claims, including all such Claims made by any Person (i) claiming to be insured (as a named insured, additional insured, or otherwise) under any Settling Insurer Policy or Non-Settling Insurer Policy, (ii) who has made, will make, or can make a Survivor Claim that is or may be covered pursuant to, or is under, arises out of, relates (directly or indirectly) to, or connects in any way with a Settling Insurer Policy or Non-Settling Insurer Policy, or (iii) who has actually or allegedly acquired or been assigned the right to make a Claim under any Settling Insurer Policy or Non-Settling Insurer Policy (collectively, the "***Settling Insurer Indemnified Claims***"), shall be indemnified and defended by the Survivor Compensation Trust to the fullest extent that a corporation or trust organized under the laws of Maryland is from time to time entitled to indemnify and defend its Agents against Claims.

Each Settling Insurer: (a) shall have the right (but not the obligation) to defend any applicable Settling Insurer Indemnified Claim identified in this Section 4.13.3 of the Plan and shall do so in good faith; (b) may (but is not required to) undertake the defense of any applicable Settling Insurer Indemnified Claim on receipt of such Settling Insurer Indemnified Claim; and (c) agrees to notify the Survivor Compensation Trust as soon as practicable of any additional Settling Insurer Indemnified Claims and, to the extent the Settling Insurer intends to undertake the defense, its choice of counsel. If a Settling Insurer declines to defend any Settling Insurer Indemnified Claim, the Survivor Compensation Trust shall undertake the defense of such Settling Insurer Indemnified Claim.

The Survivor Compensation Trust shall reimburse all reasonable and necessary attorneys' fees, expenses, costs, and amounts incurred by a Settling Insurer in defending Settling Insurer Indemnified Claims. Each Settling Insurer may settle or otherwise resolve a Settling Insurer Indemnified Claim only with the prior consent of the Survivor Compensation Trust, which consent shall not be unreasonably withheld. The Survivor Compensation Trust may settle or otherwise resolve a Settling Insurer Indemnified Claim only with the prior consent of the applicable Settling Insurer, which consent shall not be unreasonably withheld. A Settling Insurer's defense, settlement, or other resolution of any Settling Insurer Indemnified Claim pursuant to this Section 4.13.3 of the Plan shall not diminish the obligations of the Survivor Compensation Trust

to indemnify the applicable Settling Insurer for such Settling Insurer Indemnified Claim(s) pursuant to and in accordance with this Section 4.13.3 of the Plan.

**4.14    Survivor Compensation Trust Liability.**

On the Effective Date, the Survivor Compensation Trust shall automatically and without further act or deed assume: (a) all liability, if any, of the Co-Insured Entities and Settling Insurers with respect to Channeled Claims, except to the extent a Channeled Claim is a Survivor Claim that is or may be related to an Insurance Claim against a Non-Settling Insurer; and (b) the responsibility for preserving, managing, and distributing Survivor Compensation Trust Assets.

**4.15    Termination of Survivor Compensation Trust.**

The Survivor Compensation Trust shall terminate after its liquidation, administration, and distribution of the Survivor Compensation Trust Assets in accordance with the terms of this Plan and the Survivor Compensation Trust's full performance of all other duties and functions set forth in this Plan and the Survivor Compensation Trust Agreement. Notwithstanding the foregoing, absent further order of the Bankruptcy Court, the Survivor Compensation Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date.

**Article 5.**
**Insurance Trust.**

**5.1    Establishment of Insurance Trust.**

As soon as practicable after entry of the Confirmation Order, the Insurance Trust shall be established in accordance with the Insurance Trust Documents. The Insurance Trust will assume all liability for and rights concerning: (a) all Channeled Claims, including the rights to settle Channeled Claims, solely to the extent such Channeled Claims relate to Insurance Claims against Non-Settling Insurers or Non-Settling Insurer Policies; (b) all Non-Settling Insurer Policies assumed, assigned, or otherwise transferred pursuant to this Plan; and (c) all Insurance Claims relating to Survivor Claims solely to the extent related to Non-Settling Insurers or Non-Settling Insurer Policies.

**5.2    Funding of Insurance Trust.**

The Survivor Compensation Trust will transfer or otherwise cause to be transferred to the Insurance Trust Twelve Million Dollars ($12,000,000) within ten (10) Business Days of the Survivor Compensation Trust receiving the funding set forth in Section 4.2.1 of this Plan.

**5.3    Vesting of Insurance Trust Assets in Insurance Trust.**

**5.3.1    Insurance Assignment.**

On the Effective Date, subject to the rights of the Non-Settling Insurers in this section and Section 8.1 and Section 8.2 of this Plan, the Non-Settling Insurer Policies shall be assumed and assigned to the Insurance Trust, pursuant to and in accordance with section 365 of the Bankruptcy Code, resulting in all rights, claims, interests, benefits, responsibilities, and obligations of the Co-

36

Insured Entities in the Non-Settling Insurer Policies automatically and without further act or deed being assigned and transferred to the Insurance Trust on the Effective Date, subject to and in accordance with the terms of this Plan (the "*Insurance Assignment*"). The Insurance Assignment shall not be construed as an assignment of the Non-Settling Insurer Policies but rather an assignment of the Co-Insured Entities' rights and interests in the Non-Settling Insurer Policies for the Insurance Trust to recover upon Insurance Claims relating to or arising out of Survivor Claims, including Litigation Claims, asserted against the Insurance Trust to the extent such Survivor Claims relate to Insurance Claims against Non-Settling Insurers, notwithstanding any anti-assignment provision in or incorporated into any such Non-Settling Insurer Policy. Upon the occurrence of the Insurance Assignment, the Insurance Trust, and only the Insurance Trust, shall have the right to pursue all available insurance coverage and remedies for Insurance Claims under the Non-Settling Insurer Policies pursuant to and in accordance with applicable non-bankruptcy law and the terms of the Non-Settling Insurer Policies. Upon the occurrence of the Insurance Assignment, recourse to the Protected Parties shall be limited to the Insurance Assignment and any other rights or interests expressly granted to the Survivor Compensation Trust or Insurance Trust under this Plan.

The Insurance Assignment is made free and clear of all Claims, liens, encumbrances, or Causes of Action of any nature whatsoever pursuant to Section 363(f) of the Bankruptcy Code, except for rights and defenses of the Non-Settling Insurers, including available limits of liability for coverage of certain types of claims under one or more of the Non-Settling Insurer Policies that may have been reduced by certain prepetition payments made by an Insurer under any of the Non-Settling Insurer Policies.

Upon the effectiveness of the Insurance Assignment, the Insurance Trust shall: (a) have whatever obligations, if any, existing under the Non-Settling Insurer Policies under applicable law, including without limitation all notice obligations required under the Non-Settling Insurer Policies and applicable law pertaining to Survivor Claims; and (b) be solely responsible for satisfying, to the extent required under applicable law or the Non-Settling Insurer Policies, any premiums, deductibles, self-insured retentions, and fronting obligations arising in any way out of any and all Survivor Claims.

The Insurance Assignment: (x) is absolute upon entry of the Confirmation Order, and conditioned upon the occurrence of the Effective Date, and requires no further action by the Co-Insured Entities, the Insurance Trust, the Bankruptcy Court, the Non-Settling Insurers, or any other Entity; (y) shall be governed by, and construed in accordance with, the Bankruptcy Code and the laws of the state of Maryland, without regard to conflict of law principles; and (z) subject to the terms of this Plan, shall be effective to the maximum extent permissible under applicable law and the terms of the Non-Settling Insurer Policies.

### 5.3.2   Transfer of Insurance Claims.

In addition to the Insurance Assignment pursuant to Section 5.3.1 of this Plan, and to the extent such assumption and assignment pursuant to Section 5.3.1 of this Plan is otherwise ineffective for any reason, the Debtor and Related Non-Debtor Entities, as applicable, shall transfer or otherwise cause to be transferred all Insurance Claims against any Non-Settling Insurer to the Insurance Trust as follows:

37

(a)     On the Effective Date, and without further action by any Person, the Co-Insured Entities will be deemed to have assigned to the Insurance Trust the Co-Insured Entities' rights, if any, to all Insurance Claims, and recoveries on account of such Insurance Claims, against the Non-Settling Insurers.

(b)     The transfer of rights to the Insurance Claims set forth in Section 5.3.2(a) and Section 5.3.2(b) of this Plan shall be effective to the maximum extent permissible under applicable law and shall not be construed: (i) as an assignment of the Insurance Policies; or (ii) to entitle any Person to pursue Insurance Claims other than those Persons entitled to coverage under the terms of the Non-Settling Insurer Policies. For the avoidance of doubt, the Insurance Trust shall be solely responsible for satisfying, to the extent required under applicable law, any self-insured retention obligations on account of any Survivor Claim or arising out of any Non-Settling Insurer Policy. To the extent any Co-Insured Entity pays any self-insured retention, the Insurance Trust shall reimburse such Co-Insured Entity for any amounts actually paid. Unless otherwise required by applicable law, nothing in this paragraph shall obligate any Non-Settling Insurer or any Co-Insured Entity to advance any self-insured retention.

**5.4     Retention of Insurance Claims by Debtor and Co-Insured Entities.**

In the event the transfers set forth in Section 5.3.1, Section 5.3.2(a) and Section 5.3.2(b) of this Plan are inconsistent with the Bankruptcy Code, then each applicable Co-Insured Entity shall retain their respective Insurance Claims and, to the extent reasonably requested by the Insurance Trust, will assert and pursue any such retained Insurance Claims. In the event a Co-Insured Entity asserts and pursues any Insurance Claims, the applicable Co-Insured Entity shall retain counsel reasonably acceptable to the Insurance Trustee to prosecute such Insurance Claims (subject to any defenses the Non-Settling Insurers may have under applicable law) and the Insurance Trust shall pay all attorney's fees, expert fees, and other costs and expenses incurred by the applicable Co-Insured Entity in prosecuting the Insurance Claims. For the avoidance of doubt, any efforts by a Co-Insured Entity to prosecute Insurance Claims shall be an accommodation to the Insurance Trust, and any costs and expenses incurred in connection with such accommodation shall be paid by the Insurance Trust in full. In addition, the Insurance Trust shall have a common interest with each applicable Co-Insured Entity in prosecuting Insurance Claims and may appear and be heard in connection with the prosecution of any Insurance Claims, at its own expense, unconditionally, subject only to any limitations of applicable law and equity. No Co-Insured Entity shall settle any retained Insurance Claims without the prior written consent of the Insurance Trustee, which consent shall not be unreasonably delayed or denied. All recoveries on account of retained Insurance Claims will be paid to the Insurance Trust, net of any unreimbursed attorney's fees, expert fees, and other costs and expenses associated with the prosecution of such retained Insurance Claims.

**5.5     Insurance Trust's Assumption of Risk.**

Except as specifically set forth in Section 5.3.1, Section 5.3.2, and Section 8.2, no Co-Insured Entity makes any representations or warranties or shall have any duties or obligations whatsoever to the Insurance Trust. The Insurance Trust assumes all risks with respect to the Insurance Claims.

38

**5.6     Insurance Trust Liability for Survivor Claims.**

On the Effective Date, the Insurance Trust shall automatically and without further act or deed assume: (a) all liability, if any, of the Protected Parties with respect to Channeled Claims, to the extent such Channeled Claims relate to Insurance Claims against Non-Settling Insurers; (b) responsibility for preserving, managing, and distributing Insurance Trust Assets pursuant to and in accordance with this Plan and the Insurance Trust Documents; and (c) the right to pursue Insurance Claims against Non-Settling Insurers.

**5.7     Appointment of the Insurance Trustee.**

The initial Insurance Trustee has been identified in **Exhibit E**. The Insurance Trustee shall commence serving as the Insurance Trustee on the Confirmation Date; provided, however, the Insurance Trustee shall be permitted to act in accordance with the terms of the Insurance Trust Agreement from such earlier date, as authorized by the Debtor, and shall be entitled to seek compensation in accordance with the terms of the Insurance Trust Agreement and this Plan.

**5.8     Rights and Responsibilities of the Insurance Trustee.**

The Insurance Trust is established for the purposes set forth in the Insurance Trust Agreement and this Article 5 of the Plan. The Insurance Trust shall receive, and be deemed to be the sole assignee or recipient of, the transfer or assignment of the Insurance Trust Assets as provided in this Article 5 of the Plan. The Insurance Trust shall fund the costs and expenses in executing its functions in accordance with the Insurance Trust Agreement and this Plan with the aim of preserving, managing, and maximizing the Insurance Trust Assets and with no objective to continue or engage in the conduct of a trade or business. The proposed Insurance Trust Agreement is attached to this Plan as **Exhibit E**.

Upon the Effective Date, the Insurance Trust may take any action required to fulfill the Insurance Trust's purposes and comply with the terms of this Plan. The Insurance Trust may seek enforcement of this Plan, the Confirmation Order, or any other Final Order entered by the Bankruptcy Court in the Chapter 11 Case that may affect the Insurance Trust's administration of Insurance Trust Assets or fulfillment of the Insurance Trust's purposes. To that end, the Insurance Trustee: (a) shall liquidate and convert to Cash the Insurance Trust Assets and make distributions pursuant to and in accordance with the Insurance Trust Documents in a timely manner, and not unduly prolonging the duration of the Insurance Trust; (b) may request an expedited determination of taxes of the Insurance Trust under section 505(b) of the Bankruptcy Code for all returns filed on behalf of the Insurance Trust for all taxable periods through the dissolution of the Insurance Trust; and (c) may retain professionals, including Agents on behalf of the Insurance Trust, at the Insurance Trust's sole expense, as reasonably necessary to carry out the obligations of the Insurance Trustee under this Plan and the Insurance Trust Agreement. The Confirmation Order shall state that, absent permission from the Bankruptcy Court, no Action shall be commenced in any forum other than the Bankruptcy Court against the Insurance Trustee in its official capacity, with respect to its status, duties, powers, acts, or omissions as Insurance Trustee.

**5.9    Insurance Trust's Pursuit of Insurance Claims.**

### 5.9.1    Trust's Right to Pursue Insurance Claims.

Upon the assumption and assignment of the Non-Settling Insurer Policies to the Insurance Trust and the transfer of Insurance Claims pursuant to Section 5.3.1 and Section 5.3.2 of this Plan, the Insurance Trust: (a) shall assume all rights and obligations under each Non-Settling Insurer Policy pursuant to the Insurance Assignment; and (b) may act in its own name or in the name of any Co-Insured Entity(ies) to enforce any right, title, or interest in the Non-Settling Insurer Policies or Insurance Claims relating to the Non-Settling Insurer Policies. The Insurance Trust shall: (x) be entitled to assert or assign to any Survivor Claimant or combination of Survivor Claimants, to the extent permitted by the Non-Settling Insurer Policies and applicable non-bankruptcy law, any and all Insurance Claims that currently exist or may arise in the future against Non-Settling Insurers; and (y) have the right to pursue Insurance Claims against Non-Settling Insurers relating to or arising out of any Co-Insured Entity's liability for Survivor Claims or the Non-Settling Insurers' obligations with respect to or relating to such Survivor Claims. For the avoidance of doubt, the foregoing transfer shall not, and shall not be construed to, entitle any Person to insurance coverage other than those Persons entitled to such coverage from Non-Settling Insurers or by Non-Settling Insurer Policies. Similarly, for the avoidance of doubt, the assignment or transfer of the Non-Settling Insurer Policies pursuant to Section 5.3.1 and Section 5.3.2 of this Plan does not affect any right of any Co-Insured Entity or any Non-Settling Insurer to contest any liability or amount of damages in respect to any Survivor Claim.

### 5.9.2    Recoveries From or Arising Out of Insurance Claims.

Any recovery by the Insurance Trust on Insurance Claims against Non-Settling Insurers relating to any Co-Insured Entity's liability for Survivor Claims shall become an Insurance Trust Asset and shall be held by the Insurance Trust for: (a) payment of costs and expenses of pursuing Insurance Claims; and (b) distribution to the Survivor Compensation Trust. The Insurance Trust shall be entitled to all recoveries on account of Insurance Claims assigned to the Insurance Trust (which, for the avoidance of doubt, consist only of Insurance Claims against Non-Settling Insurers and excludes Insurance Claims against Settling Insurers), including the proceeds of any Insurance Claims relating to or arising out of any Litigation Claim. In addition, to the extent that the failure to defend or a separate agreement between any Co-Insured Entity, on the one hand, and a Non-Settling Insurer, on the other hand, gives rise to a monetary obligation to reimburse defense costs in lieu of a duty to defend, the Insurance Trust shall be entitled to the benefit of such monetary obligation or policy proceeds to the extent of any Protected Party's Post-Effective Date Costs actually paid by the Insurance Trust.

### 5.9.3    Insurance Trust's Pursuit of Debtor and Co-Insured Entities.

The Insurance Trust's pursuit of the Co-Insured Entities shall be limited to specific performance of the assignment of Insurance Claims to the Insurance Trust and any other rights or interests expressly granted to the Insurance Trust under this Plan.

**5.10    Insurance Provisions.**

**5.10.1  Insurance Neutrality.**

Nothing in this Plan, the Insurance Trust Documents, the Survivor Compensation Trust Documents, the Plan Documents, any Confirmation Order, or any judgment, order, finding of fact, conclusion of law, determination or statement made by the Bankruptcy Court, the District Court, or entered by any other court exercising jurisdiction over the Chapter 11 Case, including in any judgment, order, writ, or opinion entered on appeal from any of the foregoing, shall in any Action against a Non-Settling Insurer:

(a)      constitute an adjudication, judgment, trial, determination on the merits, finding, or conclusion of law establishing: (i) the liability (in the aggregate or otherwise) of any Co-Insured Entity or the Insurance Trust with respect to any Survivor Claims; (ii) the liability (in the aggregate or otherwise) of any Non-Settling Insurer with respect to any Insurance Claim; (iii) that the aggregate value of the Survivor Claims is equal to the amount to be paid into the Insurance Trust or Survivor Compensation Trust by the Co-Insured Entities; (iv) that it is reasonable, in good faith, or consistent with the terms and conditions of any Non-Settling Insurer Policy for any of the Co-Insured Entities, Insurance Trust, or Survivor Compensation Trust to settle, allow, assign any value to, liquidate, or pay (or present to any Non-Settling Insurer for payment) any Survivor Claim on any terms or conditions contemplated by the Plan, the Survivor Compensation Trust Distribution Plan, any other Plan Documents, or any other document or agreement; (v) that the Plan, any other Plan Document, or any other document or agreement are reasonable or consistent with any procedures that were used to evaluate, settle, or pay Survivor Claims against the Co-Insured Entities prior to the Petition Date or under the terms and conditions of any Non-Settling Insurer Policy or applicable non-bankruptcy law; (vi) that the conduct of the Co-Insured Entities, the Committee, or the Survivor Claimants in connection with the negotiation, development, settlement, and implementation of the Plan, the other Plan Documents, or any related documents or agreements was, is, or will be consistent with the terms and conditions of any Non-Settling Insurer Policy or applicable non-bankruptcy law; or (vii) that any Non-Settling Insurer was invited to participate in or participated in, consulted on, negotiated, or consented to the Survivor Compensation Trust Distribution Plan, the Insurance Trust Documents, the Survivor Compensation Trust Documents, or other Plan Documents;

(b)      have any res judicata, collateral estoppel, or other preclusive effect or otherwise prejudice, diminish, impair, or affect (under principals of waiver, estoppel, or otherwise) any defense, Claim, or right any Non-Settling Insurer may have under any Non-Settling Insurer Policy or applicable non-bankruptcy law with respect to same;

(c)      constitute a decision on any matter at issue or which may be raised as an issue in any Action against a Non-Settling Insurer, such that no judgment, order, finding of fact, conclusion of law, determination or other statement of the Bankruptcy Court or issued or affirmed by the District Court in this Chapter 11 Case, or entered by any other court exercising jurisdiction over the Chapter 11 Case, including any Confirmation Order, Survivor Compensation Trust Distribution Plan, or other Plan Documents and any finding,

41

conclusion or determination entered in connection with same, is not intended and shall not be construed to constitute a finding, conclusion or determination for any insurance coverage purpose whatsoever;

(d)      impair: (i) any Non-Settling Insurer's legal, equitable, or contractual rights under any Non-Settling Insurer Policy or with respect to Insurance Claims; or (ii) any policyholder's legal, equitable or contractual rights under any Non-Settling Insurer Policy or with respect to Insurance Claims; or

(e)      impair any Non-Settling Insurer Contribution Claim, which may be asserted as a defense or counterclaim against the Co-Insured Entities, Survivor Compensation Trust, or Insurance Trust, as applicable, in any Action against any Non-Settling Insurer.

### 5.10.2  Non-Settling Insurers' Remedies.

Notwithstanding anything to the contrary in Section 5.6 of this Plan, the remedies of any Non-Settling Insurer for any failure by any Protected Party or the Insurance Trust to observe and perform any Post-Effective Date Insurance Obligations (if any) or any other duties or obligations that may exist under a Non-Settling Insurer Policy shall be limited to those available under applicable law, and nothing in the Chapter 11 Case shall enhance, detract from, or modify any right(s) a Non-Settling Insurer may have under applicable law; provided, however, nothing in this Plan shall serve as a basis for any Non-Settling Insurer to seek or be granted any affirmative relief against any Co-Insured Entity.

### 5.10.3  Non-Settling Insurer Insurance Contribution Claims.

All Non-Settling Insurer Contribution Claims shall be channeled to and become a right, claim, or cause of action solely against the Insurance Trust and not against any Protected Party or Settling Insurer, and the sole recourse for such Non-Settling Insurer Contribution Claim shall be against the Insurance Trust or other Person that is not a Protected Party or Settling Insurer. Any Non-Settling Insurer Contribution Claim may be asserted in any action asserting a Coverage Claim against a Non-Settling Insurer even if the Protected Party or Settling Insurer in question is not a party to such action and regardless of whether such Non-Settling Insurer Contribution Claim relates to the cost of defending or indemnifying (or both) one or more Survivor Claims. To the extent any Non-Settling Insurer Contribution Claims against a Protected Party or Settling Insurer are determined to be valid, the liability, if any, of the applicable Non-Settling Insurer to the Insurance Trust shall be reduced by the amount of such Non-Settling Insurer Contribution Claims; provided, however, if the Non-Settling Insurer is not subject to any claim, cause of action, or judgment held by the Insurance Trust, then after such determination of the validity of the Non-Settling Insurer Contribution Claim, the Insurance Trust shall pay the amount of the Non-Settling Insurer Contribution Claim to the Non-Settling Insurer; provided, further, that no Non-Settling Insurer Contribution Claim shall be the basis for any affirmative recovery from the Debtor or Reorganized Debtor.

### 5.10.4  Post-Effective Date Costs Procedures.

(a)      **Post-Effective Date Costs Reserve.**

42

The Insurance Trust shall establish the Post-Effective Date Costs Reserve, which shall be funded in an initial amount of not less than Twelve Million Dollars ($12,000,000) from the contributions to the Survivor Compensation Trust from the Co-Insured Entities (the "***Post-Effective Date Costs Reserve***"). The Insurance Trustee shall provide the Co-Insured Entities with a written statement as to the balance of the Post-Effective Date Costs Reserve on a quarterly basis or as otherwise reasonably requested from time to time by any Co-Insured Entity.

If the Insurance Trustee does not maintain the Post-Effective Date Costs Reserve balance at or above Three Million Dollars ($3,000,000), the Insurance Trustee shall immediately report the same to the Co-Insured Entities, after which the Insurance Trustee shall schedule a meet and confer with same regarding the (a) Insurance Trustee's expectations with respect to the continued prosecution of Insurance Claims and Litigation Claims, (b) balance of Post-Effective Date Costs that are incurred but outstanding, and (c) parties' collective expectations as to any additional Post-Effective Date Costs that are likely to be incurred in order to comply with any remaining Post-Effective Date Insurance Obligations.

(b)      **Post-Effective Date Costs.**

Professionals representing any Co-Insured Entity in connection with the observance and performance of their respective Post-Effective Date Insurance Obligations, including, without limitation, their participation in any post-Effective Date discovery or litigation regarding Insurance Claims or Survivor Claims, will charge rates and expenses that are no higher than their usual and customary rate for similar work performed by such Professionals for clients generally at the time such services are provided, and such rates may be adjusted from time to time in accordance with the general practices of such Professionals.

Unless a Co-Insured Entity is reimbursed directly by any Non-Settling Insurer for any Post-Effective Date Costs contemporaneously with such Post-Effective Date Costs being incurred, all Post-Effective Date Costs shall be paid by the Insurance Trust from the Post-Effective Date Costs Reserve. The Insurance Trust's advancement or reimbursement of Post-Effective Date Costs shall not affect, diminish, or impair the Insurance Trust's right to bring any claims against any Non-Settling Insurers for refusing to defend or indemnify any Co-Insured Entity.

(c)      **Payment and Dispute Resolution Regarding Post-Effective Date Costs.**

All invoices for Post-Effective Date Costs shall be submitted to the Insurance Trustee via e-mail within sixty (60) days following the end of the month in which Post-Effective Date Costs are incurred (such submission, a "***Fee Notice***"). All Fee Notices provided to the Insurance Trustee may be redacted to prevent the disclosure of privileged information or trial strategy. The Insurance Trustee shall keep all Fee Notices confidential and shall not share any information contained in any Fee Notices other than the amount of fees with any Litigation Claimant, counsel to any Litigation Claimant, any professional whose firm previously represented the Debtor, Committee, or any professional whose firm represents the Insurance Trust in connection with the litigation or assertion of any Insurance Claim or Litigation Claim.

The Insurance Trustee shall inform the Co-Insured Entities and any professional submitting a Fee Notice of any disputes regarding the requested fees and expenses within twenty-one (21)

43

days of receipt of each applicable Fee Notice or shall pay the requested fees within such time. If a dispute regarding a Fee Notice cannot be resolved within twenty-one (21) days of notification of such dispute (or such other time agreed upon by the relevant parties), the dispute may be submitted to the Bankruptcy Court for adjudication upon at least twenty-one (21) days' notice, unless the relevant parties mutually agree otherwise.

(d) **Post-Effective Date Costs Reserve Non-Replenishment Determinations.**

If at any time the Insurance Trustee determines, in the Insurance Trustee's discretion, not to replenish the Post-Effective Date Costs Reserve before the balance of the Post-Effective Date Costs Reserve falls below Three Million Dollars ($3,000,000) (such determination, a "***Non-Replenishment Determination***"), the Insurance Trustee shall immediately (a) report such Non-Replenishment Determination to each Co-Insured Entity and (b) file an application with the Bankruptcy Court setting forth the basis for the Non-Replenishment Determination. If the Bankruptcy Court denies the Insurance Trustee's request to implement the Non-Replenishment Determination, the Insurance Trustee shall, subject to available funds, replenish the Post-Effective Date Costs Reserve to at least Six Million Dollars ($6,000,000). If the Bankruptcy Court approves the Insurance Trustee's request to implement the Non-Replenishment Determination or the Insurance Trustee lacks sufficient funds to maintain the balance of the Post-Effective Date Costs Reserve above Six Million Dollars ($6,000,000), each Co-Insured Entity shall be irrevocably released from any further obligations they would otherwise have had under this Plan with respect to any Insurance Claims or Survivor Claims, including, without limitation, any obligations to comply with any Post-Effective Date Insurance Obligations or to assist in the administration of the Survivor Compensation Trust Distribution Plan.

For the avoidance of doubt: (a) the Insurance Trust shall remain responsible for the payment of all Post-Effective Date Costs incurred within one year following the date of such notice, to the extent such Post-Effective Date Costs are submitted in accordance with the procedures set forth in this Section 5.10.4 of this Plan; (b) all Non-Settling Insurers shall retain any defenses to coverage they may have as a result of any failure of any Co-Insured Entity to observe and perform any Post-Effective Date Insurance Obligations; and (c) nothing in this Section 5.10.4 shall be construed to address the rights of any Non-Settling Insurer or the Insurance Trust, as assignee of Insurance Claims, upon any withdrawal of cooperation in defense of Claims by any Co-Insured Entity.

**5.11    Investment Powers; Permitted Cash Expenditures.**

All funds held by the Insurance Trust shall be invested in Cash or short-term highly liquid investments that are readily convertible to known amounts of Cash as more particularly described in the Insurance Trust Agreement. The Insurance Trustee may expend such Cash in a manner consistent with the terms of the Insurance Trust Agreement.

**5.12    Registry of Beneficial Interests.**

To evidence the beneficial interest in the Insurance Trust of each holder of such an Interest, the Insurance Trustee shall maintain a registry of beneficiaries.

44

### 5.13    Non-Transferability of Interests.

Any transfer of an Interest in the Insurance Trust shall not be effective until and unless the Insurance Trustee receives written notice of such transfer.

### 5.14    Insurance Trust Tax Matters.

The Insurance Trust is intended to qualify as a "Designated" or "Qualified Settlement Fund" pursuant to Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder. The Debtor and Related Non-Debtor Entities shall be the "transferor" within the meaning of Treasury Regulation Section 1.468B-1(d)(1). The Insurance Trustee shall be classified as the "administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3). The Insurance Trust Documents, including the Insurance Trust Agreement, are incorporated in this Section 5.14 of the Plan by reference. The Insurance Trust shall not be deemed to be the same legal entity as any Co-Insured Entity, but only the assignee of certain assets of the Co-Insured Entities and a representative of the Estate for delineated purposes within the meaning of section 1123(b)(3) of the Bankruptcy Code. The Insurance Trust is expected to be tax exempt. The Insurance Trustee shall file such income tax and other returns and documents as are required to comply with the applicable provisions of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1 et seq., as may be amended, and the regulations promulgated thereunder, 31 C.F.R. §§ 900 et seq., and Maryland law and the regulations promulgated thereunder, and shall pay from the Insurance Trust all taxes, assessments, and levies upon the Insurance Trust or Insurance Trust Assets, if any.

### 5.15    Immunity; Liability; Indemnification.

#### 5.15.1  No Liability for Reorganized Debtor, Related Non-Debtor Entities, or Insurance Trustee.

Neither the Reorganized Debtor, Related Non-Debtor Entities, their respective Agents, nor the Insurance Trustee or its Agents shall be liable for the acts or omissions of the Insurance Trustee or its Agents, except that the Insurance Trustee shall be liable for its specific acts or omissions resulting from such Insurance Trustee's willful misconduct, gross negligence, fraud, or breach of the fiduciary duty of loyalty. The Insurance Trustee may, in connection with the performance of its functions and in its sole and absolute discretion, consult with its Agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Agents. Notwithstanding such authority, the Insurance Trustee shall not be under any obligation to consult with its Agents, and its determination not to do so shall not result in the imposition of liability on the Insurance Trustee unless such determination is based on the Insurance Trustee's recklessness, gross negligence, willful misconduct, or fraud.

#### 5.15.2  No Recourse Against Insurance Trustee.

No recourse shall ever be had, directly or indirectly, against the Insurance Trustee personally, or against any Agent retained in accordance with the terms of the Insurance Trust Agreement or the Plan by the Insurance Trustee, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Insurance Trustee in implementation of the Insurance Trust Agreement or the Plan, or by reason of the creation of any indebtedness by the

45

Insurance Trustee under the Plan for any purpose authorized by the Insurance Trust Agreement or the Plan, it being expressly understood and agreed that all such liabilities, covenants, and Insurance Trust Agreement of the Insurance Trust whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Insurance Trust Assets. Notwithstanding the foregoing, the Insurance Trustee may be held liable for its recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud; and if liability on such grounds is established, recourse may be had directly against the Insurance Trustee. The Insurance Trust shall not be covered by a bond.

### 5.15.3  Indemnification of Insurance Trust.

The Insurance Trust shall defend, indemnify, and hold harmless the Insurance Trustee and its Agents to the fullest extent permitted under the laws of Maryland in the performance of their duties under the Insurance Trust Agreement and this Plan.

Additionally, each Protected Party and Settling Insurer, and each of their respective Agents, who was or is a party, or is threatened to be made a party to any threatened or pending judicial, administrative, or arbitrative action, by reason of any act or omission of the Insurance Trust or Insurance Trustee or respective Agents, relating to (a) the assessment or liquidation of any Insurance Claims or Survivor Claims, (b) the administration of the Insurance Trust, or (c) any and all activities in connection with the Insurance Trust Agreement, shall be indemnified and defended by the Insurance Trust, to the fullest extent that a corporation or trust organized under the laws of Maryland is from time to time entitled to indemnify and defend its Agents against Claims.

### 5.16    Insurance Trust Liability.

On the Effective Date, the Insurance Trust shall automatically and without further act or deed assume: (a) all liability, if any, of the Co-Insured Entities and Settling Insurers with respect to Channeled Claims, to the extent a Channeled Claim is a Survivor Claim that is or may be related to an Insurance Claim against a Non-Settling Insurer; and (b) the responsibility for preserving, managing, and distributing Insurance Trust Assets.

### 5.17    Termination of Insurance Trust.

The Insurance Trust shall terminate after its liquidation, administration, and distribution of the Insurance Trust Assets in accordance with the terms of this Plan and the Insurance Trust's full performance of all other duties and functions set forth in this Plan and the Insurance Trust Agreement. Notwithstanding the foregoing, absent further order of the Bankruptcy Court, the Insurance Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date.

## Article 6.
## Survivor Claims.

### 6.1    Trust Liability for Survivor Claims.

On the Effective Date, the Trusts shall automatically and without further act or deed assume all liability, if any, of the Protected Parties and Settling Insurers with respect to Channeled Claims, pursuant to and in accordance with Section 4.4 and Section 5.6 of this Plan.

**6.2     Assessment of Survivor Claims.**

Survivor Claims will be assessed in accordance with the Survivor Compensation Trust Distribution Plan, which is designed to provide an expeditious, efficient, reasonable, and equitable method for determining whether a Survivor Claimant is entitled to a Distribution from the Survivor Compensation Trust. The Co-Insured Entities shall reasonably cooperate with the Survivor Claims Reviewer and the Survivor Compensation Trustee in connection with any inquiries related to the administration of the Survivor Compensation Trust Distribution Plan but shall not be required to act in any way that violates any duty or prevents the satisfaction of any condition precedent under a Non-Settling Insurer Policy, if any. Under no circumstance shall the Survivor Claims Reviewer's review of a Survivor Claim or a distribution to a Survivor Claimant have any effect on the rights, defenses, or obligations of any Non-Settling Insurer. **[Insert summary of calculation of value of award.]**

**6.3     Survivor Claimant Election of Claim Treatment.**

No later than thirty (30) days after a Survivor Claimant is notified of the amount of their initial award under the Survivor Compensation Trust Distribution Plan or of any reconsideration of such initial award under the Survivor Compensation Trust Distribution Plan, the Survivor Claimant shall elect in writing one of the following with respect to treatment of such Survivor Claimant's Survivor Claim:

(a)     ***Treatment as a Distribution Claimant.*** Any Survivor Claimant that is not a Litigation Claimant: (i) shall be considered a Distribution Claimant; and (ii) in full and final satisfaction and discharge of their Survivor Claim, will receive Distributions from the Survivor Compensation Trust in an amount determined pursuant to and in accordance with the Survivor Compensation Trust Distribution Plan. Each Distribution Claimant must execute and deliver to the Survivor Compensation Trustee a Survivor Claimant Release, in order to receive Distributions pursuant to and in accordance with the Survivor Compensation Trust Distribution Plan. For the avoidance of doubt, when executing a Survivor Claimant Release, Survivor Claimants have the option of releasing the Debtor or all Protected Parties, which affects the amount distributed pursuant to and in accordance with the Survivor Compensation Trust Distribution Plan on account of the applicable Survivor Claim.

