## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | |
|---|---|
| In re: | Case No. 23-16969 |
| Roman Catholic Archbishop of Baltimore, | Chapter 11 |
| Debtor. | Judge Michelle M. Harner |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' LIMITED OBJECTION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING DEBTOR TO RECORD PREPETITION EXECUTED FEE SIMPLE DEED AND TO TRANSFER ANY INTEREST THEREIN UNDER 11 U.S.C. §363(b)(1)**

The Official Committee of Unsecured Creditors (the "Committee"), files this limited objection (the "Objection") to the Roman Catholic Archbishop of Baltimore's (the "Debtor's") Motion for Order Authorizing Debtor to Record Prepetition Executed Fee Simple Deed and to Transfer Any Interest Therein under 11 U.S.C. § 363(b)(1) (the "Motion") [ECF No. 2714]. The Court should deny the Motion because the Debtor has not satisfied the requirements of section 363(b).

### INTRODUCTION

The Motion asks this Court to authorize the recording of an unrecorded deed and the sale of "any interest" the Debtor may have in real property while simultaneously maintaining that the Debtor has no ownership interest at all. The Debtor cannot have it both ways. If the Debtor has no ownership interest, then no section 363(b) authorization is necessary and no administrative fee is owed. If the Debtor does have an interest, as the unrecorded state of the deed and Section 544(a)(3) of the Bankruptcy Code suggest, then the full net proceeds of a $1.2 million sale belong to the estate, not just a $60,000 administrative fee and a $59,497.83 debt repayment. The Debtor has repeatedly attempted to push through similar motions, all of which ask this Court to transfer estate

6623850.1

1

CORE/3529758.0002/247904605.5

property outside of the estate for nothing in return. In fact, this is the third time that the Debtor has brought a similar motion regarding the specific property at issue here.[1] Each time, the Committee has requested that the Debtor simply comply with the provisions of the Bankruptcy Code.[2] However, the Debtor has yet again refused to comply with key provisions of 11 U.S.C. (the "Bankruptcy Code") sections 363 and 541.

Specifically, the Debtor has failed to demonstrate that a sound business purpose exists to justify directing the vast majority of sale proceeds resulting from the relevant transaction to a non-debtor entity, the Debtor has not shown that the consideration flowing to the estate is fair, and the Debtor has not provided adequate notice. Moreover, even if the transfer is authorized, proceeds generated from the sale must remain property of the estate under Section 541(a)(6) and may not be diverted to a non-debtor entity outside this Court's jurisdiction. The proposed order compounds these problems by purporting to override any future confirmed plan and permitting the Parish at issue to access proceeds without further court order or court approval.

The Debtor's pattern of seeking to move estate property beyond the reach of creditors is unfortunately not new. Just days ago, this Court denied approval of the Debtor's disclosure statement, finding that the Debtor "does not get to decide unilaterally what assets it discloses or makes available for distribution to creditors" and that "[t]hose matters are decided under the Bankruptcy Code in the first instance." Order Denying Approval of Disclosure Statements [ECF No. 2813 at 11]. The Debtor cannot be allowed to avoid the requirements of the Bankruptcy Code to remove estate property from the reach of creditors. It must be held to the same standard as any other debtor appearing before this Court. The Motion should thus be denied.

---

[1] *See* ECF Nos. 1821, 2438, & 2714.
[2] *See* ECF Nos. 1849 & 2554.

6623850.1

2

CORE/3529758.0002/247904605.5

## BACKGROUND

1.      More than sixteen (16) years ago, the Debtor alleges it transferred its interest in the parcel of real property at issue (the "Real Property") to its parish St. Rose of Lima Catholic Congregation, Incorporated (the "Parish" or "St. Rose") by executing a fee simple deed (the "Deed Transfer") for no consideration, purportedly to comply with Maryland Code, Corporations & Associations § 5-305. The Deed Transfer was never recorded. Legal title to the Real Property therefore remained in the Debtor's name on the land records as of the Petition Date.[3]

2.      The Debtor alleges that the Parish has continued in possession of the Real Property since the Deed Transfer. Notably, however, the deed itself contains a restrictive covenant requiring "the written permission of the then current Roman Catholic Archbishop of Baltimore" for any sale or alienation by the Parish. The Debtor thus retains both a property interest and functional control over the Property's disposition notwithstanding the purported transfer of title.

