IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re:<br><br>**THE ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE**<br><br>Debtor. | Case No.: 23-16969-MMH<br><br>Chapter 11 |

**THE UNITED STATES TRUSTEE'S OPPOSITION TO APPROVAL OF THE DISCLOSURE STATEMENT IN SUPPORT OF THE FOURTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR THE ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE, A CORPORATION SOLE**

Matthew W. Cheney, Acting United States Trustee for Region 4, pursuant to 11 U.S.C. §§ 1125 and 1129, files this Opposition to Approval of the Disclosure Statement in Support of the Fourth Amended Chapter 11 Plan of Reorganization for the Roman Catholic Archbishop of Baltimore, a Corporation Sole (the "Disclosure Statement").

## INTRODUCTION

The Disclosure Statement contains at least two areas for which adequate information is not provided, and certain underlying problems with the Fourth Amended Chapter 11 Plan of Reorganization for the Roman Catholic Archbishop of Baltimore, a Corporation Sole (the "Plan"), particularly the third-party releases, remain. For that reason, the Disclosure Statement cannot be approved, and the Plan cannot be confirmed.

## FACTS AND BACKGROUND

The Debtor filed the Plan and Disclosure Statement on August 28, 2026.[1] Both represent current iterations and revisions of prior plans and disclosure statements, all of which provide that claims by survivors of sexual abuse will be channeled into two trusts for resolution and payment, with those trusts being funded by contributions from the Debtor, certain insurance companies, and certain parties related to the Debtor. (*See generally* Docs. 2869, 2870.)

In order to recover anything, however, survivors of sexual abuse must expressly agree, both by the terms of the Plan and by signing a mandatory (*i.e.* non-consensual) release agreement (*see* Doc. 2869-1 at 72-79), to release (a) any insurance company that has entered into a settlement agreement with the Debtor (as well as their reinsurers and retrocessionaires), and (b) all of the Debtor's Agents including its employees, attorneys and board members, from any and all liability. Additionally, despite representations in the Disclosure Statement and Plan that survivors have the option of not releasing various schools, parishes, and other entities related to the Debtors, the actual terms of the Plan indicate that those parties are released regardless of the survivor's choice. (*See* Doc. 2869 at § 13.3.)

[1] The Debtor subsequently provided the U.S. Trustee with a draft Fifth Amended Plan. This objection, however, addresses only what is currently before the Court.

**LEGAL FRAMEWORK**

The basic structure of Chapter 11 of the Bankruptcy Code is a system where a plan of reorganization is proposed to the creditors who then vote on whether to accept or reject the plan. 11 U.S.C. §§ 1121, 1125-1129. After the plan is voted upon, the Court determines whether the plan can be "confirmed" by determining whether the statutory requirements for confirmation are met. 11 U.S.C. § 1129. Once the plan is "confirmed," it becomes binding between the reorganized debtor and its creditors and the plan's terms replace all of the debtor's prior obligations. *See, e.g., In re Shenandoah Realty Partners, L.P.*, 287 B.R. 867, 871 (Bankr. W.D. Va. 2002); *In re Lacy*, 183 B.R. 890, 892 n.1 (Bankr. D. Colo. 1995); 11 U.S.C. § 1141.

In order to provide creditors with the information necessary to make an informed vote on the plan, the Bankruptcy Code requires the plan's proponent to provide creditors with a "disclosure statement." 11 U.S.C. § 1125(b). The purpose of the disclosure statement is to provide creditors with information about the debtor, the plan and their treatment thereunder, necessary for creditors to make an informed and reasoned vote. *In re Monnier Bros*, 755 F.2d 1336, 1342 (8th Cir. 1985) ("[t]he primary purpose of a disclosure statement is to give the creditors the information they need to decide whether to accept the plan"); *In re Forest Grove, LLC*, 448 B.R. 729, 737 (Bankr. D.S.C. 2011) ("[t]he purpose of a disclosure statement is to clearly provide creditors with information regarding the debtor's plan and their treatment under that plan").

