**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | | |
|---|---|---|
| **In Re:** | * | |
| **ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE,** | * | **Case No. 23-16969-MMH** |
| | * | **(Chapter 11)** |
| **Debtor.** | * | |

* * * * * * * * * * * * *

**LIMITED OBJECTION OF POST-PETITION TORT CLAIMANTS JOSEPH RINAOLO, ET AL. TO DEBTOR'S FOURTH AMENDED DISCLOSURE STATEMENT**

Parties in Interest, Joseph Rinaolo and Leanore Walker, (the "Rinaolo Claimants"), plaintiffs in the pending medical malpractice action *Joseph Rinaolo, et al. v. The Good Samaritan Hospital Maryland, Inc., et al.*, Case No. C-24-CV-26-005466, currently pending in the Circuit Court for Baltimore City, by and through undersigned counsel, hereby submit this Limited Objection to the Debtor's Fourth Amended Disclosure Statement in Support of the Fourth Amended Chapter 11 Plan of Reorganization for the Roman Catholic Archbishop of Baltimore (the "Disclosure Statement") pursuant to 11 U.S.C. § 1125 and this Court's Order Setting Hearing on Disclosure Statement, Solicitation Procedures Motion, and Objections to Claim(s), entered September 9, 2026, and in support thereof state as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**

1. On September 29, 2023 (the "Petition Date"), the Roman Catholic Archbishop of Baltimore (the "Debtor" or "RCAB") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court. The Debtor has continued to manage its affairs and operate as a debtor in possession pursuant to 11 U.S.C. § 1107(a) and § 1108.

2. Approximately six months after the Petition Date, in March 2024, Plaintiff Joseph Rinaolo sustained catastrophic physical injuries resulting from alleged medical negligence and health care malpractice while receiving inpatient care and treatment at St. Elizabeth Rehabilitation & Nursing Center, a facility owned and operated by Jenkins Memorial Nursing Home, Inc. ("Jenkins").

3. Jenkins is a separately incorporated non-profit entity and is not a debtor in this Chapter 11 proceeding.

4. The Rinaolo Claimants timely filed a complaint against Jenkins and others in the Circuit Court for Baltimore City, captioned *Joseph Rinaolo, et al. v. The Good Samaritan Hospital Maryland, Inc., et al.*, Case No. C-24-CV-26-005466 (the "State Court Action").

5. On September 18, 2026, counsel representing Jenkins filed a "Notice of Bankruptcy Stay" in the Circuit Court for Baltimore City. In support of its Notice of Bankruptcy Stay, Jenkins attached this Court's prior Order Modifying Automatic Stay Solely for Purposes of Filing and Serving Certain Civil Complaints Under Maryland Law on or Before May 31, 2025 (the "Stay Order"). A copy of that Notice of Stay with its Stay Order, is attached as **Exhibit 1**.

6. By filing the Notice of Bankruptcy Stay and its attached Stay Order, Debtor appears to suggest that a stay was appropriate due to the potential impact of the litigation on a General Insurance Policy maintained by Debtor and covering it and its related entities including Jenkins.

7. The Rinaolo Claimants received no formal notice of the Debtor's Chapter 11 filing, bar dates, or plan proceedings prior to the service of Jenkins' Notice of Bankruptcy Stay on September 18, 2026.

8. On August 28, 2026, the Debtor filed its Fourth Amended Chapter 11 Plan of Reorganization (the "Plan") and accompanying Disclosure Statement. On September 9, 2026, the Court entered an order setting September 28, 2026, as the deadline for filing objections to the Disclosure Statement.

9. Since it appears that Jenkins' insurance coverage will be impacted by Debtor's Plan, the Rinaolo Claimants have filed this limited objection to Debtor's Fourth Amended Disclosure Statement.

**A. Both Categories of Insurance Appear to be Used for the Exclusive Benefit of Survivor Claimants to the Complete Detriment of Post-Petition Tort Victims**

10. By filing the Notice of Stay with its Stay Order, Jenkins asserts in state court that this Court exercises exclusive jurisdiction over its liability insurance policies to halt the State Court Action under Section 362(a)(3).

