**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| In re: | Case No. 23-16969 |
| Roman Catholic Archbishop of Baltimore, | Chapter 11 |
| Debtor. | Judge Michelle M. Harner |

# THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1)

The Official Committee of Unsecured Creditors (the "Committee") appointed in the bankruptcy case of the Roman Catholic Archbishop of Baltimore (the "Debtor"), by and through its undersigned counsel, hereby moves for entry of an order (the "Motion"), pursuant to 11 U.S.C. § 362(d) and Bankruptcy Rule 4001(a), modifying the automatic stay for cause to permit the claims that are the subject of the Pending Claim Objections to be litigated in the Maryland state courts. In support of its Motion, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

For more than three years, survivors of childhood sexual abuse perpetrated by clergy and others associated with the Debtor (the "Survivors") have waited for their day in court. The Debtor filed this bankruptcy case two days before the CVA took effect, and in doing so stripped Survivors of the ability to file their claims when and where they chose, to obtain discovery, and to present their claims to a jury. The Debtor then successfully lobbied the Maryland General Assembly to amend the CVA and impose new filing deadlines.[1] Those amendments forced Survivors to rush to

[1] Maryland Catholic Conference, HB 1378 Child Sexual Abuse Claims Against the State – Time Limitation, https://mgaleg.maryland.gov/cmte_testimony/2025/jud/1FzSezwKjuuXg7Ov0dONWSX_8lSxNdhQ0.pdf ("By setting a deadline for filing claims, HB 1378 allows institutions to plan for compensating victims in a structured and equitable manner rather than face the indefinite and unpredictable liabilities that currently exist under the CVA.") ; *see* Maryland Catholic Conference, Who We Are, https://www.mdcatholic.org/about/ (last accessed Nov.16, 2026)

obtain stay relief and assert almost a thousand claims in Maryland state court before the Debtor-advocated deadline threatened to cut the recovery on those claims in half. In that narrow window, Survivors chose their forum: the Maryland state courts. The Debtor has thus dictated the time, place, and manner in which Survivors may expose and litigate the horrific abuse perpetrated by the Catholic Church in Maryland. The Debtor, joined by its insurers, now seeks to extinguish hundreds of claims via a process that would deny Survivors discovery entirely, short-circuit their statutory and constitutional right to a jury trial, and nullify the only choice this process has allowed Survivors to exercise: their choice of forum.

Each of the Fourth Circuit's *Robbins* factors favors modifying the stay to facilitate the relief requested in this Motion. The Pending Claim Objections concern whether a Survivor has stated a viable CVA claim, whether the Debtor is liable for that CVA claim, and the extent of any affirmative defense asserted by the Debtor or its insurers. These are all questions of state law that require meaningful factual inquiry and must ultimately be decided by a jury, either in the District Court or in the Maryland state courts. Between those two options, the Maryland state court system is the obvious choice: it is the court system designated as the appropriate venue for these claims by the General Assembly, the court system experienced with similar claims asserted against other institutional defendants following the passage of the CVA, and the court system that Survivors have already chosen by commencing their lawsuits there.

The Objecting Insurers' recently filed objections supply an additional, independent reason to grant this Motion. Century and CNA are trying to use the Debtor's bankruptcy to help themselves to material rights that they would have absolutely no basis to pursue or assert outside

("The Maryland Catholic Conference is the official public policy entity for the Catholic Church, including the Archdiocese of Baltimore, Archdiocese of Washington and Diocese of Wilmington, home to more than one million Catholics.").

of bankruptcy. Century and CNA are not creditors, they argue that they do not owe coverage, and they would have no voice in Survivor lawsuits litigated in Maryland state courts.

Stated plainly, the Objecting Insurers seek to use this Court as a sword while the automatic stay simultaneously continues to protect them from the procedural limitations, costs, and potentially-daunting consequences of allowing Survivors to proceed on their claims in the venue that they chose—the Maryland state courts—all while Century and CNA continue to deny any obligation to pay Survivor claims in the first instance. The simple, but incontrovertible fact is that neither Century nor CNA can show, as they must to establish constitutional standing, a concrete, particularized injury from the mere allowance of any Survivor claim to which they object. For these reasons, and others detailed below, the Committee respectfully requests that the Court modify the automatic stay to permit the claims subject to the Pending Claim Objections to proceed in the Maryland state courts.

## BACKGROUND

1. On September 29, 2023 (the "Petition Date"), the Debtor filed a petition for relief under chapter 11 of title 11 of the U.S. Code (the "Bankruptcy Code").

2. The Debtor continues to operate its business as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

3. On October 11, 2023, the Office of the U.S. Trustee appointed the Committee in this case. The Committee consists of seven Survivors who asserted claims in this bankruptcy case.

4. The Court extended the Debtor's automatic stay to certain parishes, schools, and other entities that might share insurance with the Debtor related to Survivor claims.[2]

---

[2] Dkt. No. 173.

5. In the years preceding the Petition Date, the Maryland Office of the Attorney General conducted an investigation and issued a report in April 2023, concluding that over six hundred children were known, at that time, to have been abused by at least 156 priests, teachers, lay employees, and/or other individuals employed, supervised, or otherwise associated with the Debtor.

6. Thereafter, the Maryland General Assembly enacted the Child Victims Act of 2023 (the "CVA"), which eliminated the statute of limitations in Maryland for survivors of childhood sexual assault to bring claims against individuals and institutions who may be civilly liable for the atrocities perpetrated upon Survivors. [3]

7. The Debtor filed this case just two days before the CVA took effect.

8. On January 16, 2024, the Court entered the *Order (I) Establishing Deadlines for Filing Proofs of Claim; (II) Approving Sexual Abuse Claim Supplement; (III) Approving Form and Manner of Notice; and (IV) Approving Confidentiality Procedures* (the "Bar Date Order")[4], which established May 31, 2024 as the general bar date in this bankruptcy case.

9. The Bar Date Order created a process designed to protect the confidential information of Survivors in this case, but it also protects the Debtor's financial and other business records from public disclosure. The exchange of information between the Debtor and Committee is subject to strict confidentiality procedures and has been done largely outside the view of the public.

10. Because of the limitations imposed by the Bar Date Order and the fact that the Debtor filed its petition before any CVA lawsuits could be filed, Survivors have not been permitted

[3] Md. Code, Cts. & Jud. Proc. § 5-117.

