**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| In re:<br><br>ROMAN CATHOLIC ARCHBISHOP OF BALTIMORE,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 23-16969-MMH |

**CENTURY'S SUPPLEMENTAL BRIEF ON STAY RELIEF MATTERS**

David Roberts (D. Md. Bar No. 18776)
**O'MELVENY & MYERS LLP**
1625 Eye Street NW
Washington, DC 20006
Telephone: 202-383-5155
droberts2@omm.com

- and -

Eileen Bower, Esq. (admitted *pro hac vice*)
Bret Kabacinski, Esq. (admitted *pro hac vice*)
**CLYDE & CO LLP**
30 S Wacker Drive, Suite 2600
Chicago, IL 60606
Telephone: 312-635-6937
eileen.bower@clydeco.us
bret.kabacinski@clydeco.us

*Counsel to Century Indemnity Company, as a successor to CCI Insurance Company, which is a successor to Insurance Company of North America, and Indemnity Insurance Company of North America*

[1] The Debtor in this Chapter 11 case is the Roman Catholic Archbishop of Baltimore. The last four digits of the Debtor's federal tax identification number are 1535. The Debtor's principal place of business is located at 320 Cathedral Street, Baltimore, Maryland 21201.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........ 3
ARGUMENT ........ 5
I. The Committee Admits that it Seeks to Lift the Automatic Stay to Pressure the Counterparties in Plan Negotiations ........ 5
II. Lifting The Stay Will Inject Discrimination Into the Bankruptcy, Creating a "Superpriority" Class of Abuse Claimants That Will Make Settlement Less Likely ........ 6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carrillo-Gonzalez v. I.N.S.*,
353 F.3d 1077 (9th Cir. 2003) .......... 9
*Clark v. Martinez*,
543 U.S. 371 (2005) .......... 8
*Dean v. Trans World Airlines, Inc.*,
72 F.3d 754 (9th Cir. 1995) .......... 6
*In re Conejo Enters., Inc.*,
96 F.3d 346 (9th Cir. 1996) .......... 3, 4, 5
*In re DBSI, Inc.*,
407 B.R. 159 (Bankr. D. Del. 2009) .......... 6
*In re Glazier*,
2008 WL 2148555 (Bankr. E.D. Cal. May 20, 2008) .......... 9
*In re Jankins*,
184 B.R. 488 (Bankr. E.D. Va. 1995) .......... 8
*In re Middleton*,
544 B.R. 449 (Bankr. S.D. Ala. 2016) .......... 6
*In re Patel*,
291 B.R. 169 (Bankr. D. Ariz. 2003) .......... 4, 7
*In re Real Wilson Enters., Inc.*,
2013 WL 5352697 (Bankr. E.D. Cal. Sept. 23, 2013) .......... 8
*In re Visiting Home Servs., Inc.*,
643 F.2d 1356 (9th Cir. 1981) .......... 4, 6
*In re: Advanced Med. Spa Inc.*,
2016 WL 3003203 (B.A.P. 9th Cir. Mar. 30, 2016) .......... 3
*LaFaele v. Arnold*,
2010 WL 654011 (E.D. Cal. Feb. 19, 2010) .......... 8
*Lofton v. Verizon Wireless (VAW) LLC*,
308 F.R.D. 276 (N.D. Cal. 2015) .......... 9
*Wang v. Kahn*,
2023 WL 4295089 (N.D. Cal. June 30, 2023) .......... 8

**Statutes**

11 U.S.C. § 101 .......... 8, 10
11 U.S.C. § 1109(b) .......... 17
11 U.S.C. § 502(a) .......... 9
11 U.S.C. § 502(b)(1) .......... 8, 10

**Other Authorities**

4 Collier on Bankruptcy ¶ 502.02 (16th 2025) .......... 9

## PRELIMINARY STATEMENT

Yesterday, counsel for the Committee again admitted on the record in open court that the basis for the Committee's stay relief motion is to pressure its counterparties to plan negotiations and settlement. The Committee's renewed motion seeks an order that (1) improperly terminates the automatic stay for the purpose of granting a strategic advantage to certain parties in a bankruptcy proceeding, (2) contravenes fundamental principles of bankruptcy law by permitting unequal treatment among claimants without their affirmative consent injecting conflicts that make consensual resolution less likely. The automatic stay exists to preserve the estate and ensure a fair process; it is not a device to confer tactical advantage or to allow two favored plaintiff firms to race ahead of others.

