Entered: November 23rd, 2026
Signed: November 23rd, 2026

**SO ORDERED**

MICHELLE M. HARNER
U.S. BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**at Baltimore**

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Roman Catholic Archbishop of Baltimore, | * | Case No. 23-16969-MMH |
| | * | |
| Debtor. | * | Chapter 11 |
| | * | |

* * * * * * * * * * * * *

**ORDER *CONDITIONALLY* MODIFYING THE AUTOMATIC STAY FOR CERTAIN MOVANTS AND CERTAIN ACTIONS**

The matters before the Court are five separate Motions for Relief from the Automatic Stay (the "Stay Motions"), filed by certain creditors in this case (the "Movants").[1] The Court has held several hearings on the Stay Motions (collectively, the "Hearings"), including on April 20, 2026; June 1 and 2, 2026 (the "June Hearing"); and November 19 and 20, 2026 (the "November Hearing"). At the November Hearing, the Movants, the Committee, the Debtor, the Ad Hoc Committee, and certain Insurers presented evidence and legal argument in support of their

[1] The Stay Motions are filed at ECF 2129, 2133, 2151, 2154, and 2155. The Court notes that another creditor filed a Joinder Motion seeking to obtain the same relief as any provided to the Movants (the "Joinder Motion"). ECF 2876. The Court does not have an adequate record to fully address the Joinder Motion herein but will direct the Committee to review and file a status report on the docket concerning the circumstances surrounding the claim at issue in the Joinder Motion.

respective positions.[2] The Court has reviewed the record of the Hearings and applicable law. This matter is now ripe for resolution.[3]

As set forth below, section 362 of the Bankruptcy Code[4] directs the Court to take appropriate action with respect to the automatic stay if there is cause to do so. 11 U.S.C. § 362(d). Here, based on the totality of the record of the Hearings, the Court finds adequate cause for certain of the requested relief. That relief will be targeted and will remain subject to this Court's exclusive and continuing jurisdiction over property of the bankruptcy estate, wherever located, under section 1334(e) of title 28 of the U.S. Code.

The Court is mindful that the relief provided by this Order will appear insufficient to some and unwarranted to others. The Court acknowledges the extremely difficult and personal nature of this chapter 11 case for all involved. The Court is bound by the Code and strives to act purposefully and methodically in accordance with the Code, with respect for the rights of all parties. As the Court noted at the Hearing, there are no easy answers in this case or perfect balance to strike among the rights of the parties. The Court thus bases its decision, as it must, on the language of the Code and applicable law. The Court will continue, as it hopes the parties will, to remain focused on the needs of this case and on the parties' respective rights.

---

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Order Addressing Motions for Relief from Automatic Stay and Debtor's Motion to Continue Automatic Stay entered on June 5, 2026 (the "June Order"). ECF 2559.

[3] The Court has jurisdiction over these matters pursuant to 28 U.S.C. § 1334. The District Court has referred this case and these matters to this Court under 28 U.S.C. § 157(a) and Local Rule 402 of the United States District Court for the District of Maryland. These matters are "core proceedings" under 28 U.S.C. § 157(b)(2). This Order constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52, made applicable to these matters by Bankruptcy Rules 7052 and 9014. The Court details herein its factual findings necessary to resolve the disputed legal issues. *See, e.g.*, *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 396 (2018).

Further, the Court sets forth certain references and citations in the footnotes of this Order solely to allow for the provision of more (rather than less) information; the use of footnotes is not intended to minimize the importance of the materials or their relevance to the Court's holding.

[4] 11 U.S.C. §§ 101 et seq. (the "Code").

## I. Relevant Background

The Court incorporates herein by reference the background information and findings of fact set forth in the June Order. Although the June Order was interim in nature, it reflects the state of affairs in this chapter 11 case at that time. The question now before the Court is whether the passage of time has changed the analysis. As the Court explained in the June Order,

> The Court is mindful of the impact of this case on individual creditors' rights. Creditors have waited patiently for almost three years for a fair and equitable resolution of their claims. *If that result does not materialize after the September 2026 confirmation hearing, the facts and circumstances of this case may look very different. The Court thus will continue the final hearing on the pending matters and allow the parties to supplement the evidentiary record at that time.* This hybrid approach to these matters—maintaining the automatic stay while preserving the parties' respective rights pending the outcome of the confirmation hearing—most appropriately balances the competing interests at stake and is in the best interests of the debtor, the bankruptcy estate, and all creditors.