(i)     ***Release of All Protected Parties.*** If a Survivor Claimant elects to be a Distribution Claimant and executes a Survivor Claimant Release releasing all Protected Parties, the Survivor Claimant shall receive in full satisfaction of the Survivor Claimant's Survivor Claim(s) against the Debtor and Other Protected Parties the full amount of the Survivor Claimant's initial award.

(ii)     ***Release of Debtor Only.*** If a Survivor Claimant elects to be a Distribution Claimant and executes a Survivor Claimant Release releasing only the Debtor, the Survivor Claimant shall receive in full satisfaction of the Survivor Claimant's Survivor Claim(s) against the Debtor the Survivor Claimant's initial award multiplied by the percentage of funds in the Survivor Compensation Trust contributed by the Debtor in Cash and attributable to the Debtor's interest in the

47

proceeds of Settling Insurer Policies and Non-Settling Insurer Policies. The Survivor Compensation Trustee shall hold in a reserve the remaining balance of the Survivor Claimant's initial award (i.e., the amount attributable to Related Non-Debtor Entities' interests in the proceeds of Settling Insurer Policies and Non-Settling Insurer Policies), which may be distributed only upon presentation of a Litigation Award with respect to any Related Non-Debtor Entity. Upon presentation of any such Litigation Award and payment of the amount held in reserve plus any increased amount by reason of increased recovery from a Non-Settling Insurer Policy, such Survivor Claimant shall have no further recourse against the Survivor Compensation Trust, Insurance Trust, Debtor, or Reorganized Debtor.

(b)      ***Treatment as a Litigation Claimant.*** Any Survivor Claimant that elects to have their Survivor Claim treated as a Litigation Claim: (i) shall be considered a Litigation Claimant; and (ii) in full and final satisfaction and discharge of their Survivor Claim, will receive (A) Distributions from the Survivor Compensation Trust, to the extent set forth in the Survivor Compensation Trust Distribution Plan and Section 6.3(c)(i) and Section 6.3(c)(ii) of this Plan and (B) the right, subject to the Survivor Compensation Trustee granting authorization to pursue a Litigation Claim pursuant to Section 6.3(c) of this Plan, to liquidate their Litigation Claim in the tort system in order to determine the liability of any Protected Party. For the avoidance of doubt, when executing a Litigation Claimant Agreement, Survivor Claimants have the option of releasing the Debtor or all Protected Parties, which affects the purposes for and extent to which the Litigation Claim may be pursued and the amount distributed pursuant to and in accordance with the Survivor Compensation Trust Distribution Plan on account of the applicable Survivor Claim, as set forth in the Survivor Compensation Trust Distribution Plan and Section 6.3(c)(i) and Section 6.3(c)(ii) of this Plan.

(c)      ***Survivor Compensation Trustee's Authorization to Pursue Litigation Claims.***

(i)      ***Litigation Claims Affecting Non-Settling Insurer Policies.*** If the Survivor Compensation Trustee determines a Litigation Claim affects Non-Settling Insurer Policies, the Survivor Compensation Trustee shall have the sole discretion to: (i) authorize a Litigation Claimant to pursue a Litigation Claim; (ii) make a final decision as to whether a Litigation Claim is pursued; and (iii) make a final decision relating to the management and timing of litigation relating to Litigation Claims; provided, however, the Survivor Compensation Trust Agreement shall direct that in making such determination, the Survivor Compensation Trustee shall take into consideration and use reasonable efforts to minimize the cumulative impact of post-Effective Date litigation on the business operations and legal and personnel resources of the applicable Co-Insured Entity(ies) and Insurance Trust. Prior to authorizing a Survivor Claimant to be treated as a Litigation Claimant and to proceed with the applicable Litigation Claim, the Survivor Compensation Trustee shall consult with counsel for the Survivor Claimant, the applicable Co-Insured Entity(ies) against which such proposed Litigation Claim would be asserted, and the Insurance Trust, to coordinate, among other things, a mutually acceptable

litigation schedule and require the Survivor Claimant to execute and deliver a Survivor Claimant Release and a Litigation Claimant Agreement. The Survivor Compensation Trustee shall provide a copy of each Survivor Claimant Release and Litigation Claimant Agreement to the Reorganized Debtor upon execution of same and to any other Co-Insured Entity or Settling Insurer upon request. If a Litigation Claimant holding a Litigation Claim affecting Non-Settling Insurer Policies elects to release only the Debtor, the Litigation Claimant shall receive in full satisfaction of the Litigation Claimant's Litigation Claim(s) against the Debtor the Survivor Claimant's initial award multiplied by the percentage of funds in the Survivor Compensation Trust contributed by the Debtor in Cash and attributable to the Debtor's interest in the proceeds of Settling Insurer Policies and, to the extent adjusted by any Litigation Award, Non-Settling Insurer Policies. The Survivor Compensation Trustee shall hold in a reserve the remaining balance of the Survivor Claimant's initial award (i.e., the amount attributable to Related Non-Debtor Entities' interests in the proceeds of Settling Insurer Policies and Non-Settling Insurer Policies), which may be distributed only upon presentation of a Litigation Award with respect to any Related Non-Debtor Entity. Upon presentation of any such Litigation Award and payment of the amount held in reserve, such Litigation Claimant shall have no further recourse against the Survivor Compensation Trust, Insurance Trust, Debtor, or Reorganized Debtor.

(ii)    ***Uninsured Litigation Claims.*** If the Survivor Compensation Trustee determines a Litigation Claim does not affect Non-Settling Insurer Policies, the Survivor Compensation Trustee shall authorize the Litigation Claimant to pursue their Litigation Claim upon the conditions set forth in the Litigation Claimant Agreement and such Litigation Claimant shall receive in full satisfaction of the Litigation Claimant's Litigation Claim(s) against the Debtor the Litigation Claimant's initial award multiplied by the percentage of funds in the Survivor Compensation Trust contributed by the Debtor in Cash, and such Litigation Claimant shall have no further recourse against the Survivor Compensation Trust, Insurance Trust, Debtor, or Reorganized Debtor.

(iii)    ***Limitation of Remedies for Litigation Claims.*** For the avoidance of doubt: (A) no Settling Insurer shall be obligated to defend or indemnify any Person in connection with a Litigation Claim or otherwise have any other duties or obligations to any Person in connection with a Litigation Claim; (B) except for the collection of proceeds from any Non-Settling Insurer Policy or other amounts for which a Non-Settling Insurer is deemed to be liable, under no circumstances will any Survivor Claimant or other Person be able to recover in connection with any Litigation Claim any amount from the Debtor, Reorganized Debtor, or Settling Insurer or to otherwise obtain any recovery, judgment or levy whatsoever against any assets of the Debtor, Reorganized Debtor, or Settling Insurer.

(d)    ***Default Election.*** If a Survivor Claimant does not elect to be treated as a Litigation Claimant pursuant to Section 6.3(b) or elects to be so treated but is not granted authority by the Survivor Compensation Trustee to pursue a Litigation Claim, the Survivor

49

Claimant shall be treated as a Distribution Claimant prior to the occurrence of the applicable Survivor Claim Discharge Date.

### 6.4     Trusts' Rights With Respect to Survivor Claims.

#### 6.4.1   Insurance Trust and Insurance Claims.

The Insurance Trust shall retain the right to pursue all Insurance Claims with respect to Non-Settling Insurers and Non-Settling Insurer Policies.

#### 6.4.2   Survivor Compensation Trust and Litigation Claims.

The Survivor Compensation Trust retains the right to pursue recovery from the Insurance Trust for any Protected Party's liability for Litigation Claims, to the extent such Litigation Claims relate to one or more Non-Settling Insurer Policies. To the extent a Litigation Claimant settles or otherwise obtains a judgment with respect to a Litigation Claim, any recovery from a Non-Settling Insurer with respect such settlement or judgment shall be added to the Insurance Trust Assets to be distributed in accordance with the Insurance Trust Documents; provided, however, such recovery shall first go to reimbursement for the reasonable costs: (a) of the Insurance Trust in connection with such Litigation Claim; and (b) incurred by the Litigation Claimant in pursuing the recovery against the Non-Settling Insurer relating to such Litigation Claim, so long as such costs were agreed upon by the Survivor Compensation Trust in advance.

#### 6.4.3   Survivor Compensation Trust and Distribution Claims.

Notwithstanding a Survivor Claimant's election to have their Survivor Claim treated as a Distribution Claim, whether pursuant to Section 6.3(a) or Section 6.3(d) of this Plan, the Survivor Compensation Trust retains the right to pursue recovery from the Insurance Trust in accordance with Section 5.9 of this Plan with respect to Distribution Claims to the extent such Distribution Claims relate to Insurance Claims against one or more Non-Settling Insurers.

### 6.5     Legal Effect of Estimation of Survivor Claims and Survivor Compensation Trust Distributions.

The Survivor Claim Reviewer's determinations are for estimation and Survivor Compensation Trust Distribution purposes only and shall not constitute findings as to, or the determination of, the reasonableness, facts, or liability concerning the Survivor Claims with any binding legal effect. The determination, qualification, estimation, and payment of Survivor Compensation Trust Distributions regarding Survivor Claims: (a) shall not be construed as an admission of liability by any Protected Party, any Settling Insurer, any Non-Settling Insurer, or the Trusts with respect to any Survivor Claim and shall not be entitled to any preclusive effect; (b) is not a settlement, release, accord, or novation of any Survivor Claim and cannot be used by any Joint Tortfeasor as a defense to any alleged liability; (c) does not impair a Litigation Claimant's right to obtain a judgment, including a judgment based on joint and several liability, against any Co-Insured Entity or Non-Settling Insurer for purposes of establishing any Co-Insured Entity's or Non-Settling Insurer's liability with respect to such Litigation Claimant's Litigation Claim; provided, however, recourse on any such judgment shall be limited to the proceeds of Non-Settling Insurer Policies and all other damages (including extra-contractual damages), awards, judgments

50

in excess of policy limits, penalties, punitive damages, and attorney's fees and costs that may be recoverable against any Non-Settling Insurers because of their conduct concerning insurance coverage for, or defense or settlement of, any Survivor Claim or any Insurance Claim, and any proceeds from such judgment(s) or award(s) shall be distributed in accordance with this Plan; (d) shall not constitute or be deemed to constitute: (i) a trial, adjudication of a Survivor Claim, or evidence of liability or damages in any litigation with any Co-Insured Entities, Non-Settling Insurers, Settling Insurers, or any other Person; or (ii) a determination of the reasonableness of the amount of any Litigation Claim(s) in any litigation with Non-Settling Insurers; and (e) does not create an admission of the fact of liability or the extent of damages on behalf of any Co-Insured Entities.

A Non-Settling Insurer's obligation, if any, with respect to a Survivor Claim shall be determined solely by and in accordance with any applicable Non-Settling Insurer Policies issued by that Non-Settling Insurer subject to applicable non-bankruptcy law. Liability with respect to any Survivor Claim for purposes of any recovery against a Non-Settling Insurer Policy will be determined pursuant to applicable non-bankruptcy law.

With respect to the Non-Settling Insurers, for purposes of establishing the value of any Survivor Claim for purposes of recovery from, or coverage under, any Non-Settling Insurer Policy, no determination made in the Chapter 11 Case, nor any determinations made by the Claims Reviewer or Survivor Compensation Trustee concerning any Survivor Claim at any time, shall be binding on or against a Non-Settling Insurer, nor shall any party (including any Survivor Claimant) offer into evidence, or seek to admit into evidence, any such alleged determination in any Litigation Claims or Insurance Claims for the purpose of recovering from Non-Settling Insurers, except for the limited purpose of establishing the amount of any credit to which Debtor (as a nominal party) may be entitled to offset any verdict in favor of a holder of a Litigation Claim.

The Survivor Compensation Trust's distribution of a Survivor Compensation Trust Distribution shall not be construed as, and shall not be, an admission by or determination of any Protected Party's, any Settling Insurer's, any Non-Settling Insurer's, or the Insurance Trust's liability for or damages relating to any Survivor Claim.

### 6.6    Release and Discharge of Survivor Claims.

Notwithstanding anything to the contrary in this Plan, prior to receiving a Survivor Compensation Trust Distribution, each Survivor Claimant must execute and deliver to the Survivor Compensation Trustee a Survivor Claimant Release in the form attached to this Plan as **Exhibit H**; provided, however, consistent with section 524(e) of the Bankruptcy Code, the release and discharge of Survivor Claims shall not (a) release and enjoin such Survivor Claim against Persons to the extent such Persons are not Protected Parties or Settling Insurers or (b) otherwise affect Coverage Claims arising out of or in any way related to Non-Settling Insurer Policies. Joint Tortfeasors shall not be liable for any share of causal liability or fault attributable to any Protected Party, and no Protected Party shall be liable for their share of causal liability or fault attributable to any Joint Tortfeasor or other Person.

51

**6.7**    **Survivor Compensation Trust Distributions to Survivor Claimants.**

Survivor Claimants whom the Survivor Claims Reviewer determines to be entitled to a Survivor Compensation Trust Distribution pursuant to and in accordance with the Survivor Compensation Trust Distribution Plan will receive a Survivor Compensation Trust Distribution from the Survivor Compensation Trust in the amount(s) and at the time(s) provided for in the Survivor Compensation Trust Distribution Plan.

**6.8**    **Dismissal of Pending Litigation Regarding Survivor Claims.**

Each Survivor Claim asserted in any Action against any Protected Party pending in state or federal court shall be dismissed, with prejudice and without fees and costs being recoverable against the applicable Protected Party, upon the occurrence of the applicable Survivor Claim Discharge Date, subject to each Survivor Claimant's right to become a Litigation Claimant.

**6.9**    **Survivor Claim Withdrawal.**

A Survivor Claimant may withdraw their Survivor Claim at any time on written notice to the Survivor Compensation Trustee. Any withdrawal of a Survivor Claim shall be with prejudice, and such withdrawn Survivor Claim may not be reasserted, with the applicable Survivor Claimant still to be bound by the Discharge and this Plan, including the Channeling Injunction and Supplemental Settling Insurer Injunction.

**6.10**    **Medicare Procedures.**

**6.10.1  No Reporting Obligations.**

It is the Debtor's position that none of the Protected Parties, Settling Insurers, Insurance Trust, or Survivor Compensation Trust will have any reporting obligations in respect of their contributions to the Survivor Compensation Trust or in respect of any payments, settlements, resolutions, awards, or other Claim liquidations by the Survivor Compensation Trust, under the reporting provisions of MSPA or MMSEA.

**6.10.2  Survivor Claimant Certification.**

Prior to making any Survivor Compensation Trust Distributions, the Survivor Compensation Trustee may obtain in respect of any Channeled Claim a certification from the Survivor Claimant that said Survivor Claimant has or will provide for the payment or resolution of any obligations owing or potentially owing under MSPA relating to such Channeled Claim. If the Survivor Compensation Trust receives no such certification, the Survivor Compensation Trust shall: (a) withhold funds sufficient to assure that all obligations owing or potentially owing for Medicare Claims are paid to CMS; and (b) provide for the payment or resolution of any obligations owing or asserted under 42 U.S.C. § 1395y(b) or any related rules, regulations, or guidance, in connection with or relating to such Survivor Claimant's Channeled Claim.

### 6.10.3  Indemnification of Protected Parties.

The Survivor Compensation Trust shall indemnify and hold harmless the Protected Parties and the Settling Insurers from any Medicare Claims or similar reporting and payment obligations, whether relating to past conditional payments made, future payments to be made, or otherwise arising out of, relating to, or in connection with Channeled Claims, including any obligations owing or potentially owing under MMSEA or MSPA, and any Claims related to the Survivor Compensation Trust's obligations under this Plan, the Survivor Compensation Trust Documents, and Plan Documents. The Survivor Compensation Trustee also shall have the obligation to cooperate with the Protected Parties and the Settling Insurers in the assertion of the Channeling Injunction with respect to any Medicare Claims asserted against the Protected Parties related to Channeled Claims. The Survivor Compensation Trustee shall not have personal liability for the obligations under this Section 6.10, and the Survivor Compensation Trust shall not be required to create a reserve for these potential obligations. The Survivor Compensation Trust may seek recovery of any such payments from the applicable Survivor Claimant, including by withholding future Survivor Compensation Trust Distributions due to such applicable Survivor Claimant from the Survivor Compensation Trust.

### 6.10.4  Indemnity of United States.

The Survivor Compensation Trust Assets shall also be used for payment of indemnity and expenses relating to reimbursing the United States government or its contractors for conditional payments made pursuant to the MSPA applicable to any Medicare Beneficiary on account of any Channeled Claim. The amount of such payment shall not exceed that Survivor Claimant's award under the Survivor Compensation Trust Documents. The Protected Parties shall not be responsible for and will not pay indemnity or expenses relating to reimbursing the United States government or its contractors for conditional payments made pursuant to the MSPA applicable to any Medicare Beneficiary on account of any Channeled Claim.

### 6.10.5  No Obligations Upon Termination of Survivor Compensation Trust.

Upon the termination of the Survivor Compensation Trust in accordance with the Survivor Compensation Trust Agreement, the Survivor Compensation Trust shall have no further obligations under this Section 6.10.

### 6.10.6  Claims Prior to December 5, 1980.

Notwithstanding anything to the contrary in this Plan, no Trust, Protected Party, or Settling Insurer shall have any reporting obligations with respect to Survivor Claims that arise from or relate to alleged Abuse occurring prior to December 5, 1980.

### Article 7.
### Settling Insurers.

### 7.1  Insurance Settlement Agreements.

Each Insurance Settlement Agreement shall be effective and binding upon all Persons, and any such Person's successors and assigns, upon entry of an Insurance Settlement Approval Order

that is a Final Order with respect to such Insurance Settlement Agreement and satisfaction of all of such Insurance Settlement Agreement's conditions precedent. Payments by the applicable Settling Insurer to the Survivor Compensation Trust and the releases by and between the Protected Parties of the applicable Settling Insurer shall occur and become effective according to the terms of each Insurance Settlement Agreement and Insurance Settlement Approval Order. Each Insurance Settlement Agreement and Insurance Settlement Approval Order shall survive the confirmation, effectiveness, and consummation of this Plan. The rights and obligations of the parties under any Insurance Settlement Agreement and Insurance Settlement Approval Order shall be determined exclusively under the applicable Insurance Settlement Agreement, Insurance Settlement Approval Order, this Plan, and the Confirmation Order.

**7.2    Sale Free and Clear of Interests of Settling Insurer Policies.**

Each Settling Insurer Policy shall be sold to the applicable Settling Insurer, pursuant to sections 105, 363, and 1123 of the Bankruptcy Code, free and clear of all liens, Claims, and Interests of all Persons, to the extent provided in each applicable Insurance Settlement Agreement and Insurance Settlement Approval Order.

**7.3    Resolution of Claims Involving Settling Insurers.**

The Confirmation Order shall provide that upon payment of a Settling Insurer's Insurance Settlement Amount (either directly to the Survivor Compensation Trust and/or into an escrow account pursuant to the terms of the applicable Insurance Settlement Agreement), all: (a) releases set forth in the applicable Settling Insurer's Insurance Settlement Agreement shall be in full force and effect; and (b) all injunctive relief set forth in the applicable Insurance Settlement Approval Order shall become effective as set forth in such Insurance Settlement Agreement, Insurance Settlement Approval Order, and this Plan.

**7.4    Settling Insurer Payments.**

Each Settling Insurer shall pay to the Survivor Compensation Trust such Settling Insurer's Insurance Settlement Amount on the terms set forth in the applicable Insurance Settlement Agreement and Insurance Settlement Approval Order (either directly to the Survivor Compensation Trust and/or into an escrow account pursuant to the terms of the applicable Insurance Settlement Agreement).

**7.5    Further Assurances; Non-Material Modifications.**

From and after the Effective Date, the Protected Parties and each Settling Insurer shall be authorized to enter into, execute, adopt, deliver, or implement all notes, contracts, security agreements, instruments, releases, and other agreements or documents necessary to effectuate or memorialize the Insurance Settlement Agreements and Insurance Settlement Approval Orders without further order of the Bankruptcy Court. The Protected Parties and each Settling Insurer may make technical or immaterial alterations, amendments, modifications, waiver, or supplements to the terms of any Insurance Settlement Agreement, subject to (a) the terms and conditions of the applicable Insurance Settlement Agreement and Insurance Settlement Approval Order and (b) the consent of the Insurance Trustee and Survivor Compensation Trustee, which consent shall not be unreasonably withheld.

54

### 7.6    Waiver/Consent.

In consideration of the releases, Channeling Injunction, Supplemental Settling Insurer Injunction, and other covenants set forth in this Plan, subject to the occurrence of the Effective Date and satisfaction of the conditions precedent in the applicable Insurance Settlement Agreement, each of the Protected Parties: (a) irrevocably and unconditionally, without limitation, releases, acquits, forever discharges, and waives any Claims it has or might have now or in the future against the other Protected Parties and any Settling Insurers with respect to any contribution, subrogation, indemnification, or other similar Claim arising from or relating to Channeled Claims covered or alleged to be covered under any Settling Insurer Policy; (b) consents to the sale of the Co-Insured Entities' Claims, if any, related to the Settling Insurer Policies in accordance with each Insurance Settlement Agreement and Insurance Settlement Approval Order; (c) consents to the contribution of the proceeds of the sale of any Settling Insurer Policies to the Survivor Compensation Trust pursuant to and in accordance with this Plan, each Insurance Settlement Agreement, and each Insurance Settlement Approval Order. For the avoidance of doubt, nothing in this Section 7.6 shall be construed to bar or otherwise prohibit: (x) a Claim based upon Abuse against a Person who is not a Protected Party; or (y) a Claim by such Person for insurance coverage under an Insurance Policy that is not a Settling Insurer Policy.

### 7.7    Timing.

The injunctions, releases, and discharges to which any Settling Insurer is entitled pursuant to an Insurance Settlement Agreement, Insurance Settlement Approval Order relating to such Insurance Settlement Agreement, this Plan, the Confirmation Order, and the Bankruptcy Code shall become effective pursuant to and in accordance with the applicable Insurance Settlement Agreement and Insurance Settlement Approval Order.

## Article 8.
## Non-Settling Insurers.

### 8.1    Preservation of Rights and Obligations.

All obligations with respect to Non-Settling Insurers shall be determined by and in accordance with the terms of the Non-Settling Insurer Policies and applicable non-bankruptcy law. In the event a Survivor Claim is liquidated through the Survivor Compensation Trust Distribution Plan or in any state or federal court as may be permitted pursuant to this Plan, the Survivor Compensation Trust Distribution Plan, or Survivor Compensation Trust Agreement: (a) the Debtor, Reorganized Debtor, Related Non-Debtor Entities, Insurance Trust, and each Non-Settling Insurer shall retain the right to assert any and all rights and defenses with respect to such Survivor Claim; (b) the rights and obligations, if any, of the Debtor, Reorganized Debtor, Related Non-Debtor Entities, Insurance Trust, and each Non-Settling Insurer under the terms of the Non-Settling Insurer Policies and at law shall not be affected and shall be treated as though such liquidation had never occurred; (c) nothing in this Plan, the Confirmation Order, or other Plan Document shall impose any obligation on any Non-Settling Insurer to provide a defense for, settle, or pay any judgment with respect to any Survivor Claim; and (d) nothing in this Plan, the Confirmation Order, or other Plan Document shall grant to any Person any right to sue any Non-Settling Insurer directly with respect to a Survivor Claim.

55

With respect to Non-Settling Insurers, nothing in the Plan, the Plan Documents, the Confirmation Order, or the Trust Documents, including any provision that purports to be preemptory or supervening, shall in any way operate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing, or modifying (a) the terms and conditions of any Non-Settling Insurer Policy, (b) the rights and obligations of the Debtor (or its Estate) and any Non-Settling Insurers (and third-party claims administrators) under any of the Non-Settling Insurer Policies, or (iii) the coverage or benefits provided under the Non-Settling Insurer Policies; provided, however, nothing in this Plan shall serve as a basis for any Non-Settling Insurer to seek or be granted any affirmative relief against any Co-Insured Entity.

Other than with respect to the effectiveness of the Insurance Assignment contemplated by the Plan and the findings necessary to confirm the Plan under section 1129 of the Bankruptcy Code for such purpose only, no Non-Settling Insurer shall be bound in any current or future litigation concerning a Survivor Claim or a Non-Settling Insurer Policy by any factual findings or conclusions of law issued in connection with confirmation of the Plan, and no such findings of fact or conclusions of law shall have any *res judicata* or collateral estoppel effect on any Claim, defense, right, offset, or counterclaim that has been asserted or that may be asserted in any current or subsequent litigation concerning a Survivor Claim or Non-Settling Insurer Policy. Non-Settling Insurers shall retain, and be permitted to assert: (a) all of their insurance coverage defenses subject to applicable non-bankruptcy law in connection with Survivor Claims notwithstanding any provision of the Plan, the Plan Documents, or the Confirmation Order, provided, however, no Non-Settling Insurer may assert the Insurance Assignment as a defense to any Insurance Claim nor challenge the efficacy or validity of the Insurance Assignment; and (b) all of the Co-Insured Entities' defenses to liability, both legal and equitable, in connection with any asserted Survivor Claim, and the Non-Settling Insurers' rights to assert all such underlying defenses and insurance coverage defenses in connection with Survivor Claims will not be impaired in any way by the Plan, the Plan Documents, the Confirmation Order, or the Trust Documents, but shall be subject to applicable non-bankruptcy law.

Nothing in this Plan shall limit the ability of any Non-Settling Insurer to agree to different terms or treatment of its Non-Settling Insurer Policies as part of a consensual settlement with the Debtor, Insurance Trust, or Survivor Claimants, as applicable.

With respect to any Litigation Claim:

(a)     Non-Settling Insurers shall have the right (and the obligation, to the extent so provided under their respective Non-Settling Insurer Policy(ies)), to defend such Litigation Claim, consistent with the terms of their Non-Settling Insurer Policies and applicable non-bankruptcy law;

(b)     Non-Settling Insurers may take any actions authorized in their respective Non-Settling Insurer Policies, including reaching settlements with respect to such Litigation Claims;

(c)     the rights of affected Non-Settling Insurers to defend or associate in the defense of such Litigation Claims shall be fully preserved so that a Non-Settling Insurer who has offered to, or has an obligation to, defend may do so;

(d)      the rights of affected Non-Settling Insurers to assert all coverage defenses and issues in any action asserting a Coverage Claim shall be fully preserved; and

(c)      the Insurance Trust or applicable Litigation Claimant shall have no greater or lesser rights than the Debtor or any other applicable Co-Insured Entity.

With respect to the Non-Settling Insurers, notwithstanding any provision in the Plan, the Plan Documents, or the Confirmation Order, nothing contained in any such documents shall impose or be deemed or construed to impose any obligation on any Non-Settling Insurer to provide a defense for, settle, or pay any judgment with respect to any Survivor Claim, including Litigation Claims. Rather, a Non-Settling Insurer's obligations, if any, with respect to any Survivor Claims shall be determined solely by and in accordance with the applicable Non-Settling Insurer Policy or Non-Settling Insurer Policies issued by that Non-Settling Insurer subject to applicable non-bankruptcy law. Nothing in this Plan, the Plan Documents, or the Confirmation Order shall diminish or impair or be deemed to diminish or impair the rights of any Non-Settling Insurer to defend any Survivor Claims or to assert any claim, defense, right, or counterclaim in connection with any Survivor Claim or Non-Settling Insurer Policy in accordance with applicable law; provided, however, that any Non-Settling Insurer Contribution Claim shall be addressed in accordance with Section 5.10.3 of this Plan.

### 8.2      Post-Effective Date Insurance Obligations.

Notwithstanding the Insurance Assignment, subject to the payment of any Post-Effective Date Costs by the Insurance Trust, the Protected Parties shall (in addition to the Insurance Trust's obligations under Article 5 of this Plan) comply with and satisfy all Post-Effective Date Insurance Obligations, for the purposes of preserving and maintaining as much insurance coverage as possible for the benefit of the Insurance Trust and Survivor Compensation Trust.

If the Insurance Trust or Survivor Compensation Trust believes a Protected Party has failed to satisfy any Post-Effective Date Insurance Obligations, the Insurance Trust or Survivor Compensation Trust, as applicable, shall give the Reorganized Debtor and applicable Protected Party, if applicable, written notice identifying with specificity the Post-Effective Date Insurance Obligations such Trust believes have not been satisfied and the action(s) such Trust believes must be taken to satisfy same. The Reorganized Debtor and applicable Protected Party, as applicable, shall have not less than sixty (60) days from such notice to: (a) take the actions requested by the applicable Trust; or (b) seek a determination from the Bankruptcy Court as to whether the requested action is required to satisfy any Post-Effective Date Insurance Obligations; provided, however, such determination shall not be binding upon any Non-Settling Insurer. With the exception of willful misconduct by a Protected Party, the Trusts' sole remedy for any failure to satisfy any Post-Effective Date Insurance Obligations shall be specific performance as ordered by the Bankruptcy Court.

Nothing in this plan shall impair, and each Non-Settling Insurer expressly retains, all contractual defenses to coverage, if any, available under any Non-Settling Insurer Policy arising from or relating to any actual or alleged failure by a Protected Party to satisfy their respective Post-Effective Date Insurance Obligations, if any.

**8.3     Trust Powers With Respect to Survivor Claims and Non-Settling Insurers.**

Solely as set forth in this Plan, the Survivor Compensation Trust Distribution Plan, Survivor Compensation Trust Agreement, and Insurance Trust Agreement, the Trusts may enter into a settlement of any Insurance Claim, Extra-Contractual Claim, or Survivor Claim; provided, however, nothing in this Section 8.3 prohibits or prevents a Non-Settling Insurer from raising any defense to such settlement or claim for coverage. For the avoidance of doubt, the Survivor Compensation Trustee and Insurance Trustee, as applicable, may use Survivor Compensation Trust Assets and Insurance Trust Assets, as applicable, to prosecute any Insurance Claim or Extra-Contractual Claim permitted by this Plan, the Survivor Compensation Trust Agreement, or Insurance Trust Agreement, as applicable. In the event of recovery from a Non-Settling Insurer or Non-Settling Insurer Policy based upon an Insurance Claim or Extra-Contractual Claim relating to any Survivor Claim, the proceeds of such recovery shall become assets of the Insurance Trust or Survivor Compensation Trust, pursuant to this Plan, the Insurance Trust Agreement, Survivor Compensation Trust Agreement, and Survivor Compensation Trust Distribution Plan.

**Article 9.**
**Means for Implementation of the Plan.**

**9.1     General Settlement of Claims and Interests.**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, in consideration for the classification, Distributions, releases, and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of Claims and Interests held by the Debtor, including those related to any Insurance Settlement Agreement under the applicable Settling Insurer Policies, including any controversies relating to the contractual, legal, and subordination rights that holders of a Claim or Interests might have with respect to any Claim or Interests under this Plan. Distributions made to holders of a Claim or Interests in any Class are intended to be final.

**9.2     Plan Implementation.**

All Distributions on account of Allowed Claims other than Survivor Claims shall be paid by the Debtor or Reorganized Debtor, as applicable, pursuant to and in accordance with this Plan. All Distributions on account of Survivor Claims shall be paid solely from the Trusts, pursuant to and in accordance with this Plan, the Confirmation Order, the Insurance Trust Agreement, the Survivor Compensation Trust Agreement, and Survivor Compensation Distribution Plan.

**9.3     Sources of Consideration for Distributions.**

The Debtor and Reorganized Debtor shall fund their obligations under this Plan using Cash on hand or otherwise available. The Survivor Compensation Trust and Insurance Trust shall be funded by the Debtor's interest in proceeds and Related Non-Debtor Entities' interests in proceeds of Settling Insurer Policies and Non-Settling Insurer Policies. Trust Distributions shall be funded solely from Survivor Compensation Trust Assets and Insurance Trust Assets, as applicable.

**9.4    Payments Effective Upon Tender.**

Whenever the Plan requires payment to be made to a Creditor, such payment will be deemed made and effective upon tender of such payment by the Debtor, Reorganized Debtor, Survivor Compensation Trustee, or Insurance Trustee, as applicable, to the applicable Creditor to whom payment is due. If a Creditor refuses a tender, the amount tendered and refused will be held by the Debtor, Reorganized Debtor, Survivor Compensation Trustee, or Insurance Trustee, as applicable, for the benefit of such Creditor pending final adjudication of the dispute; provided, however, upon the adjudication of such dispute, the Creditor shall be obligated to apply the funds in accordance with this Plan as of the date of tender; provided, further, however, the Creditor shall not have the right to claim interest or other charges or to exercise any other rights while the dispute is pending.

**9.5    Non-Monetary Plan Provisions.**

On February 13, 2026, the Bankruptcy Court entered the *Order Approving Joint Application to Employ Guidepost as Child Protection Consultant* (Dkt. No. 2049). Subject to the occurrence of the Effective Date, the Debtor and Reorganized Debtor have agreed to undertake certain non-monetary obligations to further enhance the existing child safety and protection policies and procedures within the Archdiocese, all as set forth in **Exhibit J** to this Plan.

**9.6    Corporate Action.**

All matters provided under this Plan involving the corporate structure of the Debtor, or corporate action to be taken by or required by the Debtor or Reorganized Debtor shall be deemed to have occurred and be effective as provided by this Plan and shall be authorized and approved in all respects without any requirement for further approval by the Bankruptcy Court or any other governmental entity. For the avoidance of doubt, to the extent any corporate action or other transaction contemplated under this Plan would otherwise require approval under Maryland or other applicable law, the entry of the Confirmation Order shall constitute such approval.

**9.7    Agreements, Instruments, and Documents.**

All agreements, instruments, and other documents required by or under this Plan or as may be necessary, useful, or otherwise desirable in order to effectuate this Plan shall be executed before, on, or as soon as reasonably practicable after the Effective Date.

**9.8    Continuation of Insurance Policies.**

Except to the extent any Insurance Policy is sold pursuant to an Insurance Settlement Agreement and corresponding Insurance Settlement Approval Order or as otherwise provided by the terms of this Plan, all Insurance Policies shall be deemed: (a) assumed and assigned to the Insurance Trust, pursuant to sections 365, 1123(a)(5)(A), and 1123(b)(2) of the Bankruptcy Code to the extent such Insurance Policy is or was an executory contract of the Debtor; or (b) continued in accordance with its terms pursuant to section 1123(a)(5)(A) of the Bankruptcy Code, to the extent such Insurance Policy is not an executory contract of the Debtor, such that each of the parties' contractual, legal, and equitable rights under such Insurance Policy shall remain unaltered.

59

To the extent that any or all Insurance Policies are considered to be executory contracts (other than Insurance Policies sold pursuant to an Insurance Settlement Agreement and corresponding Insurance Settlement Approval Order or as otherwise provided by the terms of this Plan), this Plan shall constitute a motion to assume and assign or otherwise transfer such Insurance Policies to the Insurance Trust, pursuant to and in accordance with this Plan. Subject to the occurrence of the Effective Date, the Confirmation Order shall approve such assumption and assignment or other transfer of the Insurance Policies to the Insurance Trust.