3.      On September 29, 2023 (the "Petition Date"), the Debtor filed for bankruptcy under chapter 11 of the Bankruptcy Code.

4.      Since then, it has been acting as a debtor-in-possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.      Early in the case, the Debtor sought, and the Court granted, bankruptcy protection for several of its affiliates, including the Parish, by extending the automatic stay to protect the Parishes from impending lawsuits filed by Survivors of child sexual assault to the extent of their shared insurance with the Debtor. *See* Second Interim Order, Pursuant to Sections 105(a) and 362 of the Bankruptcy Code, Extending the Automatic Stay to Certain Related Entities ("Order Extending the Stay to Parishes") (Nov. 6, 2023) [ECF No. 173]. The Debtor has also consistently

---

[3] *See generally* Motion at 2.

expressed its intent to seek third party releases from Survivors' claims for its affiliates, including the Parish. Third Amended Chapter 11 Plan of Reorganization for the Roman Catholic Archbishop of Baltimore, a Corporation Sole, §§ 1.1.131, 13.3, Ex. H [ECF No. 2784].

6.      St. Rose of Lima is one of the parishes affected by the Debtor's "Seek the City to Come" initiative, through which the Debtor has consolidated parishes and freed up real property parcels for sale.[4] The Real Property is no longer a place of worship.[5]

7.      On December 26, 2025, the Debtor filed a Motion for Order Authorizing Debtor to Record Prepetition Executed Fee Simple Deeds [Dkt. No. 1821] to record certain prepetition deed transfers, including the Deed Transfer at issue here. The Committee objected to that motion on January 9, 2026. *See The Official Committee of Unsecured Creditor's Objection to Debtor's Motion for Order Authorizing Debtor to Record Prepetition Executed Fee Simple Deeds* [Dkt. No. 1849].

8.      On February 11, 2026, the Debtor and the Committee reached a stipulation (the "Stipulation") concerning one of those deeds, but that stipulation did not extend to the Deed Transfer. *See* Stipulation and Consent Order Resolving Motion for Order Authorizing Debtor to Record Prepetition Executed Fee Simple Deeds (St. Gregory Parish Deed Only) [Dkt. No. 2029]. That Stipulation preserved both parties' arguments, defenses, and causes of action relating to the proceeds of any sale of the real property at issue there, including the extent of the Debtor's interest in the real property. *Id.*, Ex. A at 7. The Stipulation also required the Debtor to disclose to the Committee certain information about the marketing and sale process. *Id.* at 8.

---

[4] *See, e.g.*, Adv. Proc. 26-00041-MMH, Dkt. No. 13-9, Ex. G, "201 Sale of Property" page on Debtor's website, at § 201.11.
[5] Motion at 5.

9.    On May 20, 2026, the Debtor brought another Motion for Order Authorizing Debtor to Record Prepetition Executed Fee Simple Deed (St. Rose Parish Deed) [Dkt. No. 2438]. The Committee filed an objection on June 3, 2026. *See The Official Committee of Unsecured Creditors' Objection to Debtors' Motion for Order Authorizing Debtor to Record Prepetition Executed Fee Simple Deed*s [Dkt. No. 2554].

10.    The Debtor now seeks to sell the Property to Solid Rock Gospel Pentecostal Church, Inc. for $1,200,000 pursuant to a sale contract. The Property was appraised at $1,365,000. Of the approximately $1,128,000 in net proceeds, the Debtor proposes that only $60,000 (a 5% administrative fee) and $59,497.83 (repayment of parish debt) flow to the estate. The remaining approximately $1,008,502 in net proceeds would be directed to a sub-account of the Inter-Parish Loan Fund ("IPLF") for the benefit of St. Rose.