Although precisely what information must be contained in a disclosure statement varies depending on the particulars of the case, a disclosure statement must contain "adequate information," which is defined as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records ... that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a). "Adequate information" for disclosure statement purposes has been described as "all information that is reasonably necessary to permit creditors and parties-in-interest to fairly and effectively evaluate the plan." *In re Robert's Plumbing & Heating, LLC*, Case 10-23221, 2011 WL 2972092 at * 2 (Bankr. D. Md., July 20, 2011).

What constitutes "adequate information" varies from case to case. Courts have held that the following types of information should be included in a disclosure statement:

i. The circumstances that gave rise to the filing of the case;

ii. A complete description of the available assets and their value;

iii. The anticipated future income of the debtor;

iv. The source of the information provided in the disclosure statement;

v. The condition and performance of the debtor while in chapter 11;

vi. Information regarding claims against the estate;

vii. A liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;

viii. The accounting and valuation methods used to produce the financial information in the disclosure statement;

ix. A summary of the plan of reorganization;

x. An estimate of all administrative expenses, including attorneys' fees and accountant's fees;

xi. The collectability of any accounts receivable;

xii. Any financial information, valuations or pro forma projections that would be relevant to creditors' determination of whether to accept or reject the plan;

xiii. Information relevant to the risks being taken by the creditors and interest holders;

xiv. The actual or projected value that can be obtained from avoidable transfers;

xv. The existence, likelihood and possible success of non-bankruptcy litigation; and

xvi. The tax consequences of the plan.

*See, e.g.*, 7 *Collier on Bankruptcy* ¶ 1125.02[2] (16th Ed. 2026).

## ARGUMENT

### A. The Plan and Disclosure Statement Are Inconsistent Regarding When Co-Insured Entities Are Released.

According to the Disclosure Statement, survivors have the option to release the Co-Insured Entities, or to elect not to. (Doc. 3870 at 13[2]: Distribution Claimants "will have the option whether to release Co-Insured Entities."; Doc. 2870 at 18: Litigation Claimant's "will have the option to pursue their Survivor Claim in court against the Non-Settling Insurer and/or the Co-Insured Entities.") The Disclosure Statement provides that a Distribution Claimant who chooses not to release the Co-Insured Entities will receive approximately 25% of the amount he or she would receive if he or she agrees to release the

[2] Page numbers refer to the page numbers at the top of the document, on the ECF header, rather than the page numbers on the bottom of the Plan and Disclosure Statement.

Co-Insured Entities but would retain the right to seek a judgment against the Co-Insured Entities in court. (Doc. 2870 at 6-7.) Similarly, the Disclosure Statement provides that a Litigation Claimant will receive $5,000 from the Trust but then be able to pursue a claim against persons, including the Co-Insured Entities, in court and recover any judgment directly from them. (Doc. 2870 at 18-19.)

The Plan, however, says otherwise. It states that the holder of every "Channeled Claim," which includes Distribution Claimants who choose not to release the Co-Insured Entities and Litigation Claimants, is enjoined from pursuing the Channeled Claim against a number of entities, including the Co-Insured Entities. (Doc. 2869 at 76-77, § 13.3.) That injunction provides no exception for either Distribution Claimants who choose not to release Co-Insured Entitles or Litigation Claimants. The Disclosure Statement cannot be approved with these contradictions.

**B. The Disclosure Statement Does Not Provide Adequate Information Regarding the Terms of Insurer Settlement Agreements.**

The Disclosure Statement fails to adequately disclose the terms of the insurance settlements. The Debtor's settlement agreements with certain insurers are fundamental to the Plan. This fact has remained a constant throughout every iteration of the Debtor's proposed plans, and has been discussed at length in multiple hearings before this Court. Yet, not one of these agreements has been disclosed.