11. In turn, the Plan divides the liability insurance covering the Debtor and its affiliated Co-Insured Entities, including Jenkins, into two distinct categories: (a) Settling Insurer Policies, and (b) Non-Settling Insurer Policies. A review of the operative Plan terms shows that the Debtor has structured both categories of insurance so that all insurance appears to be liquidated, assigned, or channeled for the exclusive economic benefit of prepetition Survivor Claimants, while appearing to systematically extinguish or foreclose any access to coverage by post-petition non-survivor tort claimants.

12. Under Section 7.2 of the Plan, the Debtor purports to sell the Settling Insurer Policies back to the Settling Insurers free and clear of all liens, claims, encumbrances, and interests of all persons under 11 U.S.C. § 363(f). Pursuant to Section 7.3 and Section 13.4, Settling Insurers receive complete third-party releases and a permanent Supplemental Settling

Insurer Injunction, which forever bars and restrains all persons from asserting any claim against Settling Insurers or under Settling Insurer Policies.

13. In exchange for this policy cancellation and release, the Settling Insurers are paying an aggregate cash sum of $185,000,000. Pursuant to Section 4.2.3 of the Plan, 100 percent of these funds are transferred directly into the Survivor Compensation Trust.

14. In Footnote 4 of the Disclosure Statement (Doc. No. 2870 at page 9), the Debtor concedes:

> The Debtor estimates that approximately ninety-five percent (95%) of the proceeds from the sale of the Settling Insurer Policies could be attributable to the Co-Insured Entities, based upon the Co-Insured Entities' historical share of the insurance premiums paid as part of the Insurance Program.

15. Although the Debtor explicitly admits that up to 95 percent of the $185,000,000 in cash buybacks is attributable to policies paid for by and covering operating Co-Insured Entities like Jenkins, the Plan appears to allocate zero dollars from that fund to satisfy operating liabilities incurred by those Co-Insured Entities. The Plan permanently cancels those policies free and clear under Section 363(f), confers complete non-debtor releases on the carriers under Section 13.4, and sweeps 100 percent of the cash consideration into a trust that exclusively compensates prepetition abuse survivors. If the policy covering Jenkins in March 2024 was issued by a Settling Insurer, the Plan destroys that coverage entirely, leaving post-petition tort claimants with zero recovery from that carrier.

16. For all policies not subject to cash buybacks (the Non-Settling Insurer Policies), the Plan appears to divert coverage for the exclusive benefit of Survivor Claimants. Under Section 5.3.1 of the Plan, on the Effective Date, all rights, claims, interests, benefits, responsibilities, and obligations of the Co-Insured Entities (specifically including Jenkins) in the Non-Settling Insurer Policies are automatically assigned to the Insurance Trust, pursuant to

Section 365 of the Bankruptcy Code, free and clear of all Claims, liens, and encumbrances under Section 363(f). By its terms, that assignment is 'an assignment of the Co-Insured Entities' rights and interests in the Non-Settling Insurer Policies for the Insurance Trust to recover upon Insurance Claims relating to or arising out of Survivor Claims.' The Plan thus purports to strip the Co-Insured Entities of their policy rights while limiting the assignee Trust's recovery mandate to Survivor Claims alone, leaving no entity charged with pursuing coverage for a post-petition, non-survivor tort claim.

17. Section 5.3.1 then explicitly strips Jenkins and outside tort claimants of any standing, to the extent it previously existed, to pursue coverage under assigned policies, mandating:

> Upon the occurrence of the Insurance Assignment, the Insurance Trust, and only the Insurance Trust, shall have the right to pursue all available insurance coverage and remedies for Insurance Claims under the Non-Settling Insurer Policies pursuant to and in accordance with applicable non-bankruptcy law and the terms of the Non-Settling Insurer Policies.

18. Although Section 5.3.1 bars any entity other than the Insurance Trust from pursuing coverage, the Insurance Trust is created under Section 1.1.85, Section 5.1, and Section 5.6 strictly to assume liabilities for Survivor Claims. Under Section 5.9.1, the Insurance Trust is authorized to assert or assign insurance claims solely to Survivor Claimants. Under Section 5.9.2, all recoveries on account of assigned insurance claims recovered for Survivors become Insurance Trust Assets held exclusively for trust expenses and for distribution directly to the Survivor Compensation Trust.