[4] Dkt. No. 316.

to obtain any discovery against the Debtor or its affiliates regarding the decades of sexual abuse and subsequent coordinated cover-up that form the basis of Survivors' claims. Discovery into these matters is central to the resolution of issues raised in the Pending Claim Objections, including the extent to which any settlement agreements at issue in those objections were obtained as a result of fraudulent or otherwise actionable misrepresentations.

11. Likewise, the Committee has not been permitted to share specific information or discuss important revelations regarding the Debtor's liability with Survivors on account of these confidentiality procedures and the Court's order requiring the parties to maintain mediation confidentiality.

12. One and a half years after the bar date passed, the Debtor filed more than 200 individual claim objections and five omnibus claim objections. Through its omnibus and individual objections, the Debtor lodged 675 objections in total, all against Survivor claims.[5]

13. The Court granted the Committee's request to extend the deadline for Survivors to respond to the Debtor's objections and also established certain interim procedures for all parties to follow during the claim objection process.[6]

14. Of the Debtor's objections based on allegations relating to Prior Settlements, No Stated CVA Claim, No Debtor Liability, and Lack of Claim Supplement (*i.e.*, all those objections not addressing duplicate or amended claims), more than seventy-five percent (75%) of Survivors

---

[5] *See, e.g., Debtor's First Omnibus Objection to Claims (Non-Substantive; Amended and Superseded Claims)* [Dkt. No. 1525]; *Debtor's Second Omnibus Objection to Claims (Non-Substantive; Amended and Superseded Claims)* [Dkt. No. 1528]; *Debtor's Third Omnibus Objection to Claims (Non-Substantive; Amended and Superseded Claims)* [Dkt. No. 1530]; *Debtor's Fifth Omnibus Objection to Claims (Non-Substantive; Duplicate Claims)* [Dkt. No. 1535]; *Debtor's Fourth Omnibus Objection to Claims (Non-Substantive; Amended and Superseded Claims)* [Dkt. No. 1584].

[6] *Order Extending Deadline to Respond to Claim Objections and Establishing Interim Procedures Governing Pending Objections* [Dkt. No. 1764].

opposed or requested additional information regarding the objections, and eight percent (8%) of Survivors filed no response at all.

15. The Court has already entered orders resolving the Debtor's objections to duplicate and amended claims.[7]

16. The claim objections filed by the Debtor relating to Prior Settlements, No Stated CVA Claim, No Debtor Liability, and Lack of Claim Supplement (*i.e.*, all those objections not addressing duplicate or amended claims) remain pending before the Court (the "Debtor Pending Claim Objections").[8]

17. Two estate insurers, Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America, and Indemnity Insurance Company of North America (together, "Century"), and American Casualty Company ("CNA" and, together with Century, the "Objecting Insurers"), have since filed claim objections in this case,[9] either on their own or joining those filed by the Debtor (the "Objecting Insurer Pending Claim Objections" and, together with the Debtor Pending Claim Objections, the "Pending Claim Objections").

## **JURISDICTION**

18. Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 157 and 1334 and *Standing Order* 2012-05 from the United States District Court for the District of Maryland. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

19. Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[7] *See* Dkt. Nos. 2360, 2361, 2362, 2363, 2395, 2478.

[8] *See* Dkt. Nos. 1493–1499, 1500–1524, 1526–1527, 1541–1584, 1587–1591, 1593–1611, 1613–1675, 1677–1686, 1690–1701, 1704–1715, as well as all responsive papers.

[9] *See* Dkt. Nos. 2969, 2973, 2976, 2979, 2980–2998, 3003, 3038, 3056–3066, 3078, as well as all responsive papers.

20. The statutory bases for the relief requested herein are Bankruptcy Code sections 105(a) and 362, Bankruptcy Rule 4001, and Local Rule 4001-1.

## RELIEF REQUESTED

21. The Committee respectfully requests entry of an order modifying the automatic stay to permit the Survivors whose claims are subject to the Pending Claim Objections to litigate the Pending Claim Objections, along with their underlying claims, in the Maryland state courts, with any resulting judgment on any claim to be enforced only through this Court, if at all, and for such further relief as the Court deems would serve the interests of judicial economy and progress in this case.

## ARGUMENT

### I. THE COMMITTEE HAS STANDING TO REQUEST RELIEF FROM STAY.

22. Any party in interest may file a motion for relief from stay.[10] The Bankruptcy Code expressly names a creditors' committee as a "party in interest" under Section 1109(b), so the Committee has standing to bring this Motion.[11] Although a committee's role is evaluated on a case-by-case basis (standing is not dispensed in gross),[12] the Bankruptcy Code authorizes a committee to perform a broad range of functions in a case:

> (1) consult with the trustee or debtor in possession concerning the administration of the case;

[10] 11 U.S.C. § 362(d) ("On request of **a party in interest** and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay…").

[11] *See In re Calvary Temple Evangelistic Ass'n*, 47 B.R. 520, 522 (Bankr. D. Minn. 1984) ("The policy behind allowing creditors' committees to raise issues in administration of Chapter 11 estates is plain. The Bankruptcy Code was drafted with the intent of allowing the creditors' committee to protect the rights of creditors, especially where the debtor's action or lack thereof infringes on the creditors' rights."); *see also* Order Denying Without Prejudice Motion to Bar Creditors' Committee from Participating in the Claim Objection Process, Dkt. 3702 (rejecting bid to override Section 1109(b) via motion brought under Section 105(a)).

[12] *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 420 (4th Cir. 2025), *cert. dismissed,* 146 S. Ct. 2549 (2026) ("[S]tanding is not dispensed in gross.") (citations omitted).

> (2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;
>
> (3) participate in the formulation of a plan, advise those represented by such committee of such committee's determinations as to any plan formulated, and collect and file with the court acceptances or rejections of a plan;
>
> (4) request the appointment of a trustee or examiner under section 1104 of this title; and
>
> (5) perform such other services as are in the interest of those represented.[13]

23. "[A] reasonable construction of § 1103(c)(5) is that a committee can perform such other services *within the bankruptcy case* as are in the interest of those represented."[14]

24. Here, the Committee seeks to (i) expedite resolution of this chapter 11 case and (ii) shift litigation costs outside the estate, both in furtherance of the financial interests of all unsecured creditors.