As a matter of law, it is "highly inappropriate" to lift the automatic stay and grant preferential leverage to some creditors to the detriment of others. *In re Conejo Enters., Inc.*, 96 F.3d 346, 353 (9th Cir. 1996). In *Conejo*, the Circuit Court took issue with the movant's admission that it was "seeking relief from the stay to strengthen its position against [the debtor] and other creditors in negotiating a reorganization plan." *Id.* The Circuit Court reversed the district court's decision lifting the stay, finding that the bankruptcy court—which the district court had reversed—reasoned correctly that lifting the automatic stay for the purpose of influencing negotiations was improper. *Id.* Here, the Committee has three times stated on the record that the exact opposite and impermissible view: it asks to lift the stay pressure the certain insurers to come to a resolution on the other parties' terms. Indeed, the Committee's stated purpose in seeking stay relief is to pressure insurers.

Lifting the automatic stay goes against its very purpose, which is to "prevent certain creditors from gaining a preference for their claims against the debtor." *In re: Advanced Med. Spa Inc.*, 2016 WL 3003203, at *3 (B.A.P. 9th Cir. Mar. 30, 2016).

The fundamental goal of bankruptcy is to "establish ***a uniform system*** to place the property of the bankrupt . . . under the control of the court ***for equal distribution among creditors.***" *In re Visiting Home Servs., Inc.*, 643 F.2d 1356, 1360 (9th Cir. 1981). Here, the Committee asks this Court to outright reject these basic principles by privileging one set of claimants—principally represented by law firms that concurrently represent Committee members—to now proceed with their tort lawsuits—and inviting the very race for preferential treatment that the automatic stay is designed to prevent. This would give their favored claimants a permanent advantage over the remaining claimants, which economically incentivizes the favored claimants to move their cases to a verdict rather than formulate a consensual plan. The relief the Committee seeks introduces exactly the type of discrimination that is antithetical to the stay's core purpose: the ruling creates a subclass of creditors who now have interests that are adverse to those of the remaining creditors. And none of the remaining creditors affirmatively consented to such disparate treatment, in clear violation of Bankruptcy Code Section 1123(a)(4).

Simply put, lifting the stay to manufacture settlement leverage and to favor one set of claimants to the detriment of others is impermissible under basic tenets of bankruptcy law.

Century reincorporates and offers the prior briefs, exhibits and testimony it offered in opposition to stay relief. *See* ECF 2270, 2470.

## ARGUMENT

### I. The Committee Admits that it Seeks to Lift the Automatic Stay to Pressure the Counterparties in Plan Negotiations

As the Ninth Circuit held in *Conejo*, a bankruptcy court should preserve a "level playing field" for all parties to negotiate the plan, and may not lift the automatic stay for the purpose of giving "one side or the other a strategic advantage just for the sake of reaching a resolution[.]" 96 F.3d at 353; *see also In re Patel*, 291 B.R. 169, 174 (Bankr. D. Ariz. 2003) ("[A]s noted by the *Conejo* court, it is important for a bankruptcy court to preserve a level playing field for all parties to negotiate a plan.").

In *Conejo*, the Ninth Circuit reversed a district court order lifting the automatic stay. The bankruptcy court had earlier denied a motion to lift the automatic stay because, among other reasons, the stay "preserved a level playing field for negotiation of a consensual reorganization plan." *Conejo*, 96 F.3d at 352. The district court then reversed and lifted the stay. On appeal from that ruling, the Ninth Circuit found that the district court had erred because the bankruptcy court's decision to maintain the stay for the purpose of promoting negotiation "was a rational basis for denying relief from the automatic stay." *Id.* at 353. The Circuit took issue with the movant's admission that it was "seeking relief from the stay to strengthen its position against [the debtor] and other creditors in negotiating a reorganization plan," and instead found that the bankruptcy court had reasoned correctly that lifting the automatic stay for the purpose of influencing negotiations "sounds like, please grant the motion so we have a cudgel and we can [pound] them over the head and beat them into submission so they'll do what we want to do." *Id.*

Here, lifting the stay to influence the parties' settlement negotiations and pressure the Insurers is the Committee's sole stated purpose in seeking stay relief. Indeed, yesterday

Committee counsel justified request for stay relief stating that lifting the stay was to pressure Insurers. Because the law militates against lifting the stay for the purpose of pressuring the parties to an outcome, the relief should not be granted.