ECF 2559, at 2 (emphasis added).

Based on the docket in this case, circumstances have in fact changed. At the time of the June Hearing, the Debtor and the Committee each had filed proposed plans of reorganization and disclosure statements, and a confirmation hearing was set to start on September 14, 2026. *See, e.g.,* ECF 2307,[5] 2413, 2521. The timeline for the plan process was tight—and intentionally so—given that this chapter 11 case has been pending since September 29, 2023. And since that date, hundreds of Survivors (who are the primary creditors of this bankruptcy estate) have been unable to pursue their state law rights against the Debtor, certain nondebtor affiliates that are covered by one or more of the Debtor's insurance policies (the "Covered Parties"), and the Insurers. Although the

[5] The Order setting the confirmation schedule was entered on April 22, 2026.

parties appeared for status hearings throughout the summer of 2026, no plan confirmation hearing occurred on September 14, 2026.[6]

The Court thus set the Stay Motions for a final hearing on September 30, 2026. The Debtor and the Committee requested a continuance of that hearing, as well as the continued hearing subsequently set for October 2026. During this period, the Debtor and the Committee continued to engage in mediation and ultimately reached a contingent settlement agreement on a chapter 11 plan. They also then asked to add the Ad Hoc Committee to the mediation. ECF 2953. Despite some apparent progress, no agreement was forthcoming as the November Hearing approached. The Debtor asked for another continuance, and the Committee asked to move forward with the hearing on, among other things, the Stay Motions.

## II. The November Hearing

At the November Hearing, the Committee and the Movants asked that the Court modify the automatic stay immediately as to the state court lawsuits filed by the Movants. The Debtor, the Ad Hoc Committee, and two Insurers (Century and American Casualty) opposed that relief and asked that the Court maintain the automatic stay without exception or condition as to the Debtor, the nondebtor affiliates, Century, and American Casualty. The Court heard legal argument from counsel for each of these parties, as well as statements from parties in interest not directly impacted by the Stay Motions.

At the Hearing, all parties discussed whether the primary, if not sole, purpose of the Stay Motions was to apply pressure to the ongoing efforts to achieve a global settlement in this case. The Court acknowledges statements of counsel that encouraging settlement is part of the reason

[6] The Court determined, among other things, that the chapter 11 plans proposed by the Debtor and the Committee were patently unconfirmable. ECF 2813. Thus, the Court could not approve the related disclosure statements or solicitation procedures.

the Stay Motions were filed. All parties in this case (and the Court) recognize the value of a global settlement to the Debtor, the Ad Hoc Committee, and the Survivors. That is the primary resolution path that will facilitate fair, timely, and efficient payments to Survivors in this case. As explained below, however, that objective cannot be the basis for finding "cause" to grant even some of the relief requested by the Stay Motions.[7]

## III. Relevant Facts and Legal Analysis

The automatic stay of section 362(a) of the Code is a hallmark of the U.S. bankruptcy system. The stay directly protects the debtor, the debtor's property, and property of the bankruptcy estate. 11 U.S.C. § 362(a). In doing so, it also protects all the debtor's creditors.

The protection afforded by the automatic stay, however, is not indefinite. For example, section 362(d) of the Code states,

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1). In addition, when a party seeks relief from the automatic stay, the statute speaks directly to the burden of proof,

> (g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—
> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
> (2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g).

---

[7] *See, e.g., In re Advanced Med. Spa Inc.*, No. 15-27456-B-7, 2016 WL 3003203, at *3 (B.A.P. 9th Cir. Mar. 30, 2016) (noting that one of the purposes of the automatic stay is to "prevent certain creditors from gaining a preference for their claims against the debtor").