**9.9    Effectuating Documents; Further Transactions; Transfer Tax Exemptions.**

The Debtor and Reorganized Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan. Pursuant to section 1146(a) of the Bankruptcy Code, the following shall not be subject to any stamp tax, real estate transfer tax, mortgage recording tax, sales or use tax, or other similar tax: (a) the creation of any mortgage, deed of trust, lien, or other security interest; (b) the making or assignment of any lease or sublease; or (c) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, or assignments executed in connection with any of the foregoing or pursuant to this Plan.

**9.10    [Reserved].**

**9.11    Continued Corporate Existence and Vesting of Assets.**

As of the Effective Date: (a) the Debtor will continue, as the Reorganized Debtor, to exist as a legal entity, with all of the powers of such legal entity under applicable law and without prejudice to any right to alter or terminate such existence (by merger, dissolution or otherwise) under applicable law; and (b) property of the Estate, and any property acquired by the Debtor or Reorganized Debtor, as applicable, will vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, and other interests, except as expressly provided in this Plan. Except as otherwise provided by this Plan, the Reorganized Debtor may, on and after the Effective Date, operate, use, acquire, and dispose of property, and compromise or settle any Claims (other than Survivor Claims subject to this Plan), without supervision or approval by the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. On and after the Effective Date, the Debtor as the Reorganized Debtor will continue to operate in accordance with the principles of their respective missions, Canon Law, and applicable laws.

## Article 10.
## Distributions and Claims Administration for Claims Other Than Survivor Claims.

**10.1    Distributions.**

Unless otherwise provided in this Plan, Distributions for Claims other than Survivor Claims shall be made by the Debtor and Reorganized Debtor, as applicable.

### 10.2   Method of Payment.

Except with respect to Survivor Claims, payments under this Plan will be made by check, mailed with first class postage prepaid, to the holder of each Claim at: (a) the address listed on its Proof of Claim as of the Record Date (or by such other method as may be agreed to by the Reorganized Debtor and holder of the applicable Claim); or (b) if no Proof of Claim has been filed by the date of the hearing on confirmation, to the address listed on the Schedules as of the Record Date. Holders of Claims as of the Record Date may contact the Reorganized Debtor to amend their addresses as follows: (a) by e-mailing RCABaltimore@epiqglobal.com; (b) by first class mail to Roman Catholic Archbishop of Baltimore Claims Processing Center, c/o Epiq Corporate Restructuring, LLC, P.O. Box 4421 Beaverton, Oregon 97076-4421; or (c) by hand delivery or overnight mail to Roman Catholic Archbishop of Baltimore Claims Processing Center, c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, Oregon 97005.

### 10.3   Reservation of Rights to Object to Claims.

Unless a Claim is expressly described as an Allowed Claim pursuant to or under this Plan or otherwise becomes an Allowed Claim prior to the Effective Date, upon the Effective Date, the Reorganized Debtor, Insurance Trustee, or Survivor Compensation Trustee, as applicable, shall have and retain any and all objections to any and all Claims and motions or other requests for the payment of Claims, including any and all objections to the validity or amount of any and all alleged Administrative Expenses and Priority Tax Claims. The failure to object to any Claim in this Chapter 11 Case shall be without prejudice to the Reorganized Debtor's, Insurance Trustee's, or Survivor Compensation Trustee's, as applicable, right to contest or otherwise defend against such Claim in the Bankruptcy Court when or if such Claim is sought to be enforced by the holder of such Claim.

### 10.4   Filing of Objections.

All parties in interest reserve the right to object to Survivor Claims pursuant to Section 502(a) of the Bankruptcy Code, and Survivor Claimants reserve all defenses to such objections. All parties in interest, including without limitation the Non-Settling Insurers, reserve the right to object in the Bankruptcy Court to any Proofs of Claim on any basis to the extent permitted by applicable law; provided, however, for the avoidance of doubt, nothing in this section is intended to confer and shall not confer upon the Bankruptcy Court jurisdiction over any claim objections over which the Bankruptcy Court would not otherwise have jurisdiction pursuant to applicable law.

Except with respect to Survivor Claims or Administrative Expenses, any objections to Claims will be filed within ninety (90) days after the Effective Date, unless such day is not a Business Day in which case such deadline will be the next Business Day after the ninetieth (90th) day after the Effective Date, or at such later date as approved by the Bankruptcy Court upon request from the Reorganized Debtor. Any objections to Claims arising solely under section 502(d) of the Bankruptcy Code are not subject to the ninety (90) day deadline and may be pursued through an adversary proceeding asserting a Claim under Chapter 5 of the Bankruptcy Code. An objection to any Claim will be deemed properly served on the Claimant, if the Reorganized Debtor effects service by any of the following methods: (a) in accordance with Bankruptcy Rule 7004; (b) by

61

first class mail on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment to same; or (c) by first class mail on any counsel that has appeared on behalf of the holder of the Claim in the Chapter 11 Case.

### 10.5    Procedures for Treating and Resolving Disputed Claims.

#### 10.5.1  No Distributions Pending Allowance.

Notwithstanding any other provision in this Plan, no payments or distributions will be made with respect to all or any portion of a Disputed Claim, unless and until all objections to such Disputed Claim have been settled, withdrawn, or determined by a Final Order.

#### 10.5.2  Claim Estimation.

Except with respect to Survivor Claims, the Debtor may seek a Bankruptcy Court order requiring the estimation or limitation of any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code. Unless provided otherwise in an order of the Bankruptcy Court, the estimated amount shall constitute the Allowed amount of such Claim or a maximum limitation on such Claim, as the Bankruptcy Court may direct; provided, however, that if the estimate constitutes the maximum limitation on such Claim, the Debtor may elect to pursue supplemental proceedings to object to the ultimate allowance of such Claim; provided, further, however, nothing in this Section 10.5.2 shall limit the rights granted by section 502(j) of the Bankruptcy Code.

#### 10.5.3  No Distribution if Cause of Action Asserted.

Notwithstanding any other provision of this Plan, no payment or Distribution will be made with respect to all or any portion of a Claim or Allowed Claim held by a claimant against whom an Avoidance Action is asserted unless and until such Avoidance Action has been settled or withdrawn or has been determined by a Final Order.

#### 10.5.4  Payment Upon Allowance and Disallowance of Disputed Claims.

At such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the Reorganized Debtor shall distribute to the holder of such Allowed Claim the Distribution(s) to which the holder is then entitled under this Plan. Such Distribution, if any, shall be made as soon as reasonably practicable after entry of a Final Order allowing such Claim.

### 10.6    Record Date.

The Record Date for Claim transfers is the Confirmation Date. Claim transfers will not be recognized after the Confirmation Date. Payment under the Plan will be mailed to the address of the holder of the Claim as of the Record Date until the holder of the Claim as of the Record Date notifies the Reorganized Debtor in writing of a different address as follows: (a) by e-mailing RCABaltimore@epiqglobal.com; (b) by first class mail to Roman Catholic Archbishop of Baltimore Claims Processing Center, c/o Epiq Corporate Restructuring, LLC, P.O. Box 4421 Beaverton, Oregon 97076-4421; or (c) by hand delivery or overnight mail to Roman Catholic

Archbishop of Baltimore Claims Processing Center, c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, Oregon 97005.

### 10.7    De Minimis Distributions.

The Reorganized Debtor shall not be required to make any payment of less than fifty dollars ($50.00) with respect to any Allowed General Unsecured Claim.

### 10.8    Unclaimed Payments.

In the event a payment is returned to the Reorganized Debtor as unclaimed with no indication of the payee's forwarding address, the Reorganized Debtor shall hold such payment for a period of one hundred eighty (180) days from the date of return. If not claimed by the payee by the end of the one hundred eighty (180) day period, the funds will be retained by the Reorganized Debtor, and the applicable claim shall be discharged and forever barred.

### 10.9    Time Bar to Check Payments.

Checks issued by the Reorganized Debtor shall be null and void if not negotiated within one hundred eighty (180) days from and after the date of issuance. Requests for reissuance of any check shall be made to the Reorganized Debtor by the holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check must be made on or before two hundred ten (210) days after the date of issuance of such check. After two hundred ten (210) days after issuance of a non-negotiated check for which the holder of the Allowed Claim did not request reissuance, all claims in respect of voided checks shall be discharged and forever barred.

### 10.10    Compliance With Tax Requirements.

Notwithstanding any other provisions of this Plan: (a) each recipient of a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any taxing authority, including income, withholding, and other tax obligations on account of such Distribution; and (b) no Distribution shall be made to or on behalf of such recipient unless and until such holder has made arrangements satisfactory to the Reorganized Debtor for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon the Reorganized Debtor in connection with such Distribution.

### 10.11    Setoffs and Recoupments.

The Reorganized Debtor, Insurance Trustee, or Survivor Compensation Trustee, as applicable, may, pursuant to applicable non-bankruptcy law, set off against or recoup from any Distribution(s) to be made pursuant to the Plan, any Cause of Action the Debtor, Reorganized Debtor, Insurance Trustee, or Survivor Compensation Trustee, as applicable, may hold against the holder of such Allowed Claim that are not otherwise waived, released, or compromised pursuant to or in accordance with this Plan; provided, however, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim under this Plan shall constitute a waiver or release of any such Causes of Action against a holder of a Claim.

63

## Article 11.
## Executory Contracts and Unexpired Leases.

**11.1    Assumption or Rejection of Executory Contracts and Unexpired Leases.**

Each Assumed Agreement shall be assumed as of the Effective Date, to the extent that each such Assumed Agreement has not already expired, concluded, or terminated under its own terms, without the need for any further notice to, or action, order, or approval of, the Bankruptcy Court under sections 365 and 1123 of the Bankruptcy Code. All other executory contracts, unexpired leases, or other agreements that are not Assumed Agreements and were not previously assumed or rejected by order of the Bankruptcy Court in the Chapter 11 Case shall be deemed rejected as of the Effective Date. Entry of the Confirmation Order shall constitute, pursuant to sections 365 and 1123 of the Bankruptcy Code, approval of the rejection of all such executory contracts and unexpired leases.

**11.2    Cure of Defaults.**

Not later than twenty-four (24) days prior to the confirmation hearing, the Debtor shall provide notices of proposed Cure Amounts to the counterparties to the Assumed Agreements proposed to be assumed under the Plan, which notices shall include a description of the procedures for objecting to the Cure Amount, the ability of the Debtor to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code under the Assumed Agreement, and any other matter pertaining to assumption.

UNLESS OTHERWISE AGREED IN WRITING BY THE PARTIES TO THE APPLICABLE ASSUMED AGREEMENT, ANY OBJECTION BY A COUNTERPARTY TO AN ASSUMED AGREEMENT TO A PROPOSED ASSUMPTION OR RELATED CURE AMOUNT MUST BE FILED, SERVED, AND ACTUALLY RECEIVED BY COUNSEL TO THE DEBTOR WITHIN TWENTY-ONE (21) DAYS OF THE SERVICE OF THE NOTICE OF PROPOSED ASSUMPTION AND CURE AMOUNT, OR SUCH SHORTER PERIOD AS AGREED TO BY THE PARTIES OR AUTHORIZED BY THE BANKRUPTCY COURT. ANY COUNTERPARTY TO AN ASSUMED AGREEMENT THAT FAILS TO TIMELY OBJECT TO THE PROPOSED ASSUMPTION OR CURE AMOUNT SHALL BE DEEMED TO HAVE CONSENTED TO SUCH ASSUMPTION AND CURE AMOUNT AND SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM CONTESTING THE DEBTOR'S ASSUMPTION OF THE APPLICABLE ASSUMED AGREEMENT AND FROM REQUESTING PAYMENT OF A CURE AMOUNT THAT DIFFERS FROM THE AMOUNTS PAID OR PROPOSED TO BE PAID BY THE DEBTOR OR REORGANIZED DEBTOR, IN EACH CASE WITHOUT THE NEED FOR ANY OBJECTION BY THE DEBTOR OR REORGANIZED DEBTOR OR ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT. THE REORGANIZED DEBTOR MAY SETTLE ANY CURE AMOUNT WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.

The Debtor or Reorganized Debtor, as applicable, shall pay undisputed Cure Amounts, if any, on the Effective Date or as soon as reasonably practicable thereafter, or on such other terms as the parties may agree. If there is a dispute regarding the Cure Amount, the ability of the Debtor to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code under the applicable Assumed Agreement, or any other matter pertaining to assumption, then the Debtor or Reorganized Debtor, as applicable, shall pay the applicable Cure

64

Amount as soon as reasonably practicable after entry of a Final Order resolving such dispute and approving such assumption, or as may otherwise be agreed upon by the Debtor or Reorganized Debtor, as applicable, and the counterparty to the Assumed Agreement. The payment of Cure Amounts required by section 365(b)(1) of the Bankruptcy Code following the entry of a Final Order resolving the dispute and approving the assumption shall not prevent or delay implementation of the Plan or occurrence of the Effective Date.

The Debtor's assumption of any Assumed Agreement pursuant to this Plan or otherwise and payment of the applicable Cure Amount shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Agreement at any time prior to the effective date of assumption.

ANY AND ALL PROOFS OF CLAIM BASED UPON ASSUMED AGREEMENTS THAT HAVE BEEN ASSUMED IN THE CHAPTER 11 CASE, INCLUDING PURSUANT TO THE CONFIRMATION ORDER, SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE LATER OF (A) THE DATE OF ENTRY OF AN ORDER OF THE BANKRUPTCY COURT (INCLUDING THE CONFIRMATION ORDER) APPROVING SUCH ASSUMPTION, (B) THE EFFECTIVE DATE OF SUCH ASSUMPTION, AND (C) THE EFFECTIVE DATE, IN WHICH CASE WITHOUT THE NEED FOR ANY OBJECTION BY THE DEBTOR OR REORGANIZED DEBTOR OR ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.

### 11.3    Bar Dates for Rejection Damage Claims.

To the extent not subject to a claim filing deadline set forth in any prior or subsequent order of the Bankruptcy Court, claims arising out of the rejection of an executory contract or unexpired lease pursuant to Section 11.1 of this Plan must be filed with the Bankruptcy Court no later than thirty (30) days after the entry of the Confirmation Order and, upon allowance, shall be an Allowed General Unsecured Claim; provided, however, the amount of damages for any such claim arising from the rejection of an executory contract or unexpired lease shall be capped as set forth in section 502(b)(6) and section 502(b)(7) of the Bankruptcy Code.

ANY CLAIM ARISING OUT OF THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT IS NOT TIMELY FILED SHALL BE AUTOMATICALLY DISALLOWED, FOREVER BARRED FROM ASSERTION, AND UNENFORCEABLE AGAINST THE DEBTOR, REORGANIZED DEBTOR, ESTATE, OR ANY PROPERTY OF THE FOREGOING, WITHOUT THE NEED FOR ANY OBJECTION BY THE REORGANIZED DEBTOR OR FURTHER ACTION, ORDER, OR APPROVAL BY THE BANKRUPTCY COURT, AND ANY SUCH CLAIM SHALL BE DEEMED FULLY SATISFIED, RELEASED, AND DISCHARGED, NOTWITHSTANDING ANY CLAIM OR PROOF OF CLAIM TO THE CONTRARY.

### 11.4    Contracts and Leases Entered After the Petition Date.

Contracts and leases entered into after the Petition Date by the Debtor, including any Assumed Agreement assumed by the Debtor, will be performed by the Debtor or Reorganized Debtor, as applicable, in the ordinary course of business. Accordingly, such contracts and leases,

65

including any Assumed Agreements, shall survive and remain unaffected by entry of the Confirmation Order.

### 11.5  Compensation and Benefits Programs.

Other than any Compensation and Benefits Programs assumed by the Debtor prior to the entry of the Confirmation Order, all of the Compensation and Benefits Programs entered into before the Petition Date and not since terminated shall be deemed to be, and shall be treated as though they are, Assumed Agreements under this Plan and deemed assumed under sections 365 and 1123 of the Bankruptcy Code, and the Debtor's and Reorganized Debtor's obligations under the Compensation and Benefits Programs survive and remain unaffected by entry of the Confirmation Order and will be fulfilled in the ordinary course of the Debtor's and Reorganized Debtor's operations. Compensation and Benefits Programs assumed by the Debtor prior to the entry of the Confirmation Order shall continue to be fulfilled in the ordinary course of the Debtor's and Reorganized Debtor's operations from and after the date of any order of the Bankruptcy Court authorizing the assumption of such Compensation and Benefits Programs.

### 11.6  Workers' Compensation Programs.

As of the Effective Date, the Debtor and Reorganized Debtor shall continue to honor their obligations under: (a) all applicable workers' compensation laws; and (b) the Workers' Compensation Program. For the avoidance of doubt, all written contracts and agreements related to the Workers' Compensation Program shall be deemed executory contracts and assumed as of the Petition Date. No Insurer shall be required to file a Proof of Claim, and any amount due and owing under a written contract or agreement related to the Workers' Compensation Program shall be paid in the ordinary course under such written contract or agreement. All Proofs of Claim on account of the Workers' Compensation Program shall be deemed withdrawn automatically and without any further notice to or action, order, or approval of the Bankruptcy Court; provided, however, that nothing in this Plan shall limit, diminish, or otherwise alter the Debtor's or Reorganized Debtor's defenses, Causes of Action, or other rights under applicable non-bankruptcy law with respect to the Workers' Compensation Program; provided, further, however, that nothing in this Plan shall be deemed to impose any obligations on the Debtor or the Debtor's Insurers in addition to what is provided for under the terms of the Workers' Compensation Program and applicable state law.

### 11.7  Modifications, Amendments, Supplements, Restatements, or Other Agreements.

Unless otherwise provided in this Plan, each Assumed Agreement that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Assumed Agreement, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless the Debtor rejects or repudiates any of the foregoing agreements. Modifications, amendments, and supplements to, or restatements of, prepetition Assumed Agreements that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Assumed Agreement, or the validity, priority, or amount of any Claims that may arise in connection with such Assumed Agreement.

**11.8    Reservation of Rights.**

Nothing contained in this Plan shall constitute an admission by the Debtor that a contract or lease is in fact an Assumed Agreement or that the Reorganized Debtor has any liability under any contract or lease. If there is a dispute as of the Confirmation Date regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtor, or, after the Effective Date, the Reorganized Debtor, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease, including by rejecting such contract or lease retroactive to the Confirmation Date.

**Article 12.**
**Confirmation and Consummation of the Plan.**

**12.1    Conditions Precedent to Confirmation.**

Confirmation of the Plan shall not occur unless all of the following conditions precedent have been satisfied:

(i).    the Confirmation Order is in form and substance acceptable to the Plan Proponents, Related Non-Debtor Entities, and any Settling Insurers;

(ii).    the Confirmation Order shall approve and implement the Channeling Injunction and Supplemental Settling Insurer Injunction as set forth in this Plan and any other Insurance Settlement Approval Order,

(iii).    any Insurance Settlement Approval Order related to any Insurance Settlement Agreement agreed to prior to the Confirmation Date shall have been entered; and

(iv).    the Plan Documents shall be in form and substance acceptable to the Plan Proponents and any Settling Insurers.

**12.2    Conditions Precedent to the Effective Date.**

The Effective Date shall not occur, and this Plan shall not be consummated, unless and until each of the following conditions have been satisfied:

(i).    the Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Plan Proponents, Related Non-Debtor Entities, and any Settling Insurers, the Confirmation Order shall be a Final Order, and no stay of the Confirmation Order shall then be in effect;

(ii).    each Insurance Settlement Agreement agreed to prior to the Confirmation Date shall have been duly executed by all parties to such Insurance Settlement Agreement and filed with the Bankruptcy Court, in each case in form and substance satisfactory to the Plan Proponents and applicable Settling Insurers;

(iii).    the Survivor Compensation Trustee and Reorganized Debtor shall have executed the Survivor Compensation Trust Agreement;

67

(iv).    the Insurance Trustee and Reorganized Debtor shall have executed the Insurance Trust Agreement;

(v).    each Insurance Settlement Approval Order shall have become a Final Order;

(vi).    the payment described in <u>Section 4.2.1</u> shall have been made to, and received by, the Survivor Compensation Trust;

(vii).    the payment described in <u>Section 5.2</u> shall have been made to, and received by, the Insurance Trust;

(viii).    this Plan shall not have been materially amended, altered, or modified as confirmed by the Confirmation Order, unless such material amendment, alteration, or modification has been made with the consent of the Plan Proponents and any Settling Insurers; and

(ix).    the Debtor shall have obtained any approvals required by or pursuant to the Code of Canon Law.

Upon the satisfaction of the foregoing (or their waiver pursuant to <u>Section 12.3</u> of the Plan), the Debtor shall file with the Bankruptcy Court a notice of occurrence of the Effective Date.

**12.3    Waiver of Conditions Precedent to the Effective Date.**

Other than the conditions set forth in <u>Section 12.2(vi)</u> and <u>Section 12.2(ix)</u>, each of the conditions precedent to the occurrence of the Effective Date set forth in <u>Section 12.2</u> of this Plan may only be waived in whole or in part by the Plan Proponents with the written consent of any Settling Insurers, and shall not require notice to or leave or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

**12.4    Effect of Non-Occurrence of Conditions.**

If substantial consummation of the Plan does not occur, the Plan will be null and void in all respects, and nothing in this Plan or the Disclosure Statement will: (a) constitute a waiver or release of any Claims by or against the Protected Parties or any Settling Insurer; (b) prejudice in any manner the rights of the Protected Parties, the Trusts, or any Settling Insurer; (c) constitute an admission, acknowledgement, offer, or undertaking by the Protected Parties or any Settling Insurer in any respect, including in any Action against the Debtor; or (d) be admissible in any Action against the Protected Parties or any Settling Insurer in any court or other forum.

**Article 13.**
**<u>Effects of Confirmation.</u>**

**13.1    Binding Effect.**

As of the Effective Date, all provisions of the Plan Documents shall be binding upon the Debtor, the Estate, the Reorganized Debtor, all holders of Claims or Interests, each such holder's respective successors and assigns, and all other Persons that are affected in any manner by the Plan, including the Insurers, regardless of whether the Claim or Interest of such holder is Impaired

68

under the Plan and whether such holder has accepted the Plan. Except as otherwise expressly provided in the Plan, all Plan Documents shall be given full force and effect and shall bind all Persons referred to therein on and after the Effective Date, whether or not such agreements are actually issued, delivered, or recorded on or after the Effective Date and whether or not such Persons have actually executed such agreement(s).

### 13.2 Discharge.

#### 13.2.1 Discharge of the Debtor.

All consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, termination, and release of, all Claims and Interests of any nature whatsoever against or in the Debtor or any of the Debtor's assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date. As of the Effective Date and except as expressly provided in the Plan or the Confirmation Order, the Debtor shall be discharged and released, and each holder of a Claim or Interest (including any successor, assign, and Affiliate of such holder) shall be deemed to have forever waived, discharged, and released the Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims and Interests based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, in each case whether or not (a) a proof of claim with respect to such Claim or Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a proof of claim with respect to such Claim or Interest is Allowed under section 502 of the Bankruptcy Code, or (c) the holder of such Claim or Interest is deemed to have accepted the Plan.

#### 13.2.2 [Reserved].

#### 13.2.3 Discharge Injunction.

As of the Effective Date, except as expressly provided in the Plan or the Confirmation Order, all holders of Claims or Interests of any nature whatsoever against or in the Debtor or any of the Debtor's assets or properties based upon an act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date shall be precluded and permanently enjoined from prosecuting or asserting any such discharged Claim or Interest against the Debtor, Reorganized Debtor, or the property of the Debtor or Reorganized Debtor. In accordance with the foregoing, except as expressly provided in the Plan or Confirmation Order, the Confirmation Order shall be a judicial determination of discharge or termination of all Claims and Interests against or in the Debtor, pursuant to sections 105, 524, 1141, and 1192 of the Bankruptcy Code, as applicable, and such discharge shall void any judgment obtained against the Debtor to the extent such judgment relates to a discharged Claim or Interest.

### 13.3 Channeling Injunction Preventing Prosecution of Claims Against Protected Parties and Settling Insurers.

**As set forth in each Insurance Settlement Agreement and each Insurance Settlement Approval Order, in consideration of the undertakings of the Protected Parties and Settling Insurers under each Insurance Settlement Agreement and this Plan, including their contributions to the Insurance Trust, contributions to the Survivors Compensation Trust,**

69

and other consideration, to further preserve and promote the agreements between and among the Protected Parties and Settling Insurers, and to supplement where necessary the injunctive effect of the discharge as provided in sections 524 and 1141 of the Bankruptcy Code, and pursuant to sections 105 and 363 of the Bankruptcy Code:

(a).    any and all Channeled Claims are channeled into the Trusts, as applicable, and shall be treated, administered, determined, and resolved under the procedures and protocols and in the amounts established under this Plan, the Insurance Trust Agreement, and the Survivor Compensation Trust Agreement, as the sole and exclusive remedy for all holders of Channeled Claims;

(b).    any and all Persons who have held or asserted, hold or assert, or may in the future hold or assert any Channeled Claims are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly, indirectly, or derivatively, for the purposes of asserting, enforcing, or attempting to assert or enforce any Channeled Claim against the Protected Parties or Settling Insurers, including:

(i).    commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any Action, suit, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world with respect to any Channeled Claim against or affecting any Protected Party, any Settling Insurer, or any property or interest in property of any Protected Party or Settling Insurer;

(ii).    enforcing, levying, attaching (including any prejudgment attachment), collecting, recovering, or seeking to accomplish any of the preceding by any manner or means with respect to, any judgment, award, decree, or order relating to a Channeled Claim against or affecting any Protected Party, any Settling Insurer, or any property or interest in property of any Protected Party or Settling Insurer;

(iii).    creating, perfecting, enforcing, or seeking to accomplish any of the preceding with respect to any lien or encumbrance of any kind relating to a Channeled Claim against or affecting any Protected Party, any Settling Insurer, or any property or interest in property of any Protected Party or Settling Insurer;

(iv).    asserting, implementing, or effectuating any Channeled Claim of any kind against: (A) any obligation due any Protected Party or Settling Insurer; (B) any Protected Party or Settling Insurer; or (C) the property of any Protected Party or Settling Insurer;

(v).    taking any act, in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of this Plan, the Plan Documents, the Insurance Trust Documents, or the Survivor Compensation

70

Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to the Survivor Compensation Trust; and

(vi).    asserting or accomplishing any setoff, right of indemnity or reimbursement, subrogation, contribution, or recoupment of any kind against an obligation owed to any Protected Party or Settling Insurer, or any property or interest in property of any Protected Party or Settling Insurer.

This Channeling Injunction is an integral part of: (x) each Insurance Settlement and this Plan; (y) the Related Non-Debtor Entities' agreement to contribute their interests in Settling Insurer Policies and Non-Settling Insurer Policies to this Plan; and (z) the implementation each Insurance Settlement Agreement and this Plan. It is intended that the channeling of the Channeled Claims provided in each Insurance Settlement Agreement, each Insurance Settlement Approval Order, and this Plan shall inure to the benefit of each Protected Party and Settling Insurer. The Channeling Injunction shall become effective with respect to: (a) each Settling Insurer as of the occurrence of all conditions to the effectiveness of such Settling Insurer's Insurance Settlement Agreement and the occurrence of the Effective Date; and (b) each Protected Party as of the occurrence of the Effective Date. In a successful Action to enforce the injunctive provisions of any Insurance Settlement Approval Order, or this Section 13.3 of the Plan in response to a willful violation of same, the moving party shall be entitled to recover all costs and expenses incurred, including reasonable attorney's fees and costs, from the non-moving part, and such other legal or equitable remedies as re just and proper.

13.4    **Supplemental Settling Insurer Injunction.**

As set forth in each Insurance Settlement Agreement and Insurance Settlement Approval Order, pursuant to sections 105(a), 363, and 1123 of the Bankruptcy Code, and in consideration of the undertakings of each Settling Insurer pursuant to the applicable Insurance Settlement Agreement and Insurance Settlement Approval Order, including each Settling Insurer's purchase of the applicable Settling Insurer Policies free and clear of all liens, Claims and Interests of all Persons pursuant to sections 363(b), (f), and (m) of the Bankruptcy Code, any and all Persons who have held, now hold, or who may in the future hold any Claims or Interests (including all debt holders, all equity holders, all Persons holding a Claim, governmental, tax, and regulatory authorities, lenders, trade and other creditors, Survivor Claimants, perpetrators, and all other holding Interests of any kind or nature whatsoever, including those Claims released or to be released pursuant to the Insurance Settlement Agreements and Insurance Settlement Approval Orders) against any of the Settling Insurers arising out of or relating in any way to such Settling Insurer's Settling Insurer Policies, including (i) Survivor Claims, Indirect Claims, and Released Claims, (ii) the payment of any of the Claims identified in (i), including Contribution Claims, Non-Settling Insurer Contribution Claims, and Medicare Claims, and (iii) Extra-Contractual Claims are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly, indirectly, or derivatively, to assert, enforce or attempt to assert or enforce any such Claim or Interest against the Settling Insurers or Settling Insurer Policies, including:

71

(a).    commencing, conducting, or continuing in any manner, whether directly, indirectly, or derivatively, any Action, suit, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world with respect to any Settling Insurer or any property or interest in property of any Settling Insurer;

(b).    enforcing, levying, attaching (including any prejudgment attachment), collecting, recovering, or seeking to accomplish any of the preceding by any manner or means with respect to, any judgment, award, decree, or order against or affecting any Settling Insurer or any property or interest in property of any Settling Insurer;

(c).    creating, perfecting, enforcing, or seeking to accomplish any of the preceding with respect to, any lien or encumbrance of any kind against or affecting any Settling Insurer or any property or interest in property of any Settling Insurer;

(d).    asserting, implementing, or effectuating any setoff, right of indemnity or reimbursement, subrogation, contribution, or recoupment of any kind against any obligation due any Settling Insurer or any property or interest in property of any Settling Insurer; or

(e).    taking any act, in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of this Plan, the Plan Documents, the Insurance Trust Documents, or the Survivor Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to the Survivor Compensation Trust.

This Supplemental Settling Insurer Injunction is an integral part of: (y) each Insurance Settlement Agreement and this Plan; and (z) the implementation of each Insurance Settlement Agreement and this Plan. The Supplemental Settling Insurer Injunction will be effective with respect to each Settling Insurer only as of the occurrence of: (i) all conditions necessary for the effectiveness of such Settling Insurer's Insurance Settlement Agreement and Insurance Settlement Approval Order; and (ii) the Effective Date. The Supplemental Settling Insurer Injunction bars the above-referenced actions against the Settling Insurers (and such Settling Insurers' Affiliates), property and interests in property of the Settling Insurers, and the Settling Insurer Policies, but against no other Person or thing; provided, however, the Supplemental Settling Insurer Injunction shall not limit or otherwise be deemed to limit the scope of the discharge or Channeling Injunction in favor of the Debtor, Reorganized Debtor, and other Protected Parties.

13.5    [Reserved.]

13.6    Gatekeeper Injunction.

To the fullest extent permitted by applicable law, no Enjoined Party may commence or pursue against any Protected Party or Settling Insurer (a) a Channeled Claim or (b) any other Claim or Cause of Action that arose or arises from or is related to a Channeled Claim, the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the reorganization of the business of the Debtor and

72

Reorganized Debtor, the administration of the Trusts, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action is not stayed, released, discharged, enjoined, restrained or otherwise barred under this Plan or an applicable Insurance Settlement Approval Order and (ii) subject in all respects to the Channeling Injunction, the Discharge Injunction, and the Supplemental Settling Insurer Injunction, specifically authorizing such Enjoined Party to bring such Claim or Cause of Action against any such Protected Party or Settling Insurer. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is or is not stayed, released, discharged, enjoined, restrained or otherwise barred under this Plan or an applicable Insurance Settlement Approval Order or, alternatively, with respect to a Survivor Claim, order that such Claim or Cause of Action be only pursued and resolved as expressly provided in Article 6 of this Plan.

The Gatekeeper Injunction shall serve solely as a procedural mechanism to determine whether a proposed Claim or Cause of Action is barred by the Discharge Injunction, the Channeling Injunction, the Supplemental Settling Insurer Injunction, the Confirmation Order, an applicable Insurance Settlement Approval Order, or the Plan's Trust-resolution procedures.

No Person shall be required to seek leave of the Bankruptcy Court under the Gatekeeper Injunction to assert or pursue: (a) any Claim against an individual alleged to have perpetrated Abuse; (b) any Claim seeking recovery solely from a Non-Settling Insurer; (c) any direct, independent Claim that is not a Channeled Claim and does not seek recovery from, impair, or affect Trust Assets, Insurance Trust Assets, Settling Insurer Policies, Non-Settling Insurer Policies, estate insurance rights, or implementation of the Plan; or (d) any post-Effective Date Claim based solely on post-Effective Date conduct and not otherwise barred by the Plan or Confirmation Order.

In any proceeding under the Gatekeeper Injunction, the Bankruptcy Court shall determine only whether the proposed Claim or Cause of Action is stayed, released, discharged, enjoined, channeled, restrained, or otherwise barred by this Plan, the Confirmation Order, the Channeling Injunction, the Discharge Injunction, the Supplemental Settling Insurer Injunction, or an applicable Insurance Settlement Approval Order. If the Bankruptcy Court determines that the proposed Claim or Cause of Action is not so barred, the claimant may pursue such Claim or Cause of Action in a court of competent jurisdiction, subject to all rights, defenses, objections, and jurisdictional arguments of all parties, all of which are preserved.

Nothing in the Gatekeeper Injunction shall enlarge the Bankruptcy Court's jurisdiction, create jurisdiction where none otherwise exists, adjudicate the merits of any Claim or Cause of Action, or impose a release or discharge of any non-debtor liability except to the extent expressly provided by this Plan, the Confirmation Order, or an applicable Insurance Settlement Approval Order.

73

**13.7    Injunction Against Interference With Plan.**

Upon entry of the Confirmation Order, all holders of Claims and Interests shall be precluded and enjoined from taking any actions to interfere with the implementation and consummation of the Plan.

**13.8    Exculpation of Exculpated Parties.**

**From and after the Effective Date, to the fullest extent permitted by applicable law, none of the Exculpated Parties shall have or incur any liability for, and each Exculpated Party shall be released from, any Claim by any other Exculpated Party, Claimant, or any other party in interest for any act or omission that occurred during and relating to the Chapter 11 Case or relating to the preparation and filing of the Chapter 11 Case, formulation, negotiation, pursuit of confirmation, consummation of the Plan, or administration of the Plan or the property to be distributed under the Plan, the formulation and negotiation of an Insurance Settlement Agreement, or the seeking or obtaining of an Approval Order related to an Insurance Settlement Agreement, except for Claims arising from the gross negligence, willful misconduct, fraud, or breach of the fiduciary duty of loyalty of any Exculpated Party, in each case subject to determination of such by Final Order of a court of competent jurisdiction and provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities, if any, under the Plan; provided, however, nothing in this Section 13.8 shall serve to affect any claims against Stinson LLP or Berkeley Research Group, LLC with respect to or arising out of certain data breaches during the pendency of the Chapter 11 Case. Without limiting the generality of the foregoing, the Committee, Debtor, and their respective Agents shall be entitled to and granted the benefits of section 1125(e) of the Bankruptcy Code and the Channeling Injunction**.