## LIMITED OBJECTION

The Debtor seeks authorization under 11 U.S.C. § 363(b)(1) to record a prepetition fee simple deed and transfer the Real Property to the Parish—a non-debtor affiliate—for no consideration. The Court should deny the Motion because the Debtor has not satisfied the sound business purpose test required under section 363(b).[6] Specifically, the Debtor has not shown that (i) a sound business purpose exists for the proposed transfer, (ii) the sale price is fair, or (iii) adequate and reasonable notice was provided. Moreover, the proposed order is deficient because it (iv) improperly directs sale proceeds to the IPLF—an entity the Debtor itself contends is separate from its estate—and (v) grants the Parish access to sale proceeds under undefined emergency circumstances, relinquishing control of potential estate assets to a non-debtor entity.

---

[6] The Committee restates and incorporates its arguments in its Objection filed June 3, 2026 at Dkt. No. 2554.

6623850.1

5

CORE/3529758.0002/247904605.5

## I.      The Debtor Has Not Demonstrated a Sound Business Purpose for the Proposed Transfer.

A debtor in possession may not use, sell, or lease property of the estate outside the ordinary course of business without demonstrating a sound business justification. *In re WBQ P'ship*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995); *In re W.A. Mallory Co.*, 214 B.R. 834, 836 (Bankr. E.D. Va. 1997); *see also In re Mattress Discounters Corp.*, No. 08-21642-TJC, 2008 WL 4542989, at *4–5 (Bankr. D. Md. Oct. 10, 2008) ("To satisfy § 363(b) of the Code, 'there must be some articulated business justification . . . for using, selling or leasing property out of the ordinary course of business before the bankruptcy judge may order such disposition under section 363(b).'" (citing *Comm. of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070–1071 (2d Cir. 1983))). Under the sound business purpose test, a sale meets the requirements of section 363(b) if:

> (1) a sound business purpose exists for the sale, (2) the sale price is fair, (3) the debtor or trustee has provided adequate and reasonable notice, and (4) the purchaser has acted in good faith; an exercise of such business judgment includes disposition of property if the trustee determines that such disposition is in the best interest of the estate.

*In re Childers*, 526 B.R. 608, 613 (Bankr. D.S.C. 2015). Because section 363(b) also requires notice and a hearing, courts further consider whether the notice given was sufficient, including the proposed terms of the sale. *In re Taylor*, 198 B.R. 142, 156 (Bankr. D.S.C. 1996).

The Debtor has not met these requirements. The Debtor characterizes this transaction as a sale of "any interest" it may have in the Property, yet proposes that the estate receive only approximately $119,497.83, barely 10% of a $1.2 million sale of property appraised at $1,365,000. The remaining net proceeds of approximately $1,008,502 would be directed to the IPLF for the benefit of a non-debtor entity. If the estate has an interest in the Property, directing 90% of the sale proceeds to a non-debtor entity is not a sound exercise of the Debtor's business judgment, but

6623850.1

6

CORE/3529758.0002/247904605.5

rather the diminution of its estate without an appropriate, corresponding benefit to its creditors. *See In re Lionel Corp.*, 722 F.2d at 1071 (requiring courts to weigh the interests of all stakeholders and to find a good business reason from the evidence). Although the Debtor represents that a broker was engaged and that the purchase price represents the "highest and best offer," the question is not whether $1.2 million is a fair price for the Property. The question is whether it is a sound exercise of business judgment for the estate to receive only $119,497.83 from a $1.2 million transaction. The Debtor did not obtain approval of the broker or vet the sale process or price with the Committee or the Court.

Additionally, the Debtor's proposed order does not properly preserve the issue of the extent of the Debtor's ownership interests in the Real Property. The Debtor expressly disclaims any ownership interest while simultaneously collecting fees and exercising control over the sale process, including through the restrictive covenant in the deed that requires the Archbishop's written permission for any alienation. This inconsistency cannot properly be cured by an order from this Court that fails to preserve the estate's potential interest or claims. Accordingly, the Court should not approve the proposed transfer as a sound exercise of the Debtor's business judgment.