In Section IV.E of the Disclosure Statement, the purported "material terms" of the agreements are described. (Doc. 2870 at 47-48.) Most parties affected by the Plan have

never seen any of these agreements. As a result, it is not possible to determine whether the terms of these agreements are accurately or adequately disclosed. The Debtor devotes approximately one half of one page to describing these agreements in the Disclosure Statement. The actual agreements are, undoubtedly lengthy, complicated, and filled with defined terms. It is unlikely that the existing descriptions adequately disclosure the material terms of the settlement agreements. The United States Trustee shares the Court's previously announced concern about the complexity of the Debtor's Plan and Disclosure Statement, and the necessity for them to be understandable to the parties whose lives they will affect. *See generally, Order Denying Approval of Disclosure Statements,* (Doc. 2813). This simplification, however, cannot be an excuse for failing to disclose the material terms of the settlements.

**C. <u>Confirmation Issues Raised For Notice Purposes.</u>**

In addition to the lack of adequate information, there are several issues with the Plan that render it unconfirmable. The United States Trustee raises these here in order to provide all parties with notice of these issues and to allow Debtor to address them before a confirmation hearing.

**1. <u>The Plan Contains Nonconsensual Third-Party Releases.</u>**

In *Harrington v. Purdue Pharma, L.P.*, 603 U.S. 204 (2024), the Supreme Court held that non-consensual third-party releases in Chapter 11 plans are impermissible. *Id*. at 227 ("[T]he bankruptcy code does not authorize a release and injunction that, as part of a plan

of reorganization under Chapter 11, effectively seeks to discharge claims against a non-debtor without the consent of affected claimants.") The Plan, however, does precisely what the Supreme Court prohibits. And it does it over and over again through multiple repetitive and inappropriate injunctions in favor of non-debtors, including, but not limited to, the Co-Insured Entity Injunction, the Supplemental Insurer Injunction, the Gatekeeper Injunction and the Exculpation Clause.

**a. <u>Section 13.3's Injunction Precluding "Channeled Claims" Against Debtor's Agents, Co-Insured Entities and Settling Insurers.</u>**

Debtor's Agents, the Co-Insured Entities and the Settling Insurers are all non-debtors.[3] Yet, all receive substantial releases in § 13.3 of the Plan. With respect the Co-Insured Entities, survivor claimants are provided with a release agreement that purportedly gives them an option to release the Co-Insured Entities or to choose not to. (*See* Doc. 2869-1 at 71-79.) However, as discussed above, Section 13.3 does not actually limit the release to people who have voluntarily executed such a release. Moreover, there is not even a purported option to withhold releasing Debtor's Agents or the Settling Insurers. At a bare minimum, these two releases are prohibited non-consensual third-party releases.

[3] Debtor's "Agents" are defined as "any past and present employee, officer, director, managing agent or other agent, shareholder, principal, teacher, staff, member, board member, administrator, priest, deacon, brother, sister, nun, or other member of a religious order, clergy, Person bound by a monastic vow, volunteer, attorney, claim handling administrator, or any representatives of a Person in any of the foregoing capacities; provided, however, any individual who perpetrated an act of Abuse that forms the basis of a Survivor Claim is not an Agent of the Debtor for purposes of this Plan." (Doc. 2869 at 2, § 1.1.6.)

**b. <u>The Exculpation Clause.</u>**

The Plan contains an exculpation clause at Section 13.8. Neither the Fourth Circuit nor any district or bankruptcy court in the District of Maryland has addressed the permissible scope of an exculpation clause. The District Court for the Eastern District of Virginia, however, has. In *Patterson v. Mahwah Bergan Retail Group, Inc.*, 363 B.R. 641 (E.D. Va. 2022), that court held that an exculpation clause must be narrowly tailored and contain the following limitations:

(a) it must be limited to fiduciaries who have performed necessary and valuable duties in connection with the bankruptcy case;

(b) is limited to acts and omissions taken in connection with the bankruptcy case;

(c) does not purport to release any pre-petition claims;

(d) contains a carve out for gross negligence, actual fraud or willful misconduct; and,

(e) contains a gatekeeper function by which the Court may, in its discretion, permit an action to go forward against the exculpated parties.