19. To the extent the Debtor relies on Section 1.1.85(b) which describes the Insurance Trust as also assuming the Co-Insured Entities' 'rights and obligations under Non-Settling Insurer Policies' generally, that provision does not cure the defect: nothing in Sections 5.6, 5.9.1,

or 5.9.2 authorizes, funds, or obligates the Insurance Trust to defend, indemnify, reserve for, or distribute proceeds to any non-survivor claimant, so the Trust's assumption of policy 'rights and obligations' operates for the sole benefit of Survivor Claimants.

20. The Plan contains no provision requiring, authorizing, or empowering the Insurance Trustee to pursue coverage for, defend, indemnify, reserve for, or disburse insurance proceeds to any non-survivor claimant. That is, the Insurance Trustee owes no fiduciary duties to post-petition medical malpractice victims.

21. Consequently, having already lost the ability to pursue insurance claims against Settling Insurers, if Jenkins' March 2024 coverage is under a Non-Settling Insurer Policy, the Plan places the Rinaolo Claimants in an insurmountable legal impasse: Section 5.3.1 bars Jenkins and the Rinaolo Claimants from pursuing the carrier because "only the Insurance Trust" may do so, while Sections 5.6, 5.9.1, and 5.9.2 dictate that the Insurance Trust will never pursue coverage for, nor distribute proceeds to, anyone other than Survivor Claimants.

22. This apparent diversion of insurance is further compounded by the Plan's provisions regarding self-insured retentions and deductibles. Section 5.3.2(b) of the Plan states that the Insurance Trust "shall be solely responsible for satisfying, to the extent required under applicable law, any self-insured retention obligations on account of any Survivor Claim or arising out of any Non-Settling Insurer Policy." Section 5.3.2(b) simultaneously provides that "nothing in this paragraph shall obligate any Non-Settling Insurer or any Co-Insured Entity to advance any self-insured retention."

23. Because the Insurance Trust's assets and purpose appear under the Disclosure Statement and Plan to be dedicated exclusively to abuse survivors under Section 5.6 and Section 5.9.2, the Insurance Trustee may have no authority and, as structured, little incentive to expend

trust funds to satisfy an SIR or deductible for an unrelated post-petition medical malpractice claim. If an applicable policy requires payment of an SIR before defense or indemnity obligations attach, and the Co-Insured Entity is not obligated to advance it, the Debtor pays nothing, and the Insurance Trust pays only for survivors, the policy is rendered completely inaccessible.

24. Under either avenue, the Plan suggests a total forfeiture: Settling Insurer policies are extinguished with 100 percent of the buyout cash channeled to survivors, while Non-Settling Insurer policies are assigned to a trust that bars outside enforcement and pays exclusively to survivors. The Disclosure Statement fails to explain how any post-petition tort claimant previously entitled to insurance coverage will now be able to obtain an enforceable recovery.

25. Accordingly, the Disclosure Statement should provide more information on the insurance coverage applicable to Co-Insured Entities for post-petition non-survivor tort claims, as well as provide whether the Trustee will be permitted and willing to pay an SIR or deductible for post-petition non-survivor tort claims. This will permit post-petition non-survivor tort claimants with sufficient information to be able to evaluate the Plan and protect their interests.

**B. The Plan Fails to Classify or Treat Post-Petition Tort Claims Against Co-Insured Entities**

26. Compounding this concern, despite removing insurance coverage that the Rinaolo Claimants would be entitled to prior to bankruptcy, the Rinaolo Claimants have not been treated within the Plan.

27. Under Section 1.1.109 of the Plan, Class 7 "Non-Survivor Tort Claims" are strictly limited to claims asserted against the "Debtor." Because Section 1.1.55 defines the "Debtor" exclusively as the Roman Catholic Archbishop of Baltimore, tort claims asserted against Co-Insured Entities such as Jenkins fall outside the definition of a Class 7 claim.