25. The Committee seeks stay relief primarily "to try, among other things, to regulate the process whereby [the parties are] going to get a solution."[15] The Motion represents the most efficient path to a global, consensual resolution of the Pending Claim Objections and the claims placed at issue by those objections. The matters presented for the Court's determination on the Pending Claim Objections necessarily entail threshold procedural and other disputes before even reaching the merits of the objections or the underlying claims. Many of those disputes can be avoided by moving the claims to a forum that has been designated to resolve the substantive disputes at issue and that can adjudicate each claim and every defense to it from pleading through jury verdict. The Committee accordingly seeks the relief requested in this Motion on behalf of

---

[13] 11 U.S.C. § 1103(c). *See also In re Anderson*, 349 B.R. 448, 463 (E.D. Va. 2006).

[14] *In re Dow Corning Corp.*, 199 B.R. 896, 902 (Bankr. E.D. Mich. 1996).

[15] *In re Roman Catholic Bishop of Oakland Bankr. Automatic Stay App.*, 680 B.R. 658, 670 (N.D. Cal. 2026).

those it represents and, more generally, on behalf of the process by which a settlement in this case can be reached.[16]

26. Committees, including those in the Fourth Circuit, have been permitted to participate in matters concerning discovery and claim objections.[17] For example, the committee in *Anderson* sought to participate in the claim objection proceedings by focusing on the debtor's scheme to defraud creditors; in that capacity, the court determined the committee was "fulfilling its primary responsibility to represent the interests of its members."[18] Likewise here, the Committee seeks relief from the stay to resolve the Pending Claim Objections, which the Debtor has said it intends to resolve as part of confirming a plan of reorganization.[19] This relief will benefit all Survivors and all participants in the plan negotiation process, because it will permit the case to advance toward resolution. The Committee believes firmly that modifying the stay to allow Pending Claim Objections to proceed in state court will not delay, and in fact will materially expedite, the submission and confirmation of a plan of reorganization in this case.

27. The Motion also seeks relief that will preserve estate assets and reduce administrative expenses. The Objecting Insurers are not paying the Debtor's attorneys to prosecute the Pending Claim Objections during the bankruptcy; instead, the estate and its creditors bear the cost of that litigation. If the Motion is granted, the Objecting Insurers would likely be required to defend the Debtor in state court proceedings and compensate non-estate professionals to produce discovery and challenge the legal validity of Survivor claims. Moreover, such funds paid by the

---

[16] *See, e.g., In re Roman Catholic Bishop of Oakland*, 680 B.R. at 669-70 (upholding Committee's standing to seek stay relief "as a potential pathway to reach a consensual resolution of Debtor's bankruptcy proceeding, which would benefit all unsecured creditors").

[17] *See, e.g., Anderson*, 349 B.R. at 465.

[18] *Anderson*, 349 B.R. at 465.

[19] Tr. of Sept. 8, 2026 Hr'g, 12:17–13:14.

Objecting Insurers will not reduce estate assets. Per the terms of the Objecting Insurers' policies, the fees and costs paid by the Objecting Insurers in state court proceedings will not reduce the insurance limits available to Survivors. The Committee and its constituency therefore have a direct financial interest in preventing further administrative expenses and shifting those costs to the Objecting Insurers.

## II. BURDEN OF PROOF

When seeking stay modification, the movant must make an initial showing of cause but, once it does, the party opposing relief bears the burden of proving that cause does not exist.[20] 11 U.S.C. § 362(g)(2). Section 362(g) is unequivocal:

> In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—
>
> > **(1)** the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
> > **(2)** the party opposing such relief has the **burden of proof** on all other issues.[21]

## III. LEGAL STANDARD FOR STAY RELIEF

28. The Court may grant relief from the automatic stay for "cause."[22] Because the Bankruptcy Code does not define "cause," courts have broad discretion to lift the automatic stay under § 362(d)(1) based on a case-specific analysis.[23] "[T]he relief mandated by § 362(d) may

---

[20] *See* Collier on Bankruptcy at 362.103 (16th ed.) ("The allocation of the burden of persuasion can be analogized to the allocation in a hearing seeking an injunction. Normally, a party seeking an injunction has the burden of proof with respect to the basis for the injunction. Here, the trustee, debtor in possession or other party seeking to maintain the protection of the stay is in essence seeking an injunction, in the form of continuation of the stay. Therefore, section 362(g) places the burden of proof on most issues on the party seeking continuation of the stay. The one exception is with respect to the burden of proving the debtor's equity, or lack of equity, in the property. There, the burden is placed on the party seeking relief from the stay."); *see also Kohlsaat v. Parkersburg & Marietta Sand Co.*, 266 F. 283, 284–85 (4th Cir. 1920) (distinguishing the burden of persuasion from the burden of going forward).

[21] 11 U.S.C. § 362(g) (emphasis added).

[22] 11 U.S.C. § 362(d)(1).

[23] *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992).

include 'terminating, annulling, modifying, or conditioning' the automatic stay imposed by § 362(a)."[24] To determine whether cause exists, the court must balance the "potential prejudice to the bankruptcy debtor's estate against the hardship that will be incurred by the person seeking relief from the automatic stay if relief is granted."[25]

29. The Fourth Circuit's decision in *Robbins* provides three factors for the Court to consider in deciding whether cause exists to lift the automatic stay so that the parties may commence litigation outside of the bankruptcy court: (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.[26]

30. In articulating the *Robbins* factors, the Fourth Circuit relied heavily on the legislative history of § 362:

> [I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.[27]

---

[24] *In re McPherson*, 630 B.R. 160, 166 (Bankr. D. Md. 2021).

[25] *Robbins*, 964 F.2d at 345.

[26] *See id.*

[27] 964 F.2d at 345 (citing to S. Rep. No. 989, 95th Cong., 2d Sess. 50 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5836 and 2 Collier on Bankruptcy § 362.07[3], at 362-71 (15th ed. 1991) ("the liquidation of a claim may be more conveniently and speedily determined in another forum")).