## II. Lifting The Stay Will Inject Discrimination Into the Bankruptcy, Creating a "Superpriority" Class of Abuse Claimants That Will Make Settlement Less Likely

In *Herlihy v. DBMP, LLC* ("*Herlihy*"), the Fourth Circuit affirmed denial of stay relief for three claimants because it would "***greatly***" prejudice the estate and undermine the court's ability to "treat consistently and fairly all similarly situated claimants," and would "effectively destroy the bankruptcy case." 167 F.4th 142, 148 (4th Cir. 2026).

Bankruptcy Code Section 1123(a)(4) and the bedrock principles of bankruptcy law require equal treatment of similarly situated claimants. *See, e.g.*, *In re Middleton*, 544 B.R. 449, 456 (Bankr. S.D. Ala. 2016) ("The Code is designed to achieve an equality of treatment among similarly situated creditors.") (quotations omitted). An order that grants stay relief for select preferred claims and plaintiff firms is directly contrary to the "[t]he purpose of the bankruptcy law [which] is to establish a ***uniform system*** to place the property of the bankrupt . . . for ***equal distribution*** among creditors." *In re Visiting Home Servs., Inc.*, 643 F.2d at 1360. Here, lifting the stay will inject discrimination into the bankruptcy and the conflicts that flow from it, making a settlement less likely.

The claimants for whom stay relief is granted will be economically incentivized to focus on moving their cases to verdict and collecting their judgments—not formulating or confirming a consensual plan. This flies in the face of the principle, stated by the U.S. Supreme Court, that the automatic stay "benefits creditors ***as a group*** by preventing individual creditors from pursuing their own interests to the detriment of the others." *City of Chicago*, 592 U.S. 154, 157 (2021) (emphasis added).

This conflict alone warrants denying the Committee's renewed motion. The very reason for the automatic stay is to prevent a race to judgment that would result in unequal treatment of similarly situated creditors. *See*, *e.g.*, *Dean v. Trans World Airlines, Inc.*, 72 F.3d 754, 755-56 (9th Cir. 1995) ("the stay assures creditors that the debtor's other creditors are not racing to various courthouses to pursue independent remedies to drain the debtor's assets"); *accord In re DBSI, Inc.*, 407 B.R. 159, 166 (Bankr. D. Del. 2009) (the automatic stay serves to "forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor").

As the court in another diocesan sex abuse bankruptcy, *In re Diocese of Camden*, recently found in response to a nearly identical motion:

> Federal case law construing this provision of the Code has interpreted equal treatment to mean that all class members must be subject to the same process for claim satisfaction. . . . under the plan, all non-convenien[ce] survivor claims have been placed in one class and are stayed, at least initially, from pursuing relief through the state court system. However, if the application were granted, eight of these survivor claims would be permitted to immediately pursue their claims through the state court system, which raises the question of whether this violates Section 1123A4 of the Code. For this additional reason, the application must be denied.

*In re Diocese of Camden*, No. 20-21257, (Bankr. N.J. July 8, 2025) Dkt. No. 4000, Hr'g. Tr. at 16:13-17:1.

Here, if stay relief is granted for the select preferred plaintiff firms, the actions for which stay relief is granted will proceed before all others through motion practice, discovery, and trial to verdict and judgment, having won the race to the courthouse that the automatic stay is designed to prevent. They will be given a permanent advantage over other claimants who, by contrast, will be limited to the options the plan presents to settle their claims. *In re Patel*, 291 B.R. at 174 ("no creditor should be given the opportunity to liquidate his claim . . . while other

creditors are denied that strategic advantage"). Under Section 1123(a)(4) of the Code, a plan of reorganization must "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment."