The relief sought by the Stay Motions focuses on allowing the Movants to liquidate their claims against the Debtor and the Covered Parties in the Maryland state courts. The request is understandable as the Movants (as with most Survivors) have filed state court litigation against the Debtor and the Covered Parties, but they have not been able to pursue those actions because of the automatic stay in this case. The Court understands the critical importance of the automatic stay to a debtor's reorganization efforts. Unlike a commercial chapter 11 case, however, where the debtor and most of the creditors are entities with infinite duration, the Survivors are people—many of whom are aging and have waited years (and at least three years in this case) to pursue their legal rights.

Both foregoing factors are relevant to the Court's analysis under section 362 of the Code. In this district, a request for relief from the automatic stay, such as the Stay Motions, is governed by section 362(d) and (g) of the Code and the United States Court of Appeals for the Fourth Circuit's decision in *In re Robbins*, 964 F.2d 342 (1992). In *Robbins*, the Fourth Circuit explained,

> The court must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied. See In re Peterson, 116 B.R. 247, 249 (D.Colo.1990) (discussing balancing test). The factors that courts consider in deciding whether to lift the automatic stay include *(1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.*

*Id.* at 345 (emphasis added).

The Fourth Circuit also recently had reason to apply the *Robbins* factors in the mass tort context in *Herlihy v. DBMP, LLC*, 167 F.4th 142 (4th Cir. 2026). The debtor in *DBMP* faced prepetition litigation on account of state law tort claims and, over the objection of creditors,

received the protection of the automatic stay as to that litigation upon the filing of the bankruptcy case. Several years into the chapter 11 case, three creditors (a husband and wife and an estate representative) again requested relief from the automatic stay to pursue their state law claims and causes of action against the debtor and certain of its nondebtor affiliates. The Fourth Circuit affirmed the lower courts' decisions maintaining the stay and determined that the bankruptcy court properly applied the *Robbins* factors to the facts of that case. The Fourth Circuit noted,

> The [bankruptcy] court found that granting the motions to lift the stay would "greatly" prejudice the debtor's estate and that such harm would outweigh any harm to the Claimants that might be caused by any delay in the resolution of their asbestos claims. More particularly, the court reasoned that granting the stay [relief] would reduce judicial economy by releasing a wave of asbestos cases back into the court system, severely undermining the bankruptcy court's ability to "treat consistently and fairly all similarly situated claimants in a 524(g) plan." The court was particularly concerned that granting the stay would imperil its ability to protect the interests of future asbestos claimants through the § 524(g) plan. And based on its experience with similar mass-tort bankruptcies, it predicted that lifting the stay would "effectively destroy the bankruptcy case." The court also found that any delays that might occur in the resolution of the Claimants' suits in bankruptcy provided an insufficient basis to lift the stay as such a proposition was speculative.

*Id.* at 150.

As the Court observed in the June Order, the facts of *DBMP* are similar, but not identical, to the matters before the Court. For example, the Debtor's chapter 11 case does not involve asbestos litigation or, as a result, section 524(g) of the Code. The estate assets at issue also are different, as *DBMP* did not involve insurance policies. Although the Court found the potential prejudice to the Debtor and the bankruptcy estate akin to that discussed in *DBMP* at the time of the June Hearing, the Court must consider whether developments in this case—or the lack thereof—change that analysis.[8]

---

[8] In conducting this analysis, the Court is guided by the Fourth Circuit's guidance in *DBMP*:

> [A] bankruptcy court may, in its discretion, grant relief from the automatic stay if a party is able to demonstrate "cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d). Because "cause" is not otherwise defined, we have concluded that

The first factor of the *Robbins* standard weighs heavily in favor of the Movants. The Movants' claims against the Debtor and the Covered Parties are grounded solely in Maryland state law. There is no bankruptcy law implicated by those actions. In fact, as discussed further below, this Court's power to conduct a trial on those claims is limited by title 28 of the U.S. Code.