**13.9    Limitation of Liability for Payments to Survivors.**

The Protected Parties, the Settling Insurers, the Trusts, the Survivor Compensation Trustee, Insurance Trustee, and professionals employed by each of the foregoing shall not have any liability to any Person, including any governmental entity or Insurer, on account of payments made to a Survivor Claimant, except as set forth in this Plan.

**13.10    Injunctions in Full Force and Effect.**

All injunctions or stays provided for in the Plan, the injunctive provisions of sections 524 and 1141 of the Bankruptcy Code, and all injunctions or stays protecting any Settling Insurer or other Protected Party are permanent and will remain in full force and effect following the Effective Date of the Plan and are not subject to being vacated or modified.

**13.11    Settlements, Injunctions, and Releases Integral to Plan.**

The foregoing settlements and corresponding injunctive provisions and releases are an integral part of the Plan and are essential to its implementation. Any and all currently pending court proceedings, the continuation of which would violate this Article 13 of the Plan or the

74

releases provided for under the Plan or corresponding settlements shall be dismissed with prejudice within twenty-one (21) days of the Effective Date.

**13.12   Timing.**

The settlements, injunctions, releases, and discharges (including the Channeling Injunction, Supplemental Settling Insurer Injunction, and Gatekeeper Injunction) to which any Settling Insurer or other Protected Party is entitled pursuant to an Insurance Settlement Agreement, an Insurance Settlement Approval Order, this Plan, the Confirmation Order, and the Bankruptcy Code shall only become effective upon the occurrence of the Effective Date and all conditions precedent to the effectiveness of each applicable Insurance Settlement Agreement, as applicable.

**13.13   Title to and Vesting of Assets.**

All property of the Debtor and the Estate is dealt with by and administered under this Plan. Therefore, on the Effective Date, to the fullest extent allowed by sections 1141(b) and 1141(c) of the Bankruptcy Code, all property of the Debtor and the Estate, including Retained Claims, shall vest in the Reorganized Debtor, and such property shall be free and clear of all liens, Claims and Interests of all Persons, except as expressly provided in the Plan. From and after the Effective Date, the Reorganized Debtor may operate, use, acquire, and dispose of property in accordance with the Plan, free and clear of any restrictions of the Bankruptcy Code and the Bankruptcy Rules, and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code. The Reorganized Debtor may pursue any Retained Claims at the discretion of the Reorganized Debtor and retain the proceeds thereof, if any.

**13.14   Cancellation of Instruments.**

On the Effective Date, all instruments evidencing or creating any indebtedness or obligation of the Debtor, except such instruments that are authorized or issued under this Plan, shall be cancelled and extinguished. The holders of or parties to the cancelled notes and other agreements and instruments shall have no rights relating to such notes or instruments or the cancellation thereof, except any rights provided pursuant to this Plan.

**13.15   Dissolution of the Committee.**

On the Effective Date, the Committee shall be dissolved, and the members of the Committee and the professionals retained by the Committee shall be released and discharged from their respective fiduciary obligations.

**Article 14.**
**Retention of Jurisdiction.**

**14.1   By the Bankruptcy Court.**

Pursuant to sections 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code and 28 U.S.C. §§ 157 and 1334, on and after the Effective Date, the Bankruptcy Court shall retain: (a) original and exclusive jurisdiction over the Chapter 11 Case; (b) original, but not exclusive, jurisdiction to hear and determine all core proceedings arising under the Bankruptcy Code or arising in the

75

Chapter 11 Case; and (c) original, but not exclusive, jurisdiction to hear and make proposed findings of fact and conclusions of law in any non-core proceedings related to the Chapter 11 Case and the Plan, including matters concerning the interpretation, implementation, consummation, execution, or administration of the Plan. Subject to, but without limiting the generality of the foregoing, the Bankruptcy Court's post-Effective Date jurisdiction shall include jurisdiction:

(a)     over disputes concerning the ownership of Claims;

(b)     over disputes concerning the distribution or retention of assets under the Plan;

(c)     over objections to Claims, motions to allow late-filed Claims, and motions to estimate Claims;

(d)     over proceedings to determine the extent, validity, or priority of any Lien asserted against property of the Debtor, the Estate, or Trusts, or property abandoned or transferred by the Debtor, the Estate, or the Trusts;

(e)     over motions to approve Insurance Settlement Agreements entered into after the Effective Date;

(f)     over matters related to the assets of the Estate or Trusts, including the terms of the Trusts, or the recovery, liquidation, or abandonment of Survivor Compensation Trust Assets or Insurance Trust Assets;

(g)     over removal of either Trustee and appointment of a successor Trustee;

(h)     over matters relating to the subordination of Claims;

(i)     to enter and implement such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(j)     to enforce the Channeling Injunction, the Discharge Injunction, the Supplemental Settling Insurer Injunction, and the Gatekeeper Injunction;

(k)     to consider and approve modifications of or amendments to the Plan, to cure any defects or omissions or to reconcile any inconsistencies in any order of the Bankruptcy Court, including the Confirmation Order;

(l)     to issue orders in aid of execution, implementation, or consummation of the Plan, including the issuance of orders enforcing any and all releases and injunctions issued under or pursuant to this Plan or settlements included in this Plan (including but not limited to the Channeling Injunction, the Discharge Injunction, the Supplemental Settling Insurer Injunction, and the Gatekeeper Injunction);

(m)     over disputes arising from or relating to the Plan, the Confirmation Order, or any agreements, documents, or instruments executed in connection with the foregoing;

76

(n)     over requests for allowance of payment of Claims entitled to priority under sections 507(a)(2) and 503(b) of the Bankruptcy Code and any objections to same;

(o)     over all applications for compensation under sections 327, 328, 329, and 330 of the Bankruptcy Code;

(p)     over matters concerning state, local, or federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(q)     over conflicts and disputes among either of the Trusts, Reorganized Debtor, and holders of Claims;

(r)     over disputes concerning the existence, nature, or scope of the Discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(s)     to issue injunctions, provide declaratory relief, or grant such other legal or equitable relief as may be necessary or appropriate to restrain interference with the Plan, the Debtor or its property, the Reorganized Debtor or its property, the Estate or its property, the Trusts or their property, Trustees, the Professionals, or the Confirmation Order;

(t)     to address issues raised by the United States Trustee regarding any obligation of the Debtor or Reorganized Debtor after confirmation of this Plan;

(u)     to enforce, interpret and resolve any disputes related to any Insurance Settlement Agreement or Insurance Settlement Approval Order;

(v)      to enter a Final Decree closing the Chapter 11 Case;

(w)     to enforce all orders previously entered by the Bankruptcy Court; and

(x)     over any and all other suits, adversary proceedings, motions, applications, and contested matters that may be commenced or maintained pursuant to the Plan or otherwise in or relating to the Chapter 11 Case.

### 14.2     By the District Court.

Pursuant to sections 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code and 28 U.S.C. § 1334, on and after the Effective Date, the District Court shall retain original, but not exclusive, jurisdiction to hear and determine all matters arising under the Bankruptcy Code or arising in or related to the Chapter 11 Case.

### 14.3     Actions to Collect Amounts Owed Pursuant to the Plan.

The Debtor, Reorganized Debtor, and Trusts may, but are not required to, commence an Action to collect amounts owed pursuant to the Plan for any settlements referred to in this Plan or

later approved by the Bankruptcy Court that are not paid in accordance with the terms of such settlement. Any such Action may be commenced by filing a motion in aid of confirmation with the Bankruptcy Court.

### 14.4 Case Closure.

The existence and continued operation of the Trusts shall not prevent the Bankruptcy Court from closing the Chapter 11 Case. The Survivor Compensation Trustee and Insurance Trustee shall not take any actions to unreasonably keep the Chapter 11 Case open. In an action involving either of the Trusts, any costs incurred in reopening the Chapter 11 Case, including any Statutory Fees and Court Costs, will be paid by the Survivor Compensation Trustee or Insurance Trustee, as applicable, from Survivor Compensation Trust Assets or Insurance Trust Assets, as applicable.

### Article 15.
### Miscellaneous Provisions.

### 15.1 Modification of the Plan.

The Plan Proponents, with the consent of any Settling Insurers, may modify the Plan at any time prior to the confirmation hearing, in accordance with sections 1127(a) and 1193(a) of the Bankruptcy Code, as applicable. After the Confirmation Date and prior to substantial consummation, the Plan Proponents, with the consent of any Settling Insurers, may modify the Plan, in accordance with sections 1127(b) and 1193(b) of the Bankruptcy Code, as applicable, by filing a motion on notice as required under the applicable Bankruptcy Rules, and the solicitation of all creditors and other parties in interest shall not be required unless directed by the Bankruptcy Court. Notwithstanding the foregoing, those provisions of the Plan that implement and supplement the Insurance Settlement Agreements may not be severed, waived, amended, deleted, or otherwise modified without the prior written approval of all Settling Insurers affected by such severance, waiver, amendment, deletion, or modification.

### 15.2 United States Trustee Reports.

From the Effective Date until the Chapter 11 Case is closed, the Reorganized Debtor shall, within thirty (30) days of the end of each fiscal quarter, file with the Bankruptcy Court and submit to the United States Trustee, quarterly reports setting forth all receipts and disbursements as required by the United States Trustee guidelines. The Reorganized Debtor will not be required to file monthly operating reports or provide copies of bank account statements.

### 15.3 Severability of Plan Provisions.

Except as specifically provided in the Plan, the terms of the Plan constitute interrelated compromises and are not severable, and no provision of the Plan may be stricken, altered, or invalidated, except by amendment of the Plan by the Plan Proponents with the consent of Settling Insurers as provided in Section 15.1.

### 15.4 Regulated Rates.

This Plan affects no rates subject to approval by any governmental regulatory commission.

**15.5    Successors and Assigns.**

The rights, benefits, and obligations of any person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person.

**15.6    Governing Law.**

The rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the Bankruptcy Code and, to the extent not inconsistent with the Bankruptcy Code, Maryland law, without giving effect to principles of conflict of laws.

**15.7    Construction.**

The section headings contained in this Plan are for reference purposes and shall not affect in any way the meaning or interpretation of the Plan. To the extent of any inconsistencies between the information contained in the Disclosure Statement and the terms and provisions of the Plan, the terms and provisions of the Plan shall govern.

**15.8    Revocation.**

The Plan Proponents reserve the right to revoke and withdraw the Plan, prior to entry of the Confirmation Order.

**15.9    Controlling Documents.**

In the event and to the extent that any provision of the Plan, Survivor Compensation Trust Agreement, or Insurance Trust Agreement is inconsistent with any provision of the Disclosure Statement, the provisions of the Plan, Survivor Compensation Trust Agreement, or Insurance Trust Agreement, as applicable, shall control and take precedence. In the event and to the extent that any provision of the Survivor Compensation Trust Agreement or Insurance Trust Agreement (other than provisions relating to the Survivor Compensation Trustee's or Insurance Trustee's authority to act) is inconsistent with any provision of this Plan, this Plan shall control and take precedence. In the event and to the extent that any provision of the Confirmation Order is inconsistent with any provision of the Plan, Survivor Compensation Trust Agreement, or Insurance Trust Agreement, the provisions of the Confirmation Order shall control and take precedence. In the event this Plan or any provision of any agreement referred to in this Section 15.9 of this Plan is inconsistent with an Insurance Settlement Agreement, the Insurance Settlement Agreement shall control.

**15.10   Notices.**

Any notices or requests by parties in interest under or in connection with the Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

If to the Debtor or Reorganized Debtor:

79

Roman Catholic Archbishop of Baltimore
Attn: Archbishop of Baltimore
320 Cathedral Street
Baltimore, Maryland 21201

with a copy to:

**HOLLAND & KNIGHT LLP**
Attn: Blake D. Roth
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Email: blake.roth@hklaw.com

*-and-*

**YVS LAW, LLC**
Attn: Catherine K. Hopkin
185 Admiral Cochrane Drive, Ste. 130
Annapolis, Maryland 21401
Email: chopkin@yvslaw.com

*-and-*

**GALLAGHER LLP**
Attn: Thomas C. Dame
650 South Exeter Street, Ste. 1200
Baltimore, Maryland 21202
Email: tdame@gallagherllp.com

If to the Insurance Trust or Insurance Trustee:

[_]

If to the Survivor Compensation Trust or Survivor Compensation Trustee:

[_]

### 15.11    Filing of Additional Documents.

At any time before substantial consummation of this Plan, the Debtor or either Trust, as appropriate, may file with the Bankruptcy Court or execute such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan or otherwise comply with applicable law.

80

### 15.12   Direction to a Party.

On and after the Effective Date, either Trust or the Reorganized Debtor, as applicable, may apply to the Bankruptcy Court for entry of an order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or desirable to effect a transfer of properties dealt with by this Plan or to perform any other act (including satisfaction of any lien or security interest) that is reasonably necessary or desirable for consummation of this Plan.

### 15.13   Certain Actions.

By reason of entry of the Confirmation Order, prior to, on, or after the Effective Date, as applicable, all matters provided for under this Plan that would otherwise require approval of the officers of the Debtor under the Plan, including (a) adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan or (b) adoption, execution, and implementation of other matters provided for under this Plan involving the Debtor or organizational structure of the Debtor, shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date, as applicable, pursuant to applicable non-bankruptcy law, without any requirement of further action by the officers of the Debtor.

### 15.14   Plan as Settlement Communication.

The Plan furnishes or offers or promises to furnish, or accepts or offers or promises to accept, valuable consideration in compromising or attempting to compromise Claims, Interests, and Causes of Action that are disputed as to validity or amount, including Survivor Claims and Insurance Claims. Accordingly, the Plan, the Disclosure Statement, and any communications regarding the Plan or Disclosure Statement are subject in all respects to Rule 408 of the Federal Rules of Evidence and any comparable provision(s) of applicable state law precluding their use as evidence of liability for, or the validity or invalidity of, any Disputed Claim or Cause of Action.

### 15.15   Other Rights.

Except as expressly set forth in this Plan, nothing in this Plan shall preclude any Person from asserting in any proceeding or against any award or judgment entered in such proceeding any and all rights that may be accorded under Maryland law, or any other applicable statutory or common law, of contribution, indemnity, reduction, credit, or setoff, arising from the settlement and resolution of the Survivor Claims.

### Article 16.
### Bankruptcy Rule 9019 Request.

Pursuant to Rule 9019 of the Bankruptcy Rules, the Plan Proponents request approval of all compromises and settlements included in, or otherwise integral to, this Plan.

81

## Article 17.
## Confirmation Request.

The Plan Proponents request confirmation of the Plan under sections 1129 and 1191 of the Bankruptcy Code, as applicable, with respect to any Impaired Class that does not accept the Plan or is deemed to reject the Plan.

## Article 18.
## Recommendation and Conclusion.

The Plan Proponents believe the Plan is in the best interests of all Creditors and the Estate and urge the Creditors to accept the Plan and to evidence such acceptance by properly voting and timely returning their respective ballots.

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND**

In re:

ROMAN CATHOLIC ARCHBISHOP OF
BALTIMORE,

Debtor.[1]

Chapter 11

Case No. 23-16969-MMH

**EXHIBITS TO THIRD AMENDED CHAPTER 11 PLAN
OF REORGANIZATION FOR THE ROMAN CATHOLIC
ARCHBISHOP OF BALTIMORE, A CORPORATION SOLE**

      **Plan Exhibits.** All Exhibits to the *Third Amended Chapter 11 Plan of Reorganization for the Roman Catholic Archbishop of Baltimore, a Corporation Sole* (Dkt. No. [__]) (the "***Plan***")[2] and any other Plan Documents are incorporated by reference and made part of the Plan as if set forth fully at length in the Plan. The Exhibits to the Plan include the following:

- Exhibit A—Parishes, Schools, and Other Archdiocesan-Related Entities
- Exhibit B—Settling Insurers
- Exhibit C—Assumed Agreements
- Exhibit D—Outbound Contribution Claims
- Exhibit E—Insurance Trust Agreement
- Exhibit F—Survivor Compensation Trust Agreement
- Exhibit G—Survivor Compensation Trust Distribution Plan
- Exhibit H—Survivor Claimant Release
- Exhibit I—Litigation Claimant Agreement
- Exhibit J—Child Protection Policies and Procedures

HOLLAND & KNIGHT LLP

Blake D. Roth (admitted *pro hac vice*)
Scott Kunde (admitted *pro hac vice*)
Symphony Place
150 Third Avenue South, Ste. 2800
Nashville, TN 37201
Telephone:  (615) 244-6380
Facsimile:  (615) 244-6804
Email:  blake.roth@hklaw.com
      scott.kunde@hklaw.com

YVS LAW, LLC

Catherine K. Hopkin (Fed. Bar No. 28257)
185 Admiral Cochrane Drive, Suite 130
Annapolis, MD 21401
Telephone:  (443) 569-0788
Facsimile:  (410) 571-2798
Email:  chopkin@yvslaw.com

---

[1] The last four digits of the Debtor's federal tax identification number are 1535. The Debtor's principal place of business is located at 320 Cathedral Street, Baltimore, Maryland 21201.

[2] Capitalized terms used and not otherwise defined in this notice or the attached exhibits shall have the meanings ascribed to them in the Plan.

HOLLAND & KNIGHT LLP

Philip T. Evans (Fed. Bar No. 11796)
800 17th Street, NW, Suite 1100
Washington, DC 20006
Telephone:  202.457.7043
Email: philip.evans@hklaw.com

*Counsel for the Debtor and Debtor in Possession*

Dated: July 27, 2026

**EXHIBIT A**
**PARISHES, SCHOOLS, AND OTHER ARCHDIOCESAN-RELATED ENTITIES**

## I.  Parishes.

### A.  Parish Corporations.

1. St. Francis de Sales, Abingdon, Roman Catholic Congregation
2. St. Joan of Arc Roman Catholic Congregation, Inc.
3. St. Andrew by the Bay Roman Catholic Congregation, Inc.
4. St. Mary's Annapolis Roman Catholic Congregation, Inc.
5. At. Alphonsus' Roman Catholic Congregation, Inc.
6. Corpus Christi Roman Catholic Congregation, Inc.
7. Church of the Immaculate Conception Roman Catholic Congregation, Inc.
8. St. Peter Claver's Roman Catholic Congregation, Inc.
9. St. Gregory the Great, Roman Catholic Congregation, Inc.
10. St. Pius V Roman Catholic Congregation, Inc.
11. St. Veronica's Roman Catholic Congregation, Inc.
12. Transfiguration Roman Catholic Congregation, Inc.
13. St. Benedict Roman Catholic Congregation, Inc.
14. St. Joseph's Passionist Monastery Parish Roman Catholic Congregation, Inc.
15. St. William of York Roman Catholic Congregation, Inc.
16. Saint Bernardine's Roman Catholic Congregation, Inc.
17. Saint Edward's Roman Catholic Congregation, Inc.
18. Saint Cecilia's Roman Catholic Congregation, Inc.
19. All Saints Roman Catholic Congregation, Inc.
20. St. Ambrose Roman Catholic Congregation, Inc.
21. St. Thomas Aquinas Roman Catholic Congregation, Inc.
22. The Shrine of The Sacred Heart Roman Catholic Congregation, Inc.
23. The Cathedral of Mary Our Queen Roman Catholic Congregation, Inc.
24. St. Philip and James' Roman Catholic Congregation, Inc.
25. Blessed Sacrament Roman Catholic Congregation, Inc.
26. St. Mary's Roman Catholic Congregation, Inc.
27. St. Matthew's Roman Catholic Congregation, Inc.
28. St. Thomas More Roman Catholic Congregation, Inc.
29. Stain Dominic's Roman Catholic Congregation, Inc.
30. St. Francis of Assisi Roman Catholic Congregation, Inc.
31. The Shrine of the Little Flower Roman Catholic Congregation, Inc.
32. Saint Anthony of Padua Roman Catholic Congregation, Inc.
33. The Most Precious Blood Roman Catholic Congregation, Inc.
34. Our Lady of Fatima Roman Catholic Congregation, Inc.
35. Our Lady of Pompei Roman Catholic Congregation, Inc.
36. Sacred Heart of Jesus Roman Catholic Congregation, Inc.
37. Saint Athanasius' Roman Catholic Congregation, Inc.
38. St. Rose of Lima Roman Catholic Congregation, Inc.
39. Catholic Community of South Baltimore Roman Catholic Congregation, Inc.
40. St. Vincent de Paul Roman Catholic Congregation, Inc.

41. St. Leo's Roman Catholic Congregation, Inc.
42. St. Patrick's Roman Catholic Congregation, Inc.
43. Holy Rosary Roman Catholic Congregation, Inc.
44. Saint Casimir's Roman Catholic Congregation, Inc.
45. St. Wenceslaus' Roman Catholic Congregation, Inc.
46. St. Francis Xavier's Roman Catholic Congregation, Inc.
47. St. Ignatius, Roman Catholic Congregation, Inc.
48. Saint Ann's Roman Catholic Congregation, Inc.
49. Our Lady of Victory Roman Catholic Congregation, Inc.
50. St. Mark's Roman Catholic Congregation, Inc.
51. St. Agnes Roman Catholic Congregation, Inc.
52. St. Gabriel Roman Catholic Congregation, Inc.
53. Holy Korean Martyrs Roman Catholic Congregation, Inc.
54. St. Pius X Roman Catholic Congregation, Inc.
55. Immaculate Heart of Mary, Baynesville, Roman Catholic Congregation, Inc.
56. Saint Isaac Jogues Roman Catholic Congregation, Inc.
57. St. Ursula's Roman Catholic Congregation, Inc.
58. St. Michael the Archangel, Overlea, Roman Catholic Congregation, Inc.
59. St. Joseph's Fullerton, Roman Catholic Congregation, Inc.
60. Church of the Annunciation Roman Catholic Congregation, Inc.
61. St. Clement's Roman Catholic Congregation, Inc.
62. Our Lady of Mt. Carmel Roman Catholic Congregation, Inc.
63. St. Clare's Roman Catholic Congregation, Inc.
64. Sacred Heart of Mary Roman Catholic Congregation, Inc.
65. Our Lady of Hope Roman Catholic Congregation, Inc.
66. St. Rita's Roman Catholic Congregation, Inc.
67. Our Lady of LaVang Roman Catholic Congregation, Inc.
68. Trustees of the Catholic Cathedral Church of Baltimore
69. St. Margaret's Roman Catholic Congregation, Inc.
70. St. James', Boonsboro, Roman Catholic Congregation, Inc.
71. Our Lady of the Angels Catholic Community, Inc.
72. St. Louis' Roman Catholic Congregation, Inc.
73. St. Joseph's, Texas, Roman Catholic Congregation, Inc.
74. St. John the Evangelist, Columbia, Roman Catholic Congregation, inc.
75. St. Elizabeth Ann Seton Roman Catholic Congregation, Inc.
76. Our Lady of the Mountains Roman Catholic Congregation, Inc.
77. Holy Family, Davidsonville, Roman Catholic Congregation, Inc.
78. St. Luke's Roman Catholic Congregation, Inc.
79. Our Lady of Perpetual Help, Edgewater Roman Catholic Congregation, Inc.
80. Prince of Peace Roman Catholic Congregation, Inc.
81. Catholic Community of Ascension and St. Augustine Roman Catholic Congregation, Inc.
82. Church of the Resurrection Roman Catholic Congregation, Inc.
83. St. Paul the Apostle Roman Catholic Congregation, Inc.
84. Our Lady of Perpetual Help Roman Catholic Congregation, Inc.
85. St. Anthony's Shrine, Emmitsburg, Roman Catholic Congregation, Inc.
86. St. Joseph's Roman Catholic Congregation, Inc.

87. St. Mark's Fallston, Roman Catholic Congregation, Inc.
88. St. Ignatius', Hickory, Roman Catholic Congregation, Inc.
89. St. Joseph's-on-Carrollton Manor Roman Catholic Congregation, Inc.
90. St. John the Evangelist's, Frederick, Roman Catholic Congregation, Inc.
91. St. Katharine Drexel Roman Catholic Congregation, Inc.
92. Divine Mercy Roman Catholic Congregation, Inc.
93. St. Francis of Assisi, Howard County, Roman Catholic Congregation, Inc.
94. Christ the King, Glen Burnie, Roman Catholic Congregation, Inc.
95. Sacred Heart Roman Catholic Congregation, Inc.
96. St. Michael's, Clear Spring, Roman Catholic Congregation, Inc.
97. St. Joseph's, Half-Way, Roman Catholic Congregation, Inc.
98. St. Mary's, Hagerstown, Roman Catholic Congregation, Inc.
99. St. Ann, Hagerstown, Roman Catholic Congregation, Inc.
100. St. Patrick's, Little Orleans, Roman Catholic Congregation, Inc.
101. St. Peter's Hancock, Roman Catholic Congregation, Inc.
102. St. Lawrence's, Jessup, Roman Catholic Congregation, Inc.
103. St. Patrick's, Havre de Grace, Roman Catholic Congregation, Inc.
104. The Catholic Community of St. Francis Xavier Roman Catholic Congregation, Inc.
105. St. John the Evangelist's, Long Green Valley, Roman Catholic Congregation, Inc.
106. St. Ignatius Loyola, Urbana Roman Catholic Congregation, Inc.
107. Church of the Holy Spirit Roman Catholic Congregation, Inc.
108. St. Stephen's Roman Catholic Congregation, Inc.
109. St. Clement's, Lansdowne, Roman Catholic Congregation, Inc.
110. The Resurrection of Our Lord, Roman Catholic Congregation, Inc.
111. Saint Philip Neri Roman Catholic Congregation, Inc.
112. St. Bartholomew's, Manchester, Roman Catholic Congregation, Inc.
113. Our Lady, Queen of Peace, Middle River, Roman Catholic Congregation, Inc.
114. Holy Family Catholic Community of Middletown, Roman Catholic Congregation, Inc.
115. Our Lady of the Fields, Millersville, Roman Catholic Congregation, Inc.
116. St. Michael's Poplar Springs, Roman Catholic Congregation, Inc.
117. Church of St. Peter the Apostle, Oakland Roman Catholic Congregation, Inc.
118. St. Joseph's, Odenton, Roman Catholic Congregation, Inc.
119. Our Lady of Grace Roman Catholic Congregation, Inc.
120. St. Jane Frances de Chantal, Riviera Beach, Roman Catholic Congregation, Inc.
121. Our Lady of the Chesapeake Roman Catholic Congregation, Inc.
122. St. Charles Borromeo's Roman Catholic Congregation, Inc.
123. St. Mary's Pylesville, Roman Catholic Congregation, Inc.
124. Holy Family Roman Catholic Congregation, Inc.
125. St. Bernadette Roman Catholic Congregation, Inc.
126. St. John the Evangelist, Severna Park, Roman Catholic Congregation, Inc.
127. St. Joseph's, Sykesville, Roman Catholic Congregation, Inc.
128. St. Joseph's, Taneytown, Roman Catholic Congregation, Inc.
129. Our Lady of Mt. Carmel, Thurmont, Roman Catholic Congregation, Inc.
130. Church of the Nativity of Our Lord Jesus Christ Roman Catholic Congregation, Inc.
131. Church of the Immaculate Conception, Towson, Roman Catholic Congregation, Inc.
132. St. Peter's Libertytown, Roman Catholic Congregation, Inc.

133. St. Timothy Roman Catholic Congregation, Inc.
134. Our Lady of Sorrows' Roman Catholic Congregation, Inc.
135. St. John's Westminster, Roman Catholic Congregation, Inc.
136. St. Augustine's Williamsport, Roman Catholic Congregation, Inc.
137. St. Alphonsus Rodriguez, Woodstock, Roman Catholic Congregation, Inc.

**B. Parish Names.**

**Allegany County:**
1. Divine Mercy Parish (Frostburg)
2. Our Lady of the Mountains (Cumberland), including:
   a. St. Patrick Church (Cumberland)
   b. St. Patrick Church (Mt. Savage)
   c. St. Mary of the Immaculate Conception (Cumberland)
   d. The Shrine of Saints Peter and Paul (Cumberland)
3. St. Patrick (Little Orleans)

**Anne Arundel County:**
4. Christ the King (Glen Burnie), including:
   a. Church of the Crucifixion
   b. Church of the Good Shepherd
   c. Holy Trinity Catholic Church
5. Holy Family (Davidsonville)
6. Our Lady of Perpetual Help (Edgewater)
7. Our Lady of Sorrows (West River)
8. Our Lady of the Chesapeake (Pasadena)
9. Our Lady of the Fields (Millersville)
10. Resurrection of Our Lord (Laurel)
11. St. Andrew by the Bay (Annapolis)
12. St. Bernadette (Severn)
13. St. Elizabeth Ann Seton (Crofton)
14. St. Jane Frances de Chantal (Pasadena)
15. St. John Neumann (Annapolis)
16. St. John the Evangelist (Severna Park)
17. St. Joseph (Odenton)
18. St. Lawrence Martyr (Hanover)
19. St. Mary (Annapolis)
20. St. Philip Neri (Linthicum Heights)

**Baltimore City:**
21. Basilica of the Assumption
22. Blessed Sacrament
23. Cathedral of Mary Our Queen
24. Church of the Immaculate Conception (Baltimore)
25. Corpus Christi
26. Catholic Community of South Baltimore, including

4

        a.       Holy Cross
        b.       Our Lady of Good Counsel
        c.       St. Mary Star of the Sea

27. Holy Rosary
28. Most Precious Blood
29. New All Saints
30. Our Lady of Fatima
31. Our Lady of Pompei
32. Sacred Heart of Jesus / Sagrado Corazón de Jesús
33. Sacred Heart of Mary (Graceland Park)
34. Shrine of the Little Flower
35. SS. Philip & James
36. St. Alphonsus
37. St. Ambrose
38. St. Ann (Baltimore)
39. St. Anthony of Padua
40. St. Athanasius
41. St. Benedict
42. St. Bernardine
43. St. Casimir Parish at Canton and Patterson Park
44. St. Cecilia
45. St. Dominic
46. St. Edward
47. St. Francis of Assisi (Baltimore)
48. St. Francis Xavier (Baltimore)
49. St. Gregory the Great
50. St. Ignatius (Baltimore)
51. St. Joseph's Passionist Monastery
52. St. Leo
53. St. Mary of the Assumption (Govans)
54. St. Matthew
55. St. Patrick (Broadway)
56. St. Peter Claver
57. St. Pius V
58. St. Rose of Lima
59. St. Thomas Aquinas
60. St. Thomas More
61. St. Veronica
62. St. Vincent de Paul
63. St. Wenceslaus
64. St. William of York
65. Transfiguration Roman Catholic Congregation

**Baltimore County:**
66. Catholic Community of St. Francis Xavier
67. Church of the Annunciation

5

68.   Church of the Immaculate Conception (Towson)
69.   Church of the Nativity (Timonium)
70.   Holy Family (Randallstown)
71.   Holy Korean Martyrs
72.   Immaculate Heart of Mary
73.   Our Lady of Grace (Parkton)
74.   Our Lady of Hope
75.   Our Lady of LaVang
76.   Our Lady of Mount Carmel (Middle River)
77.   Our Lady of the Angels (Catonsville)
78.   Our Lady of Victory
79.   Our Lady, Queen of Peace
80.   Sacred Heart (Glyndon)
81.   St. Agnes
82.   St. Alphonsus Rodriguez (Woodstock)
83.   St. Charles Borromeo
84.   St. Clare
85.   St. Clement
86.   St. Clement Mary Hofbauer
87.   St. Gabriel
88.   St. Isaac Jogues
89.   St. Joseph (Cockeysville)
90.   St. Joseph (Fullerton)
91.   St. Luke
92.   St. Mark (Catonsville)
93.   St. Michael the Archangel
94.   St. Pius X
95.   St. Rita
96.   St. Ursula

**Carroll County:**
97.   St. Bartholomew (Manchester)
98.   St. John (Westminster)
99.   St. Joseph (Sykesville–Eldersburg)
100.   St. Joseph (Taneytown)

**Frederick County:**
101.   Holy Family Catholic Community (Middletown)
102.   Our Lady of Mount Carmel (Thurmont)
103.   St. Anthony Shrine (Emmitsburg)
104.   St. Ignatius Loyola (Ijamsville)
105.   St. John the Evangelist (Frederick)
106.   St. Joseph (Emmitsburg)
107.   St. Joseph-On-Carrollton Manor (Frederick)
108.   St. Katharine Drexel (Frederick)
109.   St. Francis–St. Mary (Petersville)

6

110. St. Peter (Libertytown / Union Bridge)
111. St. Timothy (Walkersville)

**Garrett County:**
112. St. Peter at the Lake Center (McHenry)
113. St. Peter the Apostle (Oakland)

**Harford County:**
114. Church of the Holy Spirit (Joppa)
115. Prince of Peace (Edgewood)
116. St. Francis de Sales (Abingdon)
117. St. Ignatius (Hickory)
118. St. Joan of Arc (Aberdeen)
119. St. John the Evangelist (Long Green Valley / Hydes)
120. St. Margaret (Bel Air)
121. St. Mark (Fallston)
122. St. Mary Magdalen (Bel Air)
123. St. Mary of the Assumption (Pylesville)
124. St. Patrick (Havre de Grace)
125. St. Stephen (Bradshaw)

**Howard County:**
126. Catholic Community of Ascension & St. Augustine (Elkridge)
127. Church of the Resurrection (Ellicott City)
128. Our Lady of Perpetual Help (Ellicott City)
129. St. Francis of Assisi (Fulton)
130. St. John the Evangelist (Columbia)
131. St. Louis (Clarksville)
132. St. Michael (Poplar Springs–Mt. Airy)
133. St. Paul (Ellicott City)

**Washington County:**
134. St. Ann (Hagerstown)
135. St. Augustine (Williamsport)
136. St. James (Boonsboro)
137. St. Joseph (Hagerstown)
138. St. Mary (Hagerstown)
139. St. Michael (Clear Spring)
140. St. Peter (Hancock)

C.    **Missions.**

141. All Missions located within the Archdiocese of Baltimore

7

## II.   Schools.

### A.   School Corporations.

1. Cardinal Shehan School, Inc.
2. Archbishop Borders School, Inc.
3. Mother Mary Lange Catholic School, Inc.
4. Archbishop Curley High School, Inc.
5. St. Agnes Catholic School, Inc.
6. Monsignor Slade Catholic School, Inc.
7. St. John the Evangelist School, Long Green Valley, Catholic School, Inc.
8. St. Michael–St. Clement School, Inc.
9. Our Lady of Hope/St. Luke School, Inc.
10. Our Lady of Mount Carmel School, Inc.
11. St. Philip Neri School, Inc.
12. St. Ursula School, Inc.
13. School of the Incarnation, Inc.
14. Archbishop Spalding High School, Inc.
15. St. Augustine School, Inc.
16. St. John Regional Catholic School, Inc.
17. Resurrection/St. Paul School, Inc.
18. St. Maria Goretti High School, Inc.
19. Bishop Walsh School, Inc.