## II.     Sale Proceeds Must Remain in the Debtor's Estate and the IPLF Cannot Serve as a Repository for Estate Funds.

Even if the Court were to authorize the Deed Transfer, the Motion's proposed disposition of sale proceeds is improper. The Motion proposes to transfer sale proceeds to a non-debtor entity and permit additional non-debtor entities to use those proceeds without Court approval. Proceeds generated by a sale of estate property under Bankruptcy Code section 363 remain property of the bankruptcy estate under Bankruptcy Code section 541(a)(6), and therefore remain subject to the bankruptcy court's continuing jurisdiction notwithstanding the sale of the underlying asset. *See In*

6623850.1

7

CORE/3529758.0002/247904605.5

*re On-Site Sourcing, Inc.*, 412 B.R. 817, 825 (Bankr. E.D. Va. 2009) ("Proceeds from the sale of property of the estate are property of the estate. . . . They are subject to the jurisdiction of the bankruptcy court."); *see also Am. Bankers Ins. v. Maness*, 101 F.3d 358 (4th Cir. 1996). As a result, such proceeds may not be distributed outside a confirmed Chapter 11 plan absent a separate court order authorizing distribution for cause. *In re Naron & Wagner*, 88 B.R. 85 (Bankr. D. Md. 1988).

Consistent with this framework, bankruptcy courts draw on their authority under Bankruptcy Code section 105(a) to condition section 363 sale orders on the requirement that a trustee hold proceeds pending plan confirmation or further order of the court. *See Cole v. Coastal Fed. Credit Union*, No. 5:20-CV-599-FL, 2022 WL 18141978 (E.D.N.C. Feb. 9, 2022).

The Committee objects to the Debtor's proposal to escrow sale proceeds in a subaccount of the IPLF. Throughout this case, the Debtor has consistently maintained that the IPLF is a separate entity from the Debtor and that the IPLF property is not property of this estate.[7] The Debtor should not be allowed to take inconsistent positions simply to achieve the outcomes it prefers. When the Committee seeks access to the IPLF assets for the benefit of creditors, the Debtor insists that the IPLF is separate. When the Debtor wants to park sale proceeds beyond the Committee's reach, it proposes the IPLF as a convenient repository. If the IPLF is truly a separate entity from the estate, as the Debtor has repeatedly insisted, then directing estate sale proceeds into an IPLF subaccount would strip this Court of jurisdiction over estate funds. The Committee requests that any proceeds from the sale be held in an account in the Debtor's name, subject at all times to the jurisdiction of this Court.

The Committee further objects to the provision permitting the Parish to access proceeds of the sale in the event of an "emergency," under "existing Debtor policies" with only "advance

---

[7] *See* Informational Brief at 11 [Dkt. No. 5]. The Committee disputes this characterization.

6623850.1

8

CORE/3529758.0002/247904605.5

notice" to the Committee. *See* Proposed Order at 2–3. The Debtor has not detailed the referenced policies, and the Debtor has not disclosed who will determine whether an emergency exists, what limits might apply, or what recourse creditors will have if funds are dissipated. Estate property (or, at minimum, disputed property) cannot be placed at the disposal of a non-debtor entity under such ill-defined circumstances with no judicial oversight. Any access to sale proceeds must require a noticed motion and an order of this Court.

Finally, the proposed order provides that "nothing contained in any plan of reorganization (or liquidation) confirmed in this case or the order of confirmation confirming any such plan of reorganization shall conflict with or derogate from the provisions of this Order." Proposed Order at 3. This extraordinary provision would permanently lock in the proceeds framework proposed by the Debtor and prevent any future, confirmed plan from redirecting the related funds to creditors. Such relief falls beyond the scope of a routine 363(b) motion and should be removed from any order entered by this Court.