*Id.* at 702.

Here, at a minimum, the Exculpation Clause is not limited to fiduciaries who have performed necessary and valuable duties in connection with the bankruptcy case and fails to contain the required gatekeeper function. Here, the Exculpated Parties include (a) Debtor and Reorganized Debtor; (b) Co-Insured Entities; (c) Estate; (d) Committee; (e) Settling Insurers; (f) respective Agents of the Persons identified in the preceding clauses (a) through (e) in their capacities as such, including with respect to their service or participation in an outside board on which they serve at the request of a Person identified

in the preceding clauses (a) through (e); and (g) professionals of a Person identified in the preceding clauses (a) through (e).

Several of these parties, including the Co-Insured Entities, the Settling Insurers, and the "Agents" of any of the identified parties, are not estate fiduciaries.

**c. The 363 Sales and the Supplemental Settling Insurer Injunction.**

Underlying the Plan's proposed contributions from Settling Insurers, is a settlement scheme whereby the Settling Insurers will buy back the insurance policies they issued "free and clear of all liens, Claims, and Interests of all Persons," purportedly under the authority of Section 363 of the Bankruptcy Code. (Doc. 2869 at § 7.2). As of now, no such settlement has been proposed to, or approved by, the Court. Without seeing the specifics of such a sale, it is impossible to fully opine on them, but what is being requested appears to exceed what Section 363 permits.

The proposed sales are to be "free and clear of all liens, Claims, and Interests of all Persons." Section 363(f), however, only provides for sales "free and clear of any interest" in the property being sold, *i.e.* the insurance policies. Claims that persons may have against the Settling Insurers are not interests in the insurance policies – they are claims against the Settling Insurers.

Moreover, these sales are used as a springboard for the Supplemental Settling Insurer Injunction. This injunction effectively releases the Settling Insurers from all manner of liability, including even to regulatory and taxing authorities. As just one

example, the Supplemental Settling Insurer Inunction prohibits anyone from asserting an Extra-Contractual Claims against the Settling Insurers. (*See* Doc. 2869 at 78.) Extra-Contractual Claims include, *inter alia*, any type of relief other than coverage or benefits, such as (i) bad faith; (ii) violation of any state insurance codes, state surplus lines statutes, or similar codes or statutes; (iii) violation of any unfair claims practices act or similar statute, regulation, or code; or (iv) any type of misconduct. (Doc. 2869 at 14, 78 §§ 1.1.70; 13.4.) Third parties, including government regulators who have had no involvement, notice or participation in this case have not been asked to consent to these provisions and, hence, the Plan proposes to impose releases and injunctions that would their bar claims in violation of *Purdue Pharma*. *Purdue Pharma*, 603 U.S. at 227.

Even prior to *Purdue Pharma*, courts recognized the limits of § 363(f) and declined to interpret Section 363(f) to permit non-consensual non-debtor injunctions and releases under the guise of sales of insurance policies free and clear of non-debtors' "interests in" the policies. *See In re Adelphia Communications Corp*., 364 B.R. 518, 527-528 (Bankr. S.D.N.Y. 2007) (permitting the debtor to sell its rights under insurance policies to the insurers but refusing to "authorize invocation of section 363(f)" or limit the rights of certain objecting parties to bring claims against the purchasing insurers and refusing to issue the "channeling injunction" barring claims against the purchasing insurers); *In re Fraser's Boiler Service, Inc.*, 2019 WL 1099713 at *8 (W.D. Wash. March 8, 2019) (reversing decision that approved the sale of insurance policies free and clear of claims between insurance companies because claims by non-settling insurance companies against the settling insurance companies were not an "interest" in the debtor's property and the