28. The Plan establishes no distinct class, provides no alternative treatment, and constructs no distribution mechanism for non-survivor tort claims asserted against operating Co-Insured Entities.

29. Consequently, the Debtor is utilizing Chapter 11 to redirect the liability insurance covering Jenkins to fund prepetition settlements, while leaving Jenkins fully exposed to outside tort liability and leaving Jenkins' post-petition tort victims completely unclassified and without any remedy under the Plan.

**C. The Plan Provides No Adequate Protection Under 11 U.S.C. § 363(e)**

30. As noted above, the Disclosure Statement indicates Debtor will sell the Settling Insurer Policies back to the Settling Insurers free and clear of all liens, claims, encumbrances, and interests of all persons under Sections 105, 363(f), and 1123. Likewise, under Plan Section 5.3.1, on the Effective Date, all Non-Settling Insurer Policies are automatically assigned to the Insurance Trust free and clear under Sections 363(f) and 365. Regardless of the provision relied upon for either sale, none dispenses with the mandatory adequate-protection requirement of Section 363(e).

31. Under 11 U.S.C. § 363(e), at any time, on request of an entity that has an interest in property proposed to be used, sold, or leased by the debtor, the court "shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."

32. To the extent that insurance policies impacting their case are being sold, as the Rinaolo Claimants' case involves an individual who sustained severe, permanent physical injuries in March 2024 at an operating facility covered under the Debtor's centralized insurance program, the Rinaolo Claimants hold a concrete, cognizable interest under Maryland law in the liability coverage and indemnity proceeds of the policies in effect during that policy period.

33. Yet, the Disclosure Statement fails to explain how persons with post-petition insurance claims against Co-Insured Entities will have adequate protection provided by the proposed Plan's use of the Co-Insured Entities' Insurance. The Plan provides no replacement reserve, no segregated escrow, and no reference to other available policies and no alternative security to protect post-petition tort claimants.

**D. The Disclosure Statement Fails to Satisfy 11 U.S.C. § 1125**

34. Under 11 U.S.C. § 1125(a)(1), the Disclosure Statement must contain adequate information to enable creditors and parties in interest to evaluate the plan and understand how property of the estate is being administered. By Debtor's filing a Notice of Bankruptcy with its Stay Order in the Circuit Court Proceedings because of its potential impact on insurance funds, the Rinaolo Claimants are now parties in interest with impaired interests under the proposed Plan.

35. Beyond simply not providing them with any treatment status under the Plan, the Disclosure Statement fails to provide adequate information in the following critical respects for them to evaluate the Plan and protect their interests:

A. It fails to identify the specific commercial general liability, professional liability, or medical malpractice insurance policies that covered operations at Jenkins Memorial Nursing Home, Inc. during March 2024;

B. It fails to disclose whether the insurers covering Jenkins for March 2024 are Settling Insurers (whose policies are being sold and released under Article 7) or Non-Settling Insurers (whose policies are assigned to the Insurance Trust under Section 5.3.1);

C. It fails to disclose the policy numbers, effective dates, per-occurrence limits, aggregate limits, and exhaustion status of the coverage applicable to Jenkins' March 2024 operations;

D. It fails to explain how a post-petition tort claimant can ever enforce coverage under an assigned policy when Section 5.3.1 decrees that "only the Insurance

Trust" has the right to pursue coverage, while the Insurance Trust owes no fiduciary duty to non-survivor claimants;

E. It fails to disclose who is responsible for funding any applicable SIR or deductible under Section 5.3.2(b) for an unrelated medical malpractice claim; and

F. It fails to disclose the legal basis under which the Debtor can monetize 95 percent of the operating entities' insurance coverage to pay prepetition claims without providing adequate protection under Section 363(e) to subsequent tort victims of those operating entities.

36. Without disclosure of the underlying insurance architecture, the Rinaolo Claimants and other affected parties are deprived of the ability to evaluate the economic reality of the Plan or assess whether the Plan impermissibly strips them of their sole source of recovery.