31. Thus, the judicial analysis requires reviewing courts to weigh carefully the estate's interests against both the concerns of the collective creditor body and the potential prejudice that a creditor might suffer if denied the opportunity to pursue its claims.[28]

32. Although circumstances vary, courts across the country regularly find cause to modify the automatic stay and to allow Survivors to pursue their claims against a diocesan debtor (and ultimately its insurers) in a non-bankruptcy court. *See* Order Re: Appeal of Relief from Automatic Stay, *In re Roman Catholic Bishop of Oakland Bankruptcy Automatic Stay Appeal*, Civ. No. 25-cv-06836-JSC, Dkt. 50 (N.D. Cal. April 7, 2026); *Order Granting Motions for Relief from the Automatic Stay*, *In re Roman Catholic Diocese of Albany, New York*, No. 23-10244 (Bankr. N.D.N.Y. Mar. 17, 2025) [Dkt. 1545]; *Order on Debtor's Motion to Approve Stipulation Modifying the Automatic Stay*, *In re Roman Catholic Bishop of Santa Rosa*, No. 23-10113 (Bankr. N.D. Cal. Aug. 26, 2025) [Dkt. 1480]; *Order Granting Debtor's Motion to: (1) Approve Stipulation Modifying the Automatic Stay; and (2) Waiver of 14-Day Stay Period*, *In re Roman Catholic Bishop of Sacramento*, No. 24-21326 (Bankr. E.D. Cal. Jul. 25, 2025) [Dkt. 1484]; *Interstate Fire & Cas. Co. v. Roman Cath. Bishop of Sacramento*, No. 2:25-CV-02262 WBS, 2026 WL 508073, at *6 (E.D. Cal. Feb. 24, 2026) (upholding the bankruptcy court's order modifying the automatic stay in *In re Roman Catholic Bishop of Sacramento*); *Order Granting Debtor's Motion to Approve Compromise and Stipulation Modifying the Automatic Stay*, *In re Roman Catholic Archbishop of San Francisco*, No. 23-30564 (Bankr. N.D. Cal. Sept. 17, 2025) [Dkt. 1346].

---

[28] *See McPherson*, 630 B.R. at 178.

## IV. CAUSE EXISTS TO MODIFY THE STAY.

### A. The *Robbins* Factors Weigh in Favor of Modifying the Stay.

#### *i. The Merits of the Pending Claim Objections Turn Exclusively on State Law Issues That Do Not Require This Court's Expertise.*

33. The *Robbins* factors support the relief sought in this Motion. The first factor concerns whether the issues raised in the Pending Claim Objections and the corresponding claims involve only the application of state law. The answer is yes.

34. The Pending Claim Objections concern (i) whether a prior settlement agreement validly released the claims at issue; (ii) whether the claim asserts a CVA claim; and (iii) whether the Debtor, as an institutional defendant, would be liable for the conduct asserted. Each objection goes to the merits of a personal injury claim or an affirmative defense to that claim, and the merits of each are therefore governed exclusively by state law. But for the Debtor's bankruptcy filing, each of those arguments (to the extent presented by a defendant in actual litigation) would have been litigated before a state court judge with authority to preside over the entire claim and every defense, from opening pleading through final adjudication.

35. The Committee does not underestimate the expertise of this Court or its ability to get up to speed on the state law issues involved with claims asserted under the CVA. But this Court's ability to do so is not the first *Robbins* factor. Rather, the first *Robbins* factor asks whether the issues call for the bankruptcy court's unique expertise. This Court has previously found that when issues involve only state law "the expertise of the bankruptcy court is not necessary."[29] Nothing about the Pending Claim Objections raises an issue of bankruptcy law. Each turns on questions of Maryland tort and contract law that a Maryland court, and ultimately a jury, is best positioned to resolve.

---

[29] *In re Nims*, No. 11-15968-TJC, 2011 WL 1402771 at *4 (Bankr. D. Md. Apr. 13, 2011).

36. The case for resolving the Pending Claim Objections outside this Court is especially strong because the underlying claims are personal injury tort claims. Congress excluded from core proceedings "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution,"[30] and directed that such claims "shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose."[31] Congress also preserved Survivors' right to a jury trial.[32]

37. Courts are strongly divided on the ability of a bankruptcy court to conduct pretrial proceedings on personal injury claims and may disallow a claim that fails as a matter of law.[33] *Compare In re Roman Cath. Diocese of Rockville Ctr.*, 650 B.R. 765, 776 (Bankr. S.D.N.Y. 2023) and *In re Freeway Foods of Greensboro, Inc.*, 466 B.R. 750, 777–78 (Bankr. M.D.N.C. 2012) with *In re Schepps Food Stores, Inc.*, 169 B.R. 374, 378–79 (Bankr. S.D. Tex. 1994) (declining to decide limitations defenses to personal injury claims on summary judgment because "any decision by this court on the limitations issues would be a de facto trial on the 'state law' merits of [the] claim," and holding that the court "cannot decide issues of state law that finally adjudicate personal

[30] 28 U.S.C. § 157(b)(2)(B).

[31] 28 U.S.C. § 157(b)(5)

[32] 28 U.S.C. § 1411(a).

[33] It is the Committee's position that a motion to dismiss for failure to state a claim is no mere procedural device; it is a ruling on the merits that must be determined by an Article III or state-court judge. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) ("The basic difference among the various 12(b) motions is, of course, that 12(b)(6) alone necessitates a ruling on the merits of the claim, the others deal with procedural defects. Because 12(b)(6) results in a determination on the merits at an early stage of plaintiff's case, the plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn."). To the extent the objecting parties seek that relief, Survivors are entitled to the same safeguards, and to the extent the objections depend on facts outside Survivors' claims, Rule 12(b)(6) relief is unavailable.

injury and wrongful death claims"). But courts agree that a bankruptcy court "cannot assess the substantive merits of a personal injury tort claim."[34]

38. The proper question here is better frames as whether hearing the Pending Claim Objections in this Court is an efficient use of judicial and estate resources. It is not. Most of the Pending Claim Objections do not raise pure questions of law. They raise affirmative defenses—release, the scope of pre-CVA settlement agreements, and institutional liability—that turn on disputed facts and on discovery that Survivors have never received. Those defenses cannot be resolved summarily, and every claim that survives would still have to be tried in another forum, quite possibly not until after confirmation. Litigating the objections here would therefore produce two rounds of litigation, and the first would resolve only the Debtor's liability, even though many of the underlying lawsuits also name non-debtor defendants. Stay relief, by contrast, would produce a single round of litigation, against all defendants, in the forum most familiar with the legal issues in play and in which Survivors' lawsuits are already pending. *See* ¶¶ 41–44, *infra*.

39. Moreover, while the objecting parties appear to contend that many of the Pending Claim Objections seek relief tantamount to a motion to dismiss, this argument ignores that many of the Pending Claim Objections assert affirmative defenses, not a failure to state a claim: "[A] motion to dismiss based on an affirmative defense should be granted only in the rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint."[35] Where a plaintiff may assert a "potential rejoinder to the affirmative defense" and that rejoinder cannot be shown to be "foreclosed by the allegations in the complaint," no motion to dismiss would be

---

[34] *Rockville Ctr.*, 650 B.R. at 776.