The term "agreed" under Section 1123(a)(4) requires that a "*creditor* expressly or *affirmatively consent* to its treatment." *In re Real Wilson Enters., Inc.*, 2013 WL 5352697, at *8 (Bankr. E.D. Cal. Sept. 23, 2013) (finding "affirmative consent" is required to "agree" under Bankruptcy Code Section 1129(a)(9), as opposed to "consent [which] may be implied from [] conduct, or lack thereof (i.e., from . . . silence)"); *accord In re Jankins*, 184 B.R. 488, 493 n.8 (Bankr. E.D. Va. 1995) (finding the term "has agreed" in Bankruptcy Code Section 1129(a)(9) requires "the affected creditor's affirmative concurrence and not mere failure to object").[2] "[A]n attorney does not have implied . . . authority" to conjure affirmative consent and "enter into contracts on behalf of his client," absent express authorization. *Wang v. Kahn*, 2023 WL 4295089, at *9 (N.D. Cal. June 30, 2023). No express authorization was demonstrated here.

The Committee does not represent individual plaintiffs. *See Schultze v. Chandler*, 765 F.3d 945, 950 (9th Cir. 2014) (finding attorney for creditors' committee did not owe a duty of care to individual committee members because his "fiduciary duty runs solely to the committee.") Thus, the Committee's support for stay relief is legally irrelevant for determining consent under Section 1123(a)(4). *See, e.g., Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 286 (N.D. Cal. 2015) ("attorney argument is not evidence on which the court can rely") (citing *Carrillo-Gonzalez v. I.N.S.*, 353 F.3d 1077, 1079 (9th Cir. 2003)). Such a reading of

[2] Cases interpreting the definition of "agree" under other provisions of the Bankruptcy Code are instructive. *See LaFaele v. Arnold*, 2010 WL 654011, at *2 n.2 (E.D. Cal. Feb. 19, 2010) ("The United States Supreme Court has long recognized that, when Congress uses the same language even in different parts of the same statute, it generally intends the language to have the same meaning.") (citing *Clark v. Martinez*, 543 U.S. 371, 378 (2005) ("To give these same words a different meaning for each category would be to invent a statute rather than interpret one.")).

Section 1123(a)(4) is contrary to applicable law. *See In re Glazier*, 2008 WL 2148555, at *4 (Bankr. E.D. Cal. May 20, 2008) (finding implied consent through failure to object does not mean a creditor "agreed" to disparate treatment under the meaning of Bankruptcy Code Section 1322(a)(2)).

## CONCLUSION

For all of the foregoing reasons, the Century respectfully requests that this Court deny the Committee's renewed motion for relief from the automatic stay.

Dated: November 20, 2026

**O'MELVENY & MYERS LLP**

*/s/ David K. Roberts*
David K. Roberts (D. Md. Bar No. 18776)
**O'MELVENY & MYERS LLP**
1625 Eye Street NW
Washington, DC 20006
droberts2@omm.com

Tancred Schiavoni, Esq. (admitted *pro hac vice*)
Samantha Indelicato (admitted *pro hac vice*)
Redwan Saleh, Esq. (admitted *pro hac vice*)
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas, 17th Floor
New York, NY 10019
Telephone: 212-326-2000
tschiavoni@omm.com
sindelicato@omm.com
rsaleh@omm.com

Eileen Bower, Esq. (admitted *pro hac vice*)
Bret Kabacinski, Esq. (admitted *pro hac vice*)
**CLYDE & CO LLP**
30 S Wacker Drive, Suite 2600
Chicago, IL 60606
Telephone: 312-635-6937
eileen.bower@clydeco.us
bret.kabacinski@clydeco.us

*Counsel to Century Indemnity Company, as a successor to CCI Insurance Company, which is a successor to Insurance Company of North America, and Indemnity Insurance Company of North America*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of November, 2026, a true and correct copy of the foregoing document was filed and served via the Court's CM/ECF e-filing system on all parties of record.

*/s/ David K. Roberts*
David K. Roberts