The second factor considers judicial economy and "whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court." This factor is not as straightforward as the first but still weighs in favor of the Movants. Section 157(b) of title 28 of the U.S. Code provides,

> (5) The district court shall order that personal injury tort and wrongful death claims shall *be tried* in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C. § 157(b)(5). This Court thus cannot conduct any trials that might be needed to liquidate the Movants' claims or preserve their rights to a jury trial absent consent of the parties.[9] At this stage of the case, the Court has no indication that the parties consent to having their matters tried in the bankruptcy court; those claims will need to be liquidated elsewhere. The question then becomes whether it is time to start that nonbankruptcy court process. As the Court suggested at the Hearing, it believes that timing turns to some extent on the particular facts of the case and the likelihood that the Debtor can confirm a chapter 11 plan within a reasonable time period.

---

> bankruptcy courts "must determine when [such] discretionary relief is appropriate on a case-by-case basis." *Robbins*, 964 F.2d at 345. But the term is not unmoored. We have provided a standard to apply the term, drawing limitations from context. Keeping in mind that a § 362(a) stay is designed to give the bankruptcy court the ability "to harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment and reorganization of his or her obligations" — which imitates a fundamental function of bankruptcy — removal of such a stay must, at bottom, address what the stay provided. *Id.*

*DBMP*, 167 F.4th at 149–50.

[9] *See, e.g., In re Xinergy Ltd.,* No. 15-70444, 2015 WL 3643418, at *4 (Bankr. W.D. Va. June 11, 2015) (discussing the potential import of section 157(b)(5) of a court's analysis of cause under section 362(d) and the *Robbins* factors).

In considering an appropriate timetable for this case, the Court wants to underscore two things: first, it appears that all parties have been engaging in the recent mediation process in good faith and with the same objective—a global settlement; and second, that an "appropriate timetable" for any particular chapter 11 case is a fact-intensive determination that must be tailored to that case. The Debtor's chapter 11 case requires this Court to analyze and balance several competing factors, including the Debtor's efforts to preserve and continue its mission and service; the Survivors' nonbankruptcy law rights that have been paused and delayed for over three years by the filing of this chapter 11 case; the fact that the primary claims against the Debtor are not contract claims but are tort claims of a kind that have inherent time concerns given the people affected and that cannot be tried in the bankruptcy court; and the reality that, although a global settlement may be most beneficial, it may not be achievable, and the process cannot be suspended indefinitely.

Reviewing the record of the Hearings and the docket, including the Mediator's Report at ECF 3122, the Court finds that the parties should have the time recommended by the Mediator to try to reach an agreement but that, after that period, various matters need to start to move in this case.[10] The parties will have been subject to this chapter 11 case for 40 months and will have been participating in this most recent round of mediation for at least seven months.[11] The parties know

[10] As noted above, the parties opposing the Stay Motions bear the ultimate burden of proof under section 362(g) of the Code. *See, e.g., Xinergy*, 2015 WL 3643418, at *3 (discussing burden of proof under section 362(g) of Code). The evidentiary record of the Hearings does, as noted, demonstrate some potential prejudice to the bankruptcy estate. Indeed, that evidence supported the relief granted by the June Order. Those parties did not, however, present any evidence at the November Hearing to refute the evidence in the record and on the docket that this case continues to move slowly, delaying the rights of many, without a definite timetable in sight. The first *Robbins* factor weighs heavily on the Court's consideration of the second, as the Court has no certainty concerning the timing of a confirmed plan of reorganization or progress towards the resolution of the claims themselves (and this Court cannot hold those claims trials without consent of the parties). The Mediator's Report and the reported status of that mediation, however, provide sufficient evidence to condition the relief set forth in this Order on additional time to reach agreement among the mediating parties. ECF 3122.

[11] The Court appointed Judge Catliota as judicial mediator and referred the Debtor and the Committee to that mediation by an Order entered on June 15, 2026. ECF 2600. The Court then referred the Ad Hoc Committee to that mediation by an Order entered on October 5, 2026. ECF 2953. These were not the first Mediation Orders entered by the Court

the issues and what is at stake; they have the information needed to determine whether any settlement works for them. It is time to make that decision. If the Debtor, the Committee, and the Ad Hoc Committee cannot achieve an agreement by January 31, 2027, it is then time for this chapter 11 case to move forward. That movement must include certain litigation matters that the Court has deferred, including the Movants' pursuit of their state law rights and the Debtors' and Insurers' objections to certain proofs of claim, all subject to the continued oversight and control of this Court to the extent such matters involve property of the bankruptcy estate,[12] which is subject to the exclusive and continuing jurisdiction of this Court under section 1334(e) of title 28 of the U.S. Code.[13]

The final *Robbins* factor—whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court—also supports the

---

in this case. Rather, *the Court entered a Consent Order referring the Debtor, the Committee, and the Insurers to mediation before a three mediator panel by an Order entered on July 29, 2024*. ECF 705.