### B.   Schools Operated as Part of a Parish Corporation.

1. Immaculate Conception School (Towson)
2. Immaculate Heart of Mary School (Baynesville)
3. Sacred Heart School (Glyndon)
4. St. Casimir School
5. St. Francis of Assisi School
6. St. Joan of Arc School
7. St. John the Evangelist School (Severna)
8. St. John School (Westminster)
9. St. Joseph School (Fullerton)
10. St. Joseph School (Cockeysville)
11. St. Louis School (Clarksville)
12. St. Margaret School (Bel Air)
13. St. Mark School (Catonsville)
14. St. Mary's Elementary School (Annapolis)
15. St. Mary's High School (Annapolis)
16. St. Mary School (Hagerstown)
17. St. Stephen School (Bradshaw)
18. School of the Cathedral of Mary Our Queen
19. Our Lady of Perpetual Help School

### III.   Other Archdiocesan-Related Entities.

1. Archbishop of Baltimore Annual Appeal Trust
2. The Catholic Community Foundation of the Archdiocese of Baltimore, Inc.
3. Roman Catholic Foundation in the Archdiocese of Baltimore, Inc.
4. John Carroll Foundation of the Roman Catholic Archdiocese of Baltimore, Inc.
5. Associated Catholic Charities Inc.
6. Inter Parish Loan Fund, Inc.
7. Maryland Catholic Conference, LLC
8. Route 175 East, LLC
9. Catholic Community School Land, Inc.
10. Mercy Ridge, Inc. Joint Venture
11. The New Cathedral Cemetery Company
12. Catholic Review Media
13. Archdiocesan General Insurance Program
14. Archdiocesan General Insurance Program Trust
15. Archdiocesan Sexual Misconduct Self-Insurance Program
16. Archdiocesan Sexual Misconduct Self-Insurance Program Trust
17. Archdiocesan Health Benefits Program
18. Archdiocesan Health Benefits Program Trust
19. Postretirement Health and Auto Plan for Priests of the Archdiocese of Baltimore
20. Retirement Plan of Lay Employees of the Archdiocese of Baltimore
21. Lay Employees Retiree Medical Plan
22. Villa Maria, Incorporated
23. Irvington My Brother's Keeper, Inc.

9

**EXHIBIT B**
**SETTLING INSURERS**

Hartford Accident and Indemnity Company
Hartford Casualty Insurance Company
Hartford Fire Insurance Company
Twin City Fire Insurance Company
Lexington Insurance Company
National Union Fire Insurance Company of Pittsburgh, P.A.
New Hampshire Insurance Company
Employers Insurance Company of Wausau
Archdiocesan Sexual Misconduct Self-Insurance Program
Picasso Insurance, LLC

**EXHIBIT C**
**ASSUMED AGREEMENTS**

[To be included in Plan Supplement].

**EXHIBIT D**
**OUTBOUND CONTRIBUTION CLAIMS**

[To be included in Plan Supplement].

**EXHIBIT E**
**INSURANCE TRUST AGREEMENT**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| In re: | Chapter 11 |
| ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE, | Case No. 23-16969-MMH |
| Debtor.[1] | |

**ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE**
**INSURANCE TRUST AGREEMENT**

Pursuant to the *Third Amended Chapter 11 Plan of Reorganization for the Roman Catholic Archbishop of Baltimore, a Corporation Sole* (Dkt. No. [_]) (together with any and all amendments, supplements, exhibits, and schedules, the "***Plan***")[2] filed and confirmed in the above-captioned bankruptcy case (the "***Chapter 11 Case***"), this insurance trust agreement (the "***Insurance Trust Agreement***") is entered by and between the Roman Catholic Archbishop of Baltimore (the "***RCAB***"), Related Non-Debtor Entities, and [_] (the "***Insurance Trustee***").

**RECITALS**

A.      On September 29, 2023 (the "***Petition Date***"), the RCAB caused to be filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"), commencing the Chapter 11 Case in the Bankruptcy Court.

B.      The RCAB has sought and obtained entry of the Confirmation Order, confirming the Plan.

C.      The Plan contemplates the creation and existence of, among other things, the Insurance Trust and the transfer and assignment to the Insurance Trust of the Insurance Trust Assets.

D.      Pursuant to the Plan, the Insurance Trust is to assume all liability for and rights concerning: (a) all Channeled Claims, including the rights to settle Channeled Claims, solely to the extent such Channeled Claims relate to Insurance Claims against Non-Settling Insurers or Non-Settling Insurer Policies; (b) all Non-Settling Insurer Policies assumed, assigned, or otherwise transferred pursuant to Article 5 of the Plan; and (c) all Insurance Claims relating to Survivor Claims solely to the extent related to Non-Settling Insurers or Non-Settling Insurer Policies.

E.      The Insurance Trust is established to pursue Insurance Claims against Non-Settling Insurers and is intended to qualify as a "Designated" or "Qualified Settlement Fund" within the

---

[1] The last four digits of the Debtor's federal tax identification number are 1535. The Debtor's principal place of business is located at 320 Cathedral Street, Baltimore, Maryland 21201.

[2] Capitalized terms used in this Survivor Compensation Trust Agreement and not otherwise defined shall have the meanings ascribed to them in the Plan.

meaning of Section 468B of the Internal Revenue Code and Treasury Regulations Sections 1.468B-1 to 1.468B-5, and electing to be treated as a "grantor trust" with respect to RCAB and Related Non-Debtor Entities under the Internal Revenue Code and Treasury Regulations.

NOW, THEREFORE, pursuant to and in accordance with the Plan and Confirmation Order, in consideration of the premises and provisions in the Plan, and other good and valuable consideration the receipt and sufficiency of which is expressly acknowledged and affirmed, it is agreed as follows:

## Article 1.
## Declaration of Trust.

Subject to the occurrence of the Effective Date of the Plan, the RCAB and each Related Non-Debtor Entity absolutely assigns to the Insurance Trustee and its successors and assigns all rights, title, and interest of the RCAB and each Related Non-Debtor Entity in and to the Insurance Trust Assets;

TO HAVE AND TO HOLD unto the Insurance Trustee and its successors and assigns forever;

IN TRUST NEVERTHELESS upon the terms and subject to the conditions set forth in this Insurance Trust Agreement and for the benefit of the Beneficiaries (as defined below) as and to the extent provided in the Plan, and for the performance of, and compliance with, the terms of this Insurance Trust Agreement, the Plan, and Confirmation Order;

PROVIDED, HOWEVER, that upon termination of the Insurance Trust in accordance with Article 6 of this Insurance Trust Agreement, this Insurance Trust Agreement shall cease, terminate, and be of no further force and effect; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED that the Insurance Trust Assets are to be held and applied by the Insurance Trustee upon the further covenants and terms and subject to the conditions set forth in this Insurance Trust Agreement.

## Article 2.
## Agreement of Trust.

### 2.1    Creation and Name.

The RCAB and Related Non-Debtor Entities create this trust, which shall be known as the "Roman Catholic Archbishop of Baltimore and Related Entities Insurance Trust," which is the Insurance Trust set forth in the Plan. In the event of any inconsistency between the Plan and this Insurance Trust Agreement, the terms of the Plan shall govern.

### 2.2    Purpose.

The Insurance Trust's purpose is to assume responsibility for preserving, managing, and distributing the Insurance Trust Assets in accordance with this Insurance Trust Agreement and the requirements of the Plan and Confirmation Order, including: (a) assuming all liability for

Channeled Claims to the extent such Channeled Claims relate to Insurance Claims against Non-Settling Insurers; (b) pursuing Insurance Claims against Non-Settling Insurers; and (c) managing and distributing recoveries from Non-Settling Insurers in accordance with the Plan.

**2.3     Transfer of Insurance Trust Assets.**

Upon the occurrence of the Effective Date of the Plan, the RCAB and each Related Non-Debtor Entity shall irrevocably transfer, absolutely grant, assign, convey, set over, and deliver to the Insurance Trust all of the RCAB's rights, titles, and interest in and to the Insurance Trust Assets to be held in trust and for the uses and purposes stated in this Insurance Trust Agreement, the Plan, and Confirmation Order. The Insurance Trustee is expressly authorized to file with the proper governmental authorities any and all documents necessary or helpful to establish the Insurance Trust.

**2.4     Transfer of Confidential Information.**

Pursuant to and in accordance with the *Order (I) Establishing Deadlines for Filing Proofs of claim; (II) Approving Sexual Abuse Claim Supplement; (III) Approving Form and Manner of Notice; and (IV) Approving Confidentiality Procedures* (Dkt. No. 316), the Insurance Trustee shall maintain the confidentiality of all documents and information provided in connection with Survivor Claims and Insurance Claims, including but not limited to: (i) personal identifying information; (ii) details of alleged Abuse; (iii) medical and psychological records; (iv) treatment records; (v) litigation strategy; and (vi) any other similar sensitive information.

**2.5     Irrevocability.**

The Insurance Trust shall be irrevocable, and the RCAB and Related Non-Debtor Entities shall not alter, amend, revoke, or terminate the Insurance Trust. The RCAB and Related Non-Debtor Entities shall have no power or authority to direct the Insurance Trustee to return any of the Insurance Trust Assets to the RCAB or any Related Non-Debtor Entity. Nothing in this Insurance Trust Agreement shall diminish the Insurance Trust's obligation to pay the Post-Effective Date Costs or other similar amounts pursuant to and in accordance with the Plan and Confirmation Order.

**2.6     Beneficiaries.**

The beneficiaries of the Insurance Trust (the "***Beneficiaries***") are the Survivor Compensation Trust and, indirectly, Survivor Claimants whose Survivor Claims relate to Insurance Claims against Non-Settling Insurers.

**2.7     Acceptance of Assets and Assumption of Liabilities.**

In furtherance of the purposes of the Insurance Trust, the Insurance Trustee: (i) expressly accepts the role of trustee of the Insurance Trust and the grant, assignment, transfer, conveyance, and delivery of the Insurance Trust Assets to the Insurance Trust, subject to the terms and conditions set forth in this Insurance Trust Agreement, the Plan, and the Confirmation Order; (ii) expressly assumes all responsibility for preserving, managing, and pursuing Insurance Claims against Non-Settling Insurers; and (iii) assumes responsibility for (a) establishing and maintaining

the Post-Effective Date Costs Reserve, (b) paying Post-Effective Date Costs, (c) receiving, collecting, liquidating, maintaining, and distributing recoveries from Insurance Claims, and (d) fulfilling all other duties and obligations of the Insurance Trust under this Insurance Trust Agreement and the Plan and Confirmation Order.

The Insurance Trustee shall have all of the rights, powers, and duties set forth in this Insurance Trust Agreement, the Plan, the Confirmation Order, and otherwise provided under applicable law, for accomplishing the purposes of the Insurance Trust. The Insurance Trustee's powers are exercisable solely in a fiduciary capacity consistent with and in furtherance of the applicable provisions of the Plan, the purposes of the Insurance Trust, and applicable law. The Insurance Trustee shall have the authority to bind the Insurance Trust within the limitations set forth in this Insurance Trust Agreement, but shall be acting in the capacity as Insurance Trustee and not individually, for all purposes contained in this Insurance Trust Agreement.

The Insurance Trust shall be administered consistent with the purposes of the Insurance Trust and with no object to continue or to engage in the conduct of a trade or business, except to the extent reasonably necessary to preserve the value of the Insurance Trust Assets or as otherwise provided in the Plan or Confirmation Order. All Insurance Trust expenses and liabilities shall be payable solely by the Insurance Trustee out of the Insurance Trust Assets.

## Article 3.
## Corpus of the Insurance Trust.

### 3.1    Insurance Trust Composition.

The Insurance Trust Assets shall include all property transferred to the Insurance Trust pursuant to and in accordance with the Plan, Confirmation Order, and any future orders of the Bankruptcy Court, including without limitation: (i) cash contributions from the Survivor Compensation Trust in the initial amount of $12,000,000; (ii) all Non-Settling Insurer Policies assumed and assigned pursuant to Section 5.3.1 of the Plan; (iii) all Insurance Claims transferred pursuant to Section 5.3.2 of the Plan; (iv) all investment income earned by the Insurance Trust; and (v) any recoveries from Non-Settling Insurers.

### 3.2    Transfer to the Insurance Trust.

Upon the Effective Date of the Plan, pursuant to and in accordance with the Plan and Confirmation Order, title to and all rights and interests in the Insurance Trust Assets shall be transferred or otherwise assigned to the Insurance Trust free and clear of all Liens, claims, encumbrances, or interests of any kind in the Insurance Trust Assets of any other Person (including all Liens, claims, encumbrances, or interests of creditors of, or holders of claims against or interests in the RCAB), in accordance with sections 1123, 1141, and 1146(a) of the Bankruptcy Code, except as otherwise provided for in the Plan.

### 3.3    Insurance Trustee's Right, Title, and Interest in the Insurance Trust Assets.

Upon the transfer of the Insurance Trust Assets, the Insurance Trust succeeds to all of the RCAB's, Estate's, and Related Non-Debtor Entities' right to and title and interest in the Insurance Trust Assets, and the RCAB, Estate, and Related Non-Debtor Entities shall have no further right

to or title or interest in or with respect to the Insurance Trust Assets or this Insurance Trust, except as provided in this Insurance Trust Agreement, the Plan, or the Confirmation Order.

**3.4** **No Tax on Transfers to the Insurance Trust.**

Pursuant to section 1146(a) of the Bankruptcy Code, the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Insurance Trust, including any deeds, bills of sale, or assignments executed in connection with any transfer to the Insurance Trust or receipt, disposition, or sale of assets by the Insurance Trust contemplated by the Plan, shall not be subject to any stamp tax, real estate transfer tax, excise tax, sales tax, use tax, or similar tax.

**3.5** **Spendthrift Provision.**

To the fullest extent permitted by law, neither the principal nor income of the Insurance Trust, in whole or in part, shall be subject to (i) any legal or equitable claims of creditors of any Beneficiary or others, (ii) legal process, or (iii) voluntary or involuntary transfer, assignment, anticipation, pledge, or other form of alienation or encumbrance except as may be ordered by the Bankruptcy Court.

**3.6** **Insurance Trust Corpus.**

The entirety of the Insurance Trust's corpus shall be available to pursue Insurance Claims and pay authorized expenses. The Insurance Trust's corpus shall be allocated, administered, and distributed as provided in the Plan and the Confirmation Order.

**3.7** **Post-Effective Date Costs Reserve.**

The Insurance Trustee shall establish and maintain the Post-Effective Date Costs Reserve as required by Section 5.10.4 of the Plan, which shall be funded in an initial amount of not less than $12,000,000 from the contributions to the Survivor Compensation Trust under the Plan.

**Article 4.**
**Powers and Duties of the Insurance Trustee.**

**4.1** **Insurance Trustee's Bond.**

The Insurance Trustee shall not be required to post any bond, surety, or other security for the performance of the Insurance Trustee's duties, unless otherwise ordered by the Bankruptcy Court, and, in the event the Insurance Trustee is so otherwise ordered, all reasonable costs and expenses of procuring any bond or surety shall be borne by the Insurance Trust and paid for from the Insurance Trust Assets.

**4.2** **Insurance Trustee's Powers and Duties.**

The Insurance Trustee shall have, in addition to any other powers and duties conferred on the Insurance Trustee by applicable trust law (to the extent not inconsistent with applicable

bankruptcy law, the Plan, and the Confirmation Order), the Plan, and the other provisions in this Insurance Trust Agreement, the following powers and duties:

(i)  to act as custodian of, and to receive, control, manage, liquidate, monetize, and dispose of, all Insurance Trust Assets for the purposes of the Insurance Trust as the Insurance Trustee deems appropriate to accomplish the purpose of the Insurance Trust, in accordance with the terms contained in this Insurance Trust Agreement, the Plan, and the Confirmation Order;

(ii)  to assume and pursue all Insurance Claims against Non-Settling Insurers, including the right to commence, prosecute, settle, compromise, or dismiss any Action relating to Insurance Claims;

(iii)  to act in the name of any Co-Insured Entity to enforce any right, title, or interest in the Non-Settling Insurer Policies or Insurance Claims;

(iv)  to establish and maintain the Post-Effective Date Costs Reserve and pay Post-Effective Date Costs in accordance with Section 5.10.4 of the Plan;

(v)  to protect and enforce the rights in and to the Insurance Trust Assets by any method deemed appropriate, including without limitation by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

(vi)  to enter into contracts in the course of administering the Insurance Trust Assets and pursuing Insurance Claims;

(vii)  to open and maintain bank accounts on behalf of the Insurance Trust, deposit funds in the bank accounts, and draw checks on the bank accounts, as appropriate under this Insurance Trust Agreement, the Plan, and the Confirmation Order;

(viii)  to obtain all reasonably necessary insurance coverage with respect to any property that is, or may in the future become, an Insurance Trust Asset;

(ix)  to retain any attorney-at-law, consultant, expert, accountant, investment advisor, bankruptcy management company or such other agents and advisors as are necessary and appropriate to effectuate the purpose of, and maintain and administer, the Insurance Trust and shall be entitled to rely on advice given by such advisors within his, her, or its areas of competence;

(x)  to incur on behalf of the Insurance Trust, and pay from the assets of the Insurance Trust, all fees, costs, and expenses of administering the Insurance Trust as provided in this Insurance Trust Agreement and the Plan, including: (i) the fees of bankruptcy claims or distribution agents; (ii) the fees and costs of professionals employed by the Insurance Trustee, including without limitation investment advisors, accountants, agents, managers, attorneys-at-law, actuaries, or auditors; (iii) the premiums charged by insurers, including without limitation professional liability insurers; (iv) Post-Effective Date Costs as provided in the Plan;

(xi)     to coordinate with the Survivor Compensation Trust and Survivor Compensation Trustee regarding Litigation Claims and the pursuit of Insurance Claims;

(xii)    to distribute recoveries from Insurance Claims to the Survivor Compensation Trust in accordance with the Plan;

(xiii)   in the Insurance Trustee's discretion, as a party in interest, to seek enforcement of any provision of the Plan pertaining to the Insurance Trust;

(xiv)    to comply with all Post-Effective Date Insurance Obligations to the extent required under the Non-Settling Insurer Policies and applicable law;

(xv)     to make, sign, execute, acknowledge, and deliver any documents that may be necessary or appropriate to effectuate the purpose of the Plan or the Insurance Trust or to maintain and administer the Insurance Trust;

(xvi)    to seek the examination of any Person under, and subject to, the provisions of the Bankruptcy Rules, including without limitation Rule 2004 of the Bankruptcy Rules;

(xvii)   to amend, modify, or alter the Insurance Trust Agreement by filing a motion with the Bankruptcy Court, with notice to the Survivor Compensation Trustee, the Reorganized Debtor, Related Non-Debtor Entities, and any or all other parties in interest; provided, however, the amendments, modifications, or alterations may not be inconsistent with the terms of the Plan, the terms of the Confirmation Order, or the purpose of the Insurance Trust, as identified in Section 2.2 of this Insurance Trust Agreement;

(xviii)  upon any event terminating the Insurance Trust, to defer distribution of Insurance Trust Assets for a reasonable time needed to wind up the affairs of the Insurance Trust, including time needed to provide for payment of debts and expenses;

(xix)    to comply with section 345 of the Bankruptcy Code with regard to the investment of the Insurance Trust Assets; provided, however, the Insurance Trustee is relieved of any obligation to diversify, regardless of whether such obligation would otherwise come from the Bankruptcy Code or any other applicable state or federal law;

(xx)     to establish the accounts, funds, and reserves, as required by the Plan, for ease of administration; provided, however, nothing in this provision shall restrict the Insurance Trustee's authority to pool the accounts, funds, or reserves for investment purposes or require separate bank accounts for the accounts, funds, or reserves;

(xxi)    to provide quarterly statements to the Co-Insured Entities regarding the balance of the Post-Effective Date Costs Reserve;

(xxii)   to be responsible for only the Insurance Trust Assets delivered to the Insurance Trust and have no duty to make, nor incur any liability for failing to make, any search for unknown property or liabilities; and

(xxiii)  to cause the Insurance Trust to assume all duties, obligations, and responsibilities outlined in the Plan relating to Insurance Claims.

**4.3**     **Limitations on the Insurance Trustee.**

Notwithstanding anything in this Insurance Trust Agreement to the contrary, the Insurance Trustee shall not do or undertake any of the following: (i) guaranty any debt other than as provided for in this Insurance Trust Agreement or as required by the Plan; (ii) loan Insurance Trust Assets (other than investments in cash and cash equivalents); (iii) make any transfer or distribution of Insurance Trust Assets other than those authorized in this Insurance Trust Agreement, the Plan, or the Confirmation Order; (iv) engage in any trade or business; or (v) engage in any investments or activities inconsistent with the treatment of the Insurance Trust as a "Designated" or "Qualified Settlement Trust."

**Article 5.**
**Insurance Provisions.**

**5.1**     **Insurance Neutrality.**

The Insurance Trustee acknowledges and agrees that nothing in this Insurance Trust Agreement, the Plan Documents, any Confirmation Order, or any judgment, order, finding of fact, conclusion of law, determination, or statement made by the Bankruptcy Court shall in any Action against a Non-Settling Insurer have the effects set forth in Section 5.10.1 of the Plan.

**5.2**     **Pursuit of Insurance Claims.**

The Insurance Trustee shall pursue Insurance Claims against Non-Settling Insurers in accordance with Section 5.9 of the Plan and the rights and obligations transferred to the Insurance Trust pursuant to the Plan.

**5.3**     **Cooperation With Co-Insured Entities.**

To the extent a Co-Insured Entity retains Insurance Claims pursuant to Section 5.4 of the Plan, the Insurance Trustee shall cooperate with and pay all attorney's fees, expert fees, and other costs and expenses incurred by the applicable Co-Insured Entity in prosecuting such Insurance Claims.

**Article 6.**
**Termination of the Insurance Trust.**

**6.1**     **Post-Confirmation Termination.**

The Insurance Trustee shall terminate the Insurance Trust after (a) the Insurance Trustee's liquidation, administration, and distribution of the Insurance Trust Assets in accordance with this Trust Agreement and the Plan and (b) the Insurance Trustee's full performance of all other duties and functions set forth in this Trust Agreement and the Plan (the "Post-Confirmation Termination"). The Insurance Trust shall terminate on the fifth (5th) anniversary of the Effective

Date, provided, however, that Insurance Trustee may apply to the Bankruptcy Court for an extension of the Post-Confirmation Termination date.

**6.2     Post-Confirmation Termination Procedures.**

After the Post-Confirmation Termination of the Insurance Trust and solely for the purpose of liquidating and winding up its affairs, the Insurance Trustee shall continue to act as Insurance Trustee until the Insurance Trustee's duties in this Trust Agreement have been fully performed. The Insurance Trustee shall retain the books, records, documents, and files that shall have been delivered to, or created by, the Insurance Trustee until distribution of all the Insurance Trust Assets. At the Insurance Trustee's discretion, all of the books, records, documents, and files may be destroyed at the seventh anniversary of the Post-Confirmation Termination; provided that, notwithstanding the foregoing, the Insurance Trustee shall not destroy or discard any books, records, documents, or files relating to the Insurance Trust without giving the Reorganized Debtor, Additional Reorganized Debtors, and the Survivor Compensation Trustee reasonable prior written notice.

**6.3     Post-Confirmation Termination Distribution.**

Upon the Post-Confirmation Termination of the Insurance Trust, provided that all fees and expenses of the Insurance Trust have been paid or provided for in full, the Insurance Trustee will deliver all funds and other investments in the Insurance Trust, if any, including any investment earnings, to the Survivor Compensation Trust for distribution in accordance with the Survivor Compensation Trust Agreement and Survivor Compensation Trust Distribution Plan.

**6.4     Discharge, Exculpation, and Exoneration.**

Upon Post-Confirmation Termination of the Insurance Trust and accomplishment of all activities described in this Article 6, the Insurance Trustee and the Insurance Trustee's Professionals shall be discharged and exculpated from liability, and the Insurance Trustee's bond (if any), shall be exonerated except for acts or omissions resulting from the recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud of the Insurance Trustee or his designated agents or representatives. The Insurance Trustee may, at the expense of the Insurance Trust, seek an order of the Bankruptcy Court confirming the discharges, exculpations, and exoneration referenced in this section of the Insurance Trust Agreement.

**Article 7.**
**Immunity, Liability, and Indemnification of the Insurance Trustee.**

**7.1     Limitations on Liability of the Insurance Trustee.**

Neither the Insurance Trustee nor any of the Insurance Trustee's duly designated agents, representatives, or Professionals shall be liable for any act or omission taken or omitted by the Insurance Trustee in good faith, other than acts or omissions resulting from the recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud of the Insurance Trustee or the Insurance Trustee's designated agents, representatives, or Professionals. The Insurance Trustee may, in connection with the performance of the Insurance Trustee's functions, and in the Insurance Trustee's sole and absolute discretion, consult with the Insurance Trustee's

Professionals and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with the advice or opinions rendered by the Insurance Trustee's Professionals. Notwithstanding this authority, the Insurance Trustee shall be under no obligation to consult with the Insurance Trustee's Professionals, and the Insurance Trustee's good faith determination not to consult with the Insurance Trustee's Professionals shall not result in the imposition of liability on the Insurance Trustee, unless the determination is based on the Insurance Trustee's recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud.

**7.2    No Recourse Against the Insurance Trustee Personally.**

No recourse shall be had, directly or indirectly, against the Insurance Trustee personally, or against any employee, contractor, or Professional retained by the Insurance Trustee in accordance with the terms of this Trust Agreement, Plan, or Confirmation Order, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant, or trust agreement executed by the Insurance Trustee in implementation of this Trust Agreement or the Plan or by reason of the creation of any indebtedness by the Insurance Trustee under the Plan for any purposes authorized by this Trust Agreement or the Plan, it being expressly understood and agreed that any promise, contract, instrument, undertaking, obligation, covenant, or trust agreement entered into by the Insurance Trustee, whether in writing or otherwise, shall be enforceable only against, and be satisfied only out of, the Insurance Trust Assets and shall be evidence only of a right of payment out of the Insurance Trust Assets. The Insurance Trustee may be held liable for the Insurance Trustee's recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud; and if liability for these grounds is established, recourse may be had directly against the Insurance Trustee. The Insurance Trust will not be covered by a bond unless otherwise ordered by the Bankruptcy Court.

**7.3    Indemnification of the Insurance Trustee.**

The Insurance Trust, using Insurance Trust Assets, shall defend, indemnify, and hold harmless the Insurance Trustee, the Insurance Trustee's officers, directors, agents, representatives, and employees to the fullest extent that a corporation or trust organized under the laws of the State of Maryland is entitled to defend, indemnify, and hold harmless its trustees, officers, directors, agents, representatives, and employees against any and all costs (including attorneys' fees and costs), judgments, awards, amounts paid in settlement, liabilities, expenses, claims, damages, or losses incurred by them in the performance of their duties under this Trust Agreement; provided that neither the Insurance Trustee nor the Insurance Trustee's officers, directors, agents, representatives, or employees shall be defended, indemnified, or held harmless in any way for any liability, expense, claim, damage, or loss for which they are ultimately held liable under Section 7.1 or Section 7.2 of this Trust Agreement.

**7.4    Indemnification of the Protected Parties.**

Each Protected Party and Settling Insurer, and each of their respective Agents, who was or is a party, or is threatened to be made a party to any threatened or pending judicial, administrative, or arbitrative action, by reason of any act or omission of the Insurance Trust or Insurance Trustee or respective Agents, relating to (a) the pursuit or liquidation of any Insurance Claims, (b) the

administration of the Insurance Trust, or (c) any and all activities in connection with the Trust Agreement, shall be indemnified and defended by the Insurance Trust, to the fullest extent that a corporation or trust organized under the laws of Maryland is from time to time entitled to indemnify and defend its Agents against Claims.

## Article 8.
## Compensation and Reimbursement of Expenses for the Insurance Trustee and Agents.

### 8.1    Insurance Trustee Compensation.

The Insurance Trustee shall be entitled to receive reasonable compensation from the Insurance Trust Assets at an average hourly rate not to exceed $[_].

### 8.2    Compensation of the Insurance Trustee's Professionals.

Any Professional retained by the Insurance Trustee pursuant to this Insurance Trust Agreement or the Plan shall be entitled to reasonable compensation for services rendered, which may be paid by the Insurance Trustee from the Insurance Trust Assets.

### 8.3    Reimbursement of Expenses.

Any and all reasonably necessary costs and expenses incurred by the Insurance Trustee or any Professional retained by the Insurance Trustee in performing their respective duties or obligations under this Insurance Trust Agreement shall be reimbursed by the Insurance Trustee from the Insurance Trust Assets.

## Article 9.
## Successor Insurance Trustee.

### 9.1    Vacancy Caused by Insurance Trustee Resignation or Removal.

#### 9.1.1    Resignation of the Insurance Trustee.

The Insurance Trustee may resign at any time upon thirty (30) days' written notice to be filed with the Bankruptcy Court. In addition to the obligations imposed under Section 9.2 of this Insurance Trust Agreement, the outgoing trustee (the "*Outgoing Trustee*") shall, within thirty (30) days after the Outgoing Trustee's resignation takes effect, deliver to the successor trustee (the "*Successor Trustee*") all Insurance Trust Assets that were in the possession of the Outgoing Trustee, a complete schedule of Insurance Trust Assets, and an accounting of all distributions or other transactions effectuated by the Outgoing Trustee while serving as Insurance Trustee.

#### 9.1.2    Removal of the Insurance Trustee.

The Survivor Compensation Trustee or the Reorganized Debtor may petition the Bankruptcy Court to remove the Insurance Trustee. Upon such petition, the Bankruptcy Court may remove the Insurance Trustee for cause, which shall include without limitation the factors set forth in Maryland law regarding removal of fiduciaries. Any removal of an Insurance Trustee shall take effect pursuant to and in accordance with any order entered by the Bankruptcy Court regarding

such removal. In addition to the obligations imposed under <u>Section 9.2</u> of this Insurance Trust Agreement, within thirty (30) days of the effectiveness of any removal and the appointment of a Successor Trustee, the Outgoing Trustee shall deliver to the Successor Trustee all Insurance Trust Assets that were in the possession of the Outgoing Trustee, a complete schedule of Insurance Trust Assets, and an accounting of all distributions or other transactions effectuated by the Outgoing Trustee while serving as Insurance Trustee.

**9.2**     **<u>Outgoing Trustee Obligations.</u>**

Upon the resignation or removal of the Insurance Trustee, the Outgoing Trustee shall: (i) execute and deliver by the effective date of the resignation or removal the documents, instruments, records, and other writings as may be reasonably requested by the Successor Trustee to effect the resignation or removal of the Outgoing Trustee and the conveyance of the Insurance Trust Assets to the Successor Trustee; (ii) deliver to the Successor Trustee all documents, instruments, records, and other writings relating to the Insurance Trust Assets as may be in the possession or under the control of the Outgoing Trustee; and (iii) otherwise assist and cooperate in effectuating the assumption by the Successor Trustee of the duties and obligation of the Outgoing Trustee.

The Outgoing Trustee hereby irrevocably appoints the Successor Trustee (and any interim trustee) as the Outgoing Trustee's attorney in fact and agent with full power of substitution for the Outgoing Trustee and the Outgoing Trustee's name, place, and stead to do any and all act that the Outgoing Trustee is obligated to perform under this Insurance Trust Agreement. The appointment of the Successor Trustee as the Outgoing Trustee's attorney in fact and agent shall not be affected by the subsequent disability or incompetence of the Outgoing Trustee. The Bankruptcy Court may also enter any order necessary to effect the termination of the appointment of the Outgoing Trustee and the subsequent appointment of the Successor Trustee.

**9.3**     **<u>Appointment of a Successor Insurance Trustee.</u>**

In the event of any vacancy in the role of Insurance Trustee, such vacancy shall be filled by the nomination of the Survivor Compensation Trustee and the Reorganized Debtor, subject to the approval of the Bankruptcy Court, after notice and a hearing. If the Survivor Compensation Trustee and the Reorganized Debtor cannot agree on a successor within ten (10) days after the Outgoing Trustee resigns, is removed, or otherwise becomes unable to serve, the Bankruptcy Court shall appoint a successor after notice to the Survivor Compensation Trust and the Reorganized Debtor.

**9.4**     **<u>Preservation of Record of Changes in Insurance Trustees.</u>**

A copy of each instrument of resignation, removal, appointment, and acceptance of appointment shall be attached to an executed counterpart of this Insurance Trust Agreement.

**Article 10.**
**Insurance Trustee Reporting and Discharge.**

**10.1    Annual Accountings.**

The Insurance Trustee shall prepare, at least annually, a written accounting of the administration of the Insurance Trust listing the current assets with fair market values and detailing all transactions that occurred during the period covered by the accounting, including all Insurance Claims pursued, settlements reached, and distributions made. Each accounting shall be filed with the Bankruptcy Court for as long as the Chapter 11 Case remains open and pending before the Bankruptcy Court. Following the entry of the final decree in the Chapter 11 Case, copies of the accounting shall be available to the Survivor Compensation Trust, Reorganized Debtor, and Additional Reorganized Debtors upon request, or may be affirmatively provided by the Insurance Trustee if it elects to do so.

**10.2    Approval of Accountings and Discharge of the Insurance Trustee.**

At any time when the Chapter 11 Case is open, the Insurance Trustee may file with the Bankruptcy Court a motion for approval of any accounting described in Section 10.1 of this Insurance Trust Agreement. Upon the entry of an order of the Bankruptcy Court approving the accounting, the Insurance Trustee shall be discharged from all liability to the Insurance Trust, the Survivor Compensation Trust, or any Person who has or may have a claim against the Insurance Trustee or Insurance Trust for acts or omissions in the Insurance Trustee's capacity as Insurance Trustee with respect to all assets listed and transactions detailed in the accounting.

**10.3    Quarterly Reporting.**

The Insurance Trustee shall provide quarterly reports to the: (i) Survivor Compensation Trustee (regarding the status of Insurance Claims and Litigation Claims); (ii) Reorganized Debtor and Additional Reorganized Debtors; and (iii) regarding the balance of the Post-Effective Date Costs Reserve, the Co-Insured Entities.

**Article 11.**
**Section 468B Settlement Fund.**

**11.1    Qualification.**

In accordance with the Plan, the Insurance Trustee shall take all reasonable steps to ensure that the Insurance Trust will qualify as, and remain, a "Designated" or "Qualified" settlement fund within the meaning of Section 468B of the Internal Revenue Code of 1986 (as amended, the "***Tax Code***") and the regulations promulgated pursuant the Tax Code (the "***Treasury Regulations***"). The Debtor and Related Non-Debtor Entities shall be the "Transferor" within the meaning of Treasury Regulations Section 1.468B-1(d)(1). The Insurance Trustee shall be classified as the "Administrator" within the meaning of Treasury Regulations Section 1.468B-2(k)(3).

**11.2    All Events Test and Economic Performance Requirement.**

It is intended that the transfer of the Insurance Trust Assets to the Insurance Trust shall satisfy the "All Events Test" and the "Economic Performance" requirement of Section 461(h)(1) of the Tax Code and Treasury Regulations Section 1.461-1(a)(2).

**11.3    Employer Identification Number.**

Upon establishment of the Insurance Trust, the Insurance Trustee shall apply for an employer identification number for the Insurance Trust in accordance with Treasury Regulations Section 1.468B-2(k)(4).

**11.4    Relation-Back Election.**

If applicable, the Insurance Trustee, Debtor, and Related Non-Debtor Entities shall fully cooperate in filing a relation-back election under Treasury Regulations Section 1.468B-1(j)(2) to treat the Insurance Trust as coming into existence as a settlement fund as of the earliest possible date.