### III.    Recording the Deed Post-Petition Constitutes a Transfer Requiring Court Authorization.

The Debtor will likely contend that the Motion merely seeks to memorialize a transfer that occurred pre-petition and that recording the deed is a ministerial act. That argument fails for three reasons.[8]

First, the deed was never recorded. There is no dispute about that fact. Under Maryland law, an unrecorded deed, while potentially valid between the parties, is not effective against *bona*

---

[8] The Committee incorporates by reference its arguments in the *The Official Committee of Unsecured Creditors' Objection to Debtors' Motion for Order Authorizing Debtor to Record Prepetition Executed Fee Simple Deed*s [Dkt. No. 2554].

*fide* purchasers or creditors without notice.[9] As of the Petition Date, legal title to the Real Property remained in the Debtor's name on the land records. That interest thus became property of the estate upon the filing of the Debtor's petition pursuant to section 541(a)(1).

Second, recording a deed post-petition is not a ministerial act. It is a materially substantive act that perfects the transfer as against third parties, including creditors of the estate. Completing the transfer now, nearly three years into this chapter 11 case, would remove an asset from the estate in a manner indistinguishable from a post-petition disposition of property. Such a disposition requires authorization under section 363(b) and must satisfy the sound business purpose test.[10]

Third, the strong-arm powers of Bankruptcy Code section 544(a)(3) give the debtor in possession the rights of a hypothetical *bona fide* purchaser of real property as of the petition date. Because the deed was unrecorded, the estate's interest as a hypothetical *bona fide* purchaser may be superior to the Parish's interest. At minimum, this creates a disputed property interest that cannot be resolved by simply recording the deed. It must be adjudicated.

### CONCLUSION

For the foregoing reasons, the Debtor has not established that the proposed Deed Transfer satisfies the requirements of section 363(b). The Debtor has demonstrated no sound business purpose for directing 90% of sale proceeds to a non-debtor entity, failed to address the estate's potential strong-arm rights under section 544(a)(3), and proposes to direct proceeds to an entity the Debtor itself insists is separate from the estate—all while simultaneously seeking to preempt and override any future, confirmed plan.

---

[9] Md. Code, Real Property § 3-203; *Wash. Mut. Bank v. Homan*, 974 A.2d 376, 389–90 (Md. App. 2009) ("It is a well-settled principle that one who purchases real property without notice of prior equities is protected as a *bona fide* purchaser for value." (internal quotations omitted)).

[10] *See In re Mattress Discounters Corp.*, 2008 WL 4542989, at *4–5; *Comm. of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d at 1070–1071.

6623850.1

CORE/3529758.0002/247904605.5

WHEREFORE, the Committee respectfully requests that the Court deny the Motion, prohibit the Debtor from recording the Deed Transfer, and grant such other and further relief as the Court deems just and proper.

Date: August 6, 2026

Respectfully submitted,

/s/Alan M. Grochal
Alan M. Grochal, Fed. Bar No.: 01447
Richard L. Costella, Fed. Bar No. 14095
**Tydings & Rosenberg LLP**
1 East Pratt Street, Suite 901
Baltimore, Maryland 21202
Tel: (410) 752-9772
Fax: (410) 727-5460
Email: rcostella@tydings.com
        agrochal@tydings.com

*Local Counsel to the Official Committee of Unsecured Creditors*

-and-

Edwin H. Caldie (MN # 388930)
Andrew Glasnovich (MN # 0398366)
Christopher Sevedge (MO # 68383)
**Stinson LLP**
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Main: 612-335-1500
Facsimile: 612-335-1657
Email:  ed.caldie@stinson.com
        drew.glasnovich@stinson.com
        chris.sevedge@stinson.com

*Counsel to the Official Committee of Unsecured Creditors*

6623850.1

11

CORE/3529758.0002/247904605.5

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 6th day of August, 2026, a copy of the foregoing *LIMITED OBJECTION* was served via the Court's ECF e-filing system on the following:

Blake D.  Roth, Esquire, blake.roth@hklaw.com;
Catherine K. Hopkin, Esquire, chopkin@yvslaw.com;
Hugh Bernstein, Esquire, hugh.m.bernstein@usdoj.gov;

And on all parties on the attached service list.