bankruptcy court had no authority to release those third-party claims); *Overton's, Inc. v. Interstate Fire & Cas. Ins. Co.* (*In re Sportstuff, Inc.*), 430 B.R. 170, 178 (B.A.P. 8th Cir. 2010) (overturning a bankruptcy court's approval of an insurance settlement because it did not have "jurisdiction or authority to impair or extinguish independent contractual rights" belonging to third parties, including the right to defense and reimbursement of defense costs); *In re SoyNut Butter Co*., 2018 WL 3689549 at *4 (Bankr. N.D. Ill. August 1, 2018) (holding that a Section 363(f) sale of an insurance policy that released the claims of additional insureds against the issuing insurance company could not be approved because the debtor could not sell the additional insureds' rights in the policy or their legal claims since those rights and claims were not part of the estate); *In re Forty-Eight Insulations, Inc.*, 133 B.R. 973, 980 (Bankr. N.D. Ill. 1991), *aff'd*, 149 B.R. 860 (N.D. Ill 1992) (holding that Section 363(f) sale of a debtor's rights in an insurance policy could not support a release and injunction against the debtor's parent corporation that was an additional insured and had its own rights under the policy).

Thus, while Section 363(f) offers limited protections for purchasers of a debtor's assets in bankruptcy, it does not permit sweeping non-debtor releases that shield a purchaser from all claims, including (i) direct claims against the purchaser or (ii) claims between third parties that are not property of Debtor and Additional Debtors and not directed against the estate property being sold. Neither Section 105 nor Rule 9019 can extend the Court's limited authority under Section 363(f), and Section 363(f) cannot be used as an end run around *Purdue's* holding that non-consensual releases are not permitted by the Bankruptcy Code. Here, the Plan and Sale Motion provide for relief beyond that

authorized by Section 363(f) by enjoining or releasing claims outside the bounds of that section.

**d. <u>The Gatekeeper Inunction.</u>**

The Plan also includes a Gatekeeper Injunction that forces non-debtors (*i.e.*, the Enjoined Parties) who wish to pursue a claim or cause of action against another non-debtor (*i.e.*, the Debtor's Agents, Settling Insurers, and/or the Co-Insured Entitles) to come to this Court—and only this Court—for a determination of whether such claim or cause of action can proceed. (*See* Doc. 2869 at 79-80, § 13.6.) By specifying that this Court shall determine whether a claimant can proceed, the Gatekeeper Injunction effectively grants this Court exclusive jurisdiction to adjudicate the claim or cause of action between non-debtors. The Gatekeeping Injunction appears to apply even after Debtor's bankruptcy case has been closed, which would require a non-debtor seeking to pursue a claim against another non-debtor to first move to reopen the bankruptcy cases.

The bankruptcy court lacks both jurisdiction and statutory authority to enter such an injunction. In addition, because there is no "related to" jurisdiction over these non-debtor claims, not only does the bankruptcy court lack jurisdiction to enter the injunction, it also lacks jurisdiction to perform the gatekeeping function the Plan would exclusively assign to it.

Even if there were "related to" jurisdiction, reserving exclusive jurisdiction in the bankruptcy court to determine whether non-debtor claims can proceed is contrary to Congress's grant of concurrent jurisdiction over such claims. 11 U.S.C. § 1334(b)

(providing "original but not exclusive jurisdiction"); *In re Brady, Texas, Mun. Gas Corp.*, 936 F.2d 212, 218 (5th Cir. 1991). The defense of "release" is an affirmative defense that cannot be adjudicated prior to the filing of the action to which it relates. *See, e.g.*, Fed. R. Civ. P. 8(c)(1), incorporated in Fed. R. Bankr. P. 7008. There is no reason why the court in which the relevant action has been filed cannot determine whether the non-debtor claim was released under the Plan.