37. Because the Rinaolo Claimants received their first notice of this bankruptcy proceeding on September 18, 2026, when Jenkins filed its Notice of Bankruptcy Stay in state court, they have had only ten days to review a voluminous docket spanning three years. Consequently, the Rinaolo Claimants expressly reserve all rights under principles of procedural due process to amend, supplement, or restate this Limited Objection, to propound formal discovery regarding applicable insurance coverage, and to assert any and all additional objections to approval of the Disclosure Statement and confirmation of the Plan as further investigation warrants.

**WHEREFORE**, Parties in Interest, Joseph Rinaolo and Leanore Walker, respectfully request that this Court enter an Order:

A. Denying approval of the Fourth Amended Disclosure Statement [ECF No. 2870] until the Debtor amends the document to provide adequate information under 11 U.S.C. § 1125 regarding the specific insurance policies applicable to operations at Jenkins Memorial Nursing Home, Inc. for March 2024, including carriers, policy

numbers, effective dates, policy limits, exhaustion status, and responsible parties for retentions;

B. Ordering the Debtor and Jenkins to file a formal Insurance Disclosure Schedule identifying all primary, excess, and umbrella liability policies covering Jenkins for March 2024, and designating whether each insurer is a Settling Insurer or Non-Settling Insurer;

C. Requiring the Debtor to supplement the Disclosure Statement to explain whether the insurance assignments, policy sales, and injunctions in Sections 5.3.1, 7.2, and 13.4 of the Plan affect coverage for postpetition, non-survivor tort claims against Co-Insured Entities, including the Rinaolo Claimants' claims against Jenkins, and to identify how the Plan preserves access to any applicable coverage, defense, and indemnity rights;

D. Providing that approval of the Disclosure Statement does not determine whether the automatic stay applies to the State Court Action and does not prejudice the Rinaolo Claimants' right to seek, by separate motion, clarification of the stay's scope or relief from the stay under 11 U.S.C. § 362; and

E. Granting the Rinaolo Claimants such other and further relief as the Court deems just and proper.

Respectfully submitted

/s/ Adam M. Spence

Adam M. Spence, Esq., Fed. Bar No. 14356
Spence Law Group, LLC
304 W. Pennsylvania Avenue
Towson, Maryland 21204

(410) 823-5003
adam@spencefirm.com
**Counsel for Parties in Interest,**
**Joseph Rinaolo and Leanore Walker**

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 28, 2026, I served a copy of the foregoing Limited Objection through the Court's CM/ECF system on all counsel of record, including counsel for the Debtor and the Creditors' Committee, the U.S. Trustee, and the other parties identified on the attached service list as registered to receive electronic notice in this matter.