[35] *See Council of Unit Owners of Milestone Townhouse Condominiums v. Beazer Homes, LLC*, No. GJH-18-1572, 2019 WL 1282067, at *3 (D. Md. Mar. 20, 2019).

appropriate.[36] Because these defenses cannot be resolved without discovery and fact-finding, and because any claim that survives must ultimately be tried elsewhere, judicial economy is best served by granting the Motion.

*ii. Adjudication in this Forum Would Be Inefficient and Unfair.*

40. The second *Robbins* factor concerns the promotion of judicial economy, including the extent to which continuing with the matter in the bankruptcy court would cause greater interference with the bankruptcy case. Here, for at least three reasons, judicial economy will be far better served by granting the relief sought in this Motion than by allowing litigation of the Pending Claim Objections to proceed in the bankruptcy forum.

41. First, it will be far easier to resolve this case and confirm a plan if the affected claims proceed in the Maryland state courts. Because any Survivor claim that survives the Pending Claim Objections must ultimately be tried outside this Court,[37] adjudicating the objections here would not finally resolve those claims. It would add a layer of procedural complexity before the claims are sent to a trial court for liquidation via jury trial. Releasing the affected claims to the state court system now would allow each claim, and every defense to it, to be resolved once, in a single forum, from pleading through jury verdict. Releasing the Pending Claim Objections would also allow relevant Survivor claimants to make progress in their respective lawsuits, the prosecution of which may be necessary post-confirmation in any event if Objecting Insurers have not resolved their exposure appropriately before a plan is confirmed.

42. Second, due to circumstances unique to the procedural history of this case and its pendency during amendments to the CVA by the Maryland legislature, most, if not all, Survivors

[36] *Council of Unit Owners of Milestone*, 2019 WL 1282067 at *3.

[37] *See* 28 U.S.C. § 157(b)(5).

affected by the Pending Claim Objections have already filed their lawsuits in state court.[38] As a result, releasing these claims to the state court system will not duplicate the effort that commencing new proceedings from the ground up would otherwise require. Similarly, the Debtor has already performed substantial analysis in support of its claim objections while protected by the stay and would not be starting from scratch in defending the claims at issue. Scheduling orders could issue in the existing cases promptly following stay relief. These circumstances favor releasing the Pending Claim Objections to the corresponding cases already pending in the Maryland state courts rather than to the District Court, where no such cases are pending.[39]

43. Third, the Maryland state court system is already presiding over extensive litigation on CVA claims that have been filed and litigated while this case has remained pending for more than three years. The claims held by Survivors in this case likely have much in common with claims litigated in the Maryland state courts, further confirming that the state court system is the appropriate venue for resolving the Pending Claim Objections.

44. This benefit to judicial economy is even more apparent in the specific context of the Pending Claim Objections. The Committee expects that questions identical to those in the Pending Claim Objections have been raised and resolved in many other CVA cases, including whether a purported release of claims entered before the passage of the CVA encompasses CVA claims; discovery into alleged fraudulent inducement or other misrepresentations with respect to alleged settlement agreements concerning CVA claims; and the extent to which a given claim is a CVA claim, or adequately asserts a CVA claim against a particular institutional defendant. The

---

[38] These were filed pursuant to the Court's *Order Modifying Automatic Stay Solely for Purposes of Filing and Serving Certain Civil Complaints Under Maryland Law On or Before May 31, 2025* [Dkt. No. 1127].

[39] *See* 28 U.S.C. § 1411 ("title 11 do[es] not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury[.]").

state court system's experience in resolving these issues further confirms that the second *Robbins* factor supports the relief sought in this Motion.

45. Adjudication in this Court also carries a risk of collateral litigation that state court adjudication avoids. Survivors whose claims are disallowed on disputed facts are likely to contend that they were deprived of their statutory and constitutional right to a jury trial or deprived of other procedural or substantive rights or opportunities provided to them by Maryland law. *See* 28 U.S.C. § 1411(a); U.S. Const. amend. VII. Whatever the merits of those challenges, they would generate appeals and delay. That is precisely the interference with the administration of this case that the second *Robbins* factor counsels against.

*iii. The Court Can Circumscribe Relief to Avoid Unfairness or a Deleterious Effect on the Estate.*

46. The third *Robbins* factor is easily satisfied because the relief sought by the Motion would not permit the entry or enforcement of any judgments obtained in non-bankruptcy actions against the Debtor. The Committee agrees that any such actions to enforce a judgment should be stayed and the Court should require Survivors to come back to this Court to assert any liquidated claim(s) against the Debtor. The Committee likewise would not oppose a requirement that Survivors return to this Court even to assert any liquidated claim(s) against the Debtor's affiliates, at least for so long as the affiliates continue to express their desire to participate in this chapter 11 case in good faith. The Court can also fashion any other appropriate conditions on relief to safeguard the Debtor's estate against any other actual or potential concerns, including to the extent required to protect existing insurance settlements.

*iv. The Court Should Find Cause and Modify the Automatic Stay.*

47. Each of the *Robbins* factors weighs in favor of granting relief from the automatic stay for the claims subject to the Pending Claim Objections so that they can proceed in the

Maryland state courts. The Committee thus respectfully requests that the Court enter an order granting relief from the automatic stay for the cases subject to the Pending Claim Objections so that they may proceed with litigation on the underlying claims and the substance of the Pending Claim Objections in the Maryland state courts, subject to such other and further relief as the Court deems equitable.

**B. The Objecting Insurers' Participation Confirms That Cause Exists, Because Keeping These Disputes in This Court Would Supply the Objecting Insurers Rights They Lack Outside Bankruptcy.**

48. The Objecting Insurers' participation in the claim objection process further confirms that cause exists under section 362(d).[40] The Objecting Insurers are not creditors in this case. They do not have an interest in the Debtor's property. They are not paying the Debtor's attorneys to analyze, draft, or prosecute the Pending Claim Objections and the allowance or disallowance of any particular claim in this case imposes no payment obligation on them, which obligation they continue to deny.