[12] As set forth in the June Order and various other orders of this Court, the Debtor's insurance policies, including those involved in the state court litigation that is the subject of the Stay Motions, are property of the Debtor's bankruptcy estate. This Court has exclusive and continuing jurisdiction over that property and any tailored relief under section 362 of the Code does not change the characterization of that property or remove it from the jurisdiction of this Court. *Cf. In re Ellis*, No. 22bk07328, 2024 WL 6816194, at *5 (Bankr. N.D. Ill. June 5, 2024) ("Stay relief does nothing other than remove an injunctive protection, however. It does not change what is or is not property of the estate under section 541 or the court's exclusive jurisdiction over that property under 28 U.S.C. § 1334(e)."); *In re Beyha*, 637 B.R. 430, 445 (Bankr. E.D. Pa. 2022) ("Stay relief to pursue foreclosure of property of the bankruptcy estate is not the same as dismissal of the case. It does not relinquish the court's jurisdiction over estate property. It does not terminate the debtor's bankruptcy rights *in toto*. A stay relief order modifies a statutory injunction against certain creditor conduct; no more, no less.").

[13] Section 1334(e) provides,

> (e) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—
>
> (1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate; and
>
> (2) over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327.

28 U.S.C. § 1334(e). Under Local Rule 402 of the United States District Court for the District of Maryland, the district court has referred all matters and proceedings in this chapter 11 case to this Court.

Court's conclusion above that certain relief is appropriate but must be targeted and controlled.[14] *See Robbins*, 964 F.2d at 345. The record of the Hearings shows that the Debtor's insurance policies are property of the Debtor's bankruptcy estate.[15] Those policies are protected by the automatic stay[16] and are subject to the exclusive and continuing jurisdiction of this Court.[17] The record of the Hearings also shows that the Debtor's insurance policies are subject to certain risks if the automatic stay is terminated in this case.[18] The Court must consider whether and how to

---

[14] The Court notes that the evidentiary record of the June Hearing shows that the relief requested by the Stay Motions is narrowly tailored to the Debtor's insurance policies that do not have aggregate limits and are non-wasting assets. ECF 2559, at 6 (including findings and citations to the June Hearing evidentiary record on nature of insurance policies at issue in the Stay Motions). That record also shows that, nonetheless, there are risks to the estate in modifying the automatic stay as to actions implicating those policies. *Id.* The Court's reservation of rights under this Order and pursuant to section 1334(e) is necessary to satisfy the third *Robbins* factor and support the relief granted by this Order.

[15] Section 541(a) of the Code defines "property of the estate" to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The record of the June Hearing and the Court's prior Orders confirm that the Debtor's insurance policies are property of the Debtor's bankruptcy estate. *See, e.g.,* ECF 2559, at 3, 6 (including findings and citations to the June Hearing evidentiary record on property of the estate).

[16] Section 362(a) of the Code provides, in relevant part,

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
>
> . . .
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . .

11 U.S.C. § 362(a)(3).

[17] 28 U.S.C. § 1334(e). The Fourth Circuit has explained a court's jurisdiction under section 1334(e) as follows:

> 28 U.S.C. § 1334(b) invests district courts with original but not exclusive jurisdiction over "civil proceedings." In contrast, § 1334(e) is a broad grant of exclusive jurisdiction over a debtor's property; it does not invest district courts with jurisdiction to conduct civil proceedings. Instead, in the context of a Chapter 11 proceeding in connection with other provisions of Title 11, it creates exclusive jurisdiction over "property" for a limited period of time—until confirmation and the property vests in the reorganized debtor. 11 U.S.C. § 1141(b) ("Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.").

*Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 837–38 (4th Cir. 2007).