**11.5    Filing Requirements.**

The Insurance Trustee shall cause to be filed, on behalf of the Insurance Trust, all required federal, state, and local tax returns in accordance with the provisions of Treasury Regulations Section 1.468B-2(k)(1). The Debtor and Related Non-Debtor Entities shall file an election statement satisfying the requirements of Treasury Regulations Section 1.468B-1(k)(2)(ii) so that the Insurance Trust is treated as a grantor trust under Section 671 of the Tax Code and the Treasury Regulations. The election statement shall be included with the Insurance Trust's first timely filed trust income tax return. The Debtor and Related Non-Debtor Entities shall supply to the Insurance Trustee and to the Internal Revenue Service the statement described in Treasury Regulations Section 1.468B-3(e)(2) no later than February 15 of the year following each calendar year in which the Debtor or any Related Non-Debtor Entity makes a transfer to the Insurance Trust.

**11.6    Broad Powers of the Insurance Trustee.**

The Insurance Trustee is empowered to take all actions, including any action consistent with those expressly set forth in Article 11 of this Insurance Trust Agreement, as the Insurance Trustee deems necessary to reasonably ensure that the Insurance Trust is treated as a "Designated" or "Qualified" settlement fund under Section 468B of the Tax Code and the Treasury Regulations. Further, the Insurance Trustee may, unilaterally and without order from the Bankruptcy Court, amend, either in whole or in part, any administrative provision of this Insurance Trust Agreement that causes unanticipated tax consequences or liabilities inconsistent with Article 11 of this Insurance Trust Agreement.

## Article 12.
## Insurance Neutrality.

**12.1    Preservation of Rights.**

In accordance with <u>Section 5.10</u> of the Plan, nothing in this Insurance Trust Agreement, the Plan, the Confirmation Order, or any judgment, order, finding of fact, conclusion of law, determination or statement made by the Bankruptcy Court or any other court shall: (a) constitute an adjudication or determination of liability of any Protected Party, Settling Insurer, or Non-Settling Insurer with respect to any Survivor Claim or Insurance Claim; (b) have any res judicata, collateral estoppel, or other preclusive effect with respect to any matter relating to insurance coverage; (c) impair any Non-Settling Insurer's legal, equitable, or contractual rights under any Non-Settling Insurer Policy; or (d) impair any Non-Settling Insurer's defenses to coverage under any Non-Settling Insurer Policy.

**12.2    Cooperation With Post-Effective Date Insurance Obligations.**

The Insurance Trustee shall coordinate with and cooperate with the Co-Insured Entities in their compliance with Post-Effective Date Insurance Obligations, subject to the payment of Post-Effective Date Costs from the Post-Effective Date Costs Reserve.

## Article 13.
## Miscellaneous Provisions.

**13.1    Plan Incorporation.**

The terms of the Plan and the Confirmation Order are incorporated into this Insurance Trust Agreement. In the event of any conflict between the terms of this Insurance Trust Agreement and the Plan, the terms of the Plan shall govern.

**13.2    Notices.**

All notices or deliveries required or permitted under this Insurance Trust Agreement shall be given as directed in the Plan, to the following:

<u>If to the Insurance Trust or Insurance Trustee:</u>

[_]

<u>To the Debtor or the Reorganized Debtor:</u>

Roman Catholic Archbishop of Baltimore
Attn: Archbishop of Baltimore
320 Cathedral Street
Baltimore, Maryland 21201

*with a copy to:*

Holland & Knight LLP
Attn: Blake D. Roth
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Email: blake.roth@hklaw.com

To the Related Non-Debtor Entities:

[_]

### 13.3    Waiver.

No failure or delay of any party to exercise any right or remedy pursuant to this Insurance Trust Agreement shall affect the right or remedy or constitute a waiver by the party of any right or remedy pursuant to this Insurance Trust Agreement. Resort to one form of remedy shall not constitute a waiver of alternative remedies.

### 13.4    Reimbursement of Costs.

If the Insurance Trustee or the Insurance Trust, as the case may be, is the prevailing party in a dispute regarding the provisions of this Insurance Trust Agreement or the enforcement of a provision of this Insurance Trust Agreement, the Insurance Trustee or the Insurance Trust, as the case may be, shall be entitled to collect from the non-prevailing party any and all costs, reasonable and documented out-of-pocket expenses and fees, including attorneys' fees, incurred in connection with the dispute or enforcement action.

### 13.5    Entirety of Insurance Trust Agreement.

This Insurance Trust Agreement supersedes any and all prior oral discussions and agreements with respect to the subject matter in this Insurance Trust Agreement. This Insurance Trust Agreement, together with the Plan and Confirmation Order, contain the sole and entire Insurance Trust Agreement and understanding with respect to the matters addressed in the Insurance Trust Agreement. It is acknowledged that there are no communications or oral understandings that are contrary to, or that in any way restrict, this Insurance Trust Agreement and that all prior agreements or understandings within the scope of the subject matter of this Insurance Truste Agreement are, upon execution and delivery of this Insurance Trust Agreement, superseded, null, and void.

### 13.6    Counterparts.

This Insurance Trust Agreement may be executed in two or more counterparts, with the same effect as if all signatures on the counterparts appeared on one document, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile signatures or signatures delivered by any other electronic means shall have the same force and effect as original signatures.

**13.7    Captions.**

The captions of Articles and Sections in this Insurance Trust Agreement are included for convenience only and are to be disregarded in interpreting this Insurance Trust Agreement.

**13.8    Representation.**

It is acknowledged that each of the parties to this Insurance Trust Agreement has reviewed this Insurance Trust Agreement and has consulted counsel, or knowingly chose not to consult counsel, before executing this Insurance Trust Agreement. Each of the parties to this Insurance Trust Agreement relied upon its own judgment and that of its counsel in executing this Insurance Trust Agreement and has not relied on, or been induced by, any representation, statement, or act by any party that is not referred to in this instrument. It is specifically acknowledged and understood that this Insurance Trust Agreement has not been submitted to, nor reviewed or approved by, the United States Internal Revenue Service or the taxing authorities of any state or territory of the United States of America. Each of the parties entered into this Insurance Trust Agreement voluntarily, with full knowledge of its significance, and after the opportunity to consult counsel, and the Insurance Trust Agreement is, in all respects, complete and final.

**13.9    Interpretation.**

This Insurance Trust Agreement has been reached through negotiations between the parties to this Insurance Trust Agreement. Each of the parties to this Insurance Trust Agreement acknowledges that the party has participated in the drafting of this Insurance Trust Agreement and reviewed the terms of the Insurance Trust Agreement and, as a result, no rule of construction shall apply which might result in this Insurance Trust Agreement being construed in favor or against any of the parties, including without limitation any rule of construction to the effect that ambiguities ought to be resolved against the drafting party. The parties to this Insurance Trust Agreement have used their own judgment in entering into this Insurance Trust Agreement.

**13.10    Savings Clause.**

If any clause or provision of this Insurance Trust Agreement shall for any reason be held invalid or unenforceable by the Bankruptcy Court or any other court with competent jurisdiction, such invalidity or unenforceability shall not affect any other clause or provision in this Insurance Trust Agreement, but this Insurance Trust Agreement shall be construed, insofar as reasonable to effectuate the purpose of this Insurance Trust Agreement, as if the invalid or unenforceable provision had never been contained in the Insurance Trust Agreement.

**13.11    Applicable Law.**

To the extent not inconsistent with the Bankruptcy Code, the Insurance Trust Agreement shall be administered under, governed by, and enforced according to the laws of the State of Maryland applicable to contracts and trust agreements made and to be performed and administered in Maryland. The Insurance Trust's compliance with Section 468B of the Tax Code and any Treasury Regulations shall be governed by federal tax law and all matters of federal bankruptcy law shall be governed by the Bankruptcy Code and federal bankruptcy law.

IN WITNESS WHEREOF, the Debtor, Related Non-Debtor Entities, and the Insurance Trustee execute this Insurance Trust Agreement as of the ___ day of _____, 202[_].

**Insurance Trustee**

By: _____

Name: [_]

Title: Insurance Trustee

**Roman Catholic Archbishop of Baltimore, a corporation sole**

By: _____

Name: [_]

Title: [_]

**EXHIBIT F**
**SURVIVOR COMPENSATION TRUST AGREEMENT**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| In re:<br><br>ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE,<br><br>         Debtor.[1] | Chapter 11<br><br>Case No. 23-16969-MMH |

**ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE**
**SURVIVOR COMPENSATION TRUST AGREEMENT**

Pursuant to the *Third Amended Chapter 11 Plan of Reorganization for the Roman Catholic Archbishop of Baltimore, a Corporation Sole* (Dkt. No. [_]) (together with any and all amendments, supplements, exhibits, and schedules, the "***Plan***")[2] filed and confirmed in the above-captioned bankruptcy case (the "***Chapter 11 Case***"), this survivor compensation trust agreement (the "***Survivor Compensation Trust Agreement***") is entered by and between the Roman Catholic Archbishop of Baltimore, a corporation sole (the "***RCAB***"), the Related Non-Debtor Entities, and [_] (the "***Survivor Compensation Trustee***").

**RECITALS**

A.      On September 29, 2023 (the "***Petition Date***"), the RCAB caused to be filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"), commencing the Chapter 11 Case in the Bankruptcy Court.

B.      The RCAB has sought and obtained entry of the Confirmation Order, confirming the Plan.

C.      The Plan contemplates the creation and existence of, among other things, the Survivor Compensation Trust and the transfer and assignment to the Survivor Compensation Trust the Survivor Compensation Trust Assets.

D.      Pursuant to the Plan, the Survivor Compensation Trust is to use the Survivor Compensation Trust Assets to compensate Survivor Claimants in satisfaction of their Survivor Claims and otherwise carry out the purposes and obligations of the Survivor Compensation Trust pursuant to and in accordance with the Plan.

E.      The Survivor Compensation Trust is established for the benefit of Survivor Claimants and is intended to qualify as a "Designated" or "Qualified Settlement Fund" within the

---

[1] The last four digits of the Debtor's federal tax identification number are 1535. The Debtor's principal place of business is located at 320 Cathedral Street, Baltimore, Maryland 21201.

[2] Capitalized terms used in this Survivor Compensation Trust Agreement and not otherwise defined shall have the meanings ascribed to them in the Plan.

meaning of Section 468B of the Internal Revenue Code and Treasury Regulations Sections 1.468B-1 to 1.468B-5, and electing to be treated as a "grantor trust" with respect to the RCAB and Related Non-Debtor Entities under the Internal Revenue Code and Treasury Regulations.

NOW, THEREFORE, pursuant to and in accordance with the Plan and Confirmation Order, in consideration of the premises and provisions in the Plan, and other good and valuable consideration the receipt and sufficiency of which is expressly acknowledged and affirmed, it is agreed as follows:

### DECLARATION OF TRUST

Subject to the occurrence of the Effective Date of the Plan, the RCAB and each Related Non-Debtor Entity absolutely assigns to the Survivor Compensation Trustee and its successors and assigns all rights, title, and interest of the RCAB and each Related Non-Debtor Entity in and to the Survivor Compensation Trust Assets;

TO HAVE AND TO HOLD unto the Trustee and its successors and assigns forever;

IN TRUST NEVERTHELESS upon the terms and subject to the conditions set forth in this Survivor Compensation Trust Agreement and for the benefit of the Beneficiaries (as defined below) as and to the extent provided in the Plan, and for the performance of, and compliance with, the terms of this Survivor Compensation Trust Agreement, the Plan, and the Confirmation Order;

PROVIDED, HOWEVER, that upon termination of the Survivor Compensation Trust in accordance with Article 4 or this Survivor Compensation Trust Agreement, this Survivor Compensation Trust Agreement shall cease, terminate, and be of no further force and effect; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED that the Survivor Compensation Trust Assets are to be held and applied by the Survivor Compensation Trustee upon the further covenants and terms and subject to the conditions set forth in this Survivor Compensation Trust Agreement.

I.    **Agreement of Trust.**

A.    **Creation and Name.**

The RCAB creates this trust, which shall be known as the "Roman Catholic Archbishop of Baltimore and Related Entities Survivor Compensation Trust," which is the Survivor Compensation Trust set forth in the Plan. In the event of any inconsistency between the Plan and this Survivor Compensation Trust Agreement, the terms of the Plan shall govern.

B.    **Purpose.**

The Survivor Compensation Trust's purpose is to assume responsibility for preserving, managing, and distributing the Survivor Compensation Trust Assets in accordance with this Survivor Compensation Trust Agreement and the requirements of the Plan and Confirmation Order, in satisfaction of Survivor Claims.

**C.      Transfer of Survivor Compensation Trust Assets.**

Upon the occurrence of the Effective Date of the Plan, the RCAB and each Related Non-Debtor Entity shall irrevocably transfer, absolutely grant, assign, convey, set over, and deliver to the Survivor Compensation Trust all of the RCAB's and each Related Non-Debtor Entity's rights, titles, and interest in and to the Survivor Compensation Trust Assets to be held in trust and for the uses and purposes stated in this Survivor Compensation Trust Agreement, the Plan, and Confirmation Order. The Survivor Compensation Trustee is expressly authorized to file with the proper governmental authorities any and all documents necessary or helpful to establish the Survivor Compensation Trust.

**D.      Transfer of Confidential Information.**

Pursuant to and in accordance with the *Order (I) Establishing Deadlines for Filing Proofs of Claim; (II) Approving Sexual Abuse Claim Supplement; (III) Approving Form and Manner of Notice; and (IV) Approving Confidentiality Procedures* (Dkt. No. 316), the Survivor Compensation Trustee shall maintain the confidentiality of all documents and information provided by Survivor Claimants, including but not limited to: (i) personal identifying information; (ii) details of alleged Abuse; (iii) medical and psychological records; (iv) treatment records; and (v) any other similar sensitive information.

**E.      Irrevocability.**

The Survivor Compensation Trust shall be irrevocable, and the RCAB and Related Non-Debtor Entities shall not alter, amend, revoke, or terminate the Survivor Compensation Trust. The RCAB and Related Non-Debtor Entities shall have no power or authority to direct the Survivor Compensation Trustee to return any of the Survivor Compensation Trust Assets to the RCAB or any Related Non-Debtor Entity. Nothing in this Survivor Compensation Trust Agreement shall diminish the Survivor Compensation Trust's obligation to pay the Post-Effective Date Costs or other similar amounts pursuant to and in accordance with the Plan and Confirmation Order.

**F.      Beneficiaries.**

The beneficiaries of the Survivor Compensation Trust are Survivor Claimants under the Plan whose Survivor Claims are Allowed by the Survivor Claims Reviewer (all such Survivor Claimants, the "***Beneficiaries***").

**G.      Acceptance of Assets and Assumption of Liabilities.**

In furtherance of the purposes of the Survivor Compensation Trust, the Survivor Compensation Trustee: (i) expressly accepts the role of trustee of the Survivor Compensation Trust and the grant, assignment, transfer, conveyance, and delivery of the Survivor Compensation Trust Assets to the Survivor Compensation Trust, subject to the terms and conditions set forth in this Survivor Compensation Trust Agreement, the Plan, and the Confirmation Order; (ii) expressly assumes all responsibility for preserving, managing, and distributing Survivor Compensation Trust Assets to the Beneficiaries whose Survivor Claims shall be evaluated by the Survivor Claims Reviewer pursuant to and in accordance with the Survivor Compensation Trust Distribution Plan; and (iii) assumes responsibility for (a) making payments to the Beneficiaries, (b) receiving,

collecting, liquidating, maintaining, and distributing the Survivor Compensation Trust Assets, and (c) fulfilling all other duties and obligations of the Survivor Compensation Trust under this Survivor Compensation Trust Agreement and the Plan and Confirmation Order.

The Survivor Compensation Trustee shall have all of the rights, powers, and duties set forth in this Survivor Compensation Trust Agreement, the Survivor Compensation Trust Distribution Plan, the Plan, the Confirmation Order, and otherwise provided under applicable law, for accomplishing the purposes of the Survivor Compensation Trust. The Survivor Compensation Trustee's powers are exercisable solely in a fiduciary capacity consistent with and in furtherance of the applicable provisions of the Plan, the purposes of the Survivor Compensation Trust, and applicable law. The Survivor Compensation Trustee shall have the authority to bind the Survivor Compensation Trust within the limitations set forth in this Survivor Compensation Trust Agreement, but shall be acting in the capacity as Survivor Compensation Trustee and not individually, for all purposes contained in this Survivor Compensation Trust Agreement.

The Survivor Compensation Trust shall be administered consistent with the purposes of the Survivor Compensation Trust and with no object to continue or to engage in the conduct of a trade or business, except to the extent reasonably necessary to preserve the value of the Survivor Compensation Trust Assets or as otherwise provided in the Plan or Confirmation Order. All Survivor Compensation Trust expenses and liabilities with respect to the Beneficiaries shall be payable solely by the Survivor Compensation Trustee out of the Survivor Compensation Trust Assets.

## II.    Corpus of the Survivor Compensation Trust.

### A.    Survivor Compensation Trust Composition.

The Survivor Compensation Trust Assets shall include all property transferred to the Survivor Compensation Trust pursuant to and in accordance with the Plan, Confirmation Order, and any future orders of the Bankruptcy Court, including without limitation: (i) cash contributions from the Debtor; (ii) all Insurance Settlement Amounts; (iii) all Outbound Contribution Claims; (iv) all investment income earned by the Survivor Compensation Trust; and (v) any recoveries from the Insurance Trust, pursuant to and in accordance with the Plan.

### B.    Transfer to the Survivor Compensation Trust.

Upon the Effective Date of the Plan, pursuant to and in accordance with the Plan and Confirmation Order, title to and all rights and interests in the Survivor Compensation Trust Assets shall be transferred or otherwise assigned to the Survivor Compensation Trust free and clear of all Liens, claims, encumbrances, or interests of any kind in the Survivor Compensation Trust Assets of any other Person (including all Liens, claims, encumbrances, or interests of creditors of, or holders of claims against or interests in the RCAB or Related Non-Debtor Entities), in accordance with sections 1123, 1141, and 1146(a) of the Bankruptcy Code, except as otherwise provided for in the Plan.

**C.    Survivor Compensation Trustee's Right, Title, and Interest in Survivor Compensation Trust Assets.**

Upon the transfer of the Survivor Compensation Trust Assets, the Survivor Compensation Trust succeeds to all of the RCAB's, each Related Non-Debtor Entity's, and the Estate's right to and title and interest in the Survivor Compensation Trust Assets, and the RCAB, Related Non-Debtor Entities, and the Estate shall have no further right to or title or interest in or with respect to the Survivor Compensation Trust Assets or this Survivor Compensation, except as provided in this Survivor Compensation Trust Agreement, the Plan, or the Confirmation Order.

**D.    No Tax on Transfers to Survivor Compensation Trust.**

Pursuant to section 1146(a) of the Bankruptcy Code, the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Survivor Compensation Trust, including any deeds, bills of sale, or assignments executed in connection with any transfer to the Survivor Compensation Trust or receipt, disposition, or sale of assets by the Survivor Compensation Trust contemplated by the Plan, shall not be subject to any stamp tax, real estate transfer tax, excise tax, sales tax, use tax, or similar tax.

**E.    Spendthrift Provision.**

To the fullest extent permitted by law, neither the principal nor income of the Survivor Compensation Trust, in whole or in part, shall be subject to (i) any legal or equitable claims of creditors of any Beneficiary or others, (ii) legal process, or (iii) voluntary or involuntary transfer, assignment, anticipation, pledge, or other form of alienation or encumbrance except as may be ordered by the Bankruptcy Court.

**F.    Survivor Compensation Trust Corpus.**

The entirety of the Survivor Compensation Trust's corpus shall be available to pay the Beneficiaries and authorized expenses. The Survivor Compensation Trust's corpus shall be allocated, administered, and distributed as provided in the Survivor Compensation Trust Distribution Plan, the Plan, and the Confirmation Order.

**G.    Unknown Claims Reserve.**

The Survivor Compensation Trustee shall establish and maintain the Unknown Survivor Claims Reserve as required by Section 4.2.6 of the Plan.

**III.    Powers and Duties of Survivor Compensation Trustee**

**A.    Survivor Compensation Trustee's Bond.**

The Survivor Compensation Trustee shall not be required to post any bond, surety, or other security for the performance of the Survivor Compensation Trustee's duties, unless otherwise ordered by the Bankruptcy Court, and, in the event the Survivor Compensation Trustee is so otherwise ordered, all reasonable costs and expenses of procuring any bond or surety shall be borne by the Survivor Compensation Trust and paid for from the Survivor Compensation Trust Assets.

## B. Survivor Compensation Trustee's Powers and Duties.

The Survivor Compensation Trustee shall have, in addition to any other powers and duties conferred on the Survivor Compensation Trustee by applicable trust law (to the extent not inconsistent with applicable bankruptcy law, the Plan, and the Confirmation Order), the Plan, and the other provisions in this Survivor Compensation Trust Agreement, the following powers and duties:

    i.      to act as custodian of, and to receive, control, manage, liquidate, monetize, and dispose of, all Survivor Compensation Trust Assets for the benefit of the Beneficiaries as the Survivor Compensation Trustee deems appropriate to accomplish the purpose of the Survivor Compensation Trust, in accordance with the terms contained in this Survivor Compensation Trust Agreement, the Plan, and the Confirmation Order;

    ii.     to abandon any property which the Survivor Compensation Trustee determines in the Survivor Compensation Trustee's reasonable discretion to be of de minimis value or of more burden than value to the Survivor Compensation Trust;

    iii.    to protect and enforce the rights in and to the Survivor Compensation Trust Assets by any method deemed appropriate, including without limitation by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

    iv.     to enter into contracts in the course of administering the Survivor Compensation Trust Assets for liquidation and in conjunction with their disposition under this Survivor Compensation Trust Agreement and the Plan;

    v.      to open and maintain bank accounts on behalf of the Survivor Compensation Trust, deposit funds in the bank accounts, and draw checks on the bank accounts, as appropriate under this Survivor Compensation Trust Agreement, the Plan, and the Confirmation Order;

    vi.     to obtain all reasonably necessary insurance coverage with respect to any property that is, or may in the future become, a Survivor Compensation Trust Asset;

    vii.    to retain any attorney-at-law, consultant, expert, accountant, investment advisor, bankruptcy management company or such other agents and advisors as are necessary and appropriate to effectuate the purpose of, and maintain and administer, the Survivor Compensation Trust and shall be entitled to rely on advice given by such advisors within his, her, or its areas of competence;

    viii.   to incur on behalf of the Survivor Compensation Trust, and pay from the assets of the Survivor Compensation Trust, all fees, costs, and expenses of administering the Survivor Compensation Trust as provided in this Survivor Compensation Trust Agreement and the Plan, including: (a) the fees of bankruptcy claims or distribution agents; (b) the fees and costs of professionals employed by the Trustee (the "*Professionals*"), including without limitation the Survivor Claims Reviewer, investment advisors, accountants, agents, managers, attorneys-at-law, actuaries, or auditors; (c) the premiums

charged by insurers, including without limitation professional liability insurers; (d) Post-Effective Date Costs as provided in the Plan; (e) reimbursement of any Statutory Fees and Court Costs incurred by the Debtor as provided in <u>Section 2.3</u> of the Plan;

ix.    in accordance with the evaluation of Survivor Claims by the Survivor Claims Reviewer pursuant to the Survivor Compensation Trust Distribution Plan, to make distributions to Beneficiaries who have provided signed copies of all required releases and forms;

x.    in the Survivor Compensation Trustee's discretion, to rely on the authenticity of the signature or other reasonably equivalent form of authentication of the Survivor Claims Reviewer, and the accuracy of the information set forth by, and the reasonableness of the determination of, the Survivor Claims Reviewer in the administration of the Survivor Compensation Trust Distribution Plan and assessment of the Survivor Claims without any verification or confirmation;

xi.    in the Survivor Compensation Trustee's discretion, as a party in interest, to seek enforcement of any provision of the Plan pertaining to the Survivor Compensation Trust, including, in the Survivor Compensation Trustee's sole discretion, whether to authorize a Survivor Claimant to pursue a Litigation Claim; <u>provided</u>, <u>however</u>, that the Survivor Compensation Trustee shall take into consideration and shall use reasonable efforts to minimize the cumulative impact of post-Effective Date litigation on the business operations and legal and personnel resources of the Co-Insured Entities;

xii.    to coordinate with the Insurance Trust regarding Litigation Claims and Insurance Claims;

xiii.    in the Survivor Compensation Trustee's sole right and discretion, to appoint the Survivor Claims Reviewer, who the Trustee may subsequently remove for cause, which shall mean: (a) the willful and continued refusal by the Survivor Claims Reviewer to perform the Survivor Claims Reviewer's duties as set forth in this Survivor Compensation Trust Agreement, the Survivor Compensation Trust Distribution Plan, and the Plan; (b) gross negligence, gross misconduct, fraud, embezzlement, or theft; (c) a serious breach of fiduciary duty; or (d) other cause as the Survivor Compensation Trustee shall in good faith determine;

xiv.    in the event the Survivor Claims Reviewer resigns, is removed, or is otherwise unable to perform the Survivor Claims Reviewer's obligations, the Survivor Compensation Trustee shall have exclusive authority to appoint a new Survivor Claims Reviewer, and nothing contained in this Survivor Compensation Trust Agreement shall prohibit the Survivor Compensation Trustee from also serving as the Survivor Claims Reviewer, if the Survivor Compensation Trustee determines that serving as both the Survivor Compensation Trustee and the Survivor Claims Reviewer is in the best interest of the Survivor Compensation Trust and the Beneficiaries;

xv.        to make, sign, execute, acknowledge, and deliver any documents that may be necessary or appropriate to effectuate the purpose of the Plan or the Survivor Compensation Trust or to maintain and administer the Survivor Compensation Trust;

xvi.        to seek the examination of any Person under, and subject to, the provisions of the Bankruptcy Rules, including without limitation Rule 2004 of the Bankruptcy Rules;

xvii.        to amend, modify, or alter the Survivor Compensation Trust Agreement by filing a motion with the Bankruptcy Court, with notice to the Beneficiaries, the Reorganized Debtor and Additional Reorganized Debtors, and any or all other parties in interest; provided, however, the amendments, modifications, or alterations may not be inconsistent with the terms of the Plan, the terms of the Confirmation Order, or the purpose of the Survivor Compensation Trust, as identified in Section 1.2 of this Survivor Compensation Trust Agreement;

xviii.        upon any event terminating the Survivor Compensation Trust, to defer distribution of Survivor Compensation Trust Assets for a reasonable time needed to wind up the affairs of the Survivor Compensation Trust, including time needed to provide for payment of debts and expenses, although the Beneficiaries' rights to distributions shall vest immediately;

xix.        to comply with section 345 of the Bankruptcy Code with regard to the investment of the Survivor Compensation Trust Assets; provided, however, the Survivor Compensation Trustee is relieved of any obligation to diversify, regardless of whether such obligation would otherwise come from the Bankruptcy Code or any other applicable state or federal law;

xx.        to establish the accounts, funds, and reserves, as required by the Plan, for ease of administration; provided, however, nothing in this provision shall restrict the Survivor Compensation Trustee's authority to pool the accounts, funds, or reserves for investment purposes or require separate bank accounts for the accounts, funds, or reserves;

xxi.        to pursue Outbound Contribution Claims assigned to the Survivor Compensation Trust;

xxii.        to enforce the Survivor Claimant Releases and Litigation Claimant Agreements;

xxiii.        to comply with all Medicare and Medicaid reporting and reimbursement obligations as set forth in the Plan;

xxiv.        to be responsible for only the Survivor Compensation Trust Assets delivered to the Survivor Compensation Trust and have no duty to make, nor incur any liability for failing to make, any search for unknown property or liabilities; and

xxv.        to cause the Survivor Compensation Trust to assume all duties, obligations, and indemnification responsibilities outlined in the Plan and Insurance Settlement Agreements.

**C.      Limitations on Survivor Compensation Trustee.**

Notwithstanding anything in this Survivor Compensation Trust Agreement to the contrary, the Survivor Compensation Trustee shall not do or undertake any of the following: (i) guaranty any debt other than as provided for in this Survivor Compensation Trust Agreement or as required by the Plan; (ii) loan Survivor Compensation Trust Assets (other than investments in cash and cash equivalents); (iii) make any transfer or distribution of Survivor Compensation Trust Assets other than those authorized in this Survivor Compensation Trust Agreement, the Plan, or the Confirmation Order; (iv) engage in any trade or business; or (v) engage in any investments or activities inconsistent with the treatment of the Survivor Compensation Trust as a "Designated" or "Qualified Settlement Trust."

**IV.      Termination of Survivor Compensation Trust.**

**A.      [Reserved].**

**B.      Post-Confirmation Termination.**

The Trustee shall terminate the Survivor Compensation Trust after (a) the Trustee's liquidation, administration, and distribution of the Survivor Compensation Trust Assets in accordance with this Trust Agreement and the Plan and (b) the Trustee's full performance of all other duties and functions set forth in this Trust Agreement and the Plan (the "Post-Confirmation Termination"). The Survivor Compensation Trust shall terminate on the fifth (5th) anniversary of the Effective Date, provided, however, that Trustee may apply to the Bankruptcy Court for an extension of the Post-Confirmation Termination date.

**C.      Post-Confirmation Termination Procedures.**

After the Post-Confirmation Termination of the Survivor Compensation Trust and solely for the purpose of liquidating and winding up its affairs, the Trustee shall continue to act as Trustee until the Trustee's duties in this Trust Agreement have been fully performed. The Trustee shall retain the books, records, documents, and files that shall have been delivered to, or created by, the Trustee until distribution of all the Survivor Compensation Trust Assets. For purposes of this provision, the Survivor Compensation Trust Assets will be deemed distributed when the total amount remaining in the Survivor Compensation Trust is less than $150,000. At the Trustee's discretion, all of the books, records, documents, and files may be destroyed at the seventh anniversary of the Post-Confirmation Termination; provided that, notwithstanding the foregoing, the Trustee shall not destroy or discard any books, records, documents, or files relating to the Survivor Compensation Trust without giving the Reorganized Debtor, Additional Reorganized Debtors, and the Beneficiaries reasonable prior written notice.

**D.      Post-Confirmation Termination Distribution.**

Upon Post-Confirmation Termination of the Survivor Compensation Trust, provided that all fees and expenses of the Survivor Compensation Trust have been paid or provided for in full, the Trustee will deliver all funds and other investments in the Survivor Compensation Trust, if any, including any investment earnings, to a charity supporting survivors of childhood sexual abuse as determined by the Trustee with approval of the Bankruptcy Court.

E.      **Discharge, Exculpation, and Exoneration.**

Upon Post-Confirmation Termination of the Survivor Compensation Trust and accomplishment of all activities described in this Article, the Trustee and the Trustee's Professionals shall be discharged and exculpated from liability, and the Trustee's bond (if any), shall be exonerated except for acts or omissions resulting from the recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud of the Trustee or his designated agents or representatives. The Trustee may, at the expense of the Survivor Compensation Trust, seek an order of the Bankruptcy Court confirming the discharges, exculpations, and exoneration referenced in this Section.

V.      **Immunity, Liability, and Indemnification.**

A.      **Limitations on Liability of Survivor Compensation Trustee.**

Neither the Trustee nor any of the Trustee's duly designated agents, representatives, or Professionals shall be liable for any act or omission taken or omitted by the Trustee in good faith, other than acts or omissions resulting from the recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud of the Trustee or the Trustee's designated agents, representatives, or Professionals. The Trustee may, in connection with the performance of the Trustee's functions, and in the Trustee's sole and absolute discretion, consult with the Trustee's Professionals and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with the advice or opinions rendered by the Trustee's Professionals. Notwithstanding this authority, the Trustee shall be under no obligation to consult with the Trustee's Professionals, and the Trustee's good faith determination not to consult with the Trustee's Professionals shall not result in the imposition of liability on the Trustee, unless the determination is based on the Trustee's recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud. The provisions of this Article 5 are intended to be enforceable in accordance with Maryland law, and the Debtor and each Related Non-Debtor Entity expressly acknowledges that the Trustee did not draft nor cause to be drafted the exculpatory terms of this Article 5.

B.      **No Recourse Against Survivor Compensation Trustee Personally.**

No recourse shall be had, directly or indirectly, against the Trustee personally, or against any employee, contractor, or Professional retained by the Trustee in accordance with the terms of this Trust Agreement, Plan, or Confirmation Order, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant, or trust agreement executed by the Trustee in implementation of this Trust Agreement or the Plan or by reason of the creation of any indebtedness by the Trustee under the Plan for any purposes authorized by this Trust Agreement or the Plan, it being expressly understood and agreed that any promise, contract, instrument, undertaking, obligation, covenant, or trust agreement entered into by the Trustee, whether in writing or otherwise, shall be enforceable only against, and be satisfied only out of, the Survivor Compensation Trust Assets and shall be evidence only of a right of payment out of the Survivor Compensation Trust Assets. The Trustee may be held liable for the Trustee's recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud; and if liability for these grounds is established, recourse may be had

directly against the Trustee. The Survivor Compensation Trust will not be covered by a bond unless otherwise ordered by the Bankruptcy Court.

### C.      Indemnification of Survivor Compensation Trustee.

The Trustee, using Survivor Compensation Trust Assets, shall defend, indemnify, and hold harmless the Trustee, the Trustee's officers, directors, agents, representatives, and employees to the fullest extent that a corporation or trust organized under the laws of the State of Maryland is entitled to defend, indemnify, and hold harmless its trustees, officers, directors, agents, representatives, and employees against any and all costs (including attorneys' fees and costs), judgments, awards, amounts paid in settlement, liabilities, expenses, claims, damages, or losses incurred by them in the performance of their duties under this Trust Agreement; provided that neither the Trustee nor the Trustee's officers, directors, agents, representatives, or employees shall be defended, indemnified, or held harmless in any way for any liability, expense, claim, damage, or loss for which they are ultimately held liable under Section 5.1 or Section 5.2 of this Trust Agreement.

### D.      Indemnification of Protected Parties.

Each Protected Party, and each of their respective Agents, who was or is a party, or is threatened to be made a party to any threatened or pending judicial, administrative, or arbitrative action, by reason of any act or omission of the Survivor Compensation Trust or Trustee or respective Agents, relating to (i) the assessment or liquidation of any Survivor Claims, (ii) the administration of the Survivor Compensation Trust, or (iii) any and all activities in connection with the Trust Agreement, shall be indemnified and defended by the Survivor Compensation Trust, to the fullest extent that a corporation or trust organized under the laws of Maryland is from time to time entitled to indemnify and defend its Agents against Claims.

### E.      Indemnification of Settling Insurers.

Pursuant to and in accordance with the applicable Insurance Settlement Agreement(s), each Settling Insurer, and each of their respective Agents who was or is a party, or is threatened to be made a party to any threatened or pending judicial, administrative, or arbitrative action, relating to (i) any and all Claims that arise out of or are based on the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Conveyance Act, section 548 of the Bankruptcy Code, and parallel state or federal laws or (ii) any and all Channeled Claims, including all such Claims made by any Person (a) claiming to be insured (as a named insured, additional insured, or otherwise) under any of the Settling Insurance Policies, (b) who has made, will make, or can make a Survivor Claim that is under, arises out of, relates (directly or indirectly) to, or connects in any way with the Settling Insurance Policies, or (c) who has actually or allegedly acquired or been assigned the right to make a Claim under any of the Settling Insurance Policies (collectively, "***Settling Insurer Indemnified Claims***"), shall be indemnified and defended by the Survivor Compensation Trust to the fullest extent that a corporation or trust organized under the law s of Maryland is form time to time entitled to indemnify and defend its Agents against Claims.