/s/Alan M. Grochal
Alan M. Grochal

6623850.1

12

CORE/3529758.0002/247904605.5

**The following parties received CM/ECF notice of the filing:**

Nathan D. Adler, Esquire: nda@nqgrg.com
Philip D. Anker, Esquire: philip.anker@wilmerhale.com
Sam Alberts, Esquire: sam.alberts@dentons.com
G. Calvin Awkward, III, Esquire: cawkward@goldbergsegalla.com
Gary Bahena, Esquire: garybahena@bahenalaw.com
Hugh M. Bernstein, Esquire: hugh.m.bernstein@usdoj.gov
Diane C. Bristow, Esqui re: dcb@nqgrg.com
Philip Tucker Evans, Esquire: philip.evans@hklaw.com
Andrew Freeman, Esquire: adf@browngold.com
Gary R. Greenblatt, Esquire: grg@cooncolelaw.com
Geoffrey Grivner, Esquire: geoffrey.grivner@bipc.com
Megan Harmon, Esquire: megan.harmon@bge.com
Robert Keith Jenner: rjenner@jennerlawfirm.com
Steven J. Kelly, Esquire: skelly@gelaw.com
C. Scott Kunde, Jr., Esquire: scott.kunde@hklaw.com
Anthony May, Esquire: amay@browngold.com
Timothy P. Palmer, Esquire: timothy.palmer@bipc.com
Mark David Plevin, Esquire: mplevin@crowell.com
David Kendall Roberts, Esquire: droberts2@omm.com
Annette Rolain, Esquire: arolain@ruggerilaw.com
James P. Ruggeri, Esquire: jruggeri@ruggerilaw.com
Jonathan Schapp, Esquire: jschapp@goldbergsegalla.com
U.S. Trustee – Baltimore: ustpregion04.ba.ecf@usdoj.gov
Irving Edward Walker, Esquire: iwalker@coleschotz.com
Jonathan Schochor, Esquire; jschochor@sfspa.com
Kerry Staton, Esquire; kstaton@sfspa.com
Joshua F. Kahn, Esquire; jkahn@sfspa.com
Thomas F. Yost, Esquire; tyost@yostlaw.com
Andrew Janet, Esquire; asjanet@jjsjustice.com
Donna M. Berdych, Esquire; donna@berdychlaw.com
Philip S. Georges, Esquire; phil@wolfofjustice.com
Samantha Ruben, Esquire; Samantha.ruben@dentons.com
Maigreade B. Burrus, Esquire; Maggie.burrus@stinson.com
Michael G. Farag, Esquire; mfarag@gibsondunn.com
Marc E. Shach, Esquire; mes@cooncolelaw.com
Samantha M. Indelicato, Esquire; sindelicato@omm.com
Brian J. Perkins, Esquire; bperkins@peifferwolf.com
Joshua D. Weinberg, Esquire; jweinberg@ruggerilaw.com
Adam R. Dunst, Esquire, adunst@goldbergsegalla.com
Samantha J. Hanson-Lenn, Esquire, Samantha.hansonlenn@stinson.com
Eric G. Korphage, Esquire, korphagee@whiteandwilliams.com
Robert H. Kline, Esquire, kliner@whiteandwilliams.com
Matthew M. Weiss, Esquire, mweiss@phrd.com
John E. Bucheit, Esquire, jbucheit@phrd.com