Further, the Gatekeeping Injunction contravenes the basic premise that once a company confirms a reorganization plan it "is without the protection of the bankruptcy court[; i]t may not come running to the bankruptcy judge every time something unpleasant happens." *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001). This is even more true for the non-debtors protected by the gatekeeping injunction. Gatekeeping would create inefficient piecemeal litigation contrary to the purpose of "related to" jurisdiction. *See Feld v. Zale Corp.* (*In re Zale Corp.*), 62 F.3d 746, 752 ("[W]hen we define 'related to' jurisdiction, we should avoid the inefficiencies of piecemeal adjudication and promote judicial economy by aiding in the efficient and expeditious resolution of all matters connected to the debtor's estate."). Parties would have to go to the bankruptcy court for permission to sue, then to the court where they want to sue to file the complaint, and then back to the bankruptcy court again if they want to amend the complaint, then back to the court presiding over the suit if the bankruptcy court allows the amendment. This method increases the burden on the courts, imposes unnecessary costs and delay on the parties, and unnecessarily interferes with other courts' jurisdiction and ability to manage the cases before them. *See Zale*, 62 F.3d at 755 ("[C]ourts must be particularly careful in

ascertaining the source of their power, lest bankruptcy courts displace state courts for large categories of disputes.”). There is no reason to deviate from the ordinary course in which the court presiding over a lawsuit determines whether the claims are “colorable,” adjudicates any defenses, including the defense of release, and determines whether any amendments to the complaint should be permitted.

Finally, the Gatekeeper Injunction violates the basic principles espoused in *Stern v. Marshall,* 564 U.S. 462 (2011). The Gatekeeper Injunction gives this Court, an Article I Court, the power to finally decide a state law claim between two non-debtor entities by cutting that claim off at its knees.

### 2. Quarterly Fees Must Be Paid Until Case Closing Regardless of Internal Disputes.

Section 2.3 of the Plan provides, appropriately, that quarterly fees required by 28 U.S.C. § 1930, will continue to be paid until the “Chapter 11 Case is closed, dismissed or converted.” (*See* Doc. 2869 at 29.) The Plan provides that responsibility for those post-confirmation payments rests with the Reorganized Debtor and Additional Reorganized Debtor, unless either the Survivor Compensation Trustee or the Insurance Trustee “opposes the closure of the Chapter 11 Case,” in which case the “applicable Trustee will be responsible for the payment.” It then provides that if the Trusts fail to pay such fees, the Reorganized Debtor and the Additional Reorganized Debtors “may” (but are not expressly required to) pay the fee and may seek reimbursement from the Trusts. *Id.*

28 U.S.C. § 1930 provides that quarterly fees must be paid. 28 U.S.C. § 1930(a)(6). It does not place any limitations upon who may pay the fee. Thus, the United States Trustee does not object to the fees being paid by the Trusts in the event one of them objects to case closure, but this provision cannot be used to avoid payment of the fee altogether. Quarterly fees cannot be waived. *Cranberry Growers Cooperative v. Layng*, 930 F.3d 844, 853 (7th Cir. 2019). Regardless of any agreement between the Reorganized Debtors and the Trusts regarding who they will designate as the responsible party between themselves, if the fees are not paid, the United States Trustee must be permitted to take all appropriate actions flowing from such failure.

Thus, the United States Trustee objects to this provision to the extent it purports to limit the Reorganized Debtor's or the Additional Reorganized Debtors' obligation to pay quarterly fees or their liability for fees. In order to be confirmed, the Plan or the Confirmation Order must provide that the fee will be paid, and place no restrictions upon the ability of the United States Trustee to enforce such payment.

## CONCLUSION

For the reasons set forth above, the Court should deny approval of the Disclosure Statement and deny confirmation of the Plan.

Respectfully submitted,

Matthew W. Cheney
Acting United States Trustee for Region 4

Date: September 23, 2026

By: */s/ Hugh M. Bernstein*

Hugh M. Bernstein
(Fed. Bar No.: 23489)
United States Department of Justice
101 West Lombard Street, Suite 2625
Baltimore, Maryland 21201
(410) 962-4300
hugh.m.bernstein@usdoj.gov

Attorney for the United States Trustee

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY,** that on this 23rd day of September, 2026, a copy of the foregoing document was filed electronically in the United States Bankruptcy Court for the District of Maryland and that according to the Court's CM/ECF records, electronic notice of this motion should be provided to the following persons:

**Nathan D. Adler nda@nqgrg.com, terry@nqgrg.com**
**Sam Alberts sam.alberts@dentons.com, docket.general.lit.wdc@dentons.com**
**Monique D. Almy malmy@crowell.com, cbest@crowell.com**
**Monique Desiree Almy malmy@crowell.com, cbest@crowell.com;malmy@ecf.axosfs.com;monique-almy-7127@ecf.pacerpro.com**
**Philip D. Anker philip.anker@wilmerhale.com, Yolande.Thompson@wilmerhale.com**
**Ryan S. Appleby rappleby@gibsondunn.com**
**G. Calvin Awkward cawkward@goldbergsegalla.com, wbartholomew@goldbergsegalla.com**
**Jesse Bair jbair@burnsbair.com, kdempski@burnsbair.com**
**Jodie E. Bekman jbekman@gfrlaw.com, dferguson@gfrlaw.com**
**Michael J. Belsky mbelsky@sbwdlaw.com**
**Hugh M. (UST) Bernstein hugh.m.bernstein@usdoj.gov**
**Eileen King Bower eileen.kingbower@clydeco.us, christopher.white@clydeco.us**
**Diane C. Bristow dcb@nqgrg.com, taylor@nqgrg.com**
**Timothy W. Burns tburns@burnsbair.com, kdempski@burnsbair.com**
**Edwin H Caldie ed.caldie@stinson.com, jess.rehbein@stinson.com**
**Richard L. Costella rcostella@tydings.com, scalloway@tydings.com;MYoung@tydings.com;zjones@tydings.com;swilliams@tydings.com**
**Jillian Dennehy jillian.dennehy@kennedyslaw.com**
**Robert Wagner DiUbaldo rdiubaldo@carltonfields.com**
**Adam Ross Durst adurst@goldbergsegalla.com**
**Philip Tucker Evans philip.evans@hklaw.com, kimi.odonnell@hklaw.com;hapi@hklaw.com**
**Justin Philip Fasano jfasano@mhlawyers.com, jfasano@ecf.courtdrive.com;tmackey@mhlawyers.com;mevans@mhlawyers.com;cmartin@mhlawyers.com;Fasano.JustinR92003@notify.bestcase.com**
**Kevin Foreman kforeman@carltonfields.com**
**Andrew Freeman adf@browngold.com, khill@browngold.com;ldyson@browngold.com**

**Andrew Glasnovich drew.glasnovich@stinson.com**
**Gary R. Greenblatt grg@cooncolelaw.com, cmh@cooncolelaw.com;mes@cooncolelaw.com**
**Geoffrey Grivner geoffrey.grivner@bipc.com, donna.curcio@bipc.com**
**Alan M. Grochal agrochal@tydingslaw.com, scalloway@tydings.com**
**Adam P. Haberkorn ahaberkorn@omm.com, adam-haberkorn-2269@ecf.pacerpro.com**
**Samantha Hanson-Lenn samantha.hansonlenn@stinson.com, mpl.lssteam5@stinson.com**
**Megan Harmon megan.harmon@bge.com**
**Ezhan Syed Hasan ahasan@wiley.law**
**Matthew Allan Hoffman mhoffman@gibsondunn.com**
**Catherine Keller Hopkin chopkin@yvslaw.com, pgomez@yvslaw.com;kreese@yvslaw.com;vmichaelides@yvslaw.com;yvslawcmecf@gmail.com;hopkincr39990@notify.bestcase.com**
**Todd C. Jacobs tjacobs@phrd.com**
**Robert Keith Jenner rjenner@jennerlawfirm.com**
**Joshua Kahn jkahn@sfspa.com**
**Steven J Kelly skelly@gelaw.com, vbeal@gelaw.com,gnovod@gelaw.com,4523903420@filings.docketbird.com**
**Nicole Khalouian nicole.khalouian@stinson.com**
**Anthony Kikendall kikendalla@whiteandwilliams.com**
**Robert H. Kline kliner@whiteandwilliams.com**
**Eric George Korphage korphagee@whiteandwilliams.com**
**Robert T Kugler robert.kugler@stinson.com**
**Christopher Scott Kunde scott.kunde@hklaw.com**
**Emily C Malarkey malarkey@mdtrialfirm.com**
**Stephen A. Markey steve@markeylawfirm.com, amy@markeylawfirm.com**
**Anthony May amay@browngold.com**
**Siobhain Patricia Minarovich minarovichs@whiteandwilliams.com**
**James R Murray Jim.Murray@blankrome.com**
**Michael Raymond Naccarato mrnaccarato@gw-law.com**
**Matthew Nelson matthew.nelson@kennedyslaw.com, linda.conigliero@kennedyslaw.com**
**Janet M. Nesse jnesse@mhlawyers.com, jfasano@mhlawyers.com;cpalik@mhlawyers.com;jnesse@ecf.inforuptcy.com;tmackey@mhlawyers.com;cmartin@mhlawyers.com;kfeig@mhlawyers.com**
**Gordon Z. Novod gnovod@gelaw.com**
**Timothy P. Palmer timothy.palmer@bipc.com**
**Ryan S. Perlin perlin@mdtrialfirm.com**
**Mark D. Plevin mplevin@plevinturner.com**
**Mark David Plevin mplevin@crowell.com**
**Marie Ysabelle Hope Gatmaitan Reyes yreyes@wiley.law**