/s/ Adam M. Spence
Adam M. Spence

- Nathan D. Adler - nda@nqgrg.com, terry@nqgrg.com
- Sam Alberts - sam.alberts@dentons.com, docket.general.lit.wdc@dentons.com
- Monique Desiree Almy - malmy@crowell.com, cbest@crowell.com; malmy@ecf.axosfs.com; monique-almy-7127@ecf.pacerpro.com
- E. Christopher Amos - echrisamos@gmail.com
- Philip D. Anker - philip.anker@wilmerhale.com, Yolande.Thompson@wilmerhale.com
- Ryan S. Appleby - rappleby@gibsondunn.com, ryan-s-appleby-6523@ecf.pacerpro.com
- G. Calvin Awkward - cawkward@goldbergsegalla.com, wbartholomew@goldbergsegalla.com
- Jesse Bair - jbair@burnsbair.com, kdempski@burnsbair.com
- Jodie E. Bekman - jbekman@gfrlaw.com, dferguson@gfrlaw.com
- Michael J. Belsky - mbelsky@sbwdlaw.com
- Brian Bennett - brianbennett1962@comcast.net
- Hugh M. (UST) Bernstein - hugh.m.bernstein@usdoj.gov
- Aaron Michael Blank - ablank@bkinjury.com
- Alexander Toth Boudreau - aboudreau@gibsondunn.com
- Eileen King Bower - eileen.kingbower@clydeco.us, Jennifer.Hansen@clydeco.us
- Stephen Boyd - sboyd@steveboyd.com
- Diane C. Bristow - dcb@nqgrg.com, taylor@nqgrg.com
- Timothy W. Burns - tburns@burnsbair.com, kdempski@burnsbair.com
- Edwin H Caldie - ed.caldie@stinson.com, jess.rehbein@stinson.com
- Jacob C Cohn - jcohn@plevinturner.com
- Elizabeth Connell - elizabeth@connellcounsel.com
- Richard L. Costella - rcostella@tydings.com, myoung@tydings.com; pcoolbaugh@tydings.com
- Nicholas A. Dellefave - nicholas.dellefave@hklaw.com
- Jillian Dennehy - jillian.dennehy@kennedyslaw.com
- Adam Ross Durst - adurst@goldbergsegalla.com, kallen@goldbergsegalla.com
- Philip Tucker Evans - philip.evans@hklaw.com, kimi.odonnell@hklaw.com; hapi@hklaw.com
- Michael G. Farag - mfarag@gibsondunn.com
- Justin Philip Fasano - jfasano@mhlawyers.com, jfasano@ecf.courtdrive.com; tmackey@mhlawyers.com; mevans@mhlawyers.com; cmartin@mhlawyers.com; Fasano.JustinR92003@notify.bestcase.com
- Nathaniel Foote - nate@vca.law
- Kevin Foreman - kforeman@carltonfields.com
- Andrew Freeman - adf@browngold.com, khill@browngold.com; ldyson@browngold.com
- Richard A Galbo - rgalbo@goldbergsegalla.com
- Andrew Glasnovich - drew.glasnovich@stinson.com
- Gary R. Greenblatt - Grg@cooncolelaw.com, cmh@cooncolelaw.com; mes@cooncolelaw.com
- Geoffrey Grivner - geoffrey.grivner@bipc.com, donna.curcio@bipc.com
- Alan M. Grochal - agrochal@tydingslaw.com, pcoolbaugh@tydings.com
- Adam P. Haberkorn - ahaberkorn@omm.com, adam-haberkorn-2269@ecf.pacerpro.com
- Samantha Hanson-Lenn - samantha.hansonlenn@stinson.com, mpl.lssteam5@stinson.com
- Ezhan Syed Hasan - ahasan@wiley.law
- Mark E. Herman - markherman@wgk-law.com
- Matthew Allan Hoffman - mhoffman@gibsondunn.com, matthew-a-hoffman-3853@ecf.pacerpro.com
- Catherine Keller Hopkin - chopkin@yvslaw.com, pgomez@yvslaw.com; kreese@yvslaw.com; vmichaelides@yvslaw.com; yvslawcmecf@gmail.com; hopkincr39990@notify.bestcase.com
- Sheldon N Jacobs - sheldon@sheldonjacobslaw.com
- Todd C. Jacobs - tjacobs@phrd.com
- Andrew Janet - asjanet@jjsjustice.com
- Robert Keith Jenner - rjenner@jennerlawfirm.com
- Joshua Kahn - jkahn@sfspa.com
- Edward J Kelley - ed@constantllp.com
- Steven J Kelly - skelly@gelaw.com, vbeal@gelaw.com, gnovod@gelaw.com, 4523903420@filings.docketbird.com
- Nicole Khalouian - nicole.khalouian@stinson.com
- Anthony Kikendall - kikendalla@whiteandwilliams.com
- Donna M.B. King - dking@dking-law.com
- Robert H. Kline - kliner@whiteandwilliams.com
- Eric George Korphage - korphagee@whiteandwilliams.com
- Shelby Kostolni - shelby.kostolni@stinson.com
- Robert T Kugler - robert.kugler@stinson.com
- Christopher Scott Kunde - scott.kunde@hklaw.com
- Jennifer S. Lubinski - jlubinski@heymanfirm.com, jslubinski@gmail.com
- Emily C Malarkey - malarkey@malperl.com
- Stephen A. Markey - steve@markeyorsilaw.com, amy@markeylawfirm.com
- Wray Charles Meltmar - cmeltmar@cochranfirm.com
- Siobhain Patricia Minarovich - minarovichs@whiteandwilliams.com
- James R Murray - Jim.Murray@blankrome.com
- Michael Raymond Naccarato - mrnaccarato@gw-law.com
- Frank Natale - fnatale@sssfirm.com
- Matthew Nelson - matthew.nelson@kennedyslaw.com, linda.conigliero@kennedyslaw.com
- Janet M. Nesse - jnesse@mhlawyers.com, jfasano@mhlawyers.com; cpalik@mhlawyers.com; jnesse@ecf.inforuptcy.com; tmackey@mhlawyers.com;cmartin@mhlawyers.com; kfeig@mhlawyers.com; BKrell@mhlawyers.com
- Timothy P. Palmer - timothy.palmer@bipc.com
- Kathleen Aine Parnow - katie.parnow@stinson.com
- Ryan S. Perlin - perlin@malperl.com
- Mark D. Plevin - mplevin@plevinturner.com
- Mark David Plevin - mplevin@crowell.com