49. Even so, they ask this Court to sanction an attack on Survivor claims on their merits, in a forum where the insurers have no stake in the outcome aside from their ongoing dispute of coverage, against parties that the insurers could never litigate against in the tort system. They are using the broad equitable nature of the bankruptcy process to manufacture rights from whole cloth, or ride on the coattails of their insured's affirmative rights, and thus obtain a strategic advantage that would be foreclosed thoroughly in any non-bankruptcy venue.

50. It is not enough to defer to clever euphemisms, such as "someone is picking their pockets" in the case generally and thus infer that the Objecting Insurers have standing to object to

[40] *In re Knox*, 636 B.R. 637, 640 (Bankr. D.S.C. 2022) ("Because the Code does not define 'cause,' the Court must examine the facts and totality of the circumstances to determine if cause exists to grant relief from stay.") (citing *In re Beach First Nat'l Bancshares, Inc.*, 451 B.R. 406, 410 (Bankr. D.S.C. 2011) (citing *Robbins*, 964 F.2d at 345)).

specific Survivor claims. No one can "pick the pocket" of a party that owes no obligation and the Objecting Insurers actively assert that their policies do not cover the claims to which they object. The fact that the Committee and the Debtor generally seek to have the Objecting Insurers pay something into an overall settlement does nothing to demonstrate their concrete, particularized stake in the allowance of any specific Survivor claim. The Objecting Insurers must carry their burden to show that they have a concrete and particularized financial stake in each Survivor claim to which they seek to object and they have not made anything resembling such a showing.[41]

51. The Objecting Insurers thus cannot establish Article III standing to prosecute the Pending Claim Objections,[42] and their attempt to do so confirms that cause exists to modify the stay. Allowing the Pending Claim Objections to proceed in this Court would allow parties with no cognizable injury from any particular claim to litigate against Survivors in a forum, and in a posture

[41] The Objecting Insurers may invoke *Truck Insurance Exchange v. Kaiser Gypsum Co.*, 602 U.S. 268 (2024), but it does not resolve the question presented here. *Truck* addressed only whether an insurer is a "party in interest" under 11 U.S.C. § 1109(b) entitled to be heard on a plan of reorganization. It did not address Article III standing. And *Truck* involved an insurer whose financial responsibility for the claims at issue was undisputed. The Objecting Insurers, by contrast, have not been held financially responsible for any claim to which they object, they do not admit such responsibility, and, in fact, they actively contest the notion that they have such responsibility. But even if the Objecting Insurers could establish party-in-interest status under § 1109(b), that would not end the inquiry. Statutory standing does not supply constitutional standing and the Objecting Insurers are required to make a showing that they have both. *See In re Boyd*, 618 B.R. 133, 146 (Bankr. D.S.C. 2020) ("In addition to being a party in interest, a party seeking or opposing relief in a bankruptcy matter must also establish constitutional standing under Article III of the Constitution."); *U.S. Fire Ins. Co. v. Weishorn*, No. 3:08 CV 226-MU, 2009 WL 3300040, at *2 (W.D.N.C. Oct. 13, 2009), *as amended* (Oct. 14, 2009) (citing *In re Myers,* 168 B.R. 856, 862 (Bankr. D. Md. 1994)) ("Despite 11 U.S.C. § 1109's broad language allowing a 'party in interest [to] appear and be heard on any issue' in a bankruptcy case, courts still apply standard constitutional and prudential limitations on standing."); *see also In re Roman Cath. Diocese of Syracuse*, 665 B.R. 866, 875 (Bankr. N.D.N.Y. 2024) (a party in bankruptcy court must satisfy Article III standing, prudential standing, and party-in-interest standing under § 1109(b)). To invoke this Court's jurisdiction to disallow a particular Survivor's claim, each Objecting Insurer must show a concrete and particularized injury traceable to the allowance of that claim. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 431 (2021); *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 420 (4th Cir. 2025) ("[S]tanding is not dispensed in gross."). An insurer that denies any obligation to pay a claim cannot show that the claim's allowance injures it.

[42] *See Boyd*, 618 B.R. at 146 ("In addition to being a party in interest, a party seeking or opposing relief in a bankruptcy matter must also establish constitutional standing under Article III of the Constitution."). *See also U.S. Fire*, 2009 WL 3300040, at *2 (same); *Roman Cath. Diocese of Syracuse*, 665 B.R. at 875 (same).

and manner, that Maryland law would never permit. Releasing the claims to the Maryland state courts would avoid those complexities (and that very questionable result) cleanly and thoroughly.

52. In the end, the Objecting Insurers are trying to obtain, through the bankruptcy process, rights that Maryland law denies them. For at least six reasons, this inequity is cause to modify the automatic stay.[43]

53. *First*, if the stay is modified, the parties return to the positions state law assigns them. The Survivors would be plaintiffs, the Debtor would be the defendant, and none of the Objecting Insurers would be a party to the litigation.[44]

54. *Second*, keeping these disputes in this Court would reward forum manipulation. The Objecting Insurers do not have any interest unique to the bankruptcy process that converts the Pending Claim Objections from mechanical questions of governing state law into anything else. The insurers do not claim that prior settlement agreements, alleged affirmative defenses, or alleged liability defenses to the underlying torts have conferred upon them special rights in the bankruptcy process. They simply allege that the claims at issue would fail against the Debtor under state law.[45] The Objecting Insurers' attempt to create a unique bankruptcy right to object to claims, found nowhere else in state or federal law, underscores the wisdom of Congress's requirement that personal injury tort claims move to a civil trial court for adjudication on a level playing field.

---

[43] *In re Shady Grove Tech Ctr. Associates Ltd. Partn.*, 216 B.R. 386, 388 (Bankr. D. Md. 1998), *supplemented,* 227 B.R. 422 (Bankr. D. Md. 1998) ("This court holds that cause for relief from stay is not limited to a lack of adequate protection or a finding of bad faith motive for filing the bankruptcy case. As stated by the Fourth Circuit in *In re Robbins,* 964 F.2d 342, 345 (4th Cir.1992), '[b]ecause the [Bankruptcy] Code provides no definition of what constitutes 'cause,' courts must determine when discretionary relief is appropriate on a case-by-case basis.' This court has similarly interpreted Section 362(d)(1): '11 U.S.C. § 102(3) construes the term 'including' to not be limiting. Thus it is clear that cause, other than a lack of adequate protection, may be the basis for relief from the automatic stay.' It follows, that while circumstances which form cause for relief from stay may include a bad faith filing of the case, a finding of bad faith is not a prerequisite to a finding of cause.") (citations omitted).