[18] *See, e.g.,* ECF 2559, at 6 (including findings and citations to the June Hearing evidentiary record on potential risks to the estate).

mitigate those risks, which mitigation flows to the benefit of all parties, including the Debtor, the Movants, and all Survivors.

Section 362(d) of the Code discusses the kinds of relief that the Court may grant upon a finding of appropriate cause, which may include "terminating, annulling, *modifying*, or *conditioning* such stay." 11 U.S.C. § 362(d) (emphasis added). The Court's analysis of the *Robbins* factors shows that, at the appropriate time, the factors weigh in favor of granting some relief from the automatic stay. But that analysis also shows that such relief could prejudice the Debtor and Survivors and thus should not be a blanket, quick, or generic termination of the stay. The Court relies heavily on the language of the Code and section 1334(e) of title 28 of the U.S. Code to structure relief under section 362(d) that is appropriate and tailored of the facts of this case. 11 U.S.C. § 362(a)(3),(d)(1), (g); 28 U.S.C. § 1334(e).

Accordingly, it is, by the United States Bankruptcy Court for the District of Maryland,

**ORDERED**, that the automatic stay of section 362(a) of the Bankruptcy Code is modified solely with respect to the state court litigation identified in the Stay Motions,[19] ***subject to the terms and conditions set forth in this Order***; and it is further

**ORDERED**, that **if a Settlement Agreement (as defined below) is *not* filed with the Court on or before January 31, 2027**, the automatic stay of section 362(a) of the Code will be modified to the extent necessary to allow the Movants to pursue and liquidate their respective claims under applicable nonbankruptcy law through jury verdict; *provided, however,* that the Movants may not take any action to obtain or enforce a judgment from a nonbankruptcy court on any such jury verdict, and any such actions remain subject to the automatic stay; and it is further

[19] The Stay Motions were filed by, and the relief granted by this Order is limited to, Claimant Nos. 636, 737, 851, 859, 1134, 1255, and 1346.

**ORDERED**, that if the automatic stay of section 362(a) of the Code is modified by operation of this Order, any party that is a defendant in, or party to, that state court litigation (including the Debtor, the Covered Parties, and the Insurers) may exercise its respective rights and remedies under applicable nonbankruptcy law without further relief from this Court, ***subject to the terms and conditions set forth in this Order***; and it is further

**ORDERED**, that if the automatic stay of section 362(a) of the Code is modified by operation of this Order, the Movants shall file quarterly Lines with the Court providing status reports on the state court litigation, including any orders entered by the state court, beginning on March 31, 2027, and then the last day of each calendar quarter thereafter; and it is further

**ORDERED**, that **if a Settlement Agreement (as defined below) *is* filed with the Court on or before January 31, 2027,** the automatic stay of section 362(a) of the Bankruptcy Code with respect to the Movants and all creditors and parties in interest shall continue until further Order of the Court; and it is further

**ORDERED**, that as used herein, the term "Settlement Agreement" means a settlement agreement or settlement term sheet executed by the Debtor, the Committee, and the Ad Hoc Committee concerning the Debtor's chapter 11 plan of reorganization and a reasonable timeline for resolving this chapter 11 case; and it is further

**ORDERED**, that, as soon as practicable but no later than 14 days after the entry of this Order, counsel to the Committee shall contact the individual who filed the Joinder Motion to ascertain the relevant facts and circumstances of that request; counsel to the Committee shall thereafter file a report (under seal if warranted) with the Court explaining the facts and circumstances of that request and any additional information the parties deem relevant; and it is further

**ORDERED**, that the Debtor's insurance policies continue to be property of the Debtor's bankruptcy estate—regardless of any relief from the automatic stay granted by this Order—and ***the Court shall continue to exercise exclusive jurisdiction over the insurance policies and property of the estate to the fullest extent permitted by applicable law; the Court grants the relief herein based on the facts of this case at the time of the November Hearing and thus reserves the right to modify this Order at any time to the extent necessary or warranted to protect property of the Debtor's bankruptcy estate, including by staying actions against property of the bankruptcy estate addressed by this Order, after appropriate notice and hearing***.

**END OF ORDER**