Each Settling Insurer shall have the right, but not the obligation, to defend any appliable Settling Insurer Indemnified Claims identified in this Section V.E and shall do so in good faith.

Each Settling Insurer may, but is not required to, undertake the defense of any applicable Settling Insurer Indemnified Claim on receipt of such Settling Insurer Indemnified Claim. Each Settling Insurer agrees to notify the Survivor Compensation Trust as soon as practicable of any Settling Insurer Indemnified Claims and of their choice of counsel. If a Settling Insurer declines to defend any Settling Insurer Indemnified Claim, the Survivor Compensation Trust shall undertake the defense of such Settling Insurer Indemnified Claim.

The Survivor Compensation Trust shall reimburse all reasonable and necessary attorneys' fees, expenses, costs, and amounts incurred by a Settling Insurer in connection with a Settling Insurer Indemnified Claim. A Settling Insurer may settle or otherwise resolve a Settling Insurer Indemnified Claim only with the prior consent of the Survivor Compensation Trust, which consent shall not be unreasonably withheld. The Survivor Compensation Trust may settle or otherwise resolve a Settling Insurer Indemnified Claim only with the prior consent of the applicable Settling Insurer, which consent shall not be unreasonably withheld. A Settling Insurer's defense, settlement, or other resolution of any Settling Insurer Indemnified Claim pursuant to this Section V.E shall not diminish the obligations of the Survivor Compensation Trust to indemnify the applicable Settling Insurer for such Settling Insurer Indemnified Claims, as set forth in this Section V.E.

## VI.  Compensation and Reimbursement for Survivor Compensation Trustee and Agents.

### A.  Survivor Compensation Trustee Compensation.

The Survivor Compensation Trustee shall be entitled to receive reasonable compensation from the Survivor Compensation Trust Assets at an average hourly rate not to exceed $[_].

### B.  Compensation of Survivor Compensation Trustee's Professionals.

Any Professional retained by the Survivor Compensation Trustee pursuant to this Survivor Compensation Trust Agreement or the Plan shall be entitled to reasonable compensation for services rendered, which may be paid by the Survivor Compensation Trustee from the Survivor Compensation Trust Assets.

### C.  Reimbursement of Expenses.

Any and all reasonably necessary costs and expenses incurred by the Survivor Compensation Trustee or any Professional retained by the Survivor Compensation Trustee in performing their respective duties or obligations under this Survivor Compensation Trust Agreement shall be reimbursed by the Survivor Compensation Trustee from the Survivor Compensation Trust Assets.

**VII. Successor Survivor Compensation Trustee.**

    **A. Vacancy Caused by Survivor Compensation Trustee Resignation or Removal.**

        **i. Resignation of Survivor Compensation Trustee.**

The Survivor Compensation Trustee may resign at any time upon thirty (30) days written notice to be filed with the Bankruptcy Court. In addition to the obligations imposed under Section VII.B. of this Survivor Compensation Trust Agreement, the outgoing trustee (the "*Outgoing Trustee*") shall, within thirty (30) days after the Outgoing Trustee's resignation takes effect, deliver to the successor trustee (the "*Successor Trustee*") all Survivor Compensation Trust Assets that were in the possession of the Outgoing Trustee, a complete schedule of Survivor Compensation Trust Assets, and an accounting of all distributions or other transactions effectuated by the Outgoing Trustee while serving as Survivor Compensation Trustee.

        **ii. Removal of Survivor Compensation Trustee.**

Any Survivor Claimant may petition the Bankruptcy Court to remove the Survivor Compensation Trustee. Upon such petition, the Bankruptcy Court may remove the Survivor Compensation Trustee for cause, which shall include without limitation, the factors set forth under Maryland law regarding removal of fiduciaries. Any removal of a Survivor Compensation Trustee shall take effect pursuant to and in accordance with any order entered by the Bankruptcy Court regarding such removal. In addition to the obligations imposed under Section VII.B. of this Survivor Compensation Trust Agreement, within thirty (30) days of the effectiveness of any removal and the appointment of a Successor Trustee, the Outgoing Trustee shall deliver to the Successor Trustee all Survivor Compensation Trust Assets that were in the possession of the Outgoing Trustee, a complete schedule of Survivor Compensation Trust Assets, and an accounting of all distributions or other transactions effectuated by the Outgoing Trustee while serving as Survivor Compensation Trustee.

    **B. Outgoing Trustee Obligations.**

Upon the resignation or removal of the Survivor Compensation Trustee, in addition to the duties of the Outgoing Trustee set forth above in Section VII.A.i. and Section VII.A.ii., as applicable, the Outgoing Trustee shall: (i) execute and deliver by the effective date of the resignation or removal the documents, instruments, records, and other writings as may be reasonably requested by the Successor Trustee to effect the resignation or removal of the Outgoing Trustee and the conveyance of the Survivor Compensation Trust Assets to the Successor Trustee; (ii) deliver to the Successor Trustee all documents, instruments, records, and other writings relating to the Survivor Compensation Trust Assets as may be in the possession or under the control of the Outgoing Trustee; and (iii) otherwise assist and cooperate in effectuating the assumption by the Successor Trustee of the duties and obligation of the Outgoing Trustee.

The Outgoing Trustee hereby irrevocably appoints the Successor Trustee (and any interim trustee) as the Outgoing Trustee's attorney-in-fact and agent with full power of substitution for the Outgoing Trustee and the Outgoing Trustee's name, place, and stead to do any and all acts that the Outgoing Trustee is obligated to perform under this Survivor Compensation Trust Agreement. The appointment of the Successor Trustee as the Outgoing Trustee's attorney-in-fact and agent shall

not be affected by the subsequent disability or incompetence of the Outgoing Trustee. The Bankruptcy Court may also enter any order necessary to effect the termination of the appointment of the Outgoing Trustee and the subsequent appointment of the Successor Trustee.

### C.    Appointment of Successor Survivor Compensation Trustee.

In the event of any vacancy in the role of Survivor Compensation Trsutee, such vacancy shall be filled by the nomination of a majority of the members of the Committee (notwithstanding dissolution of the Committee on the Effective Date of the Plan), subject to the approval of the Bankruptcy Court, after notice and a hearing. If at least two (2) members of the Committee do not participate in the nomination of the Successor Trustee within ten (10) days after the Outgoing Trustee resigns, is removed, or otherwise becomes unable to serve, the Office of the United States Trustee for the District of Maryland shall designate a successor after notice to Beneficiaries, the Reorganized Debtor, and Additional Reorganized Debtors and entry of an order by the Bankruptcy Court appointing such Successor Trustee.

### D.    Preservation of Record of Changes in Survivor Compensation Trustees.

A copy of each instrument of resignation, removal, appointment, and acceptance of appointment shall be attached to an executed counterpart of this Survivor Compensation Trust Agreement.

## VIII.    Survivor Compensation Trustee Reporting and Discharge.

### A.    Annual Accountings.

The Survivor Compensation Trustee shall prepare, at least annually, a written accounting of the administration of the Survivor Compensation Trust listing the current assets with fair market values and detailing all transactions that occurred during the period covered by the accounting. Each accounting shall be filed with the Bankruptcy Court for as long as the Chapter 11 Case remains open and pending before the Bankruptcy Court. Following the entry of the final decree in the Chapter 11 Case, copies of the accounting shall be available to the Beneficiaries upon request. However, the Survivor Compensation Trustee shall redact any and all confidential and personal identifying information from any and all accountings or reports filed with the Bankruptcy Court or provided to any Beneficiary, including, but not limited to, the individual award made to any individual Beneficiary, or may be affirmatively provided by the Survivor Compensation Trustee if it elects to do so.

### B.    Approval of Accountings and Discharge of the Survivor Compensation Trustee.

At any time when the Chapter 11 Case is open, the Survivor Compensation Trustee may file with the Bankruptcy Court a motion for approval of any accounting described in Section VIII.A. of this Survivor Compensation Trust Agreement. Upon the entry of an order of the Bankruptcy Court approving the accounting, the Survivor Compensation Trustee shall be discharged from all liability to the Survivor Compensation Trust, any Beneficiary, or any Person who has or may have a claim against the Survivor Compensation Trustee or Survivor Compensation Trust for acts or omissions in the Survivor Compensation Trustee's capacity as

Survivor Compensation Trustee with respect to all assets listed and transactions detailed in the accounting.

### C.     Quarterly Reporting.

The Survivor Compensation Trustee shall provide quarterly reports to the Reorganized Debtor and Insurance Trustee (regarding the status of any Litigation Claims).

## IX.    Section 468B Settlement Fund.

### A.     Qualification.

In accordance with the Plan, the Survivor Compensation Trustee shall take all reasonable steps to ensure that the Survivor Compensation Trust will qualify as, and remain, a "Designated" or "Qualified" settlement fund within the meaning of Section 468B of the Internal Revenue Code of 1986 (as amended, the "*Tax Code*") and the regulations promulgated pursuant the Tax Code (the "*Treasury Regulations*"). The Debtor and Related Non-Debtor Entities shall be the "Transferor" within the meaning of Treasury Regulations Section 1.468B-1(d)(1). The Survivor Compensation Trustee shall be classified as the "Administrator" within the meaning of Treasury Regulations Section 1.468B-2(k)(3).

### B.     All Events Test and Economic Performance Requirement.

It is intended that the transfer of the Survivor Compensation Trust Assets to the Survivor Compensation Trust shall satisfy the "All Events Test" and the "Economic Performance" requirement of Section 461(h)(1) of the Tax Code and Treasury Regulations Section 1.461-1(a)(2).

### C.     Employer Identification Number.

Upon establishment of the Survivor Compensation Trust, the Survivor Compensation Trustee shall apply for an employer identification number for the Survivor Compensation Trust in accordance with Treasury Regulations Section 1.468B-2(k)(4).

### D.     Relation-Back Election.

If applicable, the Survivor Compensation Trustee, Debtor, and Related Non-Debtor Entities shall fully cooperate in filing a relation-back election under Treasury Regulations Section 1.468B-1(j)(2) to treat the Survivor Compensation Trust as coming into existence as a settlement fund as of the earliest possible date.

### E.     Filing Requirements.

The Survivor Compensation Trustee shall cause to be filed, on behalf of the Survivor Compensation Trust, all required federal, state, and local tax returns in accordance with the provisions of Treasury Regulations Section 1.468B-2(k)(1). The Debtor and Related Non-Debtor Entities shall file an election statement satisfying the requirements of Treasury Regulations Section 1.468B-1(k)(2)(ii) so that the Survivor Compensation Trust is treated as a grantor trust under Section 671 of the Tax Code and the Treasury Regulations. The election statement shall be

included with the Survivor Compensation Trust's first timely filed trust income tax return. The Debtor and Related Non-Debtor Entities shall supply to the Survivor Compensation Trustee and to the Internal Revenue Service the statement described in Treasury Regulations Section 1.468B-3(e)(2) no later than February 15 of the year following each calendar year in which the Debtor or any Related Non-Debtor Entity makes a transfer to the Survivor Compensation Trust.

### F.        Broad Powers of the Survivor Compensation Trustee.

The Survivor Compensation Trustee is empowered to take all actions, including any action consistent with those expressly set forth in Article IX of this Survivor Compensation Trust Agreement, as the Survivor Compensation Trustee deems necessary to reasonably ensure that the Survivor Compensation Trust is treated as a "Designated" or "Qualified" settlement fund under Section 468B of the Tax Code and the Treasury Regulations. Further, the Survivor Compensation Trustee may, unilaterally and without order from the Bankruptcy Court, amend, either in whole or in part, any administrative provision of this Survivor Compensation Trust Agreement that causes unanticipated tax consequences or liabilities inconsistent with Article IX of this Survivor Compensation Trust Agreement.

## X.     Beneficiaries.

### A.        Register of Beneficiaries.

The Survivor Compensation Trustee shall keep a register (the "***Register***") in which the Survivor Compensation Trustee shall at all times maintain the names and addresses of the Beneficiaries and the actual distributions made to the Beneficiaries pursuant to the Plan and Survivor Compensation Trust Distribution Plan. The Survivor Compensation Trustee may rely upon the Register for the purpose of delivering distributions or notices. In preparing and maintaining the Register, the Survivor Compensation Trustee shall include the name and address of each Beneficiary as they are listed in the proof of claim filed by the Beneficiary relating to such Beneficiary's Survivor Claim. On the request of a Beneficiary, such request being communicated to the Survivor Compensation Trustee by signed letter transmitted by mail or email, the Survivor Compensation Trustee shall modify the Beneficiary's name and address as requested. The Survivor Compensation Trustee shall be obligated to maintain the confidentiality of all names, addresses, and any and all other personally identifying information of the Beneficiaries provided to the Survivor Compensation Trustee.

### B.        Rights of Beneficiaries.

The rights of a Beneficiary under this Survivor Compensation Trust Agreement shall, upon the death or incapacity of an individual Beneficiary, pass to the legal representative of the Beneficiary. A Beneficiary shall have no title to, right to, possession of, management of, or control of the Survivor Compensation Trust Assets, or any right to call for a partition or division of the Survivor Compensation Trust Assets. Title to all the Survivor Compensation Trust Assets shall be vested in the Survivor Compensation Trustee, and the sole interest of the Beneficiaries shall be the rights and benefits given to the Beneficiaries under this Survivor Compensation Trust Agreement, the Plan, the Confirmation Order, and the Survivor Compensation Trust Distribution Plan.

### C.     Tax Identification Numbers.

The Survivor Compensation Trustee shall require any Beneficiary to furnish to the Survivor Compensation Trustee the Beneficiary's employer or taxpayer identification number or social security number as assigned by the United States Internal Revenue Service, and other records or documents necessary to satisfy the Survivor Compensation Trustee's tax reporting obligations (including, but not limited to, certificates of non-foreign status). The Survivor Compensation Trustee shall condition the payment of any distribution to any Beneficiary upon receipt of the number and records or documents.

## XI.    Medicare and Medicaid Procedures.

### A.     Compliance.

The Survivor Compensation Trustee shall implement procedures to comply with all Medicare and Medicaid reporting and reimbursement obligations as and to the extent set forth in Section 6.10 of the Plan.

### B.     Beneficiary Certification.

Prior to making any distribution, the Survivor Compensation Trustee shall obtain from each Beneficiary appropriate certifications regarding Medicare and Medicaid status and reimbursement obligations.

### C.     Withholding.

The Survivor Compensation Trustee may withhold from any distribution amounts necessary to satisfy Medicare or Medicaid reimbursement obligations.

## XII.   Miscellaneous Provisions.

### A.     Plan Incorporation.

The terms of the Plan and the Confirmation Order are incorporated into this Survivor Compensation Trust Agreement. In the event of any conflict between the terms of this Survivor Compensation Trust Agreement and the Plan, the terms of the Plan shall govern.

### B.     Notices.

All notices or deliveries required or permitted under this Survivor Compensation Trust Agreement shall be given as directed in the Plan, to the following:

If to the Survivor Compensation Trust or Trustee:

[_]

If to a Beneficiary:

Counsel who signed the Beneficiary's Proof of Claim or, for an unrepresented Beneficiary, to the address for the Beneficiary provided in the Proof of Claim related to such Beneficiary's Survivor Claim.

<u>To the Debtor or the Reorganized Debtor:</u>

Roman Catholic Archbishop of Baltimore
Attn: Archbishop of Baltimore
320 Cathedral Street
Baltimore, Maryland 21201

with a copy to:

Holland & Knight LLP
Attn: Blake D. Roth
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Email: blake.roth@hklaw.com

<u>To the Related Non-Debtor Entities:</u>

[__]

**C.    <u>Waiver.</u>**

No failure or delay of any party to exercise any right or remedy pursuant to this Survivor Compensation Trust Agreement shall affect the right or remedy or constitute a waiver by the party of any right or remedy pursuant to this Survivor Compensation Trust Agreement. Resort to one form of remedy shall not constitute a waiver of alternative remedies.

**D.    <u>Reimbursement of Costs.</u>**

If the Survivor Compensation Trustee or the Survivor Compensation Trust, as the case may be, is the prevailing party in a dispute regarding the provisions of this Survivor Compensation Trust Agreement or the enforcement of a provision of this Survivor Compensation Trust Agreement, the Survivor Compensation Trustee or the Survivor Compensation Trust, as the case may be, shall be entitled to collect from the non-prevailing party any and all costs, reasonable and documented out-of-pocket expenses and fees, including attorneys' fees, incurred in connection with the dispute or enforcement action.

**E.    <u>Entirety of Survivor Compensation Trust Agreement.</u>**

This Survivor Compensation Trust Agreement supersedes any and all prior oral discussions and agreements with respect to the subject matter in this Survivor Compensation Trust Agreement. This Survivor Compensation Trust Agreement, together with the Plan, Survivor Compensation Trust Distribution Plan, and Confirmation Order, contain the sole and entire Survivor Compensation Trust Agreement and understanding with respect to the matters addressed in the

Survivor Compensation Trust Agreement. It is acknowledged that there are no communications or oral understandings that are contrary to, or that in any way restrict, this Survivor Compensation Trust Agreement and that all prior agreements or understandings within the scope of the subject matter of this Survivor Compensation Trust Agreement are, upon execution and delivery of this Survivor Compensation Trust Agreement, superseded, null, and void.

#### F.      Counterparts.

This Survivor Compensation Trust Agreement may be executed in two or more counterparts, with the same effect as if all signatures on the counterparts appeared on one document, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile signatures or signatures delivered by any other electronic means shall have the same force and effect as original signatures.

#### G.      Captions.

The captions of Articles and Sections in this Survivor Compensation Trust Agreement are included for convenience only and are to be disregarded in interpreting this Survivor Compensation Trust Agreement.

#### H.      Representation.

It is acknowledged that each of the parties to this Survivor Compensation Trust Agreement has reviewed this Survivor Compensation Trust Agreement and has consulted counsel, or knowingly chose not to consult counsel, before executing this Survivor Compensation Trust Agreement. Each of the parties to this Survivor Compensation Trust Agreement relied upon its own judgment and that of its counsel in executing this Survivor Compensation Trust Agreement and has not relied on, or been induced by, any representation, statement, or act by any party that is not referred to in this instrument. It is specifically acknowledged and understood that this Survivor Compensation Trust Agreement has not been submitted to, nor reviewed or approved by, the United States Internal Revenue Service or the taxing authorities of any state or territory of the United States of America. Each of the parties entered into this Survivor Compensation Trust Agreement voluntarily, with full knowledge of its significance, and after the opportunity to consult counsel, and the Survivor Compensation Trust Agreement is, in all respects, complete and final.

#### I.      Interpretation.

This Survivor Compensation Trust Agreement has been reached through negotiations between the parties to this Survivor Compensation Trust Agreement. Each of the parties to this Survivor Compensation Trust Agreement acknowledges that the party has participated in the drafting of this Survivor Compensation Trust Agreement and reviewed the terms of the Survivor Compensation Trust Agreement and, as a result, no rule of construction shall apply which might result in this Survivor Compensation Trust Agreement being construed in favor or against any of the parties, including without limitation, any rule of construction to the effect that ambiguities ought to be resolved against the drafting party. The parties to this Survivor Compensation Trust Agreement have used their own judgment in entering into this Survivor Compensation Trust Agreement.

**J.**    **Savings Clause.**

If any clause or provision of this Survivor Compensation Trust Agreement shall for any reason be held invalid or unenforceable by the Bankruptcy Court or any other court with competent jurisdiction, such invalidity or unenforceability shall not affect any other clause or provision in this Survivor Compensation Trust Agreement, but this Survivor Compensation Trust Agreement shall be construed, insofar as reasonable to effectuate the purpose of this Survivor Compensation Trust Agreement, as if the invalid or unenforceable provision had never been contained in the Survivor Compensation Trust Agreement.

**K.**    **Applicable Law.**

To the extent not inconsistent with the Bankruptcy Code, the Survivor Compensation Trust Agreement shall be administered under, governed by, and enforced according to the laws of the State of Maryland applicable to contracts and trust agreements made and to be performed and administered in Maryland. The Survivor Compensation Trust's compliance with Section 468B of the Tax Code and any Treasury Regulations shall be governed by federal tax law and all matters of federal bankruptcy law shall be governed by the Bankruptcy Code and federal bankruptcy law.

**[SIGNATURE PAGES FOLLOW]**

IN WITNESS WHEREOF, the Debtor, Related Non-Debtor Entities, and the Trustee execute this Survivor Compensation Trust Agreement as of the ___ day of _____, 202[_].

**SURVIVOR COMPENSATION TRUSTEE**

By: _____

Name: [_____]

Title: Survivor Compensation Trustee

**ROMAN CATHOLIC ARCHBISHOP**
**OF BALTIMORE, a corporation sole, as debtor**

By: _____

Name: [_____]

Title: [_____]

**EXHIBIT G**
**SURVIVOR COMPENSATION TRUST DISTRIBUTION PLAN**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| In re: | Chapter 11 |
| ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE, | Case No. 23-16969-MMH |
| Debtor.[1] | |

**ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE**
**SURVIVOR COMPENSATION TRUST DISTRIBUTION PLAN**

This Survivor Compensation Trust Distribution Plan is entered into and part of the *Third Amended Chapter 11 Plan of Reorganization for the Roman Catholic Archbishop of Baltimore, a Corporation Sole* (Dkt. No. [_]) (the "***Plan***")[2] and is designed to provide guidance to the Survivor Claims Reviewer in determining the amount of compensation paid on account of each Survivor Claim under the Plan.

**ARTICLE 1**
**Introduction and Purpose**

**Section 1.1    Purpose.**

This Survivor Compensation Trust Distribution Plan (the "***Distribution Plan***") establishes the procedures for evaluating, liquidating, and paying Survivor Claims from the Survivor Compensation Trust established pursuant to the Plan. This Distribution Plan is Exhibit G to the Plan and is incorporated by reference into the Plan and the Survivor Compensation Trust Agreement.

**Section 1.2    Goals.**

This Distribution Plan is designed to: (a) provide fair, equitable, and efficient compensation to Survivor Claimants; (b) treat similar Survivor Claims consistently; (c) maximize the value of distributions to all eligible Survivor Claimants; (d) preserve Survivor Compensation Trust Assets and Insurance Trust Assets for current and future Survivor Claimants; and (e) maintain confidentiality of sensitive Survivor Claimant information.

---

[1] The last four digits of the Debtor's federal tax identification number are 1535. The Debtor's principal place of business is located at 320 Cathedral Street, Baltimore, Maryland 21201.

[2] Capitalized terms used and not otherwise defined shall have the meanings ascribed to them in the Plan, the Survivor Compensation Trust Agreement, or the Bankruptcy Code, as applicable.

**ARTICLE 2**
**Survivor Claims Reviewer; Rules of Interpretation and General Guidelines.**

**Section 2.1      Role of the Survivor Compensation Trustee.**

The Survivor Compensation Trustee shall: (a) administer the Survivor Compensation Trust Assets prudently and in accordance with the Plan, Survivor Compensation Trust Agreement, and this Distribution Plan; (b) oversee the claims evaluation process; (c) ensure fair and consistent treatment of all Survivor Claimants; (d) maintain accurate records of all distributions; (e) coordinate with the Insurance Trustee regarding Litigation Claims; (f) provide reports as required by the Survivor Compensation Trust Agreement and Plan; and (g) make all decisions regarding authorization of Litigation Claims.

**Section 2.2      Survivor Claims Reviewer.**

**(a)      Appointment.**

[_] shall be the initial Survivor Claims Reviewer and shall serve at the discretion of the Survivor Compensation Trustee.

**(b)      Duties.**

In accordance with the Plan, Survivor Compensation Trust Agreement, Insurance Trust Agreement, and this Distribution Plan, the Survivor Claims Reviewer shall: (i) review and evaluate all Survivor Claims filed in the Chapter 11 Case; (ii) apply the Evaluation Factors set forth in this Distribution Plan consistently; (iii) make point value determinations for each Survivor Claim; (iv) recommend award amounts based upon the point system established by this Distribution Plan; (v) maintain detailed records of evaluations; and (vi) respond to requests for reconsideration.

**(c)      Confidentiality.**

Absent an order of the Bankruptcy Court or the written consent of the Survivor Claimant (or such Survivor Claimant's counsel of record), all information submitted by Survivor Claimants, including identity, claim details, and award amounts, shall be kept strictly confidential, and receipt of such information by the Survivor Claims Reviewer shall not constitute a waiver by any Survivor Claimant of any attorney-client privilege or attorney work product claim or any similar privilege or doctrine. All such information received by the Survivor Claims Reviewer may only be shared with: (i) the Survivor Compensation Trustee; (ii) Professionals retained by the Survivor Compensation Trust as necessary for evaluation of Survivor Claims; and (iii) others as consistent with the *Order: (I) Establishing Deadlines for Filing Proofs of Claim; (II) Approving Sexual Abuse Claim Supplement; (III) Approving Form and Manner of Notice; and (IV) Approving Confidentiality Procedures*.

2

## ARTICLE 3
## Claims Submission Procedures

**Section 3.1     Eligible Survivor Claims.**

Only Holders of Survivor Claims (Class 6) are eligible for compensation subject to the adjustments and limitations set forth in this Distribution Plan.

**Section 3.2     Required Documentation.**

Each Survivor Claimant must submit:

    a.    a completed Sexual Abuse Claim Supplement containing, at a minimum, (i) Survivor Claimant identification information, (ii) details of the alleged Abuse, (iii) the identity of the alleged perpetrator(s), (iv) dates and locations of the alleged Abuse, and (v) a description of damages and impacts;

    b.    a signed certification under penalty of perjury that the information provided is true and correct;

    c.    if available, additional supporting documentation such as (i) medical records, (ii) therapy or counseling records, (iii) employment records demonstrating impact of alleged Abuse, (iv) educational records demonstrating impact of alleged Abuse, and (v) any other documentation supporting damages arising from or relating to the alleged Abuse; and

    d.    a signed Survivor Claimant Release in the form attached as <u>Exhibit H</u> to the Plan.

**Section 3.3     Submission Deadlines.**

To be eligible for compensation pursuant to the Plan, this Distribution Plan, and the Survivor Compensation Trust Agreement: (a) a Known Survivor Claim must have been filed in the Chapter 11 Case on or before May 31, 2024; (b) a Late-Filed Survivor Claim must have been filed before the Effective Date of the Plan; and (c) an Unknown Survivor Claim must have been filed on or before the expiration of the Unknown Survivor Claims Reserve.

**Section 3.4     Survivor Claim Intake Process.**

Any Survivor Claims submitted in the Chapter 11 Case prior to the Effective Date of the Plan shall be deemed submitted to the Survivor Compensation Trustee and Survivor Claims Reviewer as of the Effective Date of the Plan. For all other Survivor Claims, such Survivor Claims shall be transmitted to the Survivor Compensation Trustee, and the Survivor Compensation Trustee shall acknowledge receipt of such Survivor Claims within fourteen (14) days of receipt.

Within the later to occur of [_] days from the Effective Date of the Plan and [_] days from receipt of a Survivor Claim, the Survivor Claims Reviewer will review each applicable Survivor

Claim. If a Survivor Claim is incomplete, the applicable Survivor Claimant will be notified of deficiencies and provided sixty (60) days to cure such deficiencies.

Each Survivor Claimant shall be notified when evaluation of such Survivor Claimant's Survivor Claim begins.

## ARTICLE 4
## Survivor Claim Evaluation Factors

**Section 4.1    Allowance of Survivor Claims.**

The Survivor Claims Reviewer shall Allow a Survivor Claim, if:

(a)    the Survivor Claims Reviewer determines the Survivor Claim constitutes a Known Survivor Claim, Unknown Survivor Claim, Late-Filed Survivor Claim, or Untimely Survivor Claim;

(b)    such Survivor Claim is proven by a preponderance of the evidence; and

(c)    such Survivor Claim is not duplicative, amended or superseded, or fraudulent.

**Section 4.2    Overview.**

This Distribution Plan and the Evaluation Factors (as defined below) shall be the sole and exclusive method by which distributions to Survivor Claimants shall be determined. Each Survivor Claim Allowed by the Survivor Claims Reviewer shall be evaluated using an objective point system that considers multiple factors relating to the severity and impact of the alleged Abuse. The Survivor Claims Reviewer shall evaluate each Allowed Survivor Claim individually based on the information provided by the applicable Survivor Claimant.

**Section 4.3    Evaluation Factors for Valuation of Survivor Claims.**

Each Allowed Survivor Claim shall be assigned between zero (0) and one hundred ten (110) points based upon the following evaluation categories and factors (collectively, the "***Evaluation Factors***"), in the Survivor Claims Reviewer's sole discretion.

**(a)    Nature and Severity of Abuse (0-40 Points).**

As part of the Survivor Claims Reviewer's evaluation of Survivor Claims, up to forty (40) points may be allocated for the nature and severity of the alleged Abuse underlying such Survivor Claim as follows:

**Level 1: Non-Contact Abuse (0-10 Points)**—alleged Abuse that includes inappropriate communications, exposure to pornography, voyeurism or other non-physical sexual misconduct;

**Level 2: Contact Above Clothing (11-20 Points)**—alleged Abuse that includes inappropriate touching over clothing, forced touching

4

by the Survivor, or other sexual misconduct involving contact above the clothing;

**Level 3: Contact Beneath Clothing (21-30 Points)**—alleged Abuse that includes genital contact beneath the clothing, forced touching beneath the clothing, digital penetration, or sexual misconduct that involves severe contact that does not qualify under Level 4; and

**Level 4: Most Severe Abuse (31-40 Points)**—alleged Abuse that includes rape, sodomy, oral copulation, penetration with objects, sex trafficking, or creation of pornographic images.

(b)     **Duration and Frequency of Abuse (0-20 Points).**

As part of the Survivor Claims Reviewer's evaluation of Survivor Claims, up to twenty (20) points may be allocated for the duration and frequency of the alleged Abuse underlying such Survivor Claim as follows:

**Level 1 (0-5 Points)**—alleged Abuse involving a single incident;

**Level 2 (6-10 Points)**—alleged abuse involving multiple incidents over less than six (6) months;

**Level 3 (11-15 Points)**—alleged Abuse involving multiple incidents for more than six (6) months but less than twenty-four (24) months; and

**Level 4 (16-20 Points)**—alleged Abuse involving multiple incidents for more than twenty-four (24) months.

(c)     **Age of Survivor Claimant When Alleged Abuse Occurred (0-15 Points).**

As part of the Survivor Claims Reviewer's evaluation of Survivor Claims, up to fifteen (15) points may be allocated for the age of the Survivor Claimant when the alleged Abuse underlying such Survivor Claim occurred as follows:

**Level 1 (0-5 Points)**—sixteen or seventeen years old;

**Level 2 (6-10 Points)**—thirteen to fifteen years old;

**Level 3 (11-13 Points)**—ten to twelve years old; and

**Level 4 (14-15 Points)**—less than ten years old.

**(d)**      **Vulnerability Factors (0-10 Points).**

As part of the Survivor Claims Reviewer's evaluation of Survivor Claims, up to ten (10) points may be allocated for certain factors relating to the vulnerability of the Survivor Claimant at the time the alleged Abuse underlying such Survivor Claim occurred as follows:

Physical or mental disability (0-5 Points);

Family dysfunction or absence (0-3 Points); and

Economic disadvantage (0-2 Points).

**(e)**      **Impact and Consequences of Alleged Abuse (0-15 Points).**

As part of the Survivor Claims Reviewer's evaluation of Survivor Claims, up to fifteen (15) points may be allocated upon consideration of the impact and consequences of the alleged Abuse underlying such Survivor Claim as follows:

Documented psychological treatment (0-3 Points);

Documented substance abuse treatment (0-3 Points);

Educational disruption (0-3 Points);

Negative employment or career impact (0-3 Points); and

Negative relationship or family impact (0-3 Points).

**(f)**      **Extraordinary Circumstances (0-10 Points).**

As part of the Survivor Claims Reviewer's evaluation of Survivor Claims, up to ten (10) points may be allocated upon consideration of extraordinary circumstances not captured in the foregoing categories such as: (i) alleged Abuse involved multiple perpetrators; (ii) harm exacerbated by institutional responses; (iii) threats or actual retaliation for reporting the alleged Abuse; (iv) use of force, violence, or the threat of violence against the Survivor or Survivor's family; (v) the use of religious imagery, rituals, or other aspects of religious faith or practice; and (vi) the location of the abuse.

**Section 4.4      Documentation Requirements.**

While supporting documentation can strengthen a claim, the lack of documentation shall not disqualify a claim. The Survivor Claims Reviewer shall consider the: (a) passage of time since the alleged Abuse; (b) age of the Survivor Claimant at the time of alleged Abuse; (c) circumstances that may have prevented documentation being available; and (d) internal consistency of the Survivor Claim.

6

**Section 4.5    Base Compensation for Allowed Survivor Claims.**

Compensation shall be paid on account of each Allowed Known Survivor Claim and Known Late-Filed Survivor Claim based upon the Evaluation Factors and funds available in the Survivor Compensation Trust by: (a) dividing the total points assigned to such Allowed Known Survivor Claim or Allowed Late-Filed Survivor Claim by the total points assigned to all Allowed Known Survivor Claims and Allowed Late-Filed Survivor Claims; and (b) then multiplying the amount computed in (a) by the amount of funds available in the Survivor Compensation Trust after giving consideration to any reserves established, required to be established, or to be established pursuant to the Survivor Compensation Trust Agreement and Plan.

Compensation shall be paid on account of each Allowed Unknown Survivor Claim based upon the Evaluation Factors and funds available in the Survivor Compensation Trust by: (a) dividing the total points assigned to such Allowed Unknown Survivor Claim by the total points assigned to all Allowed Unknown Survivor Claims; and (b) then multiplying the amount computed in (a) by the amount of funds available in the Unknown Survivor Claims Reserve after giving consideration to any reserves established, required to be established, or to be established pursuant to the Survivor Compensation Trust Agreement and Plan.

**Section 4.6    Adjustments to Base Compensation for Distribution Claimants.**

If a Survivor Claimant elects to be a Distribution Claimant and executes a Survivor Claimant Release releasing all Protected Parties, the Survivor Claimant shall receive in full satisfaction of the Survivor Claimant's Survivor Claim(s) against the Debtor and Other Protected Parties the full amount of the compensation calculated in accordance with Section 4.3, Section 4.4, and Section 4.5 of this Distribution Plan.

If a Survivor Claimant elects to be a Distribution Claimant and executes a Survivor Claimant Release releasing only the Debtor, the Survivor Claimant shall receive in full satisfaction of the Survivor Claimant's Survivor Claim(s) against the Debtor an amount equal to (a) the compensation calculated in accordance with Section 4.3, Section 4.4, and Section 4.5 of this Distribution Plan multiplied by (b) the percentage of funds in the Survivor Compensation Trust contributed by the Debtor in Cash and attributable to the Debtor's interest in the proceeds of Settling Insurer Policies and Non-Settling Insurer Policies. The Survivor Compensation Trustee shall hold in a reserve the remaining balance of the Survivor Claimant's compensation calculated in accordance with Section 4.3, Section 4.4, and Section 4.5 of this Distribution Plan (i.e., the amount attributable to Related Non-Debtor Entities' interests in the proceeds of Settling Insurer Policies and Non-Settling Insurer Policies), which may be distributed only upon presentation of a Litigation Award with respect to any Related Non-Debtor Entity. Upon presentation of any such Litigation Award and payment of the amount held in reserve plus any increased amount by reason of increased recovery from a Non-Settling Insurer Policy, such Survivor Claimant shall have no further recourse against the Survivor Compensation Trust, Insurance Trust, Debtor, or Reorganized Debtor. In the event no Litigation Award is obtained and the amount held in reserve is not obtained by the Survivor Claimant to whom it was originally allocated, such amounts shall revert to the Survivor Compensation Trust for distribution to other Survivor Claimants.