6623850.1

13

CORE/3529758.0002/247904605.5

Matthew G. Roberts, Esquire, mroberts@phrd.com
John Grossbart, Esquire, john.grossbart@dentons.com
Siobhain P. Minarovich, Esquire, manarovics@whiteandwilliams.com
Justin P. Fasano, Esquire, jfasano@mhlawyers,com
Matthew C. Nelson, Esquire, matthew.nelson@kennedyslaw.com
Jillian G. Dennehy, Esquire, jillian.dennehy@kenedyslaw.com
James R. Murray, Esquire, jim.murray@blankrome.com
James D. Carter, Esquire, james.carter@blankrome.com
Robyn L. Michaelson, Esquire, robyn.michaelson@blankrome.com
Sara G. Klein, Esquire, sklein@manlystewart.com
Gary P. Seligman, Esquire, gseligman@wiley.law
Ezhan S. Hasan, Esquire, ahasan@wiley.com
Michael J. Belsky, Esquire, mbelsky@sbwdlaw.com
Catherine A. Dickinson, Esquire, cdickinson@sbwdlaw.com
Isabella R. Sayyah, Esquire, isayyah@gibsondunn.com
Matthew A. Hoffman, Esquire, mhoffman@gibsondunn.com
Ryan S. Appleby, Esquire, rappleby@gibsondunn.com
Michael A. Rosenthal, Esquire, mrosenthal@gibsondunn.com
Todd C. Jacobs, Esquire, tjacobs@phrd.com
Jesse J. Bair, Esquire, jbair@burnsbair.com
Timothy W. Burns, Esquire, tburns@burnsbair.com
Jared Zola, Esquire, jared.zola@blankrome.com
Anthony J.M. Kikendall, Esquire, kikendalla@whiteandWilliams.com
Eileen King Bower, Esquire,  Eileen.kingbower@clydeco.us
Robert M. Westra, Esquire, rwestra@ppsrlaw.com
Kevin A. Clasing, Esquire, kclasing@ppsrlaw.com
Morgan K. Stippel, Esquire, mstippel@burnsbair.com
Justine M. Daniels, Esquire, jdaniels@omm.com
Ryan S, Perlin, Esquire, perlin@mdtrialfirm.com
Emily C. Malarkey, Esquire, malarkey@mdtrialfirm.com
Jodie E. Bekman, Esquire, jbekman@gfrlaw.com
Timothy Karcher, Esquire, timothy.karcher@bakermckenzie.com
Paul Possinger, Esquire, ppossinger@proskauer.com
Clinton Cameron, Esquire, Clinton.cameron@clydeco.us
Bret Kabacinski, Esquire, bret.kabacinski@clydeco.us
Douglas McGill, Esquire, dmcgill@webbermcgill.com
Christopher Sevedge, Esquire, Christopher.sevedge@stinson.com
Ysabelle G. Reyes, Esquire, yreyes@wiley.law
Jon P. Newton, Esquire, jnewton@reidand riege.com
Benjamin M. Fischer, Esquire, bfischer@coleschotz.com
Richard A. Galbo, Esquire, rgalbo@goldberg segalla.com
Sheldon N. Jacobs, Esquire, sjacobs@snjlaw.com
Nicholas A. Dellefave, Esquire, Nicholas.dellefave@hklaw,com
Elizabeth Connell, Esquire, elizabeth@connellcounsel.com
Jacob C. Cohn, Esquire, jcohn@plevinturner.com
E. Christopher Amos, Esquire, eChrisamos@gmail.com

6623850.1

14

CORE/3529758.0002/247904605.5

Edward J. Kelley, Esquire, ed@constantllp.com
W. Charles Meltmar, Esquire, cmeltmar@cochranfirmdc.com
Nathaniel L. Foote, Esquire, nate@vca.law
Michael J. Belsky, Esquire, mbelsky@sbwdlaw.com
Catherine A. Dickinson, Esquire, cdickinson@sbwdlaw.com
Kathleen A. Parnow, Esquire, katie.parnow@stinson.com
Redwan Saleh, Esquire, rsaleh@omm.com
Ryan C. Evans, Esquire, revans@plevinturner.com
Alexander Toth Boudreau, Esquire; aboudreau@gibsondunn.com

6623850.1

15