**David Kendall Roberts droberts2@omm.com, dave-roberts-9007@ecf.pacerpro.com**
**Matthew Roberts mroberts@phrd.com**
**Annette Rolain arolain@ruggerilaw.com, bkfilings@ruggerilaw.com**
**Michael Rosenthal mrosenthal@gibsondunn.com**
**Blake Daniel Roth blake.roth@hklaw.com, brooke.freeman@hklaw.com;cathy.young@hklaw.com**
**James Pio Ruggeri jruggeri@ruggerilaw.com**
**Isabella Sayyah isayyah@gibsondunn.com**
**Jonathan Schapp jschapp@goldbergsegalla.com, bfaulkner@goldbergsegalla.com;kallen@goldbergsegalla.com**
**Tancred Schiavoni tschiavoni@omm.com, tancred-schiavoni-9326@ecf.pacerpro.com**
**Jeffrey R. Scholnick jscholnick@scholnicklaw.com, ccasado@scholnicklaw.com;scholnick.jeffreyb107952@notify.bestcase.com**
**Gary Paul Seligman gseligman@wiley.law**
**David J. Shuster dshuster@kg-law.com, ssohn@kg-law.com**
**Alex B Silverman asilverman@carltonfields.com**
**Natalie L. Soloperto NSoloperto@gibsondunn.com**
**Morgan Kathleen Stippel mstippel@burnsbair.com, kdempski@burnsbair.com**
**Miranda Turner mturner@plevinturner.com, miranda-turner-7827@ecf.pacerpro.com**
**US Trustee - Baltimore USTPRegion04.BA.ECF@USDOJ.GOV**
**Nora Anne Valenza-Frost nvalenza-frost@carltonfields.com**
**John P Van Beek jvanbeek@goldmanvanbeek.com, gvbparalegal@goldmanvanbeek.com;hcurrier@goldmanvanbeek.com**
**Irving Edward Walker iwalker@coleschotz.com, pratkowiak@coleschotz.com;bankruptcy@coleschotz.com**
**Joshua D Weinberg jweinberg@ruggerilaw.com**
**Matthew Michael Weiss mweiss@phrd.com**
**Robert Matthew Westra rwestra@ppsrlaw.com, westrarr66199@notify.bestcase.com**
**Harris B. Winsberg hwinsberg@phrd.com**
**Thomas Yost staceyhare@yostlaw.com**

And that further notice is being provided to all required parties by Epiq Corporate Restructuring, LLC.

/s/ *Hugh M. Bernstein*
Hugh M. Bernstein