- Marie Ysabelle Hope Gatmaitan Reyes - yreyes@wiley.law
- David Kendall Roberts - droberts2@omm.com, dave-roberts-9007@ecf.pacerpro.com
- Matthew Roberts - mroberts@phrd.com
- Annette Rolain - arolain@ruggerilaw.com, bkfilings@ruggerilaw.com
- Michael Rosenthal - mrosenthal@gibsondunn.com, michael--rosenthal-4826@ecf.pacerpro.com
- Blake Daniel Roth - blake.roth@hklaw.com, brooke.freeman@hklaw.com; cathy.young@hklaw.com
- James Pio Ruggeri - jruggeri@ruggerilaw.com
- Megan Sanderson - megan.sanderson@bge.com
- Isabella Sayyah - isayyah@gibsondunn.com, isabella-sayyah-5306@ecf.pacerpro.com; pacer-ca@gibsondunn.com
- Jonathan Schapp - jschapp@goldbergsegalla.com, bfaulkner@goldbergsegalla.com; kallen@goldbergsegalla.com
- Tancred Schiavoni - tschiavoni@omm.com, tancred-schiavoni-9326@ecf.pacerpro.com
- Jeffrey R. Scholnick - jscholnick@scholnicklaw.com, ccasado@scholnicklaw.com; scholnick.jeffreyb107952@notify.bestcase.com
- Gary Paul Seligman - gseligman@wiley.law
- Christopher Sevedge - christopher.sevedge@stinson.com
- Marc E. Shach - mes@cooncolelaw.com, mes@cooncolelaw.com; ccc@cooncolelaw.com; dhc@cooncolelaw.com;zjac@cooncolelaw.com; cmh@cooncolelaw.com; grg@cooncolelaw.com; abh@cooncolelaw.com
- David J. Shuster - dshuster@kg-law.com, ssohn@kg-law.com
- Natalie L. Soloperto - NSoloperto@gibsondunn.com
- Morgan Kathleen Stippel - mstippel@burnsbair.com, kdempski@burnsbair.com
- Kevin Patrick Sullivan - kps@kpsullivanlaw.com, tlb@kpsullivanlaw.com
- Miranda Turner - mturner@plevinturner.com, miranda-turner-7827@ecf.pacerpro.com
- US Trustee - Baltimore - USTPRegion04.BA.ECF@USDOJ.GOV
- Nora Anne Valenza-Frost - nvalenza-frost@carltonfields.com
- John P Van Beek - jvanbeek@goldmanvanbeek.com, gvbparalegal@goldmanvanbeek.com; hcurrier@goldmanvanbeek.com
- Irving Edward Walker - iwalker@coleschotz.com, pratkowiak@coleschotz.com; bankruptcy@coleschotz.com
- Joshua D Weinberg - jweinberg@ruggerilaw.com
- Matthew Michael Weiss - mweiss@phrd.com
- Robert Matthew Westra - rwestra@ppsrlaw.com, westrarr66199@notify.bestcase.com
- Harris B. Winsberg - hwinsberg@phrd.com
- Thomas Yost - staceyhare@yostlaw.com