[44] *Allstate Ins. Co. v. Atwood*, 319 Md. 247, 257 (1990).

[45] *See* 11 U.S.C. § 502(b)(1) (permitting disallowance because the claim is unenforceable under otherwise applicable law).

55. *Third*, in state court, a Survivor litigates against the defendant(s), pursuant to Maryland procedure, ultimately before a jury, and without liability insurance issues or incentives being injected into the substance or administration of the trial.[46] Here, the Objecting Insurers propose that Survivors defend their claims against both the Debtor and the Debtor's insurers, without discovery and without a jury, in a summary process that the insurers naturally enjoy because it is strategically advantageous to their non-Debtor and non-bankruptcy incentives—namely, leveraging a reduction of their respective contributions to a global settlement. Survivors should not have to face an additional adversary that state law would never let into the courtroom or onto the docket simply because the organization that failed to protect them as children made a unilateral decision to seek bankruptcy protection.

56. *Fourth*, given their divergent incentives, the Objecting Insurers' direct participation in the bankruptcy claims process will necessarily lead to delay, complication, and the unjustified waste of judicial and estate resources in a manner that only benefits the Objecting Insurers. Again, the insurers are not debtors in bankruptcy, and they are not creditors of this estate. Their only relationship to this estate is as counterparties to the Debtor's insurance policies. Moreover, when a bankruptcy claim is allowed, it does not necessarily lead to any payment obligation for Century or CNA. The Objecting Insurers still have, and continue to assert, defenses to coverage. Allowing the Pending Claim Objections to proceed in a forum where parties other than the Debtor may challenge claims directly, assuming they can demonstrate constitutional standing to do so, invites the waste of judicial resources. By contrast, releasing the claims subject to the Pending Claim Objections to the Maryland state courts would not cede control of these proceedings to anyone. It would return the insurers to their proper role in the tort system, defending through their insureds,

---

[46] *Washington Metro. Area Transit Auth. v. Queen*, 324 Md. 326, 332–33 (1991); 28 U.S.C. §§ 157(b)(5), 1411(a).

and leave the pace and scope of this case to the Court, the Debtor, and the Committee rather than to non-debtor insurers who might prefer to prolong these proceedings in hopes of increasing their settlement leverage.

57. *Fifth*, the Objecting Insurers suffer no cognizable prejudice from stay relief. At worst, the Objecting Insurers may be required to fund the defense of litigation that spawns from the Pending Claim Objections. That cannot rationally be viewed as prejudicial as it is the very bargain that the insurers agreed to voluntarily when they wrote and issued their policies. The Objecting Insurers have been basking "in the shelter of the automatic stay" since this case was filed more than three years ago,[47] but they have no *right* to do so, and can point to no term of their policies or other authority for the notion that their rights or standing have expanded by virtue of their insured's decision to file for bankruptcy protection.

58. *Sixth*, public policy considerations require a categorical rejection of the Objecting Insurers' purported interest in the Pending Claim Objections. Allowing insurers to participate in matters in which they have no vested interest confers no benefit on the overarching process in this case and instead serves only the insurers' (not their insureds') interests.

59. For these reasons, the Court should find that cause exists to modify the stay and grant the Motion.

## LOCAL RULE 9013 STATEMENTS

60. Pursuant to Local Rule 9013-2, the Committee will not file a separate memorandum with respect to this Motion and relies solely upon the grounds and authorities set forth in the Motion.

[47] *In re Roman Cath. Bishop of Sacramento*, 667 B.R. 577, 579 (Bankr. E.D. Cal. 2025).

61. In accordance with Local Rule 9013-6, which requires all parties in a contested matter to file a statement in compliance with Local Rule 7012-1(b), the Committee hereby consents to the entry of a final order or judgment by the presiding Bankruptcy Judge with respect to the Motion.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Committee respectfully requests that the Court grant the Motion and enter an order modifying the automatic stay to permit the Survivors whose claims are subject to the Pending Claim Objections to litigate the Pending Claim Objections, along with their underlying claims, in the Maryland state courts, with any resulting judgment on any claim to be enforced only through this Court, and for such further relief as the Court deems would serve the interests of judicial economy and progress in this case.

Date: November 16, 2026.

Respectfully submitted,

*/s/ Richard L. Costella*

Alan M. Grochal, Fed. Bar No.: 01447 Richard L. Costella, Fed. Bar No.: 14095
Tydings & Rosenberg LLP
1 East Pratt Street, Suite 901
Baltimore, Maryland 21202
Tel: (410) 752-9772
Fax: (410) 727-5460
Email: rcostella@tydings.com
agrochal@tydings.com

*Local Counsel to the Official Committee of Unsecured Creditors*

And

Edwin H. Caldie (MN # 388930)
Andrew Glasnovich (MN # 0398366)
Christopher Sevedge (MO # 68383)
**Stinson LLP**
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Main: 612-335-1500
Facsimile: 612-335-1657
Email: ed.caldie@stinson.com
drew.glasnovich@stinson.com
chris.sevedge@stinson.com

*Counsel to the Official Committee of Unsecured Creditors*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of November, 2026, a copy of the foregoing ***MOTION TO MODIFY THE AUTOMATIC STAY*** and ***NOTICE OF MOTION TO MODIFY THE AUTOMATIC STAY*** was served via the Court's ECF e-filing system on: Blake D. Roth, Esquire, blake.roth@hklaw.com; Catherine K. Hopkin, Esquire, chopkin@yvslaw.com; Hugh Bernstein, Esquire, hugh.m.bernstein@usdoj.gov.