7

**Section 4.7    Adjustments to Base Compensation for Litigation Claimants.**

If a Litigation Claimant holding a Litigation Claim affecting Non-Settling Insurer Policies elects to release only the Debtor, the Litigation Claimant shall receive in full satisfaction of the Litigation Claimant's Litigation Claim(s) against the Debtor an amount equal to (a) the compensation calculated in accordance with Section 4.3, Section 4.4, and Section 4.5 of this Distribution Plan multiplied by (b) the percentage of funds in the Survivor Compensation Trust contributed by the Debtor in Cash and attributable to the Debtor's interest in the proceeds of Settling Insurer Policies and, to the extent adjusted by any Litigation Award, Non-Settling Insurer Policies. The Survivor Compensation Trustee shall hold in a reserve the remaining balance of the Survivor Claimant's compensation calculated in accordance with Section 4.3, Section 4.4, and Section 4.5 of this Distribution Plan (i.e., the amount attributable to Related Non-Debtor Entities' interests in the proceeds of Settling Insurer Policies and Non-Settling Insurer Policies), which may be distributed only upon presentation of a Litigation Award with respect to any Related Non-Debtor Entity. Upon presentation of any such Litigation Award and payment of the amount held in reserve, such Litigation Claimant shall have no further recourse against the Survivor Compensation Trust, Insurance Trust, Debtor, or Reorganized Debtor. In the event no Litigation Award is obtained and the amount held in reserve is not obtained by the Survivor Claimant to whom it was originally allocated, such amounts shall revert to the Survivor Compensation Trust for distribution to other Survivor Claimants.

If a Litigation Claimant holding a Litigation Claim that is uninsured shall receive in full satisfaction of the Litigation Claimant's Litigation Claim(s) against the Debtor an amount equal to (a) the compensation calculated in accordance with Section 4.3, Section 4.4, and Section 4.5 of this Distribution Plan multiplied by (b) the percentage of funds in the Survivor Compensation Trust contributed by the Debtor in Cash, and such Litigation Claimant shall have no further recourse against the Survivor Compensation Trust, Insurance Trust, Debtor, or Reorganized Debtor.

**Section 4.8    Untimely Survivor Claimants.**

Untimely Survivor Claims are not entitled to any compensation; provided, however, upon the expiration of the thirty-six (36) month period during which the Survivor Compensation Trust is required to maintain the Unknown Survivor Claims Reserve, the Survivor Compensation Trustee may provide compensation in the maximum amount of $25,000 for each Allowed Untimely Survivor Claim from the remaining balance in the Unknown Survivor Claims Reserve.

**Section 4.9    Survivor Compensation Trust Reserves.**

When establishing the base compensation to be paid on account of Allowed Survivor Claims under Section 4.5 of this Distribution Plan, the Survivor Claims Reviewer and Survivor Compensation Trustee must give consideration to the funds necessary to establish and maintain appropriate reserves for: (a) Unknown Survivor Claims, as required by the Plan; (b) administrative expenses of the Survivor Compensation Trust, including any funding obligations under the Plan; (c) disputed or otherwise pending Survivor Claims; and (d) future operating expenses of the Survivor Compensation Trust.

8

## ARTICLE 5
## Survivor Claim Election and Distribution Procedures.

**Section 5.1    Distributions to Survivor Claimants Generally.**

Except as set forth in <u>Section 3.2</u>, <u>Section 3.3</u>, and <u>Section 3.4</u> of this Survivor Compensation Trust Distribution Plan, at such time as the Survivor Claims Reviewer has evaluated all Survivor Claims, including any reconsiderations, the Survivor Compensation Trustee shall determine the dollar value of each Survivor Claimant's actual distribution based upon the Survivor Claimant's pro rata share of the total final points assigned and the available funds for distribution.

**Section 5.2    Initial Survivor Claim Determination.**

**(a)    Timing.**

Within ninety (90) days of receiving a completed Survivor Claim submission, the Survivor Claims Reviewer shall: (i) evaluate the Survivor Claim utilizing the Evaluation Factors; (ii) calculate the point total for such Survivor Claim utilizing the Evaluation Factors; and (iii) calculate the proposed award amount.

**(b)    Notice to Survivor Claimant.**

The Survivor Compensation Trustee shall provide notice to each applicable Survivor Claimant of: (i) the point total assigned such Survivor Claimant's Survivor Claim; (ii) the proposed compensation amount; (iii) the right to request reconsideration in accordance with <u>Section 5.3</u> of this Distribution Plan; and (iv) the procedures for accepting the award or, if applicable, electing treatment as a Litigation Claimant.

**Section 5.3    Survivor Claimant's Request for Reconsideration.**

Within fourteen (14) days after the date of mailing of the notice required by <u>Section 5.2(b)</u> of this Distribution Plan, a Survivor Claimant may request reconsideration of the Survivor Claims Reviewer's initial evaluation of such Survivor Claimant's Survivor Claim. Each request for reconsideration must be accompanied by a check for the reconsideration fee in the amount of Five Hundred Dollars ($500), which reconsideration fee may be waived by the Survivor Claims Reviewer upon a determination, supported by a statement signed by the Survivor Claimant under penalty of perjury, that such Survivor Claimant is unable to pay the reconsideration fee. Upon seeking reconsideration, the applicable Survivor Claimant may, but is not required to, submit additional evidence and argument in support of such request. As a result of the requested reconsideration, the Survivor Claims Reviewer's evaluation may increase or decrease, with such determination upon reconsideration being final and not subject to any further reconsideration, review, or appeal by any party, including any court.

**Section 5.4    Election Process.**

Within thirty (30) days of receiving their final award determination, a Survivor Claimant must elect one of the following:

(a) to accept in writing the Survivor Claims Reviewer's determination and treatment as a Distribution Claimant; or

(b) if eligible, to request authorization from the Survivor Compensation Trustee to be treated as a Litigation Claimant, by executing a Litigation Claimant Agreement in the form attached as Exhibit I to the Plan.

If a Survivor Claimant fails to make an election within the thirty (30) day period, or if a Survivor Claimant seeks authorization to be treated as a Litigation Claimant but such authorization is not granted by the Survivor Compensation Trustee, such Survivor Claimant shall be treated as a Distribution Claimant.

When a Survivor Claimant makes the election required by this Section 5.4 of this Distribution Plan, such Survivor Claimant shall additionally indicate whether the Survivor Claimant is executing a release with respect to only the Debtor or with respect to the Debtor and all Related Non-Debtor Entities.

**Section 5.5    Litigation Claimant Procedures.**

**(a)    Authorization Required.**

With respect to Survivor Claims implicating one or more Non-Settling Insurer Policies, the Survivor Compensation Trustee shall have the sole discretion to authorize a Litigation Claimant to pursue a Litigation Claim, make a final decision as to whether a Litigation Claim is pursued, and make a final decision relating to the management and timing of litigation relating to Litigation Claims: (i) considering (A) whether the applicable Survivor Claim potentially relates to an Insurance Claim against one more Non-Settling Insurers; (B) the Survivor Claimant's likelihood of success asserting the Survivor Claim; (C) the impact on the resources of the Insurance Trust and Survivor Compensation Trust; (D) the cumulative burden on the Co-Insured Entities; and (E) the likelihood of recovery on any Insurance Claim(s) against one or more Non-Settling Insurers; and (ii) using reasonable efforts to minimize the cumulative impact of post-Effective Date litigation on the business operations and legal and personnel resources of the Co-Insured Entities and Insurance Trust.

Prior to authorizing a Survivor Claimant to be treated as a Litigation Claimant and proceed with the applicable Litigation Claim, the Survivor Compensation Trustee shall consult with counsel for the Survivor Claimant, any Co-Insured Entity(ies) against which such proposed Litigation Claim would be asserted, and the Insurance Trust, to coordinate, among other things, a mutually acceptable litigation schedule and require the Survivor Claimant to execute and deliver a Survivor Claimant Release and a Litigation Claimant Agreement.

If the Survivor Compensation Trustee determines a Litigation Claim does not affect Non-Settling Insurer Policies, the Survivor Compensation Trustee shall authorize the Litigation Claimant to pursue their Litigation Claim upon the conditions set forth in the Litigation Claimant Agreement.

10

**(b)      Coordination Requirements.**

If a Survivor Claimant is authorized to be treated as a Litigation Claimant and pursue a Litigation Claim implicating one or more Non-Settling Insurer Policies, such Litigation Claimant shall: (i) coordinate litigation scheduling with all affected parties; (ii) minimize the cumulative impact on Protected Parties and Settling Insurers; and (iii) otherwise abide by the terms of the Litigation Claimant Agreement.

**(c)      Proceeds of Litigation Claims.**

The proceeds of Non-Settling Insurer Policies derived from any Litigation Claims shall be paid in accordance with the terms of Section 4.8, Section 5.8, and Section 6.4.2 of the Plan, with the likely result of increasing the total assets available for distribution by the Survivor Compensation Trust.

**(d)      Resolution of Litigation Claim(s).**

Except with respect to Survivor Claimants who elected to be treated as uninsured Litigation Claimants, at such time as a Litigation Claim no longer relates to an Insurance Claim against a Non-Settling Insurer, such Litigation Claim shall be treated as a Distribution Claim with the applicable Litigation Claimant being treated as a Distribution Claimant.

**Section 5.6      Payment Procedures.**

**(a)      Timing of Payments.**

Payments shall be made on account of Allowed Survivor Claims that are Distribution Claims within sixty (60) days of: (a) execution of a Survivor Claimant Release by the applicable Survivor Claimant; (b) receipt by the Survivor Compensation Trustee of all required tax forms; and (c) satisfaction of any Medicare and Medicaid obligations.

**(b)      Form of Payments.**

All payments on account of Allowed Survivor Claims shall be made by check or electronic transfer, be payable to the applicable Survivor Claimant or as otherwise directed in writing by the applicable Survivor Claimant, and subject to tax withholdings, if any.

**(c)      Uncashed Checks.**

Any checks not cashed within one hundred eighty (180) days shall be void. Any Survivor Claimant may request the reissuance of a check on account of their Survivor Claim within one (1) year of the initial payment issued to such Survivor Claimant. If a Survivor Claimant has not cashed a check relating to the distribution on account of their Survivor Claim within the later of one (1) year from the initial payment issued and one (1) year from any reissued payment to such Survivor Claimant, the funds to be distributed to such Survivor Claimant shall revert to the Survivor Compensation Trust to be distributed pursuant to and in accordance with this Distribution Plan and the Survivor Compensation Trust Agreement.

11

## ARTICLE 6
### Miscellaneous Provisions.

**Section 6.1    Plan Incorporation.**

The terms of the Plan and the Confirmation Order are incorporated into this Distribution Plan. In the event of any conflict between the terms of this Distribution Plan and the Plan, the terms of the Plan shall govern.

**Section 6.2    Amendments.**

This Distribution Plan may be amended by the Survivor Compensation Trustee upon: (a) consent of Survivor Claimants and applicable Co-Insured Entities; or (b) Bankruptcy Court approval, after notice and hearing; provided, however, this Distribution Plan may not be amended in any way that impairs the obligations set forth in the Plan with respect to Post-Effective Date Costs or the Post-Effective Date Costs Reserve.

**Section 6.3    Governing Law.**

To the extent not inconsistent with the Bankruptcy Code, the Distribution Plan shall be administered under, governed by, and enforced according to the laws of the State of Maryland.

**Section 6.4    Tax Matters.**

**(a)    Claimant Responsibility.**

Each Survivor Claimant is responsible for their own tax obligations.

**(b)    No Tax Advice.**

Neither the Survivor Claims Reviewer nor Survivor Compensation Trustee provides tax advice.

**(c)    Tax Reporting.**

The Survivor Compensation Trust shall issue or cause to be issued all appropriate tax forms as required by applicable law.

**Section 6.5    No Admission of Liability; No Res Judicata Effect.**

Neither the allowance of a Survivor Claim nor payment of any distribution on account of a Survivor Claim pursuant to this Distribution Plan or otherwise shall constitute an admission of liability by, for, or on account of any Protected Party or Settling Insurer, an admission of the validity of any allegations of Abuse underlying any Survivor Claim or otherwise serve as evidence in any proceeding.

Neither the allowance of a Survivor Claim nor payment of any distribution on account of a Survivor Claim pursuant to this Distribution Plan or otherwise shall have any preclusive, res

judicata, judicial estoppel, or other similar effect as to any third party outside of the Chapter 11 Case.

**Section 6.6    Cooperation.**

Survivor Claimants shall reasonably cooperate with the Survivor Claims Reviewer, Survivor Compensation Trustee, and Survivor Compensation Trust in: (a) providing information necessary for the evaluation of Survivor Claims; (b) pursuing Insurance Claims against Non-Settling Insurers; (c) complying with reporting obligations; and (d) otherwise complying with the duties and obligations of the Survivor Claims Reviewer, Survivor Compensation Trustee, and Survivor Compensation Trust.

**Section 6.7    Binding Effect.**

This Distribution Plan is an integral part of the Plan and is binding upon all Survivor Claimants, the Survivor Claims Reviewer, the Survivor Compensation Trustee, and all parties to the Plan.

**Section 6.8    Dispute Resolution.**

**(a)    Bankruptcy Court Jurisdiction.**

The Bankruptcy Court retains exclusive jurisdiction over disputes arising out of or relating to this Distribution Plan.

**(b)    No Punitive or Consequential Damages.**

In any dispute arising out of or relating to this Distribution Plan, no party shall be entitled to recovery of punitive or consequential damages.

**(c)    Reimbursement of Costs.**

If the Survivor Compensation Trustee, Survivor Claims Reviewer, or the Survivor Compensation Trust, as the case may be, is the prevailing party in a dispute regarding the provisions of this Distribution Plan or the enforcement of a provision of this Distribution Plan, the Survivor Compensation Trustee, Survivor Claims Reviewer, or the Survivor Compensation Trust, as the case may be, shall be entitled to collect from the non-prevailing party any and all costs, reasonable and documented out-of-pocket expenses and fees, including attorneys' fees, incurred in connection with the dispute or enforcement action.

**Section 6.9    Captions.**

The captions of Articles and Sections in this Distribution Plan are included for convenience only and are to be disregarded in interpreting this Distribution Plan.

13

**EXHIBIT H**
**SURVIVOR CLAIMANT RELEASE**

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND**

In re:

ROMAN CATHOLIC ARCHBISHOP OF
BALTIMORE,

               Debtor.[1]

Chapter 11

Case No. 23-16969-MMH

**SURVIVOR CLAIMANT RELEASE AGREEMENT**

This Survivor Claimant Release Agreement (the "***Agreement***") is entered into and executed by [_] (the "***Survivor Claimant***"), pursuant to the *Third Amended Chapter 11 Plan of Reorganization for the Roman Catholic Archbishop of Baltimore, a Corporation Sole* (Dkt. No. [_]) (the "***Plan***")[2] and in favor, and for the benefit, of the Debtor, Additional Debtors, Reorganized Debtor, Additional Reorganized Debtors, other Protected Parties, and Settling Insurers.

WHEREAS, the Survivor Claimant asserted a Survivor Claim against one or more of the Debtor, other Protected Parties, Non-Settling Insurers, or Settling Insurers;

WHEREAS, the Bankruptcy Court has entered the Confirmation Order on [_] [_], 20[_];

WHEREAS, the Effective Date occurred on [_] [_], 20[_];

NOW, THEREFORE, in consideration of the treatment to be provided Survivor Claimant's Survivor Claim under the Plan and other Plan Documents, Survivor Claimant irrevocably covenants and agrees as follows:

**Article 1.
Survivor Claimant Acknowledgment and Certification**

**Section 1.1    Survivor Claimant Consent and Acknowledgment.**

Survivor Claimant accepts and acknowledges that:

(a)    under the Plan, Distributions from the Survivor Compensation Trust to holders of Survivor Claims will be determined solely by the Survivor Claims Reviewer approved by the Bankruptcy Court;

---

[1] The last four digits of the Debtor's federal tax identification number are 1535. The Debtor's principal place of business is located at 320 Cathedral Street, Baltimore, Maryland 21201.

[2] Capitalized terms used and not otherwise defined in this Agreement shall have the meanings ascribed to them in the Plan.

(b)      the decision of the Survivor Claims Reviewer is final and not subject to appeal or further review by any court or other adjudicative authority;

(c)      payments to Survivor Claimant from the Survivor Compensation Trust on account of Survivor Claimant's Survivor Claim (if any) will be determined by the Survivor Claims Reviewer in accordance with the Plan, Confirmation Order, Survivor Compensation Trust Agreement, and Survivor Compensation Trust Distribution Plan;

(d)      if Survivor Claimant is not authorized to pursue a Litigation Claim under the Plan terms, Survivor Claimant may be waiving any right to a trial by jury or otherwise against the Debtor, Reorganized Debtor, any other Protected Party, any Non-Settling Insurers, or any Settling Insurers, with respect to Survivor Claimant's Survivor Claim; and

(e)      Survivor Compensation Trust Assets (as they may be supplemented by any proceeds of successful Litigation Claims or settlements with Non-Settling Insurers) shall constitute the sole source of recovery for Survivor Claimant's Survivor Claim.

By signing below, Survivor Claimant certifies that Survivor Claimant has reviewed and understands the Survivor Compensation Trust Distribution Plan and consents to the method set forth in the Plan and Survivor Compensation Trust Distribution Plan for determining Distributions on account of Survivor Claimant's Survivor Claim.

## Section 1.2      **Exculpation Acknowledgment.**

Survivor Claimant accepts and acknowledges that, except as expressly provided in the Plan, none of the Protected Parties, Settling Insurers, or Exculpated Parties will have or incur any liability to, or be subject to any right of action by, Survivor Claimant, any other party in interest, or any of their respective representatives, financial advisors, or affiliates, or any of their successors or assigns, for any act or omission in or relating to the Chapter 11 Case, including the exercise of their respective business judgment and the performance of their respective fiduciary obligations, the pursuit of confirmation of the Plan, or the administration of the Plan or the Survivor Compensation Trust, and in all respects, such parties will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan or in the context of the Chapter 11 Case.

## Section 1.3      **Medicare Secondary Payor Act Provisions.**

Survivor Claimant accepts and acknowledges that, except as provided in the Plan, the Debtor, Additional Debtors, Reorganized Debtor, Additional Reorganized Debtors, Survivor Compensation Trust, Survivor Compensation Trustee, Protected Parties, Settling Insurers, and professionals employed by the foregoing shall not have any liability to any entity, including any governmental entity or insurer, on account of payments made to Survivor Claimant, including any liability under the MSPA. Survivor Claimant agrees to provide the Survivor Compensation Trustee with any information necessary to comply with reporting obligations arising under the MMSEA. Survivor Claimant acknowledges and agrees that if Survivor Claimant does have any obligations owing or potentially owing under the MSPA relating to any Survivor Claim or Distribution from

the Survivor Compensation Trust, the Trustee may withhold from any payment directly or indirectly to Survivor Claimant funds sufficient to assure that any obligations owing or potentially owing under the MSPA relating to such Survivor Claim are paid to the applicable agency.

**Article 2.**
**Survivor Claimant's General Release of Survivor Claims**
**Against Protected Parties and Settling Insurers.**

**Section 2.1      Acknowledgment of Receipt and Review.**

Survivor Claimant, individually and on behalf of Survivor Claimant's heirs, successors, assigns, agents and representatives, acknowledges that Survivor Claimant has received and reviewed copies of the Plan, Disclosure Statement, and each of the exhibits attached to the Plan and Disclosure Statement (including the Survivor Compensation Trust Distribution Plan), and has had an opportunity to consult with counsel of Survivor Claimant's choice regarding those documents and the substance of this Agreement, including, without limitation, the release provisions set forth in the Plan and this Agreement.

**Section 2.2      Survivor Claimant's Release.**

Survivor Claimant, individually and on behalf of Survivor Claimant's heirs, successors, assigns, agents and representatives, does now hereby:

(a)      voluntarily, intentionally, knowingly, absolutely, unconditionally, irrevocably, fully, finally, and completely releases, acquits, and forever discharges the Settling Insurers (including the Settling Insurers' reinsurers and retrocessionaires) with respect to Survivor Claimant's Survivor Claim and the Settling Insurer Policies, with such release and discharge being effective as of the occurrence of the Effective Date; and

**(select one by initialing)**

_____          **Release of Debtor, Settling Insurers, and Related Non-Debtor Entities.**

(b) voluntarily, intentionally, knowingly, absolutely, unconditionally, irrevocably, fully, finally, and completely releases, acquits, and forever discharges the Protected Parties and Settling Insurers (including the Settling Insurers' reinsurers and retrocessionaires) (collectively, the "***Released Parties***") of and from any and all past, present, and future Claims, and each Protected Party's, Settling Insurer's, and Exculpated Party's portion or share of Survivor Claimant's damages that, directly or indirectly, arise out of, relate to, or are connected with: (i) Survivor Claimant's Survivor Claim and any other Channeled Claims; (ii) Claims that directly or indirectly arise out of, relate to, or are in connection with the handling of Survivor Claimant's Survivor Claim and any other Channeled Claims; (iii) any Settling Insurer Policy; (iv) any Medicare Claim; and (v) all Claims that directly or indirectly arise from, relate to, or are connected with the Chapter 11 Case.

3

_____   **Release of <u>Only</u> the Debtor and Settling Insurers.**

(b) voluntarily, intentionally, knowingly, absolutely, unconditionally, irrevocably, fully, finally, and completely releases, acquits, and forever discharges the Debtor and Settling Insurers (including the Settling Insurers' reinsurers and retrocessionaires) (collectively, the "***Released Parties***") of and from any and all past, present, and future Claims, and the Debtor's and each Settling Insurer's portion or share of Survivor Claimant's damages that, directly or indirectly, arise out of, relate to, or are connected with: (i) Survivor Claimant's Survivor Claim and any other Channeled Claims; (ii) Claims that directly or indirectly arise out of, relate to, or are in connection with the handling of Survivor Claimant's Survivor Claim and any other Channeled Claims; (iii) any Settling Insurer Policy; (iv) any Medicare Claim; and (v) all Claims that directly or indirectly arise from, relate to, or are connected with the Chapter 11 Case.

**Section 2.3   <u>Survivor Claimant's Covenant Not to Sue.</u>**

Survivor Claimant, individually and on behalf of Survivor Claimant's heirs, successors, assigns, agents and representatives, does hereby voluntarily and irrevocably agree and covenant:

(a)   that Survivor Claimant shall not sue or seek recovery or relief of any kind from the Released Parties, in connection with any and all past, present, and future Claims that directly or indirectly arise out of, relate to, or are in connection with Survivor Claimant's Survivor Claim or any other Channeled Claims, or the handling of Survivor Claimant's Survivor Claim, Channeled Claims, the Settling Insurer Policies, any Medicare Claim, or the Chapter 11 Case; provided, however, that the foregoing shall not prevent Survivor Claimant from taking such actions as may be necessary and appropriate to pursue, assert, or liquidate any Litigation Claim that Survivor Claimant may be authorized to pursue under the terms of the Plan or to collect the proceeds from such Litigation Claim solely from any Non-Settling Insurer, to the extent allowed under the terms of the Plan;

(b)   to forever and irrevocably discharge that fraction, portion, or percentage of damages Survivor Claimant may have suffered in connection with any Abuse that is by trial or other disposition determined to be the causal fault or responsibility, if any, of any Released Party;

(c)   that the trial court in any future action that directly or indirectly arises out of, relates to, or is connected with the Claims released by this Agreement will be bound by this Agreement, and that Survivor Claimant will not oppose any future defense counsel submitting this Agreement in such an action;

(d)   that the releases set forth in this Agreement, when effective in accordance with the terms of this Agreement, extinguish any potential liability of each and every Released Party for contribution or indemnity to any Person who has been or may be held liable to Survivor Claimant for any Survivor Claim or Channeled Claim; and

4

(e) to be bound by the injunctions set forth in the Plan, including those injunctions contained in Article 13 of the Plan for the benefit of the Protected Parties, Exculpated Parties, and Settling Insurers (including the Settling Insurers' reinsurers or retrocessionaires).

## Article 3.
## Representations, Third Party Beneficiaries, and Successors.

### Section 3.1 Survivor Claimant's Representations and Warranties.

Survivor Claimant represents and warrants that: (a) Survivor Claimant is the sole holder of the Survivor Claim asserted by Survivor Claimant against the Debtor, Reorganized Debtor, any other Protected Party, or any Settling Insurer; (b) Survivor Claimant has not assigned, transferred, or granted any interest in such Survivor Claim to any other Person; and (c) Survivor Claimant has not assigned or transferred to any Person any Claims Survivor Claimant may have against any Settling Insurers, Debtor, or other Protected Parties.

### Section 3.2 Third Party Beneficiaries.

The releases, discharges, covenants, and other undertakings made by Survivor Claimant pursuant to this Agreement shall be absolute and irrevocable. Each of the Released Parties shall be intended third party beneficiaries of this Agreement and shall have the right to enforce the terms of this Agreement in any court of competent jurisdiction.

### Section 3.3 Binding Agreement.

The provisions of this Agreement shall be binding upon Survivor Claimant and Survivor Claimant's heirs, successors, assigns, agents, and representatives.

[Signature Page Follows]

**IN WITNESS WHEREOF,** this Agreement has been executed by Survivor Claimant (or, in the case of death or legal disability, Survivor Claimant's duly authorized legal representative acting under power of attorney) and delivered to the Survivor Compensation Trustee as of the date set forth below.

**Dated:** [_] [_], 20[_]

_____
Signature

_____
Printed Name

_____
Survivor Claim Number

_____
Street Address

_____
City, State, Zip Code

_____
Full Social Security Number

_____
E-mail address

_____
Phone Number

[Signature Page to Survivor Claimant Release]

**EXHIBIT I**
**LITIGATION CLAIMANT AGREEMENT**

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND**

In re:

ROMAN CATHOLIC ARCHBISHOP OF
BALTIMORE,

                  Debtor.[1]

Chapter 11

Case No. 23-16969-MMH

**LITIGATION CLAIMANT AGREEMENT**

This Litigation Claimant Agreement (the "***Agreement***") is entered into and executed by [_] (the "***Survivor Claimant***") and the Survivor Compensation Trustee, as trustee of the Survivor Compensation Trust established pursuant to the *Third Amended Chapter 11 Plan of Reorganization for the Roman Catholic Archbishop of Baltimore, a Corporation Sole* (Dkt. No. [_]) (the "***Plan***"):[2]

**WHEREAS** Survivor Claimant has asserted a Survivor Claim against the Roman Catholic Archbishop of Baltimore (the "***Debtor***") and/or one or more Protected Parties;

**WHEREAS** on [_] [_], 20[_], the Bankruptcy Court entered the Confirmation Order;

**WHEREAS** the Effective Date occurred on [_] [_], 20[_];

**WHEREAS** Survivor Claimant has previously executed and delivered to the Survivor Compensation Trustee a Survivor Claimant Release Agreement in the form attached to the Plan as **Exhibit H**, the terms of which are incorporated and made a part of this Agreement as if fully set forth fully at length in this Agreement;

**WHEREAS** Survivor Claimant has elected treatment as a Litigation Claimant under the Plan and requested that the Survivor Compensation Trustee authorize Survivor Claimant's pursuit of their Survivor Claim as a Litigation Claim in accordance with and subject to the terms of the Plan and as set forth in this Agreement;

**WHEREAS** the Survivor Compensation Trustee, after consultation with the Debtor, Reorganized Debtor, Related Non-Debtor Entities, and Insurance Trustee, believes in good faith that Survivor Claimant's Survivor Claim [is covered, in whole or in part, by one or more Non-

---

[1] The last four digits of the Debtor's federal tax identification number are 1535. The Debtor's principal place of business is located at 320 Cathedral Street, Baltimore, Maryland 21201.

[2] Capitalized terms used and not otherwise defined in this Agreement shall have the meanings ascribed to them in the Plan.

Settling Insurer Policies] **OR** [is not covered in whole or in part by any insurance policy relating to the Debtor or Related Non-Debtor Entities];

**WHEREAS** the Survivor Compensation Trustee, after consideration of the requirements set forth in the Plan, has determined to authorize Survivor Claimant's election to be treated as a Litigation Claimant and to pursue their Litigation Claim;

**NOW, THEREFORE,** in consideration of the agreements, covenants and obligations set forth herein, and the treatment to be provided to Survivor Claimant's Survivor Claim under the Plan, Survivor Claimant and the Survivor Compensation Trustee hereby covenant and agree as follows:

**Section 1.1    Authorization to Proceed as a Litigation Claimant.**

Subject to the limitations and conditions set forth in this Agreement and in the Plan, the Survivor Compensation Trustee hereby authorizes Survivor Claimant to pursue his or her Survivor Claim as a Litigation Claim.

**Section 1.2    Conduct of Litigation Regarding the Litigation Claim.**

Survivor Claimant may, at Survivor Claimant's sole cost and expense, commence or continue prosecution of an action against the Debtor, Reorganized Debtor, Related Non-Debtor Entity, other Protected Party, or any Non-Settling Insurer, as such Persons are identified on Schedule 1 to this Agreement, in any court of competent jurisdiction, solely for the purposes of: (a) establishing whether such Persons may have any liability with respect to Survivor Claimant's Litigation Claim; (b) determining the amount of that liability; and [(c) permitting and facilitating the pursuit by the Insurance Trust of Insurance Claims against any Non-Settling Insurers] **OR IF NO INSURANCE** [(c) seeking to obtain a judgment in favor of the Survivor Claimant].

**Section 1.3    Acknowledgment of Limited Recourse.**

Any Litigation Award obtained by Survivor Claimant, including, without limitation, any judgment or verdict in respect of Survivor Claimant's Litigation Claim, shall not be enforced against: (a) any Released Party (as defined in Survivor Claimant's Survivor Claimant Release Agreement); (b) any of the non-insurance property or assets of any Released Party (as defined in Survivor Claimant's Survivor Claimant Release Agreement); or (c) any property or assets that are vested with the Reorganized Debtor pursuant to the Plan.

Survivor Claimant covenants and agrees to take any action reasonably requested to enable the any Released Party (as defined in Survivor Claimant's Survivor Claimant Release Agreement) to transfer, mortgage, or otherwise encumber any real or personal property free and clear of any judgment lien, so long as such action does not have a material adverse effect on Survivor Claimant's, Survivor Compensation Trustee's, or Insurance Trustee's rights with respect to any Insurance Claim arising from Survivor Claimant's Litigation Claim.

2

**Section 1.4**   **<u>Defenses Preserved; No Estoppel or Preclusion.</u>**

Nothing in the Plan shall prevent the Debtor, Reorganized Debtor, any other Protected Party, Related Non-Debtor Entities, Non-Settling Insurers, or any Settling Insurer from asserting any legal or factual defenses they may have in response to Survivor Claimant's Litigation Claim. Any determination by the Survivor Claims Reviewer of Survivor Claimant's qualification to receive Distributions under the Plan and, if applicable, payment of partial Distributions, shall not impair or enhance Survivor Claimant's right to obtain a judgment, including a judgment based on joint and several liability, against any of the parties listed on Schedule 1 to this Agreement; <u>provided</u>, <u>however</u>, that recourse against the Released Parties (as defined in Survivor Claimant's Survivor Claimant Release Agreement) shall be limited as set forth in this Agreement and in the Plan.

Neither the Survivor Claims Reviewer's review of a Survivor Claim and determination of qualification, nor the Survivor Compensation Trust's payment of any Distributions shall: (a) constitute a trial, an adjudication on the merits, or evidence of liability or damages in any litigation between the Survivor Claimant and the Debtor, Reorganized Debtor, Protected Parties, Related Non-Debtor Entities, Non-Settling Insurers, or any other Person; or (b) constitute, or be deemed, a determination of the reasonableness of the amount of Survivor Claimant's Claim, either individually or in the aggregate with other Litigation Claims, in any litigation with any Non-Settling Insurers.

The Survivor Compensation Trust's payment of Distributions does not create an admission of the fact of liability, or the extent of damages, on behalf of the Debtor, Reorganized Debtor, any other Protected Parties, any Related Non-Debtor Entities, or any Settling Insurer.

**Section 1.5**   **<u>Withdrawal of Litigation Claim, Discharge, and Release.</u>**

**(a)**   **Option to Withdraw Litigation Claim Election.**

At any time before commencing an action in the tort system to enforce Survivor Claimant's Litigation Claim, upon written notice to the Survivor Compensation Trustee, Survivor Claimant may rescind the election to be treated as a Litigation Claimant under the Plan. Survivor Claimant's determination not to proceed as a Litigation Claimant under this paragraph shall be irrevocable.

**(b)**   **Automatic Discharge.**

Survivor Claimant hereby acknowledges and agrees that any Claim Survivor Claimant may hold against the Debtor, Reorganized Debtor, and/or any Settling Insurer shall automatically be deemed to be waived, discharged and released upon the occurrence of the Effective Date of the Plan.

3

**Section 1.6**     **Third Party Beneficiaries; Post-Effective Date Costs.**

    **(a)**     **Third Party Beneficiaries.**

Each of the Released Party (as defined in Survivor Claimant's Survivor Claimant Release Agreement) shall be intended third party beneficiaries of this Agreement, and shall have the right to enforce the terms hereof in any court of competent jurisdiction.

    **(b)**     **Post-Effective Date Costs.**

Any and all Post-Effective Date Costs incurred by the Debtor, Reorganized Debtor, Related Non-Debtor Entities, or any Protected Party in connection with responding to, prosecuting or defending Survivor Claimant's Litigation Claim which are not reimbursed directly by any Non-Settling Insurer contemporaneously as such Post-Effective Date Costs are incurred, shall be paid by the Trusts in accordance with the provisions of the Plan.

    **(c)**     **Notice.**

The Survivor Compensation Trustee shall provide a copy of this Agreement to the Reorganized Debtor upon execution, and to any other Protected Parties, Related Non-Debtor Entities, or Settling Insurers upon request.

**Section 1.7**     **Binding Agreement.**

The provisions of this Agreement shall be binding upon Survivor Claimant and Survivor Claimant's heirs, successors, assigns, agents, and representatives.

**Section 1.8**     **Applicable Law.**

This Agreement shall be governed by and construed in accordance with the laws of the State of Maryland and applicable federal bankruptcy law.

[Signature Page Follows]

**IN WITNESS WHEREOF,** this Agreement has been executed by Survivor Claimant (or, in the case of death or legal disability, Survivor Claimant's duly authorized legal representative acting under power of attorney) and delivered to the Survivor Compensation Trustee as of the date set forth below.

**Dated:** [_] [_], 20[_]

_____
Signature

_____
Printed Name

_____
Survivor Claim Number

_____
Street Address

_____
City, State, Zip Code

_____
Full Social Security Number

_____
E-mail address

_____
Phone Number

[Signature Page to Litigation Claimant Agreement]

**EXHIBIT J**
**CHILD PROTECTION POLICIES AND PROCEDURES**

[To be included in Plan Supplement]