/s/ Richard L. Costella
Richard L. Costella

**And all parties on the attached service list:**

Nathan D. Adler, Esquire: nda@nqgrg.com
Philip D. Anker, Esquire: philip.anker@wilmerhale.com
Sam Alberts, Esquire: sam.alberts@dentons.com
G. Calvin Awkward, III, Esquire: cawkward@goldbergsegalla.com
Gary Bahena, Esquire: garybahena@bahenalaw.com
Diane C. Bristow, Esquire: dcb@nqgrg.com
Philip Tucker Evans, Esquire: philip.evans@hklaw.com
Andrew Freeman, Esquire: adf@browngold.com
Andrew Glasnovich, Esquire: drew.glasnovich@stinson.com
Gary R. Greenblatt, Esquire: grg@cooncolelaw.com
Geoffrey Grivner, Esquire: geoffrey.grivner@bipc.com
Megan Harmon, Esquire: megan.harmon@bge.com
Robert Keith Jenner: rjenner@jennerlawfirm.com
Steven J. Kelly, Esquire: skelly@gelaw.com
Nicole Khalouian, Esquire: nicole.khalouian@stinson.com
C. Scott Kunde, Jr., Esquire: scott.kunde@hklaw.com
Anthony May, Esquire: amay@browngold.com
Timothy P. Palmer, Esquire: timothy.palmer@bipc.com
Mark David Plevin, Esquire: mplevin@crowell.com
David Kendall Roberts, Esquire: droberts2@omm.com
Annette Rolain, Esquire: arolain@ruggerilaw.com
James P. Ruggeri, Esquire: jruggeri@ruggerilaw.com
Jonathan Schapp, Esquire: jschapp@goldbergsegalla.com
Irving Edward Walker, Esquire: iwalker@coleschotz.com
Jonathan Schochor, Esquire; jschochor@sfspa.com
Kerry Staton, Esquire; kstaton@sfspa.com
Joshua F. Kahn, Esquire; jkahn@sfspa.com
Thomas F. Yost, Esquire; tyost@yostlaw.com
Andrew Janet, Esquire; asjanet@jjsjustice.com
Donna M. Berdych, Esquire; donna@berdychlaw.com
Philip S. Georges, Esquire; phil@wolfofjustice.com

Samantha Ruben, Esquire; Samantha.ruben@dentons.com
Maigreade B. Burrus, Esquire; Maggie.burrus@stinson.com
Michael G. Farag, Esquire; mfarag@gibsondunn.com
Marc E. Shach, Esquire; mes@cooncolelaw.com
Samantha M. Indelicato, Esquire; sindelicato@omm.com
Brian J. Perkins, Esquire; bperkins@peifferwolf.com
Joshua D. Weinberg, Esquire: jweinberg@ruggerilaw.com
Adam R. Dunst, Esquire, adunst@goldbergsegalla.com
Samantha J. Hanson-Lenn, Esquire, Samantha.hansonlenn@stinson.com
Eric G. Korphage, Esquire, korphagee@whiteandwilliams.com
Robert H. Kline, Esquire, kliner@whiteandwilliams.com
Matthew M. Weiss, Esquire, mweiss@phrd.com
John E. Bucheit, Esquire, jbucheit@phrd.com
Matthew G. Roberts, Esquire, mroberts@phrd.com
John Grossbart, Esquire, john.grossbart@dentons.com
Siobhain P. Minarovich, Esquire, manarovics@whiteandwilliams.com
Justin P. Fasano, Esquire, jfasano@mhlawyers,com
Matthew C. Nelson, Esquire, matthew.nelson@kennedyslaw.com
Jillian G. Dennehy, Esquire, jillian.dennehy@kenedyslaw.com
James R. Murray, Esquire, jim.murray@blankrome.com
James D. Carter, Esquire, james.carter@blankrome.com
Robyn L. Michaelson, Esquire, robyn.michaelson@blankrome.com
Sara G. Klein, Esquire, sklein@manlystewart.com
Gary P. Seligman, Esquire, gseligman@tykalaw.com
Ezhan S. Hasan, Esquire, ahasan@wiley.com
Michael J. Belsky, Esquire, mbelsky@sbwdlaw.com
Catherine A. Dickinson, Esquire, cdickinson@sbwdlaw.com
Isabella R. Sayyah, Esquire, isayyah@gibsondunn.com
Matthew A. Hoffman, Esquire, mhoffman@gibsondunn.com
Ryan S. Appleby, Esquire, rappleby@gibsondunn.com
Michael A. Rosenthal, Esquire, mrosenthal@gibsondunn.com
Todd C. Jacobs, Esquire, tjacobs@phrd.com
Jesse J. Bair, Esquire, jbair@burnsbair.com
Timothy W. Burns, Esquire, tburns@burnsbair.com
Jared Zola, Esquire, jared.zola@blankrome.com
Anthony J.M. Kikendall, Esquire, kikendalla@whiteandWilliams.com
Eileen King Bower, Esquire, Eileen.kingbower@clydeco.us
Robert M. Westra, Esquire, rwestra@ppsrlaw.com
Kevin A. Clasing, Esquire, kclasing@ppsrlaw.com
Morgan K. Stippel, Esquire, mstippel@burnsbair.com
Justine M. Daniels, Esquire, jdaniels@omm.com
Ryan S, Perlin, Esquire, perlin@mdtrialfirm.com
Emily C. Malarkey, Esquire, malarkey@mdtrialfirm.com
Jodie E. Bekman, Esquire, jbekman@gfrlaw.com
Timothy Karcher, Esquire, timothy.karcher@bakermckenzie.com
Paul Possinger, Esquire, ppossinger@proskauer.com

Clinton Cameron, Esquire, Clinton.cameron@clydeco.us
Bret Kabacinski, Esquire, bret.kabacinski@clydeco.us
Douglas McGill, Esquire, dmcgill@webbermcgill.com
Christopher Sevedge, Esquire, Christopher.sevedge@stinson.com
Ysabelle G. Reyes, Esquire, yreyes@tykalaw.com
Jon P. Newton, Esquire, jnewton@reidand riege.com
Benjamin M. Fischer, Esquire, bfischer@coleschotz.com
Richard A. Galbo, Esquire, rgalbo@goldberg segalla.com
Sheldon N. Jacobs, Esquire, sjacobs@snjlaw.com
Nicholas A. Dellefave, Esquire, Nicholas.dellefave@hklaw,com
Elizabeth Connell, Esquire, elizabeth@connellcounsel.com
Jacob C. Cohn, Esquire, jcohn@plevinturner.com
E. Christopher Amos, Esquire, eChrisamos@gmail.com
Edward J. Kelley, Esquire, ed@constantllp.com
W. Charles Meltmar, Esquire, cmeltmar@cochranfirmdc.com
Nathaniel L. Foote, Esquire, nate@vca.law
Michael J. Belsky, Esquire, mbelsky@sbwdlaw.com
Catherine A. Dickinson, Esquire, cdickinson@sbwdlaw.com
Kathleen A. Parnow, Esquire, katie.parnow@stinson.com
Redwan Saleh, Esquire, rsaleh@omm.com
Ryan C. Evans, Esquire, revans@plevinturner.com
Alexander Toth Boudreau, Esquire; aboudreau@gibsondunn.com
Andrea L. Stein, Esquire, andrea.stein@hklaw.com